# EXHIBIT A

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| COMMUNITY ALTERNATIVES | ) | |
| UNLIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT

NOW COMES Plaintiff, Michelle Abraham, by her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Complaint against Defendant, Community Alternatives Unlimited ("CAU"), states as follows:

### INTRODUCTION

1.　　Ms. Abraham was employed by CAU for over 17 years, until she was constructively discharged in or around December 2016. She was well-regarded by her co-workers and was promoted periodically within the company. In March 2016, she was suddenly placed on a Performance Improvement Plan ("PIP"), just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU. Throughout the PIP process, she was bullied and subjected to treatment that her co-workers who had not reported discriminatory conduct did not receive and the PIP was extended repeatedly. Following her successful completion of the PIP, Ms. Abraham was denied the opportunity to have a year-end evaluation and was therefore denied the ability to obtain a raise at the beginning of 2017. Under these circumstances, she was harassed continuously from the time she reported her

CAU Removal 000001

concerns until the time of her constructive discharge in retaliation for reporting racial, gender, and sexual orientation discrimination in her workplace, in violation of the Illinois Human Rights Act, 775 ILCS § 5/2-101, *et seq.*

2.     On March 3, 2017, Ms. Abraham filed a Charge of Discrimination against CAU with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") for the racial discrimination[1] and retaliation she was subjected to by CAU.

3.     The IDHR issued Notice of Dismissal to Ms. Abraham on November 21, 2017, granting Ms. Abraham to right to file a lawsuit in relation to these claims.

PARTIES

4.     Ms. Abraham is a resident of the State of Illinois.

5.     Defendant CAU is a not-for-profit company incorporated in Illinois in 1980, providing services to individuals with disabilities, with its principal place of business in Chicago, Illinois. At all times material to this Complaint, CAU was an employer within the definition of the IHRA, 775 ILCS § 5/2-101(B).

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over this matter as each party to the Complaint is a citizen of Illinois or, in the case of CAU, is a corporation doing business in Illinois, organized under the laws of the State of Illinois. 735 ILCS §5/2-209.

7.     Plaintiff has exhausted her administrative remedies, as required by the IHRA, 775 ILCS § 5/1-101 *et seq.* This lawsuit was timely filed within 90 days of Plaintiff's receipt of the Notice of Dismissal issued by the IDHR and received on November 27, 2017.

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 2 of 14

---

[1] Ms. Abraham contends that her only claim was retaliation, and that she had not intended to file a racial discrimination claim, though one was included in the state and federal agencies' proceedings.

2

CAU Removal 000002

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 3 of 14

8.     Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and 735 ILCS § 5/2-102 because part of the transaction out of which the cause of action arose took place within Cook County, Illinois, and because CAU is considered a resident of Cook County, Illinois, through being authorized to transact business in Illinois and doing business in Cook County. Ms. Abraham's work was largely performed in Cook County and CAU's retaliatory acts took place in Cook County as well.

## FACTS

9.     Ms. Abraham was hired by CAU on or around November 2, 1999 as a case manager. In that role, she typically managed about 75 cases at a time, dealing with disabled individuals and their families to assist them in procuring the needed medical and social services, and was routinely assigned time- and labor-intensive cases which were too difficult for other case managers to handle. All of her performance evaluations, when she received formal performance evaluations, were positive. Her work was initially performed in dealing with individuals who were living in group homes, as part of the Bogard unit at CAU.

10.    When the Bogard unit's staff was decreased due to a declining case load, Ms. Abraham was transferred to the Community department at CAU, where she continued in her role as a case manager. Ms. Abraham was deemed valuable to the company and was told her skill set meant that she would work well in the same role, just in another department. The Community department integrated individuals with developmental disabilities within their communities to obtain needed services and involved a lot of one-on-one contact between the case managers and the clients, which Ms. Abraham was used to from her work on the time- and labor-intensive cases from the Bogard unit.

3

CAU Removal 000003

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 4 of 14

11.    In 2001, she was transferred to the Individual Service and Support Advocacy Unit ("ISSA"), which assisted in providing services for people with intellectual disabilities. There she performed case management work for CAU clients who received services that were funded through Medicaid. In this role, Ms. Abraham continued to receive positive performance reviews, up through the time she applied and received for a promotion to manager in 2007.

12.    In 2007, she was promoted to the position of Program Manager for ISSA. She worked in that role for nearly a decade. She was known as a strong advocate for her clients, would supervise the work of the case managers in the Department, and wrote performance evaluations for the people she supervised. She also participated in interviews for new hires in the Department and trained new hires in how to perform work for the ISSA. She served as a resource when the people she supervised needed assistance with their cases and was frequently the go-to person when complicated issues arose. Ms. Abraham held small group meetings at least once per month to manage her staff. She continued to receive positive performance reviews from her supervisors in this role as well.

13.    In 2009, she was transferred to Home Based Services ("HBS"), where she performed the Program Manager role in that department, performing the same tasks. In this position, she reported to HBS Department Director, Jennifer Rutka. Though Ms. Rutka insisted that everyone's performance reviews note areas in which an employee could improve, every year, Ms. Abraham still received positive performance reviews, even in her first review completed after moving to HBS, where she had double the workload of other Program Managers for the two-month period when she was transitioning between the ISSA and HBS Departments.

14.    It was in her time as Program Manager in HBS that Ms. Abraham began to hear racially discriminatory, sexist, anti-Semitic, homophobic commentary from her co-workers and

4

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 5 of 14

especially from her supervisor, Ms. Rutka, who was known for being rude when speaking about people who didn't do things in the exact way she wanted them to, commonly referring to such situations as involving people who would not "comply." Ms. Abraham kept her thoughts and feelings about these remarks to herself out of concern that reporting such conduct would not be well taken. She simply continued to supervise her staff, and advocate for her clients' best interests.

15.     Upon information and belief, these comments were not limited to Ms. Abraham's Department, HBS, as CEO Joanell Voigt would comment that she hoped a homosexual employee would not impact the office bathroom situation in any way "because that is ridiculous," and would ask how a homosexual employee could "expect us to respect him" given certain wardrobe choices the employee had supposedly made.

16.     Upon information and belief, Ms. Voigt was known for making fun of employees or other individuals she suspected of being homosexuals, and for denying the African-American employees the chance to telecommute, while other non-African-American employees had that option. The telecommuting option was supposed to be seniority-based, but the African-American employees were skipped over when it was their turn to be given the telecommuting option.

17.     On or around March 17, 2016, Ms. Abraham was approached by the HR Director, Ms. Biermann, who said Ms. Abraham was due for a training session. Rather than training, however, the session consisted of Ms. Biermann asking Ms. Abraham numerous questions about HBS over the course of an approximately three-hour long meeting. The "training" meeting appeared to be a ruse to give Ms. Biermann the opportunity to gather information about Ms. Abraham.

18.     Though she initially was hesitant to engage in the discussion, Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her co-

CAU Removal 000005

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 6 of 14

workers and supervisors when speaking about clients and their families. Ms. Rutka specifically commented on a homosexual man who worked with CAU that he was nice, but sometimes she preferred to work with "a man's man." On another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to "Jew us down." Ms. Abraham also shared that such comments were made about others within CAU, as part of the instructions supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress. Finally, she shared that Ms. Rutka in the past engaged in retaliatory conduct and that Ms. Abraham would not participate in such conduct.

19.     Upon information and belief, following this meeting, Ms. Biermann reported the substance of her conversation with Ms. Abraham to others at the same level as the HR Director within CAU.

20.     The very next day, during a managers' meeting that Ms. Abraham attended, Ms. Rutka baited Ms. Abraham into a discussion about the comments Ms. Abraham made to Ms. Biermann the day before and about paperwork Ms. Abraham was supposedly behind in completing. Ms. Abraham stated that she would be caught up on the paperwork within two weeks. The discussion then became very emotional between Ms. Abraham and Ms. Marlene Russo, Ms. Abraham's intermediate supervisor, because Ms. Russo was screaming at Ms. Abraham. Eventually, after Ms. Abraham broke into tears, Ms. Rutka ended the meeting.

21.     On or around March 21, 2016, less than one week after Ms. Abraham reported the unlawful discriminatory conduct of CAU, Ms. Abraham was called into a meeting in the HR office, attended by Ms. Rutka, Ms. Russo, and Ms. Biermann. Ms. Rutka stated that Ms. Abraham was

CAU Removal 000006

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 7 of 14

being placed on a PIP, and then immediately asked if she was going to resign. When Ms. Abraham said she wouldn't resign, the meeting continued with Ms. Biermann stating that they would proceed with the PIP. Ms. Rutka remarked that she did not want to "waste time" with the PIP if Ms. Abraham "was going to quit in two weeks."

22.     During the course of the multiple-hour meeting about the PIP, Ms. Abraham was subjected to harsh commentary about the supposed deficiencies with her work, deficiencies which had never been expressed to Ms. Abraham before this meeting. She asked questions to clarify what was being communicated to her about her role, because the information provided in association with the PIP so greatly deviated from the standard operating procedures of CAU, which she had been using for over 15 years at that time, and which she had been following when she received all of her positive performance reviews in years past.

23.     In response to her clarifying questions, Ms. Abraham was rudely asked whether she had any common sense and condescending questions such as, "you've been a manager for how long?" She was informed that Ms. Rutka thought staff should not be coming to Ms. Abraham to ask questions if Ms. Abraham doesn't know the answers to their questions, and if not, then "how can [she] manage?" She was also informed that CAU was questioning whether she could be trusted in her Program Manager role in HBS.

24.     The PIP itself addressed supposed problems which were in fact ongoing issues that were commonly encountered in case management work by all employees working in this area, including issues related to completing the voluminous paperwork involved in case management, and which typically would not have merited placing someone on a PIP. When Ms. Abraham had needed to speak to a case manager she supervised about similar issues in the past, she would address the issues with the employee, and would not place the employee on a PIP. Ms. Abraham

7

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 8 of 14

had never heard of anyone at CAU being placed on a PIP for issues such as the ones raised in her PIP.

25.    The PIP also placed unrealistically short time frames on the completion of the objectives of the PIP, especially in consideration of the fact that the PIP demanded Ms. Abraham deviate from the standard operating procedures she had been using for over 15 years.

26.    These deadlines were known to be extreme by others at CAU. Ms. Abraham overheard other senior managers speaking one day about the deadlines imposed for the completion of her paperwork. The senior managers were concerned that CAU might hold them to the same standards, and they were commenting that they did not know how they would get their paperwork done if the same deadlines that were imposed on Ms. Abraham were to be imposed on their work.

27.    Within a few days of receiving the PIP, Ms. Abraham began to receive calls from her clients and their families, who reported that they had been called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do.

28.    One such called was placed to the Executive Director of an agency HBS worked with, whose child was among the individuals Ms. Abraham assisted with services. The Executive Director mentioned that he told whoever called that Ms. Abraham did wonderful work, and that he was surprised to have received such a call because Ms. Abraham was doing great work for his child.

29.    The PIP was supposed to run for thirty days, after which Ms. Abraham's performance would be reevaluated to determine if she had met the goals set by the PIP. Instead, the PIP period was extended multiple times, so that it actually ran for 90 days. Each time the PIP was extended, new false complaints about Ms. Abraham's performance were added, in an apparent

8

CAU Removal 000008

attempt to convince her to stop fighting the PIP and to just resign, as Ms. Rutka had suggested in the initial PIP meeting in March 2016.

30.    While on the PIP, Ms. Abraham was subjected to extreme scrutiny, as she was informed that her "comings and goings" were being monitored by her supervisors, implying that they were keeping her under surveillance while she was at work. She also had her files audited and re-audited, sometimes through multiple managers reviewing the same files over and over again, examining aspects of the files that dated back several months, to dates before the PIP period began.

31.    During the PIP period, Ms. Abraham frequently worked late into the evening, sometimes as late as 11:00 p.m., to try to complete all of her paperwork and meet the unrealistic deadlines the PIP provided for the completion of her work. Because Ms. Abraham was salaried, she was not paid any overtime for the extra hours she worked to accomplish the requirements set for her in the PIP.

32.    In June 2016, Ms. Abraham was deemed to have successfully completed the PIP.

33.    However, Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with, the people they believed she might confide in, and asked these people questions about her personal life, outside of work, in an attempt to harass her and dig up any information they could use to push her out of the company.

34.    Following the completion of the PIP, Ms. Abraham was accused multiple times of demanding a promotion, something she never did. She was also threatened that she would be demoted.

35.    As the end of 2016 approached, CAU refused to provide Ms. Abraham with an annual performance review, which meant that she could not receive a raise in 2017. Instead of conducting a performance review, CAU stated that the PIP took the place of an annual performance

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 9 of 14

9

CAU Removal 000009

review, even though the PIP was *successfully* completed in June, and half of the year still remained at the time that the PIP was completed. Ms. Biermann stated that this should be acceptable to Ms. Abraham because annual reviews only encouraged managers to discuss negative aspects of an individual's performance, despite the fact that Ms. Abraham's prior annual performance reviews had been positive up to that point in time.

36.     Under these circumstances, Ms. Abraham went to work every day because she loved her work and enjoyed working with and for her clients. She was subjected to extreme stress and emotional distress on a daily basis, though, through CAU's treatment of her. Though it was difficult to leave the career she had built over the course of 17 years, Ms. Abraham was subjected to such conditions in her everyday life at CAU that she eventually resigned in December of 2016 because it was obvious that CAU would continue to engage in conduct designed to force her to resign her position. She provided 30 days of notice to ease the transition of her clients to other staff at CAU. Not surprisingly, CAU made no effort to talk Ms. Abraham into staying.

37.     Finally, after she learned that Ms. Abraham had filed a Charge of Discrimination related to her encounters with CAU, Ms. Biermann contacted Ms. Abraham and suggested that she would be taking leave from her position at CAU because she had come to experience similar retaliation for looking into the complaint made by Ms. Abraham and the statements shared by Ms. Abraham in the March 2016 meeting.

## COUNT I – UNLAWFUL RETALIATION FOR OPPOSING UNLAWFUL CONDUCT, IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

38.     Plaintiff restates and realleges by reference paragraphs 1 through 37 as paragraph 38 of Count I.

39.     CAU is an employer as defined by the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*, which prohibits retaliation for opposing unlawful conduct.

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 10 of 14

10

CAU Removal 000010

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 11 of 14

40.     Ms. Abraham engaged in activity that is protected by the Illinois Human Rights Act when she reported to HR the racist, sexist, anti-Semitic, and homophobic conduct and statements of her co-workers in her Department.

41.     CAU placed Ms. Abraham on a PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to convince her to resign. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to similar unfavorable terms and conditions in employment as Ms. Abraham designed to force her to resign.

42.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

43.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had their clients and clients' families called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

44.     Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance

11

deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had PIPs which were supposed to last for thirty days but were extended to the point that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

45.     Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

46.     Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to mistreatment by their supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 12 of 14

12

CAU Removal 000012

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 13 of 14

47.     Ms. Abraham was falsely accused of demanding a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were falsely accused of demanding a promotion or threatened that they would be demoted.

48.     Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act was denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

49.     Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

50.     As a direct and proximate result of the Defendant's conduct, Ms. Abraham has suffered damages, including but not limited to, pain and suffering, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

WHEREFORE Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A.      An award of damages for lost wages, including back pay and front pay;

CAU Removal 000013

B.      An award of compensatory damages including pain and suffering and emotional

distress;

C.      An award of pre-judgment interest;

D.      An award of punitive damages;

E.      Attorneys' fees and costs; and

F.      Such other and further relief as may be just in law and in equity.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.


Respectfully submitted,

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 14 of 14

**Dated:** February 23, 2018                    **MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

14

CAU Removal 000014

**Summons - Alias Summons** (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

<u>MICHELLE ABRAHAM</u>

v.

<u>COMMUNITY ALTERNATIVES UNLIMITED</u>

No. <u>2018-CH-02497</u>

Defendant Address:
COMMUNITY ALTERNATIVES UNLIMITED
R/A JULIE BADEL
227 WEST MONROE STREET
SUITE 3250
CHICAGO, IL 60606

☑ **SUMMONS** ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room <u>802</u> ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid 1500
Rolling Meadows, IL 60008

☐ District 4 - Maywood
Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ Richard J. Daley Center
50 W. Washington, LL-01
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: <u>45037</u>

Name: <u>MAJOR RUTH I PC LAW OFFICES</u>

Atty. for: <u>MICHELLE ABRAHAM</u>

Address: <u>30 W MONROE ST #1650</u>

City/State/Zip Code: <u>CHICAGO, IL 60603</u>

Telephone: <u>(312) 893-7544</u>

Primary Email Address: <u>rmajor@major-law.com</u>

Secondary Email Address(es):

<u>dbroadwell@major-law.com</u>

Witness: <u>Friday, 23 February 2018</u>

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code) (Facsimile Telephone Number)

**Brenna R. McLean**

| | |
|---|---|
| **From:** | ChanceryDiv Services (Circuit Court) <ChanceryDivservices@cookcountycourt.com> |
| **Sent:** | Thursday, July 14, 2022 4:01 PM |
| **To:** | Brenna R. McLean |
| **Cc:** | Yao Koudjonou (Circuit Court); Latricia Jackson (Circuit Court) |
| **Subject:** | RE: Abraham v. CAU (2018-CH-02497) - Request for Electronic Filings |

**\*\*\* EXTERNAL EMAIL \*\*\***

Dear Mrs. McLean

We have received your request for copies of the following filed dates requested below from case#2012ch36268. Also, please be advise the Case Set on Case Management call there's no  image for the file date of 2-26-2018 requested. If you have any other question please do not hesitate to contact the office for further assistance. **Please call LexisNexis at 888-497-8701 and make the payment. Please let the representative know that you are paying fees with the Cook County Court / District 1 Chancery Division. Our Provider ID # is 91020 and our  Merchant/Product # is 8613.**

Amount Due: $15.00.

Please email me the original prof of receipt of payment.

- 02/23/2018 – Summons Issued and Returnable
- 02/26/2018 – Case Set on Case Management Call –No Image.
- 10/09/2018 – Notice of Motion of Plaintiff's Motion to Supplement Response to Defendant's MTD
- 10/31/2018 – Answer/Response/Reply filed by Plaintiff
- 10/31/2018 – Exhibits filed by Plaintiff

*Latricia Jackson*

*Clerk IV SR., 14E*

*Chancery Division*

*50 W. Washington - Room 802*

*Chicago, IL 60602*

*Lzjackson@cookcountycourt.com*

*Phone: 312.603.7761*

*www.cookcountyclerkofcourt.org*

CAU Removal 000016



State of Illinois –First Judicial District
Clerk of the Circuit Court
of Cook County

**From:** Brenna R. McLean [mailto:BRMcLean@ebglaw.com]
**Sent:** Thursday, July 14, 2022 2:37 PM
**To:** ChanceryDiv Services (Circuit Court) <ChanceryDivservices@cookcountycourt.com>
**Cc:** Lytrice L. Moore <LMoore@ebglaw.com>; Peter A. Steinmeyer <PSteinmeyer@ebglaw.com>; Amy Bharj <ABharj@ebglaw.com>
**Subject:** Abraham v. CAU (2018-CH-02497) - Request for Electronic Filings

---

**External Message Disclaimer**

This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

---

Good afternoon,

Our firm represents Defendant Community Alternatives Unlimited in the above-referenced matter. Can you please send us copies of the following filings:

- 02/23/2018 – Summons Issued and Returnable
- 02/26/2018 – Case Set on Case Management Call
- 10/09/2018 – Notice of Motion of Plaintiff's Motion to Supplement Response to Defendant's MTD
- 10/31/2018 – Answer/Response/Reply filed by Plaintiff
- 10/31/2018 – Exhibits filed by Plaintiff

**This request is time sensitive.** Please let us know at your earliest convenience if you are unable to provide them electronically or if it would be faster to obtain these files in person at the Daley Center.

Thanks you in advance for your assistance.

Brenna McLean



EPSTEIN
BECKER
GREEN

CAU Removal 000017

**Brenna R. McLean** | Bio
t 312.499.1418 | f 312.845.1998
BRMcLean@ebglaw.com

227 W. Monroe Street, Suite 3250 | Chicago, IL 60606
t 312.499.1400 | www.ebglaw.com

CONFIDENTIALITY NOTE: This communication is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this communication or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this communication in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies. Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, P.C. Attn: Marketing Department, 875 Third Avenue, New York, NY 10022. Be sure to include your email address if submitting your request via postal mail.

CAU Removal 000018

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | **(01/25/17) CCG N001** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHELLE ABRAHAM

_____ (Name all parties)

v.

No. 2018 CH 02497

COMMUNITY ALTERNATIVES UNLIMITED

To: Community Alternatives Unlimited
R/A Julie Badel
227 West Monroe Street
Suite 3250
Chicago, IL 60606

○ SUMMONS ◉ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___802___, Chicago, Illinois 60602
☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077
☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008
☐ District 4 - Maywood
1500 Maybrook Dr.
Maywood, IL 60153
☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455
☐ District 6 - Markham 16501
S. Kedzie Pkwy. Markham,
IL 60428
☐ Child Support: 50 W.
Washington, LL-01,
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: ___45037___

Name: THE LAW OFFICES OF RUTH I. MAJOR, P.C.

Atty. for: PLAINTIFF, MICHELLE ABRAHAM

Address: 30 W. MONROE STREET, SUITE 1650

City/State/Zip Code: CHICAGO, IL 60603

Telephone: (312) 893-7544

Primary Email: rmajor@major-law.com

Secondary Email: dbroadwell@major-law.com

Tertiary Email: iziminski@major-law.com

Witness: _____

DOROTHY BROWN    MAR 2 3 2018

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)    (Facsimile Telephone Number)

Rec'd 4-12-18

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

CAU Removal 000019

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,                        )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )    Case No. 2018-CH-02497
                                         )    Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,        )
                                         )
        Defendant.                       )

## NOTICE OF MOTION

TO:     Ruth Major
        Law Offices of Ruth Major
        30 W. Monroe St. – Suite 1650
        Chicago, IL 60603

        PLEASE TAKE NOTICE that on May 16, 2018 at 9:30 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Kathleen Pantle or any judge sitting in Room 2410 of the Richard J. Daley Center, 50 W. Washington St., Chicago, Illinois and there and then present **DEFENDANT'S MOTION TO DISMISS**, a copy of which is attached and served upon you.

                        By: _____
                                One of its attorneys

Julie Badel
Michelle Marks
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
(312) 499-1400
Attorney ID# 18494

## CERTIFICATE OF SERVICE

        The undersigned attorney hereby certifies that she served this notice and the referenced motion and supporting memorandum of law by email and by mailing a copy to Ruth Major, Law Offices of Ruth Major, at the address reflected above by depositing the same in the U.S. Mail at 227 W. Monroe St., Chicago Illinois on May 10, 2018 before the hour of 5 p.m.

                        _____

Firm:6063664v2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,               )

      Plaintiff,              )

      v.                   )    Case No. 2018-CH-02497

                         )    Calendar: 15

COMMUNITY ALTERNATIVES UNLIMITED,   )

      Defendant.         )

### DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
### PURSUANT TO SECTION 2-619 OF THE CODE OF CIVIL PROCEDURE

Defendant, Community Alternatives Unlimited, moves the court to dismiss Plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust administrative remedies, for lack of jurisdiction and for failure to serve the summons and complaint within the limitations period. A memorandum of law and an affidavit with exhibits are attached and incorporated as part of this motion.

WHEREFORE, Defendant moves that the court dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure.

COMMUNITY ALTERNATIVES UNLIMITED

By:    /s/ Julie Badel
         One of its attorneys

Julie Badel
Michelle Marks
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com

Firm:45835549v4

1

CAU Removal 000021

CERTIFICATE OF SERVICE

The undersigned attorney certifies that she served a copy of the foregoing motion to dismiss via U.S. mail and email this 1 0 day of May 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

Firm:45835549v4

2

CAU Removal 000022

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018-CH-02497 |
| | ) | Calendar: 15 |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
PURSUANT TO SECTION 2-619 OF THE CODE OF CIVIL PROCEDURE**

Defendant, Community Alternatives Unlimited, moves the court to dismiss Plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust administrative remedies, for lack of jurisdiction and for failure to serve the summons and complaint within the limitations period. A memorandum of law and an affidavit with exhibits are attached and incorporated as part of this motion.

WHEREFORE, Defendant moves that the court dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure.

COMMUNITY ALTERNATIVES UNLIMITED

By:    /s/ Julie Badel
One of its attorneys

Julie Badel
Michelle Marks
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. -- Ste. 3250
Chicago, Illinois 60606
312-499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com

Firm:45835549v4

1

CAU Removal 000023

CERTIFICATE OF SERVICE

The undersigned attorney certifies that she served a copy of the foregoing motion to

dismiss via U.S. mail and email this  10  day of May 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

Firm:45835549v4

2

CAU Removal 000024

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS )     SS
COUNTY DEPARTMENT, CHANCERY DIVISION            )

MICHELLE ABRAHAM,                    )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )     Case No. 2018-CH-02497
                                     )     Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,    )
                                     )
        Defendant.                   )

## AFFIDAVIT

Pursuant to the certification set forth below, Joanell Voigt states as follows.

1. I am President and Chief Executive Officer of Community Alternatives Unlimited ("CAU"), the Defendant in the above case.

2. In March 2017, I received from the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination purportedly filed by Michelle Abraham, a former CAU employee, on March 3, 2017. A copy of that charge is attached as Ex. A.

3. On or about May 4, 2017, I received a copy of a letter the Illinois Department of Human Rights ("IDHR") sent to Abraham. The letter indicated that the EEOC was responsible for investigating Abraham's charge, and if Abraham wanted the IDHR to take any further action on her charge, she needed to send the IDHR a copy of the EEOC's findings within thirty days of service. A copy of that letter is attached as Ex. B.

4. In June 2017, I received the EEOC's dismissal of Abraham's charge, dated June 2, 2017. In that notice, the EEOC indicated it "was unable to conclude that the information obtained establishes violations of the statutes." The notice advised Abraham that she could file suit under federal law in either federal or state court within 90 days of receiving the notice. A copy is attached as Ex. C.

5. In October 2017, I received a copy of a letter from the IDHR to Abraham indicating she had opted to have her EEOC charge investigated by the IDHR. (Ex. D)

Firm:45835549v8

6. In late November 2017, I received a dismissal notice for lack of jurisdiction and an investigation report from the IDHR. The investigation report recited some of the facts set forth above but also stated that Abraham did not submit a copy of the EEOC's findings to the IDHR until September 8, 2017. This was several months after the 30 day deadline for her to do so. As a result, the IDHR dismissed Abraham's charge for lack of jurisdiction but allowed her to seek review of the dismissal with the Illinois Human Rights Commission or to file a civil action in court. These documents are attached as Ex. E.

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that she verily believes the same to be true.

Joanell Voigt

Date: May 8, 2018

Firm:45835549v8

CAU Removal 000026

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,           )

          Plaintiff,      )

          v.              )      Case No. 2018-CH-02497

                  )      Calendar: 15

COMMUNITY ALTERNATIVES UNLIMITED,   )

          Defendant.     )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiff's complaint should be dismissed pursuant to section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust her administrative remedies before the Illinois Department of Human Rights ("IDHR") and because the court does not have jurisdiction over her claim. More specifically, Plaintiff failed to submit the EEOC's determination to the IDHR to review during the 30 day period permitted by law for her to do so. As a result, the IDHR dismissed Plaintiff's charge of discrimination for lack of jurisdiction and without investigating it, and Plaintiff has failed to exhaust her administrative remedies. In addition, the Illinois Human Rights Act and its regulations do not provide Plaintiff with a right of court review under these circumstances. Lastly, even if Plaintiff had exhausted her administrative remedies, Plaintiff's complaint should still be dismissed pursuant to Illinois Supreme Court Rule 103(b) because Plaintiff failed to obtain service on Community Alternatives Unlimited ("CAU" or "Defendant") prior to the expiration of the applicable statute of limitations.

## FACTS

Plaintiff's charge of employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") is dated March 3, 2017. (Affidavit of Joanell Voigt at ¶2, Ex.

CAU Removal 000027

A)   On May 1, 2017, the IDHR sent Plaintiff a letter stating that pursuant to a cooperative agreement between the EEOC and the IDHR, when she filed her charge with the EEOC, a copy of the charge was automatically filed with the IDHR.   Because Plaintiff filed her charge with the EEOC, that agency was primarily responsible for investigating her claim.  But if Plaintiff wanted the IDHR to conduct its own investigation of her charge, she needed to submit the EEOC's findings to the IDHR within thirty days of receiving the EEOC's findings. (*Id.* at ¶3, Ex. B)

The EEOC issued its dismissal on June 2, 2017, finding that the information obtained during its investigation did not establish a violation of the applicable statutes.  (*Id.* at ¶4, Ex. C)  By law, Plaintiff had thirty days from receiving this dismissal to notify the IDHR of this determination. 775 ILCS 5/7A-102(A-1)(3), 56 Ill. Adm. Code §2520.490(d).    Defendant was notified by letter from the IDHR, dated October 12, 2017, that Plaintiff asked the IDHR to investigate her charge.  (Voigt Aff. at ¶5, Ex. D)

Defendant has no independent knowledge of when the Plaintiff notified the IDHR of the EEOC dismissal, but according to the IDHR, she did not ask the IDHR to do so until September 8, 2017 (Voigt Aff. at ¶6, Ex. E), over ninety days after the date of the dismissal.  As a result, the IDHR dismissed Plaintiff's charge due to lack of jurisdiction on November 21, 2017.  (*Id.*)

Plaintiff filed this suit on February 23, 2018, alleging she exhausted her administrative remedies because she filed suit within ninety days of receipt of the IDHR's notice of dismissal, which she claims was November 27, 2017.  (Compl. ¶7)  Nowhere in the complaint does Plaintiff claim that she timely asked the IDHR to investigate her charge.  Instead, she alleges fifty paragraphs of wrongs allegedly committed by the Defendant, none of which have been raised before or investigated by the IDHR.

CAU Removal 000028

Even if Plaintiff's claim was properly before this court, Defendant was not properly served with the complaint and summons until April 12, 2018 – well past the applicable 90-day statute of limitations. Although Plaintiff's counsel emailed the complaint to Defendant's counsel on March 19, 2018, this also was well past the limitations period. Plaintiff's EEOC charge alleged race discrimination and retaliation with almost no details (Voigt Aff. Ex. A), so Defendant had no knowledge of Plaintiff's claims set forth in this complaint until way beyond the limitations period.

## ARGUMENT

I.  **The Complaint Should Be Dismissed Pursuant to Section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, Because Plaintiff Failed To Exhaust Her Administrative Remedies and the Court Lacks Jurisdiction over Her Claim.**

A brief review of the Illinois Human Rights Act and its regulations will provide the background to illustrate Plaintiff's failure to exhaust her administrative remedies. The process begins with an aggrieved individual filing a written charge of discrimination. If a charge is filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged civil rights violation, the charge is deemed to have been filed with the Illinois Department of Human Rights ("IDHR") on the same day it was filed with the EEOC. Illinois Human Rights Act, 775 ILCS 5/7A-102(A-1)(1). The IDHR then notifies the parties that (a) the EEOC charge has been sent to the IDHR for dual filing purposes, (b) the EEOC will investigate the charge, (c) the IDHR will take no action on the charge until the EEOC issues its determination, and (d) the complainant must submit a copy of the EEOC's determination to the IDHR within thirty days of service of the determination on the complainant. (*Id.*) *See also* 56 Ill. Admin. Code §2520.490

CAU Removal 000029

(c)(1)-(5). In this case, the IDHR notified the parties of these statutory provisions in its May 1, 2017 letter. (Voigt Aff. ¶3, Ex. B)

In cases like this one, where the EEOC determines that it is unable to establish that illegal discrimination occurred and issues the charging party[1] a right to sue notice, he or she must notify the IDHR within thirty days of receiving the dismissal. 775 ILCS 5/7A-102(A-1)(3), 56 Ill. Admin. Code §2520.490(c)(4). Then the IDHR notifies the parties that it will adopt the EEOC's dismissal as a lack of substantial evidence unless the complainant asks the IDHR to review that determination within 35 days. 775 ILCS 5/7A-102(A-1)(3).

On the other hand, if the complainant does not timely provide the IDHR with the EEOC dismissal, the regulations provide that:

> If the complainant fails to submit a copy of the EEOC's final determination to the Department within 30 days after receipt of the EEOC's final determination, the Department may dismiss the charge for lack of jurisdiction. The complainant may request to have the Illinois Human Rights Commission review the Department's determination that it lacks jurisdiction over the charge by filing a request for review with the Illinois Human Rights Commission within 90 days after receipt of the Department's Notice of Dismissal. . . .

*Id.* at 2520.490(d).

In this case, because Plaintiff did not timely notify the IDHR of the EEOC dismissal, the IDHR dismissed her claim for lack of jurisdiction. Her only recourse from that dismissal under either the statute or the regulations was to file a request for review with the Illinois Human Rights Commission. 56 Ill. Admin. Code §2520.490 (d). Although the IDHR also gave her the option of filing a civil suit (Voigt Aff. at ¶6, Ex. E), that is not a remedy that is authorized by

---

[1] Before the EEOC, the aggrieved individual is referred to as the charging party.

Firm:45835545v9

4

CAU Removal 000030

either the Illinois Human Rights Act or its implementing regulations, and this court does not have jurisdiction over Plaintiff's claim.

A plaintiff must first exhaust administrative remedies and only then does the statute authorize a civil suit. 775 ILCS 5/7A-102(A)(3). Long standing legal principles dictate that an aggrieved person cannot sue in the courts for employment discrimination without first exhausting the administrative remedies set forth in the Illinois Human Rights Act. *See e.g.,* *Dilley v. Americana Healthcare Corp.,* 129 Ill.App.3d 537, 540, 472 N.E.2d 596, 599 (4th Dist. 1984); *Thakkar v. Wilson Enterprises, Inc.,* 120 Ill.App.3d 878, 882-83, 458 N.E.2d 985, 988 (1st Dist. 1983). An individual "aggrieved by the action of an administrative agency, such as the Human Rights Commission,[2] ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to them." *Castaneda v. Illinois Human Rights Com.,* 132 Ill. 2d 304, 308, 547 N.E.2d 437, 439 (1989).

In *Castaneda,* the court held that to allow judicial review of a decision of a three member panel of the Illinois Human Rights Commission without the aggrieved party filing an application for rehearing thwarted the purposes of the exhaustion doctrine. *Id.* at 323.. *See also Children's Mem. Hosp. v. Ill. Dep't Corr.,* 61 Ill. Ct. Cl. 234, 237 (2009) (action must be dismissed with prejudice for failure to exhaust remedies where claimant failed to timely pursue an action against an alternative source); *Hansen v. State of Ill.,* 52 Ill. Ct. Cl. 437, 439, 1999 Ill. Ct. Cl. LEXIS 51, *2 (1999) (failure to exhaust remedies against other tortfeasor requires dismissal); *Lyons v. State of Illinois,* 34 Ill. Ct. Cl. 268, 271 (1981) (claimant's failure to sue

---

[2] The Illinois Human Rights Commission is the companion agency to the Illinois Department of Human Rights. While the IDHR's primary function is to investigate charges of discrimination, the Commission's primary task is to adjudicate claims of discrimination. 775 ILCS 5/8-102(G).

Firm:45835549v9

CAU Removal 000031

construction companies before suing the state indicated he failed to exhaust his administrative remedies). The *Castaneda* court also pointed out a provision of the Administrative Review Law that states if "an administrative decision has become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed* * * such decision shall not be subject to judicial review" except for questioning jurisdiction. *Id.* at 320..

A variety of reasons supports the exhaustion doctrine: (1) it allows the agency to fully develop and consider the facts; (2) it allows the agency to utilize its expertise; (3) it allows the aggrieved party to succeed, making judicial review unnecessary; (4) it protects agency processes from avoidable interruptions; (5) it allows the agency to correct its own errors; and (6) it conserves valuable judicial resources by avoiding piecemeal appeals. *Id.* *See also Robinson v. Village of Oak Park*, 2013 IL App. (1st[t]) 121220, P7, 990 N.E.2d 251, 255 (1st Dist. 2013) (court must determine whether plaintiff timely exhausted all of her administrative remedies in order to determine whether it has jurisdiction); *Ill. HMO Guar. Ass'n. v. Shapo*, 357 Ill. App. 3d 122, 133, 826 N.E.2d 1135, 1145 (1st Dist. 2005) (cannot seek review in the counts without pursuing all administrative remedies).

Plaintiff has forfeited any right to pursue her claim by not timely providing the EEOC determination to the IDHR. In so doing, she has failed to exhaust her administrative remedies. All of the evils the exhaustion doctrine is intended to curb occur as a result. The IDHR has not had a chance to develop the facts and to use its expertise. This hardly serves to conserve scarce judicial resources.

Firm:45835549v9

CAU Removal 000032

The Illinois Human Rights Act also provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." *Castaneda*, 132 Ill. 2d at 322, citing Ill. Rev. Stat. 1987, Ch. 68, par. 8-111(C).   Plaintiff's current complaint was not filed in accordance with the requirement of the Act.   Allowing the Plaintiff in this case to obtain a hearing *de novo* on the merits of her case, without first timely requesting and obtaining an IDHR investigation, would allow claimants to thwart the agency procedures merely by asking the IDHR to review an EEOC finding in an untimely manner. Surely, the legislature could not have intended such an absurd result.   Thus, the complaint in this case should be dismissed pursuant to section 2-619(a)(1) and (9) of the Code of Civil Procedure, 735 ILCS 5/2-619, because of Plaintiff's failure to exhaust her administrative remedies.   *See, e.g., Klinkner v. DuPage,* 331 Ill. App. 3d 48, 50-52, 770 N.E.2d 734, 735-737 (2nd Dist. 2002) (dismissing retaliatory failure to rehire claim for failure to exhaust administrative remedies); *Goldberg v. Rush University,* 371 Ill. App. 3d 597, 600, 309 Ill. Dec. 197, 201 (1st Dist. 2007) (dismissal under section 2-619 for failure to exhaust the grievance procedure).

II. **Plaintiff's Complaint Also Should Be Dismissed Pursuant To Illinois Supreme Court Rule 103(b) Because She Failed To Timely Serve Defendant With The Complaint and Summons.**

Even if plaintiff had exhausted her administrative remedies and her claim was properly before the Court, her complaint should still be dismissed because she failed to timely serve Defendant with the complaint and summons.

Pursuant to Illinois Supreme Court Rule 103(b), if a plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of

CAU Removal 000033

(dismissing pursuant to Rule 103(b) where "the plaintiff's conduct in the case...in effect, extended the statute of limitations and thereby abridged Rule 103(b).")

Plaintiff has failed to show any justification for her delay in effectuating proper service to CAU prior to the expiration of the statute of limitations. Plaintiff's lack of knowledge regarding the Sheriff's requirements does not constitute an unusual circumstance that hindered her ability to serve CAU, as such information would have been easily ascertainable. In any event, all of her attempts to serve CAU occurred after the statute of limitations had already expired. *See, e.g., Long v. Elborno*, 376 Ill. App. 3d 970, 980 ("delay, even when inadvertent and unintentional, provides no support for [plaintiff's] position because the reasonable diligence requirement in Supreme Court Rule 103(b) is not based upon a subjective test of plaintiff's intent but rather upon the objective test of reasonable diligence in effectuating service."); *Emrikson v. Morfin*, 2012 IL App (1st) 111687, *17 (1st Dist. 2012) ("[i]n the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal.")

Even putting aside the fact that the statute of limitations had expired prior to Plaintiff serving CAU with the complaint and summons – which, alone, justifies dismissal -- Plaintiff hasn't shown that she otherwise exercised reasonable diligence in serving CAU under Rule 103(b). Plaintiff appears to argue that the duration between filing a complaint and serving it is dispositive as to whether a plaintiff has exercised reasonable diligence. However, even in the case she most heavily relies on, *Segal v. Sacco,* the court weighed several other factors in determining whether the plaintiff exercised reasonable diligence, such as the inadvertent nature of the delay, the plaintiff's activities during the delay, and the effect of the delay on the applicable statute of limitations. *Segal,* 136 Ill.2d at 287-288.

8

CAU Removal 000034

Likewise, in the *Kole*, *Emrikson*, and *Long* cases cited by CAU in its Motion, the courts made clear that the duration of the delay is only one factor in the analysis and that the plaintiff's activities during the delay and knowledge of the defendant's whereabouts during that period are just as relevant. *See, e.g., Emrikson*, 2012 IL App (1st) at *22 ("what troubled the court was not the time that elapsed between service and filing, but plaintiff's activities during that time, when considered in light of the ease of locating defendant and plaintiff's own knowledge of defendant's location."); *Kole v. Brubaker*, 325 Ill. App. 3d 944, 950-951 (1st Dist. 2001) (focusing on plaintiff's knowledge of defendant's whereabouts and finding that plaintiff's "idleness" during the delay was not a proper excuse justifying lack of service); *Long*, 376 Ill. App. 3d at 980-982 (dismissing based on several factors other than duration of delay that indicated lack of reasonable diligence). Thus, Plaintiff's apparent conclusion that a 48 day delay between filing and serving is, *per se*, reasonable under Rule 103(b) is simply incorrect.

Lastly, Plaintiff seems to be arguing that her suit should not be dismissed pursuant to Rule 103(b) because CAU had received a file-stamped copy of the complaint (without the summons) 24 days after it was filed. However, such a factor is not dispositive. *Karpiel v. LaSalle Nat'l Bank*, 119 Ill. App. 2d 157, 161 (2d Dist. 1970) ("[a]ctual knowledge of the suit on the part of defendants will not prevent [dismissal pursuant to Rule 103(b)]."); *Emrikson*, 2012 IL App (1st) 111687 at *27 (neither knowledge of pendency of suit nor lack of prejudice to defendant preclude a trial court from finding lack of reasonable diligence). And, as stated above, none of Plaintiff's attempts to contact or serve CAU, including her emailing a file-stamped complaint without the summons, occurred within the statute of limitations. Plaintiff made no effort to effectuate proper service *before* the statute of limitations had run and there were no impediments to doing so. Allowing

9

CAU Removal 000035

Plaintiff's suit to continue would unreasonably protract the statute of limitations and thwart the very purpose of Rule 103(b).  Thus, Plaintiff's complaint should be dismissed with prejudice on this basis.

**CONCLUSION**

WHEREFORE, Plaintiff's complaint should be dismissed with prejudice pursuant to section 2-619 of the Code of Civil Procedure for failure to exhaust her administrative remedies, for lack of jurisdiction and for failure to exercise reasonable diligence to serve Defendant with the complaint and summons prior to the expiration of the applicable statute of limitations.

COMMUNITY ALTERNATIVES UNLIMITED

By:    /s/ Julie Badel
One of its attorneys

Julie Badel
Michelle Marks
Attorney for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com
Attorney ID #18494

10

CAU Removal 000036

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that she served a copy of the foregoing memorandum

of law via U.S. mail and email this 11th day of July 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

11

CAU Removal 000037

# EXHIBIT A

CAU Removal 000038

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2017-02387 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Michelle Abraham** | | **1972** |

RECEIVED EEOC

| Street Address | City, State and ZIP Code |
|---|---|
| **611 E. Ironwood Drive, Mount Prospect, IL 60056** | MAR 3 2017 |

CHICAGO DISTRICT OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **COMMUNITY ALTERNATIVES UNLIMITED** | **101 - 200** | **(773) 867-3000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **8765 West Higgins, Chicago, IL 60631** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
                        01-31-2017

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or before November 2, 1999. My most recent position was Program Manager. During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent. Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny. I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Mar 03, 2017          _X Michelle S. A_<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT A

CAU Removal 000039

# EXHIBIT B

CAU Removal 000040



ILLINOIS DEPARTMENT OF

# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

RECEIVED

MAY 0 4 2017

COMMUNITY
ALTERNATIVES UNLTD.

May 1, 2017

Ms. Michelle Abraham
611 East Ironwood Drive
Mt. Prospect, IL 60056

Re: CASE NO:  Michelle Abraham vs. Community Alternatives Unlimited #170428007

Dear Complainant:

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. After the EEOC issues its findings, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's

findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

**By Mail:**    Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to:  Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:**  Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings.  Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings.  Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. This process does not affect the investigation of your charge at EEOC. If you do not wish to proceed with the Department, you do not need to take any further action.

This letter does not apply to any settlement of this charge the parties have made with the EEOC.

If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.

ILLINOIS DEPARTMENT OF HUMAN RIGHTS.

RE1_EEOC 30 Rev 4/17

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463

CC:

Community Alternatives Unlimited
8765 West Higgins
Chicago, IL 60631

**EXHIBIT B**

CAU Removal 000041

# EXHIBIT C

CAU Removal 000042

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Michelle Abraham<br>611 E. Ironwood Drive<br>Mount Prospect, IL 60056 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 440-2017-02387 | Eva Baran,<br>Investigator | | (312) 869-8023 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____ Julianne Bowman _____ 6/2/17

Julianne Bowman,
District Director

(Date Mailed)

Enclosures(s)

cc: **COMMUNITY ALTERNATIVES UNLIMITED**
c/o Julie Badel
Epstein Becker Green
227 West Monroe Street #3250
Chicago, IL 60606

EXHIBIT C

# EXHIBIT D

CAU Removal 000044

ILLINOIS DEPARTMENT OF

# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

October 12, 2017                                          **RESPONDENT'S COPY**

MICHELLE ABRAHAM
**C/O RUTH IRENE MAJOR, MEMBER**
LAW OFFICES OF RUTH I. MAJOR
30 WEST MONROE STREET, SUITE 1650
CHICAGO, IL  60603 – 2436

RE:     Charge No.:  **2017CR3337**
        Respondent:  **COMMUNITY ALTERNATIVES UNLIMITED**

Complaint or Civil Action Filing Dates:  **6/3/2018  through  8/31/2018**

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ('EEOC') investigated by the Illinois Department of Human Rights ('IDHR') under the Illinois Human Rights Act.  IDHR has received a copy of EEOC's determination and your request for the Department to investigate.  A copy of the charge has been served on the Respondent.  Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge.  If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition.  If we do not have copies of these documents in your file, we have included copies with this notice.

1)      Verification of Disability.
Please give the Verification of Disability form to your physician for completion.  Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)      Consent form.
The consent form allows IDHR to review your physician's documentation.  Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge.  It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned. IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge.  IDHR's investigation time may be extended if you and Respondent agree in writing.

**EXHIBIT D**

CAU Removal 000045

PAGE 2

If IDHR does not complete the investigation of your case by timely issuing its report of findings, you may either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court within 90 days after the expiration of the 365 days (or the extended time). We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Human Rights Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside this 90-day period, your complaint or civil action may be deemed untimely and dismissed.

Once 455 days (365 days [or the extended time] plus 90 days) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Human Rights Commission, or commenced a civil action in the appropriate court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. Please also serve a copy of your complaint on the EEOC: 500 West Madison Street, Suite 2000, Chicago, IL 60661 – 2592. If you file a complaint with the Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

SB1122 IN-6 Non-Med
CR/SR
4/17

# EXHIBIT E

CAU Removal 000047

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss |
| COUNTY OF COOK | ) |

FILE NO (S) 2017CR3337

## AFFIDAVIT OF SERVICE

Janice L. Woods-Wills, deposes and states that she served a copy of the

attached **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** on each person

named below by depositing same this 21ST day of November, 2017, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*Janice L. Woods-Wills*

Janice L. Woods-Wills

## PLEASE NOTE:

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the finding in this case, you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

EXHIBIT E

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | Michelle Abraham | **IDHR No.:** | 2017CR3337 |
| **Respondent:** | Community Alternatives Unlimited | **EEOC No.:** | 440-2017-02387 |

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR    **Date:** 10/25/17

**Issue/Basis:**                                    **Finding:**

A. Harassment/race, black
B. Placed on performance plan/retaliation
C. Constructive discharge/race, black
D. Constructive discharge/retaliation

    A. Lack of Jurisdiction
    B. Lack of Jurisdiction
    C. Lack of Jurisdiction
    D. Lack of Jurisdiction

## Jurisdiction:

| | | |
|---|---|---|
| Alleged violations: | A.-D.: | 1/31/17 |
| Charge filed: | | 3/3/17 |
| Charge perfected: | | 6/2/17 |
| Number of employees: | | 101-200 |

## Findings

On March 3, 2017, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On May 1, 2017, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On September 8, 2017, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

CAU Removal 000049

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                              )

MICHELLE ABRAHAM,                             )
                                               )
                    COMPLAINANT,              )        CHARGE NO.  2017CR3337
                                               )        EEOC NO.    440-2017-02387
AND                                            )
                                               )
COMMUNITY ALTERNATIVES                         )
  UNLIMITED,                                   )
                                               )
                    RESPONDENT.               )

## NOTICE OF DISMISSAL
## FOR LACK OF JURISDICTION

Ruth Major                              Julie Badel
Attorney at Law                         Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650               227 West Monroe-Suite 3250
Chicago, Illinois 60603                 Chicago, Illinois 60606


DATE OF DISMISSAL:  November 21, 2017

1.      YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT jurisdiction to pursue the allegations of the charge.  Accordingly, pursuant to
Section 7A-102(D) of the Human Rights Act, Illinois Compiled Statutes, (775 ILCS 5/3-
101 et. seq.) and the Rules and Regulations of the DHR (56 Ill. Adm. Code. Chapter II,
Section 2520.560), the charge is HEREBY DISMISSED.

   2.      If Complainant disagrees with this action, Complainant may:

   a) seek review of this dismissal before the Illinois Human Rights Commission,
      100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
      "Request for Review" with the Commission by the request for review filing
      date below.  Respondent will be notified by the Human Rights Commission if
      a Request for Review is filed.

   REQUEST FOR REVIEW FILING DEADLINE DATE: **February 26, 2018**

CAU Removal 000050

NOTICE OF DISMISSAL FOR LACK OF JURISDICTION
2017CR3337
Page Two

Or,

b)      commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice.  A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.** The Appellate Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch V. Department of Transportation</u>, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.


**Please note that the Department cannot provide any legal advice or assistance.  Please contact legal counsel, your city clerk, or your county clerk with any questions.**


3.      If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.


DEPARTMENT OF HUMAN RIGHTS


HB 1509/HB59/NOD/LOJ
12/10

CAU Removal 000051

Appearance and Jury Demand*  (1/20/17) CCG N009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY _____ DEPARTMENT/ Chancery ___ DISTRICT

MICHELLE ABRAHAM,
_____

                                    Plaintiff

                    v.

COMMUNITY ALTERNATIVES UNLIMITED
_____

                                    Defendant

No. 18-CH-02497

Claimed $: _____

Return Date: _____

Time: _____

Court Date: _____

Room No.: _____

50 W. Washington St., Chicago, IL 60602
Address of Court District for Filing

### APPEARANCE AND JURY DEMAND*

☒ General Appearance      ☒ 0900 - Fee Paid                           ☐ 0904 - Fee Waived
                          ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand*            ☐ 1900 - Appearance and Jury Demand/Fee Paid      ☐ Twelve-person Jury
                          ☐ 1904 - Appearance and Jury Demand/Fee Waived    ☐ Six-person Jury

The undersigned enters the appearance of:   ☐ Plaintiff     ☒ Defendant
COMMUNITY ALTERNATIVES UNLIMITED
_____
(Insert Litigant's Name)

Signature

☒ Initial Counsel of Record   ☐ Pro Se (Self-represented)   2810 ☐ Rule 707 Out-of-State Counsel (pro hac vice)
☐ Additional Appearance       ☐ Substitute Appearance

☒ Atty. No.:  18494           ☐ Pro se  99500

Name:  Julie Badel

Atty. for:  Defendant, Community Alternatives Unlimited

Address:  Epstein Becker Green, P.C., 227 W. Monroe St., #3250

City/State/Zip:  Chicago, Illinois 60606

Telephone:  312-499-1418

Primary Email:  jbadel@ebglaw.com

Secondary Email: _____

Tertiary Email: _____

> **Important**
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

<u>Pro Se Only:</u>  ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____
*Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

_____
Attorney for  ☐ Plaintiff  ☐ Defendant

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

CAU Removal 000052

Appearance and Jury Demand*            (1/20/17) CCG N009

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
_____ COUNTY _____ DEPARTMENT/ Chancery \_\_\_\_\_ DISTRICT

MICHELLE ABRAHAM,

                                    Plaintiff

v.

COMMUNITY ALTERNATIVES UNLIMITED

                                 Defendant

No. 18-CH-02497

Claimed $:

Return Date:

Time:

Court Date:

Room No.:

50 W. Washington St., Chicago, IL 60602
Address of Court District for Filing

### APPEARANCE AND JURY DEMAND*

■ General Appearance    ■ 0900 - Fee Paid                        ❏ 0904 - Fee Waived
                   ❏ 0908 - Trial Lawyers Appearance - No Fee

❏ Jury Demand*      ❏ 1900 - Appearance and Jury Demand/Fee Paid     ❏ Twelve-person Jury
                   ❏ 1904 - Appearance and Jury Demand/Fee Waived    ❏ Six-person Jury

The undersigned enters the appearance of:    ❏ Plaintiff      ■ Defendant
COMMUNITY ALTERNATIVES UNLIMITED

                           (Insert Litigant's Name)

                                        *Signature*

■ Initial Counsel of Record   ❏ Pro Se (Self-represented)   2810   ❏ Rule 707 Out-of-State Counsel (pro hac vice)
❏ Additional Appearance    ❏ Substitute Appearance

■ Atty. No.: 18494        ❏ Pro se 99500

Name: Michelle G. Marks

Atty. for: Defendant, Community Alternatives Unlimited

Address: Epstein Becker Green, P.C., 227 W. Monroe St., #3250

City/State/Zip: Chicago, Illinois 60606

Telephone: 312-499-1440

Primary Email: mgmarks@ebglaw.com

Secondary Email: _____

Tertiary Email: _____

> *Important*
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

<u>Pro Se Only</u>: ❏ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____
*Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                                       Attorney for   ❏ Plaintiff   ❏ Defendant

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

                                                 CAU Removal 000053

**IN THE CIRCUIT COURT 0F COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT—CHANCERY DIVISION**

*ABRAHAM* )
)
*V.* )
) *2018 - CH - 02497*
)
*COMMUNITY ALTERNATIVES* )
*UNLIMITED* )
)
)

## ORDER FOR BRIEFING SCHEDULE

This matter coming to be heard on Plaintiff's/~~Defendant~~'s Motion ~~for~~ *TO*
*DISMISS PLAINTIFF'S COMPLAINT*, the court sets the following briefing schedule:

Movant shall file a memorandum in support by _____ *N/A* _____

Response brief shall be filed by _____ *JUNE 20, 2018* _____

Reply brief shall be filed by _____ *JULY 11, 2018* _____

This matter is set for ~~status~~/hearing at *10:00* a.m., on *JULY 26, 2018*.

Courtesy copies, including briefs, deposition transcripts and most recent complaint relied upon, shall be delivered five (5) business days in advance. It is the movant's responsibility to provide the Court with a full set of briefs. Brief shall: (1) contain official case citations, (2) contain separately tabbed exhibits, and (3) not exceed fifteen (15) pages. Support for the requested relief cannot be raised initially in the Reply.

*THE JUNE 20, 2018 STATUS DATE*
*IS STRICKEN.*

Judge Kathleen Pantle          JUDGE KATHLEEN M. PANTLE-1775

**ENTERED**
JUDGE KATHLEEN M. PANTLE
**MAY 16 2018**
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Atty No.: *45037*
Name: *THE LAW OFFICES OF RUBE MAAR, P.C.*
Attorney for Plaintiff/Defendant: *PLAINTIFF*
Address: *20 N. WABASH ST, SUITE 1680*
City/Zip: *CHICAGO, IL 60003*
Telephone: *(312) 893-7644*

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 17
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018 CH 02497 |
| | ) | |
| COMMUNITY ALTERNATIVES | ) | Honorable Judge Kathleen M. Pantle |
| UNLIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO SECTION 2-619 OF THE CODE OF CIVIL PROCEDURE

**Dated:** June 20, 2018

Respectfully submitted,

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

CAU Removal 000055

Plaintiff, Michelle Abraham, by and through her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Response to Defendant's Motion to Dismiss the Complaint Pursuant to Section 2-619 of the Code of Civil Procedure, states as follows:

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 2 of 17

## INTRODUCTION

Michelle Abraham was employed by Defendant Community Alternatives Unlimited ("CAU") for over 17 years. (Plaintiff's Complaint, a copy of which is attached hereto as Exhibit A, at ¶¶ 1, 9, 36, 49). In March 2016, after receiving periodic promotions and being held in high regard by her co-workers for years, she was suddenly placed on a Performance Improvement Plan ("PIP"), for the first time in 17 years, just days after reporting certain of her co-workers and supervisors were making racially discriminatory, sexist, anti-Semitic, and homophobic comments and treating African-American workers less favorably than other workers. (Id. at ¶¶ 1, 9-21, 40-41). Throughout the PIP process, she was bullied and the PIP was extended repeatedly. (Id. at ¶¶ 1, 21-31, 42-45). Following her successful completion of the PIP, Abraham was denied the opportunity to have a year-end evaluation (for the first time in 17 years) and to obtain a raise at the beginning of 2017 (for the first time in 17 years). (Id. at ¶¶1, 32-35,.46-48). She was harassed continuously from the time she reported her concerns until the time of her constructive discharge in retaliation for reporting unlawful discrimination in her workplace, in violation of the Illinois Human Rights Act, 775 ILCS § 5/2-101, *et seq.* ("IHRA"). (Id. *passim*). On March 3, 2017, well within the 180-day time limit imposed by the IHRA for filing a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR"), Abraham dual-filed her Charge with the Equal Employment Opportunity Commission ("EEOC") and the IDHR. (Id. at ¶¶ 2, 37; *see* attachments to September 8, 2017 letter from Plaintiff's counsel to the IDHR, a copy of which is attached hereto as Exhibit B; Affidavit of Michelle Abraham attached hereto as Exhibit C, ¶ 2). The EEOC

CAU Removal 000056

issued her the right to sue on or around June 2, 2017, and she received that determination in early June 2017. (Ex. B; Ex. C, ¶ 3). Shortly thereafter, she was advised by the EEOC that the investigation was being reopened. (Ex. C, ¶ 4). Abraham followed up with the EEOC seeking written confirmation of the reopening of the investigation but received no response. (Id). Abraham then retained counsel, and her counsel provided the EEOC's determination to the IDHR on September 8, 2017. (Ex. B; Ex. C, ¶ 4). The IDHR's Notice of Dismissal for Lack of Jurisdiction (hereinafter "Notice of Dismissal") to Abraham was received on November 27, 2017 (a copy of which is attached hereto as Exhibit D), granting Abraham the right to either (i) seek review of the IDHR's decision with the Illinois Human Rights Commission ("IHRC") or (ii) file a lawsuit in Court in relation to these claims, within 90 days of her receipt of the Notice from the IDHR. (Ex. D). Abraham timely filed her Complaint on February 23, 2018, which was within 90 days of her receipt of the Notice of Dismissal. (Exs. A, D).

     Before the Complaint was filed, Abraham's counsel was in contact with counsel for CAU about possible settlement of the claims which would later be included in the Complaint. (Affidavit of Ruth I. Major, attached hereto as Exhibit E, ¶ 3). When it was determined that no settlement was likely before the expiration of the 90-day deadline for filing the lawsuit according to the Notice received from the IDHR, Abraham elected to file her lawsuit, and then to continue to attempt settlement negotiations with counsel for CAU. (Id. at ¶ 4). She sent the file-stamped Complaint to Defendant's agent via email first on March 19, 2018, and, after settlement discussions proved unsuccessful, she again served on Defendant, via that same registered agent, within 48 days after it was filed with this Court, as the Summons was returned, indicating service was executed, on April 12, 2018. (Ex. E, ¶ 5; Affidavit of Daniel R. Broadwell, attached hereto as Exhibit F, ¶ 3).

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 17

2

Nevertheless, Defendant has filed a Motion to Dismiss pursuant to 735 ILCS 5/2-619, alleging that Abraham failed to exhaust her administrative remedies as required by the IHRA, and that Abraham was required to serve Defendant with the Summons and Complaint prior to the expiration of her time to file the lawsuit, or by February 26, 2018. Defendant's Motion to Dismiss should be denied, for two reasons. First, Defendant's position on exhaustion of administrative remedies misses the mark because Defendant relies on caselaw that pre-dates the 2008 Amendment to the Illinois Human Rights Act which specifically allowed, for the first time, for IHRA claims to be filed in the circuit courts (hereinafter the "2008 Amendment"). Every published decision since the 2008 Amendment addressing facts similar to those here has held that the plaintiff may proceed on the IHRA claims. Second, Abraham timely served CAU via its registered agent according to Illinois Supreme Court Rule 103 in that the registered agent for Defendant received the file-stamped copy of the Complaint via email within 24 days of the filing of the complaint, and received the second copy of the same file-stamped copy of the Complaint via service by the Cook County Sheriff just 24 days thereafter, establishing due diligence by Plaintiff and no prejudice to Defendant. For those reasons, CAU's Motion to Dismiss should be denied.

## STANDARD OF REVIEW

In reviewing a Section 2-619 motion, the pleadings and supporting materials must be interpreted in "the light most favorable to the plaintiff." *R.L. Vollintine Constr., Inc. v. Illinois Capital Dev. Bd.*, 2014 IL App (4th) 130824, ¶ 23.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 4 of 17

CAU Removal 000058

## ARGUMENT

I.      **Defendant Erroneously Relies on Caselaw That Relies on IHRA Employment Discrimination and Retaliation Claims Brought Before the 2008 Amendment to the IHRA Provided Jurisdiction to the Circuit Courts.**

Defendant incorrectly argues that this Court lacks jurisdiction over Abraham's claims because Defendant overlooks the effect of the 2008 Amendment to the Illinois Human Rights Act. "The Illinois legislature amended the [Illinois Human Rights] Act in 2008 to give original jurisdiction over IHRA claims to the Illinois Human Rights Commission as well as the circuit courts of Illinois." *De v. City of Chicago*, 912 F.Supp. 2d 709, 731 (N.D. Ill. 2012) (*citing* 775 ILCS 5/7A-102(C)(4); 775 ILCS 5/7A-102(F)(2)). Before that time, "the Illinois Human Rights Commission had exclusive jurisdiction to hear claims brought under the IHRA." *Id.* (internal citations omitted). Currently, when a discrimination claim is brought under the IHRA within 180 days of the alleged discrimination, it can be filed in either the EEOC or the IDHR, and pursuant to a work share agreement between the two agencies, filing in one agency means that the claim is considered immediately filed in the other agency. *Laurie v. William M. BeDell Achievement Res. Ctr.*, No. 16-759-DRH-RJD, 2017 WL 1076940, *1, *3 (S.D. Ill. Mar. 22, 2017) (*citing* 775 ILCS 5/7A-102(A-1); *Kaimowitz v. Bd. of Trs. of the Univ. of Ill.*, 951 F.2d 765 (7th Cir. 1991)). "[T]he workshare agreement between the IDHR and the EEOC is essentially a contract apportioning jurisdiction between the two agencies." *Marlowe v. Bottarelli*, 938 F.2d 807, 812 (7th Cir. 1991). "The agreement is intended to minimize duplication of effort in the handling of deferred charges … and to achieve maximum consistency of purpose and results." *Sofferin v. American Airlines, Inc.*, 923 F.2d 552, 554 (7th Cir. 1991) (internal quotation omitted). Under the agreement, Illinois chose "to forego [its] statutory right to initially process employment discrimination claims" under 42 U.S.C. § 2000e-5(c). *Hong v. Children's Memorial Hosp.*, 936 F.2d 967, 969 (7th Cir. 1991).

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 5 of 17

4

The IDHR then defers the initial processing of charges of discrimination in employment to the EEOC to conduct the first investigation. *See id.* This amounts to the IDHR "ceding its jurisdictional prerogative to the EEOC." *Kaimowitz*, 951 F.2d at 767 (*citing Hong*, 936 F.2d at 971). In the interest of preserving resources, then, and instead of conducting two separate investigations, the EEOC takes the lead and conducts the initial investigation, while the IDHR awaits its determination, before either conducting its own, or more typically, before endorsing the findings of the EEOC. *See Laurie*, No. 16-759-DRH-RJD, 2017 WL 1076940 at *3 (citing 775 ILCS 5/7A-102(G)(1)). Defendant here contends that Plaintiff could not proceed with her claim under the IHRA because the Notice of Dismissal stated the IHRA did not have jurisdiction, but the notice was addressing whether the IDHR had jurisdiction to conduct the second investigation (which it could have if Plaintiff requested the second investigation within 30 days of receiving the EEOC Right to Sue), not whether the circuit court had jurisdiction to adjudicate Plaintiff's retaliation claims. Indeed, the Notice of Dismissal specifically states that Plaintiff may commence an action in the appropriate circuit court.

There is no published opinion by any state court addressing this issue presented here after the 2008 Amendment, but there are numerous federal court decisions after the 2008 Amendment addressing the exact issue under the IHRA and each federal court has ruled against Defendant's position on the law. In *Laurie*, the seminal case on this issue, the EEOC conducted its investigation on a dual-filed charge but the IDHR did not conduct a second investigation (just like here). *Id.* at *1-*2. The IDHR then issued a Dismissal for Lack of Jurisdiction (just like here). *Id.* The court explained that the IDHR's lack of jurisdiction does not impact on the issue of whether the circuit courts have jurisdiction to adjudicate the claims, explaining that the 2008 Amendment to the IHRA:

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 6 of 17

5

> now authorizes Illinois courts to assert original jurisdiction over IHRA claims. [775 ILCS] §§ 5/7A-102(C)(4), (D)(3); *See also Scott v. City of Kewanee*, No. 1:13-cv-01292-SLD, 2014 WL 1302025 at *4 (C.D. Ill. March 28, 2014) ("The City fails to acknowledge the 2008 IHRA amendment and the consensus of courts holding that the IHRA now permits federal courts to exercise original jurisdiction over IHRA claims in the absence of a final order from the IHRC."); *Goldberg v. Chicago Sch. for Piano Tech.*, No. 14 C 1440, 2015 WL 468792 at *3 (N.D. Ill. Feb. 3, 2015); *De v. City of Chicago*, 912 F.Supp.2d 709, 731-32 (N.D. Ill. 2012) ("The Illinois legislature amended the Act in 2008 to give original jurisdiction over IHRA claims to the Illinois Human Rights Commission as well as the circuit courts of Illinois").

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 7 of 17

*Id.* at *3. The court then used the above consensus among the courts, and the Notice of Dismissal's own language, which states that plaintiff could "commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice," to conclude that "Laurie's failure to obtain a final order on the merits does not immediately bar her from filing suit in court." *Id.* at *2, *4. Rather, the court held, after the 2008 Amendment took effect, Illinois courts have jurisdiction over IHRA claims "provided that the complainant shows that he or she filed a charge with the IDHR or EEOC and received an IDHR determination." *Id.* at *4. The court highlighted the fact that that in the same document in which the IDHR stated it lacked jurisdiction (the Notice of Dismissal), the IDHR also notified Laurie she "had the right to sue in the appropriate circuit court within 90 days." *Id.* And, as provided for in the IHRA itself, "[t]he notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court.... If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice." *Id.*; 775 ILCS 5/7A-102(C)(4). The Notice of Dismissal for Lack of Jurisdiction that Laurie received from the IDHR contained that information, and Laurie timely filed her complaint in court within 90 days of her receipt of that Notice, and as a result, the court found that she satisfied the exhaustion requirement under the IHRA. *Id.*

6

In the *Goldberg* case, cited approvingly by the *Laurie* court, the plaintiff's Charge of Discrimination was dismissed for lack of jurisdiction, and when he received the notice from the IDHR stating that he could appeal to the IHRC or file the case in court, he filed a court case. *Goldberg*, No. 14 C 1440, 2015 WL 468792 at \*1-\*2. That court rejected the defendant's argument that the dismissal by the IDHR for lack of jurisdiction controlled whether the court had jurisdiction, stating that the argument by defendants lacked "common sense," explaining:

> if the Department's dismissal prohibited other courts from exercising jurisdiction over claims under the IHRA, the Department would not, in its notice of dismissal, inform complainants of their right to bring an action in circuit court. The court rejects the proposition that a determination made by a state administrative body, within a scheme that allows for judicial review, limits the court's jurisdiction.

*Id.* at \*4.

Abraham's case is on all fours with the *Laurie* matter. Abraham timely filed her Charge of Discrimination with the EEOC and the IDHR under the 2008 Amendment to the IHRA. (Ex. A, ¶¶ 2, 37; Ex. B; Ex. C, ¶ 2). Pursuant to the work sharing agreement between those two agencies, the EEOC conducted the initial investigation. The IDHR received the EEOC determination and it issued the Notice of Dismissal for Lack of Jurisdiction without conducting a second investigation. (Exs. B, D). The Notice of Dismissal noted that she could either ask the IHRC to review the dismissal of the Charge by the IDHR, or could file a civil action in the circuit court, which she did within 90 days of her receipt of the Notice from the IDHR, as required by the IHRA, just as was the case in *Laurie*. (*See* Ex. D). As pointed out by the *Goldberg* court, the IDHR's Notice would not have stated that filing a court case was an option if the courts would lack jurisdiction to hear the claim. Rather, as a result of the 2008 Amendment, Abraham's retaliation claim is exactly the sort of claim which can be filed in the circuit court, since the IHRC no longer has the exclusive original jurisdiction of such claims. Under very similar circumstances, the *Laurie* court found that

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 8 of 17

7

CAU Removal 000062

the plaintiff there exhausted the administrative remedies, and this Court should likewise find that Abraham did as well.

The cases cited by Defendant in its Motion to Dismiss do not provide a basis for this Court to determine that Abraham failed to exhaust her administrative remedies because, as discussed *supra*, she did exhaust her administrative remedies. The vast majority of Defendant's cited cases were decided before the 2008 Amendment took effect on January 1, 2008. *See Dilley v. Americana Healthcare Corp.*, 129 Ill. App. 3d 537 (4th Dist. 1984); *Thakkar v. Wilson Enter., Inc.*, 120 Ill. App. 3d 878 (1st Dist. 1983); *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304 (1989); *Hansen v. State of Illinois*, 52 Ill. Ct. Cl. 437 (1999); *Lyons v. State of Illinois*, 34 Ill. Ct. Cl. 268 (1981); *Illinois Health Maint. Org. Guar. Ass'n v. Shapo*, 357 Ill. App. 3d 122 (1st Dist. 2005); *Klinkner v. County of DuPage*, 331 Ill. App. 3d 48 (2d Dist. 2002); *Goldberg v. Rush Univ. Med. Ctr.*, 371 Ill. App. 3d 597 (1st Dist. 2007). Those decisions have not been relied upon in a single published decision by any Illinois court since the passage of the 2008 Amendment for any proposition that would support an argument that Abraham didn't exhaust her administrative remedies, because she did. As a result, those decisions did not evaluate the current version of the IHRA which includes the 2008 Amendment, and their holdings are inapplicable to the facts here, where Abraham exhausted her administrative remedies under the IHRA by timely filing her Charge of Discrimination with the IDHR, and by obtaining the Notice of Dismissal from the IDHR which provided that her claims could be raised either before the IHRC or in the appropriate circuit court.

Defendant devotes considerable time to the *Castaneda* decision, but that reliance is misplaced because the facts before the Court there, in setting a pre-2008 Amendment standard for the exhaustion of administrative remedies, are wholly distinguishable from the facts of *Laurie* and

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 9 of 17

8

indeed, of Abraham's case. *See Castaneda*, 132 Ill. 2d at 307-09. As an initial matter, *Castaneda* involved the evaluation of exhaustion of administrative remedies under a completely different statute, the Administrative Review Law. *Id.* at 321. There, the Court decided to apply a common law exhaustion principle to actions filed for administrative review of an agency decision. *Id.* Moreover, in that case, the plaintiff brought a charge of discrimination before the IHRC, which dismissed his case. *Id.* at 307-09. The plaintiff then filed the case in court, because he was "aggrieved by the action of an administrative agency," without obtaining a document from the IHRC granting him the right to do so. *Id.* In order to obtain an order from the IHRC that was final and appealable in court, he had to petition for an *en bloc* rehearing before the Commission. *Id.* In failing to submit that petition for *en bloc* rehearing, the Court determined that the plaintiff failed to exhaust his administrative remedies according to what the Illinois legislature intended to include in the Administrative Review Law. *Id.* at 307-09, 321. According to the version of the IHRA in effect in 1989, before seeking administrative review of the IHRC's decision on Charge of Discrimination filed with the state agency, by obtaining a final and appealable order that could be brought to the court, there would need to be a hearing before a three-member panel from the IHRC, and then an *en bloc* hearing. *Id.* at 309. However, as discussed *supra*, under the 2008 Amendment to the IHRA, once Abraham received the Notice of Dismissal for Lack of Jurisdiction, which by its own terms provided Abraham with the option seeking review of the dismissal before the IHRC or proceeding to file a complaint in court, she was entitled to file her complaint in court within 90 days, as she did. (*See* Ex. D). Defendant's President and Chief Executive Officer, Joanell Voigt, even admits that Abraham was provided with leave to file her claim in court in the Notice of Dismissal. (See Affidavit of Joanell Voigt, attached to Defendant's Motion to Dismiss, ¶ 6).

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 10 of 17

9

Abraham was not required to follow the same process as Castaneda, as is reflected in the current version of the IHRA and the cases interpreting the effects of the 2008 Amendment.

For the remaining cases cited by Defendant which were decided after the passage of the 2008 Amendment, they too are inapposite because the issues in those cases were so different from those before the Court here. One such case was filed in the Illinois Court of Claims, not a circuit court, and involved a contract claim against the Illinois Department of Corrections, not a discrimination claim filed under the IHRA. *See Children's Mem'l Hosp. v. Illinois Dep't of Corr.*, 61 Ill. Ct. Cl. 234 (2009). There, the court was evaluating whether administrative remedies had been exhausted in a way that would satisfy the Illinois Court of Claims Act, which is a statute that is in no way connected to Abraham's case. *See id.* at 235-36. Additionally, Defendant cited to another case in which the court determined that the plaintiff had exhausted her administrative remedies under the IHRA where she obtained a decision from the IHRC and then timely filed her complaint in the circuit court. *Robinson v. Vill. of Oak Park*, 2013 IL App (1st) 121220, ¶¶ 5-6, 8. Of note in *Robinson*, the First District of the Illinois Appellate Court found that the plaintiff exhausted her administrative remedies when she timely filed a complaint in court within the 90-day period afforded by the dismissal notice issued by the IHRC (*id.* at ¶ 5), which is very similar to Abraham filing her complaint within the 90-day period provided by the notice she received from the IDHR.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 11 of 17

II. **Defendant's Argument That Service was Untimely Ignores the Language of Rule 103(b) Which Specifically Requires the "Totality of the Circumstances" be Considered, and the Supreme Court's Decision in *Segal v. Sacco*, Which Holds That the Purpose Underlying Supreme Court Rule 103(b) Must Guide the Analysis.**

Illinois Supreme Court Rule 103(b) requires the court to consider the "totality of the circumstances" in deciding whether service was timely. Ill. Sup. Ct. R. 103(b) (emphasis added).

CAU Removal 000065

In *Segal v. Sacco*, the Illinois Supreme Court set forth factors to assist with determining diligence under Rule 103(b):

> (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant.

136 Ill. 2d 282, 287 (1990) (internal citations omitted). The Supreme Court explained that the policy underlying Rule 103(b) must guide the analysis of the factors. *Id.* The Court described the basic policy of Rule 103(b) as being "to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible." *Id.* at 286 (internal quotation omitted). Under Rule 103(b), Defendant must first "make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence in effectuating service after filing suit," and then the burden would shift to the plaintiff to explain how she was reasonably diligent despite any delay. *Kole v. Brubaker*, 325 Ill. App. 3d 944, 949-50 (1st Dist. 2001) (internal citation omitted). Here, Defendant cannot even make that prima facie showing, because the purpose of Rule 103(b) was not thwarted in this case.

In *Segal*, the Supreme Court determined that the purpose of Rule 103(b) was satisfied, and affirmed the decision of the appellate court to overturn the circuit court's decision to grant the defendants' Section 2-619 motion to dismiss because the defendants were not denied the chance to investigate the plaintiff's claims through an inadvertent failure to serve the defendants until 19 weeks after the complaint was filed. *Segal*, 136 Ill. 2d at 285, 287-88. There, the "delay of 19 weeks did not threaten the circuit court's ability to proceed expeditiously to a just resolution of the matter before it." *Id.* at 288 (internal quotation omitted). Additionally, the delay of 19 weeks "did not continue[] long after the expiration of the statute of limitations" because the complaint was

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 12 of 17

11

CAU Removal 000066

filed on the day before the statute limitations would have run, and the defendant was served 19 weeks later. *Id.* at 284, 288 (internal quotation omitted).

Similarly, here, the purpose of Rule 103(b)—to prevent the circumvention of statutes of limitations, which are in place to allow defendants to investigate the claims made against them—was satisfied by Plaintiff's service on Defendant, and Defendant cannot make its *prima facie* showing that Plaintiff wasn't reasonably diligent. Defendant here had and continues to have the opportunity to investigate, as Defendant received the file-stamped Complaint 24 days after it was filed and then again when service was accomplished by the Cook County Sheriff on April 12, 2018, which was under 7 weeks after the Complaint was filed on February 23, 2018. (Ex. E, ¶ 5; Ex. F, ¶ 3). After the Complaint was filed, Plaintiff's counsel attempted to discuss settlement with Defendant's counsel, and when that proved unsuccessful, Plaintiff then attempted to have the Sheriff formally serve Defendant on March 20, 2018, but the Sheriff's Department did not accept the Summons because it was set to expire on March 25, 2018. (Ex. E, ¶ 5; Ex. F, ¶ 4). Plaintiff was notified that the Sheriff's Department required more than 5 days to serve the Defendant via its registered agent, whose office was less than a mile from the Sheriff's Department Office. (Ex. F, ¶ 4-5). The very next day, March 21, 2018, Defendant responded that it was not interested in settlement at that time, so Plaintiff proceeded to obtain an Alias Summons on March 23, 2018, and delivered it to the Sheriff's Department with the Complaint, to be served upon Defendant that same day. (Ex. E, ¶ 6; Ex. F, ¶ 6). Service was subsequently accomplished by the Sheriff on April 12, 2018—24 days after the Complaint had been provided to Defendant's counsel and registered agent via email, and a total of 48 days after the Complaint was filed. (Ex. F, ¶ 3). Under those circumstances, a duration of 48 days between the filing of the Complaint and the second and

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 13 of 17

12

CAU Removal 000067

official service of the Summons and Complaint on Defendant's registered agent does not thwart the purpose of Rule 103(b).

Applying the *Segal* factors yields the same result. The <u>first</u> factor is the length of time to obtain service of process. Again, in *Segal*, 19 weeks was not considered to be too much time to accomplish service. 136 Ill. 2d at 287-88. Likewise, under the circumstances discussed *supra*, a duration of less than 7 weeks was of a similarly short duration. (Ex. F, ¶ 3). The <u>second</u> factor is the activities of the plaintiff. Here, Plaintiff's activities weigh more heavily in her favor than in *Segal* where the plaintiff inadvertently forgot to serve the defendants for 19 weeks, while here, the Complaint was provided to Defendant's registered agent and counsel approximately 3 weeks after filing, as part of an ongoing attempt to settle the matter and eliminate the need for the Court to adjudicate this matter, and service of process by the Sheriff was accomplished approximately 3 weeks after that. (Ex. E, ¶¶ 4-5; Ex. F, ¶ 3). The <u>third</u> and <u>fourth</u> factors, plaintiff's knowledge of defendant's location and the ease of determining defendant's whereabouts, respectively, can be combined, because Plaintiff was aware of Defendant's location, and the location of Defendant's registered agent did not impact the timing of the service by the Sheriff. (Ex. F, ¶¶ 4-5). The <u>fifth</u> factor is the actual knowledge of the defendant of the pending case as a result of ineffective service. In *Segal*, the plaintiff believed the defendants were aware of the case because they worked in the office that normally served defendants in civil cases. 136 Ill. 2d at 288. Here, Plaintiff knows Defendant was aware of the case because the file-stamped Complaint was provided to the registered agent roughly 3 weeks after filing. (Ex. E, ¶¶ 4-5). The <u>sixth</u> factor is whether any special circumstances affected Plaintiff's efforts. Here, the special circumstances were that Plaintiff did not know that providing the Summons and Complaint to the Sheriff's Department on March 20, 2018, 5 days before the Summons was set to expire, would not be sufficient time to attempt service

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 14 of 17

CAU Removal 000068

on a registered agent located less than a mile from the Sheriff's Department. (Ex. F, ¶¶ 4-5). Had Plaintiff known of that, the Summons would have been delivered to the Sheriff's Department earlier. (Id. at ¶ 5). However, upon learning that the Sheriff's Department would require more time, an Alias Summons was obtained and provided to the Sheriff's Department 3 days later, on March 23, 2018, and service was then accomplished by the Sheriff less than 3 weeks later. (Id. at ¶¶ 3, 6). The seventh factor is actual service on Defendant, which as stated *supra* was accomplished less than 7 weeks after the Complaint was filed. (Id. at ¶ 3). Therefore, based upon the factors outlined in *Segal*, this Court should reject Defendant's argument that Plaintiff's claim should be dismissed in this matter.

The cases cited by Defendant are all distinguishable from the facts here, because they all involved far longer time periods between the filing of the complaints and accomplishing service on the defendants, and service in those matters was unjustifiably delayed by the plaintiffs. In *Lewis v. Dillon*, the plaintiff did not even issue the summonses in a medical malpractice case until 5 months after the complaint was filed, and later stated that he *intentionally* delayed service until after he submitted the statutorily-required report from a doctor attesting to the medical basis for his claims. 352 Ill. App. 3d 512, 514-15 (1st Dist. 2004). But he submitted that report nearly two full months before issuing the summonses. *Id.* at 514. In *Kole*, the defendants were not served until 9 months after the complaint was filed, and the plaintiff failed to explain why it took over 7 months to have an alias summons issued. 325 Ill. App. 3d at 949-50. The time between filing the complaint and service was 7 months in *Emrikson v. Morfin*, and it was even longer—13 months—if the court did not exclude from its calculation the lengthy period where the parties were arguing over a motion to quash service on the defendant's sister, which was eventually granted. 2012 IL App (1st) 111687, ¶ 18. Additionally, the plaintiff in *Emrikson* was delayed in serving the defendant in a

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 15 of 17

14

motor vehicle accident case because of her extensive attempts to determine the address of the defendant, but none of those attempts involved consulting the accident report which contained the defendant's correct address. *Id.* at ¶¶ 4, 9. In another case involving a supposed difficulty in obtaining a report from a doctor to support a medical malpractice action, the appellate court determined that a 7-month delay between the filing of the complaint and the service of the defendant showed a lack of reasonable diligence, where the plaintiff's attorney also missed the initial case management conference and failed to deliver the summons and complaint to the sheriff for over 6 months. *Long v. Elborno,* 376 Ill. App. 3d 973, 979-80 (1st Dist. 2007). In the cases cited by Defendant, the durations of the delays in accomplishing service were a minimum of twice as long as the delay here, and the surrounding circumstances in those cases supported findings that the plaintiff failed to exercise reasonable diligence, while the facts here indicate nothing of the sort. For those reasons, this Court should find that Plaintiff exercised reasonable diligence in serving Defendant in this matter.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 16 of 17

## CONCLUSION

For the foregoing reasons, Plaintiff, Michelle Abraham, respectfully requests that the Court deny Defendant's Motion to Dismiss the Complaint Pursuant to Section 2-619 of the Code of Civil Procedure in its entirety, or alternatively, grant Ms. Abraham leave to amend her Complaint.

**Dated**: June 20, 2018

Respectfully submitted,

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

15

CAU Removal 000070

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2018, I caused **Plaintiff's Response to Defendant's Motion to Dismiss the Complaint Pursuant to Section 2-619 of the Code of Civil Procedure** to be filed with the Clerk of Court and emailed notification of said filing to all parties listed below:

Julie Badel
Michelle Marks
Epstein Becker Green P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois 60606
Phone: (312) 499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com

/s/ Daniel R. Broadwell

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 17 of 17

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

16

CAU Removal 000071

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 15
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT A

CAU Removal 000072

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| COMMUNITY ALTERNATIVES | ) |
| UNLIMITED, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 2 of 15

## COMPLAINT

NOW COMES Plaintiff, Michelle Abraham, by her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Complaint against Defendant, Community Alternatives Unlimited ("CAU"), states as follows:

### INTRODUCTION

1.      Ms. Abraham was employed by CAU for over 17 years, until she was constructively discharged in or around December 2016. She was well-regarded by her co-workers and was promoted periodically within the company. In March 2016, she was suddenly placed on a Performance Improvement Plan ("PIP"), just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU. Throughout the PIP process, she was bullied and subjected to treatment that her co-workers who had not reported discriminatory conduct did not receive and the PIP was extended repeatedly. Following her successful completion of the PIP, Ms. Abraham was denied the opportunity to have a year-end evaluation and was therefore denied the ability to obtain a raise at the beginning of 2017. Under these circumstances, she was harassed continuously from the time she reported her

concerns until the time of her constructive discharge in retaliation for reporting racial, gender, and sexual orientation discrimination in her workplace, in violation of the Illinois Human Rights Act, 775 ILCS § 5/2-101, *et seq.*

2.     On March 3, 2017, Ms. Abraham filed a Charge of Discrimination against CAU with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") for the racial discrimination[1] and retaliation she was subjected to by CAU.

3.     The IDHR issued Notice of Dismissal to Ms. Abraham on November 21, 2017, granting Ms. Abraham to right to file a lawsuit in relation to these claims.

**PARTIES**

4.     Ms. Abraham is a resident of the State of Illinois.

5.     Defendant CAU is a not-for-profit company incorporated in Illinois in 1980, providing services to individuals with disabilities, with its principal place of business in Chicago, Illinois. At all times material to this Complaint, CAU was an employer within the definition of the IHRA, 775 ILCS § 5/2-101(B).

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over this matter as each party to the Complaint is a citizen of Illinois or, in the case of CAU, is a corporation doing business in Illinois, organized under the laws of the State of Illinois. 735 ILCS §5/2-209.

7.     Plaintiff has exhausted her administrative remedies, as required by the IHRA, 775 ILCS § 5/1-101 *et seq.* This lawsuit was timely filed within 90 days of Plaintiff's receipt of the Notice of Dismissal issued by the IDHR and received on November 27, 2017.

ELECTRONICALLY FILED
8/29/2018 3:36 PM
2018-CH-02497
PAGE 2 of 15

---

[1] Ms. Abraham contends that her only claim was retaliation, and that she had not intended to file a racial discrimination claim, though one was included in the state and federal agencies' proceedings.

2

CAU Removal 000074

8.      Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and 735 ILCS § 5/2-102 because part of the transaction out of which the cause of action arose took place within Cook County, Illinois, and because CAU is considered a resident of Cook County, Illinois, through being authorized to transact business in Illinois and doing business in Cook County. Ms. Abraham's work was largely performed in Cook County and CAU's retaliatory acts took place in Cook County as well.

**FACTS**

9.      Ms. Abraham was hired by CAU on or around November 2, 1999 as a case manager. In that role, she typically managed about 75 cases at a time, dealing with disabled individuals and their families to assist them in procuring the needed medical and social services, and was routinely assigned time- and labor-intensive cases which were too difficult for other case managers to handle. All of her performance evaluations, when she received formal performance evaluations, were positive. Her work was initially performed in dealing with individuals who were living in group homes, as part of the Bogard unit at CAU.

10.      When the Bogard unit's staff was decreased due to a declining case load, Ms. Abraham was transferred to the Community department at CAU, where she continued in her role as a case manager. Ms. Abraham was deemed valuable to the company and was told her skill set meant that she would work well in the same role, just in another department. The Community department integrated individuals with developmental disabilities within their communities to obtain needed services and involved a lot of one-on-one contact between the case managers and the clients, which Ms. Abraham was used to from her work on the time- and labor-intensive cases from the Bogard unit.

ELECTRONICALLY FILED
8/28/2018 3:36 PM
2018-CH-02497
PAGE 3 of 14

3

CAU Removal 000075

ELECTRONICALLY FILED
8/28/2018 3:36 PM
2018-CH-02497
PAGE 5 of 15

11.     In 2001, she was transferred to the Individual Service and Support Advocacy Unit ("ISSA"), which assisted in providing services for people with intellectual disabilities. There she performed case management work for CAU clients who received services that were funded through Medicaid. In this role, Ms. Abraham continued to receive positive performance reviews, up through the time she applied and received for a promotion to manager in 2007.

12.     In 2007, she was promoted to the position of Program Manager for ISSA. She worked in that role for nearly a decade. She was known as a strong advocate for her clients, would supervise the work of the case managers in the Department, and wrote performance evaluations for the people she supervised. She also participated in interviews for new hires in the Department and trained new hires in how to perform work for the ISSA. She served as a resource when the people she supervised needed assistance with their cases and was frequently the go-to person when complicated issues arose. Ms. Abraham held small group meetings at least once per month to manage her staff. She continued to receive positive performance reviews from her supervisors in this role as well.

13.     In 2009, she was transferred to Home Based Services ("HBS"), where she performed the Program Manager role in that department, performing the same tasks. In this position, she reported to HBS Department Director, Jennifer Rutka. Though Ms. Rutka insisted that everyone's performance reviews note areas in which an employee could improve, every year, Ms. Abraham still received positive performance reviews, even in her first review completed after moving to HBS, where she had double the workload of other Program Managers for the two-month period when she was transitioning between the ISSA and HBS Departments.

14.     It was in her time as Program Manager in HBS that Ms. Abraham began to hear racially discriminatory, sexist, anti-Semitic, homophobic commentary from her co-workers and

CAU Removal 000076

especially from her supervisor, Ms. Rutka, who was known for being rude when speaking about people who didn't do things in the exact way she wanted them to, commonly referring to such situations as involving people who would not "comply." Ms. Abraham kept her thoughts and feelings about these remarks to herself out of concern that reporting such conduct would not be well taken. She simply continued to supervise her staff, and advocate for her clients' best interests.

15.     Upon information and belief, these comments were not limited to Ms. Abraham's Department, HBS, as CEO Joanell Voigt would comment that she hoped a homosexual employee would not impact the office bathroom situation in any way "because that is ridiculous," and would ask how a homosexual employee could "expect us to respect him" given certain wardrobe choices the employee had supposedly made.

16.     Upon information and belief, Ms. Voigt was known for making fun of employees or other individuals she suspected of being homosexuals, and for denying the African-American employees the chance to telecommute, while other non-African-American employees had that option. The telecommuting option was supposed to be seniority-based, but the African-American employees were skipped over when it was their turn to be given the telecommuting option.

17.     On or around March 17, 2016, Ms. Abraham was approached by the HR Director, Ms. Biermann, who said Ms. Abraham was due for a training session. Rather than training, however, the session consisted of Ms. Biermann asking Ms. Abraham numerous questions about HBS over the course of an approximately three-hour long meeting. The "training" meeting appeared to be a ruse to give Ms. Biermann the opportunity to gather information about Ms. Abraham.

18.     Though she initially was hesitant to engage in the discussion, Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her co-

ELECTRONICALLY FILED
8/28/2018 3:36 PM
2018-CH-02497
PAGE 6 of 15

5

CAU Removal 000077

workers and supervisors when speaking about clients and their families. Ms. Rutka specifically commented on a homosexual man who worked with CAU that he was nice, but sometimes she preferred to work with "a man's man." On another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to "Jew us down." Ms. Abraham also shared that such comments were made about others within CAU, as part of the instructions supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress. Finally, she shared that Ms. Rutka in the past engaged in retaliatory conduct and that Ms. Abraham would not participate in such conduct.

19.    Upon information and belief, following this meeting, Ms. Biermann reported the substance of her conversation with Ms. Abraham to others at the same level as the HR Director within CAU.

20.    The very next day, during a managers' meeting that Ms. Abraham attended, Ms. Rutka baited Ms. Abraham into a discussion about the comments Ms. Abraham made to Ms. Biermann the day before and about paperwork Ms. Abraham was supposedly behind in completing. Ms. Abraham stated that she would be caught up on the paperwork within two weeks. The discussion then became very emotional between Ms. Abraham and Ms. Marlene Russo, Ms. Abraham's intermediate supervisor, because Ms. Russo was screaming at Ms. Abraham. Eventually, after Ms. Abraham broke into tears, Ms. Rutka ended the meeting.

21.    On or around March 21, 2016, less than one week after Ms. Abraham reported the unlawful discriminatory conduct of CAU, Ms. Abraham was called into a meeting in the HR office, attended by Ms. Rutka, Ms. Russo, and Ms. Biermann. Ms. Rutka stated that Ms. Abraham was

ELECTRONICALLY FILED
8/28/2018 3:30 PM
2018-CH-02497
PAGE 6 of 14

6

being placed on a PIP, and then immediately asked if she was going to resign. When Ms. Abraham said she wouldn't resign, the meeting continued with Ms. Biermann stating that they would proceed with the PIP. Ms. Rutka remarked that she did not want to "waste time" with the PIP if Ms. Abraham "was going to quit in two weeks."

22.     During the course of the multiple-hour meeting about the PIP, Ms. Abraham was subjected to harsh commentary about the supposed deficiencies with her work, deficiencies which had never been expressed to Ms. Abraham before this meeting. She asked questions to clarify what was being communicated to her about her role, because the information provided in association with the PIP so greatly deviated from the standard operating procedures of CAU, which she had been using for over 15 years at that time, and which she had been following when she received all of her positive performance reviews in years past.

23.     In response to her clarifying questions, Ms. Abraham was rudely asked whether she had any common sense and condescending questions such as, "you've been a manager for how long?" She was informed that Ms. Rutka thought staff should not be coming to Ms. Abraham to ask questions if Ms. Abraham doesn't know the answers to their questions, and if not, then "how can [she] manage?" She was also informed that CAU was questioning whether she could be trusted in her Program Manager role in HBS.

24.     The PIP itself addressed supposed problems which were in fact ongoing issues that were commonly encountered in case management work by all employees working in this area, including issues related to completing the voluminous paperwork involved in case management, and which typically would not have merited placing someone on a PIP. When Ms. Abraham had needed to speak to a case manager she supervised about similar issues in the past, she would address the issues with the employee, and would not place the employee on a PIP. Ms. Abraham

ELECTRONICALLY FILED
8/20/2018 3:30 PM
2018-CH-02497
PAGE 8 of 15

7

CAU Removal 000079

had never heard of anyone at CAU being placed on a PIP for issues such as the ones raised in her PIP.

25. The PIP also placed unrealistically short time frames on the completion of the objectives of the PIP, especially in consideration of the fact that the PIP demanded Ms. Abraham deviate from the standard operating procedures she had been using for over 15 years.

26. These deadlines were known to be extreme by others at CAU. Ms. Abraham overheard other senior managers speaking one day about the deadlines imposed for the completion of her paperwork. The senior managers were concerned that CAU might hold them to the same standards, and they were commenting that they did not know how they would get their paperwork done if the same deadlines that were imposed on Ms. Abraham were to be imposed on their work.

27. Within a few days of receiving the PIP, Ms. Abraham began to receive calls from her clients and their families, who reported that they had been called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do.

28. One such called was placed to the Executive Director of an agency HBS worked with, whose child was among the individuals Ms. Abraham assisted with services. The Executive Director mentioned that he told whoever called that Ms. Abraham did wonderful work, and that he was surprised to have received such a call because Ms. Abraham was doing great work for his child.

29. The PIP was supposed to run for thirty days, after which Ms. Abraham's performance would be reevaluated to determine if she had met the goals set by the PIP. Instead, the PIP period was extended multiple times, so that it actually ran for 90 days. Each time the PIP was extended, new false complaints about Ms. Abraham's performance were added, in an apparent

ELECTRONICALLY FILED
8/28/2018 3:30 PM
2018-CH-02497
PAGE 8 of 15

8

attempt to convince her to stop fighting the PIP and to just resign, as Ms. Rutka had suggested in the initial PIP meeting in March 2016.

30.     While on the PIP, Ms. Abraham was subjected to extreme scrutiny, as she was informed that her "comings and goings" were being monitored by her supervisors, implying that they were keeping her under surveillance while she was at work. She also had her files audited and re-audited, sometimes through multiple managers reviewing the same files over and over again, examining aspects of the files that dated back several months, to dates before the PIP period began.

31.     During the PIP period, Ms. Abraham frequently worked late into the evening, sometimes as late as 11:00 p.m., to try to complete all of her paperwork and meet the unrealistic deadlines the PIP provided for the completion of her work. Because Ms. Abraham was salaried, she was not paid any overtime for the extra hours she worked to accomplish the requirements set for her in the PIP.

32.     In June 2016, Ms. Abraham was deemed to have successfully completed the PIP.

33.     However, Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with, the people they believed she might confide in, and asked these people questions about her personal life, outside of work, in an attempt to harass her and dig up any information they could use to push her out of the company.

34.     Following the completion of the PIP, Ms. Abraham was accused multiple times of demanding a promotion, something she never did. She was also threatened that she would be demoted.

35.     As the end of 2016 approached, CAU refused to provide Ms. Abraham with an annual performance review, which meant that she could not receive a raise in 2017. Instead of conducting a performance review, CAU stated that the PIP took the place of an annual performance

ELECTRONICALLY FILED
8/28/2018 3:36 PM
2018-CH-02497
PAGE 19 of 105

9

review, even though the PIP was *successfully* completed in June, and half of the year still remained at the time that the PIP was completed. Ms. Biermann stated that this should be acceptable to Ms. Abraham because annual reviews only encouraged managers to discuss negative aspects of an individual's performance, despite the fact that Ms. Abraham's prior annual performance reviews had been positive up to that point in time.

36.     Under these circumstances, Ms. Abraham went to work every day because she loved her work and enjoyed working with and for her clients. She was subjected to extreme stress and emotional distress on a daily basis, though, through CAU's treatment of her. Though it was difficult to leave the career she had built over the course of 17 years, Ms. Abraham was subjected to such conditions in her everyday life at CAU that she eventually resigned in December of 2016 because it was obvious that CAU would continue to engage in conduct designed to force her to resign her position. She provided 30 days of notice to ease the transition of her clients to other staff at CAU. Not surprisingly, CAU made no effort to talk Ms. Abraham into staying.

37.     Finally, after she learned that Ms. Abraham had filed a Charge of Discrimination related to her encounters with CAU, Ms. Biermann contacted Ms. Abraham and suggested that she would be taking leave from her position at CAU because she had come to experience similar retaliation for looking into the complaint made by Ms. Abraham and the statements shared by Ms. Abraham in the March 2016 meeting.

## COUNT I – UNLAWFUL RETALIATION FOR OPPOSING UNLAWFUL CONDUCT, IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

38.     Plaintiff restates and realleges by reference paragraphs 1 through 37 as paragraph 38 of Count I.

39.     CAU is an employer as defined by the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*, which prohibits retaliation for opposing unlawful conduct.

10

ELECTRONICALLY FILED
8/28/2018 3:38 PM
2018-CH-02497
PAGE 10 of 14

ELECTRONICALLY FILED
8/28/2018 3:36 PM
2018-CH-02497
PAGE 12 of 15

40.     Ms. Abraham engaged in activity that is protected by the Illinois Human Rights Act when she reported to HR the racist, sexist, anti-Semitic, and homophobic conduct and statements of her co-workers in her Department.

41.     CAU placed Ms. Abraham on a PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to convince her to resign. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to similar unfavorable terms and conditions in employment as Ms. Abraham designed to force her to resign.

42.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

43.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had their clients and clients' families called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

44.     Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance

11

CAU Removal 000083

deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had PIPs which were supposed to last for thirty days but were extended to the point that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

45.    Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

46.    Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to mistreatment by their supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

ELECTRONICALLY FILED
8/20/2018 3:30 PM
2018-CH-02497
PAGE 13 of 15

12

CAU Removal 000084

47. Ms. Abraham was falsely accused of demanding a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were falsely accused of demanding a promotion or threatened that they would be demoted.

48. Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act was denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

49. Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

50. As a direct and proximate result of the Defendant's conduct, Ms. Abraham has suffered damages, including but not limited to, pain and suffering, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

**WHEREFORE** Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A. An award of damages for lost wages, including back pay and front pay;

ELECTRONICALLY FILED
8/29/2018 3:36 PM
2018-CH-02497
PAGE 13 of 14

13

CAU Removal 000085

B.    An award of compensatory damages including pain and suffering and emotional distress;

C.    An award of pre-judgment interest;

D.    An award of punitive damages;

E.    Attorneys' fees and costs; and

F.    Such other and further relief as may be just in law and in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

ELECTRONICALLY FILED
8/20/2018 3:36 PM
2018-CH-02497
PAGE 15 of 15

**Dated**: February 23, 2018

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

CAU Removal 000086

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 4
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT B

CAU Removal 000087

MajorLaw

THE LAW OFFICES OF RUTH I. MAJOR P.C.

30 W. MONROE STREET, SUITE 1650

CHICAGO, ILLINOIS 60603

OFFICE: 312.893.7544

FAX: 312.698.9867

September 8, 2017

**VIA ELECTRONIC &**
**CERTIFIED MAIL**

Thomas Roeser
Illinois Department of Human Rights
100 West Randolph Street
10th Floor
Chicago, Illinois 60601
Tom.roeser@illinois.gov

      **Re:**   **Michelle Abraham v. Community Alternatives Unlimited**
              **EEOC Charge No. 440-2017-02387**

Dear Mr. Roeser:

      Ms. Michelle Abraham dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on March 3, 2017, opting to have the EEOC take the lead on the investigation. Ms. Abraham recently received a Right to Sue Letter from the EEOC (which is attached, along with a copy of the Charge of Discrimination). Ms. Abraham has since been advised that the EEOC reopened her Charge of Discrimination for further review and is awaiting the determination. In the meantime, she requests that the IDHR issue a Notice of Dismissal and Order of Closure so she can pursue her claims under the Illinois Human Rights Act. Please direct the Notice of Dismissal and Order of Closure to my attention. We are unsure if this request is premature given that the EEOC Charge has been reopened.

      Thank you for your consideration.

                    Sincerely,

                    Ruth I. Major
                    Email: rmajor@major-law.com

RIM/iz
cc:   Michelle Abraham (*via email*)

PAGE 2 of 4
2018-CHP-02307
6/20/2018 3:35 PM
ELECTRONICALLY FILED

CAU Removal 000088

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Michelle Abraham<br>611 E. Ironwood Drive<br>Mount Prospect, IL 60056 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2017-02387 | Eva Baran,<br>Investigator | (312) 869-8023 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[  ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[  ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[  ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_Julianne Bowman_                                    6/2/17

**Julianne Bowman,**                              (Date Mailed)
**District Director**

Enclosures(s)

cc:   **COMMUNITY ALTERNATIVES UNLIMITED**
c/o Julie Badel
**Epstein Becker Green**
227 West Monroe Street #3250
Chicago, IL 60606

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 4

CAU Removal 000089

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2017-02387 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Michelle Abraham | | 1972 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 611 E. Ironwood Drive, Mount Prospect, IL 60056 | | |

RECEIVED EEOC
MAR 3 2017
CHICAGO DISTRICT OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COMMUNITY ALTERNATIVES UNLIMITED | 101 - 200 | (773) 867-3000 |
| Street Address City, State and ZIP Code | | |
| 8765 West Higgins, Chicago, IL 60631 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |
| Street Address City, State and ZIP Code | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest Latest 01-31-2017 |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or before November 2, 1999. My most recent position was Program Manager. During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent. Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny. I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Mar 03, 2017 _____ X Michelle S. A _____ Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

PAGE 4 of 4
2018-CH-02497
6/20/2018 3:35 PM
ELECTRONICALLY-FILED

CAU Removal 000090

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018 CH 02497 |
| | ) | |
| COMMUNITY ALTERNATIVES | ) | Honorable Judge Kathleen M. Pantle |
| UNLIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>AFFIDAVIT OF MICHELLE ABRAHAM</u>

State of Illinois      )

County of Cook      )

I, Michelle Abraham, being first duly sworn on oath, and based on personal knowledge and under penalty of perjury, state as follows:

1.    I am over the age of 18 and fully competent to testify to the facts herein.

2.    On March 3, 2017, I filed a Charged of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") to submit my retaliation claim to both agencies. In that Charge of Discrimination, I claimed that my former employer, Community Alternative Unlimited ("CAU") retaliated against me for opposing the unlawful and discriminatory conduct of my co-workers and superiors at CAU.

3.    I received a Right to Sue letter from the EEOC in early June 2017, which dismissed my Charge of Discrimination in that agency.

4.      Shortly after receiving that letter from the EEOC, the EEOC advised me that the agency was re-opening the investigation into my charge. I requested written confirmation that the investigation was being reopened repeatedly but never received any response. After the agency failed to respond to those requests for several months, I retained counsel to represent me in this matter.

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.


Executed on June 20, 2018 in _My Prxt_   Illinois.

FURTHER AFFIANT SAYETH NOT

_Michelle L. A_____

Michelle Abraham

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 3

CAU Removal 000093

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 7
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT D

CAU Removal 000094

STATE OF ILLINOIS      )
                       ) ss
COUNTY OF COOK     )                   FILE NO (S) 2017CR3337

## <u>AFFIDAVIT OF SERVICE</u>

Janice L. Woods-Wills, deposes and states that she served a copy of the

attached **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** on each person

named below by depositing same this 21ST day of November, 2017, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted FIRST CLASS

MAIL, addresses as follows:

RECEIVED NOV 27 2017

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*Janice L. Woods Wills*

Janice L. Woods-Wills

## <u>PLEASE NOTE:</u>

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the finding in this case, you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 2 of 7

CAU Removal 000095

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                     )
                                      )
MICHELLE ABRAHAM,                     )
                                      )
                COMPLAINANT,          )         CHARGE NO.  2017CR3337
                                      )         EEOC NO.    440-2017-02387
AND                                   )
                                      )
COMMUNITY ALTERNATIVES                )
  UNLIMITED,                          )
                                      )
                RESPONDENT.           )

## NOTICE OF DISMISSAL
## FOR LACK OF JURISDICTION

Ruth Major                          Julie Badel
Attorney at Law                     Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650           227 West Monroe-Suite 3250
Chicago, Illinois 60603             Chicago, Illinois 60606


DATE OF DISMISSAL:  November 21, 2017

1.      YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is NOT jurisdiction to pursue the allegations of the charge.  Accordingly, pursuant to Section 7A-102(D) of the Human Rights Act, Illinois Compiled Statutes, (775 ILCS 5/3-101 et. seq.) and the Rules and Regulations of the DHR (56 Ill. Adm. Code. Chapter II, Section 2520.560), the charge is HEREBY DISMISSED.

2.      If Complainant disagrees with this action, Complainant may:

a) seek review of this dismissal before the Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the Commission by the request for review filing date below.  Respondent will be notified by the Human Rights Commission if a Request for Review is filed.

REQUEST FOR REVIEW FILING DEADLINE DATE: **February 26, 2018**

ELECTRONICALLY FILED
2018-CH-02497
6/20/2018 3:35 PM
PAGE 3 of 7

CAU Removal 000096

NOTICE OF DISMISSAL FOR LACK OF JURISDICTION
2017CR3337
Page Two

Or,

b)      commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice.  A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.** The Appellate Courts in Watkins v. Office of the State Public Defender, ____ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch V. Department of Transportation, ____ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **In the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.).  Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance.  Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.      If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.

DEPARTMENT OF HUMAN RIGHTS

HB 1509/HB59/NOD/LOJ
12/10

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 4 of 7

CAU Removal 000097

STATE OF ILLINOIS
HUMAN RIGHTS COMMISSION

IN THE MATTER OF:                          )
                                           )
MICHELLE ABRAHAM,                          )
                                           )
                    COMPLAINANT,           )        CHARGE NO.  2017CR3337
                                           )        EEOC NO.    440-2017-02387
AND                                        )
                                           )
COMMUNITY ALTERNATIVES                     )
  UNLIMITED,                               )
                                           )
                    RESPONDENT.            )

## REQUEST FOR REVIEW

Ruth Major                              Julie Badel
Attorney at Law                         Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650               227 West Monroe-Suite 3250
Chicago, Illinois 60603                 Chicago, Illinois 60606


TO:  Ruth Major

DATE:  November 21, 2017

REQUEST FOR REVIEW FILING DEADLINE DATE:  **February 26, 2018**

    I hereby request that the Department of Human Rights' (DHR) dismissal of the charge be reviewed by the Illinois Human Rights Commission.

Complainant's Current Address (please print clearly):

_____Apt/Unit_____


City_____State_____Zip_____Phone (____) _____.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 5 of 7

CAU Removal 000098

**TO REQUEST INVESTIGATION FILE:**
The Department's investigation file may be reviewed or copied upon request once the Department's investigation is completed. The Department is not responsible for copy service fees. **A minimum of 3 business days' notice is required.** Call (312) 814-6262 to make arrangements.

**REQUEST FOR REVIEW INSTRUCTIONS:**
IN THE SPACE PROVIDED BELOW, YOU **MUST** LIST AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED. If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review. You may review your investigation file, to help you prepare your request by calling 312-814-6262 or 217-785-5100.

_____

_____


_____         _____
SIGNATURE                                                    DATE

**YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES, INCLUDING SUPPORTING DOCUMENTS, OF YOUR ENTIRE REQUEST AND SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:**

Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, IL  60601.

**Please note that pursuant to Section 5300.410 of the Commission's Procedural Rules, except by permission of the Commission, the request, argument and supporting materials shall not exceed 30 pages.**

**Further, note that pursuant to *56 Ill. Admin. Code § 5300.40(b)* of the Commission's Procedural Rules, all arguments in support of the Request for Review must be written on 8 ½ x 11 paper. Any argument submitted on non-conforming paper (such as a "post-it" note) will not be considered part of the Request for Review, and will be disregarded by the Commission.**

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
HB1509/HB59 HRC R/R 01/14

PAGE 6 of 7
2018-CH-02497
6/20/2018 3:35 PM
ELECTRONICALLY FILED

CAU Removal 000099

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

**Complainant:** Michelle Abraham     **IDHR No.:** 2017CR3337
**Respondent:** Community Alternatives     **EEOC No.:** 440-2017-02387
                Unlimited

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR     **Date:** 10/25/17

**Issue/Basis:**                        **Finding:**

A. Harassment/race, black            A. Lack of Jurisdiction
B. Placed on performance plan/retaliation    B. Lack of Jurisdiction
C. Constructive discharge/race, black      C. Lack of Jurisdiction
D. Constructive discharge/retaliation      D. Lack of Jurisdiction

**Jurisdiction:**

| | |
|---|---|
| Alleged violations: | A.-D.: 1/31/17 |
| Charge filed: | 3/3/17 |
| Charge perfected: | 6/2/17 |
| Number of employees: | 101-200 |

**Findings**

On March 3, 2017, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On May 1, 2017, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On September 8, 2017, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 7 of 17

CAU Removal 000100

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT E

CAU Removal 000101

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018 CH 02497 |
| | ) | |
| COMMUNITY ALTERNATIVES | ) | Honorable Judge Kathleen M. Pantle |
| UNLIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AFFIDAVIT OF RUTH I. MAJOR

State of Illinois          )

County of Cook          )

I, Ruth I. Major, being first duly sworn on oath, and based on personal knowledge and under penalty of perjury, state as follows:

1.    I am over the age of 18 and fully competent to testify to the facts herein.

2.    I one of the attorneys representing the Plaintiff, Michelle Abraham, in the above-referenced matter.

3.    Before filing Plaintiff's Complaint in the above-referenced matter, I was in contact with Julie Badel, one of Defendant's attorneys, to discuss possibly settling Ms. Abraham's claims without filing a lawsuit. The claims which were being discussed would later be included in Plaintiff's Complaint.

4.    Based on the date that our office, as counsel for Plaintiff, received the IDHR's Notice of Dismissal for Lack of Jurisdiction, which was November 27, 2017, Plaintiff's 90-day deadline to file a lawsuit was February 26, 2018. When settlement attempts did not seem likely

CAU Removal 000102

to resolve this matter between Plaintiff and Defendant by that time, Plaintiff chose to file her lawsuit on February 23, 2018, and then continue to attempt to settle the matter after filing.

5. I continued to try to settle the case after it was filed with the Circuit Court of Cook County by continuing discussions with Ms. Badel, who was also Defendant's registered agent for the service of process. I emailed Ms. Badel a copy of the file-stamped Complaint in this matter on March 19, 2018, which was 24 days after the Complaint was filed.

6. On March 21, 2018, Ms. Badel responded to my March 19 email, first by stating that she would speak to Defendant and get back to my office, and later by stating that Defendant was open to discussing its anticipated motion to dismiss, but not to discussing settlement at that time.

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Executed on June 19, 2018 in Chicago, Illinois.

FURTHER AFFIANT SAYETH NOT

_____
Ruth I. Major

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 3

CAU Removal 000103

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 6
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT F

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,                          )
                                           )
                    Plaintiff,             )
                                           )
         v.                                )    Case No. 2018 CH 02497
                                           )
COMMUNITY ALTERNATIVES                     )    Honorable Judge Kathleen M. Pantle
UNLIMITED,                                 )
                                           )
                                           )
                    Defendant.             )
                                           )

### AFFIDAVIT OF DANIEL R. BROADWELL

State of Illinois        )

County of Cook           )

    I, Daniel R. Broadwell, being first duly sworn on oath, and based on personal knowledge and under penalty of perjury, state as follows:

    1.    I am over the age of 18 and fully competent to testify to the facts herein.

    2.    I am one of the attorneys representing the Plaintiff, Michelle Abraham, in the above-referenced matter.

    3.    I monitored service on Defendant, via its registered agent, Julie Badel, and confirmed that the Cook County Sheriff's Department obtained service on Defendant on April 12, 2018, which was 48 days (and less than 7 weeks) after Plaintiff's Complaint was filed on February 23, 2018. That fact is also verifiable on the electronic docket for this matter, accessible via the website for the Clerk of the Circuit Court of Cook County. Service by the Sheriff on April 12, 2018 also occurred 24 days after Ruth Major, another attorney from our office, sent a copy of the Complaint to Ms. Badel via email on March 19, 2018.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 2 of 6

4.   Before service was accomplished, I attempted to have the originally issued Summons, which was dated February 23, 2018, the date Plaintiff's Complaint was filed, served upon Defendant via its registered agent's listed address at 227 West Monroe Street, Suite 3250, Chicago, Illinois 60606. On March 20, 2018, I delivered the requisite number of copies of the Summons and Complaint to the Cook County Sheriff's Department to have Defendant served, along with a check to pay the Sheriff's Department's fee for service. The Sheriff's Department informed me that it could not accept the documents to be served upon Defendant, because the Summons was set to expire 5 days later, on March 25, 2018.

5.   Until that March 20, 2018 discussion with the Sheriff's Department staff, I thought that the Sheriff's Department might be able to make an initial attempt at service using the original Summons, even though it was set to expire 5 days after the delivery date, because the registered agent's address was less than a mile from the Sheriff's Department's location at the Richard J. Daley Center, 50 West Washington Street, Room 702, Chicago, Illinois 60602. However, I was informed that more than 5 days are needed to make an initial attempt at service, due to the other matters which were due to be served before the documents I was delivering for this matter. I would have delivered the Summons and Complaint to the Sheriff's Department earlier if I had known that 5 days was insufficient time to attempt service.

6.   On March 22, 2018, I drafted the Alias Summons to be issued to Defendant's registered agent, and presented it to the Clerk's Office to be issued on March 23, 2018. After having the Alias Summons issued by the Clerk's Office, I delivered the requisite number of copies of the Alias Summons and Complaint, as well as the check for the service fee, to the Sheriff's Department on March 23. I am attaching a copy of the receipts obtained from both the Clerk's Office and the Sheriff's Department on March 23, 2018 to this Affidavit as Exhibit 1.

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 6

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed on June 19, 2018 in Chicago, Illinois.

FURTHER AFFIANT SAYETH NOT

Daniel R. Broadwell

CAU Removal 000107

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 5 of 6

# EXHIBIT 1

CAU Removal 000108

CLERK OF THE CIRCUIT COURT - COOK COUNTY
00042275 Chancery-01 3/23/2018 10:18AM
ATTY: 45837   141 DAVIDLA
AD DAMNUM:                    $0.00
CASE NO: 2018CH02497    CALENDAR: 15
COURT DATE: 0/0/0000 12:00AM
CASE TOTAL: $6.00
Alias Summons                 $6.00
CHECK NO: 2847
CHECK AMOUNT:                 $6.00
CHANGE                        $0.00

RECEIPT 0001 OF 0001
TRANSACTION TOTAL:            $6.00

              THANK YOU

COOK COUNTY SHERIFF'S OFFICE
CIVIL DIVISION - DALEY CENTER
50 W. Washington, Room 701
Chicago, IL 60602
(312) 603-3365

DATE: 3/23/2018         TIME: 10:23 AM
BATCH #: 56034          TRANS #: 10
CASHIER: joneal

CASE TYPE:  CHANCERY
SHERIFF #:  02721091
CASE #:  18CH02497
Check on Service after:   4/16/2018
General Service Fee                $50.00
General Mileage Fee                $10.00
       PAYMENT TOTAL:              $60.00

TRANSACTION TOTAL:                 $60.00

TENDERED:  Check                   $60.00

Checks presented:

NOW!!! Check ON-LINE for the status
of your Service of Process at
https://civilprocess.ccsheriff.org

When checking on service, have your
Sheriff's Number or Case Number Available

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 6 of 6

CAU Removal 000109

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018 CH 02497 |
| | ) | |
| COMMUNITY ALTERNATIVES | ) | Honorable Judge Kathleen M. Pantle |
| UNLIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING

TO:   Julie Badel
       Michelle Marks
       Epstein Becker Green P.C.
       227 West Monroe Street, Suite 3250
       Chicago, Illinois 60606
       Phone: (312) 499-1400
       jbadel@ebglaw.com
       mgmarks@ebglaw.com

**Please take notice** that on June 20, 2018, counsel for Plaintiff, Michelle Abraham, filed with the Clerk of the Circuit Court of Cook County **Plaintiff's Response to Defendant's Motion to Dismiss the Complaint Pursuant to Section 2-619 of the Code of Civil Procedure**, a true and correct copy of which is hereby served upon you.

Dated: June 20, 2018

Respectfully Submitted,

**MICHELLE ABRAHAM**

By: /s/ Ruth I. Major
       One of His Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 2 of 3

CAU Removal 000111

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2018, I caused the foregoing **Notice of Filing** for **Plaintiff's Response to Defendant's Motion to Dismiss the Complaint Pursuant to Section 2-619 of the Code of Civil Procedure** to be filed with the Clerk of Court and emailed notification of said filing to all parties listed below:

> Julie Badel
> Michelle Marks
> Epstein Becker Green P.C.
> 227 West Monroe Street, Suite 3250
> Chicago, Illinois 60606
> Phone: (312) 499-1400
> jbadel@ebglaw.com
> mgmarks@ebglaw.com

/s/ Daniel R. Broadwell

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 3

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

CAU Removal 000112

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2018-CH-02497** |
| | ) | **Calendar: 15** |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

2018 JUL 11 PM 3:23

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiff's complaint should be dismissed for failure to exhaust her administrative remedies, which is still required under the 2008 amendments to the Illinois Human Rights Act. She has cited no statutory provision that authorizes her to bring suit under the present circumstances. The complaint also should be dismissed because the IHRA does not authorize a civil suit under these facts and because Plaintiff failed to obtain service of summons on Defendant within the applicable statute of limitations.

### ARGUMENT

I.       **Exhaustion remains a requirement under the 2008 amendments to the Illinois Human Rights Act.**

Contrary to Plaintiff's arguments, even after the 2008 amendments to the Illinois Human Rights Act, an aggrieved individual still must exhaust his or her administrative remedies before proceeding to court. The Northern District of Illinois made that very clear in *Ocampo v. Remedial Envtl. Manpower, Inc.*, No. 13-cv-06283, 2014 U.S. Dist. LEXIS 86865 (N.D. Ill. June 26, 2014). The plaintiff in *Ocampo*, like the Plaintiff in this case, argued that the 2008 amendments to the Illinois Human Rights Act eliminated the exhaustion requirement. The court noted that "both before

1

and after the 2008 amendments, courts routinely have dismissed IHRA claims when the plaintiff has not exhausted his or her administrative remedies." *Id.* at *12, *citing Anderson v. Centers for New Horizons, Inc.,* 891 F.Supp.2d 956 (N.D. Ill. 2012) (withdrawal of charge constitutes a failure to exhaust) and *Good v. CPI Corp.,* No. 11-cv-0714, 2012 U.S. Dist. LEXIS 133223, 2012 WL 4183214, at *9 (S.D. Ill. Sep. 18, 2012) (claim must be submitted to IDHR before judicial review).

The Ocampo plaintiff's position that exhaustion was no longer required could not be reconciled with the plain language of the statute, according to the court. *Ocampo,* 2014 U.S. Dist. LEXIS at *13. More specifically, after the 2008 amendments, the IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." *Id.* At *13, *citing* 775 ILCS §5/8-111(D). The court explained that, according to the statute, a plaintiff can file a civil action in circuit court: (1) when the Director of the IDHR makes a lack of substantial evidence finding; (2) when the Director makes a substantial evidence finding; and (3) when the IDHR has not completed its investigation in 365 days. *Id.* at *13-14, *citing* 775 ILCS 5/7-102(D)(3),(4), 102(G). In concluding that exhaustion is required before filing a civil suit, even after the 2008 amendments, the court noted that the plaintiff "cites no provision of the IHRA providing that a complainant may initiate a cause of action under the IHRA in a civil court without first allowing the IDHR to make a determination as to the validity of the charge." *Id.* at *16.

Likewise, the Plaintiff in this case has not cited a provision of the statute that allows her to file suit in state court. In fact, Plaintiff completely ignores the statutory provision that applies to this case-- 775 ILCS 5/7A-102 (A-1)(3)-- which required her to notify the IDHR within 30 days of the EEOC dismissal. She further ignores the regulations that allow the IDHR to dismiss her

2

charge for lack of jurisdiction if she does not submit a copy of the EEOC determination in 30 days, 56 Ill. Admin. Code §2520.490(d), which section only permits her to appeal the lack of jurisdiction finding to the Illinois Human Right Commission, not to this court. *Id.*

Moreover, numerous federal court cases have held that even after the 2008 amendments to the Illinois Human Rights Act, a plaintiff still must exhaust his or her administrative remedies before trotting off to court. In *O'Connell v. Continental Electrical Construction Co.*, No. 11 C 2291, 2011 U.S Dist. LEXIS 119921, *33-35 (N.D. Ill. Oct. 17, 2011), the IDHR notified the plaintiff by letter that he had to notify the IDHR within 35 days[1] of receiving the letter or his file would be closed. He took no action, and the court found he failed to exhaust his administrative remedies by following the plain requirement to notify the IDHR within 35 days. The court in *Hankins v. Best Buy Co.*, No. 10 CV 4508, 2011 U.S. Dist. LEXIS 139037 (N.D. Ill. Dec. 2, 2011) noted, "[t]he IHRA, together with the rules and regulations of the IDHR and the Human Rights Commission, establish comprehensive administrative procedures governing the disposition of alleged civil rights violations." *Id.* at *13-14, quoting *Blount v. Stroud*, 904 N.E.2d 1, 7, 232 Ill.2d 302 (2009). Stressing that "[t]he IHRA limits the court's jurisdiction to claims that have first been raised through the administrative procedures set forth in the statute," the court found the plaintiff had not alleged that he notified the IDHR he wished to proceed with his charge. *Id.* at *14. This omission "cannot be reconciled with the IHRA's text, which plainly and expressly requires a

---

[1] The IHRA requires an individual to notify the IDHR of the EEOC determination within 30 days. (735 ILCS 5/7A-102 (A-1)(3)) When the IDHR responds by adopting the EEOC dismissal as a lack of substantial evidence, the individual has 35 days to ask the IDHR to review that dismissal. *Id.* Thus, there are both 30 and 35 day time limits involved.

Firm:46501325v2

CAU Removal 000115

complainant wishing to pursue his charge before the IDHR to inform the IDHR within 35 days of receiving the IDHR's [sic] letter." *Id.* at *16.

After summarizing some of the processes before the IDHR, the court in *Shofner v. Branding Iron Holdings, Inc.,* No. 15-cv-1166-JPG-DGW, 2016 U.S. Dist. LEXIS 29455, *11 (S.D. Ill. Mar. 8, 2016), concluded, "[t]he bottom line is that in order to bring a lawsuit, under the IHRA, the plaintiff must have a final report and right to sue letter from the IDHR or 365 days must have passed without a report since the IDHR received the charge or the EEOC's decision from the complainant." *See also Vroman v. Round Lake Area Schools,* No. 15 C 2013, 2015 U.S. Dist. LEXIS 155676, *4-6 (N.D. Ill. Nov. 18, 2015) (plaintiff who withdrew the charge before receiving a final order from IDHR on substantial evidence has failed to exhaust administrative remedies); *Anderson v. Centers for New Horizons, Inc.,* 891 F. Supp. 2d 956, 960-61 (N.D. Ill. June 25, 2012) (plaintiff failed to exhaust her administrative remedies when he withdrew the charge).

This court should not follow the holding of the case Plaintiff primarily relies on, *Laurie v. William BeDell Achievement Resource Center,* No. 16-759-DRH-RJD, 2017 U.S. Dist. LEXIS 41536 (S.D. Ill. Mar. 22, 2017), because it is not applicable to the facts of this case and is internally inconsistent. The *Laurie* court stated that "the overwhelming majority of district courts within this Circuit that have confronted the issue have concluded that **federal courts do have subject matter jurisdiction over IHRA claims based on supplemental jurisdictions pursuant to 28 U.S.C. §1367**." *Id.* at *9 (emphasis added). 28 U.S.C. §1367 grants federal courts subject matter jurisdiction over claims that are related to the federal law claims over which they have original jurisdiction. Based on this observation, the *Laurie* court concluded, "[t]herefore, Illinois courts can hear IHRA claims without first obtaining a final order from the IHRC. But the complainant

4

must still exhaust administrative remedies according to the IHRA; meaning a complainant needs to file a charge with the IDHR and then receive an IDHR determination." *Id*. Essentially, the *Laurie* court concluded that it had jurisdiction over an IHRA claim that the agency dismissed as untimely because federal courts have supplemental jurisdiction over state law claims that relate to the federal claims. This amounts to concluding that because apples are red, bananas are yellow.

Adding further fuel to the fire, the *Laurie* court proceeded to rely on an incorrect section of the IHRA to support the IDHR's notice to the plaintiff that she could pursue her claim with either the Illinois Human Rights Commission or in circuit court. To support issuance of this right to sue notice, the court cited section 5/7A-102(C)(4) of the Act—the section that allows an individual to pursue those remedies when he has failed to attend a fact finding conference. *Id*. at *10-11. That was not an issue in the *Laurie* case, and it is not an issue here. Illinois courts are not bound by federal court decisions construing Illinois law, *e.g., American Airlines v. Dep't of Revenue*, 402 Ill. App. 3d 579, 605-606 (1st Dist. 2009), and this court certainly should not be bound by this internally inconsistent opinion.

Plaintiff fares no better with respect to the second case on which she relies, *Goldberg v. Chicago School for Piano Technology*, No. 14 C 1440, 2015 U.S. Dist. LEXIS 12333 (N.D. Ill. Feb. 3, 2015). The *Goldberg* court reached its conclusion based solely on cases holding that "federal courts may now exercise supplemental jurisdiction over IHRA claims pursuant to 28 U.S.C. §1367(a)." *Id.* at 8. The *Goldberg* court cited to no provision of the IHRA in reaching its conclusion that it had jurisdiction over the claim, and the court should disregard this case as well.

Notably, in *Scott v. City of Kewanee*, No. 1:13-cv-01292-SLD, 2014 U.S. Dist. LEXIS 42582, *12-13 (C.D. Ill. Mar. 28, 2014), the court clarified the difference between the two doctrines,

5

CAU Removal 000117

supplemental jurisdiction and exhaustion. The *Scott* court explained that federal courts are able to exercise "original" (supplemental) jurisdiction over IHRA claims pursuant to 28 U.S.C. §1367(a). *Id.* at *12. The court proceeded to emphasize that the IHRA still requires claims to be initiated with the IDHR and noted, "[c]ourts may not hear IHRA claims until the IHRD [sic] has made a determination as to whether there is substantial evidence of an IHRA violation and either notified a complainant of her right to proceed or dismissed the claim." *Id.* at *13, citing 775 ILCS 5/7A-102(B), (C)(4), (D)(4). *See also Wierciszewski v. Granite City Ill. Hosp. Co.*, No. 11-120-GPM, 2011 U.S. Dist. LEXIS 45837, *8-10 (S.D. Ill. Apr. 28, 2011) (IHRA claims were within the court's supplemental jurisdiction but plaintiff failed to exhaust her administrative remedies, a jurisdictional issue, and court dismissed the claim).

Thus, because the Plaintiff in this case failed to ask the IDHR to review her charge within 30 days of receiving the EEOC dismissal and right to sue, she has failed to exhaust the required procedures under the Illinois Human Rights Act, and the court lacks jurisdiction over her claim.

**II.** **The IHRA does not authorize a civil suit under these circumstances.**

Not only does this court not have jurisdiction over this claim because Plaintiff failed to exhaust her administrative remedies, the plain language of the Illinois Human Rights Act and its regulations deprive the court of jurisdiction, as well. As noted above, the Illinois Human Rights Act provides that state courts have no jurisdiction over claims of civil rights violations other than as provided in the Act or otherwise permitted by law. 775 ILCS §5/8-111(D). Although the statute is silent about the consequence of a complainant failing to ask the IDHR to review an EEOC determination within 30 days, the regulations are clear that the only recourse is review of the determination by the Illinois Human Rights Commission. 56 Ill. Admin. Code §2520.490(d).

6

CAU Removal 000118

Nothing in the statute or the regulations authorizes a civil suit by an individual who has not timely asked the IDHR to review an EEOC determination. As a result, the IDHR had no authority under the statute or regulations to grant Plaintiff the right to proceed in state court, and erroneously advising her that she could do so does not confer jurisdiction on this court.

### III.     Plaintiff's failure to serve CAU prior to the expiration of the statute of limitations justifies dismissal pursuant to Rule 103(b).

Even if this court had jurisdiction to hear this claim, Plaintiff's suit should be dismissed because she failed to properly serve CAU with the complaint and summons. Plaintiff concedes that she did not serve CAU with the complaint and summons in a timely manner, but incorrectly argues that her complaint should not be dismissed pursuant to Supreme Court Rule 103(b) because the purpose of the rule has not been thwarted by a 48 day delay in serving summons after the complaint was filed. (Pltf.'s Rep. at 12) In so arguing, Plaintiff totally ignores the fact that she did not serve Defendant until nearly a month and a half after the statute of limitations expired on February 25, 2018.

As explained in CAU's Memorandum in Support, Plaintiff's suit should be dismissed pursuant to Rule 103(b) because Plaintiff effectuated service well after the end of the statute of limitations. Distinct from *the delay between the filing of the complaint and service of the summons* that the Plaintiff focuses on in her response, an *unreasonable delay that protracts the statute of limitations* is precisely what Rule 103(b) seeks to protect against. *Segal v. Sacco*, 136 Ill.2d 282, 286 (1990) ("the purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process on them and to prevent the circumvention of the statute of limitations.") *See also Kreykes Elec. v. Malk & Harris*, 297 Ill. App. 3d 936, 942 (1st Dist. 1998)

7

limitations, the action as to that defendant may be dismissed. It has long been noted in the Illinois courts that "[t]he purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process and to prevent the circumvention of the statute of limitations." *Lewis v. Dillon*, 352 Ill. App. 3d 512, 517, 816 N.E.2d 715, 718-719 (1st Dist. 2004). Here, the IDHR dismissed Plaintiff's charge for lack of jurisdiction on November 21, 2017 and gave her the option of commencing a civil action in state circuit court within 90 days after receipt of that notice.[3] (Voigt Aff. at ¶6, Ex. E) Plaintiff claims to have received the notice of dismissal on November 27, 2017, which means that the ninety day period for her to file suit would have ended on Sunday, February 25, 2018 (effectively, February 26). However, Plaintiff did not serve Defendant with the complaint and summons until April 12, 2018 – over 120 days after receiving the notice from the IDHR.

Plaintiff was not hindered from serving Defendant with the complaint and summons in a timely fashion and cannot point to any legitimate reason for her delay, as she was well aware of Defendant's whereabouts and made no effort to serve Defendant within the applicable 90-day period. *See Kole v. Brubaker*, 325 Ill. App. 3d 944, 949, 759 N.E.2d 129. 133 (1st Dist. 2001) ("[b]ecause the record does not disclose any unusual circumstances that would have prevented or otherwise hindered plaintiff's ability to serve defendants, we find the elapsed time period raises an inference that plaintiff failed to act diligently under Rule 103(b).") Thus, even if Plaintiff's claim were properly before this Court, which it is not, Plaintiff's complaint should be dismissed with prejudice pursuant to Ill. Sup. Ct. R. 103(b) because she failed to exercise

---

[3] As stated above, the IDHR's notice to plaintiff that she could file suit following its dismissal was improper under 775 ILCS 5/7A-102(A-1)(3), 56 Ill. Admin. Code §2520.490(c)(4). Because plaintiff had not notified the IDHR of the EEOC's determination within 30 days as required by the statute, plaintiff's only recourse under the statute was to ask the IHRC for review of the IDHR's dismissal.

CAU Removal 000120

reasonable diligence to timely serve CAU with the complaint and summons. *See, e.g., Kole*, 325 Ill. App. 3d at 954 (dismissal with prejudice proper under Rule 103(b) where dismissal occurs after the expiration of the limitations period); *Emrikson v. Morfin*, 2012 IL App (1st) 111687, *27, 977 N.E.2d 1165, 1172 (1st Dist. 2012) (affirming dismissal with prejudice under Rule 103(b)); *Long v. Elborno*, 376 Ill. App. 3d 970, 982, 875 N.E.2d 1127, 1136 (1st Dist. 2007) (affirming dismissal under Rule 103(b))

## CONCLUSION

Plaintiff's complaint should be dismissed with prejudice pursuant to section 2-619 of the Code of Civil Procedure for failure to exhaust her administrative remedies, for lack of jurisdiction and for failure to exercise reasonable diligence to serve Defendant with the complaint and summons prior to the expiration of the applicable statute of limitations.

COMMUNITY ALTERNATIVES UNLIMITED

By:     /s/ Julie Badel
        One of its attorneys

Julie Badel
Michelle Marks
Attorney for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com
Attorney ID #18494

CAU Removal 000121

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that she served a copy of the foregoing

memorandum of law via U.S. mail and email this 10th day of May 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

CAU Removal 000122

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

ABRAHAM )
)
V. )
)
)  2018 CH 02497
COMMUNITY ALTERNATIVES )
)
UNLIMITED )
)
)
)

AGREED **ORDER**

This matter coming to be heard for _STATUS ON DEFENDANT'S MOTION TO_
and the Court being fully advised in the premises;  DISMISS

IT IS HEREBY ORDERED that this matter is continued to
_8/30/18_ at _10:00 A.M._ in courtroom 2410 of the Richard J. Daley
Center.

ENTERED
JUDGE PETER FLYNN-1784
JUL 26 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Atty. No: _45037_
Name: _THE LAW OFFICES OF RUTH I. MAJOR, P.C._
Attorney for Plaintiff/Defendant: _PLAINTIFF_
Address: _30 No MONROE ST., SUITE 1650_
City/Zip: _CHICAGO, IL 60603_
Telephone: _(312) 893-7544_

Return Date: No return date scheduled
Hearing Date: 10/15/2018 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
10/9/2018 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

FILED DATE: 10/9/2018 12:00 AM    2018CH02497

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. 2018 CH 02497** |
| | ) |
| COMMUNITY ALTERNATIVES | )    **Honorable Judge Anna M. Loftus** |
| UNLIMITED, | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## NOTICE OF MOTION

TO:   Julie Badel
Michelle Marks
Epstein Becker Green P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois 60606
Phone: (312) 499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com

      **Please take notice** that on Thursday, October 11, 2018, at 9:30 a.m., or whenever thereafter counsel can be heard, counsel for Plaintiff, Michelle Abraham, shall appear before the Honorable Judge Anna M. Loftus, or any judge sitting in her stead in the courtroom usually occupied by her, Room 2801, Circuit Court of Cook County, 50 West Washington Street, Chicago, Illinois, 60602, and shall then and there present **Plaintiff's Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss,** a true and correct copy of which is hereby served upon you.

                                Respectfully submitted,

**Dated**: October 8, 2018             **MICHELLE ABRAHAM**


                               /s/ Ruth I. Major
                               One of His Attorneys

FILED DATE: 10/9/2018 12:00 AM   2018CH02497

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street
Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

CAU Removal 000125

FILED DATE: 10/9/2018 12:00 AM   2018CH02497

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2018, I caused the foregoing **Notice of Motion** for **Plaintiff's Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

> Julie Badel
> Michelle Marks
> Epstein Becker Green P.C.
> 227 West Monroe Street, Suite 3250
> Chicago, Illinois 60606
> Phone: (312) 499-1400
> jbadel@ebglaw.com
> mgmarks@ebglaw.com

/s/ Ruth I. Major_____

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street
Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

CAU Removal 000126

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018 CH 02497 |
| | ) | |
| COMMUNITY ALTERNATIVES | ) | Honorable Judge Anna M. Loftus |
| UNLIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO SUPPLEMENT
RESPONSE TO DEFENDANT'S 2-615 MOTION TO DISMISS**

Plaintiff, Michelle Abraham, for her Motion to Supplement Response to Defendant's 2-615

Motion to Dismiss, states as follows:

1. After Defendant's motion to dismiss was fully briefed, Plaintiff's counsel received a

copy of the Worksharing Agreement Between the Illinois Department of Human Rights ("IDHR")

and the U.S. Equal Employment Opportunity Commission ("EEOC"), Chicago Office, for Fiscal

Year 2017 ("Worksharing Agreement") from the EEOC pursuant to a request made under the

federal Freedom of Information Act, 5 U.S.C § 552.

2. The Worksharing Agreement is relevant to the issues before this Court because

Defendant has alleged that Ms. Abraham failed to "exhaust her administrative remedies" because

she did not request the IDHR conduct its own investigation after the EEOC concluded its

investigation. To support its decision, however, Defendant relies primarily, if not exclusively, on

court decisions that, unlike here, involve administrative agencies that review its own

administrative decisions, listing the benefits of such procedures as allowing the agency to fully

CAU Removal 000127

develop and consider the facts, allowing the agency to utilize its expertise, allowing the aggrieved party to succeed, making judicial review unnecessary (inapplicable here as neither agency here can render a judgment for either party), allowing the agency to correct its own errors (inapplicable here as neither agency is reviewing decisions of its agencies), and conserving valuable judicial resources by avoiding piecemeal appeals (inapplicable here because the agencies are not reviewing decisions but investigating claims not serving as a review board of agency decisions).

3. Defendant contends that by not asking the second administrative agency to investigate the same claims investigated by the EEOC, the result is the occurrence of "all of the evils the exhaustion doctrine is intended to curb." (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def's Memorandum"), p. 6).

4. Putting aside that virtually all these factors relate to cases where a state court, and the administrative agencies, are serving as courts of review, rather than as investigators or trial courts, as in this matter, the argument advanced by Defendant does not apply for other important reasons. Specifically, the IDHR and the EEOC have entered into the Worksharing Agreement to save taxpayers money and save the parties time by consolidating their functions in one agency with common expertise and goals. The Worksharing Agreement, attached hereto as Exhibit A, explains that because the two agencies cover the same type of claims (§ I.A) and have "common jurisdiction and goals" (jurisdiction here meaning addressing the same types of wrongs), the agencies can work together to provide individuals with an "efficient procedure for obtaining redress." (Ex. A, § I.B).

5. As part of the worksharing, each of the agencies designates the other "as its agent for the purposes of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." (Ex. A, § II.A).

CAU Removal 000128

6. "Normally, once an agency begins an investigation, it resolves the charge." (Ex. A, § II.C).

7. The Worksharing Agreement identifies the specific statutes that will be handled pursuant to the agreement, and provides that representatives of the agency not handling the charge directly can review the other's investigative files or attend interviews of witnesses, among other things. (Ex. A, § IV).

8. In summary, when the EEOC was investigating Ms. Abraham's claims, it was doing so on its own behalf and in its capacity as an agent of the IDHR. The IDHR was not required to expend valuable resources conducting a second investigation on the same allegations when a sister federal agency had already done so and no "evil" resulted from the sensible and efficient relationship which exists between the two agencies.

**WHEREFORE,** for the foregoing reasons, Plaintiff Michelle Abraham respectfully requests that this Honorable Court grant her leave to supplement the record with a brief setting forth the material contained herein (or allow this brief to serve such purpose) and to enter the Worksharing Agreement Between the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission, Chicago Office, for Fiscal Year 2017 into the record as further support for her opposition to Defendant's motion to dismiss.

**Dated**: October 8, 2018

Respectfully submitted,

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

3

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

CAU Removal 000130

# EXHIBIT A

CAU Removal 000131

WORKSHARING AGREEMENT

BETWEEN

ILLINOIS DEPARTMENT OF HUMAN RIGHTS

and

THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

CHICAGO DISTRICT OFFICE

FOR FISCAL YEAR 2017

## I.   INTRODUCTION

A.   The Illinois Department of Human Rights, hereinafter referred to as the IDHR, has jurisdiction over allegations of employment discrimination occurring within against labor unions, employment agencies and employers where such charges are based on race, religion, national origin, color, sex, age or disability, pursuant to the Illinois Human Rights Act.

The U.S. Equal Employment Opportunity Commission, hereinafter referred to as the EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). The EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C.§ 621 et. seq.)(ADEA), for unequal wages based on sex under the Equal Pay Act of 1963, as amended (29 U.S.C.§ 206) (EPA), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101) (ADA), and over the use or acquisition of genetic information as the basis for employment decisions pursuant to Title II of the Genetic Information Nondiscrimination Act of 2008.

B.   In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the IDHR and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State of Illinois and Federal laws.

1

CAU Removal 000132

## II. FILING OF CHARGES OF DISCRIMINATION

A. In order to facilitate the assertion of employment rights, the EEOC and the IDHR each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. The EEOC's receipt of charges on the IDHR's behalf will automatically initiate the proceedings of both the EEOC and the IDHR for the purposes of Section 706 (c) and (e) (1) of Title VII. This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one agency to another in accordance with the terms of this Worksharing Agreement or by other mutual agreement.

B. The IDHR shall take all charges alleging a violation of Title VII, the ADEA, the EPA, GINA or the ADA where both the IDHR and the EEOC have mutual jurisdiction, or where the EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III. A. 1. below, refer them to the EEOC for initial processing.

C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and/or assist any person alleging employment discrimination to draft a charge in a manner that will satisfy the requirements of both agencies to the extent of their common jurisdiction.

Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the IDHR within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES).

D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to the EEOC and the IDHR) to draft charges.

E. Within ten (10) calendar days of receipt, each Agency agrees that it will notify both the Charging Party and the Respondent of the dual-filed nature of each such charge it receives for initial processing and explain the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes.

## III. DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES

In recognition of the statutory authority granted to the IDHR by Section 706(c) and 706(d) of Title VII as amended; and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of

2

1967, the primary responsibility for resolving charges between the IDHR and the EEOC will be divided as follows:

A.   The EEOC and the IDHR will process all Title VII, ADA, GINA, and ADEA charges that they originally receive.

    1.   For charges originally received by the EEOC and/or to be initially processed by the EEOC, the IDHR waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

    In addition, the EEOC will initially process the following charges:

    -- All Title VII, ADA, and concurrent Title VII/ADA charges jurisdictional with the IDHR and received by the IDHR 240 days or more after the date of violation;

    -- All disability-based charges that may not be resolved by the IDHR in a manner consistent with the ADA;

    -- All concurrent Title VII/EPA charges;

    -- All charges against the IDHR or the Illinois Human Rights Commission or its parent organization where such parent organization exercises direct or indirect control over the charge decision-making process;

    -- Any charge filed by IDHR's and/or the Illinois Human Rights Commission's employees (or by their immediate family members) which IDHR requests be investigated by EEOC and which EEOC agrees to investigate;

    -- All charges filed by EEOC Commissioners;

    -- Charges also covered by the Immigration Reform and Control Act;

    -- Complaints referred to the EEOC by the U.S. Department of Justice, Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691;

    -- Any charge where the EEOC is a party to a Conciliation Agreement or a Consent Decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the IDHR of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

    -- Any charge alleging retaliation for filing a charge with the EEOC or for cooperating with the EEOC;

3

-- All charges against Respondents that are designated for initial processing by the EEOC in a supplementary memorandum to this Worksharing Agreement; and

-- Charges filed with IDHR that: (a) relate to a class covered by a charge number under investigation by the EEOC or a class for which EEOC seeks relief in litigation; or (b) are deemed by EEOC to be potential litigation vehicles.

2.  The IDHR will initially process the following types of charges:

-- Any charge alleging retaliation for filing a charge with the IDHR or cooperating with the IDHR;

-- Any charge where the IDHR is a party to a Conciliation Agreement or a Consent Decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The IDHR will provide the EEOC with an on-going list of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

-- All charges filed with the IDHR;

-- All charges received by EEOC which are jurisdictional under the Illinois Human Rights Act and filed against Respondents located in the Illinois counties listed in **Appendix A**, with the exception of any charges also filed under the EPA;

-- All additional potential charges referred by EEOC which meet the jurisdictional requirements of the IDHR and are not otherwise excepted from this Worksharing Agreement;

-- Charges filed with EEOC which EEOC requests be consolidated with an ongoing IDHR investigation, providing IDHR agrees to such consolidation;

-- Duplicate charges filed with IDHR and EEOC which are jurisdictional for IDHR, unless EEOC has conducted substantial investigation before the duplication was discovered;

-- All charges that allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the Illinois Human Rights Act, or where the EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but the IDHR can process that charge;

-- All charges against Respondents that are designated for initial processing by the IDHR in a supplementary memorandum to this Worksharing Agreement; and

-- All charges against Respondents over which the EEOC does not have jurisdiction, but IDHR does.

4

B. Notwithstanding any other provision of the Agreement, the IDHR or the EEOC may request to be granted the right to initially process any charge subject to agreement of the other agency. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C. If, for any reason, one of the Agencies determines it cannot process a charge for which it bears initial responsibility pursuant to this Worksharing Agreement, that Agency will inform the other Agency of its inability to process the charge. In the event that the IDHR has performed a substantial part of an investigation (i.e., drafted questionnaires, received and analyzed documentation, and contacted witnesses), IDHR will note the case on the EEOC Form 472 and send the case file to EEOC to be considered for contract credit. The EEOC will evaluate such work and will notify the IDHR if a contract credit is warranted.

D. EEOC will not defer any charge for the IDHR to process that is not jurisdictional on its face with either agency. If it is apparent that one Agency might have jurisdiction when another does not, then the Charge Party will be referred to the appropriate Agency.

## IV. EXCHANGE OF INFORMATION

A. Both the IDHR and the EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information that may assist each Agency in carrying out its responsibilities. Such information shall include, but not necessarily be limited to, investigative files, conciliation agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from the EEOC, the IDHR agrees to observe the confidentiality provisions of Title VII, the ADEA, the ADA and GINA.

B. In order to expedite the resolution of charges or facilitate the working of this Worksharing Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

C. From time to time, the IDHR is requested to provide private litigants in federal district court with documents, written statements, affidavits or deposition or trial testimony regarding charges it has processed under its Worksharing Agreements with EEOC; because such evidence supplied by IDHR can affect the federal rights of EEOC charging parties or the enforcement or litigation activities of EEOC, IDHR agrees to notify the EEOC's Regional Attorney of each request for information of this type by sending copies of the request prior to issuing a response.

CAU Removal 000136

## V. RESOLUTION OF CHARGES

A. Both agencies will adhere to the procedures set out in the EEOC's State and Local Handbook, including current revisions thereto.

B. For the purpose of according substantial weight to the IDHR final finding and order, the IDHR must submit to the EEOC copies of all documents pertinent to conducting a substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

    1. jurisdictional requirements,

    2. investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

    3. relief, if appropriate,

    4. mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the IDHR is a party.

C. In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles. Notwithstanding any other provision of this Agreement or the Contracting Principles for FY2017 EEOC will give contract credit to:

    1. not more than 85% of contracted resolutions during the second, third and fourth quarters;

    2. not more than 60% of contracted resolutions in the third and fourth quarters; and

    3. not more than 35% of contracted resolutions in the fourth quarter.

Based on the above schedule, if IDHR fails to submit at least 15% of its contracted resolutions during the first quarter of FY2017, i.e., by 12/31/16, the contract may be accordingly reduced by the number of resolutions needed to meet 15% of the contract. Similarly, if IDHR fails to submit at least 40% of its contracted resolutions (including modifications) by the end of the second quarter, i.e., by 3/31/17, the contract will be accordingly reduced by the number of resolutions needed to meet 40% of the contract. If IDHR fails to submit at least 65% of its contracted resolutions (including modifications) by the end of the third quarter, i.e., by 6/30/17, the amount will be accordingly reduced by the number of resolutions needed to meet 65% of the contract.

D. For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party

6

has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

## VI.  IMPLEMENTATION OF THE WORKSHARING AGREEMENT

A.  Each agency will designate a person as liaison official for the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the IDHR will be Brent A. Harzman. The liaison official for the EEOC will be Daniel L. Lim.

B.  The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Worksharing Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the IDHR and rapid redress for allegations of unlawful employment discrimination.

C.  The agencies agree to work together in furtherance of the provisions of EEOC's 2012-2016 Strategic Plan and the 2013 IDHR Engagement Plan, when assessing the allocation of charges under this Worksharing Agreement and to cooperate in compliance and enforcement efforts as well as training, outreach and technical assistance efforts encompassed by the Plans.

D.  The EEOC will provide original forms to be copied by the IDHR, in accordance with the Regulations and the Compliance Manual to be used by the IDHR in correspondence with Charging Parties and Respondents.

E.  If a dispute regarding the implementation or application of this Worksharing Agreement cannot be resolved by the IDHR and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Field Programs for resolution.

F.  This Worksharing Agreement shall operate from the first (1st) day of October 2016 to the thirtieth (30th) day of September 2017 and may be renewed or modified by mutual consent of the parties.

CAU Removal 000138

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Date 10/17/16 _____

Julianne Bowman, District Director
U.S. Equal Employment Opportunity Commission
Chicago District Office


Date October 13, 2016 _____

Janice Glenn, Director
Illinois Department of Human Rights

8

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

MICHELLE ABRAHAM )
)
)
)
V. )
) NO. 2018 CH 0247
COMMUNITY ALTERNA— )
TIVES UNLTD. )
)

## HEARING DATE ORDER

This matter coming to be heard on: (plaintiff's) (defendant's)
Motion __TO DISMISS_____

_____

and the matter being fully briefed;

    IT IS HEREBY ORDERED that said Motion is set for hearing on
__JAN. 29_____ 20__19__ at __10:30__ am/pm in Courtroom 2410
without further notice. If any party wishes to continue or withdraw said
Motion, leave MUST be obtained BEFORE the hearing date.

Atty. No: __45037__
Name: __J. BADEL__
Attorney for Plaintiff/Defendant:
Address: __227 W. MONROE__
City/Zip: __CH60 60626__
Telephone: __312 - 499-1418__

ENTERED
JUDGE PETER FLYNN-1784
OCT 10 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

CAU Removal 000140

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

Michelle Abraham
      Plaintiff )

    V. )

Community Alternatives
Unlimited, Defendant )

2018 CH 5497

**ORDER FOR BRIEFING SCHEDULE**

This matter coming to be heard on Plaintiff's / Defendant's Motion for / to

Supplement Response to
Defendants Motion to Dismiss , the Court sets the following briefing schedule:

Movant shall file a memorandum in support by    N/A

Response brief shall be filed by   October 24, 2018

Reply brief shall be filed by   October 31, 2018

This matter is set for status / hearing at 10:30 a.m., on January 17, 2019

Courtesy copies, including briefs, deposition transcripts and most recent complaint relied upon shall be delivered five (5) business days in advance. It is the movant's responsibility to provide the court with a full set of briefs. Briefs shall: (1) contain official case citations, (2) contain separately tabbed exhibits and (3) not exceed 15 pages. Support for the requested relief cannot be raised initially in the Reply.

ENTERED
JUDGE PETER P. FLYNN-1784
OCT 10 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
DEPUTY CLERK COOK COUNTY, IL

Atty No.: 45037 Ryan Major
Name:
Attorney for Plaintiff / Defendant: , S.H 2020
Address: Chicago, IL 60602
City/Zip:
Telephone: 312/893 7544

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

MICHELLE ABRAHAM,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　Plaintiff,　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　v.　　　　　　　　　　　　　 )　 Case No. 2018 CH 02497
　　　　　　　　　　　　　　　　　　　 )
COMMUNITY ALTERNATIVES　　　 )　 Honorable Judge Anna M. Loftus
UNLIMITED,　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　Defendant.　　 )
　　　　　　　　　　　　　　　　　　　 )

## AGREED ORDER

1. The October 11 and October 18, 2018 dates scheduled for presentment of Plaintiff's
   Plaintiff's Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss
   are hereby stricken.

2. Plaintiff's Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss
   will be heard on January 17, 2019 at 10:30 a.m.

Date Submitted: October 10, 2018

Respectfully submitted,

**MICHELLE ABRAHAM**

By: /s/ Ruth I. Major
　　　One of Her Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.

**COMMUNITY ALTERNATIVES
UNLIMITED,**

By: /s/ Julie Badel
　　　One of Its Attorneys

Julie Badel
Michelle Marks
Epstein Becker Green P.C.

70 West Madison St., Suite 2020        227 West Monroe Street, Suite 3250
Chicago, Illinois 60602                Chicago, Illinois 60606
Phone: (312) 893-7544                  Phone: (312) 499-1400
rmajor@major-law.com                   jbadel@ebglaw.com
dbroadwell@major-law.com               mgmarks@ebglaw.com
Firm No. 45037                         Firm No.

SO ORDERED:


_____

Judge Anna M. Loftus

2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

Michelle Abraham )
                 Plaintiff )    2018 CH 3497
                            )
         V.                 )
Community Alternative )
Unlimited, Defendant )

## ORDER FOR BRIEFING SCHEDULE

This matter coming to be heard on Plaintiff's / Defendant's Motion for / to

Supplement Response to
Defendants Motion to Dismiss , the Court sets the following briefing schedule:

Movant shall file a memorandum in support by _____ N/A _____,

Response brief shall be filed by _____ October 24, 2018 _____,

Reply brief shall be filed by _____ October 31, 2018 _____,

This matter is set for status / hearing at 10:30 _____ a.m., on January 17, 2019 _____.

Courtesy copies, including briefs, deposition transcripts and most recent complaint relied upon shall be delivered five (5) business days in advance. It is the movant's responsibility to provide the court with a full set of briefs. Briefs shall: (1) contain official case citations, (2) contain separately tabbed exhibits and (3) not exceed 15 pages. Support for the requested relief cannot be raised initially in the Reply.

ENTERED
JUDGE PETER FLYNN-1784
OCT 10 2018
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Atty No: 45037 Major
Name:
Attorney for Plaintiff / Defendant, Suite 2020
Address: Chicago, IL 60602
City/Zip:
Telephone: 312/893 7544

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

MICHELLE ABRAHAM )
)
)
)
V. )
) NO. 2018 CH 0247
COMMUNITY ALTERNA— )
TIVES UNLTD. )
)
)

## HEARING DATE ORDER

This matter coming to be heard on:  (plaintiff's) (defendant's)

Motion ___TO DISMISS_____

_____

and the matter being fully briefed;

IT IS HEREBY ORDERED that said Motion is set for hearing on
___JAN. 29_____ 20_19 at _10:30_ am/pm in Courtroom 2410
without further notice.  If any party wishes to continue or withdraw said
Motion, leave MUST be obtained BEFORE the hearing date.

_____

Atty. No: 45037
Name: J. BADEL
Attorney for Plaintiff/Defendant:
Address: 227 W. MONROE
City/Zip: CHICAGO 60626
Telephone: 312-499-1418

ENTERED
JUDGE PETER FLYNN-1784
OCT 10 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

CAU Removal 000145

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,          )
                                      )
      Plaintiff,        )
                                        )
     v.                 )      Case No. 2018-CH-02497
                                        )      Judge Anna Loftus
COMMUNITY ALTERNATIVES UNLIMITED,   )
                                        )
      Defendant.     )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
## TO SUPPLEMENT HER RESPONSE TO DEFENDENT'S MOTION TO DISMISS

Plaintiff's motion to supplement her response to Defendant's motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure-- with the worksharing agreement between the EEOC and the Illinois Department of Human Rights ("IDHR")-- should be denied because the worksharing agreement is irrelevant to any issue in this case.  Courts have uniformly held that neither the worksharing agreement, the EEOC investigation nor the EEOC right to sue notice eliminates the need for the IDHR to investigate a claim.

In *O'Connell v. Continental Electrical Construction Co.*, 2011 U.S. Dist. LEXIS 119921 (N.D. Ill. 2011), the plaintiff argued that in the absence of the IDHR investigation, the EEOC's right to sue letter authorized his IHRA claim to be brought in court because of the IDHR-EEOC "cooperative agreement."  The court responded that this position could not be reconciled with the language of the IHRA, which expressly requires an individual to inform the IDHR within 35 days if he wanted to pursue his state law claim.  (*Id.* at *34)  *See also Shofner v. Branding Iron Holdings, Inc.,* 2016 U.S. Dist. LEXIS 29455 (S.D. Ill. 2016)(EEOC right to sue notice does not evidence exhaustion of an IDHR claim before the IDHR);  *Hankins v. Best Buy Co.,* 2011 U.S. Dist.

1

CAU Removal 000146

LEXIS 139037 (N. Dist. Ill. 2011)(receipt of an EEOC right to sue notice does not stablish a right to sue under the IHRA).

Courts have stressed that an IHRA claim must first be presented to the IDHR before seeking judicial review, and exhaustion through the EEOC is irrelevant. *Good v. CPI Corp.,* 2012 U.S. Dist. LEXIS 133223 (S.D. Ill. 2012). *See also Ocampo v. Remedial Environmental Manpower, Inc.,* 2014 U.S. Dist. LEXIS 86865 (N.D. Ill. 2014)(exhaustion through the EEOC is irrelevant).

While Plaintiff points to the worksharing agreement's provision that the two agencies designate the other as an agent for purposes of certain acts, such as receiving charges, at least one court has rejected the argument that because the IDHR has consented to receive charges on behalf of the EEOC, the duty to exhaust is discharged merely by obtaining an EEOC right to sue notice. *Wierciszewski v. Granite City Illinois Hosp.,*2011 U.S. Dist. LEXIS 45837 (S.D. Ill. 2011)

In summary, an EEOC investigation and right to sue notice does not obviate the need for a plaintiff to exhaust her remedies under the IHRA before proceeding to court, and the work sharing agreement between the EEOC and the IDHR is totally irrelevant to any issue in this case. Plaintiff's motion to supplement the record with this document should be denied.

COMMUNITY ALTERNATIVES UNLIMITED

By:    /s/ Julie Badel_____
       One of its attorneys

Julie Badel (jbadel@ebglaw.com)
Michelle Marks (mgmarks@ebglaw.com)
Attorneys for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
Attorney ID #18494

2

CAU Removal 000147

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that she served a copy of the foregoing response via

the court's electronic filing system this 24th day of October 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

3

CAU Removal 000148

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
10/31/2018 3:28 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

FILED DATE: 10/31/2018 3:28 PM    2018CH02497

CAU Removal 000149

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 151 of 640 PageID #:158

HUMAN RIGHTS--PREGNANCY--PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-596...

2011 Ill. Legis. Serv. P.A. 97-596 (S.B. 1122) (WEST)

ILLINOIS 2011 LEGISLATIVE SERVICE

Ninety-Seventh General Assembly, 2011

Additions are indicated by **Text**; deletions by
~~Text~~ .
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~**Text**~~ .

PUBLIC ACT 97−596

S.B. 1122

HUMAN RIGHTS--PREGNANCY--PROCEDURES

AN ACT concerning human rights.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

Section 5. The Illinois Human Rights Act is amended by changing Sections 2–102 and 7A–102 as follows:

<< IL ST CH 775 § 5/2–102 >>

**[S.H.A. 775 ILCS 5/2–102]** (775 ILCS 5/2–102) (from Ch. 68, par. 2–102)

§ 2–102. Civil Rights Violations--Employment. It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.

(A–5) Language. For an employer to impose a restriction that has the effect of prohibiting a language from being spoken by an employee in communications that are unrelated to the employee's duties.

For the purposes of this subdivision (A–5), "language" means a person's native tongue, such as Polish, Spanish, or Chinese. "Language" does not include such things as slang, jargon, profanity, or vulgarity.

(B) Employment Agency. For any employment agency to fail or refuse to classify properly, accept applications and register for employment referral or apprenticeship referral, refer for employment, or refer for apprenticeship on the basis of unlawful discrimination or citizenship status or to accept from any person any job order, requisition or request for referral of applicants for employment or apprenticeship which makes or has the effect of making unlawful discrimination or discrimination on the basis of citizenship status a condition of referral.

(C) Labor Organization. For any labor organization to limit, segregate or classify its membership, or to limit employment opportunities, selection and training for apprenticeship in any trade or craft, or otherwise to take, or fail to take, any action which affects adversely any person's status as an employee or as an applicant for employment or as an apprentice, or as an applicant for apprenticeships, or wages, tenure, hours of employment or apprenticeship conditions on the basis of unlawful discrimination or citizenship status.

FILED DATE: 10/31/2018 3:28 PM 2018CH02497

CAU Removal 000150

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 152 of 640 PageID #:159

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

(D) Sexual Harassment. For any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

(E) Public Employers. For any public employer to refuse to permit a public employee under its jurisdiction who takes time off from work in order to practice his or her religious beliefs to engage in work, during hours other than such employee's regular working hours, consistent with the operational needs of the employer and in order to compensate for work time lost for such religious reasons. Any employee who elects such deferred work shall be compensated at the wage rate which he or she would have earned during the originally scheduled work period. The employer may require that an employee who plans to take time off from work in order to practice his or her religious beliefs provide the employer with a notice of his or her intention to be absent from work not exceeding 5 days prior to the date of absence.

(F) Training and Apprenticeship Programs. For any employer, employment agency or labor organization to discriminate against a person on the basis of age in the selection, referral for or conduct of apprenticeship or training programs.

(G) Immigration–Related Practices.

(1) for an employer to request for purposes of satisfying the requirements of Section 1324a(b) of Title 8 of the United States Code, as now or hereafter amended, more or different documents than are required under such Section or. to refuse to honor documents tendered that on their face reasonably appear to be genuine; or

(2) for an employer participating in the Basic Pilot Program, as authorized by 8 U.S.C. 1324a, Notes, Pilot Programs for Employment Eligibility Confirmation (enacted by PL 104–208, div. C title IV, subtitle A) to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment without following the procedures under the Basic Pilot Program.

(H) Pregnancy; peace officers and fire fighters. For a public employer to refuse to temporarily transfer a pregnant female peace officer or pregnant female fire fighter to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where that transfer can be reasonably accommodated. For the purposes of this subdivision (H), "peace officer" and "fire fighter" have the meanings ascribed to those terms in Section 3 of the Illinois Public Labor Relations Act.

It is not a civil rights violation for an employer to take any action that is required by Section 1324a of Title 8 of the United States Code, as now or hereafter amended.

**(I) Pregnancy. For an employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.**

(Source: P.A. 95–25, eff. 1–1–08; 95–137, eff. 1–1–08; 95–876, eff. 8–21–08.)

<< IL ST CH 775 § 5/7A–102 >>

**[S.H.A. 775 ILCS 5/7A–102]** (775 ILCS 5/7A–102) (from Ch. 68, par. 7A–102)

§ 7A–102. Procedures.

CAU Removal 000151

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 153 of 640 PageID #:160

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

(A) Charge.

(1) Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director.

(2) The charge shall be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation.

**(3) Charges deemed filed with the Department pursuant to subsection (A–1) of this Section shall be deemed to be in compliance with this subsection.**

(A–1) Equal Employment Opportunity Commission Charges.

**(1) If a** A   charge **is** filed with the Equal Employment Opportunity Commission **(EEOC)** within 180 days after the date of the alleged civil rights violation**, the charge** shall be deemed filed with the Department on the date filed with the **EEOC.** ~~Equal Employment Opportunity Commission. Upon receipt of a charge filed with the Equal Employment Opportunity Commission, the Department shall notify the complainant that he or she may proceed with the Department. The complainant must notify the Department of his or her decision in writing within 35 days of receipt of the Department's notice to the complainant and the Department shall close the case if the complainant does not do so. If the complainant proceeds with the Department,~~  **If the EEOC is the governmental agency designated to investigate the charge first,** the Department shall take no action until the **EEOC** ~~Equal Employment Opportunity Commission~~  makes a determination on the charge **and after the complainant notifies the Department of the EEOC's determination**. **In such cases, after receiving notice from the EEOC that a charge was filed, the Department shall notify the parties that (i) a charge has been received by the EEOC and has been sent to the Department for dual filing purposes; (ii) the EEOC is the governmental agency responsible for investigating the charge and that the investigation shall be conducted pursuant to the rules and procedures adopted by the EEOC; (iii) it will take no action on the charge until the EEOC issues its determination; (iv) the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant; and (v) that the time period to investigate the charge contained in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC until the EEOC issues its determination.** ~~Upon receipt of the Equal Employment Opportunity Commission's determination, the Department shall cause the charge to be filed under oath or affirmation and to be in such detail as provided for under subparagraph (2) of paragraph (A).~~

**(2) If the EEOC finds reasonable cause to believe that there has been a violation of federal law and if the Department is timely notified of the EEOC's findings by complainant, the Department shall notify complainant that the Department has adopted the EEOC's determination of reasonable cause and that complainant has the right, within 90 days after receipt of the Department's notice, to either file his or her own complaint with the Illinois Human Rights Commission or commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination of reasonable cause shall constitute the Department's Report for purposes of subparagraph (D) of this Section.**

**(3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.**

CAU Removal 000152

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 154 of 640 PageID #:161

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

**(a) If the complainant does not file a written request with the Department to review the EEOC's determination within 35 days after receipt of the Department's notice, the Department shall notify complainant that the decision of the EEOC has been adopted by the Department as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination shall constitute the Department's report for purposes of subparagraph (D) of this Section.**

**(b) If the complainant does file a written request with the Department to review the EEOC's determination, the Department shall review the EEOC's determination and any evidence obtained by the EEOC during its investigation. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is no need for further investigation of the charge, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A–102. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is a need for further investigation of the charge, the Department may conduct any further investigation it deems necessary. After reviewing the EEOC's determination, the evidence obtained by the EEOC, and any additional investigation conducted by the Department, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A–102 of this Act.**

**(4) Pursuant to this Section, if the EEOC dismisses the charge or a portion of the charge of discrimination because, under federal law, the EEOC lacks jurisdiction over the charge, and if, under this Act, the Department has jurisdiction over the charge of discrimination, the Department shall investigate the charge or portion of the charge dismissed by the EEOC for lack of jurisdiction pursuant to subsections (A), (A–1), (B), (B–1), (C), (D), (E), (F), (G), (H), (I), (J), and (K) of Section 7A–102 of this Act.**

**(5) The time limit set out in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC to the date on which the EEOC issues its determination.** ~~At the Department's discretion, the Department shall either adopt the Equal Employment Opportunity Commission's determination or process the charge pursuant to this Act. Adoption of the Equal Employment Opportunity Commission's determination shall be deemed a determination by the Department for all purposes under this Act.~~

(B) Notice and Response to Charge. The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent. This period shall not be construed to be jurisdictional. The charging party and the respondent may each file a position statement and other materials with the Department regarding the charge of alleged discrimination within 60 days of receipt of the notice of the charge. The position statements and other materials filed shall remain confidential unless otherwise agreed to by the party providing the information and shall not be served on or made available to the other party during pendency of a charge with the Department. The Department shall require the respondent to file a verified response to the allegations contained in the charge within 60 days of receipt of the notice of the charge. The respondent shall serve a copy of its response on the complainant or his representative. All allegations contained in the charge not timely denied by the respondent shall be deemed admitted, unless the respondent states that it is without sufficient information to form a belief with respect to such allegation. The Department may issue a notice of default directed to any respondent who fails to file a verified response to a charge within 60 days of receipt of the notice of the charge, unless the respondent can demonstrate good cause as to why such notice should not issue. The term "good cause" shall be defined by rule promulgated by the Department. Within 30 days of receipt of the respondent's response, the complainant may file a reply to said response and shall serve a copy of said reply on the respondent or his representative. A party shall have the right to supplement his response or reply at any time that the investigation of the charge is pending. The Department shall, within 10 days of the date on which the charge was filed, and again no later than 335 days thereafter, send by certified or registered mail written notice to the complainant and to the respondent

CAU Removal 000153

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 155 of 640 PageID #:162

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

informing the complainant of the complainant's right to either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court under subparagraph (2) of paragraph (G), including in such notice the dates within which the complainant may exercise this right. In the notice the Department shall notify the complainant that the charge of civil rights violation will be dismissed with prejudice and with no right to further proceed if a written complaint is not timely filed with the Commission or with the appropriate circuit court by the complainant pursuant to subparagraph (2) of paragraph (G) or by the Department pursuant to subparagraph (1) of paragraph (G).

(B–1) Mediation. The complainant and respondent may agree to voluntarily submit the charge to mediation without waiving any rights that are otherwise available to either party pursuant to this Act and without incurring any obligation to accept the result of the mediation process. Nothing occurring in mediation shall be disclosed by the Department or admissible in evidence in any subsequent proceeding unless the complainant and the respondent agree in writing that such disclosure be made.

(C) Investigation.

(1) After the respondent has been notified, the Department shall conduct a full investigation of the allegations set forth in the charge.

(2) The Director or his or her designated representatives shall have authority to request any member of the Commission to issue subpoenas to compel the attendance of a witness or the production for examination of any books, records or documents whatsoever.

(3) If any witness whose testimony is required for any investigation resides outside the State, or through illness or any other good cause as determined by the Director is unable to be interviewed by the investigator or appear at a fact finding conference, his or her testimony or deposition may be taken, within or without the State, in the same manner as is provided for in the taking of depositions in civil cases in circuit courts.

(4) Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference prior to 365 days after the date on which the charge was filed, unless the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed or the charge has been dismissed for lack of jurisdiction. If the parties agree in writing, the fact finding conference may be held at a time after the 365 day limit. Any party's failure to attend the conference without good cause shall result in dismissal or default. The term "good cause" shall be defined by rule promulgated by the Department. A notice of dismissal or default shall be issued by the Director. The notice of default issued by the Director shall notify the respondent that a request for review may be filed in writing with the Commission within 30 days of receipt of notice of default. The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(D) Report.

(1) Each charge shall be the subject of a report to the Director. The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, and, where indicated by this Act, members of the Commission or their designated hearing officers.

(2) Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and

CAU Removal 000154

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 156 of 640 PageID #:163

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

FILED DATE: 10/31/2018 3:28 PM  2018CH02497

conclusions, as well as the reasons for the determinations on all material issues. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance.

(3) If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(4) If the Director determines that there is substantial evidence, he or she shall notify the complainant and respondent of that determination. The Director shall also notify the parties that the complainant has the right to either commence a civil action in the appropriate circuit court or request that the Department of Human Rights file a complaint with the Human Rights Commission on his or her behalf. Any such complaint shall be filed within 90 days after receipt of the Director's notice. If the complainant chooses to have the Department file a complaint with the Human Rights Commission on his or her behalf, the complainant must, within 30 days after receipt of the Director's notice, request in writing that the Department file the complaint. If the complainant timely requests that the Department file the complaint, the Department shall file the complaint on his or her behalf. If the complainant fails to timely request that the Department file the complaint, the complainant may file his or her complaint with the Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Human Rights Commission, the complainant shall give notice to the Department of the filing of the complaint with the Human Rights Commission.

(E) Conciliation.

(1) When there is a finding of substantial evidence, the Department may designate a Department employee who is an attorney licensed to practice in Illinois to endeavor to eliminate the effect of the alleged civil rights violation and to prevent its repetition by means of conference and conciliation.

(2) When the Department determines that a formal conciliation conference is necessary, the complainant and respondent shall be notified of the time and place of the conference by registered or certified mail at least 10 days prior thereto and either or both parties shall appear at the conference in person or by attorney.

(3) The place fixed for the conference shall be within 35 miles of the place where the civil rights violation is alleged to have been committed.

(4) Nothing occurring at the conference shall be disclosed by the Department unless the complainant and respondent agree in writing that such disclosure be made.

(5) The Department's efforts to conciliate the matter shall not stay or extend the time for filing the complaint with the Commission or the circuit court.

(F) Complaint.

(1) When the complainant requests that the Department file a complaint with the Commission on his or her behalf, the Department shall prepare a written complaint, under oath or affirmation, stating the nature of the civil rights violation substantially as alleged in the charge previously filed and the relief sought on behalf of the aggrieved party. The Department shall file the complaint with the Commission.

CAU Removal 000155

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 157 of 640 PageID #:164

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

(2) If the complainant chooses to commence a civil action in a circuit court, he or she must do so in the circuit court in the county wherein the civil rights violation was allegedly committed. The form of the complaint in any such civil action shall be in accordance with the Illinois Code of Civil Procedure.

(G) Time Limit.

(1) When a charge of a civil rights violation has been properly filed, the Department, within 365 days thereof or within any extension of that period agreed to in writing by all parties, shall issue its report as required by subparagraph (D). Any such report shall be duly served upon both the complainant and the respondent.

(2) If the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Commission, the form of the complaint shall be in accordance with the provisions of paragraph (F)(1). If the complainant commences a civil action in a circuit court, the form of the complaint shall be in accordance with the Illinois Code of Civil Procedure. The aggrieved party shall notify the Department that a complaint has been filed and shall serve a copy of the complaint on the Department on the same date that the complaint is filed with the Commission or in circuit court. If the complainant files a complaint with the Commission, he or she may not later commence a civil action in circuit court.

(3) If an aggrieved party files a complaint with the Human Rights Commission or commences a civil action in circuit court pursuant to paragraph (2) of this subsection, or if the time period for filing a complaint has expired, the Department shall immediately cease its investigation and dismiss the charge of civil rights violation. Any final order entered by the Commission under this Section is appealable in accordance with paragraph (B)(1) of Section 8–111. Failure to immediately cease an investigation and dismiss the charge of civil rights violation as provided in this paragraph (3) constitutes grounds for entry of an order by the circuit court permanently enjoining the investigation. The Department may also be liable for any costs and other damages incurred by the respondent as a result of the action of the Department.

(4) The Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.

(H) This amendatory Act of 1995 applies to causes of action filed on or after January 1, 1996.

(I) This amendatory Act of 1996 applies to causes of action filed on or after January 1, 1996.

(J) The changes made to this Section by Public Act 95–243 apply to charges filed on or after the effective date of those changes.

(K) The changes made to this Section by this amendatory Act of the 96th General Assembly apply to charges filed on or after the effective date of those changes.

(Source: P.A. 95–243, eff. 1–1–08; 96–876, eff. 2–2–10.)

Section 99. Effective date. This Act takes effect upon becoming law.

Approved: August 26, 2011
Effective: August 26, 2011

CAU Removal 000156

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 158 of 640 PageID #:165

HUMAN RIGHTS—PREGNANCY—PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-996...

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

CAU Removal 000157

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
10/31/2018 3:28 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **MICHELLE ABRAHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2018 CH 02497** |
| ) | |
| **COMMUNITY ALTERNATIVES** ) | **Honorable Judge Anna Loftus** |
| **UNLIMITED,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF HER
### MOTION TO SUPPLEMENT HER RESPONSE TO
### DEFENDANT'S MOTION TO DISMISS

Plaintiff, Michelle Abraham, by and through her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Reply in Support of Her Motion to Supplement Her Response to Defendant's Motion to Dismiss Pursuant to Section 2-619 of the Code of Civil Procedure, states as follows:

In its response brief, Defendant continues to focus on cases that are not on point, including relying on court decisions that relied on statutory language that was removed from the Illinois Human Rights Act more than 7 years ago, cases where plaintiffs withdrew their charges with the IDHR (unlike here), or cases where plaintiffs failed to plead they had exhausted their administrative remedies (unlike here).

### A. Defendant's Cases Applying the Wrong Statutory Language

In the *O'Connell* case, the statutory section that the *O'Connell* court relied on, specifically 775 ILCS 5/7A-102(A-1), was stricken from the statute in August of 2011 (prior to the *O'Connell* decision but after the events in *O'Connell* occurred). A copy of the statute as amended in 2011 is

FILED DATE: 10/31/2018 3:28 PM  2018CH02497

attached hereto as Exhibit A. The language the *O'Connell* court relied on in dismissing the IDHR claim is as follows: "The Complaint must notify the [Illinois Department of Human Rights] of his or her decision in writing within 35 days of receipt of the [IDHR]'s notice to the complainant and the [IDHR] shall close the case if the complainant does not do so" is no longer in the statute. It was removed in 2011. *See Ex. A.* In other words, the very basis for the *O'Connell* decision is no longer valid. While Defendant may have had a winning argument circa 2011, it does not in 2018. Moreover, unlike here, the plaintiff never received a right to sue letter from the IDHR. He only received a right to sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC"). The opinion only addresses the right to sue letter received from the EEOC, stating, [e]ventually, O'Connell received a right to sue letter from the EEOC. *O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4916464, at *2 (N.D. Ill. Oct. 17, 2011). In this case, the IDHR issued a right to sue letter to Ms. Abraham that specifically recognizes her right to pursue her claim in court, as she has done. Moreover, this case is governed by post-2011 amended Illinois Human Rights Act and the most recent work sharing agreement between the EEOC and the IDHR, both of which post-date the O'Connell decision. The most recent worksharing agreement was filed in this matter on October 14, 2018 as Exhibit A to Plaintiff's Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss. What is especially troubling here is not only that the Defendant has presented an argument to the court which is based on an outdated statute and worksharing agreement, but that it appears Defendant was on notice of the issues concerning the statute. Defendant cites to *Hankins v. Best Buy Co., Inc.* in which the district court references the "version of the IHRA that was *in effect* when Hankins's charge was filed" *Hankins v. Best Buy Co.*, No. 10 CV 4508, 2011 WL 6016233, at *5 (N.D. Ill. Dec. 2, 2011). In other words, one of the very cases Defendant cites acknowledges the necessity of applying the statute that was "in effect"

CAU Removal 000159

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

at the time the charge was filed. It is inexplicable that the Defendant here has tried to dismiss Plaintiff's case based on statutory language that has long been excluded from state law. This is the second time in this case Defendant has argued the law before this Court based on statutory language that has since been removed or modified in the Illinois Human Rights Act.

Two other cases Defendant relies on have no relevance to the case before this Court because the plaintiffs there withdrew the charge with the IDHR before a final order was entered dismissing the charge, a fact that doesn't exist in this case. In *Shofner,* the plaintiff *withdrew* her charge with the IDHR before the matter was concluded, and the court wrote, "[i]t is well-established that a complainant who voluntarily withdraws a charge before the IDHR issues a final order addressing whether there is substantial evidence supporting the alleged civil rights violation has failed to exhaust her administrative remedies." *Shofner v. Branding Iron Holdings, Inc.*, No. 15-CV-1166-JPG-DGW, 2016 WL 879630, at *6 (S.D. Ill. Mar. 8, 2016). In *Ocampo,* the plaintiff also *withdrew* her charge with the IDHR before the right to sue letter was issued by the IDHR and again that was the basis for dismissal. *Ocampo v. Remedial Envtl. Manpower, Inc.*, No. 13-CV-06283, 2014 WL 2893190, at *5 (N.D. Ill. June 26, 2014). ("If Ocampo desired to proceed in this Court on her IHRA claims, she should not have voluntarily dismissed the charges filed with the IDHR. As she did withdraw those charges, this Court must dismiss her IHRA claims based on her failure to exhaust her administrative remedies.").

The other two cases Defendant submits to this Court involved a plaintiff who failed to plead that the IDHR had concluded its process. In *Good v. CPI Corp.,* the issue concerned the plaintiff's failure to *plead* that she had received a right to sue from the IDHR. The court rejected the motion to dismiss that was based on failure to plead exhaustion of administrative remedies because even though the right to sue wasn't referenced in the complaint it was included in the

CAU Removal 000160

FILED DATE: 10/31/2018 3:28 PM    2018CH02497

record. *Good v. CPI Corp.,* No. 11-CV-0714-MJR-PMF, 2012 WL 4183214, at *9 (S.D. Ill. Sept. 18, 2012) ("With that said, an IDHR right to sue letter is part of the record (Doc. 2–1). One of four issues raised was deemed supported by substantial evidence; which issue is unknown to the Court. Because the parties do not explore this issue in any greater depth, the Court's analysis will also end, for now.")  The same failure to allege a final order by the IDHR was at issue in *Wierciszewski* and proved fatal to plaintiff's case. *Wierciszewski v. Granite City Illinois Hosp. Co., LLC*, No. 3:11CV-00120-GPM-SCW, 2011 WL 1615191, at *3 (S.D. Ill. Apr. 28, 2011) ("Because Wierciszewski does not allege that she received a final order of the IHRC before bringing this suit, her IHRA claims will be dismissed."). In this case, Plaintiff received, and alleged that she received, a final order called Notice of Dismissal for Lack of Jurisdiction which, by its own language, specifically permitted her to file a lawsuit in the Circuit Court.

In this case, Plaintiff neither withdrew her charge nor failed to plead exhaustion. Moreover, she is relying on the relevant and current statutory provisions to support her case, not statutory provisions that have been removed from the law or modified, as Defendant does. She is also relying on the current worksharing agreement between the EEOC and the IDHR, not an agreement entered into years ago that is not before this Court, as Defendant does.

**WHEREFORE**, for the foregoing reasons, and the reasons set forth in Plaintiff's Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss, Plaintiff Michelle Abraham respectfully requests that her motion be granted.

**Dated**: October 31, 2018                    Respectfully submitted,

                                                              **MICHELLE ABRAHAM**

                                                              /s/ Ruth I. Major
                                                              One of Her Attorneys

4

FILED DATE: 10/31/2018 3:28 PM   2018CH02497

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000162

FILED DATE: 10/31/2018 3:28 PM    2018CH02497

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2018, I caused **Plaintiff's Reply in Support of Her Motion to Supplement Her Response to Defendant's Motion to Dismiss** to be filed with the Clerk of Court and emailed notification of said filing to all parties listed below:

> Julie Badel
> Michelle Marks
> Epstein Becker Green P.C.
> 227 West Monroe Street, Suite 3250
> Chicago, Illinois 60606
> Phone: (312) 499-1400
> jbadel@ebglaw.com
> mgmarks@ebglaw.com

/s/ Ruth I. Major

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000163

Order                                   (Rev. 02/24/05) CCG N002

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Michelle Abraham,
        v.    Plaintiff,
                                  No. 2019 CH 2497
Community Alternatives
Unlimited Defendant
                  **ORDER**

This matter, coming to be heard on Plaintiffs Motion to Supplement Response to Defendant's 2-615 Motion to Dismiss, due notice having been given and the court being fully advised in the premises.

<u>IT IS HEREBY ORDERED</u>

1. Plaintiffs motion is granted;
2. The briefing on Plaintiffs Motion to Supplement Response to Defendants 2-615 Motion to Dismiss will be considered a Supplemental briefing by the Parties on the pending Motion to Dismiss.

Attorney No.: 45037
Name: Ruth Major
Atty. for: Plaintiff
Address: 70 W. Madison St 2020
City/State/Zip: Chicago IL 60603
Telephone: 312/813-7544

ENTERED:

Dated: _____

Judge Anna M. Loftus

_____   JAN 17 2019   _____
Judge                                Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – CHANCERY DIVISION

ABRAHAMS,
      Plaintiff,        )

v.        )

COMM - ALTERNATIVES

      Defendant.        )

Case No: 2018-CH-02497
Calendar 15

### TUA ORDER

Plaintiff's/Defendant's Motion   TO DISMISS   is taken under

advisement. A copy of this Court's decision will be faxed to:

     JULIE BADEL    at    312-698-9861   and
     (print full name)      (FAX NUMBER)

     RUTH MAJOR    at    312-345-1998
     (print full name)      (FAX NUMBER)

jbadel@abglaw.com
rmajor@major-law.com

DATE:      Judge Anna M. Loftus
     JAN 29 2019
     Circuit Court-2102

_____
Judge Anna M. Loftus

Atty. No.   18484
Atty. Name   J BADEL
Firm Name   EPSTEIN BECKER
Attorney For   DEF.
Address:   227 W. MONROE
City:   CHG 40606
Phone:   312-499-1453

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| Michelle Abraham,<br>    Plaintiff<br><br>v.<br><br>Community Alternatives Unlimited,<br>    Defendant. | No. 18 CH 2497<br>Calendar 15<br><br>Hon. Anna M. Loftus<br>Judge Presiding |

MEMORANDUM OPINION & ORDER

    Plaintiff Michelle Abraham, a former employee of Defendant Community Alternatives Unlimited, has filed a suit for retaliatory discharge. Defendant has moved to dismiss on two bases: first, that Plaintiff failed to exhaust her administrative remedies with respect to the EEOC; and second, that she failed to timely serve.

    The Court rejects both arguments, holding that Plaintiff appears to have exhausted her administrative remedies, and that service was sufficiently diligent. The Motion to Dismiss is denied.

## I. Background

    Plaintiff was an employee of Community Alternative Unlimited (CAU) for over 17 years. She has filed a complaint against her former employer, alleging she was discharged in retaliation for reporting discrimination in the workplace, a violation of the Illinois Human Rights Act. 775 ILL. COMP. STAT. 5/1-101 *et seq.* ("IHRA"). The Complaint presents the following facts, which the Court takes as true for the purposes of the present Motion to Dismiss. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (Ill. 1997).

    The issues raised in the present Motion are almost wholly procedural. For that reason, suffice it to say Plaintiff alleges she was constructively discharged from CAU in or around December 2016 after reporting harassment in the workplace.

    On March 3, 2017, Plaintiff filed a Charge of Discrimination against CAU with the Equal Employment Opportunity Commission.

    On May 1, 2017, Plaintiff received a letter from the Illinois Department of Human Rights informing her that, due to a cooperative workshare agreement between the IDHR and EEOC, a copy of her complaint with the EEOC had been automatically filed with the IDHR. The IDHR letter also stated that after the EEOC issued its findings, Plaintiff could seek further action and review by sending a copy of the EEOC findings to the IDHR along with a request that the IDHR

CAU Removal 000166

initiate its own investigation. The letter advised that any such request had to be sent within 30 days of receiving the EEOC determination.

On June 2, 2017, the EEOC mailed its determination to Plaintiff that, based on the information obtained, no violation of the IHRA had occurred. Upon receipt of this determination, Plaintiff then had 30 days to submit the findings and a request for further investigation to the IDHR.

On September 8, 2017, 98 days after receiving the EEOC determination, Plaintiff submitted a copy of the EEOC's findings along with her request for an investigation to the IDHR.

On November 21, 2017, IDHR issued a Notice of Dismissal, dismissing the claim for being untimely presented. The letter accompanying the IDHR Notice of Dismissal noted that Plaintiff had two courses of action: she could either seek review of the dismissal before the Illinois Human Rights Commission before February 26, 2018, or commence a civil action in state court within 90 days of her receipt of the letter.

On November 27, 2017, Plaintiff received the IDHR letter.

On February 23, 2018, 88 days from Plaintiff's receipt of the IDHR letter, Plaintiff filed the present Complaint.

## II. Legal Standard

Defendant has sought dismissal under Section 2-619. Under Section 2-619, the Court must accept as true all well-pleaded facts and their attendant inferences. Defendant may introduce additional facts by affidavit. 735 ILL. COMP. STAT 5/2-619(a)(9). The Section 2-619(a)(9) arguments raised by Defendant seek a dismissal upon a showing of other affirmative matters, outside the four corners of the complaint, which defeat the claim in whole or in part. *Alford v. Shelton (In re Estate of Shelton)*, 2017 IL 121199, ¶21.

Failure to exhaust administrative remedies with respect to EEOC proceedings under the Illinois Human Rights Act is properly raised under Section 2-619. *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶¶13, 35.

Likewise, failure to timely serve under Rule 103 is properly raised as part and parcel of a Section 2-619 argument, as timeliness is an affirmative matter outside the four corners of the pleading. *Segal v. Sacco*, 136 Ill. 2d 282, 285–86 (Ill. 1990); *Smith v. Menold Constr., Inc.*, 348 Ill. App. 3d 1051, 1057–58 (4th Dist. 2004). *See also* ILL. SUP. CT. R. 103(b).

Should the allegations be insufficient, the Court may consider permitting or requiring amendment. 735 ILL. COMP. STAT. 5/2-615(d), 2-616(a); *see also Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273–76 (Ill. 1992). Nevertheless, if the underlying legal theory is flawed such that no cause of action could be stated, amendment would be futile. *Regas v. Associated Radiologists*, 230 Ill. App. 3d 959, 968 (1st Dist. 1992) (discussing *Loyola Academy* factors).

CAU Removal 000167

## III. Motion to Dismiss

As noted above, CAU's Motion raises two primary arguments. First, it argues the Court lacks jurisdiction to hear this matter, because Plaintiff has failed to exhaust her administrative remedies.[1] Second, and alternatively, it asks that the Court dismiss because Plaintiff failed to diligently serve.

### A. Jurisdiction and Exhaustion

The crux of CAU's first argument is that, by waiting more than 35 days before submitting the EEOC's findings to the IDHR for further investigation, Plaintiff failed to exhaust her administrative remedies. CAU's argument runs counter to the plain language of the statute and the caselaw both.

### 1. Section 7A-102

CAU founds its argument on the language of Section 7A-102 of the Illinois Human Rights Act, which provides in relevant part:

> (3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.

775 ILL. COMP. STAT. 5/7A-102(A-1)(3). This statute clearly provides for a 35-day period for the complainant to seek IDHR review of an EEOC determination before the EEOC dismissal determination is adopted.

Based on this 35-day language, CAU argues that, by not timely providing the EEOC determination to the IDHR, Plaintiff failed to exhaust her administrative remedies. But CAU's argument ignores the very next paragraph of the statute:

---

[1] Plaintiff also hints at a third argument: that "the Illinois Human Rights Act and its regulations do not provide Plaintiff with a right of court review under these circumstances." Motion to Dismiss, p.1. To the extent this is a repetition of the first argument (i.e. if the Court lacks subject-matter jurisdiction, then there is no right of court review), it is resolved through the Court's denial of that argument. To the extent this is a separate argument, it is wholly underdeveloped.

Page 3 of 9

> (a) If the complainant does not file a written request with the
> Department to review the EEOC's determination within 35 days
> after receipt of the Department's notice, the Department shall
> notify complainant, within 10 business days after the expiration
> of the 35-day period, that the decision of the EEOC has been
> adopted by the Department as a dismissal for lack of substantial
> evidence and that the complainant has the right, within 90 days
> after receipt of the Department's notice, to commence a civil
> action in the appropriate circuit court or other appropriate court
> of competent jurisdiction. The Department's notice to
> complainant that the Department has adopted the EEOC's
> determination shall constitute the Department's report for
> purposes of subparagraph (D) of this Section.

775 ILL. COMP. STAT. 5/7A-102(A-1)(3)(a). This subsection clearly provides that,
where no written request for review is filed, and IDHR adopts the EEOC's
determination, the complainant has a 90-day window from receipt of the IDHR
Notice of Dismissal in which to commence a civil action.

Here, Plaintiff did not file a written request for review within 35 days. IDHR
adopted the EEOC determination on November 21, 2017, Plaintiff received it
November 27, and she filed this suit 88 days later, on February 23, 2018, within the
90-day window.

### 2. Caselaw

The parties address three cases: *Robinson, Laurie,* and *Ocampo.* None of
them change the Court's determination.

In *Robinson,* the First District found that a notice of dismissal was indeed an
exhaustion of administrative remedies. *Robinson v. Vill. of Oak Park,* 2013 IL App
(1st) 121220. In *Robinson,* an employee alleged she was laid off after refusing to
take a position that conflicted with her religious beliefs. *Id.* ¶14. She timely filed a
claim under the IHRA, and after a full investigation, was issued a Notice of
Dismissal. *Id.* ¶15. Two months later, the employee filed suit in state court. *Id.*
Defendant prevailed on summary judgment, the trial court holding "plaintiff had no
viable claim" for any Human Rights Act violation. *Id.* ¶16.

On appeal, the First District reviewed whether the employee had properly
exhausted her administrative remedies. Even though the employee had never filed
a request to have the decision reviewed by IDHR, the First District found that she
had exhausted her remedies. Citing to Section 7A-102, the *Robinson* court held:

> The aggrieved party's rights do not end [at an IHRC dismissal] as
> he/she is given 90 days to either file a request for review with the
> Commission or file a complaint in Illinois circuit court, where
> he/she is now entitled to request a jury trial in the event her

CAU Removal 000169

> complaint and pleadings withstand procedural and substantive defenses.

*Id.* at ¶5 (citing 775 ILL. COMP. STAT. 5/7A-102(C)(4)).

The *Robinson* court further explained how a 2008 amendment had given state courts supplemental jurisdiction over IHRA claims:

> Prior to August 2007, the Illinois Human Rights Act provided the Illinois Human Rights Commission with exclusive jurisdiction to adjudicate claims of civil rights violations, with appeals directly to the appellate court to review the Commission's actions under an arbitrary and capricious standard and for abuse of discretion. The Illinois statute was only recently amended to allow plaintiffs who are dissatisfied with the Human Rights Commission's finding of no substantial evidence to support a charge the opportunity to file direct appeals of employment discrimination issues to the circuit courts[.]

*Id.* at ¶18 (citations to legislative history omitted).

The *Robinson* court eventually affirmed, but not for any of the procedural issues; instead, it affirmed on the merits, holding the defendant had offered a reasonable accommodation. *Id.* at ¶42. In light of the reasonable accommodation, there was no claim on the merits. *Id.*

The *Robinson* application here is self-evident: because Plaintiff has filed her complaint within 90 days, it fell within the proper timeframe of Section 7A-102, and this Court can properly exercise jurisdiction over it.

In a similar vein, the facts of *Laurie* are particularly instructive. *Laurie v. William M. Bedell Achievement Res. Ctr.*, 2017 U.S. Dist. LEXIS 41536 (S.D. Ill. 2017). In *Laurie*, the EEOC conducted an investigation, closed its file, and issued a right-to-sue letter. *Id.* at *2. The plaintiff filed the EEOC determination with IDHR after 51 days, rather than within 30 days as Section 7A-102(A-1)(1) required. *Id.* at **2–3 (citing 775 ILL. COMP. STAT. 5/7A-102(A-1)(1)). IDHR concluded it lacked jurisdiction due to the late filing and issued a right-to-sue letter. *Id.* at *3.

The *Laurie* court noted that receiving a right-to-sue letter from the EEOC alone was not sufficient to establish exhaustion. *Id.* at **9–10. But the plaintiff's "failure to obtain a final order on the merits does not immediately bar her from filing suit in court." *Id.* The court concluded that, though the plaintiff sent the EEOC determination to IDHR 21 days late, IDHR had still issued a her a Notice of Dismissal, with the attendant 90-day window. *Id.* at *10. Because she had filed within that 90-day window of the IDHR letter, the claim was timely: "Because Laurie received the IDHR's Notice of Dismissal and filed her lawsuit within the 90 day window, her complaint satisfies the exhaustion requirement of the IHRA at the pleading stage." *Id.* at *13.

Page **5** of 9

CAU Removal 000170

Here, just as in *Laurie*, Plaintiff sent her EEOC determination to IDHR late. Though she did not receive a decision on the merits from IDHR, she did receive an IDHR Notice of Dismissal. That Notice of Dismissal triggered the 90-day window, and she filed within it.

Finally, in Reply, CAU relies on *Ocampo* for the proposition that administrative remedies must still be exhausted before pursuing a claim in state court. *Ocampo v. Remedial Env't Manpower, Inc.*, 2014 U.S. Dist. LEXIS 86865 (N.D. Ill. 2014). In *Ocampo*, the employee was allegedly fired for reporting sexual harassment to her supervisors. *Id.* at *3. She filed charges of discrimination and harassment with both the EEOC, which she pursued, and with IDHR, which she later withdrew. *Id.* at **3–4, 11. IDHR issued an Order of Closure, approving the voluntary withdrawal. *Id.* at *11. After that order, she filed a court case, which was dismissed for failure to exhaust administrative remedies: "If Ocampo desired to proceed in this Court on her IHRA claims, she should not have voluntarily dismissed the charges filed with the IDHR." *Id.* at *18.

By relying on this case, it is clear that Defendants are confusing the issue at bar. The plaintiff in *Ocampo* argued that, after the 2008 amendment, a final order from the IHDR was no longer required, and administrative exhaustion was no longer obligatory before pursuing claims in court. *Id.* at *15. The *Ocampo* court rejected that argument: "Ocampo did not permit the IDHR to finish evaluating her charge; instead, the charge was voluntarily withdrawn and therefore closed." *Id.*

Here, Plaintiff has not raised any such argument. Instead, she argues quite simply that the IDHR Notice of Dismissal was a final order squarely within the ambit of Section 7A-102. This is consistent with the *Ocampo* court's discussion of how Section 7A-102 functions:

> For instance, if the Director of the IDHR makes a determination that there is no substantial evidence, the IDHR is to dismiss the charge by order of the Director and the complainant is to be given "notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court." If the complainant elects to pursue a civil action, it must be initiated "within 90 days after receipt of the Director's notice."

*Id.* at **14–15 (citing 775 ILL. COMP. STAT. 5/7A-102(D)(3)) (internal citations omitted).

In sum, though are plenty of cases that probe the edges of IHRA jurisdiction, this is not one of them. The language of Section 7A-102, and the cases interpreting it, are quite clear that an IDHR Notice of Dismissal is considered final for the purposes of administrative exhaustion, and permits a complainant to pursue claims further in court. Plaintiff has exhausted her remedies, and her claim is timely.

Page **6** of **9**

**B. Diligent Service**

Alternatively, CAU seeks dismissal arguing that Plaintiff failed to timely serve the summons and Complaint in this matter. Rule 103(b) requires a plaintiff to exercise reasonable diligence in service, and provides that failure to diligently serve prior to the expiration of the statute of limitations is a basis for dismissal with prejudice. ILL. SUP. CT. R. 103(b).

The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process, and to prevent the circumvention of the statute of limitations. *Segal*, 136 Ill. 2d at 286. The basic policy of statutes of limitation is to "afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible." *Id., citing Geneva Const. Co. v. Martin Transfer & Storage Co.,* 4 Ill. 2d 273, 289–90 (Ill. 1954). The "[p]revention of intentional delay in the service of summons which would postpone service for an indefinite time after a statutory period of limitations has run, was a primary reason for the passage of Rule 103(b)." *Id.* at 287, *quoting Karpiel v. LaSalle Nat'l Bank,* 119 Ill. App. 2d 157, 160 (2d Dist. 1970).

Here, though the 90-day period contemplated by Section 7A-102 is akin to a statute of limitations. The relevant provision of Rule 103(b) provides as follows:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice . . . .

ILL. SUP. CT. R. 103(b). Here, because the 90-day period contemplated by Section 7A-102 has long-since expired, any Rule 103(b) dismissal would be with prejudice.[2]

Diligence under Rule 103(b) is subject to a number of factors. The factors are not exhaustive, but the Illinois Supreme Court's recitation in *Segal* is canonical:

> (1) the length of time used to obtain service of process;
> (2) the activities of plaintiff;
> (3) plaintiff's knowledge of defendant's location;
> (4) the ease with which defendant's whereabouts could have been ascertained;

---

[2] The caselaw refers to it colloquially as a statute of limitations. *E.g., Nehan v. Local Union No. 1-Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union,* 2014 U.S. Dist. LEXIS 83085, *4 (N.D. Ill. 2014). *But see LaRiviere v. Bd. of Trs. of S. Ill. Univ.,* 2015 IL App (5th) 140443-U, ¶13 (referring to "90-day limitations period" for EEOC right-to-sue letter). *Accord, e.g., Van Milligen v. Dep't of Empl. Sec.,* 373 Ill. App. 3d 532, 542 (2d Dist. 2007) (administrative review subject to 35-day limitations period, and not a statute of limitations). Whatever the academic merits of this distinction, the parties today are in agreement that the 90-day period interacts with Rule 103(b) as if it were a statute of limitations: the same principles apply.

CAU Removal 000172

(5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service;
(6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant.

*Segal*, 136 Ill. 2d at 287 (with line breaks for clarity).

In *Segal* itself, the Supreme Court held that a 19-week delay (i.e. 133 days) in service following filing did not warrant dismissal. *Id.* at 288–89. The only excuse offered by the plaintiff in that case was that he had simply forgotten to place the summons for service. *Id.* at 287. Because the delay was inadvertent and unintentional, there was no intent to subvert the statute of limitations. *Id.* at 288. And, there was no indication the inactivity in the case between its filing and service had caused any prejudice: no evidence went stale, no witnesses became unavailable, and no memories lapsed. *Id.* On those facts, the "harsh penalty" of a Rule 103(b) involuntary dismissal would not serve the purpose of the Rule, and was not warranted. *Id.* at **288–89.

Here, the Complaint was filed on February 23, 2018. Though not formally served, Defendant received actual notice 24 days thereafter, when Plaintiff's counsel emailed a filestamped copy of the document. The parties engaged in settlement talks for a few days, before CAU indicated it on March 21 that was no longer interested in pursuing settlement.

On March 20, Plaintiff attempted to place the summons with the Sheriff for service. But the Sheriff did not accept it, because the summons—the *original* summons issued in this matter—was set to expire on March 25. And so on March 23 Plaintiff issued alias summons, which was eventually served April 12, a total of 48 days after filing.

On the totality of the circumstances, Plaintiff's service 48 days after filing was reasonable. Despite CAU's arguments as to inactivity, there is no indication Plaintiff filed and then sat back to do nothing; the facts establish quite the opposite. CAU not only had actual knowledge of the lawsuit, but had a filestamped copy of the Complaint within 24 days of filing. The Court is fully aware that actual knowledge of a pending case is no substitute for service of process. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (Ill. 1986). But actual knowledge certainly moots any possible argument as to prejudice, and CAU has pointed to none.[3]

Could Plaintiff have placed the summons and Complaint for service the day after they were filed? Of course. Her timing, however, is still reasonably diligent. Dismissal for failure to more diligently serve would serve neither the purpose of Rule 103(b) nor the ends of justice, and the Court declines CAU's invitation to do so.

---

[3] Finally, the present facts are easily distinguishable from any cases cited by CAU. *See Kole v. Brubaker*, 325 Ill. App. 3d 944 (1st Dist. 2001) (plaintiff waited 9 months before service and gave no explanation as to why); *Emrikson v. Morfin*, 2012 IL App (1st) 111687 (plaintiff waited 13 months before service and never consulted accident report to figure out defendant's address); *Long v. Elborno*, 376 Ill. App. 3d 970 (1st Dist. 2007) (plaintiff waited 7 months before service and made no diligent attempts in that timeframe).

Page **8** of 9

## IV. Orders

Defendant CAU's Motion to Dismiss is denied in its entirety.

CAU is ordered to Answer within 35 days, or by September 22, 2021.

This case is set for status on **Wednesday, September 29, 2021, at 10:00 a.m.** The status will occur via Zoom, and may be accessed through the following hearing link: https://circuitcourtofcookcounty.zoom.us/j/95535573920. Further information about remote operations is available in the Court's standing order.

On the status date, the Court anticipates discussing whether Plaintiff is seeking any equitable relief. If not, the Court would anticipate a transfer to the appropriate division for further proceedings.

Chambers staff will email a copy of this Order to the parties.

ENTERED:

/s/ *Anna M. Loftus*

Judge Anna M. Loftus, No. 2102

Page **9** of **9**

Hearing Date: 9/29/2021 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
9/17/2021 6:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

14871063

MICHELLE ABRAHAM,                )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        Case No. 2018-CH-02497
                                 )        Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,)
                                 )
        Defendant.               )

<u>**NOTICE OF MOTION**</u>

TO:     Ruth Major
        Law Offices of Ruth Major
        30 W. Monroe St. – Suite 1650
        Chicago, IL 60603

        PLEASE TAKE NOTICE that on **September 29, 2021** at **10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Anna Loftus or any judge via zoom, and there and then present **DEFENDANT'S MOTION TO RECONSIDER THE MEMORANDUM OPINION AND ORDER DATED AUGUST 18, 2021 THAT DENIED DEFENDANT'S SECTION 2-619 MOTION TO DISMISS OR, ALTERNATIVELY, FOR CERTIFICATION OF A DISPOSITIVE QUESTION OF LAW FOR AN INTERLOCUTORY APPEAL**, a copy of which is attached and served upon you.

        Pursuant to Judge Loftus's Standing Order dated September 1, 2021, you are notified that this motion shall be heard remotely, via Zoom, which can be joined at the following link:

        https://circuitcourtofcookcounty.zoom.us/j/95535573920

        The Meeting ID is 955 3557 3920. No password is required.

        This motion is being piggybacked for notice purposes onto the existing status hearing date and time in the is matter of **September 29, 2021**, at **10:00 a.m.**

                        By: /s/ Brian E. Spang
                            One of its attorneys

Peter A. Steinmeyer
Brian E. Spang
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
(312) 499-1400
psteinmeyer@ebglaw.com

FIRM:54006979v1

bspang@ebglaw.com
**Attorney ID# 18494**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that he caused to be served a copy of the foregoing memorandum of law via email and the Court's electronic filing system the 17th[th] day of September 2021 on:

/s/ Brian E. Spang _____

Firm:54006979v1

FIRM:54006979v1

CAU Removal 000176

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

Hearing Date: 9/29/2021 9:30 AM - 9:30 AM
Courtroom Number:
Location:

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
9/17/2021 6:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

14871063

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018-CH-02497 |
| | ) | Calendar: 15 |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO RECONSIDER OF MOTION TO RECONSIDER**
**THE MEMORANDUM OPINION AND ORDER DATED AUGUST 18, 2021 THAT**
**DENIED DEFENDANT'S SECTION 2-619 MOTION TO DISMISS**
**OR, ALTERNATIVELY,**
**FOR CERTIFICATION OF A DISPOSITIVE QUESTION OF LAW FOR AN**
**INTERLOCUTORY APPEAL**

Defendant, Community Alternatives Unlimited, moves the court to reconsider its decision denying Defendant's motion to dismiss Plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust administrative remedies. A memorandum of law and Exhibits 1 through 5 are attached and incorporated as part of this motion.

WHEREFORE, Defendant moves that the court reconsider its decision denying Defendant's dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure, and upon reconsideration grant that motion and dismiss the complaint with prejudice.

FIRM:54009385v1

CAU Removal 000177

FILED DATE: 9/17/2021 6:14 PM  2018CH02497

By: /s/ Brian E. Spang
One of its attorneys

Peter A. Steinmeyer
Brian E. Spang
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
(312) 499-1400
psteinmeyer@ebglaw.com
bspang@ebglaw.com
Attorney ID# 18494

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the foregoing via email and the Court's electronic filing system the 17th[th] day of September 2021 on:

/s/ Brian E. Spang

- 2 -

FIRM:54009385v1

CAU Removal 000178

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
9/17/2021 6:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

14871063

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2018-CH-02497 |
| | ) Calendar: 15 |
| COMMUNITY ALTERNATIVES | ) |
| UNLIMITED, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER THE MEMORANDUM  OPINION AND ORDER DATED AUGUST 18, 2021 THAT DENIED DEFENDANT'S SECTION 2-619 MOTION TO DISMISS OR, ALTERNATIVELY, FOR CERTIFICATION OF A DISPOSITIVE QUESTION OF LAW FOR AN INTERLOCUTORY APPEAL**

The "purpose of a motion to reconsider is to bring to the court's attention … errors in the court's previous application of existing law." *Farmers Auto Ins. Ass'n v. Universal Underwriters Ins. Co.*, 348 Ill. App. 3d 418, 422 (2004) (reconsideration was "appropriate," and trial court properly reconsidered denial of a motion to dismiss, because the trial court's initial denial of the motion to dismiss was erroneous).  Respectfully, the Court erred in interpreting the IHRA by deciding that the IDHR's right to sue notice can be "considered final for the purposes of administrative exhaustion, and permits [Plaintiff] to pursue claims in court."  (Ex. 1, p. 6) (Aug. 18, 2021 Mem Op. & Order).

There is no dispute Plaintiff failed to meet the 30-day deadline to inform the IDHR of the EEOC's determination that no discrimination occurred.  *Bumphus v. Illinois Human Rights Commission*, 2021 IL App (5th) 200037-U, at ¶ 17 ("Section 7A-102(A-1)(1)(iv) of the Act provides that 'the complainant ***must*** submit a copy of the EEOC's determination

1

FILED DATE: 9/17/2021 6:14 PM 2018CH02497

within 30 days after service of the determination by the EEOC on complainant'") (quoting 775 ILCS 5/7A-102(A-1)(1)(iv), emphasis added).[1]  The IDHR properly determined Plaintiff's failure divested it of jurisdiction to review Plaintiff's administrative charge or the EEOC's determination.  *Bumphus*, at ¶¶ 17-18 (IDHR lacked jurisdiction to review complainant's charge because he failed to comply with the 30-day deadline to inform the IDHR of the EEOC's determination).  Because the IDHR lacked jurisdiction to review Plaintiff's charge, the IDHR lacked statutory authority to issue the right to sue notice.  *Bumphus*, at ¶ 22 ("the Department was not authorized from the outset to start its investigation of Bumphus's charge").  The IDHR's right to sue notice therefore "has no legal effect."  *Gilchrist v. Human Rights Comm'n*, 312 Ill. Ap. 3d 597, 601 (1st Dist. 2000) ("A decision by an agency which lacks the statutory power to enter the decision is treated the same as an agency which lacks … subject matter jurisdiction – the decisions are void.  A void order is a complete nullity from its inception and has no legal effect").  And because "the notice of right to sue issued by the IDHR was without legal effect," it was not, and could not be as a matter of law, a final order for administrative exhaustion purposes as a matter of law, requiring dismissal of Plaintiff's IHRA claims.  *Donald v. City of Chicago*, 2021 W 1946335, at *5 (N.D. Ill. May 14, 2021) (applying *Bumphus* to dismiss plaintiff's IHRA claims because, just like here, the plaintiff failed to meet the IHRA's 30-day deadline to notify the IDHR of the EEOC's determination, and therefore failed to exhaust administrative remedies).

---

[1] In accordance with Illinois Supreme Court Rule 23(e)(1), the unpublished *Bumphus v. Illinois Human Rights Commission* written order is attached as Exhibit 2.

CAU Removal 000180

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

The Court's decision was, respectfully, based on two further errors.  <u>First</u>, the Court erred in determining that the "IDHR adopted the EEOC determination" that no discrimination occurred.  (Ex. 1, p. 4).  The IDHR did not adopt the EEOC's determination.  To the contrary, the IDHR properly found that it lacked jurisdiction to take any action on the EEOC's determination because Plaintiff failed to comply with the mandatory 30-day period to notify the IDHR of the EEOC's determination.  (Ex. 3:  Voigt Aff., Ex. E) (Notice of Dismissal for Lack of Jurisdiction, p. 1:  **<u>NOTICE OF DISMISSAL FOR LACK OF JURISDICTION</u>** …").  <u>Second</u>, the Court erred in focusing on a different, 35-day deadline contained within Section 7A-102(A-1)(1)(3).  CAU's motion to dismiss did not argue that the 35-day deadline bars Plaintiff's claims because it could not:  as explained below, that 35-day deadline was never triggered.

These errors combined to result in an erroneous application of the law.  Proper application of the relevant IHRA provisions requires dismissal of Plaintiff's claims for failure to exhaust administrative remedies.  CAU therefore respectfully moves for reconsideration of the Court's denial of its Rule 2-619 motion to dismiss, and dismissal of Plaintiff's claims.

<u>BACKGROUND: THE UNDISPUTED FACTS AND STATUTORY REGIME</u>

I. **Plaintiff Filed an Administrative Charge with the EEOC, Which Was Cross-Filed With the IDHR.**

A complainant seeking redress pursuant to the IHRA must first file an administrative charge within 300 days of the alleged conduct.  775 ILCS 5/7A-102(A).  "If a charge is filed with the Equal Employment Opportunity Commission (EEOC) within

CAU Removal 000181

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

300 calendar days after the date of the alleged civil rights violation, the charge shall be deemed filed with the Department [the IDHR] on the date filed with the EEOC."  775 ILCS 5/7A-102(A-1)(1).  Plaintiff filed a charge with the EEOC on March 3, 2017, which was deemed filed with the IDHR on that date in accordance with 775 ILCS 5/7A-102(A-1)(1). (Ex. 3:  Voigt Aff., Ex. A:  copy of Plaintiff's charge); (*id.*, Ex. B:  IDHR letter to Plaintiff dated May 1, 2017) ("… when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department").

## II.   The EEOC Investigated Plaintiff's Administrative Charge and Issued a Determination Dismissing It Because The EEOC Was Unable To Conclude That Unlawful Discrimination Occurred.

The EEOC was designated to investigate Plaintiff's charge.  (Ex. 3:  Voigt Aff., Ex. B) ("… Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge …").  When the EEOC is the agency designated to investigate a charge, the IDHR takes no action unless and until (1) the EEOC makes a determination of the charge ***and*** (2) the complainant notifies the IDHR of the EEOC's determination.  775 ILCS 5/7A-102(A-1)(1) ("If the EEOC is the governmental agency designated to investigate the charge first, the Department [the IDHR] shall take no action until the EEOC makes a determination on the charge ***and*** after the complainant notifies the Department of the EEOC's determination") (emphasis added).

On June 2, 2017, the EEOC issued is determination on Plaintiff's charge:  "unable to conclude that the information establishes violations of the statutes." (Ex. 3:  Voigt Aff., Ex. C: EEOC "Dismissal and Notice of Rights").

CAU Removal 000182

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

### III.    The IHRA Establishes a Mandatory 30-Day Deadline For Plaintiff to Have Submitted A Copy of the EEOC's Determination to the IDHR.

"Section 7A-102(A-1)(1)(iv) of the Act provides that 'the complainant **_must_** submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant.'" *Bumphus*, at ¶ 17 (quoting 775 ILCS 5/7A-102(A-1)(1)(iv)). Here, the IDHR specifically notified Plaintiff of that mandatory 30-day deadline, even emphasizing the point:  "<u>After the EEOC issues its findings</u>, if you want the Department [the IDHR] to take any further action on your charge, you must send the Department a copy of the EEOC's findings within the 30 days after service of the EEOC's findings on you." (Ex. 3:  Voigt Aff., Ex. B, emphasis in <u>original</u>).

The mandatory 30-day deadline to submit a copy of the EEOC's determination to the IDHR is incorporated in multiple separate sections of Section 7A-102(A-1), which require that the IDHR be "timely notified" in accordance with that 30-day deadline:

<u>First</u>, Section 7-102(A-1)(2) governs "if the EEOC finds reasonable cause to believe there has been a violation of federal law …"  In that event, "if **_both_** "the EEOC finds reason reasonable cause to believe there has been a violation of federal law **_and_** if the Department [the IDHR] is **_timely notified_** of the EEOC's findings by complainant," then the IDHR notifies the complainant that it has adopted the EEOC's reasonable cause determination, and that complainant has the right to proceed with the Illinois Human Rights Commission or to file a lawsuit in court.  775 ILCS 7A-102(A-1)(2) (emphasis added).  The phrase "timely notified" refers back to the requirement that the complainant

CAU Removal 000183

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

"must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant" mandated by Section 7A-102(A-1)((1)(iv).

Second, Section 7-102(A-1)(3) governs if the EEOC does not find reasonable cause to believe discrimination has occurred.  In that event, if "the EEOC either (i) does not issue a determination, but does issue the complainant a notice of right to sue … or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues a complainant a right to sue notice, **_and_** if the Department [the IDHR] is **_timely notified_** of the EEOC's findings by complainant," then the IDHR notifies the complainant that it "will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOCs determination."  775 ILCS 5/7A-102(A-1)(3) (emphasis added).  Again, the phrase "timely notified" refers back to the requirement that the complainant "must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant" mandated by Section 7A-102(A-1)((1)(iv).

In sum, the IHRA *requires* the complainant to submit a copy of the EEOC's determination to the IDHR within 30 days of service of the EEOC's determination. Compliance with that "statutory time limit is a condition precedent to the right to seek a remedy" – *i.e.*, a *mandatory* requirement to exhaust administrative remedies.  *Bumphus*, at ¶ 17 (quoting *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003)).

CAU Removal 000184

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

IV.     **Failure to Submit the EEOC's Determination to the IDHR Within the 30-Day Mandatory Deadline Deprives The IDHR of Jurisdiction to Issue A Right To Sue Notice, And Renders Any Notice of Right To Sue a Nullity and Void.**

"It is well settled that 'compliance with a statutory time limit is a condition precedent to a right to seek a remedy' before an administrative body, and that it is a prerequisite to the acquisition of subject matter jurisdiction." *Bumphus*, at ¶ 17 (quoting *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003)).  That is because "an administrative agency, like a court of limited jurisdiction, can only act 'pursuant to the authority conferred on it by statute.'" *Bumphus*, at ¶ 17 (quoting *Pickering v. Human Rights Comm'n*, 146 Ill. App. 3d 340, 352 (1986)).  Here, the IHRA mandates that timely sending a copy of the EEOC's determination within 30 days to the IDHR is "a necessary prerequisite to establishing the Department's jurisdiction." *Bumphus*, at ¶ 22.

When a complainant fails to timely send a copy of the EEOC's determination to the IDHR, "the Department [is] not authorized from the outset to start its investigation" of the charge. *Bumphus*, at ¶ 22.  "Because compliance with a statutory time limit" – *i.e.*, the 30-day period to submit the EEOC's determination to the IDHR mandated by Section 7A-102(A-1)(1)(iv) – "is a prerequisite to the acquisition of subject matter jurisdiction … the Department lack[s] jurisdiction to review [a] charge" when a complainant fails to comply with that statutory time limit. *Bumphus*, at ¶ 18.  And of course, when the IDHR lacks jurisdiction, it lacks statutory authority to act, rendering any purported actions "void" and having "no legal effect." *Golchrist*, 312 Ill. App. 3d at 601.

CAU Removal 000185

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

V. **Plaintiff Failed to Submit the EEOC's Determination to the IDHR Within the 30-Day Mandatory Deadline.**

There is no dispute that the EEOC sent its determination to Plaintiff on June 2, 2017. (Ex. 3: Voigt Aff., Ex. C). There is also no dispute that Plaintiff waited more than *90 days* – until September 8, 2017 – to submit "to the Department a copy of EEOC's findings." (*Id.*, Ex. E) (IDHR Investigation Report). Consequently, Plaintiff does not, and cannot, dispute the fact that she failed to comply with the 30-day deadline to submit the EEOC's determination to the IDHR mandated by 775 ILCS 5/7A-102(A-1)(1)(iv).

VI. **The IDHR Did <u>Not</u> Adopt The EEOC's Determination; Rather, The IDHR Dismissed The Matter "For Lack of Jurisdiction," So Its Notice of Right to Sue Was Without Legal Effect.**

The Court's Memorandum Opinion & Order states that "IDHR adopted the EEOC determination on November 21, 2017 …" (Mem. Op. & Order, p. 4). Respectfully, the Court erred. The IDHR did not adopt the EEOC's determination. The IDHR dismissed the matter for lack of jurisdiction:

> <u>NOTICE OF DISMISSAL FOR LACK OF JURISDICTION</u> …
> DATE OF DISMISSAL: November 21, 2017.
> 1. YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is NOT jurisdiction to pursue the allegations of the charge. Accordingly … the charge is HEREBY DISMISSED …

(Ex. 3: Voigt Aff., Ex. E) (Notice of Dismissal for Lack of Jurisdiction, p. 1).

That is exactly what occurred in *Bumphus*. The plaintiff there "sent a 'late and untimely' copy of the EEOC's December 13, 2015 determination to the Department on March 8, 2016, well past the 30-day deadline required by the Act. Because compliance with a statutory time limit is a prerequisite to the acquisition of subject matter

8

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

jurisdiction, the Commission properly determined that the Department lacked jurisdiction to review the charge." *Bumphus*, at ¶ 17. "Thus, the Department was not authorized from the outset to start its investigation" of the charge. *Bumphus*, at ¶ 22.

The latter point – that the IDHR was not authorized to even begin an investigation of the charge because of the failure to comply with the 30-day deadline to submit the EEOC's determination to the IDHR – is dispositive. "[A]n administrative agency … can only act 'pursuant to the authority conferred on it by statute.'" *Donald*, at *5 (quoting *Bumphus*, ¶ 17) (citing in turn *Pickering*, 146 Ill. App. 3d at 352). "Because the 30-day 'statutory time limit is a condition precedent to … the acquisition of subject matter jurisdiction … the Department lacked jurisdiction to review the charge" when it received it after September 8, 2017. *Donald*, at *5 (quoting *Bumphus*, at ¶¶17-18); *accord Gilchrist*, 312 Ill. App. 3d at 601. "Accordingly, the notice of right to sue issued by the IDHR was without legal effect." *Donald*, at *5; *accord Gilchrist*, 312 Ill. App. 3d at 601.

## VII. When a Complainant Fails to Comply with the 30-Day Deadline to Submit the EEOC's Determination to the IDHR, and the IDHR's Later Right to Sue Notice Lacks Legal Effect, The Complainant Has Failed to Exhaust Administrative Remedies.

*Bumphus* and *Donald* are directly on point. The complainants in those cases, just like here, failed to timely submit the EEOC's determination within the 30-day period mandated by Section 7A-102(A-1)(1)(iv). That failure is dispositive because the statutory requirement is mandatory and jurisdictional, so *Bumphus* properly ruled that the IDHR lacked statutory authority to investigate the charge. And *Donald*, applying *Bumphus*, properly ruled that the plaintiff failed to exhaust administrative remedies and dismissed

9

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

the IHRA claims. Numerous federal court decisions have likewise dismissed IHRA claims for failure to exhaust administrative remedies because, just like here, the plaintiff failed to comply with the 30-day deadline mandated by Section 7A-102(A-1)(1)(iv).[2]

---

[2] Copies of the following federal decisions are contained in Exhibit 4, in alphabetical order:

• *Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) ("Defendants argue that Jafri failed to administratively exhaust her IHRA claims, because she failed to 'submit a copy of the EEOC's determination [to the Illinois department of Human Rights ('IDHR')] within 30 days after service of the determination by the EEOC on complainant' … the statute unambiguously states that a complainant must timely submit an EEOC determination to the IDHR … Because Jafri failed to comply with the statute's plain terms, her IHRA claims were not properly administratively exhausted and must be dismissed") (quoting 775 ILCS 5/A-102(A-1)(1)(iv), alternation in original);

• *Ball v. Roeslein & Assocs, Inc.*, 2020 WL 4673136, at *6-7 (S.D. Ill. Aug. 12, 2020) ("When the EEOC does not issue a determination, but issues the complainant a notice of right to sue, 'the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant' … Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. … Ball has failed to provide facts that she submitted a copy of the EEOC's determination to the Department [the IDHS] within 30 days after service of the determination by the EEOC. 775 ILCS 5/7A-102(A-1)(1)(iv) … Accordingly, the Court finds that Ball fialed to administratively exhaust her IHRA claims and her claims for discrimination, harassment, or retaliation under the IHRA must be dismissed") (citing, *inter alia, Jafri v. Signal Funding*, at *2);

• *Prusaczyk v. Hamilton County Coal, LLC*, 2020 WL 598137, at *2-3 (S.D. Ill. Oct. 8, 2020) ("The complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant. 775 ILCS 5/7A-102(A-1)(1)(iv) *** Defendants also contend that Prusaczyk could have provided the IDHR with a copy of this EEOC Right to Sue letter within 30 days of receiving it in order to preserve his rights under the IHRA. Prusaczyk received the EEOC's Right to Sue letter on or about October 21, 2019. Because he did not notify the IDHR of the EEOC's determination, he did not exhaust his administrative remedies as to his IHRA claim, and it must be dismissed");

• *Donald v. City of Chicago*, 2021 WL 1946335, at *5 (N.D. Ill. 2021) ("The City contends that Ms. Donald's failure to forward the EEOC determination to the IDHR within the 30-day period dooms her claim. I agree. The IHRA provides that 'the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant.' 775 ILCS 5/7A-102(A-1)(1)(iv). Compliance with such a statutory time limit '"is a condition precedent to the right to seek a remedy" before an administrative body, and … a prerequisite to the acquisition of subject matter jurisdiction.'" *Bumphus v. Ill. Human Rights Comm'n*, 2021 IL App (5th) 200037-U, ¶ 17. Accordingly, where plaintiffs have failed to comply with the 30-day notice requirement, courts have dismissed IHRA claims for lack of exhaustion of administrative remedies") (citing *Jafri v. Signal Funding, Prusaczyk v. Hamilton County Coal*, and *Ball v. Roeslein & Assocs.*).

• *Jones v. T.J. Maxx of IL, LLC*, 2021 WL 1966115, at *6, (S.D. Ill. May 17, 2021) ("When the EEOC does not issue a determination, but issues the complainant a notice of right to sue, 'the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant' … Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an

CAU Removal 000188

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

## ANALYSIS

**I.    CAU's Section 2-619 Motion Argued That Plaintiff Failed to Exhaust Administrative Remedies Because She Failed To Comply With the 30-Day Deadline to Submit the EEOC's Determination to the IDHR.**

Consistent with the plain text of Section 7A-102(A-1)(1)(iv), and the recent decision in *Bumphus*, *Donald*, and the cited federal cases, CAU argued in its Section 2-619 motion to dismiss that Plaintiff's failure to comply with the <u>30-day deadline</u> to submit the EEOC's findings and request further investigation to the IDHR barred her claims, because Plaintiff's undisputed failure to comply with that <u>30-day deadline</u> represented a failure to exhaust mandatory administrative remedies:

> By law, Plaintiff had <u>thirty days</u> from receiving this dismissal to notify the IDHR of this determination.
>
> ***
>
> In cases like this one, where the EEOC determines that it is unable to establish that illegal discrimination occurred and issues the charging party a right to sue notice, he or she must notify the IDHR within <u>thirty days</u> of receiving the dismissal.
>
> ***
>
> Plaintiff has forfeited any right to pursue her claim by not timely providing the EEOC determination to the IDHR.  In so doing, she has failed to exhaust her administrative remedies.

(CAU's Mem. in Support of Defendant's Motion to Dismiss, pp. 2, 4, 6) (emphasis added).

---

IHRA claim. … Jones has failed to provide facts that she submitted a copy of the EEOC's determination to the Department [the IDHR] within 30 days after service of the determination by the EEOC.  775 ILCS 5/7A-102(A-1)(1)(iv) … Accordingly, the Court finds that it lacks jurisdiction over Jones [sic] state law claims, and Counts II and IV must be dismissed") (citing, *inter alia*, *Jafri v. Signal Funding*, at *2).

CAU Removal 000189

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

## II.  The Court Erred in its Apparent Assumption That CAU Based its Section 2-619 Motion on the 35-Day Deadline of Section 7A-102(A-1)(3).

The Court recognized that the Plaintiff "had 30 days to submit the findings and a request for further investigation to the IDHR."  (Ex. 1, p. 2).  However, the Court based its decision on an entirely separate and distinct deadline:  the *35-day deadline* "for the complainant to seek IDHR review of an EEOC determination before the EEOC dismissal determination is adopted."  (*Id.*, p. 3).  The Court then indicated that CAU's argument was "[b]ased on this *35-day language …*"  (*Id.*, p. 3) (emphasis added).  Respectfully, CAU did not base its argument on the 35-day deadline.  CAU did reference the 35-day deadline in its Reply Brief, but only in describing the particular facts of a court decision, and in passing in a footnote.[3]

## III.  The Court Erred in Basing its Decision on the 35-Day Deadline, Because the 35-Day Deadline Was Never Triggered.

CAU did not rely on the 35-day deadline of Section 7A-102(A-1)(3) because it could not.  That 35-day deadline is triggered by the IDHR notifying a complainant that it is adopting the EEOC's determination.[4]  As explained above, the IDHR never adopted the

---

[3] *See* CAU's Reply Brief, p. 3 & n.1 (explaining that in *O'Connell v. Continental Electrical Construction Co.*, 2011 U.S. Dist. LEXIS 119921, *33-35 (N.D. Ill. Oct. 17, 2011), "the IDHR notified the plaintiff by letter that he had to notify the IDHR within 35 days of receiving the letter or his file would be closed," and noting "The IHRA requires an individual to notify the IDHR of the EEOC determination within 30 days.  When the IDHR responds by adopting the EEOC dismissal as a lack of substantial evidence, the individual has 35 days to ask the IDHR to review that dismissal.  Thus, there are both 30 and 35 day time limits involved"). (citations omitted).  CAU did not otherwise reference the 35-day deadline, nor argue that the 35-day deadline applies to this case.  Indeed, as explained below, the 35-day deadline was never triggered in this case, because the IDHR never adopted the EEOC dismissal as a lack of substantial evidence.  Rather, and to the contrary, the IDHR dismissed based on lack of jurisdiction, so the 35-day deadline was never triggered.

[4] Section 7A-102(A-1)(3) specifies the order of events required to trigger the 35-day period.  First, the EEOC must either (i) not issue a determination, but issue a notice of a right to sue, or (ii) determine that it is unable to establish that illegal discrimination occurred, and issue a right to sue notice.  In either scenario, the EEOC

CAU Removal 000190

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

EEOC's determination, so it never notified Plaintiff that it was adopting the EEOC's determination.  The Court thus erred in focusing on the 35-day deadline in Section 7A-102(A-1)(3).

## IV.     The Court's Erroneous Reliance on the 35-Day Deadline Was Based on its Erroneous Determination the IDHR adopted the EEOC's Determination.

The Court's discussion of the 35-day deadline was based on its determination that "IDHR adopted the EEOC determination …" (Ex. 1, p. 4).  As explained above, the IDHR did not adopt the EEOC's determination.  Accordingly, the Court erred, which led to the Court's erroneous reliance on the 35-day deadline.

## V.     The Court Erred in Determining That the IDHR's Right To Sue Notice Was a Valid Final Action Excusing Plaintiff's Failure to Exhaust Administrative Remedies.

The Court's ultimate determination that the right to sue notice issued by the IDHR was a viable "final" agency action permitting Plaintiff to pursue IHRA claims in Court was erroneous because, as explained above, the IDHR lacked statutory authority to act.  Plaintiff's two main arguments cannot change this result.

First, Plaintiff argued that the 2008 amendments allowing court actions somehow excused her failure to comply with the 30-day period to notify the IDHR of the EEOC's

---

issues a notice of right to sue is issued to the complainant. 775 ILCS 7A-102(A-1)(3). Next, the complainant must "timely notif[y]" the IDHR of the EEOC's determination. 775 ILCS 7A-102(A-1)(3).  Then, "if the Department [the IDHR] is timely notified of the EEOC determination by complainant" – and **_only_** if the IDHR is timely notified of the EEOC's determination by complainant – "the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the **_Department's_** notice that the Department review the EEOC's determination." 775 ILCS 7A-102(A-1)(3) (emphasis added).  The 35-day period is therefore triggered by the IDHR notifying the complainant that it is adopting the EEOC's determination.

13

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

determination mandated by Section 7A-102(A-1)(1)(iv).  That is a red herring because Section 7A-102(A-1)(1)(iv) was added to the IHRA in 2011.  Public Act 97-596, S.B. 1122 (eff. Aug. 26, 2011) (amending 775 ILCS 7A-102(A-1) to add subsections (1), (2) and (3), copy contained in Exhibit 5).  Plaintiff is thus arguing that the 2008 amendments render the later 2011 amendments a superfluous nullity that can be ignored.  That would be an illogical interpretation of the IHRA, because an earlier amendment cannot nullify a later one.  *E.g.*, *People v. Skillom*, 361 Ill. App. 3d 901, 910 (1st Dist. 2005) (interpreting phrase to "prevent an absurd or illogical interpretation of the statute," and according "the canon that we must give meaning to all the words in a statute …").

<u>Second</u>, Plaintiff's reliance on *Laurie v. William M. Bedell Achievement Res. Ctr.*, 2017 WL 1076940 (N.D. Ill. March 22, 2017), is misplaced.  That decision erroneously relied on the 2008 amendments to find that a failure to comply with the 30-day deadline of Section 7A-102(A-1)(1)(iv) was not fatal to IHRA claims.  *Id.*, at *4.  And that decision erroneously fails to consider the indisputable fact that the IDHR lacks statutory to act after a failure to comply with the 30-day deadline of Section 7A-102(A-1)(1)(iv).  *See Donald*, at *5 (refusing to *Laurie* on this basis).  *Laurie* is thus inconsistent with *Bumphus* and well-established precedent holding that the IDHR lacked authority to issue a right to sue notice here.  Simply stated, *Laurie* was wrongly decided.  This Court's denial of CAU's motion to dismiss is likewise inconsistent with the plain language of the IHRA and controlling precedents, and should be reconsidered, and granted.[5]

---

[5] Notably, Plaintiff's failure to comply with the 30-day deadline mandated by Section 7A-102(A-1)(1)(iv) did not preclude Plaintiff from pursuing her IHRA claims in court.  Plaintiff could have filed suit in either federal or state court within 90 days of receiving the EEOC's determination and notice of right to sue.  The

CAU Removal 000192

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

## **CONCLUSION**

For all the foregoing reasons, the Court should reconsider its August 18, 2021 Memorandum Decision and Order, and grant CAU's Section 2-619 motion to dismiss.

In the alternative, if this Court is inclined to deny reconsideration, CAU respectfully requests this Court to certify the dispositive question of law to the Appellate Court pursuant to Supreme Court Rule 308(a), and to stay discovery during the appeal. The dispositive issue is a question of law because it is a question of statutory interpretation. The differing answers to the question between this Court and *Laurie* on the one hand, and *Donald, Ball, Jafri, Jones*, and *Prusaczyk* on the other hand, indicate a substantial ground for difference of opinion. And an immediate appeal would materially advance the ultimate determination of the litigation, because a First District decision in accord with *Donald, Ball, Jafri, Jones*, and *Prusaczyk* would end the litigation. CAU therefore, and in the alternative, proposes the following question of law to be certified pursuant to Supreme Court Rule 308(a):

> "When a complainant fails to comply with the 30-day deadline to submit the EEOC's determination to the IDHR mandated by 775 ILCS 7A-102(A-1)(1)(iv), such that the IDHR lacks statutory authority to investigate the charge or review or adopt the EEOC's determination, has the complainant failed to exhaust administrative remedies such that complainant is precluded from pursuing IHRA claims in court?"

---

timing here – belated submitting the EEOC's determination to the IDHR shortly after Plaintiff's 90-day period to file suit based on the EEOC's right to sue notice expired – is telling.

CAU Removal 000193

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

Respectfully submitted,

Dated: September 17, 2021          COMMUNITY ALTERNATIVES UNLIMITED

By:     /s/ Brian E. Spang
        One of its attorneys

Peter A. Steinmeyer
Brian E. Spang
Attorneys for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
psteinmeyer@ebglaw.com
bspang@ebglaw.com
Attorney ID #18494

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the foregoing memorandum of law via email and the Court's electronic filing system the 17th[th] day of September 2021 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Brian E. Spang

16

CAU Removal 000194

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT 1

CAU Removal 000195

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| Michelle Abraham,<br> Plaintiff<br><br>v.<br><br>Community Alternatives Unlimited,<br> Defendant. | No. 18 CH 2497<br>Calendar 15<br><br>Hon. Anna M. Loftus<br>Judge Presiding |

MEMORANDUM OPINION & ORDER

Plaintiff Michelle Abraham, a former employee of Defendant Community Alternatives Unlimited, has filed a suit for retaliatory discharge. Defendant has moved to dismiss on two bases: first, that Plaintiff failed to exhaust her administrative remedies with respect to the EEOC; and second, that she failed to timely serve.

The Court rejects both arguments, holding that Plaintiff appears to have exhausted her administrative remedies, and that service was sufficiently diligent. The Motion to Dismiss is denied.

## I. Background

Plaintiff was an employee of Community Alternative Unlimited (CAU) for over 17 years. She has filed a complaint against her former employer, alleging she was discharged in retaliation for reporting discrimination in the workplace, a violation of the Illinois Human Rights Act. 775 ILL. COMP. STAT. 5/1-101 *et seq.* ("IHRA"). The Complaint presents the following facts, which the Court takes as true for the purposes of the present Motion to Dismiss. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (Ill. 1997).

The issues raised in the present Motion are almost wholly procedural. For that reason, suffice it to say Plaintiff alleges she was constructively discharged from CAU in or around December 2016 after reporting harassment in the workplace.

On March 3, 2017, Plaintiff filed a Charge of Discrimination against CAU with the Equal Employment Opportunity Commission.

On May 1, 2017, Plaintiff received a letter from the Illinois Department of Human Rights informing her that, due to a cooperative workshare agreement between the IDHR and EEOC, a copy of her complaint with the EEOC had been automatically filed with the IDHR. The IDHR letter also stated that after the EEOC issued its findings, Plaintiff could seek further action and review by sending a copy of the EEOC findings to the IDHR along with a request that the IDHR

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

EXHIBIT 1

CAU Removal 000196

initiate its own investigation. The letter advised that any such request had to be sent within 30 days of receiving the EEOC determination.

On June 2, 2017, the EEOC mailed its determination to Plaintiff that, based on the information obtained, no violation of the IHRA had occurred. Upon receipt of this determination, Plaintiff then had 30 days to submit the findings and a request for further investigation to the IDHR.

On September 8, 2017, 98 days after receiving the EEOC determination, Plaintiff submitted a copy of the EEOC's findings along with her request for an investigation to the IDHR.

On November 21, 2017, IDHR issued a Notice of Dismissal, dismissing the claim for being untimely presented. The letter accompanying the IDHR Notice of Dismissal noted that Plaintiff had two courses of action: she could either seek review of the dismissal before the Illinois Human Rights Commission before February 26, 2018, or commence a civil action in state court within 90 days of her receipt of the letter.

On November 27, 2017, Plaintiff received the IDHR letter.

On February 23, 2018, 88 days from Plaintiff's receipt of the IDHR letter, Plaintiff filed the present Complaint.

## II. Legal Standard

Defendant has sought dismissal under Section 2-619. Under Section 2-619, the Court must accept as true all well-pleaded facts and their attendant inferences. Defendant may introduce additional facts by affidavit. 735 ILL. COMP. STAT 5/2-619(a)(9). The Section 2-619(a)(9) arguments raised by Defendant seek a dismissal upon a showing of other affirmative matters, outside the four corners of the complaint, which defeat the claim in whole or in part. *Alford v. Shelton (In re Estate of Shelton)*, 2017 IL 121199, ¶21.

Failure to exhaust administrative remedies with respect to EEOC proceedings under the Illinois Human Rights Act is properly raised under Section 2-619. *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶¶13, 35.

Likewise, failure to timely serve under Rule 103 is properly raised as part and parcel of a Section 2-619 argument, as timeliness is an affirmative matter outside the four corners of the pleading. *Segal v. Sacco*, 136 Ill. 2d 282, 285–86 (Ill. 1990); *Smith v. Menold Constr., Inc.*, 348 Ill. App. 3d 1051, 1057–58 (4th Dist. 2004). *See also* ILL. SUP. CT. R. 103(b).

Should the allegations be insufficient, the Court may consider permitting or requiring amendment. 735 ILL. COMP. STAT. 5/2-615(d), 2-616(a); *see also Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273–76 (Ill. 1992). Nevertheless, if the underlying legal theory is flawed such that no cause of action could be stated, amendment would be futile. *Regas v. Associated Radiologists*, 230 Ill. App. 3d 959, 968 (1st Dist. 1992) (discussing *Loyola Academy* factors).

CAU Removal 000197

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

### III. Motion to Dismiss

As noted above, CAU's Motion raises two primary arguments. First, it argues the Court lacks jurisdiction to hear this matter, because Plaintiff has failed to exhaust her administrative remedies.[1] Second, and alternatively, it asks that the Court dismiss because Plaintiff failed to diligently serve.

#### A. Jurisdiction and Exhaustion

The crux of CAU's first argument is that, by waiting more than 35 days before submitting the EEOC's findings to the IDHR for further investigation, Plaintiff failed to exhaust her administrative remedies. CAU's argument runs counter to the plain language of the statute and the caselaw both.

#### 1. Section 7A-102

CAU founds its argument on the language of Section 7A-102 of the Illinois Human Rights Act, which provides in relevant part:

> (3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.

775 ILL. COMP. STAT. 5/7A-102(A-1)(3). This statute clearly provides for a 35-day period for the complainant to seek IDHR review of an EEOC determination before the EEOC dismissal determination is adopted.

Based on this 35-day language, CAU argues that, by not timely providing the EEOC determination to the IDHR, Plaintiff failed to exhaust her administrative remedies. But CAU's argument ignores the very next paragraph of the statute:

---

[1] Plaintiff also hints at a third argument: that "the Illinois Human Rights Act and its regulations do not provide Plaintiff with a right of court review under these circumstances." Motion to Dismiss, p.1. To the extent this is a repetition of the first argument (i.e. if the Court lacks subject-matter jurisdiction, then there is no right of court review), it is resolved through the Court's denial of that argument. To the extent this is a separate argument, it is wholly underdeveloped.

CAU Removal 000198

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

> (a) If the complainant does not file a written request with the Department to review the EEOC's determination within 35 days after receipt of the Department's notice, the Department shall notify complainant, within 10 business days after the expiration of the 35-day period, that the decision of the EEOC has been adopted by the Department as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination shall constitute the Department's report for purposes of subparagraph (D) of this Section.

775 ILL. COMP. STAT. 5/7A-102(A-1)(3)(a). This subsection clearly provides that, where no written request for review is filed, and IDHR adopts the EEOC's determination, the complainant has a 90-day window from receipt of the IDHR Notice of Dismissal in which to commence a civil action.

Here, Plaintiff did not file a written request for review within 35 days. IDHR adopted the EEOC determination on November 21, 2017, Plaintiff received it November 27, and she filed this suit 88 days later, on February 23, 2018, within the 90-day window.

### 2. Caselaw

The parties address three cases: *Robinson, Laurie,* and *Ocampo.* None of them change the Court's determination.

In *Robinson*, the First District found that a notice of dismissal was indeed an exhaustion of administrative remedies. *Robinson v. Vill. of Oak Park*, 2013 IL App (1st) 121220. In *Robinson*, an employee alleged she was laid off after refusing to take a position that conflicted with her religious beliefs. *Id.* ¶14. She timely filed a claim under the IHRA, and after a full investigation, was issued a Notice of Dismissal. *Id.* ¶15. Two months later, the employee filed suit in state court. *Id.* Defendant prevailed on summary judgment, the trial court holding "plaintiff had no viable claim" for any Human Rights Act violation. *Id.* ¶16.

On appeal, the First District reviewed whether the employee had properly exhausted her administrative remedies. Even though the employee had never filed a request to have the decision reviewed by IDHR, the First District found that she had exhausted her remedies. Citing to Section 7A-102, the *Robinson* court held:

> The aggrieved party's rights do not end [at an IHRC dismissal] as he/she is given 90 days to either file a request for review with the Commission or file a complaint in Illinois circuit court, where he/she is now entitled to request a jury trial in the event her

CAU Removal 000199

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

complaint and pleadings withstand procedural and substantive defenses.

*Id.* at ¶5 (citing 775 ILL. COMP. STAT. 5/7A-102(C)(4)).

The *Robinson* court further explained how a 2008 amendment had given state courts supplemental jurisdiction over IHRA claims:

> Prior to August 2007, the Illinois Human Rights Act provided the Illinois Human Rights Commission with exclusive jurisdiction to adjudicate claims of civil rights violations, with appeals directly to the appellate court to review the Commission's actions under an arbitrary and capricious standard and for abuse of discretion. The Illinois statute was only recently amended to allow plaintiffs who are dissatisfied with the Human Rights Commission's finding of no substantial evidence to support a charge the opportunity to file direct appeals of employment discrimination issues to the circuit courts[.]

*Id.* at ¶18 (citations to legislative history omitted).

The *Robinson* court eventually affirmed, but not for any of the procedural issues; instead, it affirmed on the merits, holding the defendant had offered a reasonable accommodation. *Id.* at ¶42. In light of the reasonable accommodation, there was no claim on the merits. *Id.*

The *Robinson* application here is self-evident: because Plaintiff has filed her complaint within 90 days, it fell within the proper timeframe of Section 7A-102, and this Court can properly exercise jurisdiction over it.

In a similar vein, the facts of *Laurie* are particularly instructive. *Laurie v. William M. Bedell Achievement Res. Ctr.*, 2017 U.S. Dist. LEXIS 41536 (S.D. Ill. 2017). In *Laurie*, the EEOC conducted an investigation, closed its file, and issued a right-to-sue letter. *Id.* at *2. The plaintiff filed the EEOC determination with IDHR after 51 days, rather than within 30 days as Section 7A-102(A-1)(1) required. *Id.* at **2–3 (citing 775 ILL. COMP. STAT. 5/7A-102(A-1)(1)). IDHR concluded it lacked jurisdiction due to the late filing and issued a right-to-sue letter. *Id.* at *3.

The *Laurie* court noted that receiving a right-to-sue letter from the EEOC alone was not sufficient to establish exhaustion. *Id.* at **9–10. But the plaintiff's "failure to obtain a final order on the merits does not immediately bar her from filing suit in court." *Id.* The court concluded that, though the plaintiff sent the EEOC determination to IDHR 21 days late, IDHR had still issued a her a Notice of Dismissal, with the attendant 90-day window. *Id.* at *10. Because she had filed within that 90-day window of the IDHR letter, the claim was timely: "Because Laurie received the IDHR's Notice of Dismissal and filed her lawsuit within the 90 day window, her complaint satisfies the exhaustion requirement of the IHRA at the pleading stage." *Id.* at *13.

CAU Removal 000200

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

Here, just as in *Laurie*, Plaintiff sent her EEOC determination to IDHR late. Though she did not receive a decision on the merits from IDHR, she did receive an IDHR Notice of Dismissal. That Notice of Dismissal triggered the 90-day window, and she filed within it.

Finally, in Reply, CAU relies on *Ocampo* for the proposition that administrative remedies must still be exhausted before pursuing a claim in state court. *Ocampo v. Remedial Env't Manpower, Inc.*, 2014 U.S. Dist. LEXIS 86865 (N.D. Ill. 2014). In *Ocampo*, the employee was allegedly fired for reporting sexual harassment to her supervisors. *Id.* at *3. She filed charges of discrimination and harassment with both the EEOC, which she pursued, and with IDHR, which she later withdrew. *Id.* at **3–4, 11. IDHR issued an Order of Closure, approving the voluntary withdrawal. *Id.* at *11. After that order, she filed a court case, which was dismissed for failure to exhaust administrative remedies: "If Ocampo desired to proceed in this Court on her IHRA claims, she should not have voluntarily dismissed the charges filed with the IDHR." *Id.* at *18.

By relying on this case, it is clear that Defendants are confusing the issue at bar. The plaintiff in *Ocampo* argued that, after the 2008 amendment, a final order from the IHDR was no longer required, and administrative exhaustion was no longer obligatory before pursuing claims in court. *Id.* at *15. The *Ocampo* court rejected that argument: "Ocampo did not permit the IDHR to finish evaluating her charge; instead, the charge was voluntarily withdrawn and therefore closed." *Id.*

Here, Plaintiff has not raised any such argument. Instead, she argues quite simply that the IDHR Notice of Dismissal was a final order squarely within the ambit of Section 7A-102. This is consistent with the *Ocampo* court's discussion of how Section 7A-102 functions:

> For instance, if the Director of the IDHR makes a determination that there is no substantial evidence, the IDHR is to dismiss the charge by order of the Director and the complainant is to be given "notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court." If the complainant elects to pursue a civil action, it must be initiated "within 90 days after receipt of the Director's notice."

*Id.* at **14–15 (citing 775 ILL. COMP. STAT. 5/7A-102(D)(3)) (internal citations omitted).

In sum, though are plenty of cases that probe the edges of IHRA jurisdiction, this is not one of them. The language of Section 7A-102, and the cases interpreting it, are quite clear that an IDHR Notice of Dismissal is considered final for the purposes of administrative exhaustion, and permits a complainant to pursue claims further in court. Plaintiff has exhausted her remedies, and her claim is timely.

CAU Removal 000201

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

## B. Diligent Service

Alternatively, CAU seeks dismissal arguing that Plaintiff failed to timely serve the summons and Complaint in this matter. Rule 103(b) requires a plaintiff to exercise reasonable diligence in service, and provides that failure to diligently serve prior to the expiration of the statute of limitations is a basis for dismissal with prejudice. ILL. SUP. CT. R. 103(b).

The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process, and to prevent the circumvention of the statute of limitations. *Segal*, 136 Ill. 2d at 286. The basic policy of statutes of limitation is to "afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible." *Id., citing Geneva Const. Co. v. Martin Transfer & Storage Co.,* 4 Ill. 2d 273, 289–90 (Ill. 1954). The "[p]revention of intentional delay in the service of summons which would postpone service for an indefinite time after a statutory period of limitations has run, was a primary reason for the passage of Rule 103(b)." *Id.* at 287, *quoting Karpiel v. LaSalle Nat'l Bank,* 119 Ill. App. 2d 157, 160 (2d Dist. 1970).

Here, though the 90-day period contemplated by Section 7A-102 is akin to a statute of limitations. The relevant provision of Rule 103(b) provides as follows:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice . . . .

ILL. SUP. CT. R. 103(b). Here, because the 90-day period contemplated by Section 7A-102 has long-since expired, any Rule 103(b) dismissal would be with prejudice.[2]

Diligence under Rule 103(b) is subject to a number of factors. The factors are not exhaustive, but the Illinois Supreme Court's recitation in *Segal* is canonical:

> (1) the length of time used to obtain service of process;
> (2) the activities of plaintiff;
> (3) plaintiff's knowledge of defendant's location;
> (4) the ease with which defendant's whereabouts could have been ascertained;

---

[2] The caselaw refers to it colloquially as a statute of limitations. *E.g., Nehan v. Local Union No. 1-Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union,* 2014 U.S. Dist. LEXIS 83085, *4 (N.D. Ill. 2014). *But see LaRiviere v. Bd. of Trs. of S. Ill. Univ.,* 2015 IL App (5th) 140443-U, ¶13 (referring to "90-day limitations period" for EEOC right-to-sue letter). *Accord, e.g., Van Milligen v. Dep't of Empl. Sec.,* 373 Ill. App. 3d 532, 542 (2d Dist. 2007) (administrative review subject to 35-day limitations period, and not a statute of limitations). Whatever the academic merits of this distinction, the parties today are in agreement that the 90-day period interacts with Rule 103(b) as if it were a statute of limitations: the same principles apply.

CAU Removal 000202

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

(5) actual knowledge on the part of the defendant of pendency of
the action as a result of ineffective service;
(6) special circumstances which would affect plaintiff's efforts;
and (7) actual service on defendant.

*Segal*, 136 Ill. 2d at 287 (with line breaks for clarity).

In *Segal* itself, the Supreme Court held that a 19-week delay (i.e. 133 days) in
service following filing did not warrant dismissal. *Id.* at 288–89. The only excuse
offered by the plaintiff in that case was that he had simply forgotten to place the
summons for service. *Id.* at 287. Because the delay was inadvertent and
unintentional, there was no intent to subvert the statute of limitations. *Id.* at 288.
And, there was no indication the inactivity in the case between its filing and service
had caused any prejudice: no evidence went stale, no witnesses became unavailable,
and no memories lapsed. *Id.* On those facts, the "harsh penalty" of a Rule 103(b)
involuntary dismissal would not serve the purpose of the Rule, and was not
warranted. *Id.* at **288–89.

Here, the Complaint was filed on February 23, 2018. Though not formally
served, Defendant received actual notice 24 days thereafter, when Plaintiff's
counsel emailed a filestamped copy of the document. The parties engaged in
settlement talks for a few days, before CAU indicated it on March 21 that was no
longer interested in pursuing settlement.

On March 20, Plaintiff attempted to place the summons with the Sheriff for
service. But the Sheriff did not accept it, because the summons—the *original*
summons issued in this matter—was set to expire on March 25. And so on March 23
Plaintiff issued alias summons, which was eventually served April 12, a total of 48
days after filing.

On the totality of the circumstances, Plaintiff's service 48 days after filing
was reasonable. Despite CAU's arguments as to inactivity, there is no indication
Plaintiff filed and then sat back to do nothing; the facts establish quite the opposite.
CAU not only had actual knowledge of the lawsuit, but had a filestamped copy of
the Complaint within 24 days of filing. The Court is fully aware that actual
knowledge of a pending case is no substitute for service of process. *State Bank of
Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (Ill. 1986). But actual knowledge certainly
moots any possible argument as to prejudice, and CAU has pointed to none.[3]

Could Plaintiff have placed the summons and Complaint for service the day
after they were filed? Of course. Her timing, however, is still reasonably diligent.
Dismissal for failure to more diligently serve would serve neither the purpose of
Rule 103(b) nor the ends of justice, and the Court declines CAU's invitation to do so.

---

[3] Finally, the present facts are easily distinguishable from any cases cited by CAU. *See Kole v.
Brubaker*, 325 Ill. App. 3d 944 (1st Dist. 2001) (plaintiff waited 9 months before service and gave no
explanation as to why); *Emrikson v. Morfin*, 2012 IL App (1st) 111687 (plaintiff waited 13 months
before service and never consulted accident report to figure out defendant's address); *Long v.
Elborno*, 376 Ill. App. 3d 970 (1st Dist. 2007) (plaintiff waited 7 months before service and made no
diligent attempts in that timeframe).

CAU Removal 000203

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

## IV. Orders

Defendant CAU's Motion to Dismiss is denied in its entirety.

CAU is ordered to Answer within 35 days, or by September 22, 2021.

This case is set for status on **Wednesday, September 29, 2021, at 10:00 a.m.** The status will occur via Zoom, and may be accessed through the following hearing link: https://circuitcourtofcookcounty.zoom.us/j/95535573920. Further information about remote operations is available in the Court's standing order.

On the status date, the Court anticipates discussing whether Plaintiff is seeking any equitable relief. If not, the Court would anticipate a transfer to the appropriate division for further proceedings.

Chambers staff will email a copy of this Order to the parties.

ENTERED:

/s/ *Anna M. Loftus*

Judge Anna M. Loftus, No. 2102

*[Stamp: Judge Anna M. Loftus AUG 18 2021 Circuit Court 2102]*

CAU Removal 000204

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT 2

CAU Removal 000205

Bumphus v. Illinois Human Rights Commission, Not Reported in N.E. Rptr. (2021)

2021 IL App (5th) 200037-U

*FILED DATE: 9/17/2021 6:14 PM   2018CH02497*

2021 IL App (5th) 200037-U

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.
    NOTICE This order was filed under Supreme Court
    Rule 23 and is not precedent except in the limited
    circumstances allowed under Rule 23(e)(1).
    Appellate Court of Illinois, Fifth District.

John BUMPHUS, Petitioner,
v.
ILLINOIS HUMAN RIGHTS COMMISSION,
Illinois Department of Human Rights, and Unique
Personnel Consultants, Respondents.

NO. 5-20-0037
|
Decision filed 02/26/2021

On petition for Direct Administrative Review of an Order
of the Illinois Human Rights Commission. Charge No.
2016SR2090, EEOC No. 440-2015-01744, ALS No.
16-0276.

**ORDER**

JUSTICE BARBERIS delivered the judgment of the
court.

**\*1** ¶ 1 *Held*: We affirm the decision of the Illinois Human
Rights Commission that sustained the Illinois Department
of Human Rights' dismissal of petitioner's discrimination
charge for lack of jurisdiction.

¶ 2 Petitioner, John Bumphus, filed a *pro se* petition for
direct administrative review from a final decision of the
Illinois Human Rights Commission (Commission), which
sustained the decision of the Illinois Department of
Human Rights (Department) dismissing Bumphus's
discrimination charge against respondent, Unique
Personnel Consultants (Unique), for lack of jurisdiction.
For the reasons that follow, we affirm.

¶ 3 I. Background

¶ 4 On August 6, 2015, Bumphus filed a *pro se* charge of
discrimination with the United States Equal Employment
Opportunity Commission (EEOC), alleging that, on or
about July 17, 2015, while working as a line production
coordinator for Unique, he was denied a reasonable
accommodation for his "disability related condition."
Bumphus further alleged that his employment was
terminated after he provided Unique with a doctor's note
in support of his request for a reasonable accommodation,
in violation of his civil rights under the Americans with
Disabilities Act of 1990 (ADA) as amended (see 42
U.S.C. § 12101 *et seq.* (2012)).

¶ 5 On December 21, 2015, while Bumphus's
discrimination charge remained pending before the
EEOC, the Department purportedly sent Bumphus a letter
advising that his charge of discrimination had been
automatically filed with the Department. The letter further
advised that Bumphus had 30 days from receipt of the
EEOC's findings to send a copy of the findings to the
Department.[1]

¶ 6 On December 23, 2015, following an investigation,
the EEOC sent Bumphus a letter of dismissal and notice
of rights, advising that it had issued a determination on
his charge of discrimination. In the letter, the EEOC
explained that the information obtained during its
investigation failed to establish violations of the statutes.[2]

¶ 7 Several months later, on March 8, 2016, Bumphus
sent the Department a request for investigation, along
with a copy of the EEOC's December 23, 2015, letter.
Bumphus requested the Department to investigate the
same charge of discrimination that had been dismissed by
the EEOC.[3]

**\*2** ¶ 8 On March 22, 2016, prior to receiving a response
from the Department, Bumphus filed a complaint against
Unique, and other parties, in federal court. In the
complaint, Bumphus alleged, *inter alia*, that Unique had
discriminated against him in connection with their
employment relationship by failing to accommodate his
disability and by discharging him based on his disability.[4]

¶ 9 On April 12, 2016, the Department sent Bumphus a
notice of dismissal for lack of jurisdiction. The
Department also enclosed a copy of its investigation
report, which provided as follows:

"On August 6, 2015, Complainant [(Bumphus)] filed a

EXHIBIT 2                                    CAU Removal 000206

Bumphus v. Illinois Human Rights Commission, Not Reported in N.E. Rptr. (2021)

2021 IL App (5th) 200037-U

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

charge with the [EEOC] alleging that a civil rights violation had been committed. On December 21, 2015, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of [the] EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On March 8, 2016, Complainant submitted to the [Department] a copy of [the] EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed."

The Department's notice of dismissal further advised Bumphus that the filing deadline for review by the Commission was July 18, 2016.

¶ 10 On July 14, 2016, Bumphus filed with the Commission a request for review of the Department's dismissal. In the request for review, Bumphus admitted that he "submitted to the [Department] a copy of the EEOC Notice of Right to Sue" but failed to timely file a copy of the EEOC's determination to the Department. Bumphus provided the following explanation:

"On December 21, 2015, staff mailed the legally unrepresented *pro se* Complainant a letter stating that Complainant's charge was automatically filed with the [Department] and that Complainant had 30 days from receipt of [the] EEOC's findings to send the [Department] a copy; the legally unrepresented *pro se* Complainant, upon receipt of the [Department] letter, contacted the [Department] Pre-Investigations Coordinator by telephone, and erroneously misunderstood that the 'EEOC findings' was a reference to the EEOC case information file ***. On January 13, 2016, after having not yet received the aforementioned case information file, the unrepresented *pro se* Complainant contacted James F. Neely, Jr., Director of the St. Louis District Office of the EEOC, and formally requested, under the Freedom of Information Act (FOIA), 5 U.S.C. § 522, the full disclosure of all previously unreleased information and documents controlled by that office pertaining to the above-mentioned charge. On February 22, 2016, the St. Louis, Missouri, EEOC formally and electronically released the file *** to the unrepresented *pro se* Complainant ***. The unrepresented *pro se* complainant was then, again, erroneously under the mistaken impression that he had 30 days from the February 22, 2016 date to download, print, and deliver the entire EEOC electronic release. Accordingly, while in the process of trying to download, compile and coordinate for mailing the contents of his EEOC case file for 'timely' forwarding to the [Department], he subsequently again contacted the [Department] Pre-Investigations Coordinator by telephone, to inquire as to whether, or not, the EEOC transmission could simply be forwarded, to meet the findings presentation requirement. It was then explained, to the unrepresented *pro se* Claimant's embarrassed chagrin, that the EEOC Notice of Right to Sue, which he had already received on December 23, 2015, was the only required document for the [Department] investigation to commence. On March 8, 2016, the unrepresented *pro se* Claimant submitted to the [Department] a copy of the EEOC Notice of Right to Sue."

**\*3** Additionally, after alleging several substantive reasons as to why his charge had merit, and, therefore, should not have been dismissed, Bumphus stated the following:

"On March 22, 2016, the disabled unrepresented *pro se* Claimant filed Case No.: 16-3 12-SMY-DGW, as a *pro se* Plaintiff in the East St. Louis, Illinois Office of United States Federal District Court for the Southern District of Illinois. Federal District Court Judge Staci M. Yandle has stated, in her April 14, 2016[,] Memorandum and Order, that a preliminary review of the *pro se* Plaintiff disabled unrepresented *pro se* Claimant's Complaint found that it sets forth sufficient facts to state a plausible claim. The disabled unrepresented *pro se* Claimant is concerned that his applicable standing for claims against the Respondent, and their hired agency entities, under Illinois State Law might be at risk of being lost if his [Department] case is relinquished, withdrawn, or dismissed."

¶ 11 On March 20, 2019, after receiving the Department's response to Bumphus's request for review and Bumphus's reply to the Department's response, the Commission entered an order sustaining the Department's dismissal of Bumphus's charge of discrimination for lack of jurisdiction. Bumphus subsequently filed a petition for direct administrative review of the Commission's order.[5]

¶ 12 II. Analysis

¶ 13 Before turning to the merits, we note that Bumphus failed to comply with the briefing requirements set forth in Illinois Supreme Court Rule 341(h) (eff. May 25, 2018). For instance, in violation of Illinois Supreme Court

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

Rule 341(h)(6) (eff. May 25, 2018), Bumphus's statement of facts fails to reference the appropriate pages of the record and contains improper argument and ardent comments. Also, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), Bumphus refers to matters outside of the record.

¶ 14 Although proceeding *pro se* on appeal, Bumphus is nonetheless required to comply with our supreme court rules. See *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 16. We may strike a brief and dismiss the appeal for failure to comply with the rules. *Marzano v. Department of Employment Security*, 339 Ill. App. 3d 858, 861 (2003). However, striking an appellate brief "is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15. Because we have the benefit of a shorter, albeit incomplete, record on appeal, and we have cogent briefs with proper citations to the record from Unique and the State (the Commission and the Department), we choose to entertain the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (despite insufficiency in appellant's brief, the reviewing court entertained the appeal where the intended issues could be "readily ascertained from the record on appeal"). We now turn to the merits.

*4 ¶ 15 We find it necessary to begin our analysis by clarifying the issue before this court. On direct administrative review, Bumphus challenges the Commission's order sustaining the Department's dismissal of his discrimination charge for lack of jurisdiction. Where, as here, the Department dismisses a charge as untimely filed, a petitioner may request review of that dismissal by the Commission. 775 ILCS 5/8-103(A)(1) (West 2018). A final administrative decision by the Commission is subject to direct administrative review by this court. *Id.* § 8-111(B)(1). Our review in this matter is limited to the Commission's decision; thus, we will not review the Department's decision. *Truger v. Department of Human Rights*, 293 Ill. App. 3d 851, 858 (1997). In addition, we are limited to considering the evidence contained in the administrative record and may not hear additional evidence for or against the agency's decision. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006).

¶ 16 A charge of discrimination alleges a civil rights violation, as defined in section 6-101(A) of the Illinois Humans Right Act (Act). 775 ILCS 5/6-101(A) (West 2016). The Act is the "exclusive source for redress of civil rights violations." *Village of Maywood Board of Fire*

*& Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 581 (1998). Except for limited exceptions not relevant to the disposition of this case, the Commission is vested with exclusive jurisdiction over the subject of alleged civil rights violations. 775 ILCS 5/8-111(D) (West 2018). Moreover, because the Department is an administrative agency, any action it takes must be specifically authorized by statute. *Ferrari v. Department of Human Rights*, 351 Ill. App. 3d 1099, 1103 (2004). An administrative body that acts outside its statutory authority does so without jurisdiction. *Id.*

¶ 17 Section 7A-102(A-1)(1)(iv) of the Act provides that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv) (West 2018). It is well settled that "compliance with [a] statutory time limit is a condition precedent to the right to seek a remedy" before an administrative body, and that it is a prerequisite to the acquisition of subject matter jurisdiction. *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003); see also *Pickering v. Human Rights Comm'n*, 146 Ill. App. 3d 340, 352 (1986) (an administrative agency, like a court of limited jurisdiction, can only act "pursuant to the authority conferred on it by statute").

¶ 18 Here, Bumphus concedes, and the record confirms, that he sent a "late and untimely" copy of the EEOC's December 23, 2015, determination to the Department on March 8, 2016, well past the 30-day deadline required by the Act. Because compliance with a statutory time limit is a prerequisite to the acquisition of subject matter jurisdiction, the Commission properly determined that the Department lacked jurisdiction to review the charge.

¶ 19 Despite this, Bumphus requests that the Commission's decision sustaining the Department's dismissal be reversed and the matter remanded for an investigation of his discrimination charge. In support, Bumphus argues—for the first time on appeal—that, pursuant to section 7A-102(G)(4) of the Act (775 ILCS 5/7A-102(G)(4) (West 2016)), the Department's administrative proceedings should have been stayed after he filed his federal lawsuit on March 22, 2016.

¶ 20 As noted, Bumphus relies on section 7A-102(G)(4) of the Act (*id.*), which was in effect at the time he filed his federal civil rights lawsuit against Unique and other parties.[6] Section 7A-102(G)(4) stated that "[t]he Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights

CAU Removal 000208

violation." *Id.*

**\*5 ¶ 21** Ordinarily, an administrative agency's decision is entitled to deference; however, the amount of deference afforded to the administrative agency's decision depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. *Marconi,* 225 Ill. 2d at 532. An agency's rulings on questions of law are reviewed *de novo. City of Belvidere v. Illinois State Labor Relations Board,* 181 Ill. 2d 191, 205 (1998). Similarly, the determinative issue before us presents a purely legal question for which our review is *de novo.* See *Figueroa v. Deacon,* 404 Ill. App. 3d 48, 52 (2010) ("Whether there is substantial compliance with a statutory provision is a question of law and our review is *de novo.*").

**¶ 22** Here, the Commission properly sustained the Department's dismissal for lack of jurisdiction without considering whether the administrative proceedings should have been stayed pursuant to section 7A-102(G)(4). We reiterate that, although Bumphus filed a federal civil rights lawsuit against Unique prior to the Department's dismissal, Bumphus's failure to timely send a copy of the EEOC's determination to the Department was a necessary prerequisite to establishing the Department's jurisdiction. Thus, the Department was not authorized from the outset to start its investigation of Bumphus's charge, and there were no administrative proceedings that could arguably be stayed under section 7A-102(G)(4). Thus, Bumphus's contention fails.

**¶ 23** Moreover, as the State correctly notes, Bumphus failed to raise this issue before the Commission. The record is devoid of any evidence that Bumphus notified the Department of the federal lawsuit or requested the Department to enter a stay. While Bumphus asserts in his reply brief that he notified the Commission of his general concern that his "applicable standing for claims against [r]espondent *** might be at risk of being lost if his [Department] case is relinquished, withdrawn, or dismissed," none of Bumphus's filings with the Commission assert that the proceedings should have been stayed. Moreover, none of Bumphus's filings with the Commission reference section 7A-102(G)(4) of the Act. Thus, we find Bumphus waived review of the issue. See *Smith v. Department of Professional Regulation,* 202 Ill. App. 3d 279, 287 (1990) ("The waiver rule specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts."); see also *Texaco-Cities Service Pipeline Co. v. McGaw,* 182 Ill. 2d 262, 278 (1998) (arguments not raised before the administrative agency will not be considered for the first time on administrative

review).

**¶ 24** Lastly, we note that Unique asserts in its brief that, because Bumphus's petition for direct administrative review is frivolous, this court should impose sanctions. Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) states, *inter alia,* that: "A reviewing court may impose a sanction upon a party or an attorney for a party upon the motion of another party or parties, or on the reviewing court's own initiative where the court deems it appropriate." Under Illinois Supreme Court Rule 137(b) (eff. Jan. 1, 2018), a court may grant sanctions under two different circumstances: "(1) when a pleading, motion, or other paper is not well grounded in fact or is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or (2) when it is interposed for purposes such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Internal quotation marks omitted.) *People v. Stefanski,* 377 Ill. App. 3d 548, 551 (2007). We note that Unique did not file a motion for sanctions in this matter. Additionally, after careful consideration of the briefs, the record, and the proceedings in this court, we decline to sanction Bumphus on our own initiative. We simply do not view Bumphus's request for direct administrative review, taken as a whole, as not warranted in a good-faith argument for extension of section 7A-102(G)(4) of the Act (775 ILCS 5/7A-102(G)(4) (West 2016)) or that his primary purpose was to "delay, harass, or cause needless expense" (Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994)).

¶ 25 III. Conclusion

**\*6 ¶ 26** For the foregoing reasons, we affirm the Commission's March 20, 2019, order sustaining the Department's dismissal for lack of jurisdiction of Bumphus's discrimination charge.

**¶ 27** Affirmed.

Justices Wharton and Vaughan concurred in the judgment.

**All Citations**

Not Reported in N.E. Rptr., 2021 IL App (5th) 200037-U, 2021 WL 754596

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

CAU Removal 000209

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

**Bumphus v. Illinois Human Rights Commission, Not Reported in N.E. Rptr. (2021)**

2021 IL App (5th) 200037-U

# Footnotes

[1]    Neither the Department's December 21, 2015, letter nor proof of service have been included in the record on appeal; however, the letter is described in other documents of record, including the Department's investigation report, the Department's response to Bumphus's request for review, and the Commission's order.

[2]    Neither the EEOC's December 23, 2015, letter of dismissal and notice of rights nor proof of service have been included in the record on appeal, but Bumphus acknowledges receipt of the letter in his opening brief. The letter is also described in the Department's response to Bumphus's request for review and the Commission's order.

[3]    A copy of Bumphus's March 8, 2016, request for investigation is not included in the record but is mentioned in Bumphus's July 14, 2016, request for review by the Commission of the Department's dismissal and in the Department's subsequent response to Bumphus's request.

[4]    A copy of the Bumphus's federal complaint has not been included in the record on appeal. A description of the lawsuit is contained in the parties' briefs. Although Bumphus included a copy of the complaint in his "Appendix A," it does not appear that the parties have filed a stipulation, pursuant to Illinois Supreme Court Rule 329 (eff. July 1, 2017), or otherwise moved to supplement the record on appeal with the complaint.

[5]    Bumphus originally filed a petition for direct administrative review in the Second District Appellate Court on April 24, 2019. On that court's own motion, the appeal was transferred to the Fifth District Appellate Court because the alleged civil rights violations occurred in the Fifth District, and the venue provision of the Illinois Human Rights Act provides that "[p]roceedings for judicial review shall be commenced in the appellate court for the district wherein the civil rights violation which is the subject of the Commission's order was allegedly committed." 775 ILCS 5/8-111(B)(3) (West 2018).

[6]    Section 7A-102(G)(4) of the Act was amended by Public Act 100-1066, § 5 (eff. Aug. 24, 2018). See 775 ILCS 5/7A-102 (West 2018).

---

**End of Document**           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000210

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT 3

CAU Removal 000211

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS )      SS
COUNTY DEPARTMENT, CHANCERY DIVISION           )


MICHELLE ABRAHAM,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )      Case No. 2018-CH-02497
                                     )      Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,    )
                                     )
          Defendant.                 )

## AFFIDAVIT

Pursuant to the certification set forth below, Joanell Voigt states as follows.

1. I am President and Chief Executive Officer of Community Alternatives Unlimited ("CAU"), the Defendant in the above case.

2. In March 2017, I received from the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination purportedly filed by Michelle Abraham, a former CAU employee, on March 3, 2017. A copy of that charge is attached as Ex. A.

3. On or about May 4, 2017, I received a copy of a letter the Illinois Department of Human Rights ("IDHR") sent to Abraham. The letter indicated that the EEOC was responsible for investigating Abraham's charge, and if Abraham wanted the IDHR to take any further action on her charge, she needed to send the IDHR a copy of the EEOC's findings within thirty days of service. A copy of that letter is attached as Ex. B.

4. In June 2017, I received the EEOC's dismissal of Abraham's charge, dated June 2, 2017. In that notice, the EEOC indicated it "was unable to conclude that the information obtained establishes violations of the statutes." The notice advised Abraham that she could file suit under federal law in either federal or state court within 90 days of receiving the notice. A copy is attached as Ex. C.

5. In October 2017, I received a copy of a letter from the IDHR to Abraham indicating she had opted to have her EEOC charge investigated by the IDHR. (Ex. D)

Firm:45835549v8

**EXHIBIT 3**                                          CAU Removal 000212

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

6. In late November 2017, I received a dismissal notice for lack of jurisdiction and an investigation report from the IDHR. The investigation report recited some of the facts set forth above but also stated that Abraham did not submit a copy of the EEOC's findings to the IDHR until September 8, 2017. This was several months after the 30 day deadline for her to do so. As a result, the IDHR dismissed Abraham's charge for lack of jurisdiction but allowed her to seek review of the dismissal with the Illinois Human Rights Commission or to file a civil action in court. These documents are attached as Ex. E.

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that she verily believes the same to be true.

_Joanell Voigt_

Date: _May 8, 2018_

2

CAU Removal 000213

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT A

FILED DATE: 9/17/2021 6:14 PM  2018CH02497

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | | ☐ FEPA ☒ EEOC | 440-2017-02387 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Michelle Abraham | RECEIVED EEOC | 1972 |

RECEIVED EEOC
MAR 3 2017
CHICAGO DISTRICT OFFICE

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 611 E. Ironwood Drive, Mount Prospect, IL 60056 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COMMUNITY ALTERNATIVES UNLIMITED | 101 - 200 | (773) 867-3000 |
| Street Address | City, State and ZIP Code | |
| 8765 West Higgins, Chicago, IL 60631 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |
| Street Address | City, State and ZIP Code | |
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| | 01-31-2017 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or before November 2, 1999. My most recent position was Program Manager. During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent. Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny. I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Mar 03, 2017　　　X Michelle S. A | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date　　　　Charging Party Signature | |

EXHIBIT A

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT B

CAU Removal 000216

FILED DATE: 9/17/2021 6:14 PM 2018CH02497

ILLINOIS DEPARTMENT OF



Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

RECEIVED

MAY 0 4 2017

COMMUNITY
ALTERNATIVES UNLTD.

May 1, 2017

Ms. Michelle Abraham
611 East Ironwood Drive
Mt. Prospect, IL 60056

Re: CASE NO:   Michelle Abraham vs. Community Alternatives Unlimited #170428007

Dear Complainant:

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. After the EEOC issues its findings, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's

findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

By Mail:   Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

In Person:   Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. This process does not affect the investigation of your charge at EEOC. If you do not wish to proceed with the Department, you do not need to take any further action.

This letter does not apply to any settlement of this charge the parties have made with the EEOC.

If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.

ILLINOIS DEPARTMENT OF HUMAN RIGHTS.

RE1_EEOC 30 Rev 4/17

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463

CC:

Community Alternatives Unlimited
8765 West Higgins
Chicago, IL 60631

**EXHIBIT B**

CAU Removal 000217

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT C

CAU Removal 000218

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Michelle Abraham | From: | Chicago District Office |
|---|---|---|---|
| | 611 E. Ironwood Drive | | 500 West Madison St |
| | Mount Prospect, IL 60056 | | Suite 2000 |
| | | | Chicago, IL 60661 |

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2017-02387 | Eva Baran, Investigator | (312) 869-8023 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

- [X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

- [ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman*                    6/2/17

Julianne Bowman,
District Director                    *(Date Mailed)*

Enclosures(s)

cc:     **COMMUNITY ALTERNATIVES UNLIMITED**
c/o Julie Badel
Epstein Becker Green
227 West Monroe Street #3250
Chicago, IL 60606

EXHIBIT C

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

CAU Removal 000219

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT D

CAU Removal 000220

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

ILLINOIS DEPARTMENT OF

# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

October 12, 2017                                                  **RESPONDENT'S COPY**

MICHELLE ABRAHAM
**C/O RUTH IRENE MAJOR, MEMBER**
LAW OFFICES OF RUTH I. MAJOR
30 WEST MONROE STREET, SUITE 1650
CHICAGO, IL  60603 – 2436

RE:      Charge No.:  **2017CR3337**
         Respondent:  **COMMUNITY ALTERNATIVES UNLIMITED**

Complaint or Civil Action Filing Dates:  **6/3/2018   through   8/31/2018**

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ('EEOC') investigated by the Illinois Department of Human Rights ('IDHR') under the Illinois Human Rights Act.  IDHR has received a copy of EEOC's determination and your request for the Department to investigate.  A copy of the charge has been served on the Respondent.  Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge.  If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition.  If we do not have copies of these documents in your file, we have included copies with this notice.

1)       Verification of Disability.
Please give the Verification of Disability form to your physician for completion.  Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)       Consent form.
The consent form allows IDHR to review your physician's documentation.  Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge.  It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned. IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge.  IDHR's investigation time may be extended if you and Respondent agree in writing.

**EXHIBIT D**

CAU Removal 000221

PAGE 2

If IDHR does not complete the investigation of your case by timely issuing its report of findings, you may either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court within 90 days after the expiration of the 365 days (or the extended time). We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Human Rights Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside this 90-day period, your complaint or civil action may be deemed untimely and dismissed.

Once 455 days (365 days [or the extended time] plus 90 days) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Human Rights Commission, or commenced a civil action in the appropriate court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. Please also serve a copy of your complaint on the EEOC: 500 West Madison Street, Suite 2000, Chicago, IL 60661 – 2592. If you file a complaint with the Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

SB1122 IN-6 Non-Med
CR/SR
4/17

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT E

CAU Removal 000223

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) ss | |
| COUNTY OF COOK | ) | FILE NO (S)  2017CR3337 |

### AFFIDAVIT OF SERVICE

Janice L. Woods-Wills, deposes and states that she served a copy of the

attached **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** on each person

named below by depositing same this 21ST day of November, 2017, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the
undersigned certifies that the statements set forth in this instrument are true and correct, except as to
matters therein stated to be on information and belief and as to such matters the undersigned certifies as
aforesaid that she verily believes the same to be true.

Janice L. Woods-Wills

### PLEASE NOTE:

The above-signed person is responsible only for mailing these documents.  If you wish
a review of the finding in this case, you must complete the Request for Review form
attached.  Department staff are not permitted to discuss the investigation findings once
a Notice of Dismissal has been issued.

EXHIBIT E

CAU Removal 000224

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

**Complainant:** Michelle Abraham          **IDHR No.:** 2017CR3337
**Respondent:** Community Alternatives          **EEOC No.:** 440-2017-02387
              Unlimited

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR          **Date:** 10/25/17

**Issue/Basis:**                                   **Finding:**

A. Harassment/race, black                    A. Lack of Jurisdiction
B. Placed on performance plan/retaliation    B. Lack of Jurisdiction
C. Constructive discharge/race, black        C. Lack of Jurisdiction
D. Constructive discharge/retaliation        D. Lack of Jurisdiction

**Jurisdiction:**

Alleged violations:          A.-D.:    1/31/17
Charge filed:                         3/3/17
Charge perfected:                     6/2/17

Number of employees:                  101-200

## Findings

On March 3, 2017, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On May 1, 2017, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On September 8, 2017, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

CAU Removal 000225

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

IN THE MATTER OF:                       )
                                        )
MICHELLE ABRAHAM,                       )
                                        )
               COMPLAINANT,             )        CHARGE NO.  2017CR3337
                                        )        EEOC NO.    440-2017-02387
AND                                     )
                                        )
COMMUNITY ALTERNATIVES                  )
  UNLIMITED,                            )
                                        )
               RESPONDENT.              )

## NOTICE OF DISMISSAL
## FOR LACK OF JURISDICTION

Ruth Major                              Julie Badel
Attorney at Law                         Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650               227 West Monroe-Suite 3250
Chicago, Illinois 60603                 Chicago, Illinois 60606


DATE OF DISMISSAL:  November 21, 2017

1.      YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT jurisdiction to pursue the allegations of the charge.  Accordingly, pursuant to
Section 7A-102(D) of the Human Rights Act, Illinois Compiled Statutes, (775 ILCS 5/3-
101 et. seq.) and the Rules and Regulations of the DHR (56 Ill. Adm. Code. Chapter II,
Section 2520.560), the charge is HEREBY DISMISSED.

    2.      If Complainant disagrees with this action, Complainant may:

    a) seek review of this dismissal before the Illinois Human Rights Commission,
       100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
       "Request for Review" with the Commission by the request for review filing
       date below.  Respondent will be notified by the Human Rights Commission if
       a Request for Review is filed.

    REQUEST FOR REVIEW FILING DEADLINE DATE:  **February 26, 2018**

CAU Removal 000226

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

**NOTICE OF DISMISSAL FOR LACK OF JURISDICTION**
**2017CR3337**
Page Two

Or,

b)      commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice.  A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.** The Appellate Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch V. Department of Transportation,</u> ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.


**Please note that the Department cannot provide any legal advice or assistance.  Please contact legal counsel, your city clerk, or your county clerk with any questions.**


3.      If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.

DEPARTMENT OF HUMAN RIGHTS


HB 1509/HB59/NOD/LOJ
12/10

CAU Removal 000227

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT 4

CAU Removal 000228

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

2020 WL 4673136
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Jessica BALL, Plaintiff,

v.

ROESLEIN & ASSOCIATES, INC., Defendant.

Case No. 20-CV-00045-NJR
|
Signed 08/12/2020

**Attorneys and Law Firms**

Michael J. Brunton, Brunton Law Offices, P.C., Collinsville, IL, for Plaintiff.

Julie Z. Devine, Kevin L. Fritz, Lashly & Baer, P.C., St. Louis, MO, for Defendant.

## MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

**\*1** Pending before the Court is a Motion to Dismiss Plaintiff Jessica Ball's First Amended Complaint filed by Defendant Roeslein & Associates, Inc. ("Roeslein") (Doc. 16). For the reasons set forth below, the motion is granted in part and denied in part.

## FACTUAL & PROCEDURAL BACKGROUND

Ball alleges she experienced a hostile work environment, harassment, and discrimination while working for her former employer, Roeslein, because of her disabilities, gender, and sexual orientation. (Doc. 1-1, pp. 25-43). Ball reported the hostile work environment, harassment, and discrimination to Roeslein's supervisors, and she filed a complaint with the Illinois Department of Human Rights ("Department") and the United States Equal Employment Opportunity Commission ("EEOC"). Ball alleges that Roeslein terminated her in retaliation for her reports regarding the hostile work environment, harassment, and discrimination (*Id.* at pp. 27-43).

Ball received a Right-to-Sue ("RTS") letter from the EEOC on July 1, 2019 (*Id.* at p. 47) and commenced this action in the Circuit Court of the Twentieth Judicial Circuit in Randolph County, Illinois, on September 26, 2019 (*Id.* at p. 1). Ball alleges two counts against Roeslein under the Americans with Disabilities Act ("ADA"): disability discrimination (Count I) and retaliation for reporting disability discrimination (Count II) (*Id.* at pp. 25-29). Ball alleges four more counts against Roeslein under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq* ("Title VII"): gender discrimination (Count III); retaliation for reporting gender discrimination (Count IV); sexual orientation discrimination (Count V); and retaliation for reporting sexual orientation discrimination (Count VI) (*Id.* at pp. 29-37).

Ball also alleges a retaliatory discharge claim under Illinois common law against Roeslein (Count VII) (*Id.* at pp. 37-39). Finally, Ball alleges another two counts against Roeslein under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et. seq* ("IHRA"): gender and sexual orientation discrimination (Count VIII) and retaliation for reporting the gender and sexual orientation discrimination, in violation of the IHRA (Count IX) (*Id.* at pp. 39-43). Ball seeks reasonable attorney's fees, costs, and compensatory and punitive damages (*Id.* at pp. 25-43).

On January 10, 2020, Roeslein removed the case to this Court (Doc. 1). The Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Roeslein filed a timely Motion to Dismiss, arguing the First Amended Complaint fails to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 16).

## LEGAL STANDARD

To survive a motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must " 'clearly ... allege facts demonstrating' each element" required to establish he has standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 95 S.Ct. 2197, 2215 (1975)). The "irreducible constitutional minimum" of standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The burden of establishing these three elements falls on the party invoking the court's jurisdiction. *Id.*

EXHIBIT 4

CAU Removal 000229

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

**\*2** Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). The factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 554-55 (internal citations omitted); *see also Warth v. Seldin,* 422 U.S. 490, 501 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Further, courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). On the other hand, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Fed.,* 497 U.S. 871, 889 (1990)).

## ANALYSIS

### I. ADA Discrimination Claim

Roeslein first asserts that Ball's ADA discrimination claim does not allege a specific disability and Count I should be dismissed (Doc. 17, p. 3). The Court agrees.[i] The Seventh Circuit has held that short, plain statements, as long as they include a specific disability, pass the Rule 12(b)(6) test. *See Tate v. SCR Medical Transp.,* 809 F.3d 343, 345 (7th Cir. 2015) ("[a]nd surely a plaintiff alleging discrimination on the basis of an actual disability under 42 U.S.C. § 12102(1)(A) must allege a specific disability"). Here, Ball did not allege a specific disability. Her ADA discrimination claim, therefore, must be dismissed.

### II. Title VII Sex Discrimination Claims

Counts III and V of the First Amended Complaint allege Title VII sex discrimination claims based on gender and sexual orientation. Roeslein contends Ball must allege facts to support the conclusions that she was terminated as a result of her gender and/or sexual orientation (Doc. 17, p. 5).

The Seventh Circuit has explained, however, that "a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). To state a claim for gender discrimination under Title VII, a plaintiff only needs to allege "that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1028 (7th Cir. 2013).

Under this standard, Ball alleges sex discrimination claims based on her gender and sexual orientation. Ball pleads she is a female and a homosexual (Doc. 1-1, pp. 29, 33). Ball also pleads she was subject to discrimination, harassment, and a hostile work environment by Roeslein because of her gender and sexual orientation (*Id.*). Ball then pleads she was terminated as a result of her gender and sexual orientation (*Id.* at pp. 30, 33). Accordingly, Roeslein's Motion to Dismiss is denied as to Counts III and V.

### III. Hostile Work Environment

**\*3** Ball did not plead a separate hostile work environment claim in the First Amended Complaint, but pleads in her ADA and Title VII discrimination claims that she was subjected to a hostile work environment. "An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and, (4) that there is a basis for employer liability." *Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 982 (7th Cir. 2014) (quoting *Mendenhall v. Muller Streamline Co.,* 419 F.3d 686, 691 (7th Cir. 2005)). "Factors to consider include the frequency and severity of conduct, as well as if it is physically threatening or humiliating, or merely an offensive utterance, or whether it interferes with an employee's work performance." *Emerick v. Wood River-Hartford Sch. Dist. No. 15,* 2017 WL 2778624, at \*9 (S.D. Ill. June 27, 2017).

Here, the Court agrees with Roeslein that Ball has failed

CAU Removal 000230

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

to allege any facts that would support a hostile work environment claim (Doc. 17, pp. 3-5). Ball merely states that she was harassed and subjected to a "hostile work environment." Even under the liberal federal pleading requirements, Ball's allegations are insufficient to put Roeslein on notice regarding the conduct or actions she believes rise to the level of harassment or a "hostile work environment." Thus, Roeslein's hostile work environment claims must be dismissed.

### IV. ADA and Title VII Retaliation Claims

Ball also brings retaliation claims under the ADA[2] and Title VII in Counts II, IV, and VI. To plead such claims, a plaintiff must allege that she engaged in statutorily protected activity and suffered an adverse action as a result of that activity. *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017). A full narrative of the retaliated activated is unnecessary. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). "It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Id.*

Here, Ball alleges that she engaged in statutorily protected activity by reporting the hostile work environment, harassment, and discrimination based on her disabilities and sexual orientation to her supervisors at Roeslein (Doc. 1-1, pp. 28, 36).[3] *See Rizzo v. Sheahan*, 266 F.3d 705, 715 (7th Cir. 2001) (noting that the Seventh Circuit recognizes internal reporting as a statutorily protected activity). Ball further alleges that Roeslein fired her because she reported disability and sexual orientation discrimination, harassment, and hostile work environment.

Roeslein argues Ball failed to state a retaliation claim under the ADA because "she fails to indicate to whom she made this alleged report, the date of the alleged report, the location of the alleged report, nor the nature of the alleged report." (Doc. 17, p. 4). Additionally, Roeslein argues Ball failed to state a retaliation claim under Title VII because Ball does not allege that she engaged in any protected activity under Title VII, much less provide any factual details related to a protected activity. (Doc. 17, p. 6). Roeslein continues "[Ball] does not provide any factual support that her termination was connected in any way to a protected activity." (*Id.*).

**\*4** The Court agrees. Ball's First Amended Complaint fails to plead even "a few tidbits" that would allow Roeslein to investigate her retaliation claims. At best, Ball

pleads that she "reported the hostile work environment, harassment, and discrimination based upon disabilities or her perceived disabilities to *her* supervisors." (Doc. 1-1, p. 28) (emphasis added); *see Dailey v. HSHS Med. Grp.*, 2019 WL 2772532, at *3 (S.D. Ill. July 2, 2019) (acknowledging that "[a]nother 'tidbit' that could help is for [plaintiff] to identify the 'supervisors' to whom she reported [defendant's] alleged improper conduct—even if just to clarify that they were 'her supervisors,' which [defendant] could presumably then identify"). Ball's First Amended Complaint is comprised primarily of legal conclusions like those found patently inadequate in *Bell Atlantic. See Shofner v. Branding Iron Holdings, Inc.*, 2016 WL 879630, at *3 (S.D. Ill. Mar. 8, 2016) (acknowledging that "[n]or in her retaliation claims does she plead anything more than a general allegation of retaliation for reporting some unspecified conduct."); *see also EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781 (7th Cir. 2007) (noting "a plaintiff ... alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected").

Here, the word "her" in front of supervisors does not satisfy the pleading standards for Ball's retaliation claim under the ADA. And Ball's retaliation claim under Title VII for her sexual orientation only states that she reported the discrimination—not even that she reported it to *her* supervisors.[4] Therefore, Ball's retaliation claims under the ADA and Title VII must be dismissed.

### V. Retaliatory Discharge Claim

#### A. Choice of Law

Ball also alleges a retaliatory discharge claim under Illinois common law. Roeslein argues that Ball's retaliatory discharge claim must be dismissed because Ball fails to allege facts that Illinois law applies to this claim.

Although Roeslein is not arguing that the substantive law of any state other than Illinois applies, a choice of law analysis confirms that Ball does not need to allege additional facts that Illinois law applies to this claim. Because this Court considers Ball's common law retaliatory discharge claim under its supplemental jurisdiction, it applies Illinois' choice of law rules to determine the applicable substantive law. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir.

CAU Removal 000231

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

2014) ("[f]ederal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law"). In practice, this means that "the law of the place of injury controls *unless* Illinois has a more significant relationship with the occurrence and with the parties." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998) (emphasis added). "A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered." *Id.* Illinois courts also consider "the interests and public policies of potentially concerned states ... as they relate to the transaction in issue." *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (1997).

A careful assessment of the factors cited above leads to the conclusion that Illinois has the most significant relationship to the retaliatory discharge, and therefore, Illinois law applies to this claim. Illinois is the place of the alleged injury (Doc. 1, p. 3). *See Fredrick*, 144 F.3d at 503-04 (noting that in a retaliatory discharge claim a plaintiff's domicile is the state in which the alleged injury took place). Illinois is the state of domicile of Ball and one of the places where Ball worked for Roeslein (Doc. 1, p. 3; Doc. 1-1, p. 25). Missouri is the place where Roeslein's principal place of business is maintained and where Roeslein was incorporated (Doc. 1, p. 3). Roeslein also claims in a letter that it sent to the Department on August 23, 2018 that Missouri is the place where Ball was hired as an employee; Missouri is the state were Ball signed an employment agreement; Missouri is where Ball's managers were always based; and Missouri is where all employment decisions take place (Doc. 21-2, p. 1).

**\*5** Even if this Court could consider Roeslein's August 23, 2018 letter,[5] this Court cannot conclude that any other state has a more significant relationship with the occurrence or parties than the place of injury, thus Illinois law controls.

### B. Merits

Roeslein also argues that the retaliatory discharge claim in Count VII of the First Amended Complaint must be dismissed because Ball "fails to allege any facts to support her conclusion that her discharge was in retaliation for her protected activities, or that there was any connection between her alleged report and her

termination." (Doc. 17, pp. 6-7.).

To state a claim for retaliatory discharge under Illinois law, a plaintiff must allege: "(1) he [or she] has been discharged; (2) in retaliation for his activities; (3) the discharge violates a clear mandate of public policy." *Robinson v. Morris*, 2018 WL 2164336, at \*4 (S.D. Ill. May 10, 2018). "Retaliatory discharge claims have been recognized as a narrow exception to the general rule in two types of cases: those involving retaliation for filing a worker's compensation claim and those involving an employee terminated for reporting an employer's allegedly criminal activity." *Mollet v. St. Joseph's Hosp. Breese, of the Hosp. Sisters of the Third Order of St. Francis*, 2017 WL 1035750, at \*2 (S.D. Ill. Mar. 17, 2017).

Ball alleges that she reported to supervisors inaccurate accounting and financial recordings, including reporting that money was "not received when it was reported received, material not present when reported as present, instigating various fraud regulations and laws." (Doc. 1-1, p. 38); *see Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 132 (1981) (citations omitted) (noting that the Illinois Supreme Court has held that "[p]ublic policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy"). Ball further alleges that she reported to Roeslein supervisors "numerous safety violations at the parts which violated OSHA regulations and safety regulations and laws" and "welds and materials that were bad on products but the products were still being approved and shipped to customers, which violated OSHA regulations...." (*Id.*). Ball then alleges that her termination "is casually [sic] related to the reports and complaints of the above-referenced illegal activities to her supervisors." (*Id.*).

Ball has, therefore, stated a claim for retaliatory discharge under Illinois law. While Ball does not allege if the person responsible for her termination knew of her report to her supervisors, Ball does allege that she made reports to her supervisors and then was subsequently fired. (*Id.*); *see Laurie v. BeDell*, 2017 WL 1076940, at \*7 (S.D. Ill. Mar. 22, 2017) (holding that the plaintiff provided enough facts that she was fired in retaliation for reporting illegal activities "[a]lthough [plaintiff] d[id] not state if the person responsible for her termination knew of the report provided to her supervisors, she does allege that she reported her injuries to her supervisors and then was subsequently fired").

**\*6** Accordingly, Roeslein's Motion to Dismiss is denied as to Ball's retaliatory discharge claim under Illinois

CAU Removal 000232

Ball v. Roeslein & Associates, Inc., Slip Copy (2020)

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

common law.

## VI. IHRA Claims

The IHRA provides for a comprehensive procedure for redressing human rights violations, under which a complainant must exhaust his or her administrative remedies before bringing a civil suit. The procedure becomes more convoluted when a complainant files a charge with the Department and the EEOC.

In the case of dual filings, the Department "shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102. When the EEOC does not issue a determination, but issues the complainant a notice of a right to sue, "the complainant must submit a copy of the EEOC's determination within **30 days** after service of the determination by the EEOC on complainant." *Id.* (emphasis added). If the EEOC "does not issue a determination, but does issue the complainant a notice of a right to sue ... *and if the Department is timely notified of the EEOC's determination by complainant*, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination." *Id.* (emphasis added).

The complainant may then commence a civil suit in two instances: (1) upon receiving a final report from the Department; or (2) if Department fails to issue a report within 365 days. 775 ILCS 5/7A-102(D), (G)(2). If the Department fails to issue a report within 365 days, the complainant has ninety days to either proceed before the IHRC or commence a civil action. *Id.*

Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. Ball alleges she timely filed charges with the Department and the EEOC, and she received a notice of a RTS from the EEOC on July 1, 2019 (Doc. 1-1, p. 47). As Roeslein correctly points out, however, a RTS from the EEOC is not a substitute for a final report from the Department. *See Wierciszewski v. Granite City Ill. Hosp. Co.*, No. 11–120–GPM, 2011 WL 1615191 at *3 (S.D. Ill. Apr. 28, 2011).

It is undisputed that the Department did not issue a report

on Ball's administrative charge. To combat this, Ball argues the Department failed to issue a report within the 365-day period and she may file a lawsuit. 775 ILCS 5/7A-102. Unfortunately, however, the statute does not clearly say whether the 365–day period begins when the complainant files the charge with the EEOC or, alternatively, when EEOC made its determination. *O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4916464, at *12 (N.D. Ill. Oct. 17, 2011); *Muller v. Morgan*, No. 12 C 1815, 2013 WL 2422737, at *4 (N.D. Ill. June 3, 2013). Ball's IHRA claims are untimely no matter how the statute is read. If the 365-day period commenced when Ball filed her charge with the EEOC—April 30, 2018 (Doc. 1-1, p. 69)—Ball was required to file this suit by July 29, 2019—365 days plus 90 days after April 30, 2018, but Ball filed her initial Complaint asserting claims under the IHRA nearly two months later—on September 26, 2019 (Doc. 1-1, p. 1). If the 365-day period commenced when the EEOC made its determination—July 1, 2019 (Doc. 1-1, p. 47)—then Ball filed too early as the 365-day period had not expired.

**\*7** Further, Ball has failed to provide facts that she submitted a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC. 775 ILCS 5/7A-102(A-1)(1)(iv); *see* 775 ILCS 5/7A-102(A-1)(2) (providing that the Department will only take substantive action on the EEOC determination if it "is timely notified of the EEOC's findings by complainant"); *see also Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) (holding that the plaintiff failed to administratively exhaust her IHRA claims because plaintiff failed to submit a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC on plaintiff).

Accordingly, the Court finds that Ball failed to administratively exhaust her IHRA claims and her claims for discrimination, harassment, or retaliation under the IHRA must be dismissed.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant Roeslein (Doc. 16) is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Counts III, V, and VII. The motion is **GRANTED** as to Counts I, II, IV, VI, VIII, and IX, which are **DISMISSED without prejudice** for failure to state a claim. The action will proceed on Ball's claims of Title VII sex discrimination (Counts III and V) and retaliatory discharge under Illinois

CAU Removal 000233

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

common law (Count VII).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 4673136

## Footnotes

[1]  The Court does not, however, believe Ball is obligated to plead all the facts Roeslein argues she must plead regarding her essential functions and termination as a result of her disability.

[2]  Ball's retaliation claim under the ADA is not foreclosed simply because Ball fails to allege a specific disability. *See Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) ("[a] court's conclusion that an individual does not have a disability does not foreclose a retaliation claim").

[3]  Ball fails to allege that she reported the hostile work environment, harassment, and discrimination based on her gender, but does allege that she filed a formal EEOC charge of gender, sexual orientation, and disability discrimination, harassment, and hostile work environment. Filing an EEOC charge is "the most obvious form of statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011).

[4]  In *Brooks v. FedEx Supply Chain, Inc.*, 2019 WL 1746264, at *6 (S.D. Ill. Apr. 18, 2019), the plaintiff's complaint was similarly comprised of legal conclusions. This Court, however, was able to consider the facts and allegations in the Department's Investigation Report attached to plaintiff's complaint. Here, Ball only attached the EEOC charge to the Complaint, which contains the same legal conclusions as Ball's Complaint (Doc. 1-1, pp. 44-46).

[5]  This Court may consider documents attached to the pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Fredrick*, 144 F.3d at 504 (noting that "[defendant's] [a]ffidavits are not properly considered in deciding upon a motion under Rule 12(b)(6) unless the district court converts the motion into one for summary judgment under Rule 56").

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000234

Donald v. City of Chicago, --- F.Supp.3d ---- (2021)

2021 Fair Empl.Prac.Cas. (BNA) 179,712

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

2021 WL 1946335
United States District Court, N.D. Illinois, Eastern
Division.

Cynthia DONALD, Plaintiff,
v.
CITY OF CHICAGO and Eddie Johnson,
Defendants.

No. 20-cv-6815
|
Signed 05/14/2021

**Synopsis**
**Background:** Police officer brought claims against her
supervisor and the city, alleging she was subjected to
sexual abuse, harassment, and a hostile work environment
by her supervisor in violation of Title VII, § 1983, Illinois
Human Rights Act (IHRA), and Illinois Gender Violence
Act (IGVA), and alleging spoliation of evidence by
supervisor. Supervisor and city moved to dismiss.

**Holdings:** The District Court, Elaine E. Bucklo, J., held
that:

allegation that supervisor transferred officer from private
detail to records department plausibly alleged tangible
employment action for purposes of Title VII;

officer alleged facts sufficient to state claim for municipal
liability under § 1983;

officer failed to exhaust her administrative remedies
pertaining to claims under Illinois Human Rights Act;

punitive damages are not available under Title VII or §
1983 against a municipality or government;

officer's Title VII claim did not preempt her § 1983
claim;

claim under IGVA is not preempted by IHRA because
there may be factual overlap between claims, so long as
IGVA claim can be stated without reference to IHRA; and

officer sufficiently alleged damages from supervisor's
destruction of his cell phone, as required to state claim
under Illinois law for negligent spoliation of evidence.

Motions to dismiss granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to
State a Claim.

**Attorneys and Law Firms**

Brian H. Eldridge, Robert J. McLaughlin, Robert John
McLaughlin, Steven Alan Hart, Carter David Grant, John
Backes Prior, Hart McLaughlin & Eldridge, LLC,
Chicago, IL, for Plaintiff.

Mark J. Bereyso, Susan Margaret O'Keefe, Amy Lynne
Brammell, Kristen Woytowicz, City of Chicago
Department of Law, Employment Litigation Division,
Chicago, IL, for Defendant City of Chicago.

Michael Irving Leonard, Rebecca Alexander, Leonard
Trial Lawyers LLC, Oluwagbemiga Longe, The Longe
Law Firm, Chicago, IL, for Defendant Eddie Johnson.

Memorandum Opinion and Order

Elaine E. Bucklo, United States District Judge

**\*1** Plaintiff Cynthia Donald is a police officer in the
Chicago Police Department. She alleges that over a period
of three years, she was subjected to sexual abuse,
harassment, and a hostile work environment by her
supervisor and superior, former Chicago Police
Department Superintendent Eddie Johnson. Ms. Donald
brings the instant action against Mr. Johnson and the City
of Chicago, asserting causes of action under Title VII, 42
U.S.C. § 1983, and state law. Both Mr. Johnson and the
City of Chicago have moved to dismiss Ms. Donald's
claims. For the reasons that follow, the motions to dismiss
[45, 47] are granted in part and denied in part.

I.

In reviewing the sufficiency of a complaint pursuant to a
motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), I "accept all well pled facts as true and draw all
permissible inferences in favor of the plaintiff." *Agnew v.
Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th
Cir. 2012). To survive a motion to dismiss, the complaint
must state a claim "that is plausible on its face" after
conclusory allegations are disregarded. *W. Bend Mut. Ins.
Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)

CAU Removal 000235

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Ms. Donald has been a Chicago police officer since November 2006. ECF No. 34 ¶ 64. In the summer of 2015, while Ms. Donald was assigned to the First District, Ms. Donald caught Mr. Johnson's attention, and Mr. Johnson commented to a friend that she had a physically attractive appearance. *Id.* ¶¶ 65-66. In or around May 2016, acting as Superintendent, the highest-ranking official in the Chicago Police Department, Mr. Johnson had Ms. Donald reassigned from the First District to his personal detail at police headquarters. *Id.* ¶ 68. Approximately six months later, Mr. Johnson arranged for Ms. Donald to be his personal driver. *Id.* ¶ 69.

Shortly after Ms. Donald's reassignment to headquarters, Mr. Johnson began sexually assaulting and harassing Ms. Donald, including forcibly performing oral and vaginal sex on her, locking her in his office and conditioning her release on her performing sexual acts on him, sending her nude photographs, and making derogatory and sexual remarks. *Id.* ¶¶ 7, 70, 77-78, 85, 87. This sexual assault and harassment continued for a period of three years, until the end of 2019. *Id.* ¶¶ 71, 76. Mr. Johnson used his position of power within the Chicago Police Department to pressure Ms. Donald into submitting to his sexual advances. For example, while she was studying for her Sergeant's exam, Mr. Johnson told Ms. Donald that he could facilitate her promotion to Sergeant as long as she "stay[ed] on his good side." *Id.* ¶ 96. He also threatened to demote a male officer who he believed was showing an interest in Ms. Donald. *Id.* ¶ 100.

On October 16, 2019, Mr. Johnson ordered Ms. Donald to accompany him to a restaurant. *Id.* ¶ 102. Later that night, after Ms. Donald had returned home, Mr. Johnson was found asleep in his car, allegedly intoxicated. *Id.* ¶¶ 103-04. The incident precipitated an investigation by Chicago's Office of the Inspector General into Mr. Johnson's conduct, and Ms. Donald alleges that in connection with that investigation, Chicago Mayor Lori Lightfoot "learned of Superintendent Johnson's highly inappropriate behavior" towards Ms. Donald. *Id.* ¶¶ 18, 105. Armed with this information, Mayor Lightfoot directed Mr. Johnson to demote Ms. Donald by "dumping" her back in the First District, away from headquarters. *Id.* ¶ 107. Instead of following that directive, however, Mr. Johnson transferred Ms. Donald to the records department on the second floor of headquarters so that he could continue to harass her by ordering her to his fifth-floor office. *Id.* ¶ 111-12.

**\*2** Various allegations of misconduct were brought

against Ms. Donald in connection with the investigation of the October 16, 2019 incident. *Id.* ¶ 108. Ms. Donald alleges these allegations were brought "in retaliation" for her connection to the incident "and to deflect blame from Superintendent Johnson." *Id.* ¶ 109. Mr. Johnson was eventually terminated from the Chicago Police Department. *Id.* ¶ 122.

Ms. Donald also alleges that "[a]s more details relating to the October 16, 2019 incident came to light in the media, Superintendent Johnson confessed to Plaintiff that he damaged or destroyed evidence contained in his cell phone." *Id.* ¶ 115. The SIM card in Ms. Donald's own cell phone also was "damaged or destroyed" after she left her cell phone unattended on her desk. *Id.* ¶ 117-18.

In the instant suit, Ms. Donald brings three claims against the City of Chicago for: in Count I, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; in Count III, equal-protection and due-process violations under 42 U.S.C. § 1983; and in Count VII, a violation of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/2. In addition, she brings four claims against Mr. Johnson for: constitutional violations under 42 U.S.C. § 1983 (Count II); a violation of the Illinois Gender Violence Act, 740 Ill. Comp. Stat. 82/5 (Count IV); "spoliation of evidence" (Count V); and a violation of the IHRA (Count VI). Both defendants have moved to dismiss all claims against them.

## II.

I turn first to the City of Chicago's motion to dismiss. The City argues initially that Ms. Donald failed to state a claim under Title VII. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on [a] reason forbidden by Title VII [such as sex]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge*, 804 F.3d 826, 833-34 (7th Cir. 2015). The City challenges only the fourth element—that there is a basis for employer liability. ECF No. 45 at 9.

In cases where the harassing employee was the plaintiff's supervisor, as both parties agree Mr. Johnson was here, ECF No. 45 at 10; ECF No. 54 at 2, whether there is a basis for employer liability depends on the consequences flowing from the harassment. If the harassment culminates in a tangible employment action, such as

CAU Removal 000236

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

discharge, demotion, or undesirable reassignment, the employer is strictly liable. *Vance v. Ball State Univ.*, 570 U.S. 421, 424, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). If there has been no tangible employment action, however, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424, 133 S.Ct. 2434.

Ms. Donald argues that she adequately alleged a tangible employment action sufficient to establish strict liability. Indeed, she contends that there were several tangible employment actions alleged in the complaint: (1) Ms. Donald's demotion to the records department, (2) the allegations brought against Ms. Donald in connection with the investigation into the October 16, 2019 incident, and (3) Mr. Johnson's harassing behavior itself. *See* ECF No. 54 at 3.

**\*3** That Ms. Donald was charged with misconduct in the Office of the Inspector General investigation cannot serve as a tangible employment action sufficient to establish strict liability on the part of the City. "An employer is [only] vicariously liable for tangible employment actions undertaken *by the harassing supervisor*." *Johnson v. West*, 218 F.3d 725, 731 (7th Cir. 2000) (emphasis in original). There is no allegation in the complaint that Mr. Johnson played any role in the Office of the Inspector General's investigation or in the determination that charges would be brought against Ms. Donald.

Nor can the harassing behavior itself constitute the tangible employment action here, even if the harassment resulted in a change of the conditions of Ms. Donald's employment. *See, e.g.*, *Gawley v. Ind. Univ.*, 276 F.3d 301, 311 (7th Cir. 2001) (finding no tangible employment action where supervisor made harassing comments and touched plaintiff's breast); *Stanfield v. Dart*, No. 10 C 6569, 2012 WL 6720413, at \*7 (N.D. Ill. Dec. 27, 2012) ("[S]exual harassment, including harassment that results in sexual touching or relations, cannot alone constitute a tangible employment action."); *Macaddino v. Inland Am. Retail Mgmt., LLC*, No. 12 C 8655, 2015 WL 1281475, at \*12 (N.D. Ill. Mar. 18, 2015) (same); *but see Johnson v. Bristol-Myers Squibb Co.*, No. 10 C 1553, 2010 WL 3927651, at \*4 (N.D. Ill. Oct. 1, 2010). A contrary interpretation would create an exception that swallows the rule, because hostile-work-environment claims necessarily involve harassment.

Ms. Donald does allege, however, that Mr. Johnson transferred her from his private detail to the records department at headquarters in response to Mayor Lightfoot's directive to "dump" or demote her. ECF No. 34 ¶¶ 107, 111. The City argues that Mr. Johnson did not reassign Ms. Donald; the Mayor did. To the contrary—according to the complaint, the Mayor directed Mr. Johnson to return Ms. Donald to the First District, but he placed her in the records department instead. *Id.* The City also argues that "a reassignment which does not involve a reduction in pay or benefits and no more than a minor change in working conditions does not qualify as an adverse employment action." ECF No. 45 at 11-12 (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004)). But whether this was such an assignment is a question of fact more properly reserved for the summary-judgment phase. *See Griffin v. Chi. Housing Authority*, No. 14 C 2481, 2014 WL 6657799, at \*4 (N.D. Ill. Nov. 24, 2014) ("[T]he fact-specific determinations involved in the question of employer liability are better left for summary judgment."). Accordingly, I conclude that Ms. Donald plausibly alleged a tangible employment action, and I decline to dismiss Count I.[1]

### III.

The City of Chicago also moves to dismiss Count III, which asserts constitutional violations under 42 U.S.C. § 1983. "A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Instead, to establish a municipality's liability, a plaintiff must show "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). The City argues that Ms. Donald has not alleged facts sufficient to show municipal liability.

**\*4** Ms. Donald, however, alleged that "[t]he City of Chicago employed and conferred authority upon Superintendent Johnson to act with final policymaking authority [and] act in a supervisory capacity to CPD [Chicago Police Department] police officers," and that "Superintendent Johnson was the highest-ranking member of the CPD." ECF No. 34 ¶¶ 2, 35. "[D]efendants have

CAU Removal 000237

the burden on a motion to dismiss to establish the legal insufficiency of the complaint," and here, the City "must establish that, as a matter of 'state and local positive law,' or as a matter of " 'custom or usage' having the force of law,' [the defendant] was [not] a final policymaker." *Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir. 1990) (internal quotations omitted). "[T]he [City of Chicago] ha[s] not even discussed state or local law, let alone carried that burden." *Harris v. Town of Cicero*, 12 C 601, 2012 WL 4434720, at *3 (N.D. Ill. Sept. 24, 2012). Accordingly, the motion to dismiss Count III must fail.[2]

IV.

The final claim Ms. Donald brings against the City of Chicago arises under the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/2. The City argues that Ms. Donald's claim must be dismissed because she failed to exhaust her administrative remedies under the IHRA. Generally, before initiating suit, plaintiffs must file a charge of discrimination with the Illinois Department of Human Rights ("IDHR" or "Department"). "[A] complainant may [then] file a civil suit after (1) she receives a final report from the IDHR, or (2) the IDHR fails to issue a report within a year after the charge is filed." *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020) (citing 775 Ill. Comp. Stat. 5/7A-102(D), (G)).

Ms. Donald filed a charge with the EEOC on February 19, 2020. ECF No. 34 ¶ 28; ECF No. 45-7 at 4.[3] The charge was cross-filed with the IDHR, effective on the same date. *Id.*; 775 ILCS 5/7A-102(A-1)(1) ("If a charge is filed with the [EEOC] ... the charge shall be deemed filed with the Department on the date filed with the EEOC."). In the case of such a cross-filing, the IHRA provides that "the Department shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102(A-1)(1). After the EEOC notifies the IDHR that the charge has been filed, the IDHR is required to notify the parties that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv). Once it has received the EEOC determination, the IDHR will either adopt the EEOC's determination or initiate its own investigation. 775 ILCS 5/7A-102(A-1).

Here, Ms. Donald did not forward the EEOC's determination to the IDHR within 30 days after she received it. The EEOC issued its notice of right to sue on July 20, 2020. ECF No. 34 ¶ 29; ECF No. 34-1 at 2. The IDHR did not confirm receipt of the EEOC's determination until nearly three months later, in October. ECF No. 34-2; ECF No. 45-7 at 9. At that time, the IDHR interpreted its receipt of the EEOC determination and underlying charge as a request by Ms. Donald "to have the discrimination charge [she] previously filed with the [EEOC] investigated by the [IDHR]," ECF No. 45-7 at 9, and issued a notice of right to opt out, *id.* at 17.

**5** Under the IHRA, "[a]t any time within 60 days after the receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in [an] appropriate court of competent jurisdiction." 775 Ill. Comp. Stat. 5/7A-102(C-1). Within ten days after receipt of any request to opt out, the Director must notify the parties that the IDHR is closing the charge and "the complainant has 90 days after receipt of the Director's notice to commence an action." *Id.* That is precisely what happened here. Ms. Donald submitted an opt-out request on October 21, 2020, and the IDHR enter a notice of opt out and right to commence an action on October 30, 2020. ECF No. 34-2 at 3.

The City contends that Ms. Donald's failure to forward the EEOC determination to the IDHR within the 30-day period dooms her claim. I agree. The IHRA provides that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 Ill. Comp. Stat. 5/7A-102(A-1)(1)(iv). Compliance with such a statutory time limit " 'is a condition precedent to the right to seek a remedy' before an administrative body, and ... a prerequisite to the acquisition of subject matter jurisdiction." *Bumphus v. Ill. Human Rights Comm'n*, 2021 IL App (5th) 200037-U, ¶ 17, 2021 WL 754596. Accordingly, where plaintiffs have failed to comply with the 30-day notice requirement, courts have dismissed IHRA claims for lack of exhaustion of administrative remedies. *See Jafri v. Signal Funding LLC*, No. 19 C 645, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019); *Prusaczyk v. Hamilton Cty. Coal, LLC*, No. 3:20-CV-73-NJR, 2020 WL 5981377, at *3 (S.D. Ill. Oct. 8, 2020); *Ball v. Roeslein & Assocs., Inc.*, No. 20-CV-00045-NJR, 2020 WL 4673136, at *7 (S.D. Ill. Aug. 12, 2020).

Ms. Donald argues that she exhausted her administrative remedies by opting out of the IDHR's investigation under 775 Ill. Comp. Stat. 5/7A-102(C-1) and receiving a notice of right to sue. In support, she cites *Laurie v. BeDell*, in

FILED DATE: 9/17/2021 6:14 PM 2018CH02497

Donald v. City of Chicago, --- F.Supp.3d ---- (2021)
2021 Fair Empl.Prac.Cas. (BNA) 179,712

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

which the Southern District of Illinois held that even though the plaintiff "sent her EEOC right-to-sue letter to the IDHR 21 days late," the fact that the plaintiff had received a notice of dismissal authorizing her to commence an action within 90 days was sufficient for purposes of administrative exhaustion. No. 16-759-DRH-RJD, 2017 WL 1076940, at *4 (S.D. Ill. Mar. 22, 2017). But I am not persuaded by the court's reasoning in *Laurie*. "[A]n administrative agency ... can only act 'pursuant to the authority conferred on it by statute.' " *Bumphus*, 2021 IL App (5th) 200037-U, ¶ 17 (citing *Pickering v. Ill. Human Rights Comm'n*, 146 Ill.App.3d 340, 99 Ill.Dec. 885, 496 N.E.2d 746, 754 (1986)). Because the 30-day "statutory time limit is a condition precedent to ... the acquisition of subject matter jurisdiction ..., the Department lacked jurisdiction to review the charge" when it received it in October. *See id.* ¶¶ 17-18. Accordingly, the notice of right to sue issued by the IDHR was without legal effect. Count VII is dismissed without prejudice.[4] *See Gill v. CEC Emp. Grp., LLC*, No. 19 CV 8099, 2020 WL 5909068, at *3 (N.D. Ill. Oct. 6, 2020) (dismissal without prejudice is proper when based on failure to exhaust of administrative remedies under IHRA even if claim is no longer timely).

### V.

**\*6** One final matter requires my attention with respect to the City of Chicago's motion to dismiss. Ms. Donald seeks punitive damages against the City of Chicago in her prayer for relief. However, punitive damages are not available under Title VII or 42 U.S.C. § 1983 against a municipality or government. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Passananti v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012) ("[U]nder Title VII, .. [a government, government agency or political subdivision] cannot be held liable for punitive violations."). Accordingly, the prayer for punitive damages against the City is stricken.

### VI.

I turn next to Mr. Johnson's motion to dismiss.[5] Mr. Johnson argues first that dismissal of Count II, which asserts constitutional violations under 42 U.S.C. § 1983, is appropriate because Ms. Donald has a remedy under Title VII. To the contrary, however, the Seventh Circuit

has clarified that "the Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII." *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985).[6] Mr. Johnson also argues that Ms. Donald has failed to state an adverse employment action, but for the reasons noted above in the discussion of the City's motion to dismiss, I disagree. Accordingly, I decline to dismiss Count II.

### VII.

Count IV asserts a claim against Mr. Johnson under the Illinois Gender Violence Act ("IGVA"), 740 Ill. Comp. Stat. 82/5. Mr. Johnson argues that the IGVA claim should be dismissed because it is preempted by the IHRA. But courts that have considered the issue have disagreed. *See Hespe v. City of Chicago*, 307 F. Supp. 3d 874, 888-89 (N.D. Ill. 2018) (allowing IGVA claim to continue despite argument it was preempted by IHRA); *Vince v. Ill. Cent. Sch. Bus, LLC*, No. 09 C 5360, 2011 WL 578832, at *17 (N.D. Ill. Feb. 9, 2011) (same). It does not matter that there may be factual overlap between the claims; "the issue is whether plaintiff can state a claim without reference to the Illinois Human Rights Act." *Hespe*, 307 F. Supp. 3d at 888-89. Count IV may proceed.

### VIII.

**\*7** Mr. Johnson next argues that Count V should be dismissed because no cause of action for "spoliation of evidence" exists under Illinois law. That is true enough, but it is not grounds for dismissal. "The issue is merely terminological .... Illinois courts have treated negligent spoliation claims as a particular species of ordinary negligence claims." *Mobile Mark v. Pakosz*, No. 11 C 2983, 2011 WL 3898032, at *5 (N.D. Ill. Sept. 6, 2011) (declining to dismiss "spoliation" claim).

To prevail on her negligent spoliation claim, Ms. Donald will eventually need to show "duty (in this case to protect documents), a breach of that duty, causation, and damages." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 510 (7th Cir. 2007). Mr. Johnson maintains that Ms. Donald did not allege damages. But to the contrary,

CAU Removal 000239

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

Ms. Donald alleged that she has been "severely injured because if Superintendent Johnson had not destroyed his own cell phone, [she] would have been able to introduce additional evidence of her sexual discrimination and harassment case against Defendants." ECF No. 34 ¶ 171. This allegation is sufficient. *See Stoner v. Wal-Mart Stores, Inc.*, No. 06-4053, 2008 WL 3876077, at *3 (C.D. Ill. Aug. 18, 2008) (declining to dismiss spoliation claim and explaining that "the injury that must be proven is that 'defendant's loss or destruction of the evidence caused the plaintiff to be unable to prove an otherwise valid, underlying cause of action' " (citing *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 272 (1995)).). I decline to dismiss Count V.[7]

IX.

Finally, Mr. Johnson moves to dismiss Count VI, which asserts an IHRA claim. Mr. Johnson argues first that the IHRA does not provide for liability against individuals. But in the particular context of sexual harassment, the IHRA prohibits "any employer, *employee, agent of any employer*, employment agency or labor organization" from engaging in sexually harassing behavior. 775 Ill. Comp. Stat. 5/2-102(D). Accordingly, "an individual may be held liable for sexual harassment under the IHRA." *Stokes v. John Deere Seeding Grp.*, No. 4:12-cv-04054-SLD-JEH, 2014 WL 4901765, at *13 n.6 (C.D. Ill. Sept. 29, 2014); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017).

Mr. Johnson also argues that Ms. Donald never named Mr. Johnson in her charge filed with the IDHR, and so has not exhausted her administrative remedies. But to the contrary, Mr. Johnson was repeatedly named and his behavior described at length in the charge cross-filed with the EEOC and IDHR. *See* ECF No. 45-7 at 4-7. However, for the same reasons discussed in connection with the City of Chicago's motion to dismiss Claim VII, Ms. Donald failed to exhaust her administrative remedies because she failed to forward the EEOC's determination to the IDHR within the 30-day time limit. *See* 775 ILCS 5/7A-102(A-1)(1)(iv). Accordingly, Claim VI is dismissed without prejudice. *See Gill*, 2020 WL 5909068, at *3.

X.

**\*8** For the foregoing reasons, the motions to dismiss [45, 47] are granted in part and denied in part. Claims I-V may proceed, but Claims VI and VII are dismissed without prejudice. The prayer for punitive damages against the City of Chicago is stricken.

**All Citations**

--- F.Supp.3d ----, 2021 WL 1946335, 2021 Fair Empl.Prac.Cas. (BNA) 179,712

**Footnotes**

[1]   Because Ms. Donald alleged a tangible employment action sufficient to trigger strict liability, I need not consider the City's argument that the complaint demonstrated the existence of an affirmative defense.

[2]   Ms. Donald has sufficiently alleged that Mr. Johnson was a final policymaker. Accordingly, I do not consider the City's arguments regarding the sufficiency of Ms. Donald's allegations that there was a widespread practice of sexual harassment within the Chicago Police Department.

[3]   "[T]he court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR." *McGee v. United Parcel Serv., Inc.*, No. 01 C 9099, 2002 WL 449061, at *2 (N.D. Ill. Mar. 22, 2002).

[4]   Ms. Donald also argues that she was excused from sending the EEOC's determination because the IDHR did not give her notice of the 30-day deadline as required under 775 Ill. Comp. Stat. 5/7A-102(A-1)(1). But that is belied by the administrative record. *See* ECF No. 59-1. Moreover, even if Ms. Donald did not receive the IDHR's letter, she had statutory notice of the 30-day deadline. *See Turner v. Human Rights Comm'n*, 2020 IL App (1st) 182586-U, ¶ 27, 2020 WL 5181640, *appeal denied*, 444 Ill.Dec. 187, 163 N.E.3d 750 (Ill. 2021).

CAU Removal 000240

**Donald v. City of Chicago, --- F.Supp.3d ---- (2021)**

2021 Fair Empl.Prac.Cas. (BNA) 179,712

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

5    Ms. Donald argues that Mr. Johnson cannot move to dismiss Counts II, IV, and V, which were included in the initial complaint, because Mr. Johnson answered that complaint rather than filing a motion to dismiss. But "[w]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints[,] controls the case from that point forward[,] [and] wipes away prior pleadings." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014). That Mr. Johnson answered the prior complaint is inapposite. *See Saleh v. Pfister*, No. 18-cv-1812, 2020 WL 2197838, at *1 n.2 (N.D. Ill. May 6, 2020).

6    *Williams v. Penn. Human Relations Comm'n*, 870 F.3d 294 (3d Cir. 2017), cited by Mr. Johnson, is not to the contrary. That case held that § 1983, which does not provide substantive rights but merely provides a vehicle "for vindicating federal rights elsewhere conferred," cannot be used to assert an underlying Title VII violation. *Id.* at 297, 299. But that is not what Ms. Donald does here. Her § 1983 claim is based on underlying *constitutional* violations, *see* ECF No. 34 ¶ 149; her Title VII claim is asserted separately. As the *Williams* court itself noted, "the comprehensive scheme provided in Title VII does not preempt section 1983 [and] discrimination claims may be brought under either statute, or both." 870 F.3d at 300 n.34.

7    Mr. Johnson also argues in his reply that Ms. Donald failed to allege that Mr. Johnson had a duty to preserve the evidence. But "[a]rguments made for the first time in a reply brief are waived." *Cuff v. Trans States Holdings, Inc.*, No. 10 C 1349, 2010 WL 2698299, at *4 (N.D. Ill. July 8, 2010).

---

**End of Document**                         © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000241

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

2019 WL 4824883
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.

Farva JAFRI, Plaintiff,
v.
SIGNAL FUNDING LLC; 777 Partners LLC; Signal
Financial Holdings LLC; and Joshua Craig
Wander, Defendants.

No. 19 C 645
|
Signed 10/01/2019

### Attorneys and Law Firms

Justin E. Burtnett, Eugene Bilmes, Hecht Schondorf LLC,
Northbrook, IL, for Plaintiff.

Scott P. Clair, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

Honorable Thomas M. Durkin, United States District
Judge

**\*1** Farva Jafri alleges that her former employer
discriminated against her and sexually harassed her in
violation of the Illinois Human Rights Act, and paid her
less than male employees in violation of the federal and
Illinois Equal Pay Acts. Defendants have moved to
dismiss for failure to state a claim pursuant to Federal
Rule of Civil Procedure 12(b)(6). R. 17. That motion is
granted in part and denied in part.

### Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the
complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843
F.3d 285, 289 (7th Cir. 2016). A complaint must provide
"a short and plain statement of the claim showing that the
pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),
sufficient to provide defendant with "fair notice" of the

claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007). This standard "demands more than
an unadorned, the-defendant-unlawfully-harmed-me
accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
While "detailed factual allegations" are not required,
"labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Twombly*, 550
U.S. at 555. The complaint must "contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.' " *Iqbal*, 556 U.S. at 678
(quoting *Twombly*, 550 U.S. at 570). " 'A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.' " *Boucher
v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th
Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying
this standard, the Court accepts all well-pleaded facts as
true and draws all reasonable inferences in favor of the
non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646
(7th Cir. 2018).

### Background

Jafri alleges that "she was employed as Chief Operating
Officer of [defendant] Signal Funding, Chief Operating
Officer of [defendant] Signal Financial, and as an
Associate at Defendant 777 Partners." R. 1 ¶ 19. The
fourth defendant, Joshua Wander, "is a Founder and
Managing Partner of 777 Partners, the parent company of
the other named corporate defendants." *Id.* ¶ 6. Both
Signal entities operated out of an office in Highland Park,
Illinois. *Id.* ¶¶ 2-3. The 777 Partners office is in Miami,
Florida. *Id.* ¶ 4. Jafri initially worked out of the Highland
Park office. *Id.* ¶ 20.

Jafri alleges that her salary was $105,000 with a bonus of
$25,000. *Id.* ¶ 24. Signal's male CEO made $325,000 plus
$175,000 in bonus. *Id.* ¶ 25. Jafri also alleges that five of
her male subordinates received greater compensation than
she did. *Id.* ¶¶ 28-30. Based on these allegations about her
pay relative to male colleagues, Jafri brings claims for
violation of the federal and Illinois Equal Pay Acts.

In 2017, defendant Wander transferred Jafri to 777's
office in Miami, R. 1 ¶ 33, where Jafri alleges male
colleagues made a number of sexually demeaning
comments to her. *See* ¶¶ 46-60. Based on these
allegations of conduct in the Miami office, Jafri brings
claims for violations of the Illinois Human Rights Act.

Jafri v. Signal Funding LLC, Slip Copy (2019)

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

### Analysis

### I. Illinois Human Rights Act Claims

#### A. Administrative Exhaustion

**\*2** Defendants argue that Jafri failed to administratively exhaust her IHRA claims, because she failed to "submit a copy of the EEOC's determination [to the Illinois Department of Human Rights ("IDHR") ] within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv); *see also* 775 ILCS 5/7A-102(A-1)(2) (providing that the IDHR will only take substantive action on the EEOC determination if it "is timely notified of the EEOC's findings by complainant"); 775 ILCS 5/7A-102(A-1)(3) ("if the Department is timely notified of the EEOC's determination by complainant"). Defendants attach to their motion the IDHR investigation report showing that Jafri submitted the EEOC's determination to the IDHR 119 days after the EEOC issued its determination, *see* R. 17-2 at 5, more than the 30 days permitted by the statute.

Jafri argues that this document is outside the pleadings. Maybe so, although it is referenced in the IDHR's notice of dismissal, which Jafri attached to her complaint. *See Harrison v. Deere & Co.*, 533 Fed. App'x 644, 647 n.3 (7th Cir. 2013) ("we have ruled that the district court may take into consideration documents incorporated by reference to the pleadings"). But in any case, whether Jafri complied with the Illinois statute is a question easily answered. If Jafri wants to challenge the authenticity or accuracy of the investigation report document Defendants attach to their motion, the Court will grant her that opportunity. Otherwise, the Court finds that Jafri failed to administratively exhaust her IHRA claims.

Jafri also argues that even if she was late in informing the IDHR of the EEOC's determination, this failure of administrative process does not require dismissal. *See* R. 21 at 4-5 (citing *Laurie v. BeDell*, 2017 WL 1076940, at *4 (S.D. Ill. Mar. 22, 2017); and *Goldberg v. Chi. Sch. for Piano Tech., NFP*, 2015 WL 468792, at *4 (N.D. Ill. Feb. 3, 2015)). But the two cases she cites do not support this argument. In *Laurie*, the court mentioned in passing that the plaintiff had transmitted her EEOC charge to the IDHR late. But *Laurie* focused on the impact of the plaintiff's decision to file a federal action before receiving a right to sue letter from the IDHR. The court did not address the impact of the plaintiff's late delivery of the EEOC determination to the IDHR. Neither did *Goldberg*

address the 30-day deadline at issue here. The court in *Goldberg* held that the IDHR's determination that it lacked jurisdiction did not prevent review of that decision in federal court. There is no indication in the opinion that the timeliness of the complaint was at issue.

Lastly, Jafri argues that there is "literally" no case law supporting Defendants' interpretation of the statute. R. 21 at 3. This is likely because Title VII claims take precedence for most plaintiffs. But in any event, the statute unambiguously states that a complainant must timely submit an EEOC determination to the IDHR. This requirement in contained in the same section of the statute requiring that administrative complaints be filed with the EEOC or the IDHR within 300 days of a violation's occurrence, and that a civil action must be filed within 90 days of the administrative determination. It is uncontroversial that failure to comply with the 300-day and 90-day deadlines requires dismissal. *See Mayle v. Chi. Park Dist.*, 2019 WL 2773681, at *5 (N.D. Ill. July 2, 2019) ("Failing to comply with the IHRA's exhaustion requirements results in dismissal of an IHRA claim." (citing *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004))). The Court sees no reason why the interim 30-day deadline for filing with the IDHR should be any different. Because Jafri failed to comply with the statute's plain terms, her IHRA claims were not properly administratively exhausted and must be dismissed.

#### B. Named Parties

**\*3** Additionally, Jafri named only defendant Signal Funding LLC in her EEOC and IDHR complaints. Thus, she failed to administratively exhaust claims against the other defendants—777 Partners LLC, Signal Financial Holdings LLC, and Joshua Wander. This serves as an alternative basis for dismissal of those three defendants.

Jafri argues that "a minor error in stating the name of the employer" is not a basis for dismissal. *See Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 400 (7th Cir. 2019). But the Seventh Circuit distinguishes "minor errors" from "a failure to name a party at all." *Id.* Even then, a plaintiff can avoid dismissal by alleging that subsidiaries or parents of the respondent in the administrative complaints had notice of the claims. But Jafri does not contend that she alleged such notice and the Court sees no such allegation in her complaint.

#### C. "Employee" Under the IHRA

CAU Removal 000243

Jafri v. Signal Funding LLC, Slip Copy (2019)

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

To the extent Jafri is able to demonstrate that she exhausted her IHRA claims and she pled that all defendants received notice of her administrative claims, the Court addresses Defendants' argument that Jafri does not meet the definition of "employee" under the IHRA. Under the IHRA, an "employee" is "any individual performing services for remuneration within [Illinois] for an employer." 775 ILCS 5/2-101(A)(1)(a). Defendants argue that Jafri's harassment claims are based on alleged actions that occurred in Florida after she was relocated there by Defendants. *See* R. 17 at 9. The problem with this argument is that the IHRA does not limit its reach to conduct that occurs in Illinois. The section that defines "civil rights violations" for purposes of the statute does not include a geographic limitation. *See* 775 ILCS 5/2-102. Rather, the geographic limitation Defendants cite is within the definition of "employee." In other words, the statute reaches anyone who performs work in Illinois, for a qualifying employer, regardless of where the civil rights violation occurred.[1] Although she alleges that she "moved to Miami," *see* R. 1 ¶ 34, Jafri alleges that she "continued to serve in her roles with Signal and Signal Financial," *id.* ¶ 33, which are located in Illinois. Based on this allegation, it is plausible to infer that Jafri continued to perform some work for Defendants in Illinois even after she relocated to Miami. Assuming that allegation is true, the fact that the alleged harassment occurred outside Illinois would not be a basis to dismiss her IHRA claims.

## II. Equal Pay Act Claims

"In order to establish a prima facie case under the Equal Pay Act, a plaintiff must show: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017). Defendants argue that Jafri has insufficiently alleged the "skill, effort and responsibility levels for the various positions at Signal Funding that she claims were comparable to her position." R. 17 at 10. But Jafri specifically alleges, by name, five male subordinates who were paid more than she was. *See* R. 1 ¶¶ 28-30. It is plausible to infer that subordinates do work that requires less skill, effort, or responsibility than their supervisors. By alleging that Defendants paid her male subordinates more than her, Jafri has stated a prima facie case for violation of the Equal Pay Act.

**\*4** Additionally, Defendants argue that because Jafri did

not name three of the four defendants in this case in her administrative complaint under the IHRA, she is precluded from naming them in this case as her employers for purposes of her Equal Pay Act claims. Defendants rely on the "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached the exhibit trumps the allegations." *Thompson v. Ill. Dep't of Prof. Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). But the "Equal Pay Act expressly contemplates that an employee may have multiple employers." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008). Defendants cite no authority that a prior allegation that one entity is an employer precludes a later allegation of additional employers. Absent such preclusion, Jafri's earlier administrative complaint cannot be said to "contradict" her current federal complaint.

Lastly, Defendants argue that Jafri has failed to allege "that Signal Financial or 777 Partners had any control over her pay." R. 17 at 11. "[C]ourts must look to the 'economic realities' of the employment relationship, as well as 'the degree of control the employer exercises,' to determine whether an entity may be considered an employer for the purposes of [Equal Pay Act] liability." *Tamayo*, 526 F.3d at 1088. Jafri alleges that "she was employed as Chief Operating Officer of Signal Financial, and as an Associate at Defendant 777 Partners." R. 1 ¶ 19. The allegation that she was employed by these entities is sufficient to plausibly allege that the entities had some control over her pay. This is particularly so when one individual—defendant Joshua Wander—owns all three entities and is alleged to have directed Jafri to move from Illinois to Florida in order to be able to more effectively work for all three entities. *See* R. 1 ¶¶ 6, 33. Only with discovery can it be determined which of the defendants had "control" over Jafri's compensation, and liability for an Equal Pay Act violation.

### Conclusion

Therefore, Defendants motion to dismiss [17] is granted in that Jafri's Illinois Human Rights Act claims (Counts III and IV) are dismissed without prejudice, and is denied in that Jafri's Equal Pay Act claims (Counts I and II) will proceed.

### All Citations

Slip Copy, 2019 WL 4824883

CAU Removal 000244

**Jafri v. Signal Funding LLC, Slip Copy (2019)**

## Footnotes

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

[1]     The work must also be performed for an "employer" meeting the statutory definition, but Defendants do not argue they are not "employers" for purposes of the IHRA.

**End of Document**                                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000245

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

2021 WL 1966115
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Moriah JONES, Plaintiff,
v.
T.J. MAXX OF IL, LLC, Defendant.

Case No. 3:20-CV-5-NJR
|
Signed 05/17/2021

**Attorneys and Law Firms**

Carla D. Aikens, Carla D. Aikens, PC, Detroit, MI, for Plaintiff.

Christina Jaremus, Uma Chandrasekaran, Seyfarth Shaw LLP, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

**\*1** This matter is before the Court on the Motion for Summary Judgment filed by Defendant T.J. Maxx of IL, LLC ("T.J. Maxx") (Doc. 35). Plaintiff Moriah Jones filed a response in opposition (Doc. 39), and T.J. Maxx filed a timely reply (Doc. 41). For the reasons set forth below, the motion is granted.

## BACKGROUND

As an "off-price apparel and home fashions retailer," T.J. Maxx depends on its employees to be at their stores on-time for scheduled shifts. *See* TJX, *A Global Off-Price Retailer*, https://www.tjx.com/company/ (last visited May 16, 2021). T.J. Maxx established attendance and disciplinary policies to hold employees accountable and to encourage dependability. T.J. Maxx's disciplinary policy is progressive—meaning that the level of discipline increases if the offense is repeated (Doc. 40, p. 12).

T.J. Maxx's discipline starts with counseling and continues to several written warnings before termination (*Id.*). Disciplinary actions for violations in T.J. Maxx's attendance policy become inactive after twelve months from the date of issuance. (Doc. 40, p. 13). For tardies, T.J. Maxx employees first receive a formal counseling if they are tardy six times within a twelve-month period (Doc. 39-1, p. 12). If an employee is tardy two more times within the same twelve-month period—for a total of eight tardies— he or she receives a written warning (*Id.*). If an employee is tardy another two times—for a total of ten tardies—he or she receives a second written warning (*Id.*). If an employee is tardy another two times—for a total of twelve tardies—he or she is terminated (*Id.*). For no-call/no-shows, T.J. Maxx employees first receive a formal counseling (Doc. 39-1, p. 24). On an employee's second no-call/no-show within the same twelve-month period, an employee receives a written warning (*Id.*). On an employee's third no-call/no-show within the same twelve-month period, an employee receives a second written warning (*Id.*). After an employee's fourth no-call/no-show within the same twelve-month period, he or she is terminated (*Id.*). ***Climbing the Corporate Ladder Despite a Glass Ceiling and Attendance Issues***

Jones was allegedly blocked from moving up the corporate ladder at T.J. Maxx because of a glass ceiling[1] (Doc. 39, p. 4). Jones's tenure with T.J. Maxx began in 2011, when Shirley Dugger ("Dugger")—the manager at T.J. Maxx's Carbondale, Illinois, store—interviewed and hired Jones as a part-time merchandise associate (Doc. 40, p. 10).

After a no-call/no-show in December 2012 and being tardy in January 2013— Dugger and Tom Schultz ("Schultz"), the regional manager, promoted Jones to a part-time Customer Experience Coordinator position in February 2013 (*Id.*; Docs. 36-5, 36-6, 36-8). At Jones's first annual performance review, Jones's managers noted that she "had some tardy instances in the past but has actively worked to improve upon this area" (Doc. 39-12, p. 3).

**\*2** Jones continued to have attendance issues even after her managers pointed out her tardies in the dependability section of her first annual review. In August 2013, Jones was formally counseled for tardies (Doc. 36-8). In October 2013, she had a second no-call/no-show (*Id.*).[2] In January 2014, Jones was formally counseled again for tardies (*Id.*). At Jones's second annual performance review, Jones's managers again noted that she "has some issues with tardiness and attendance in the past year[,] but

CAU Removal 000246

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

she worked to resolve these concerns and improve upon her dependability showing she is committed to her role and improving" (Doc. 39-12, p. 7).

Jones continued to have attendance issues even after her managers pointed out her tardies in the dependability section of her second annual review. In fact, in February 2016, Jones was formally counseled for being tardy seven times in the prior twelve months (Doc. 36-15). At Jones's fourth annual performance review, her managers again noted that Jones "had tardy issues and is working with management to improve, management will continue to monitor progress" (Doc. 39-12, p. 16).

Jones continued to have attendance issues even after her managers pointed out her tardies in the dependability section of her fourth annual review. For instance, in June 2016, Jones received a written warning for being tardy eight times in the prior twelve months (Doc. 36-16).

Despite her attendance issues, Dugger and Schultz promoted Jones in July 2016 (Doc. 36-13). While this promotion may have changed Jones's duties, her attendance issues continued. In early October 2016, Jones received a second written warning for being tardy ten times in the prior twelve months (Doc. 36-17).

Jones was two tardies away from termination when Dugger and Schultz promoted her to be a fulltime key carrier in late October 2016 (Doc. 36-14). As a key carrier, Jones developed managerial experience by holding the keys to open and close the store, knowing alarm codes, acting as the manager on duty when necessary, ensuring employees arrived for shifts on-time, and product movement (Doc. 40, pp. 26-27). In May 2017, at her fifth annual performance review, Jones received her highest overall annual performance rating (Doc. 39-12, p. 19). Jones's managers again highlighted the importance of dependability by noting Jones "is dependable and has had very few attendance issues" (Doc. 39-12, p. 20).

At her fifth annual performance review, Jones learned she would be attending the Coordinator Development Program ("CDP") (Doc. 39-2). The CDP is a training for coordinators to gain knowledge of T.J. Maxx's business (Doc. 39-1, p. 13, Doc. 40, p. 31). After completing the CDP, coordinators meet with their store managers to go over what they learned (Doc. 39-1, p. 13). Thereafter,[3] key carriers are promoted to assistant managers (Doc. 39-1, p. 15; Doc. 40, p. 49).

Jones completed the CDP training in August 2017 (Doc. 39-2). But she continued to have attendance issues. In

August 2017, Jones was formally counseled for being tardy on six occasions in the prior twelve months—including one tardy in July 2017 and August 2017 (Doc. 36-19). In January 2018, Jones was formally counseled again for tardies (Doc. 36-20). Then, in April 2018, Jones was formally counseled for a no call/no show (Doc. 36-21). At her sixth annual performance review, Jones's managers again noted that Jones had dependability issues and that she had been formally counseled for tardies (Doc. 39-12, p. 25).

### Jones Complains to Human Resources About Michele Bartels

**\*3** Besides Dugger, Jones also reported to Michele Bartels ("Bartels") and Logan Keene ("Keene"). Bartels was the assistant merchandise manager during Jones's tenure at T.J. Maxx (Doc. 40, p. 35; Doc. 39-1, p. 7). Keene was the operations manager from February 2017 until Jones's resignation (Doc. 40, p. 27; Doc. 39-2; p. 5).

On November 22, 2017, Jones complained to T.J. Maxx's human resources department about Bartels mistreating her (Doc. 39-8). Jones did not mention race when she made her complaint to human resources (Doc. 40, pp. 37, 50). Jones explained that after she was promoted to the key carrier position, in October 2016, Bartels started talking down to her, questioned her job performance, changed her schedule without letting her know, texted Jones while she was off work, made her work off the clock, and created a hostile work environment (Doc. 39-8, p. 2; Doc. 40, pp. 35-38). Around December 12, 2017, Dugger arranged a meeting between herself, Jones, Bartels, and Schultz (Doc. 39-13, p. 2; Doc. 40, pp. 37-38). At the meeting, Bartels denied mistreating Jones, but apologized for saying that she did not know Jones had a brother (*Id.* at pp. 38-39).[4]

After Jones complained about Bartels's mistreatment, Dugger and Bartels ignored Jones's questions and did not communicate with her (*Id.* at p. 43). Jones testified that Dugger's body language and her interactions created a hostile work environment (*Id.* at p. 44). Jones continued, explaining that after the November 2017 report to human resources, Dugger "was more nitpicking, and trying to find any little thing that [Jones] was doing wrong" (*Id.*). Jones characterized this nitpicking as "[m]icromanag[ing]" (*Id.*). At Jones's sixth performance review, Keene gave Jones her lowest score in six years (Doc. 39-12, p. 24). Jones believed she was passed over for assistant manager promotions because of her report to T.J. Maxx's human resources (Doc. 40, p. 46). Jones

CAU Removal 000247

FILED DATE: 9/17/2021 6:14 PM  2018CH02497

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

resigned on June 24, 2018 (Doc. 36-23; Doc. 40, p. 51).

On March 12, 2019, Jones filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC) alleging T.J. Maxx discriminated against her on the basis of race and retaliated against her (Doc. 39-3). Jones received a Notice of Right to Sue from the EEOC on October 4, 2019 (*Id*. at p. 2).

On January 2, 2020, Jones timely filed this action within 90 days of receipt of the Notice of Right to Sue (*Id*.; Doc. 1). On January 25, 2021, Jones amended her complaint (Doc. 27).[5] Jones is proceeding on the following claims:

**Count I:** Race Discrimination in violation of Title VII;

**Count II:** Race Discrimination in violation of the Illinois Human Rights Act ("IHRA");
**Count III:** Retaliation in violation of Title VII; and
**Count IV:** Retaliation in violation of the IHRA.[6]

### DISCUSSION

#### I. Amber Fowler Affidavit
**\*4** Jones relies heavily on the affidavit of Amber Fowler in response to T.J. Maxx's Motion for Summary Judgment. T.J. Maxx contests the admissibility of Fowler's affidavit by pointing out that Fowler "was not disclosed in Plaintiff's Rule 26(a)(1) Disclosures, Plaintiff's Interrogatory responses,...or Plaintiff's deposition" (Doc. 41, p. 2). T.J. Maxx also argues that Fowler's affidavit does not meet the requirements for unsworn declarations pursuant to 28 U.S.C. § 1746 (*Id*. at pp. 2-3). Ultimately, the Court agrees.

An affidavit must be "sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985). At summary judgment, "unsworn documents purporting to be affidavits may be rejected." *Id*. Fowler's affidavit does not indicate that it was sworn before a notary or an officer authorized to administer an oath. Instead, Fowler's affidavit reads, "I, Amber Fowler, being duly sworn and competent to testify on the matter state, deposes and says as follows..." (Doc. 39-11). There is no notary signature and seal. *See, e.g., Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011) (noting that "submission was not literally an 'affidavit' because he did not swear to the content in the presence of

someone authorized to administer oaths").

Construing Fowler's affidavit as an unsworn declaration does not make Fowler's testimony admissible because she did not sign it under penalty of perjury. *E.E.O.C v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 639 (N.D. Ill. 1988) ("[28 U.S.C. § 1746] requires verification in *substantially* prescribed form. The crucial aspect of the form provided in the statute is that the person write his or her signature under penalty of perjury"). Notably, Jones's affidavit contains that "under penalty of perjury that the foregoing is true and correct..." (Doc. 39-9, p. 3), but Fowler's affidavit does not contain this language (Doc. 39-11).

Even if Fowler's affidavit met the requirements under 28 U.S.C. § 1746 or had been sworn, it would still not be considered because Fowler's affidavit contradicts Jones's deposition testimony. Jones cannot "thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996).

Finally, Jones cannot rely on Fowler's testimony because Jones's attorney failed to disclose Fowler as a potential witness pursuant to Federal Rule of Civil Procedure 26. Jones listed "[e]mployees (current and/or former) of TJ Maxx" in her Rule 26(a)(1) disclosures (Doc. 36-24, p. 2). While Fowler is allegedly a former employee of T.J. Maxx, this does not excuse Jones's failure to identify Fowler by name. A party is required to disclose initially "*the name* and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses...identifying the subjects of the information." FED. R. CIV. P. 26(a)(1)(A) (emphasis added).

A party may use *admissible* testimony[7] even if it failed to disclose a potential witness pursuant to Federal Rule of Civil Procedure 26—but the failure to identify or disclose must be substantially justified or harmless. FED. R. CIV. P. 37(c)(1). Jones has the burden of showing her failure to disclose or identify Fowler was either justified or harmless, but Jones has failed to provide a single reason. And even if Jones provided reasons why her failure was justified or harmless, the Court would still have to weigh the following factors:

**\*5** (1) the prejudice or surprise to the party against whom the evidence is offered;

(2) the ability of the party to cure the prejudice;

CAU Removal 000248

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

(3) the likelihood of disruption to the trial; and

(4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*David v. Caterpillar,* Inc., 324 F.3d 851, 857 (7th Cir. 2003). Here, the first three factors weigh against allowing Fowler's affidavit. Under the first factor, T.J. Maxx is prejudiced because it had no opportunity to discover Fowler's testimony or depose her before the dispositive motion deadline. To cure the prejudice, the Court would have to reopen discovery. But reopening discovery would further prejudice T.J. Maxx as it has fully briefed its summary judgment motion. Reopening discovery would certainly disrupt the trial date as the final pretrial conference is scheduled for May 26, 2021, and the presumptive jury trial month is June 2021.

The timeline of events is also concerning, because T.J. Maxx filed its motion for summary on February 8, 2021, and Jones's response was initially due on March 15, 2021. Had Jones not been granted more time to file her response, Fowler's affidavit may not even be part of the record as it was not signed until March 27, 2021. For these reasons, Fowler's affidavit must be excluded for the purposes of this summary judgment motion.[8]

## II. Motion for Summary Judgment

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely

upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* (citation omitted).

### A. *State Law Claims (Counts II & IV)*

**\*6** To start, Jones's discrimination and retaliation claims under the IHRA are barred from review because she fails to allege and provide evidence of exhausting her administrative remedies with the Illinois Human Rights Commission ("Commission") before bringing this suit. Indeed, the IHRA provides for a comprehensive procedure for redressing human rights violations, under which a complainant must exhaust his or her administrative remedies before bringing a civil suit. The procedure becomes more convoluted when a complainant files a charge with the Department and the EEOC.

In the case of dual filings, the Department "shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102. When the EEOC does not issue a determination, but issues the complainant a notice of a right to sue, "the complainant must submit a copy of the EEOC's determination within **30 days** after service of the determination by the EEOC on complainant." *Id.* (emphasis added). If the EEOC "does not issue a determination, but does issue the complainant a notice of a right to sue...*and if the Department is timely notified of the EEOC's determination by complainant*, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination." *Id.* (emphasis added).

The complainant may then commence a civil suit in two instances: (1) upon receiving a final report from the Department; or (2) if the Department fails to issue a report within 365 days. 775 ILCS 5/7A-102(D), (G)(2). If the Department fails to issue a report within 365 days, the complainant has ninety days to either proceed before the IHRC or commence a civil action. *Id.*

Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. Jones alleges that she "submitted a charge of discrimination

CAU Removal 000249

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

with the Illinois Department of Human Rights and the St. Louis office of the Equal Employment Opportunity Commission ("EEOC")...[and] [t]he EEOC issued a Notice of Plaintiff's Right to Sue, dated October 4, 2019" (Doc. 27, p. 4). However, a Right to Sue letter from the EEOC is not a substitute for a final report from the Department. *See Wierciszewski v. Granite City Ill. Hosp. Co.*, 2011 WL 1615191, at *3 (S.D. Ill. Apr. 28, 2011).

Further, Jones has failed to provide facts that she submitted a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC. 775 ILCS 5/7A-102(A-1)(1)(iv); *see* 775 ILCS 5/7A-102(A-1)(2) (providing that the Department will only take substantive action on the EEOC determination if it "is timely notified of the EEOC's findings by complainant"); *see also Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) (holding that the plaintiff failed to administratively exhaust her IHRA claims because plaintiff failed to submit a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC on plaintiff).

Accordingly, the Court finds that it lacks jurisdiction over Jones state law claims, and Counts II and IV must be dismissed.

**B. *Title VII Discrimination – Failure to Promote (Count I)***

Under Title VII, a charge of racially discriminatory employment practices must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). "Failure to file a timely charge with the EEOC precludes a subsequent lawsuit under Title VII." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860 (7th Cir. 2005) (citing *Martinez v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 772 F.2d 348, 350 (7th Cir. 1985)). "For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, *failure to promote*, denial of a transfer, or refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–11 (2002)) (emphasis added). Each discrete discriminatory act "starts a new clock for filing charges alleging that act," and charges not filed within 300 days of the act in question are not actionable. *Id.* (quoting *Morgan*, 536 U.S. at 113).

*7 T.J. Maxx argues that "[Jones] cannot complain of alleged promotion decisions predating May 16, 2018—300 days before she filed the Charge" (Doc. 35, p. 18). Thus, according to T.J. Maxx, "Plaintiff cannot establish a *prima facie* case for discrimination because she has failed to identify any open ASM position between May 16, 2018 and her resignation in June 2018 for which she was rejected" (Doc. 35, p. 18).

Jones responds that her claims are not time-barred under the continuing violation doctrine (Doc. 39, p. 10). In support of this argument, Jones argues "there is no question that the promotion denial (i.e., performance evaluation score of 35 in May 2018 disqualified Ms. Jones of a promotion) occurred within the limitations period" (*Id.*). "Further, two individuals were promoted from outside the store in—in September 2017 and March of 2018—and Plaintiff was passed up for these promotions" (*Id.*). Jones notes that "[t]he critical question is whether these acts are related closely enough to constitute a continuing violation" (*Id.*).

The Court agrees with T.J. Maxx. "It is well settled [ ] that an employer's failure to promote an employee is a discrete act, and thus is not subject to the continuing violation doctrine." *Carter v. Dart*, 262 F. Supp. 3d 713, 720 (N.D. Ill. 2017) (citing *Beamon*, 411 F.3d at 860)). Accordingly, Jones's claim of discrimination based on T.J. Maxx's failure to promote must be dismissed.

Setting aside the untimeliness of Jones's failure to promote claims does not help Jones as they further fail on the merits. In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit addressed the murky jurisprudence surrounding the methods of proof in employment discrimination cases. The Court in *Ortiz* recognized, "[t]he use of disparate methods and the search for elusive mosaics has complicated and sidetracked employment-discrimination litigation for many years." *Id.* at 764. Thus, *Ortiz* instructs district courts to "stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Id.* at 765. "*Ortiz*, however, did not alter the burden-shifting framework created by *McDonnell Douglas*." *David v. Board of Trustees of Cmty. College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (internal citations, quotations, and alterations omitted).

Here, Jones argues she meets her burden under *McDonnell Douglas* (Doc. 39, p. 12). Under the burden-shifting model, Jones must first produce evidence of a *prima facie* case for failure to promote under Title VII that shows: (1) she was a member of a protected

CAU Removal 000250

FILED DATE: 9/17/2021 6:14 PM  2018CH02497

class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) T.J. Maxx promoted someone outside the protected group who was not better qualified than she, or who "had similar or lesser qualifications." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). If Jones can make the *prima facie* case, the burden shifts to T.J. Maxx to produce a legitimate, non-discriminatory reason for not selecting Jones for promotion. *Id.* at 891 Then the burden shifts back to Jones to produce evidence that T.J. Maxx's explanation was pretextual. *Id.* at 892.

### 1. *Qualified for the Position Sought*

It is undisputed that Jones, a black woman, belongs to a protected class, but to evaluate her claim, the Court must determine whether Jones was qualified for all alleged promotions. Jones argues that she was rejected for a minimum of five promotions after she received her college degree in May 2014 (Doc. 39, p. 12). Jones testified, however, that T.J. Maxx failed to promote her to assistant manager—and that she would not be qualified for the assistant manager promotion *until* she was a key carrier for a couple of months (Doc. 40, pp. 48-49). Construing the facts in a light most favorable to Jones, Jones became a key carrier in October 2016, and thus was qualified for the following promotions: (1) the Carbondale assistant manager promotion in February 2017; (2) the Cape Girardeau assistant manager promotion in September 2017; and (3) the Paducah assistant manager promotion in March 2018.[9]

### 2. *Qualifications of Those Promoted*

**\*8** Jones fails to provide sufficient evidence that T.J. Maxx promoted someone outside the protected group who was not better qualified than she for these positions. For instance, Logan Keene—the employee promoted to Carbondale assistant manager in February 2017—had attended the CDP training a year prior to Jones, and Keene's overall performance was rated "4—Exceeds Expectations" prior to his promotion in February 2017 (Doc. 39-2, p. 5). Jones also has failed to provide evidence that Keene had attendance or other dependability issues. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019) (noting that "[e]mployees must be similar 'in all material respects,' including engaging in identical or comparable misconduct, in order to reveal whether differential

treatment is occurring").

As for "Emily"—the employee hired as the Cape Girardeau assistant manager in *September 2017*—Jones uses an affidavit[10] to provide evidence that "Emily" was no better qualified than she was (Doc. 39-9). In her earlier deposition, however, Jones testified that she did not remember a name, but for the *March 2018 opening* the person promoted worked at Charlotte Russe (Doc. 40, p. 47). The Seventh Circuit "generally look[s] with disfavor on using of affidavits that contradict earlier deposition testimony" *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1001 (7th Cir. 2000). Allowing Jones to use the more favorable affidavit version of her testimony does not help her because "a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (internal citation and quotation omitted). Jones has not provided this information—or any other information—about Emily's years of managerial experience, her duties, or her position at Charlotte Russe.

Again, Jones relies on her affidavit to provide evidence that the unknown woman—hired as the Paducah assistant manager in March 2018—was no better qualified than she was (Doc. 39-9). Similar to "Emily," Jones has failed to provide evidence of this unknown woman's qualifications—besides the fact that she was an outside hire with management experience at Big Lots. There is no evidence of the unknown woman's years of managerial experience, her duties, or her position at Big Lots. Jones simply has not provided sufficient evidence that this unknown woman was not better qualified than Jones for this position.[11]

### 3. *Pretext*

Even assuming that Jones could make out a *prima facie* case of race discrimination based on T.J. Maxx's failures to promote, T.J. Maxx produces evidence of legitimate, nondiscriminatory reasons for promoting others over Jones. According to T.J. Maxx, Jones was not promoted to the assistant manager position for the Carbondale store in February 2017 because she was not qualified for promotion at that time (Doc. 35, p. 20). T.J. Maxx points to Jones needing to improve upon her dependability (*Id.*). T.J. Maxx also points out that Jones had not attended the CDP training (*Id.*). T.J. Maxx continues explaining that

CAU Removal 000251

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

Jones was not promoted to the assistant manager positions for the Cape Girardeau store in September 2017 and the Paducah store in March 2018 because "she was not the most qualified candidate given her ongoing dependability issues" (*Id*. at p. 21).

**\*9** T.J. Maxx's reason—dependability—is supported by evidence. Leading up to the February 2017 promotion, Jones was tardy in September 2016 and October 2016 (Docs. 36-17; 36-19). Leading up to the September 2017 promotion, Jones was tardy at least four times—March 2017, May 2017, July 2017, and August 2017 (Doc. 36-20). Leading up to the March 2018 promotion, Jones was tardy twice in December 2017 (*Id*.).

After producing evidence of a legitimate, nondiscriminatory reason for hiring others, the burden shifts back to Jones to produce evidence that T.J. Maxx's proffered reason was pretextual. *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020). Jones argues that T.J. Maxx's proffered explanation was pretextual because "Dugger admitted tardiness had no bearing on promotions, nor was this ever given as a reason for her not to be promoted" (Doc. 39, p. 16). But Jones is incorrect, and her counsel's characterization of Dugger's testimony is troubling. Dugger testified that tardies do not necessarily prevent an associate from receiving *wage promotions* (Doc. 39-1, p. 13). Wage promotions are not assistant manager promotions. Dugger also testified that a *no-call/no-show* does not make an associate ineligible for an assistant manager promotion if he or she was on that track (*Id*. at p. 24). This testimony is certainly not evidence that "Dugger admitted *tardiness* had no bearing on promotions" (Doc. 39, p. 16) (emphasis added). As for the assertion that T.J. Maxx never told Jones that tardiness impacted promotions, Jones has failed to provide any evidence of this assertion. Rather, the evidence provided establishes that in a majority of Jones's performance reviews, Jones's managers referred to Jones's tardies and dependability (Doc. 39-12, pp. 3, 7, 15, 16, 25).

Jones also argues that failing to promote her was discriminatory because Dugger and Schultz have a history of failing to promote African Americans and because an African American has never been a manager at the Carbondale store (Doc. 39, p. 16). "An employer's policy and practice with respect to employing members of protected classes 'can be relevant evidence of pretext or discrimination,' but that evidence 'must undercut the specific justifications given by the employer.' " *Barnes*, 946 F.3d at 390 (quoting *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 858 (7th Cir. 2019)) (finding that allegations of "an 'ongoing history of discrimination' " is

"not enough to impugn a particular employment decision"). Jones has not pursued a disparate-impact theory, which would require "isolating and identifying the specific employment[ ] practices that are allegedly responsible for any observed statistical disparities." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Nor has she shown that intentional racial discrimination was a "pattern or practice" at T.J. Maxx. *Id*.

Accordingly, Jones's race discrimination claim based on the failure to promote fails as a matter of law because Jones did not timely file her EEOC Charge related to the promotions. Setting the untimeliness aside, Jones has not presented similarly situated comparators, and she failed to provide evidence that T.J. Maxx's reasons for not promoting her were pretextual. For these reasons, T.J. Maxx is entitled to summary judgment on Jones's failure to promote claim.[12]

### C. *Title VII – Constructive Discharge*

**\*10** T.J. Maxx notes that "it is unclear whether Plaintiff is alleging constructive discharge in the Amended Complaint" (Doc. 35, p. 23). The Court agrees, but will evaluate the claim, nonetheless. The Seventh Circuit recognizes two forms of constructive discharge. In the first form, an employee resigns due to discriminatory "working conditions even more egregious than that required for a hostile work environment claim." *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019) (quoting *Wright v. Ill. Dep't of Children and Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015)). Examples of this type of constructive discharge include threats to a plaintiff's life or physical safety. *See, e.g.*, *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (claim for constructive discharge possible where harassment included repeated use of noose and implied threats of physical violence).

"The second occurs when an employer acts in a manner that would make clear to a reasonable employee that she will be immediately fired if she does not resign." *Fields*, 928 F.3d at 625 (citing *Wright*, 798 F.3d at 527; *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679–80 (7th Cir. 2010)). Here, a plaintiff must still show her working conditions were "so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would

CAU Removal 000252

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

have felt compelled to resign?" *Id.* at 141. "[A] working condition does not become intolerable or unbearable merely because 'a prospect of discharge lurks in the background.' " *Chapin*, 621 F.3d at 679 (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)).

Construing the evidence in Jones's favor, there is nothing to suggest that her working conditions had become so intolerable that a reasonable person in her position would have felt compelled to resign. The hostile work environment[13] allegedly began in October 2016, when Jones was promoted to key carrier, and ended when Jones resigned in June 2018 (Doc. 39, p. 8; Doc. 39-8, pp. 2-3; Doc. 40, pp. 38-40, 43). When Jones asked Dugger or Bartels a question, they ignored her and there was no communication (*Id.*). Jones testified that Dugger's body language and her interactions created a hostile work environment (*Id.* at p. 44). Jones continued explaining that after the November 2017 report to human resources, Dugger "was more nitpicking, and trying to find any little thing that [Jones] was doing wrong" (*Id.*). Jones characterized this nitpicking as "[m]icromanag[ing]" (*Id.*).

The Court finds that there is nothing so unbearable about these working conditions that a reasonable employee would have felt compelled to resign. The Seventh Circuit has explained that a court is not to function as a "super-personnel department intervening whenever an employee feels he is being treated unjustly." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429,435 (7th Cir. 2005). While Jones may have felt nitpicked by Dugger and Bartels, "anti-discrimination laws are not triggered by rude behavior." *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 978 (N.D. Ill. 2014) (citing *Ford v. Minteq Shapes & Servs.*, 587 F.3d 845, 848 (7th Cir. 2009)). Furthermore, not every perceived unfairness in the workplace can be attributed to discriminatory motivation just because the employee belongs to a protected class. *Id.* The employee must be able to sufficiently connect the discrimination to her race. *Id.* Jones has not done that here.

**\*11** Because Jones has not set forth any evidence demonstrating that she was constructively discharged from her employment with T.J. Maxx, T.J. Maxx is entitled to judgment as a matter of law.

**D. *Title VII Retaliation Claim (Count III)***
In Title VII retaliation cases, a plaintiff has the burden of producing enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the employer took a materially adverse action against her; and (3) there was a but-for causal connection between the two. *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) (citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)). Here, Jones fails to produce evidence that she engaged in a protected activity and that T.J. Maxx took a material adverse action against her.

*1. Protected Activity*
Despite Jones's counsel changing what protected activity Jones engaged in at every step of the litigation—there is no evidence that Jones engaged in a protected activity.[14] In her First Amended Complaint, Jones alleges that in 2017, a woman from human resources for T.J. Maxx came from Chicago, and Jones reported her issues with being passed over for a promotion (Doc. 27, p. 6). In her deposition, however, Jones testified that she did not complain to human resources about being passed over for a promotion (Doc. 40, pp. 49-50).

After Jones testified that the alleged protective activity never occurred, Jones's counsel changed course—asserting that the protected activity occurred on November 22, 2017, when Jones complained to human resources (Doc. 39, p. 15). But Jones did not mention race when she made her complaint to human resources (Doc. 40, p. 50). In fact, during her employment with T.J. Maxx, Jones did not talk to any coworkers about race discrimination—aside from one conversation where Keene only asked whether Jones thought that she was not promoted to assistant manager because she was black (*Id.* at pp. 41, 50). In response, Jones said she never thought about her race as the reason for not being promoted (*Id.* at p. 41). *See Miller*, 203 F.3d at 1008 (finding that "[a]n employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints"). Because there is no evidence that Jones engaged in a protected activity—her retaliation claims fail.

*2. Materially Adverse Action*
Even if Jones engaged in a protective activity, there is no evidence that T.J. Maxx took a materially adverse

*Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)*

FILED DATE: 9/17/2021 6:14 PM 2018CH02497

employment action against her after the November 2017 report.[15] Jones was not fired, discharged, denied a promotion, or reassigned to a different position with different responsibilities, nor were her compensation, benefits, or terms of employment changed. Instead, Jones alleges that after engaging in a protected activity, T.J. Maxx's agents took "several adverse employment actions against Plaintiff because of that activity...subjecting Plaintiff to retaliation for voicing her opinion regarding her lack of promotion, including but not limited to: (a) ostracizing Plaintiff; (b) refusing to promote Plaintiff; (c) criticizing Plaintiff's work performance; and (d) disciplining her"

**\*12** (Doc. 27, p. 8). The Court will address each in turn.

*i. Ostracizing Jones*

Retaliatory ostracism by supervisors may amount to a materially adverse action if it is sufficiently severe. *See Parkins v. Civil Constructors,* 163 F.3d 1027, 1039 (7th Cir. 1998) (acknowledging that "[p]reviously, we suggested that an adverse employment action might occur when an employer orders its employees to shun the plaintiff, provided that this activity causes material harm to the plaintiff"). "Binding case law makes clear, however, that the silent treatment and ostracism do not constitute materially adverse employment actions." *Hamilton v. RDI/Caesars Riverboat Casino LLC,* 179 F. Supp. 2d 1025, 940 (S.D. Ind. 2002) (citing *Parkins,* 163 F.3d at 1039).

In *Bell v. E.P.A.,* 232 F.3d 546 (7th Cir. 2000), an employee[16] worked as an environmental engineer for the EPA and sought a promotion—along with sixteen eligible candidates. To evaluate the candidates, the EPA required submissions of a written application, a copy of the most recent annual performance review, and a qualification statement. *Id.* at 549. The employee received a perfect score from EPA's rating plan "that described the knowledge, skills, and abilities an applicant needed to have and listed five factors to be considered." *Id.* To make the final decisions for promotion, EPA section chiefs formed a panel to interview the candidates. *Id.* Unfortunately, the employee was not selected by the panel for promotion. *Id.* The employee then sent a memorandum to the panel raising questions about the selection process and complained to the EPA alleging discrimination. The employee then claimed that a supervisor failed to greet, speak, and cancelled a conference that the employee scheduled in retaliation for the employee's complaint.

On these facts, the district court granted summary

judgment in favor of the EPA. *Bell v. U.S. E.P.A.,* 1999 WL 965710, at \*16 (N.D. Ill. Oct. 15, 1999), aff'd in part, rev'd in part sub nom. The court noted that the employee failed to establish a *prima facie* case of retaliation and held that the employee's retaliation claims were "isolated incidents of trivial matters, and do not constitute a material change in the terms and conditions of [her] employment." *Id.* On appeal, the Seventh Circuit affirmed summary judgment on the employee's retaliation claim. The Seventh Circuit held that "[t]hese are trivial matters that do not rise to the level of actionable retaliation." *Bell,* 232 F.3d at 555.

The Court acknowledges that unlike the ostracism in *Bell,* Jones's alleged ostracism caused her to miss out on two assistant manager positions (Doc. 40, p. 49). The problem is the assistant manager position in Cape Girardeau, Missouri, was filled in September 2017—**before** Jones made the November 2017 report to human resources (Doc. 39-9, p. 2). For the other assistant manager position in Paducah, Kentucky, it was not until *March or April 2018* that Jones's store was in the same region as the Paducah store Doc. 39-1, p. 18; Doc. 40, p. 42). This is significant because Jones asserts that "[i]n *March of 2018,* a white female was hired as a new assistant manager to be an assistant manager in the Paducah, KY store" (Doc. 39-9, p. 2) (emphasis added). But construing the facts in a light most favorable to Jones, there still is no evidence that Dugger or other managers knew about the open position in Paducah until *after* it was filled.[17] Indeed, Jones testified that Keene—the manager who told her about the Paducah position—was not able to tell her about any additional openings because he was not very familiar with that region yet (Doc. 40, p. 42). Accordingly, the alleged ostracism towards Jones does not constitute a materially adverse action in and of itself.

*ii. Refusing to Promote Jones*

**\*13** In her First Amended Complaint, Jones alleged that T.J. Maxx refused to promote her in retaliation for engaging in a protected activity. Jones's testimony contradicted this allegation, however, when she conceded it takes at least *a couple of months* of being a key carrier until one is qualified to be an assistant manager (Doc. 40, p. 49). Jones further admitted that "sometimes it could take up to, you know, *two years, three years* before you get promoted" (*Id.*) (emphasis added). Because Jones had been a key carrier *less than two years* when she resigned in June 2018, Jones's testimony contradicts her allegation that T.J. Maxx refused to promote her in retaliation for the November 2017 report.

CAU Removal 000254

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 9/17/2021 6:14 PM  2018CH02497

At summary judgment, Jones's counsel changed course—arguing that the negative performance review in May 2018 was in retaliation for her November 2017 report—and this performance review kept her from getting a promotion (Doc. 39, p. 9). The Seventh Circuit has recognized in *certain contexts* "a negative performance evaluation could constitute an adverse action within the meaning of the direct method of proving retaliation (as distinct from a claim of discrimination based on a prohibited classification)." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 741 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *but see Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108–09 (7th Cir. 2012) (noting that "[a]t the outset, it is not clear whether a negative performance review, standing alone, can ever constitute a materially adverse employment action in the retaliation context"). To even be considered an adverse action, the negative performance review must be tied to a tangible employment consequence. *See Gupta v. City of Chicago*, 2017 WL 2653144, at *4 (N.D. Ill. June 20, 2017) (noting that the employee's negative performance reviews in *Silverman* "were accompanied by a tangible employment consequence: her contract was not renewed at the end of the school year").

Jones's negative performance review in May 2018 does not amount to an adverse action because it is not tied to tangible consequences. Jones received a *raise* at this review (Doc. 39-12, p. 27). When asked whether this is an overall positive review, Jones replied, "[f]or the most part" (Doc. 40, p. 48). Jones also testified that in May 2018 no one had told her that they were thinking about terminating her employment, no one had threatened to fire her, and at this timeframe Jones did not believe that her managers were considering terminating her employment (*Id.*).

Jones conclusively argues that "[t]his performance review kept Ms. Jones from getting a promotion[,]" (Doc. 39, p. 9), and cites to the EEOC Charge from March 12, 2019 (Doc. 39-3). This is not evidence that the performance review kept her from a promotion. Accordingly, the alleged refusals to promote Jones do not constitute materially adverse actions.

*iii. Criticizing Work Performance*
The incidents between Jones, Dugger, and Bartels also do not amount to an adverse employment action. Jones

testified she was nitpicked by Dugger and Bartels after making the November 2017 report (Doc. 40, p. 43). According to Jones, Dugger and Bartels's nitpicking caused her to be unable to get into a routine (*Id.* at p. 44). Such petty slights are insufficient to constitute retaliation—especially if they are no more "than a mere inconvenience or an alteration of job responsibilities." *Atanus v. Perry*, 520 F.3d 662, 678 (7th Cir. 2008) (internal quotation and citations omitted).

*iv. Disciplining Jones*
At summary judgment, Jones's counsel appears to abandon the notion that T.J. Maxx disciplined Jones in retaliation. Counsel has failed to explain whether Jones's supervisors falsified disciplinary actions or whether Jones was disciplined more often after making the report. Still, the Court reviews each disciplinary action and the frequency of counseling sessions or written warnings to determine if an adverse action is present.

*14 A cursory review supports the notion that T.J. Maxx disciplined Jones more often in retaliation for the November 2017 report. For instance, T.J. Maxx disciplined Jones *three times* between June 2017 and May 2018—her sixth review period—but disciplined Jones only *two times* between June 2016 and May 2017—her fifth review period (Docs. 36-16, 36-17, 36-19, 36-20, 36-21). But a deeper review of the record between June 2017 and May 2018 shows that two of the three disciplinary actions were a result of tardiness that took place *before* the November 2017 report. The August 2017 formal counseling speaks for itself, and the January 2018 formal counseling was partially a result of four tardies that took place in March 2017, May 2017, July 2017, and August 2017 (Docs. 36-19, 36-20).

Ultimately, the only disciplinary action that arose wholly after the November 2017 report was the April 2018 formal counseling for a no call/no show (Doc. 36-21). Jones did not dispute this disciplinary action (Doc. 40, p. 41). Also, Jones testified that she did not believe that she was going to be terminated as a result of the formal counseling (*Id.*). *Compare Brooks v. City of Kankakee, Illinois*, 2019 WL 2572520, at *16 (C.D. Ill. Apr. 12, 2019) (holding that reprimand was materially adverse when the reprimand was in retaliation for plaintiff engaging in protected activities, and the reprimand concluded with "any future violation of this policy will be grounds for your discipline up to and including termination of your employment..."). Accordingly, the April 2018 disciplinary action was not "materially

CAU Removal 000255

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

adverse," and Jones has not established that she was disciplined in retaliation for her November 2017 report.[18]

3. *Causal Connection*

Assuming only for the sake of argument that Jones engaged in a protected activity and the final negative performance review was a material adverse action,[19] Jones still fails to present evidence of a causal connection between the two. To establish a causal link, a plaintiff must demonstrate that the defendant "would not have taken the adverse...action but for [her] protected activity." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (citations omitted).

Jones argues that in her "next performance review, Dugger rated Ms. Jones...her lowest score in six years" (Doc. 39, p. 15). The problem is Keene was the manager who gave Jones this review—not Dugger (Doc. 39-12, p. 24).[20] Jones has not provided evidence that Keene knew about the November 2017 report (Doc. 39-8, p. 2). As such, Jones fails to present evidence of a causal connection between an alleged protected activity and an adverse action.

4. *Similarly Situated Comparators*

Analyzing whether Jones has identified any similarly situated employees does not help her. *Lewis v. Wilkie*, 909 F.3d 858, 871 (7th Cir. 2018) (finding that it was appropriate for the district court to analyze causal connection and proceed to whether the plaintiff "had identified a similarly situated employee or rebutted the [defendant's] non-discriminatory explanations as pretextual [ ] [because] [b]oth elements (similarly situated employees and pretext) are necessary for a factfinder to infer a retaliatory motive under the *McDonnell Douglas* framework").

**\*15** Jones does not introduce new similarly situated employees in her retaliation argument. Instead, Jones notes "the similarly situated white employees discussed above did not engage in protected activity" (Doc. 39, p. 15). Notably, in failure to promote claims, a plaintiff must show that the employer promoted someone outside the

protected group who was not better qualified than she or who "had similar or lesser qualifications." *Riley*, 829 F.3d at 891-92. In retaliation claims, however, a plaintiff must show that he or she "was treated less favorably than similarly situated employees who did not engage in protected activity." *Wilkie*, 909 F.3d at 866. Splitting hairs is unnecessary, because under either analysis the "similarly situated white employees discussed above" did not deal with the same supervisors, were subject to the same standards, and engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018). Keene is the most similar to Jones, but the Court has already explained the reasons why the two are too dissimilar for the comparison to defeat summary judgment.

5. *Pretext*

Finally, assuming for the sake of argument that Jones had established a *prima facie* case of retaliation, T.J. Maxx provides the same reasons for its actions as it did for Jones's failure to promote claim. (Doc. 35, p. 24). Although Jones alleged actions besides the failure to promote as retaliation, she only argued pretext once (Doc. 39, p. 16). Having already found that Jones failed to provide evidence of pretext—Jones fails here as well.[21]

**CONCLUSION**

For these reasons, the Motion for Summary Judgment filed by Defendant T.J. Maxx (Doc. 35) is **GRANTED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 1966115

**Footnotes**

CAU Removal 000256

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

1    The phrase "glass ceiling" is used to refer to the inability to advance within a company for a variety of reasons—like race or sex. According to Jones, "[o]ne knows [the glass ceiling] has been 'reached' when lesser qualified individuals keep getting promoted while they do not, and these actions in failing to promote are discriminatory" (*Id*.).

2    It appears that Jones only received a formal counseling for this second no-call/no-show. But this would have been Jones's second no-call/no-show in a period of twelve months, thus this should have been a written warning.

3    Jones testified it takes at least *a couple of months* of being a key carrier until one is qualified to be an assistant manager (Doc. 40, p. 49). Jones later admitted that "sometimes it could take up to, you know, *two years, three years* before you get promoted" (*Id*.) (emphasis added). Dugger testified that "it's generally within a year, but there also has to be a position available for that associate" (Doc. 39-1, p. 15).

4    Tragically, Jones's brother died in a car accident. Filled with grief, Jones asked for time off from T.J. Maxx (Doc. 40, p. 36). When Jones asked Bartels for time off work—Bartels said, "I didn't even know you had a brother" (*Id*.).

5    Jones's counsel did not seek leave to amend or follow Local Rule 15.1, which requires that "[p]roposed pleadings must be submitted in accordance with the CM/ECF User's Manual Section 2.10 titled 'Submitting a Proposed Document.' " SDIL-LR 15.1.

6    This Court has subject matter jurisdiction over Jones's Title VII claims pursuant to 28 U.S.C. § 1331. The remaining state law claims are before this Court by way of supplemental jurisdiction under 28 U.S.C. § 1367.

7    Again, Fowler's testimony is inadmissible as it is neither a sworn affidavit nor an unsworn declaration.

8    The Seventh Circuit has "urge[d] district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004). Even if the Court considered the statements within Fowler's affidavit, those statements would not change the result.

9    Indeed, when asked whether Jones was alleging that she should have been offered the Cape Girardeau assistant manager promotion in 2014 over Megan Adams—Jones replied—"[n]ot at that time" (Doc. 40, p. 56). When asked whether Jones was alleging that she should have been offered the assistant manager promotion over Kristie Kelly—Jones replied—"[n]ot at that time" (*Id*.). Also, Jones confirmed that she was not alleging she should have been offered the Carbondale assistant manager promotion in 2010 over Michelle Bartels (Doc. 39, p. 13).

10    This is not an affidavit. Again, an affidavit must be "sworn to before someone who is authorized to administer an oath." *Pfeil*, 757 F.2d at 859. Rather, this is an unsworn declaration because Jones writes her signature under penalty of perjury (Doc. 39-9, p. 3).

11    Jones's Response in Opposition to Defendant's Motion for Summary Judgment argues that "[t]he only 2017 CDP Participants to promote to store manager were white" (Doc. 39, p. 6). But Jones has failed to provide evidence—much less argue—that these white 2017 CDP Participants were similarly situated.

12    Even if Jones's discrimination claim under the IHRA was properly before the Court, it would fail for the same reasons set forth above because "[t]he standards for Illinois state-law discrimination claims mirror those for Title VII claims." *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 (7th Cir. 2014) (citations omitted).

13    Notably, Jones does not bring a hostile work environment claim.

CAU Removal 000257

14    Jones alleges that "Plaintiff engaged in protected activity when she took the following actions, *including but not limited to*, reporting her issues with being passed over for a promotion" (Doc. 27). Even though Jones never alleged in her complaint that the November 2017 report to human resources was a protected activity, for the sake of completeness, the Court will assume that the phrase "including but not limited to" somehow gives Jones the ability to change the protected activity this late in the litigation.

15    The Court cannot evaluate whether Jones was retaliated after the alleged complaint to human resources for being passed over for a promotion because Jones's testimony confirms there was no complaint to human resources for being passed over for a promotion (Doc. 40, pp. 49-50). Further, Jones testified that it was in 2015 when she had a *conversation* with human resources about her career goals (*Id.* at pp. 27-28). During this *conversation*, Jones did not complain about being passed over for a promotion, but this "was just a *casual conversation*" (*Id.* at p. 28) (emphasis added). Jones explained the person from human resources "was asking [Jones] who [she] was and [her] position and different things" (*Id.*). Jones also testified that "[she] just said that basically, you know, [she] plan[s] on moving up in the company [ ] [a]nd that's how that was brought up" (*Id.*). In fact, Jones's counsel no longer advances this as a protected activity at summary judgment.

16    There were four plaintiffs in *Bell*, but for the sake of brevity and clarity, the Court refers to only one employee, Prasinos.

17    Also, there is no evidence that T.J. Maxx had an established system for managers to know about openings in stores in other regions.

18    Another way Jones could meet the element of an adverse employment action as required for retaliation claims is to demonstrate that she was constructively discharged. As noted above, however, Jones has failed to demonstrate that she was constructively discharged.

19    In her response to T.J. Maxx's Motion for Summary Judgment, Jones only touches on the negative performance review. As such, the Court will not evaluate whether Jones provided evidence of a causal connection between any other alleged or *unalleged* adverse actions.

20    At best, Jones can combat this evidence by pointing out that Dugger testified that all the managers "give input on evaluations because we all work with all the associates" (Doc. 39-1, p. 9). But Dugger later testified that Keene was responsible for evaluating Jones (Doc. 39-1, p. 10). Jones also testified that Keene was the main appraiser (Doc. 40, p. 47).

21    Even if Jones's retaliation claim under the IHRA was properly before the Court, it would fail for the same reasons set forth above because the standards for Illinois state-law retaliation claims mirror those for Title VII claims. *Mahran v. Advoc. Health & Hosps. Corp.*, 2019 WL 952131, at *15 (N.D. Ill. Feb. 26, 2019) (citing *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (1989)).

---

**End of Document**     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

CAU Removal 000258

Prusaczyk v. Hamilton County Coal, LLC, Slip Copy (2020)

2020 WL 5981377

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

2020 WL 5981377
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Douglas PRUSACZYK, Plaintiff,
v.
HAMILTON COUNTY COAL, LLC, Alliance Coal,
LLC, and Ike Woodring, Defendants.

Case No. 3:20-CV-73-NJR
|
Signed 10/08/2020

**Attorneys and Law Firms**

Brandy B. Barth, Newton Barth, L.L.P., St. Louis, MO, for Plaintiff.

Richard Garrett Griffith, Pro Hac Vice, Elizabeth Smith Muyskens, Pro Hac Vice, Stoll, Keenon et al., Lexington, KY, for Defendants Hamilton County Coal, LLC, Alliance Coal, LLC.

Shari R. Rhode, Rhode Law Firm, Carbondale, IL, for Defendant Ike Woodring.

## **MEMORANDUM AND ORDER**

ROSENSTENGEL, Chief Judge:

**\*1** Plaintiff Douglas Prusaczyk filed this action for damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Illinois Human Rights Act, and Illinois state law alleging he endured sexual assault, sexual harassment, and a hostile work environment created by his supervisor, Defendant Ike Woodring, while working for Defendants Hamilton County Coal, LLC ("Hamilton Coal"), and Alliance Coal, LLC ("Alliance Coal"). Defendants now move the Court to dismiss some of those claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docs. 37, 38). For the reasons set forth below, Defendants Hamilton Coal and Alliance Coal's motion is granted, while Defendant Woodring's motion is granted in part and denied in part.

## **BACKGROUND**

The following facts alleged by Prusaczyk are accepted as true for purposes of Defendants' motions to dismiss. Prusaczyk began working at Hamilton Coal and was employed by Alliance Coal in April 2017 (Doc. 35 at ¶ 1). Prusaczyk alleges that Woodring, his direct supervisor, worked in concert with other employees under Woodring's supervision and control to sexually assault and harass Prusaczyk, creating a hostile work environment (*Id.* at ¶ 15).

Prusaczyk's allegations are disturbing. Most of his claims involve Woodring and other employees placing their genitals on his shoulder, putting their genitals in his face, touching and kissing him without consent, grabbing and photographing his genitals without consent, and sending him unwelcome pornographic photos via text message (Doc. 35 at pp. 4-5). When Prusaczyk reported Woodring's conduct, the plant manager admitted he knew that Woodring "had a problem." (*Id.* at p. 5). Prusaczyk's supervisors then retaliated against him by ignoring him and making clear he would never be promoted (*Id.*). Prusaczyk later resigned (*Id.*).

On April 22, 2019, Prusaczyk filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC) alleging Hamilton Coal and Alliance Coal discriminated against him on the basis of sex, subjected him to a hostile work environment, and retaliated against him. Prusaczyk received a Notice of Right to Sue from the EEOC on October 21, 2019.

On January 17, 2020, Prusaczyk timely filed this action within 90 days of receipt of the Notice of Right to Sue (Doc. 35-1). At the time of filing his original complaint, Prusaczyk had yet to receive a Notice of Right to Sue from the IDHR. On April 7, 2020, the IDHR issued an Order of Administrative Dismissal pursuant to 775 ILL. COMP. STAT. § 5/7-109.1 (Doc. 45-1).

On May 12, 2020, Prusaczyk filed an Amended Complaint asserting five counts against Defendants. Count I is a claim against all Defendants for sexual harassment under Title VII for subjecting Prusaczyk to a hostile work environment and retaliation for reporting sexual harassment. Count II is a claim against all Defendants for gender discrimination and sexual harassment under the Illinois Human Rights Act. In Count III, Prusaczyk alleges state law assault and battery against all Defendants related to Woodring's offensive and

CAU Removal 000259

2020 WL 5981377

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

harmful physical contact. Count IV alleges negligent retention against Hamilton County Coal and Alliance Coal for retaining Woodring as an employee despite their knowledge that he was unfit for his position. Finally, in Count V, Prusaczyk alleges a claim under the Gender Violence Act, 740 ILL. COMP. STAT. § 82, against Woodring.[1]

## DISCUSSION

### I. Count I – Title VII Claim Against Defendant Woodring

**\*2** Woodring first moves to dismiss Count I of the Amended Complaint for failure to state a claim. Woodring argues that, while Count I alleges a claim for sexual harassment against him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, only an employer can be liable for workplace sexual harassment under Title VII. Thus, Woodring is not a proper party under Count I. Prusaczyk concedes that Woodring is not a proper defendant under Count I (Doc. 45 at p. 2); thus, his claims against Woodring in Count I will be dismissed.

### II. Count II – IHRA Claim Against All Defendants

All Defendants argue that Prusaczyk's IHRA claim in Count II should be dismissed because he failed to exhaust his administrative remedies before filing suit (Docs. 37, 38). Defendants assert that the IHRA sets forth specific prerequisites to filing a civil action seeking relief under the Act, and that Prusaczyk failed to follow the required steps. Woodring additionally argues that the IHRA does not provide for personal liability of employees, so the IHRA claim against him must be dismissed.

The IHRA provides the exclusive remedy for human rights violations under the Act. *Vroman v. Round Lake Area Sch.-Dist.*, No. 15 C 2013, 2015 WL 7273108, at *2 (N.D. Ill. Nov. 18, 2015). "Except by way of administrative review, the courts ... have no jurisdiction to grant relief for violations of the policies embodied in the Illinois Human Rights Act." *Armstrong v. Freeman United Coal Min. Co.*, 446 N.E.2d 296, 298 (Ill. App. Ct. 1983); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458–59 (7th Cir. 1994) ("Indeed, the Act states that 'courts have no jurisdiction to hear independent actions

for civil rights violations.' ").

Under the IHRA, a complainant must first exhaust the IDHR's administrative procedures before he may bring suit. *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *2 (N.D. Ill. Apr. 8, 2020). Generally, the complainant may file a civil suit after receiving a final report from the IDHR or if the IDHR fails to issue a report within one year after the charge is filed. *Id.* (citing 775 ILL. COMP. STAT. § 5/7A-102(D), (G)). A complainant may also "opt-out" of the IDHR's investigation by submitting a written request within 60 days of receiving notice of the right to do so. 775 ILL. COMP. STAT. § 5/7A-102(B), (C-1).

When a complainant files a charge of discrimination with both the EEOC and the IDHR, the IHRA provides a different set of procedures. *Baranowska*, No. 19 C 6844, 2020 WL 1701860, at *2. "If the EEOC investigates the charge first, the IDHR takes no action on the charge—and the one-year period for the IDHR to investigate is tolled—until the complainant notifies it of the EEOC's determination." *Id.* (citing 775 ILL COMP. STAT. § 5/7A-102(A-1)(1)). The complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant. 775 ILL. COMP. STAT. § 5/7A-102(A-1)(1)(iv). Once the complainant timely notifies the IDHR that the EEOC has issued a notice of a right to sue, the IDHR notifies the parties within 10 business days that it "will adopt the EEOC's determination" unless the complainant requests in writing within 35 days after receipt of the notice that the IDHR review the EEOC's determination. 775 ILL. COMP. STAT. § 5/7A-102(A-1)(3).

When determining whether Prusaczyk exhausted his administrative remedies under the IHRA, the Court considers the allegations in the Complaint as well as the relevant IDHR and EEOC records. *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *2 (N.D. Ill. Apr. 8, 2020). If the documents show a failure to exhaust, then dismissal of the IHRA claims is appropriate under Rule 12(b)(6). *Id.*

**\*3** Here, Defendants argue that the IDHR provided notice to Prusaczyk of his right to opt out of the IDHR's investigation of his IHRA charge by letter dated April 18, 2019. Yet, Prusaczyk did opt out within the required time period. As a result, the IDHR proceeded with the administrative process, and Defendants were obligated to participate in that administrative process. Defendants argue Prusaczyk should not now be permitted to evade the procedural exhaustion requirements.

CAU Removal 000260

Prusaczyk v. Hamilton County Coal, LLC, Slip Copy (2020)

2020 WL 5981377

Defendants also contend that Prusaczyk could have provided the IDHR with a copy of his EEOC Right to Sue letter within 30 days of receiving it in order to preserve his rights under the IHRA. Prusaczyk received the EEOC's Right to Sue Letter on or about October 21, 2019. Because he did not notify the IDHR of the EEOC's determination, he did not exhaust his administrative remedies as to his IHRA claim, and it must be dismissed.

In response, Prusaczyk argues that the IDHR administratively dismissed the matter and informed him of his right pursuant to Section 7-109.1 of the IHRA to "commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction." Prusaczyk states that he asked several times for the investigation to continue and agreed to mediation, but it was Defendants who cut off all communication or participation in the process. The dismissal was finally granted, Prusaczyk explains, because he chose not to agree to a continuation of the investigation process past the time limits placed upon the IDHR and instead chose to commence litigation.

True, the IHRA allows the IDHR to administratively close a pending charge "if the issues which are the basis of the charge are being litigated in a State or federal court proceeding." 775 ILL. COMP. STAT. § 5/7-109.1. The administrative closing of a charge by the IDHR, however, is not a final order, nor does it constitute an exhaustion of administrative remedies. *Falco v. Office Elecs., Inc.*, No. 97 C 4170, 1997 WL 587660, at *2 (N.D. Ill. Sept. 17, 1997). "A plaintiff cannot file suit in federal court and then, when the IDHR closes her charge precisely because she filed suit in federal court, argue that she has exhausted all administrative remedies." *Id.*

In *Ibrahim v. Holidays Inn, Inc.*, the court granted a motion to dismiss on the basis of the plaintiff's failure to exhaust administrative remedies even after the plaintiff produced a letter from the IDHR indicating that a charge had been administratively closed pursuant to § 7-109.1. *Ibrahim v. Holidays Inn, Inc.*, No. 95 C 4316, 1996 WL 199743, at *5–6 (N.D. Ill. Apr. 23, 1996). The plaintiff argued the letter showed she had exhausted her administrative remedies under the Act and was a final order from the IDHR, so she was then entitled to a trial on her IHRA claims. *Id.* at *6. The court disagreed, reasoning that the letter failed to show plaintiff exhausted her administrative remedies or that what she received was a final order. *Id.* Instead, the court found that, under the plaintiff's view, an aggrieved party could circumvent the IHRA by filing a complaint in court and then receive an administrative closure based on that case under § 5/7-109.1, undermining the Act's comprehensive scheme

and administrative remedies. *Id.*

Here, Prusaczyk filed his charge of discrimination with both the EEOC and the IDHR (Doc. 35 at ¶ 10). He did not, however, opt out of the IDHR's investigation of his IHRA charge or timely notify the IDHR of the EEOC's determination on his charge of discrimination as required by the IHRA. Moreover, the IDHR's Order of Administrative Dismissal specifically states that Prusaczyk's charge was "Administratively Dismissed" because the "[c]harging party has initiated litigation for the purpose of seeking final relief in a State or federal court ...; and [a] final decision on the merits in that litigation ... would preclude the charging party from bringing another action based on the charge."

**\*4** Because Prusaczyk did not follow the Act's procedural scheme and never received a final order from the IDHR, the Court finds that he did not exhaust his administrative remedies. Accordingly, his IHRA claim in Count II must be dismissed.

Contrary to Woodring's argument, however, the Court will not dismiss Count V. Woodring lumps Prusaczyk's claim in Count V with his claims in Count II and asserts they all fall under the IHRA. That's not correct. In Count V, Prusaczyk asserts a claim against Woodring under the Illinois Gender Violence Act, 740 ILL. COMP. STAT. § 82. The Gender Violence Act establishes legal duties separate from those created by the IHRA. *Vince v. Illinois Cent. Sch. Bus, LLC*, No. 09 C 5360, 2011 WL 578832, at *17 (N.D. Ill. Feb. 9, 2011). Thus, Woodring has presented the Court with no basis to dismiss Count V.

### III. Count III – Assault and Battery Against Defendant Woodring

Woodring finally argues that the Court should decline to exercise supplemental jurisdiction over Prusaczyk's Illinois state law assault and battery claim against him. Woodring argues that requiring him to participate in complex and expensive federal litigation on the basis of a state law tort claim would be a waste of the parties' time and the Court's judicial resources. It also would unnecessarily complicate the case and confuse a jury.

Under 28 U.S.C. § 1367(a), a federal court may exercise supplemental jurisdiction when one matter is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." The Court may decline to exercise supplemental jurisdiction under § 1367(c) if: (1) the claim raises a novel or complex

**WESTLAW** © 2021 Thomson Reuters. No claim to original U.S. Government Works. 3

Prusaczyk v. Hamilton County Coal, LLC, Slip Copy (2020)

2020 WL 5981377

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) other compelling reasons for declining jurisdiction. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

Here, Prusaczyk's assault and battery claim against Woodring is so related to the Title VII claim that it forms part of the same case or controversy. Indeed, Woodring's alleged conduct that forms the basis for the assault and battery claim is the same conduct that Defendants allegedly ignored and retaliated against Prusaczyk for reporting, leading to the Title VII claim. Furthermore, the Court finds no reason to decline to exercise supplemental jurisdiction. The assault and battery claim does not present any novel or complex area of state law, nor does it substantially predominate over Prusaczyk's Title VII claims. And while there are no claims against Woodring over which this Court has original jurisdiction, as argued by Prusaczyk, the facts underlying the assault and battery claim in Count III lie at the heart of this controversy. To require the claims to be tried separately would make no sense logically or from the standpoint of judicial efficiency. Accordingly, the Court will exercise supplemental jurisdiction over Prusaczyk's claim in Count III for assault and battery against Woodring.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant Ike Woodring (Doc. 37) is **GRANTED in part and DENIED in part**. Counts I and II are **DISMISSED** as to Defendant Woodring.

**\*5** The Motion to Dismiss filed by Defendants Hamilton County Coal, LLC, and Alliance Coal, LLC (Doc. 38), is **GRANTED**. Count II is **DISMISSED** as to Defendants Hamilton Coal and Alliance Coal.

This case shall now proceed on Count I against Defendants Hamilton Coal and Alliance Coal, Count III against all Defendants, Count IV against Defendants Hamilton Coal and Alliance Coal, and Count V against Defendant Woodring.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 5981377

## Footnotes

1      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000262

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

# EXHIBIT 5

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 265 of 640 PageID #:272

**HUMAN RIGHTS--PREGNANCY--PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-596...**

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

2011 Ill. Legis. Serv. P.A. 97-596 (S.B. 1122) (WEST)

ILLINOIS 2011 LEGISLATIVE SERVICE

Ninety-Seventh General Assembly, 2011

Additions are indicated by **Text**; deletions by
~~Text~~.
Vetoes are indicated by  ~~Text~~;
stricken material by  ~~Text~~.

PUBLIC ACT 97−596
S.B. 1122
HUMAN RIGHTS--PREGNANCY--PROCEDURES

AN ACT concerning human rights.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

Section 5. The Illinois Human Rights Act is amended by changing Sections 2–102 and 7A–102 as follows:

<< IL ST CH 775 § 5/2–102 >>

**[S.H.A. 775 ILCS 5/2–102]** (775 ILCS 5/2–102) (from Ch. 68, par. 2–102)

§ 2–102. Civil Rights Violations--Employment. It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.

(A–5) Language. For an employer to impose a restriction that has the effect of prohibiting a language from being spoken by an employee in communications that are unrelated to the employee's duties.

For the purposes of this subdivision (A–5), "language" means a person's native tongue, such as Polish, Spanish, or Chinese. "Language" does not include such things as slang, jargon, profanity, or vulgarity.

(B) Employment Agency. For any employment agency to fail or refuse to classify properly, accept applications and register for employment referral or apprenticeship referral, refer for employment, or refer for apprenticeship on the basis of unlawful discrimination or citizenship status or to accept from any person any job order, requisition or request for referral of applicants for employment or apprenticeship which makes or has the effect of making unlawful discrimination or discrimination on the basis of citizenship status a condition of referral.

(C) Labor Organization. For any labor organization to limit, segregate or classify its membership, or to limit employment opportunities, selection and training for apprenticeship in any trade or craft, or otherwise to take, or fail to take, any action which affects adversely any person's status as an employee or as an applicant for employment or as an apprentice, or as an applicant for apprenticeships, or wages, tenure, hours of employment or apprenticeship conditions on the basis of unlawful discrimination or citizenship status.

CAU Removal 000264

**EXHIBIT 5**

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 266 of 640 PageID #:273

HUMAN RIGHTS--PREGNANCY--PROCEDURES, 2011 Ill. Legis. Serv. P.A. 97-596...

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

(D) Sexual Harassment. For any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

(E) Public Employers. For any public employer to refuse to permit a public employee under its jurisdiction who takes time off from work in order to practice his or her religious beliefs to engage in work, during hours other than such employee's regular working hours, consistent with the operational needs of the employer and in order to compensate for work time lost for such religious reasons. Any employee who elects such deferred work shall be compensated at the wage rate which he or she would have earned during the originally scheduled work period. The employer may require that an employee who plans to take time off from work in order to practice his or her religious beliefs provide the employer with a notice of his or her intention to be absent from work not exceeding 5 days prior to the date of absence.

(F) Training and Apprenticeship Programs. For any employer, employment agency or labor organization to discriminate against a person on the basis of age in the selection, referral for or conduct of apprenticeship or training programs.

(G) Immigration–Related Practices.

(1) for an employer to request for purposes of satisfying the requirements of Section 1324a(b) of Title 8 of the United States Code, as now or hereafter amended, more or different documents than are required under such Section or. to refuse to honor documents tendered that on their face reasonably appear to be genuine; or

(2) for an employer participating in the Basic Pilot Program, as authorized by 8 U.S.C. 1324a, Notes, Pilot Programs for Employment Eligibility Confirmation (enacted by PL 104–208, div. C title IV, subtitle A) to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment without following the procedures under the Basic Pilot Program.

(H) Pregnancy; peace officers and fire fighters. For a public employer to refuse to temporarily transfer a pregnant female peace officer or pregnant female fire fighter to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where that transfer can be reasonably accommodated. For the purposes of this subdivision (H), "peace officer" and "fire fighter" have the meanings ascribed to those terms in Section 3 of the Illinois Public Labor Relations Act.

It is not a civil rights violation for an employer to take any action that is required by Section 1324a of Title 8 of the United States Code, as now or hereafter amended.

**(I) Pregnancy. For an employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.**

(Source: P.A. 95–25, eff. 1–1–08; 95–137, eff. 1–1–08; 95–876, eff. 8–21–08.)

<< IL ST CH 775 § 5/7A–102 >>

**[S.H.A. 775 ILCS 5/7A–102]** (775 ILCS 5/7A–102) (from Ch. 68, par. 7A–102)

§ 7A–102. Procedures.

(A) Charge.

CAU Removal 000265

FILED DATE: 9/17/2021 6:14 PM  2018CH02497

(1) Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director.

(2) The charge shall be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation.

**(3) Charges deemed filed with the Department pursuant to subsection (A–1) of this Section shall be deemed to be in compliance with this subsection.**

(A–1) Equal Employment Opportunity Commission Charges.

**(1) If a** ~~A~~ charge **is** filed with the Equal Employment Opportunity Commission **(EEOC)** within 180 days after the date of the alleged civil rights violation**, the charge** shall be deemed filed with the Department on the date filed with the **EEOC.** ~~Equal Employment Opportunity Commission. Upon receipt of a charge filed with the Equal Employment Opportunity Commission, the Department shall notify the complainant that he or she may proceed with the Department. The complainant must notify the Department of his or her decision in writing within 35 days of receipt of the Department's notice to the complainant and the Department shall close the case if the complainant does not do so. If the complainant proceeds with the Department,~~ **If the EEOC is the governmental agency designated to investigate the charge first,** the Department shall take no action until the **EEOC** ~~Equal Employment Opportunity Commission~~ makes a determination on the charge **and after the complainant notifies the Department of the EEOC's determination**. **In such cases, after receiving notice from the EEOC that a charge was filed, the Department shall notify the parties that (i) a charge has been received by the EEOC and has been sent to the Department for dual filing purposes; (ii) the EEOC is the governmental agency responsible for investigating the charge and that the investigation shall be conducted pursuant to the rules and procedures adopted by the EEOC; (iii) it will take no action on the charge until the EEOC issues its determination; (iv) the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant; and (v) that the time period to investigate the charge contained in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC until the EEOC issues its determination.** ~~Upon receipt of the Equal Employment Opportunity Commission's determination, the Department shall cause the charge to be filed under oath or affirmation and to be in such detail as provided for under subparagraph (2) of paragraph (A).~~

**(2) If the EEOC finds reasonable cause to believe that there has been a violation of federal law and if the Department is timely notified of the EEOC's findings by complainant, the Department shall notify complainant that the Department has adopted the EEOC's determination of reasonable cause and that complainant has the right, within 90 days after receipt of the Department's notice, to either file his or her own complaint with the Illinois Human Rights Commission or commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination of reasonable cause shall constitute the Department's Report for purposes of subparagraph (D) of this Section.**

**(3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.**

**(a) If the complainant does not file a written request with the Department to review the EEOC's determination within 35 days after receipt of the Department's notice, the Department shall notify complainant that the decision of the EEOC has been adopted by the Department as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's**

CAU Removal 000266

**notice to complainant that the Department has adopted the EEOC's determination shall constitute the Department's report for purposes of subparagraph (D) of this Section.**

**(b) If the complainant does file a written request with the Department to review the EEOC's determination, the Department shall review the EEOC's determination and any evidence obtained by the EEOC during its investigation. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is no need for further investigation of the charge, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A–102. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is a need for further investigation of the charge, the Department may conduct any further investigation it deems necessary. After reviewing the EEOC's determination, the evidence obtained by the EEOC, and any additional investigation conducted by the Department, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A–102 of this Act.**

**(4) Pursuant to this Section, if the EEOC dismisses the charge or a portion of the charge of discrimination because, under federal law, the EEOC lacks jurisdiction over the charge, and if, under this Act, the Department has jurisdiction over the charge of discrimination, the Department shall investigate the charge or portion of the charge dismissed by the EEOC for lack of jurisdiction pursuant to subsections (A), (A–1), (B), (B–1), (C), (D), (E), (F), (G), (H), (I), (J), and (K) of Section 7A–102 of this Act.**

**(5) The time limit set out in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC to the date on which the EEOC issues its determination.** ~~At the Department's discretion, the Department shall either adopt the Equal Employment Opportunity Commission's determination or process the charge pursuant to this Act. Adoption of the Equal Employment Opportunity Commission's determination shall be deemed a determination by the Department for all purposes under this Act.~~

(B) Notice and Response to Charge. The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent. This period shall not be construed to be jurisdictional. The charging party and the respondent may each file a position statement and other materials with the Department regarding the charge of alleged discrimination within 60 days of receipt of the notice of the charge. The position statements and other materials filed shall remain confidential unless otherwise agreed to by the party providing the information and shall not be served on or made available to the other party during pendency of a charge with the Department. The Department shall require the respondent to file a verified response to the allegations contained in the charge within 60 days of receipt of the notice of the charge. The respondent shall serve a copy of its response on the complainant or his representative. All allegations contained in the charge not timely denied by the respondent shall be deemed admitted, unless the respondent states that it is without sufficient information to form a belief with respect to such allegation. The Department may issue a notice of default directed to any respondent who fails to file a verified response to a charge within 60 days of receipt of the notice of the charge, unless the respondent can demonstrate good cause as to why such notice should not issue. The term "good cause" shall be defined by rule promulgated by the Department. Within 30 days of receipt of the respondent's response, the complainant may file a reply to said response and shall serve a copy of said reply on the respondent or his representative. A party shall have the right to supplement his response or reply at any time that the investigation of the charge is pending. The Department shall, within 10 days of the date on which the charge was filed, and again no later than 335 days thereafter, send by certified or registered mail written notice to the complainant and to the respondent informing the complainant of the complainant's right to either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court under subparagraph (2) of paragraph (G), including in such notice the dates within which the complainant may exercise this right. In the notice the Department shall notify the complainant that the charge of civil rights violation will be dismissed with prejudice and with no right to further proceed if a written complaint is not timely filed with the Commission or with the appropriate circuit court by the complainant pursuant to subparagraph (2) of paragraph (G) or by the Department pursuant to subparagraph (1) of paragraph (G).

(B–1) Mediation. The complainant and respondent may agree to voluntarily submit the charge to mediation without waiving any rights that are otherwise available to either party pursuant to this Act and without incurring any obligation to accept the result of the mediation process. Nothing occurring in mediation shall be disclosed by the Department or admissible in

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 4

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

FILED DATE: 9/17/2021 6:14 PM    2018CH02497

evidence in any subsequent proceeding unless the complainant and the respondent agree in writing that such disclosure be made.

(C) Investigation.

(1) After the respondent has been notified, the Department shall conduct a full investigation of the allegations set forth in the charge.

(2) The Director or his or her designated representatives shall have authority to request any member of the Commission to issue subpoenas to compel the attendance of a witness or the production for examination of any books, records or documents whatsoever.

(3) If any witness whose testimony is required for any investigation resides outside the State, or through illness or any other good cause as determined by the Director is unable to be interviewed by the investigator or appear at a fact finding conference, his or her testimony or deposition may be taken, within or without the State, in the same manner as is provided for in the taking of depositions in civil cases in circuit courts.

(4) Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference prior to 365 days after the date on which the charge was filed, unless the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed or the charge has been dismissed for lack of jurisdiction. If the parties agree in writing, the fact finding conference may be held at a time after the 365 day limit. Any party's failure to attend the conference without good cause shall result in dismissal or default. The term "good cause" shall be defined by rule promulgated by the Department. A notice of dismissal or default shall be issued by the Director. The notice of default issued by the Director shall notify the respondent that a request for review may be filed in writing with the Commission within 30 days of receipt of notice of default. The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(D) Report.

(1) Each charge shall be the subject of a report to the Director. The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, and, where indicated by this Act, members of the Commission or their designated hearing officers.

(2) Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance.

(3) If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(4) If the Director determines that there is substantial evidence, he or she shall notify the complainant and respondent of that determination. The Director shall also notify the parties that the complainant has the right to either commence a civil action in the appropriate circuit court or request that the Department of Human Rights file a complaint with the Human

CAU Removal 000268

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

Rights Commission on his or her behalf. Any such complaint shall be filed within 90 days after receipt of the Director's notice. If the complainant chooses to have the Department file a complaint with the Human Rights Commission on his or her behalf, the complainant must, within 30 days after receipt of the Director's notice, request in writing that the Department file the complaint. If the complainant timely requests that the Department file the complaint, the Department shall file the complaint on his or her behalf. If the complainant fails to timely request that the Department file the complaint, the complainant may file his or her complaint with the Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Human Rights Commission, the complainant shall give notice to the Department of the filing of the complaint with the Human Rights Commission.

(E) Conciliation.

(1) When there is a finding of substantial evidence, the Department may designate a Department employee who is an attorney licensed to practice in Illinois to endeavor to eliminate the effect of the alleged civil rights violation and to prevent its repetition by means of conference and conciliation.

(2) When the Department determines that a formal conciliation conference is necessary, the complainant and respondent shall be notified of the time and place of the conference by registered or certified mail at least 10 days prior thereto and either or both parties shall appear at the conference in person or by attorney.

(3) The place fixed for the conference shall be within 35 miles of the place where the civil rights violation is alleged to have been committed.

(4) Nothing occurring at the conference shall be disclosed by the Department unless the complainant and respondent agree in writing that such disclosure be made.

(5) The Department's efforts to conciliate the matter shall not stay or extend the time for filing the complaint with the Commission or the circuit court.

(F) Complaint.

(1) When the complainant requests that the Department file a complaint with the Commission on his or her behalf, the Department shall prepare a written complaint, under oath or affirmation, stating the nature of the civil rights violation substantially as alleged in the charge previously filed and the relief sought on behalf of the aggrieved party. The Department shall file the complaint with the Commission.

(2) If the complainant chooses to commence a civil action in a circuit court, he or she must do so in the circuit court in the county wherein the civil rights violation was allegedly committed. The form of the complaint in any such civil action shall be in accordance with the Illinois Code of Civil Procedure.

(G) Time Limit.

(1) When a charge of a civil rights violation has been properly filed, the Department, within 365 days thereof or within any extension of that period agreed to in writing by all parties, shall issue its report as required by subparagraph (D). Any such report shall be duly served upon both the complainant and the respondent.

(2) If the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Commission, the form of the complaint shall be in accordance with the provisions of paragraph (F)(1). If the complainant commences a civil action in a circuit court, the form of the complaint shall be in accordance with the Illinois Code of Civil Procedure. The aggrieved party shall notify the Department that a complaint has been filed and shall serve a copy of the complaint on the Department on the same date that the complaint is filed with the Commission or in circuit court. If the complainant files a complaint with the Commission, he or she may not later commence a civil action in circuit court.

(3) If an aggrieved party files a complaint with the Human Rights Commission or commences a civil action in circuit court

CAU Removal 000269

FILED DATE: 9/17/2021 6:14 PM   2018CH02497

pursuant to paragraph (2) of this subsection, or if the time period for filing a complaint has expired, the Department shall immediately cease its investigation and dismiss the charge of civil rights violation. Any final order entered by the Commission under this Section is appealable in accordance with paragraph (B)(1) of Section 8–111. Failure to immediately cease an investigation and dismiss the charge of civil rights violation as provided in this paragraph (3) constitutes grounds for entry of an order by the circuit court permanently enjoining the investigation. The Department may also be liable for any costs and other damages incurred by the respondent as a result of the action of the Department.

(4) The Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.

(H) This amendatory Act of 1995 applies to causes of action filed on or after January 1, 1996.

(I) This amendatory Act of 1996 applies to causes of action filed on or after January 1, 1996.

(J) The changes made to this Section by Public Act 95–243 apply to charges filed on or after the effective date of those changes.

(K) The changes made to this Section by this amendatory Act of the 96th General Assembly apply to charges filed on or after the effective date of those changes.

(Source: P.A. 95–243, eff. 1–1–08; 96–876, eff. 2–2–10.)

Section 99. Effective date. This Act takes effect upon becoming law.

Approved: August 26, 2011
Effective: August 26, 2011

**End of Document**                                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000270

FILED DATE: 9/22/2021 5:41 PM    2018CH02497

FILED
9/22/2021 5:41 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

14927511

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2018-CH-02497 |
| | ) Calendar: 15 |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) |
| Defendant. | ) |

### DEFENDANT'S ANSWER TO COMPLAINT

NOW COMES Defendant, Community Alternatives Unlimited, by and through its attorneys, Epstein Becker and Green, P.C., and answers Plaintiff's Complaint as follows:

### INTRODUCTION

1.    Ms. Abraham was employed by CAU for over 17 years, until she was constructively discharged in or around December 2016. She was well-regarded by her co-workers and was promoted periodically within the company. In March 2016, she was suddenly placed on a Performance Improvement Plan ("PIP"), just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU. Throughout the PIP process, she was bullied and subjected to treatment that her co-workers who had not reported discriminatory conduct did not receive and the PIP was extended repeatedly. Following her successful completion of the PIP, Ms. Abraham was denied the opportunity to have a year-end evaluation and was therefore denied the ability to obtain a raise at the beginning of 2017, Under these circumstances, she was harassed continuously from the time she reported her concerns until the time of her constructive discharge in retaliation for reporting racial, gender, and sexual orientation discrimination in her workplace, in violation of the Illinois Human Rights Act, 775 ILCS § 5/2-101, et seq.

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

**Answer:**     CAU admits that it employed Plaintiff for on or about 17 years, and that she was placed on a performance improvement plan in or about March 2016.  CAU denies the remaining allegations of this paragraph and each of them.

2.     On March 3, 2017, Ms. Abraham filed a Charge of Discrimination against CAU with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") for the racial discrimination and retaliation she was subjected to by CAU.

**Answer:**     CAU admits that in March 2017 it received a charge of discrimination purportedly filed by Plaintiff on or about March 3, 2017.  CAU denies the remaining allegations of this paragraph and each of them.

3.     The IDHR issued Notice of Dismissal to Ms. Abraham on November 21, 2017, granting Ms. Abraham the right to file a lawsuit in relation to these claims.

**Answer:**     CAU admits that in or about late November 2017, it received a notice of dismissal from the IDHR for lack of jurisdiction.  CAU denies the remaining allegations of this paragraph and each of them.

## PARTIES

4.     Ms. Abraham is a resident of the State of Illinois.

**Answer:**     Admit on information and belief.

5.     Defendant CAU is a not-for-profit company incorporated in Illinois in 1980, providing services to individuals with disabilities, with its principal place of business in Chicago, Illinois. At all times material to this Complaint, CAU was an employer within the definition of the IHRA, 775 ILCS § 5/2-101(B).

**Answer:**     Admit.

2

CAU Removal 000272

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over this matter as each party to the Complaint is a citizen of Illinois or, in the case of CAU, is a corporation doing business in Illinois, organized under the laws of the State of Illinois, 735 ILCS §5/2-209.

**Answer:**     CAU admits that it is a corporation doing business in Illinois and is organized under the laws of the State of Illinois.  CAU denies the remaining allegations of this paragraph and each of them.

7.     Plaintiff has exhausted her administrative remedies, as required by the IHRA, 775 ILCS § 5/1-101 et seq, This lawsuit was timely filed within 90 days of Plaintiffs receipt of the Notice of Dismissal issued by the IDHR and received on November 27, 2017.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

8.     Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and 735 ILCS § 5/2102 because part of the transaction out of which the cause of action arose took place within Cook County, Illinois, and because CAU is considered a resident of Cook County, Illinois, through being authorized to transact business in Illinois and doing business in Cook County, Ms. Abraham's work was largely performed in Cook County and CAU's retaliatory acts took place in Cook County as well.

**Answer:**     CAU admits the venue is proper in this court, that it is authorized to transact business in Illinois, and that it does business in Cook County.  CAU denies the remaining allegations of this paragraph and each of them.

**FACTS**

9.     Ms. Abraham was hired by CAU on or around November 2, 1999 as a case manager. In that role, she typically managed about 75 cases at a time, dealing with disabled

3

CAU Removal 000273

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

individuals and their families to assist them in procuring the needed medical and social services, and was routinely assigned time- and labor-intensive cases which were too difficult for other case managers to handle, All of her performance evaluations, when she received formal performance evaluations, were positive. Her work was initially performed in dealing with individuals who were Living in group homes, as part of the Bogard unit at CAU.

**Answer:** CAU admits that it hired Plaintiff in or around November 2, 1999, and that she initially worked as part of the Bogard unit at CAU. CAU denies the remaining allegations of this paragraph and each of them.

10. When the Bogard unit's staff was decreased due to a declining case load, Ms. Abraham was transferred to the Community department at CAU, where she continued in her role as a case manager. Ms. Abraham was deemed valuable to the company and was told her skill set meant that she would work well in the same role, just in another department. The Community department integrated individuals with developmental disabilities within their communities to obtain needed services and involved a lot of one-on-one contact between the case managers and the clients, which Ms. Abraham was used to from her work on the time- and labor-intensive cases from the Bogard unit.

**Answer:** CAU admits that Plaintiff transitioned from its Bogard unit to its Community department. CAU denies the remaining allegations of this paragraph and each of them.

11. In 2001, she was transferred to the Individual Service and Support Advocacy Unit ("ISSA"), which assisted in providing services for people with intellectual disabilities. There she performed case management work for CAU clients who received services that were funded

4

CAU Removal 000274

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

through Medicaid. In this role, Ms. Abraham continued to receive positive performance reviews, up through the time she applied and received for a promotion to manager in 2007.

**Answer:** CAU admits that in or about 2001 Plaintiff transitioned to its Individual Service and Support Advocacy CILA Unit. CAU denies the remaining allegations of this paragraph and each of them.

12. In 2007, she was promoted to the position of Program Manager for ISSA. She worked in that role for nearly a decade. She was known as a strong advocate for her clients, would supervise the work of the case managers in the Department, and wrote performance evaluations for the people she supervised. She also participated in interviews for new hires in the Department and trained new hires in how to perform work for the ISSA. She served as a resource when the people she supervised needed assistance with their cases and was frequently the go-to person when complicated issues arose. Ms. Abraham held small group meetings at least once per month to manage her staff. She continued to receive positive performance reviews from her supervisors in this role as well.

**Answer:** CAU denies the allegations of this paragraph and each of them.

13. In 2009, she was transferred to Home Based Services ("HBS"), where she performed the Program Manager role in that department, performing the same tasks. In this position, she reported to HBS Department Director, Jennifer Rutka. Though Ms. Rutka insisted that everyone's performance reviews note areas in which an employee could improve, every year, Ms. Abraham still received positive performance reviews, even in her first review completed after moving to HBS, where she had double the workload of other Program Managers for the two-month period when she was transitioning between the ISSA and HBS Departments.

**Answer:** CAU denies the allegations of this paragraph and each of them.

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

14.     It was in her time as Program Manager in FIBS that Ms. Abraham began to hear racially discriminatory, sexist, anti-Semitic, homophobic commentary from her co-workers and especially from her supervisor, Ms. Rutka, who was known for being rude when speaking about people who didn't do things in the exact way she wanted them to, commonly referring to such situations as involving people who would not "comply." Ms. Abraham kept her thoughts and feelings about these remarks to herself out of concern that reporting such conduct would not be well taken.  She simply continued to supervise her staff, and advocate for her clients' best interests.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

15.     Upon information and belief, these comments were not limited to Ms. Abraham's Department, HBS, as CEO Joanell Voigt would comment that she hoped a homosexual employee would not impact the office bathroom situation in any way "because that is ridiculous," and would ask how a homosexual employee could "expect us to respect him" given certain wardrobe choices the employee had supposedly made.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

16.     Upon information and belief, Ms. Voigt was known for making fun of employees or other individuals she suspected of being homosexuals, and for denying the African-American employees the chance to telecommute, while other non-African-American employees had that option. The telecommuting option was supposed to be seniority-based, but the African-American employees were skipped over when it was their turn to be given the telecommuting option.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

17.     On or around March 17, 2016, Ms. Abraham was approached by the HR Director, Ms. Biermann, who said Ms. Abraham was due for a training session. Rather than training,

CAU Removal 000276

however, the session consisted of Ms. Biermann asking Ms. Abraham numerous questions about HBS over the course of an approximately three-hour long meeting. The "training" meeting appeared to be a ruse to give Ms. Biermann the opportunity to gather information about Ms. Abraham.

**Answer:** CAU denies the allegations of this paragraph and each of them.

18. Though she initially was hesitant to engage in the discussion, Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her co-workers and supervisors when speaking about clients and their families. Ms. Rutka specifically commented on a homosexual man who worked with CAU that he was nice, but sometimes she preferred to work with "a man's man." On another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to "Jew us down." Ms. Abraham also shared that such comments were made about others within CAU, as part of the instructions supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress. Finally, she shared that Ms. Rutka in the past engaged in retaliatory conduct and that Ms. Abraham would not participate in such conduct.

**Answer:** CAU denies the allegations of this paragraph and each of them.

19. Upon information and belief, following this meeting, Ms. Biermann reported the substance of her conversation with Ms. Abraham to others at the same level as the HR Director within CAU.

**Answer:** CAU denies the allegations of this paragraph and each of them.

7

CAU Removal 000277

FILED DATE: 9/22/2021 5:41 PM 2018CH02497

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

20.     The very next day, during a managers' meeting that Ms. Abraham attended, Ms. Rutka baited Ms. Abraham into a discussion about the comments Ms. Abraham made to Ms. Biermann the day before and about paperwork Ms. Abraham was supposedly behind in completing. Ms. Abraham stated that she would be caught up on the paperwork within two weeks. The discussion then became very emotional between Ms. Abraham and Ms. Marlene Russo, Ms. Abraham's intermediate supervisor, because Ms. Russo was screaming at Ms. Abraham. Eventually, after Ms. Abraham broke into tears, Ms. Rutka ended the meeting.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

21.     On or around March 21, 2016, less than one week after Ms. Abraham reported the unlawful discriminatory conduct of CAU, Ms. Abraham was called into a meeting in the HR office, attended by Ms. Rutka, Ms. Russo, and Ms. Biermann. Ms. Rutka stated that Ms. Abraham was being placed on a PIP, and then immediately asked if she was going to resign. When Ms. Abraham said she wouldn't resign, the meeting continued with Ms. Biermann stating that they would proceed with the PIP. Ms. Rutka remarked that she did not want to "waste time" with the PIP if Ms. Abraham "was going to quit in two weeks."

**Answer:**     CAU admits that on or about March 21, 2016, Plaintiff was placed in a performance improvement plan.  CAU denies the allegations of this paragraph and each of them.

22.     During the course of the multiple-hour meeting about the PIP, Ms. Abraham was subjected to harsh commentary about the supposed deficiencies with her work, deficiencies which had never been expressed to Ms. Abraham before this meeting. She asked questions to clarify what was being communicated to her about her role, because the information provided in association with the PIP so greatly deviated from the standard operating procedures of CAU,

FIRM:54024430v1

CAU Removal 000278

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

which she had been using for over 15 years at that time, and which she had been following when she received all of her positive performance reviews in years past.

**Answer:**     CAU admits that during the meeting alleged Plaintiff's performance deficiencies were discussed.  CAU denies the remaining allegations of this paragraph and each of them.

23.     In response to her clarifying questions, Ms. Abraham was rudely asked whether she had any common sense and condescending questions such as, "you've been a manager for how long?" She was informed that Ms. Rutka thought staff should not be coming to Ms. Abraham to ask questions if Ms. Abraham doesn't know the answers to their questions, and if not, then "how can [she] manage?" She was also informed that CAU was questioning whether she could be trusted in her Program Manager role in HBS.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

24.     The PIP itself addressed supposed problems which were in fact ongoing issues that were commonly encountered in case management work by all employees working in this area, including issues related to completing the voluminous paperwork involved in case management, and which typically would not have merited placing someone on a PIP.  When Ms. Abraham had needed to speak to a case manager she supervised about similar issues in the past, she would address the issues with the employee, and would not place the employee on a PIP. Ms. Abraham had never heard of anyone at CAU being placed on a PIP for issues such as the ones raised in her PIP.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

9

CAU Removal 000279

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

25.     The PIP also placed unrealistically short time frames on the completion of the objectives of the PIP, especially in consideration of the fact that the PIP demanded Ms. Abraham deviate from the standard operating procedures she had been using for over 15 years.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

26.     These deadlines were known to be extreme by others at CAU. Ms. Abraham overheard other senior managers speaking one day about the deadlines imposed for the completion of her paperwork.  The senior managers were concerned that CAU might hold them to the same standards, and they were commenting that they did not know how they would get their paperwork done if the same deadlines that were imposed on Ms. Abraham were to be imposed on their work.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

27.     Within a few days of receiving the PIP, Ms. Abraham began to receive calls from her clients and their families, who reported that they had been called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

28.     One such call was placed to the Executive Director of an agency HBS worked with, whose child was among the individuals Ms. Abraham assisted with services. The Executive Director mentioned that he told whoever called that Ms. Abraham did wonderful work, and that he was surprised to have received such a call because Ms. Abraham was doing great work for his child.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

FIRM:54024430v1

CAU Removal 000280

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

29.     The PIP was supposed to run for thirty days, after which Ms. Abraham's performance would be reevaluated to determine if she had met the goals set by the PIP. Instead, the PIP period was extended multiple times, so that it actually ran for 90 days, Each time the PIP was extended, new false complaints about Ms. Abraham's performance were added, in an apparent attempt to convince her to stop fighting the PIP and to just resign, as Ms. Rutka had suggested in the initial PIP meeting in March 2016.

**Answer:**     CAU admits that Plaintiff's Performance Improvement Plan was extended at her requests.  CAU denies the remaining allegations of this paragraph and each of them.

30.     While on the PIP, Ms. Abraham was subjected to extreme scrutiny, as she was informed that her "comings and goings" were being monitored by her supervisors, implying that they were keeping her under surveillance while she was at work, She also had her files audited and re-audited, sometimes through multiple managers reviewing the same files over and over again, examining aspects of the files that dated back several months, to dates before the PIP period began.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

31.     During the PIP period, Ms. Abraham frequently worked late into the evening, sometimes as late as 11:00 p.m., to try to complete all of her paperwork and meet the unrealistic deadlines the PIP provided for the completion of her work.  Because Ms. Abraham was salaried, she was not paid any overtime for the extra hours she worked to accomplish the requirements set for her in the PIP.

**Answer:**     CAU admits that Plaintiff was classified as exempt from overtime during the Performance Improvement Plan period.  CAU denies the remaining allegations of this paragraph and each of them.

FIRM:54024430v1

CAU Removal 000281

FILED DATE: 9/22/2021 5:41 PM    2018CH02497

32.     In June 2016, Ms. Abraham was deemed to have successfully completed the PIP.

**Answer:**     Admit.

33.     However, Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with, the people they believed she might confide in, and asked these people questions about her personal life, outside of work, in an attempt to harass her and dig up any information they could use to push her out of the company.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

34.     Following the completion of the PIP, Ms. Abraham was accused multiple times of demanding a promotion, something she never did. She was also threatened that she would be demoted.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

35.     As the end of 2016 approached, CAU refused to provide Ms. Abraham with an annual performance review, which meant that she could not receive a raise in 2017. Instead of conducting a performance review, CAU stated that the PIP took the place of an annual performance review, even though the PIP was successfully completed in June, and half of the year still remained at the time that the PIP was completed. Ms. Biermann stated that this should he acceptable to Ms. Abraham because annual reviews only encouraged managers to discuss negative aspects of an individual's performance, despite the fact that Ms. Abraham's prior annual performance reviews had been positive up to that point in time.

**Answer:**     CAU denies the remaining allegations of this paragraph and each of them.

36.     Under these circumstances, Ms. Abraham went to work every day because she loved her work and enjoyed working with and for her clients. She was subjected to extreme

FIRM:54024430v1

CAU Removal 000282

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

stress and emotional distress on a daily basis, though, through CAU's treatment of her. Though it was difficult to leave the career she had built over the course of 17 years, Ms. Abraham was subjected to such conditions in her everyday life at CAU that she eventually resigned in December of 2016 because it was obvious that CAU would continue to engage in conduct designed to force her to resign her position. She provided 30 days of notice to ease the transition of her clients to other staff at CAU. Not surprisingly, CAU made no effort to talk Ms. Abraham into staying.

**Answer:**     CAU admits that Plaintiff resigned in or about December of 2016.  CAU denies the remaining allegations of this paragraph and each of them.

37.     Finally, after she learned that Ms. Abraham had filed a Charge of Discrimination related to her encounters with CAU, Ms. Biennann contacted Ms. Abraham and suggested that she would be taking leave from her position at CAU because she had come to experience similar retaliation for looking into the complaint made by Ms. Abraham and the statements shared by Ms. Abraham in the March 2016 meeting.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

## COUNT I — UNLAWFUL RETALIATION FOR OPPOSING UNLAWFUL CONDUCT, IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

38.     Plaintiff restates and realleges by reference paragraphs 1 through 37 as paragraph 38 of Count I.

**Answer:**     CAU restates and realleges by reference its answers to paragraphs 1 through 37 as its answer to paragraph 38 of Count I.

39.     CAU is an employer as defined by the Illinois Human Rights Act, 775 ILCS § 5/1-101 et seq., which prohibits retaliation for opposing unlawful conduct.

**Answer:**     Admit.

13

CAU Removal 000283

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

40.     Ms. Abraham engaged in activity that is protected by the Illinois Human Rights Act when she reported to HR the racist, sexist, anti-Semitic, and homophobic conduct and statements of her co-workers in her Department.

**Answer:**      CAU denies the allegations of this paragraph and each of them.

41.     CAU placed Ms. Abraham on a PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to convince her to resign, None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to similar unfavorable terms and conditions in employment as Ms. Abraham designed to force her to resign.

**Answer:**      CAU admits that it placed Plaintiff on a Performance Improvement Plan. CAU denies the remaining allegations of this paragraph and each of them.

42.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

**Answer:**      CAU denies the allegations of this paragraph and each of them.

43.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had their clients and clients'

14

CAU Removal 000284

FILED DATE: 9/22/2021 5:41 PM    2018CH02497

families called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

**Answer:**    CAU denies the allegations of this paragraph and each of them.

44.    Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had PIPs which were supposed to last for thirty days but were extended to the point that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

**Answer:**    CAU denies the allegations of this paragraph and each of them.

45.    Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her ides audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

**Answer:**    CAU denies the allegations of this paragraph and each of them.

FIRM:54024430v1

CAU Removal 000285

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

46.     Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP, None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to mistreatment by their supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

47.     Ms. Abraham was demanding falsely accused of a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were falsely accused of demanding a promotion or threatened that they would be demoted.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

48.     Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act was denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

16

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

49.     Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

50.     As a direct and proximate result of the Defendant's conduct, Ms. Abraham has suffered damages, including but not limited to, pain and suffering, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

**Answer:**     CAU denies the allegations of this paragraph and each of them.

**WHEREFORE** Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A.     An award of damages for lost wages, including back pay and front pay;

B.     An award of compensatory damages including pain and suffering and emotional distress;

C.     An award of pre-judgment interest;

D.     An award of punitive damages;

E.     Attorneys' fees and costs; and

F.     Such other and further relief as may be just in law and in equity.

**Answer:**     CAU denies that Plaintiff is entitled to any judgment, damages or recovery, and prays for judgment in its favor and payment by Plaintiff of all applicable fees and costs.

FIRM:54024430v1

CAU Removal 000287

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

## AFFIRMATIVE DEFENSES

Based on the knowledge and information available to date, CAU asserts the following affirmative and additional defenses to Plaintiff's Complaint. CAU reserves the right to assert other defenses or claims when and if they become appropriate and/or available in this action. All such defenses are pled in the alternative where appropriate and do not constitute an admission of liability or that Plaintiff is entitled to any relief whatsoever. CAU further does not admit that it has the burden of proof on any of the defenses alleged in this Answer:

### First Defense: Failure to Exhaust Administrative Remedies

1.     775 ILCS 5/7A-102(a-1)(1)(iv) provides that a complainant "must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant."

2.     In or about March 2017 Plaintiff filed an administrative charge of discrimination that was cross-filed with the IDHR and the EEOC.

3.     In or about June 2017 the EEOC made a determination on Plaintiff's charge, determining that it "was unable to conclude that the information obtained establishes violations of the statutes."

4.     Plaintiff failed to submit a copy of the EEOC's determination to the IDHR within 30 days after receiving it from the EEOC.

5.     Plaintiff did submit a copy of the EEOC's determination to the IDHR, but submitted it more than 30 days after receiving it from the EEOC.

6.     Because Plaintiff failed to submit a copy of the EEOC's determination the IDHR within 30 days after submitting it, the IDHR lacked statutory authority to investigate the charge.

7.     The IDHR dismissed Plaintiff's charge for lack of jurisdiction.

FIRM:54024430v1

CAU Removal 000288

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

8.      Plaintiff therefore failed to exhaust her administrative remedies under the IHRA.

### Second Defense:  Mitigation / Failure to Mitigate

9.      Plaintiff has a duty to mitigate her alleged damages.

10.     On information and belief, Plaintiff mitigated all or part of her damages by obtaining employment after resigning from CAU.  In the alternative, Plaintiff failed to mitigate her damages by failing to take reasonable steps to obtain employment after resigning from CAU.

11.     Plaintiff's claim for damages is barred in whole or in part by her mitigation of damages.  In the alternative, Plaintiff's claim for damages is barred by her failure to mitigate her damages.

### Third Defense:  Good Faith

12.     Assuming any of Plaintiff's rights protected by the IHRA were violated, CAU is no liable for punitive damages because any improper acts on the part of its employees were contrary to CAU's good faith efforts to comply with the IHRA.

13.     CAU had in place during Plaintiff's employment policies and programs designed to prevent violations of the IHRA in the workplace.

14.     Plaintiff's request for punitive damages is therefore barred claim because any improper acts or decisions were contrary to CAU's good-faith efforts to comply with the IHRA.

### Fourth Defense:  CAU Was Not Aware of the Alleged Conduct
### and Did Not Fail to Take Corrective Measures

15.     Plaintiff's claims are barred to the extent they are based on conduct by nonmanagerial or nonsupervisory employees.

16.     CAU was never made aware of any improper conduct by any nonmanagerial or nonsupervisory employees.

FIRM:54024430v1

CAU Removal 000289

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

17.     In the alternative, to the extent CAU was made aware of any improper conduct, it did not fail to take reasonable corrective measures.

### Fifth Defense:  Statue of Limitations

18.     Plaintiff filed her administrative charge of discrimination or about March 2017.

19.     The IHRA requires an administrative charge to be filed within 300 days of an allegedly discriminatory act or conduct.

20.     To the extent Plaintiff's claims are based on alleged acts or conduct that occurred more than 300 days before she filed her administrative charge, such claims are time-barred.

Wherefore, CAU prays that Plaintiff take nothing by her complaint, that judgment be entered in favor of CAU and against Plaintiff, and that Plaintiff be required to pay all applicable fees and costs incurred by Defendant.

Dated: September 22, 2021

Respectfully submitted,

COMMUNITY ALTERNATIVES UNLIMITED

By: /s/ Brian E. Spang
        One of their attorneys

Peter A. Steinmeyer
Brian E. Spang
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
(312) 499-1400
psteinmeyer@ebglaw.com
bspang@ebglaw.com
Attorney ID# 18494

FIRM:54024430v1

CAU Removal 000290

FILED DATE: 9/22/2021 5:41 PM   2018CH02497

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the foregoing via email and the Court's electronic filing system the 22nd day of September 2021 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603
rmajor@major-law.com

/s/ Brian E. Spang

21

CAU Removal 000291



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

MICHELLE ABRAHAM,          )
                           )
        Plaintiff,          )
                           )
     v.                     )     Case No. 2018-CH-02497
                           )     Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED, )     Honorable Anna M. Loftus
                           )     Judge Presiding
        Defendant.       )

### ORDER ON STATUS AND SETTING BRIEFING SCHEDULE

This cause came before the Court on September 29, 2021 at 10:00 a.m. for a status conference and on notice of Defendant's Motion to Reconsider the Memorandum Opinion and Order Dated August 18, 2021 That Denied Defendant's Section 2-619 Motion to Dismiss Or, Alternatively, For Certification of a Dispositive Question of Law For an Interlocutory Appeal, filed on September 17, 2021. The Court having held the hearing via Zoom,

IT IS HEREBY ORDERED:

1.     Plaintiff shall file her opposition to Defendant's Motion to Reconsider on or before November 17, 2021.

2.     Defendant shall file its reply in support of its Motion to Reconsider on or before December 7, 2021.

3.     Oral argument on Defendant's Motion to Reconsider shall be heard on February 8, 2022 at 10:30 a.m. via Zoom (Meeting ID: 955 3557 3920   No Password Required).

4.     Pursuant to the Court's Standing Order and the Court's statements in open Court, Defendant shall be responsible for submitting a courtesy copy of all briefing papers on the date it files its reply brief via email to the Court at Calendar15.Chancery@cookcountyil.gov, copying

counsel for Plaintiff. The courtesy copies shall include all briefing on the Motion to Reconsider, all briefing on the original Motion to dismiss, and the Complaint.

ENTERED:

/s/ *Anna M. Loftus*

Judge Anna M. Loftus, No. 2102

Judge Anna M. Loftus
SEP 29 2021
Circuit Court- 2102

Brian E. Spang, Esq.
Epstein Becker & Green, P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois 60606
bspang@ebglaw.com
(312) 499-1462
Firm I.D. No. 18494
Counsel for Defendant

2

CAU Removal 000293

FILED DATE: 10/13/2021 4:15 PM   2018CH02497

FILED
10/13/2021 4:15 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15192333

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2018 CH 02497** |
| | ) | |
| **COMMUNITY ALTERNATIVES** | ) | **Honorable Judge Anna M. Loftus** |
| **UNLIMITED,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>NOTICE OF FILING</u>

TO:   Peter A. Steinmeyer, Brian E. Spang, EPSTEIN BECKER & GREEN, P.C., 227 W.
Monroe St. – Ste. 3250 Chicago, IL 60606
psteinmeyer@ebglaw.com; bspang@ebglaw.com

**Please take notice** that on Wednesday, October 13, 2021, counsel for Plaintiff electronically filed with the Clerk of the Circuit Court of Cook County **Plaintiff's Answers to Affirmative Defenses of Defendant,** a true and correct copy of which is hereby served upon you.

Respectfully submitted,

**Dated**: October 13, 2021                      **MICHELLE ABRAHAM**


 /s/ Ruth I. Major
One of His Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000294

FILED DATE: 10/13/2021 4:15 PM   2018CH02497

FILED
10/13/2021 4:15 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15192333

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **MICHELLE ABRAHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 18-CH-02497** |
| ) | |
| **COMMUNITY ALTERNATIVES** ) | |
| **UNLIMITED,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## PLAINTIFF'S ANSWERS TO AFFIRMATIVE DEFENSES OF DEFENDANT

NOW COMES Plaintiff, Michelle Abraham, by her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Response to Affirmative Defenses of Defendant, Community Alternatives Unlimited ("CAU"), states as follows:

## FIRST DEFENSE:  FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

1.      775 ILCS 5/7A-102(a-1)(1)(iv) provides that a complainant "must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant."

**ANSWER:** Denied. The referenced section only provides obligations on the Department, not on the complainant.

2.      In or about March 2017 Plaintiff filed an administrative charge of discrimination that was cross-filed with the IDHR and the EEOC.

**ANSWER:** Admitted.

1

CAU Removal 000295

FILED DATE: 10/13/2021 4:15 PM   2018CH02497

3.      In or about June 2017 the EEOC made a determination on Plaintiff's charge, determining that it "was unable to conclude that the information obtained establishes violations of the statutes."

**ANSWER:** Admitted.

4.      Plaintiff failed to submit a copy of the EEOC's determination to the IDHR within 30 days after receiving it from the EEOC.

**ANSWER:** Admitted.

5.      Plaintiff did submit a copy of the EEOC's determination to the IDHR, but submitted it more than 30 days after receiving it from the EEOC.

**ANSWER:** Denied.

6.      Because Plaintiff failed to submit a copy of the EEOC's determination the [sic] IDHR within 30 days after submitting it, the IDHR lacked statutory authority to investigate the charge.

**ANSWER:** Paragraph 6 of the First Affirmative Defense calls for a legal conclusion to which no response is required.

7.      The IDHR dismissed Plaintiff's charge for lack of jurisdiction.

**ANSWER:** Admitted.

8.      Plaintiff therefore failed to exhaust her administrative remedies under the IHRA.

**ANSWER:** Denied.

### SECOND DEFENSE:  MITIGATION/FAILURE TO MITIGATE

9.      Plaintiff has a duty to mitigate her alleged damages.

**ANSWER:** Paragraph 9 of the Second Affirmative Defense calls for a legal conclusion to which no response is required.

2

FILED DATE: 10/13/2021 4:15 PM   2018CH02497

10.     On information and belief, Plaintiff mitigated all or part of her damages by obtaining employment after resigning from CAU.  In the alternative, Plaintiff failed to mitigate her damages by failing to take reasonable steps to obtain employment after resigning from CAU.

**ANSWER:** Denied. Only the wages component of her damages can be mitigated.

11.     Plaintiff's claim for damages is barred in whole or in part by her mitigation of damages.  In the alternative, Plaintiff's claim for damages is barred by her failure to mitigate her damages.

**ANSWER:** Denied.

### THIRD DEFENSE:  GOOD FAITH

12.     Assuming any of Plaintiff's rights protected by the IHRA were violated, CAU is no [sic] liable for punitive damages because any improper acts on the part of its employees were contrary to CAU's good faith efforts to comply with the IHRA.

**ANSWER:** Denied.

13.     CAU had in place during Plaintiff's employment policies and programs designed to prevent violations of the IHRA in the workplace.

**ANSWER:** Denied to the extent CAU had any policies and programs in place as they were ineffective. Further, there is no defendant under the IHRA where the bad actor is a supervisor.

14.     Plaintiff's request for punitive damages is therefore barred claim because any improper acts or decisions were contrary to CAU's good-faith efforts to comply with the IHRA.

**ANSWER:** Denied.

CAU Removal 000297

FILED DATE: 10/13/2021 4:15 PM    2018CH02497

## FOURTH DEFENSE: CAU WAS NOT AWARE OF THE ALLEGED CONDUCT AND DID NOT FAIL TO TAKE CORRECTIVE MEASURES

15.     Plaintiff's claims are barred to the extent they are based on conduct by nonmanagerial or nonsupervisory employees.

**ANSWER:** Paragraph 15 of the Fourth Affirmative Defense calls for a legal conclusion to which no response is required. Further, denied because Plaintiff was reporting the conduct and Defendant failed to take action to correct or prevent further conduct.

16.     CAU was never made aware of any improper conduct by any nonmanagerial or nonsupervisory employees.

**ANSWER:** Denied.

17.     In the alternative, to the extent CAU was made aware of any improper conduct, it did not fail to take reasonable corrective measures.

**ANSWER:** Denied.

## FIFTH DEFENSE: STATUE OF LIMITATIONS

18.     Plaintiff filed her administrative charge of discrimination or about March 2017.

**ANSWER:** Admitted.

19.     The IHRA requires an administrative charge to be filed within 300 days of an allegedly discriminatory act or conduct.

**ANSWER:** Admitted.

20.     To the extent Plaintiff's claims are based on alleged acts or conduct that occurred more than 300 days before she filed her administrative charge, such claims are time-barred.

**ANSWER:** Paragraph 20 of the Fifth Affirmative Defense calls for a legal conclusion to which no response is required.

CAU Removal 000298

FILED DATE: 10/13/2021 4:15 PM  2018CH02497

WHEREFORE, Plaintiff, Michelle Abraham prays this honorable Court deny Defendant's Affirmative Defenses and requests the entry of judgment in her favor and against Defendant CAU as follows:

A.      An award of damages for lost wages, including back pay and front pay;

B.      An award of compensatory damages including pain and suffering and emotional distress;

C.      An award of pre-judgment interest;

D.      An award of punitive damages;

E.      Attorneys' fees and costs; and

F.      Such other and further relief as may be just in law and in equity.

Respectfully submitted,

**Dated**: October 13, 2021                         **MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Monroe Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

5

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| **MICHELLE ABRAHAM,** | ) | 15646926 |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| **v.** | ) | **Case No. 2018 CH 02497** |
|  | ) |  |
| **COMMUNITY ALTERNATIVES** | ) | **Hon. Anna M. Loftus** |
| **UNLIMITED,** | ) | **Judge Presiding** |
|  | ) |  |
| **Defendant.** | ) |  |

### NOTICE OF FILING

TO:   Peter A. Steinmeyer, Brian E. Spang, EPSTEIN BECKER & GREEN, P.C., 227 W.
Monroe St. – Ste. 3250 Chicago, IL 60606
psteinmeyer@ebglaw.com; bspang@ebglaw.com

**Please take notice** that on Wednesday, November 17, 2021, counsel for Plaintiff electronically filed with the Clerk of the Circuit Court of Cook County **Plaintiff's Response in Opposition to Defendant's Motion to Reconsider and for an Interlocutory Appeal,** a true and correct copy of which is hereby served upon you.

Respectfully submitted,

**Dated**: November 17, 2021                    **MICHELLE ABRAHAM**

_/s/ Ruth I. Major_____
One of His Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000300

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15646926

| | |
|---|---|
| **MICHELLE ABRAHAM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 2018-CH-02497** |
| | ) |
| **COMMUNITY ALTERNATIVES** | ) **Hon. Anna M. Loftus** |
| **UNLIMITED,** | ) **Judge Presiding** |
| | ) |
| **Defendant.** | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO RECONSIDER AND FOR AN INTERLOCUTORY APPEAL**

Plaintiff, Michelle Abraham, by her attorneys, for her Response in Opposition to Defendant's Motion to Reconsider and for an Interlocutory Appeal, states as follows:

**INTRODUCTION**

After unsuccessfully moving to dismiss Plaintiff's complaint, Defendant is back again, making the same arguments and disregarding the same controlling statutory language and case law. Section 775 ILCS 5/7A-102(C)(4) of the Illinois Human Rights Act ("IHRA") specifically provides that the notice of dismissal issued by the Director "shall give the complainant notice of his or her <u>right</u> to seek review of the dismissal before the Human Rights Commission or <u>commence a civil action in the appropriate circuit court</u>." This language could not be clearer. Complainant received the notice of dismissal, was advised of her right to commence a civil action in the appropriate circuit court, and then did so in the 90-day timeframe established under the IHRA. Defendant urges this Court to ignore the clear language of the statute. This motion should also be dismissed.

1

CAU Removal 000301

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

## STATEMENT OF FACTS

Plaintiff's charge of employment discrimination was dual filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR" or the "Department") on March 3, 2017.  On May 1, 2017, the IDHR sent Plaintiff a notification letter informing Plaintiff that the charge had been dual filed with the IDHR, a copy of which is attached hereto as **Exhibit A.** The EEOC issued a right to sue and dismissal on June 2, 2017, a copy of which is attached hereto as **Exhibit B**  After retaining counsel Plaintiff provided the EEOC's determination to the IDHR on September 8, 2017 requesting a dismissal and right to sue, copies of which is attached hereto as **Exhibit C** and **Exhibit D**, ¶ 4, respectively. The IDHR's Notice of Dismissal for Lack of Jurisdiction ("Notice of Dismissal") to Plaintiff was received on November 27, 2017, a copy of which is attached hereto as **Exhibit E**, granting Plaintiff the right to either (i) seek review of the IDHR's decision with the Illinois Human Rights Commission ("IHRC" or the "Commission") or (ii) file a lawsuit in Court in relation to these claims, within 90 days of her receipt of the Notice from the IDHR.

## ARGUMENT

### 1. The IHRA Provides Two Paths for a Complainant When a Copy of an EEOC Determination is Not Submitted to the IDHR Within 30 Days

The issue before this Court, again, is determining the consequences under the Illinois Human Rights Act when the EEOC's Notice of Dismissal and Right to Sue is not provided by the charging party to the IDHR within 30 days.  The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook,* 191 Ill.2d 493, 503–04, 247 Ill.Dec. 473, 732 N.E.2d 528 (2000).  Illinois courts must determine legislative intent by examining the language of the statute, which is "the most reliable indicator of the legislature's objectives in enacting a particular law." *Michigan Avenue National*

2

CAU Removal 000302

*Bank,* 191 Ill.2d at 504, 247 Ill.Dec. 473, 732 N.E.2d 528. All provisions of a statutory enactment are viewed as a whole. *People ex rel. Sherman v. Cryns,* 203 Ill.2d 264, 279, 271 Ill.Dec. 881, 786 N.E.2d 139 (2003). Accordingly, words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *Cryns,* 203 Ill.2d at 279–80, 271 Ill.Dec. 881, 786 N.E.2d 139. Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous. *Cryns,* 203 Ill.2d at 280, 271 Ill.Dec. 881, 786 N.E.2d 139. In determining the intent of the legislature, a court may consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Cryns,* 203 Ill.2d at 280, 271 Ill.Dec. 881, 786 N.E.2d 139. "Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Board of Education,* 142 Ill.2d 54, 96, 153 Ill.Dec. 177, 566 N.E.2d 1283 (1990).

The Illinois Human Rights Act ("IHRA") clearly outlines the process and options for a complainant who receives a Notice for Dismissal:

> Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference, unless prior to 365 days after the date on which the charge was filed the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed, <u>the charge has been dismissed for lack of jurisdiction</u>, or the parties voluntarily and in writing agree to waive the fact finding conference … <u>The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court.</u> If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. <u>If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court.</u> <u>If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.</u>

CAU Removal 000303

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

775 ILCS 5/7A-102(C)(4). This section of the statute provides a complainant's options upon receiving a Notice of Dismissal from the IDHR. The complainant may either seek a review of the IDHR's determination with the Illinois Commission of Human Rights (the "Administrative Path"), which allows a review (i.e., an appeal) of the IDHR's dismissal of the complainant's claim as untimely, or commence a civil action on the merits (the "Judicial Path"). Here, Abraham timely commenced a civil action through the Judicial Path on February 23, 2018, which was within 90 days of her receipt of the Notice of Dismissal. (Exs. C, D to Defendant's Motion to Dismiss).

**2. This Court's Decision Denying Defendant's Motion to Dismiss Aligns with First District Precedent, Federal Caselaw, the IHRA, and the IDHR's Determination that Plaintiff Could File an Action in Court Based on the Merits of Plaintiff's Claim**

This Court's determination that the IHRA's Notice of Dismissal was a final decision, and that Plaintiff has exhausted her administrative remedy is correct as a matter of law. *Laurie v. BeDell*, which the Court relied on in its decision to deny Defendant's motion to dismiss, is exactly on point. *Laurie v. BeDell,* No. 16-759-DRH-RJD, 2017 WL 1076940, at *2 (S.D. Ill. Mar. 22, 2017). In *Laurie*, when the plaintiff failed to forward the IDHR a copy of the EEOC's findings within the prescribed time, the IDHR issued the plaintiff a "Notice of Dismissal for Lack of Jurisdiction" giving the plaintiff a right to "(a) seek review of this dismissal before the Illinois Human Rights Commission" or "(b) commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice," just like the Notice for Lack of Jurisdiction Plaintiff received in this case. *Laurie v. BeDell,* No. 16-759-DRH-RJD, 2017 WL 1076940, at *2 (S.D. Ill. Mar. 22, 2017).

Based on the language of 775 ILCS 5/7A-102(C)(4), the federal court in *Laurie* concluded that the IHRA allows "complainants to proceed in court after receiving a Notice of Dismissal." *Laurie* at *4. The court found that the plaintiff met the requirements of the IHRA by filing a civil

4

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

action in court within 90 days of receiving the IDHR's Notice of Dismissal and denied the defendant's motion to dismiss based on failure to exhaust administrative remedies under the IHRA. *Id.* at \*13.

This Court also correctly found that a Notice of Dismissal was exhaustion of remedies under *Robinson v. Vill. Of Oak Park*, 2013 IL App (1st) 121220. *Robinson* also cited the appropriate section of the IHRA, 775 ILCS 5/7A-102(C)(4), in explaining that a complainant may either request the Illinois Commission of Human Rights to review the IDHR's determination, or seek a jury trial on the merits of the complainant's claim. *Robinson v. Vill. of Oak Park,* 2013 IL App (1st) 121220, ¶ 5, 990 N.E.2d 251, 254.

Here, the EEOC issued a Notice of Dismissal to Plaintiff on June 2, 2017, finding that the information obtained during its investigation did not establish a violation of applicable statutes. The EEOC issued Plaintiff a Notice of Dismissal and Right to Sue on June 2, 2017. Plaintiff did not forward the EEOC's determination to the IDHR until September 8, 2017. (Ex. C; Ex. D, ¶ 4). The IDHR responded with a Notice of Dismissal which grants a complainant, such as Abraham, the right to either (i) seek review of the IDHR's decision with the Illinois Human Rights Commission ("IHRC"), or (ii) file a lawsuit in Court in relation to these claims, within 90 days of her receipt of the Notice of Dismissal from the IDHR. (Ex. E). Abraham timely filed her Complaint on February 23, 2018, which was within 90 days of her receipt of the Notice of Dismissal. (Exs. C, D to Defendant's Motion to Dismiss).

This Court correctly decided that the IDHR's Notice granting Plaintiff 90 days to file an action in civil court is consistent with the language in both 775 ILCS 5/7A-102(A-1)(3)(a), and 775 ILCS 5/7A-102(C)(4), permitting the Plaintiff in this situation to commence an action in civil court based on the merits of Plaintiff's claim under the Judicial Path of the IHRA.

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

**3.  The Cases Relied on by Defendant are Either Distinguishable or Contrary to Controlling Precedent or Both**

Defendant argues that based on the language of the 775 ILCS 5/7A-102 *et seq.* ("IHRA"), Plaintiff failed to exhaust her administrative remedies by failing to forward a copy of the EEOC's determination to the IHRA within 30 days of receipt.  Defendant's argument, which is identical to its argument at motion to dismiss, cites cases that are either distinguishable because they involve parties who chose the Administrative Path, or are contrary to controlling precedent because they focus on only portions of the IHRA rather than the whole.

**a.  *Bumphus Involved a Complainant Taking the Administrative Path.***

Defendant asks the court to expand *Bumphus'* holding beyond the scope of what that decision stood for.  *Bumphus v. Illinois Hum. Rts. Comm'n*, 2021 IL App (5th) 200037-U, ¶ 6, appeal denied, 169 N.E.3d 329 (Ill. 2021). *Bumphus* involved a complainant seeking relief under the IHRA solely through the Administrative Path.  After receiving the dismissal and right to sue from the EEOC, Bumphus sought an <u>investigation</u> by the IDHR outside of the 30-day period. The IDHR denied his request for an <u>investigation</u> under Section 7A-102(A-1)(1) and dismissed the charge. Bumphus did not seek to pursue his IHRA claims in the circuit court, as Abraham has here, but rather sought review of the IDHR's dismissal before the Commission. He lost. Bumphus then appealed the Commission's decision to the Second District Appellate Court which on its own accord transferred the appeal to the Fifth District Appellate Court. *Bumphus*, fn. 5. Bumphus never sought review of his case on the merits in a circuit court. He never appeared in the circuit court. The *Bumphus* decision never addresses the issue before this Court, which is whether a complainant such as Bumphus could have pursued his claim in the circuit court. *Bumphus* simply stands for the proposition that a complainant who fails to submit the EEOC dismissal to the IDHR within 30

CAU Removal 000306

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

days loses the opportunity to pursue further <u>administrative relief</u> in the form of an investigation. It has no relevance here.

### b. *Donald v. City of Chicago* Misapplied the Holding of *Bumphus* and Failed to Consider the IHRA as a Whole

In *Donald v. City of Chicago*, the court misapplied the holding of *Bumphus*, which involved a complainant seeking relief solely through the Administrative Path, by extending the holding to a case involving a complainant that sought to litigate the merits of the IHRA claim in court. *Donald v. City of Chicago,* No. 20-CV-6815, 2021 WL 1946335, at *4 (N.D. Ill. May 14, 2021). The court in *Donald* did not consider the IHRA as a whole, instead focusing solely on 775 ILCS 5/7A-102(A-1)(1)(iv), the section that deals specifically with limitations on further administrative relief. *Bumphus* 2021 IL App (5th) 200037-U, ¶ 17-18.

After focusing solely on the wrong provision, the *Donald* court doubled down by erroneously finding that the IDHR acted without authority and therefore the right to sue was "without legal effect". This decision essentially eviscerates the language in the IHRA which specifically provides that even in cases where the IDHR issues a right to sue based on "lack of jurisdiction", "[t]he notice of dismissal issued by the Director shall give the complainant notice of <u>his or her right</u> to seek review of the dismissal before the Human Rights Commission <u>or commence a civil action in the appropriate circuit court</u>." 775 ILCS 5/7A-102(C)(4) (emphasis added); see also *Robinson v. Vill. of Oak Park,* 2013 IL App (1st) 121220, ¶ 5, 990 N.E.2d 251, 254. The *Donald* court refused to follow its sister court in *Laurie,* not because *Laurie* was wrong, but because the *Donald* court erroneously focused on a single provision of the IHRA to the exclusion of the rest of the statute.

CAU Removal 000307

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

### c. The Other Cases Defendant Relies on are Not Controlling Precedent and The Courts Did Not Rely on The Correct Provisions of The IHRA in Each Situation

In *Jafri v. Signal Funding LLC,* No. 19 C 645, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019), the court ignored the Judicial Path entirely. In fact, although plaintiff cited *Laurie* for the contention that plaintiff was proceeding through the Judicial Path, the court did not even mention the provision which grants the plaintiff the right to bring a complaint in circuit court on the merits in this situation, 775 ILCS 5/7A-102(C)(4). Instead, the court focused entirely on the Administrative Path and the plaintiff's obligation to forward the EEOC's determination to the IDHR if the plaintiff wants to pursue the Administrative Path but then applied those provisions to the Judicial Path plaintiff had chosen. *Jafri v. Signal Funding LLC,* No. 19 C 645, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019).

The other cases Defendant relies on, which are not controlling precedent, were all decided by the same federal judge. The decisions, *Ball v. Roeslein & Assocs., Inc.,* No. 20-CV-00045-NJR, 2020 WL 4673136, at *7 (S.D. Ill. Aug. 12, 2020), *Jones v. T.J. MAXX OF IL, LLC,* No. 3:20-CV-5-NJR, 2021 WL 1966115, at *6 (S.D. Ill. May 17, 2021), and *Prusaczyk v. Hamilton Cty. Coal, LLC,* No. 3:20-CV-73-NJR, 2020 WL 5981377, at *2 (S.D. Ill. Oct. 8, 2020), similarly ignore the language of 775 ILCS 5/7A-102(C)(4), and instead focus on the provisions relating to the IDHR's authority to investigate or take further action.

### d. Defendant Relies on Statutory Provisions Which, When Considered as a Whole, Fail to Support a Reversal of this Court's Decision Denying the Motion to Dismiss.

The Defendant first relies on "Section 7-102(A-1)(2)", which has been renumbered as Section 5/7A-102(A-1)(1)(iv) since 1989. Defendant argues this section creates an obligation on Complainant and purportedly claims that failure to do so means the complainant loses their right to pursue the matter in the circuit court. However, Defendant omits the beginning of the sentence. The entire sentence is:

CAU Removal 000308

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

In such cases, after receiving notice from the EEOC that a charge was filed, **the Department shall notify the parties that** . . .(iv) the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant.

775 ILCS 5/7A-102(A-1)(1) (emphasis added). This provision places an obligation on the Department, IDHR (i.e., the Department shall notify the parties"), not the complainant. The question then becomes what did the notification from the IDHR required to send under 775 ILCS 5/7A-102(A-1)(1) advise Abraham concerning the consequences for not sending the EEOC determination within 30 days. First, the notification made clear that when a charge is dual-filed with the EEOC, "the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC." (Ex. A). In other words, for the purposes of a dual-filed charge when the charge is filed with the EEOC, the EEOC's investigation is deemed sufficient to satisfy the investigatory requirements of both agencies. Next, the notification stated, "The Department will take no action on your charge until the EEOC issues its findings." That is consistent with the first statement that the investigation will be conducted by the EEOC. Next, the notification explains, "After the EEOC issues its findings, if you want the Department to take further action on your charge you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you. (Ex. A). Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number." This makes clear that by "action" the Department means further investigation. Otherwise, the letter would direct the person to request the Department "investigate your charge or take other action" which it does not. The whole point of this process is that pursuant to the cooperative agreement only one agency will investigate, and that a second investigation only occurs if the party seeks a second investigation upon timely request. Further, the letter states "Your failure to timely provide the EEOC's findings to the

9

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

Department will <u>result only in the Department closing your file</u>." (Ex. A). There is nothing in the language here that indicates that a complainant that does not send the EEOC determination letter to the IDHR within 30 days loses his or her claim, or can't proceed in the circuit court, or is otherwise limited in pursuing the IHRA claims in court once the IDHR closes the file. It only provides that the IDHR will not *investigate* and will close the *file*.

After the EEOC issued its determination, Abraham made an untimely request to have the charge <u>investigated</u> by the IDHR. In an "<u>Investigation Report</u>," the IDHR rightfully stated that it would not investigate because the request was untimely but then advised Abraham that she could "commence a civil action in the appropriate circuit court within ninety (90) days", which she did. In other words, again the only consequence of not submitting the EEOC within the 30 days is that a second investigation will not be conducted by the IDHR, not that the complainant loses the right to pursue her claim in the circuit court. The IDHR makes clear in the letter that the state remedies available in court remain an option for complainant. In comparison, see 775 ILCS 5/7A-103(D) which provides that in certain circumstances where a complainant fails to accept a settlement offer, the IDHR shall dismiss a charge and the complainant "shall have 30 days from receipt of notice to file a request for review by the Commission" with no discussion of any right to commence an action in the circuit court. 775 ILCS 5/7A-103(D). This is because in those situations the IDHR has determined that the "respondent has eliminated the effects of the civil rights violation charged, or has offered terms of settlement sufficient to eliminated same."

In contrast, when the dismissal is based on a request for a second investigation not having been requested in a timely manner after one investigation has already been conducted (by the EEOC), the effects of the civil rights violation have not been eliminated and the complainant is permitted to proceed in the circuit court on the merits as per the IDHR's notice to Abraham (or

CAU Removal 000310

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

given 90 days to see review with the Commission). If the IDHR was not permitting complainant to pursue the state remedies in the circuit court, it would use the same language used under 775 ILCS 5/7A-103(D) and notify the complainant only of the right to seek review before the Commission. Instead, the IDHR notified Abraham of her rights pursuant to 775 ILCS 5/7A-102(D), which specifically concerns charges that have been investigated (here by the EEOC) and which provides under <u>every subsection</u> that the complainant has the right to commence a civil action in the circuit court. Similarly, 775 ILCS 7A-102(C), which addresses a dismissal for lack of jurisdiction, as here, provides that the complainant has the right to "commence a civil action in the appropriate circuit court within ninety (90) days."

In conclusion, there is simply nothing in the statute or in the IDHR's communications with Abraham which indicate she loses her right to commence a suit in civil court if she does not notify the IDHR of the EEOC's determination within 30 days. Respondent's claim otherwise is made from whole cloth, finding no support in the statutory language or in the IDHR's own notifications.

Defendant also relies on "7-102(A-1)(2)", which has been repealed and renumbered as 775 ILCS 5/7A-102(A-1)(2) since 1989 and provides:

> If the EEOC finds reasonable cause to believe that there has been a violation of federal law and if the Department is timely notified of the EEOC's findings by the complainant, the Department shall notify the complainant that the Department has adopted the EEOC's determination of reasonable cause and that the complainant has the right, within 90 days after receipt of the Department's notice, to either file his or her own complaint with the Illinois Human Rights Commission or commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. This notice shall be provided to the complainant within 10 business days after the Department's receipt of the EEOC's determination. The Department's notice to the complainant that the Department has adopted the EEOC's determination of reasonable cause shall constitute the Department's Report for purposes of subparagraph (D) of this Section.

CAU Removal 000311

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

775 ILCS 5/7A-102. This section addresses a case where the EEOC made a determination there was reasonable cause to believe there has been a violation of federal law. This provision does not relate to this case as the EEOC did not make such a finding.

Defendant next references "Section 7-102(A-1)(3)", which has been renumbered as 5/7A-102(A-1)(3) since 1989 and provides:

> For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by the complainant, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.

775 ILCS 5/7A-102(A-1)(3). This provision does not cover the issue before this Court because the EEOC's determination was not provided to the IDHR within 30 days so it does not apply. This provision only permits the IDHR to adopt the determination of the EEOC if the EEOC determination is provided within 30 days. It does not provide that the Complainant cannot proceed in civil court if the EEOC determination is not provided in 30 days.

The only provision which addresses what occurs when the IDHR dismisses a case for lack of jurisdiction, in this case pursuant to 775 ILCS 5/7A-102(D), is the one provision Defendant ignores. Section 5/7A-102(C)(4) provides that where a charge has been dismissed for "lack of jurisdiction",

> The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for

12

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

> review with the Commission, he or she may not later commence a civil action in a
> circuit court. If the complainant chooses to commence a civil action in a circuit
> court, he or she must do so within 90 days after receipt of the Director's notice.

775 ILCS 5/7A-102(C)(4) (emphasis added). In other words, contrary to the claims of Defendant, a determination that the IDHR lacks jurisdiction does not equate to the complainant losing his or her right to commence a civil action in circuit court. It simply means the IDHR lacks authority to proceed with further action while the right to seek review before the Commission or pursue state remedies by commencing an action in circuit court remain intact.

### e.  The Court Should Not Grant an Interlocutory Appeal

Defendant disagrees with this Court, disagrees with the clear language of the statute, and disagrees with the Illinois Department of Human Rights. Defendant bases its request for interlocutory appeal on a flimsy reed—a split between four federal judges[1]. One federal judge who considered the totality of the statute (the *Laurie* decision), and three federal judges who focused exclusively on the provisions that relate to constraints placed on the IDHR and the IHRC, but not on the courts.

Interlocutory appeals under the certified question rule should be reserved for exceptional circumstances, and the rule should be sparingly used. Ill. Sup. Ct. R. 308(a). *Rozsavolgyi v. City of Aurora,* 2017 IL 121048, 102 N.E.3d 162 (Ill. 2017).

> When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order."

---

[1] The *Bumphus* decision focused solely on administrative remedies available not on whether a complaint could commence an action in the circuit court and accordingly is a red-herring as discussed in more detail above.

CAU Removal 000313

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

Ill. S. Ct. R. 308(a).

A "certified question *must* involve a question of law as to which there is substantial ground for difference of opinion and for which an immediate appeal from the interlocutory order may materially advance the ultimate termination of the litigation." *Rozsavolgyi v. City of Aurora,* 2017 IL 121048, ¶ 31, 102 N.E.3d 162, 171.

The substantial grounds for difference of opinion prong in Rule 308 is satisfied in instances where the question of law had not been directly addressed by the appellate or supreme court (*In re Estate of Kleine*, 2015 IL App (2d) 150063, ¶ 14, 392 Ill.Dec. 70, 32 N.E.3d 70) or where there is a conflict between appellate districts or with the Illinois Supreme Court (*Johannsen v. General Foods Corp.*, 146 Ill. App. 3d 296, 298–99, 99 Ill.Dec. 851, 496 N.E.2d 544 (1986). *Rozsavolgyi v. City of Aurora,* 2017 IL 121048, ¶ 32, 102 N.E.3d 162, 172. Decisions of the lower federal courts are not conclusive over state courts. *People v. Brisbon,* 129 Ill. 2d 200, 224, 544 N.E.2d 297, 308 (1989). On the other hand, "It is the absolute duty of the circuit court to follow the decisions of the appellate court." *U.S. Bank Nat. Ass'n v. Clark,* 348 Ill. App. 3d 856, 863, 807 N.E.2d 1109, 1115 (2004), *rev'd on other grounds*, 216 Ill. 2d 334, 837 N.E.2d 74 (2005). There is no difference of opinion in a question of law when the Illinois appellate courts agree on an issue. *See Rozsavolgyi v. City of Aurora,* 2017 IL 121048, ¶ 32, 102 N.E.3d 162, 172. In the matter at hand there is no difference of opinion between the Illinois appellate courts on this issue and thus, there is no "substantial ground for difference of opinion." Ill. Sup. Ct. R. 308(a); *Rozsavolgyi v. City of Aurora,* 2017 IL 121048, ¶ 32, 102 N.E.3d 162, 172. Here, there is only a difference of opinion is between a handful of federal district courts, which is not a basis to meet the substantial ground for difference of opinion prong of Ill. S. Ct. R. 308(a). *See Rozsavolgyi* 102 N.E.3d at 172.

CAU Removal 000314

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

**WHEREFORE**, for the foregoing reasons, Plaintiff Michelle Abraham respectfully request this Court deny Defendant's motion to reconsider and for certification of a interlocutory appeal.

Respectfully submitted,

**Dated**: November 17, 2021                          **MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Monroe Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

15

CAU Removal 000315

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15646926

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

# EXHIBIT A

CAU Removal 000316

ILLINOIS DEPARTMENT OF

# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

May 1, 2017

Ms. Michelle Abraham
611 East Ironwood Drive
Mt. Prospect, IL 60056

Re: CASE NO: _Michelle Abraham vs. Community Alternatives Unlimited #170428007_

Dear Complainant:

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. **After the EEOC issues its findings**, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's

findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

**By Mail:**   Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:**   Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. **This process does not affect the investigation of your charge at EEOC.** If you do not wish to proceed with the Department, you do not need to take any further action.

This letter **does not apply** to any settlement of this charge the parties have made with the EEOC.

**If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.**

ILLINOIS DEPARTMENT OF HUMAN RIGHTS.

RE1_EEOC 30 Rev 4/17

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463

CC:

Community Alternatives Unlimited
8765 West Higgins
Chicago, IL 60631

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15646926

# EXHIBIT B

CAU Removal 000318

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Michelle Abraham<br>611 E. Ironwood Drive<br>Mount Prospect, IL 60056 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |  |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2017-02387 | Eva Baran,<br>Investigator | (312) 869-8023 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Julianne Bowman

Enclosures(s)

**Julianne Bowman,<br>District Director**

6/2/17

*(Date Mailed)*

cc: **COMMUNITY ALTERNATIVES UNLIMITED**<br>c/o Julie Badel<br>Epstein Becker Green<br>227 West Monroe Street #3250<br>Chicago, IL 60606

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2017-02387 |

Illinois Department Of Human Rights and EEOC
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Michelle Abraham | | 1972 |

Street Address: 611 E. Ironwood Drive, Mount Prospect, IL 60056      City, State and ZIP Code

RECEIVED EEOC
MAR 3 2017
CHICAGO DISTRICT OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COMMUNITY ALTERNATIVES UNLIMITED | 101 - 200 | (773) 867-3000 |

Street Address: 8765 West Higgins, Chicago, IL 60631      City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address      City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
01-31-2017

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or before November 2, 1999. My most recent position was Program Manager. During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent. Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny. I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Mar 03, 2017                     X Michelle S. A<br>Date                     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

FILED DATE: 11/17/2021 6:03 PM 2018CH02497

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15646926

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

# EXHIBIT C

CAU Removal 000321

MajorLaw

THE LAW OFFICES OF RUTH I. MAJOR P.C.

30 W. MONROE STREET, SUITE 1650

CHICAGO, ILLINOIS 60603

OFFICE: 312.893.7544

FAX: 312.698.9867

September 8, 2017

**VIA ELECTRONIC &
CERTIFIED MAIL**

Thomas Roeser
Illinois Department of Human Rights
100 West Randolph Street
10th Floor
Chicago, Illinois 60601
Tom.roeser@illinois.gov

      Re:    **Michelle Abraham v. Community Alternatives Unlimited
              EEOC Charge No. 440-2017-02387**

Dear Mr. Roeser:

      Ms. Michelle Abraham dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on March 3, 2017, opting to have the EEOC take the lead on the investigation. Ms. Abraham recently received a Right to Sue Letter from the EEOC (which is attached, along with a copy of the Charge of Discrimination). Ms. Abraham has since been advised that the EEOC reopened her Charge of Discrimination for further review and is awaiting the determination. In the meantime, she requests that the IDHR issue a Notice of Dismissal and Order of Closure so she can pursue her claims under the Illinois Human Rights Act. Please direct the Notice of Dismissal and Order of Closure to my attention. We are unsure if this request is premature given that the EEOC Charge has been reopened.

      Thank you for your consideration.

                        Sincerely,

                        Ruth I. Major
                        Email: rmajor@major-law.com

RIM/iz
cc:   Michelle Abraham (*via email*)

PAGE 2 of 4
2018-CH-02497
www.iardc.org
6/20/2018 3:35 PM
ELECTRONICALLY FILED

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

CAU Removal 000322

FILED DATE: 11/17/2021 6:03 PM   2018-CH02497

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Michelle Abraham**
**611 E. Ironwood Drive**
**Mount Prospect, IL 60056**

From: **Chicago District Office**
**500 West Madison St**
**Suite 2000**
**Chicago, IL 60661**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(e)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2017-02387** | **Eva Baran, Investigator** | **(312) 869-8023** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman*   6/2/17

**Julianne Bowman, District Director**   (Date Mailed)

Enclosures(s)

cc: **COMMUNITY ALTERNATIVES UNLIMITED**
**c/o Julie Badel**
**Epstein Becker Green**
**227 West Monroe Street #3250**
**Chicago, IL 60606**

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 4

CAU Removal 000323

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2017-02387 |

Illinois Department Of Human Rights and EEOC

*State or local Agency, if any*

**Name** *(indicate Mr., Ms., Mrs.)*
Ms. Michelle Abraham

Home Phone *(Incl. Area Code)*  RECEIVED EEOC

Date of Birth 1972

**Street Address**
611 E. Ironwood Drive, Mount Prospect, IL 60056

City, State and ZIP Code  MAR 3 2017  CHICAGO DISTRICT OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COMMUNITY ALTERNATIVES UNLIMITED | 101 - 200 | (773) 867-3000 |

**Street Address**
8765 West Higgins, Chicago, IL 60631

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

**Street Address**

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest / Latest: 01-31-2017

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or before November 2, 1999. My most recent position was Program Manager. During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent. Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny. I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Mar 03, 2017
*Date*

*Charging Party Signature*

FILED DATE: 11/17/2021 6:03 PM 2018CH02497

CAU Removal 000324

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15646926

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

# EXHIBIT D

CAU Removal 000325

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2018 CH 02497** |
| | ) | |
| **COMMUNITY ALTERNATIVES** | ) | **Honorable Judge Kathleen M. Pantle** |
| **UNLIMITED,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 2 of 3

## <u>AFFIDAVIT OF MICHELLE ABRAHAM</u>

State of Illinois          )

County of Cook          )

I, Michelle Abraham, being first duly sworn on oath, and based on personal knowledge and under penalty of perjury, state as follows:

1.     I am over the age of 18 and fully competent to testify to the facts herein.

2.     On March 3, 2017, I filed a Charged of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") to submit my retaliation claim to both agencies. In that Charge of Discrimination, I claimed that my former employer, Community Alternative Unlimited ("CAU") retaliated against me for opposing the unlawful and discriminatory conduct of my co-workers and superiors at CAU.

3.     I received a Right to Sue letter from the EEOC in early June 2017, which dismissed my Charge of Discrimination in that agency.

CAU Removal 000326

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

4.      Shortly after receiving that letter from the EEOC, the EEOC advised me that the agency was re-opening the investigation into my charge. I requested written confirmation that the investigation was being reopened repeatedly but never received any response. After the agency failed to respond to those requests for several months, I retained counsel to represent me in this matter.

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Executed on June 20, 2018 in       Illinois.

FURTHER AFFIANT SAYETH NOT

_____
Michelle Abraham

ELECTRONICALLY FILED
6/20/2018 3:35 PM
2018-CH-02497
PAGE 3 of 3

CAU Removal 000327

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 11/17/2021 6:03 PM 2018CH02497

FILED
11/17/2021 6:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

15646926

# EXHIBIT E

CAU Removal 000328

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

STATE OF ILLINOIS     )
                            ) ss

COUNTY OF COOK     )                      FILE NO (S) 2017CR3337

## AFFIDAVIT OF SERVICE

Janice L. Woods-Wills, deposes and states that she served a copy of the

attached **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** on each person

named below by depositing same this 21ST day of November, 2017, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

RECEIVED
NOV 27 2017

---

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*Janice L. Woods Wills*
Janice L. Woods-Wills

## PLEASE NOTE:

The above-signed person is responsible only for <u>mailing</u> these documents.  If you wish a review of the finding in this case, you must complete the Request for Review form attached.  Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

CAU Removal 000329

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

MICHELLE ABRAHAM,                      )
                                       )
          COMPLAINANT,                 )        CHARGE NO.  2017CR3337
                                       )        EEOC NO.    440-2017-02387
AND                                    )
                                       )
COMMUNITY ALTERNATIVES                 )
  UNLIMITED,                           )
                                       )
          RESPONDENT.                  )

<u>**NOTICE OF DISMISSAL**</u>
<u>**FOR LACK OF JURISDICTION**</u>

Ruth Major                              Julie Badel
Attorney at Law                         Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650               227 West Monroe-Suite 3250
Chicago, Illinois 60603                 Chicago, Illinois 60606

DATE OF DISMISSAL:  November 21, 2017

1.     YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT jurisdiction to pursue the allegations of the charge.  Accordingly, pursuant to
Section 7A-102(D) of the Human Rights Act, Illinois Compiled Statutes, (775 ILCS 5/3-
101 et. seq.) and the Rules and Regulations of the DHR (56 Ill. Adm. Code. Chapter II,
Section 2520.560), the charge is HEREBY DISMISSED.

2.     If Complainant disagrees with this action, Complainant may:

a) seek review of this dismissal before the Illinois Human Rights Commission,
   100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
   "Request for Review" with the Commission by the request for review filing
   date below.  Respondent will be notified by the Human Rights Commission if
   a Request for Review is filed.

REQUEST FOR REVIEW FILING DEADLINE DATE:  **February 26, 2018**

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

**NOTICE OF DISMISSAL FOR LACK OF JURISDICTION**
**2017CR3337**
Page Two

Or,

b)      commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice.  A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.** The Appellate Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch V. Department of Transportation,</u> ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance.  Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.      If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.   Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.

DEPARTMENT OF HUMAN RIGHTS

HB 1509/HB59/NOD/LOJ
12/10

CAU Removal 000331

STATE OF ILLINOIS
HUMAN RIGHTS COMMISSION

IN THE MATTER OF:                          )
                                           )
MICHELLE ABRAHAM,                          )
                                           )
            COMPLAINANT,                   )         CHARGE NO.  2017CR3337
                                           )         EEOC NO.    440-2017-02387
AND                                        )
                                           )
COMMUNITY ALTERNATIVES                     )
  UNLIMITED,                               )
                                           )
            RESPONDENT.                    )

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

## __REQUEST FOR REVIEW__

Ruth Major                              Julie Badel
Attorney at Law                         Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650               227 West Monroe-Suite 3250
Chicago, Illinois 60603                 Chicago, Illinois 60606

TO:  Ruth Major

DATE:  November 21, 2017

REQUEST FOR REVIEW FILING DEADLINE DATE:  **February 26, 2018**

    I hereby request that the Department of Human Rights' (DHR) dismissal of the charge be reviewed by the Illinois Human Rights Commission.

Complainant's Current Address (please print clearly):

_____Apt/Unit_____

City_____State_____Zip_____Phone (____) _____.

CAU Removal 000332

FILED DATE: 11/17/2021 6:03 PM   2018CH02497

**TO REQUEST INVESTIGATION FILE:**
The Department's investigation file may be reviewed or copied upon request once the Department's investigation is completed. The Department is not responsible for copy service fees. **A minimum of 3 business days' notice is required.** Call (312) 814-6262 to make arrangements.

**REQUEST FOR REVIEW INSTRUCTIONS:**
IN THE SPACE PROVIDED BELOW, YOU <u>MUST LIST</u> AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED.  If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review.  You may review your investigation file, to help you prepare your request by calling 312-814-6262 or 217-785-5100.

_____

 

 

_____               _____
SIGNATURE                                   DATE
_____

**YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES, INCLUDING SUPPORTING DOCUMENTS, OF YOUR ENTIRE REQUEST AND SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:**

Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, IL   60601.

**Please note that pursuant to Section 5300.410 of the Commission's Procedural Rules, except by permission of the Commission, the request, argument and supporting materials shall not exceed 30 pages.**

**Further, note that pursuant to *56 Ill. Admin. Code § 5300.40(b)* of the Commission's Procedural Rules, all arguments in support of the Request for Review must be written on 8 ½ x 11 paper.  Any argument submitted on non-conforming paper (such as a "post-it" note) will not be considered part of the Request for Review, and will be disregarded by the Commission.**

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
HB1509/HB59 HRC R/R 01/14

CAU Removal 000333

FILED DATE: 11/17/2021 6:03 PM    2018CH02497

# STATE OF ILLINOIS
# DEPARTMENT OF HUMAN RIGHTS
# INVESTIGATION REPORT

**Complainant:** Michelle Abraham     **IDHR No.:** 2017CR3337
**Respondent:** Community Alternatives     **EEOC No.:** 440-2017-02387
             Unlimited

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR     **Date:** 10/25/17

**Issue/Basis:**                      **Finding:**

A. Harassment/race, black           A. Lack of Jurisdiction
B. Placed on performance plan/retaliation    B. Lack of Jurisdiction
C. Constructive discharge/race, black      C. Lack of Jurisdiction
D. Constructive discharge/retaliation      D. Lack of Jurisdiction

**Jurisdiction:**

| | | |
|---|---|---|
| Alleged violations: | A.-D.: | 1/31/17 |
| Charge filed: | | 3/3/17 |
| Charge perfected: | | 6/2/17 |
| | | |
| Number of employees: | | 101-200 |

**Findings**

On March 3, 2017, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On May 1, 2017, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On September 8, 2017, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

CAU Removal 000334

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

MICHELLE ABRAHAM,           )
           )
       Plaintiff,        )
           )
   v.             )    Case No. 18 CH 02497
           )    Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,  )    Honorable Anna M. Loftus
           )    Judge Presiding
       Defendant.    )

### UNOPPOSED ORDER AMENDING BRIEFING SCHEDULE

The Court, being duly advised in the premises, ORDERS as follows:

1.    On September 29, 2021, the Court entered an Order (the "September 29 Order") setting a briefing schedule on Defendant's Motion to Reconsider the Memorandum Opinion and Order Dated August 18, 2021 That Denied Defendant's Section 2-619 Motion to Dismiss Or, Alternatively, For Certification of a Dispositive Question of Law for an Interlocutory Appeal.

2.    Pursuant to the September 29 Order, Plaintiff's opposition to Defendant's Motion to Reconsider was due on or before November 17, 2021. Plaintiff timely filed her opposition.

3.    Pursuant to the September 29 Order, Defendant's reply in support of its Motion to Reconsider is due on or before December 7, 2021.

4.    The Court is advised that Defendant requested an extension of the reply brief deadline, and that Plaintiff does not oppose that request.

5.    The September 29 Order and the briefing schedule are hereby amended such that Defendant's reply in support of its Motion to Reconsider shall be due on or before December 15, 2021.

CAU Removal 000335

6.     The September 29 Order scheduled oral argument on Defendant's Motion to Reconsider for February 8, 2022 at 10:30 a.m. Oral argument shall remain as originally scheduled and shall be heard on February 8, 2022 at 10:30 a.m. via Zoom.

7.     Pursuant to the Court's Standing Order and the Court's statements in open Court, Defendant shall be responsible for submitting a courtesy copy of all briefing papers on the date it files its reply brief via email to the Court at Calendar15.Chancery@cookcountyil.gov, copying counsel for Plaintiff. The courtesy copies shall include all briefing on the Motion to Reconsider, all briefing on the original Motion to dismiss, and the Complaint.

**Zoom Meeting ID:** 955 3557 3920
**Passcode:** N/A

ENTERED:

DEC   7 2021

/s/ Anna M. Loftus

Judge Anna M. Loftus, No. 2102

Prepared by:
Brian E. Spang, Esq.
Epstein Becker & Green, P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois 60606
bspang@ebglaw.com
(312) 499-1462
Firm I.D. No. 18494
Counsel for Defendant

2

CAU Removal 000336

FILED
12/15/2021 4:50 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
15974228

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2018-CH-02497 |
| | ) Calendar: 15 |
| COMMUNITY ALTERNATIVES | ) |
| UNLIMITED, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO RECONSIDER
THE MEMORANDUM OPINION AND ORDER DATED AUGUST 18, 2021 THAT
DENIED DEFENDANT'S SECTION 2-619 MOTION TO DISMISS
OR, ALTERNATIVELY,
FOR CERTIFICATION OF A DISPOSITIVE QUESTION OF LAW FOR AN
INTERLOCUTORY APPEAL**

## I.     Introduction

CAU's Opening Brief explains that the right to sue notice does not save Plaintiff's claim because: (a) Plaintiff's failure to comply with 775 ILCS 5/7A-102(A-1)(1)(iv) divested the IDHR of jurisdiction to review Plaintiff's charge, such that (b) the IDHR lacked statutory authority to issue the right to sue notice, and consequently (c) the right to sue notice was "without legal effect," requiring dismissal of Plaintiff's claim.  (Opening Brief at 2) (quoting *Donald v. City of Chicago*, 2021 WL 1946335, at *5 (N.D. Ill. May 14, 2021)).  Plaintiff's opposition does not directly challenge any of these three points.

Instead, Plaintiff attempts to hammer the square peg of the right to sue notice into the round hole of 775 ILCS 5/7A-102(C)(4).  But Section 7A-102(C)(4) does not apply to Plaintiff's charge, because the IDHR dismissed her charge for lack of jurisdiction.  *Allen*

CAU Removal 000337

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

*v. Lieberman*, 359 Ill. App. 3d 1170, 1179 (5th Dist. 2005) ("We agree with the respondents that these sections [7A-102(C)(3) and (C)(4)] do not apply to charges that the Department has no jurisdiction to consider").  The IHRA sections that *do* apply to Plaintiff's charge require dismissal of her claim.  And the remainder of Plaintiff's challenges to CAU's authorities miss the mark for the reasons explained below.  CAU's motion to reconsider should be granted and Plaintiff's Complaint dismissed with prejudice.

## II.  775 ILCS 7A-102(C)(4) Does Not Apply to Plaintiff's Charge.

Plaintiff's reliance on Section 7A-102(C)(4) fails for at least two reasons.  <u>First</u>, this entire subsection, titled "Investigation," specifies procedures for the IDHR's investigation of a charge.  Subsection (C)(4) specifies procedures for fact finding conferences.  The IDHR did not conduct an investigation or a fact finding conference, because the IDHR lacked jurisdiction to do so.  Accordingly, Section 7A-102(C)(4) has no application whatsoever to Plaintiff's charge or this case.  *Allen*, 359 Ill. App. 3d at 1179 ("We agree with the respondents that these sections [7A-102(C)(3) and (C)(4)] do not apply to charges that the Department has no jurisdiction to consider").

<u>Second</u>, even if subsection (C)(4) did apply, Plaintiff misreads its reference to "lack of jurisdiction."  CAU agrees with Plaintiff that the plain statutory language is "the most reliable indicator" of legislative intent; "[a]ll provisions of a statutory enactment are viewed as a whole"; statutory provisions "must not be construed in isolation," and "[e]ach word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous."  (Pl. Opp. Br. at 2-3); *accord Demars-Evans v. Mikron Digital Imaging-Midwest, Inc.*, 2013 WL 3224588, at *4 (N.D. Ill. 2013) ("The

2

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

construction of the statute should not render any of the provisions superfluous or redundant") (citations omitted).[1]  Applying these principles to Section 7A-102(C)(4), "lack of jurisdiction" is referred to only as one of two situations in which the IDHR will not conduct a fact finding conference:

> Upon reasonable notice to the complainant and the respondent, the Department **shall conduct a fact finding conference**, prior to 365 days after the date on which the charge was filed, *unless* the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed or the charge has been dismissed for lack of jurisdiction.

Section 7A-102(C)(4) (emphasis added).  Plaintiff points to the reference to a "notice of dismissal" later in the subsection, contending that the referenced "notice of dismissal" must refer to a dismissal for lack of jurisdiction:

> If the parties agree in writing, the fact finding conference may be held at a time after the 365 day limit.  Any party's failure to attend the conference without good cause shall result in dismissal or default.  The term "good cause" shall be defined by rule promulgated by the Department.  A notice of dismissal or default shall be issued by the Director.  The notice of default issued by the Director shall notify the respondent that a request for review may be filed in writing with the Commission within 30 days of receipt of notice of default.  The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court.  If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice.  If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court.  If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

---

[1] A copy of *Demars-Evans v. Mikron Digital Imaging-Midwest, Inc.* is contained in Exhibit 6 to this Reply Brief.  CAU's Opening Brief attached Exhibits 1 through 5, so CAU will consecutively number its exhibits for convenience.  CAU's Exhibits 6 and 7 are attached to this Reply Brief.

CAU Removal 000339

Section 7A-102(C)(4) (emphasis added).

But the references to the notice of dismissal do not connect or relate in any way to the IDHR not conducting a fact finding conference because it lacked jurisdiction. Reading the statute as a whole, according to its plain language, and without rendering any words superfluous, the references to dismissal are plainly limited to dismissals for a complainant's failure to attend a fact finding without good cause. *See Demars-Evans*, at *3-4 (rejecting the exact same argument about Section 7A-102(C)(4) that Plaintiff makes here; "this provision relates to a party's failure to attend a fact finding conference … To avoid redundancy, the statute must be construed to provide that Section 775 ILCS 5/7A-102(C)(4) require notice of dismissal where a charge is dismissed due to a party's failure to attend a fact finding conference …").

In sum, Section 7A-102(C)(4) cannot save Plaintiff's claim because it does not apply to her charge.

## III. The Relevant Statutory Provisions—775 ILCS 7A-102(D) and 775 ILCS 7A-102(A-1)—and the IDHR's Implementing Regulations Do Not Authorize Civil Lawsuits Asserting Claims the IDHR Dismisses for "Lack of Jurisdiction."

The IHRA sections that do apply to Plaintiff's charge do not save her claim either. Plaintiff bases her opposition entirely on the IDHR's Notice of Dismissal, so a short review of the statutory and regulatory provisions governing that Notice of Dismissal is in order. Subsection 7A-102(D), and the IDHR's applicable regulation, 56 Ill. Admin. Code § 2520.560, govern notices of dismissal, as Plaintiff's Notice of Dismissal specifically tells us:

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

> YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is NOT jurisdiction to pursue the allegations of the charge. Accordingly, **pursuant to Section 7A-102(D) of the Human Rights Act**, Illinois Compiled Statutes, (775 ILCS 5/3/101 et. seq.) and the Rules and Regulations of the DHR (**56 Ill. Adm. Code. Chapter II, Section 2520.560**), the charge is HEREBY DISMISSED.[2]

The dispositive question is therefore:  does either Section 7A-102(D) or § 2520.560 authorize a right to sue on claims dismissed for lack of jurisdiction?  A review of the applicable statutes and regulation demonstrates that the answer is "No."

• Section 7A-102(D)(1) specifies that "[e]ach charge shall be the subject of a report to the Director."  IDHR complied with that requirement.

• Section 7A-102(D)(1) specifies that the Director shall determine whether substantial evidence supports the charge.  IDHR lacked jurisdiction to make that determination.

• Section 7A-102(D)(3) specifies that if the Director determines there is no substantial supporting evidence, the charge shall be dismissed, and the Director shall the complainant notice of the right to seek review of the dismissal order either before the Illinois Human Rights Commission, or by filing a lawsuit.  IDHR lacked jurisdiction to make that determination, and thus did not make a substantial evidence determination. Further, this subsection does not refer to lack of jurisdiction, so the notice of dismissal could not have been issued pursuant to Section 7A-102(D)(3).

---

[2] (Voigt Aff. Ex. E, p. 3, which is contained in Exhibit 3 to CAU's Opening Brief) (emphasis added).  The Notice of Dismissal is also contained in Exhibit E to Plaintiff's opposition brief.

CAU Removal 000341

FILED DATE: 12/15/2021 4:50 PM    2018CH02497

- Section 7A-102(D)(4) specifies that if the Director determines there is substantial supporting evidence, the Director shall notify the parties that the complainant has the right to either file a lawsuit or request the IDHR to file a complaint with the IHRC. IDHR lacked jurisdiction to make that determination, and thus did not make a substantial evidence determination. This subsection does not refer to lack of jurisdiction, so the notice of dismissal could not have been issued pursuant to Section 7A-102(D)(4).

- 56 Ill. Admin. Code § 2520.560(a) specifies that the IDHR shall serve upon the parties a written notice of dismissal.[3] § 2520.560(b)(1) specifies that the dismissal may be based on "lack of substantial evidence of discrimination **or lack of jurisdiction**." (Emphasis added). The notice of dismissal was therefore issued pursuant to § 2520.560(b)(1). The Investigation Report specifies that the IDHR lacked jurisdiction because Plaintiff failed to timely file the EEOC's determination within 30 days after service as required by Section 7A-102(A-1)(1).[4]

Turning to Section 7A-102(A-1), the subsection governing charges filed with the EEOC, this subsection specifies IDHR procedures for various potential outcomes of a charge *if, but only if*, the complainant timely notifies the IDHR of the EEOC's

---

[3] § 2520.560 was amended effective December 14, 2020. Exhibit 7 to this Reply Brief contains a copy of § 2520.560 showing those amendments, which allows the Court and the parties to see the regulation as it existed when the IDHR issued Plaintiff's Notice of Dismissal in 2018.

[4] (Voigt Aff. Ex. E, p. 2, "Investigation Report") which is contained in Exhibit 3 to CAU's Opening Brief) (emphasis added). The Notice of Dismissal is also contained in Exhibit E to Plaintiff's opposition brief. The Investigation Report explains that "Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed."

CAU Removal 000342

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

determination.[5]  Section 7A-102(A-1) does <u>not</u> specify any procedures when, as here, the complainant fails to timely notify the IDHR of the EEOC's determination, which deprives the IDHR of jurisdiction.  An IDHR regulation does specify the procedures, however, and those procedures do not include the right to file a lawsuit in court:

> If the complainant fails to submit a copy of the EEOC's final determination to the Department within 30 days after receipt of the EEOC's final determination, the Department may dismiss the charge for **lack of jurisdiction**.  The complainant **may request to have the Illinois Human Rights Commission review the Department's determination** that it **lacks jurisdiction** over the charge by filing a Request for Review with the Illinois Human Rights Commission within 90 days after receipt of the Department's Notice of Dismissal in accordance with Section 8-103 of the Act.

56 Ill. Admin. Code § 2520.490(d) (emphasis added).

Conspicuously absent from Section 7A-102(A-1), Section 7A-102(D), or the cited IDHR regulations, is any statutory or regulatory authorization or creation of a right to commence an action in the Circuit Court to assert claims <u>dismissed for lack of jurisdiction</u>.

---

[5] Section 7A-102(A-1)(1) requires, among other things, the IDHR to notify the parties that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant," which the IDHR did here.  (Pl. Opp. Br. Ex. A) ("<u>**After the EEOC issues its findings**</u>, if you want the Department to take *any* further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you") (bold and underline in original, italics added).  Section 7A-102(A-1)(2) specifies procedures if the EEOC finds reasonable cause "and if the Department is timely notified of the EEOC's findings by complainant," including notifying the complainant of the right to file a lawsuit in court.  Section 7A-102(A-1)(3) specifies procedures if the EEOC does not issue a determination or is unable to establish that discrimination occurred "and if the Department is timely notified of the EEOC's determination by complainant," including notifying the complainant of the right to file a lawsuit in court.  **Because Plaintiff here admittedly failed to timely notify the IDHR of the EEOC's determination, the procedures of Sections 7A-102(A-1)(2) and (3) were never implicated or triggered.**  Section 7A-102(A-1)(4) specifies procedures if the EEOC dismisses the charge for lack of jurisdiction, which did not occur here.  Section 7A-102(A-1)(5) refers to the tolling of the Department's time limit to issue a report, which is immaterial to this matter.  In sum, none of the procedures in Section 7A-102(A-1)(2), (3), or (4) were ever implicated or triggered because Plaintiff failed to timely notify the IDHR of the EEOC's determination.  The IDHR followed the only procedural path statutorily available to it:  dismissal of the charge for lack of jurisdiction.

CAU Removal 000343

FILED DATE: 12/15/2021 4:50 PM    2018CH02497

*Demars-Evans* addressed this exact issue.  There, as here, the IDHR dismissed plaintiff's charge there for lack of jurisdiction.  There, as here, the IDHR notice of dismissal provided that the plaintiff could commence a civil action within 90 days of receipt.  There, as here, the plaintiff contended that the notice of dismissal authorized her lawsuit.  The court rejected that argument because Section 7A-102(D) "does not specifically authorize a complainant with a charge dismissed for lack of jurisdiction to commence a civil action." *Demars-Evans*, at *4.

The same result is required here.  The statute only authorizes a lawsuit "*if*" the Director makes a substantial evidence determination.  Section 7A-102(D)(2) and (3) (emphasis added).  "If the Illinois legislature had intended for complainants with charges dismissed by the IDHR for lack of jurisdiction to commence civil disputes, it would have explicitly provided so in the statute."  *Demars-Evans*, at *4.  It did not.  Consequently, Plaintiff is barred from asserting her IHRA claim.[6]

---

[6] This ruling in *Demars-Evans* brings us back full circle to, and is entirely consistent with, CAU's argument in its Opening Brief:  (a) the IDHR lacked jurisdiction to review Plaintiff's charge, so (b) the IDHR lacked statutory authority to issue the right to sue notice, and consequently (c) so the right to sue notice has no legal effect.  This ruling in *Demars-Evans* also answers Plaintiff's rhetoric that "there is simply nothing in the statute or in the IDHR's communications with Abraham which indicate she loses her right to commence a suit in civil court if she does not notify the IDHR of the EEOC's determination within 30 days."  (Pl. Opp. Br. at 11).  The question is not whether the IHRA takes away a right to sue in court.  The question is whether the IHRA *authorizes* the right to sue in court, because "[e]xcept as otherwise provided by law, *no court of this state shall have jurisdiction* over the subject of an alleged civil rights violation *other than as set forth in this Act*."  775 ILCS 5/8-111(D) (emphasis added).  Simply stated, the plain language Section 7A-102(D) does not "set forth" or authorize the right to sue in court for claims dismissed for lack of jurisdiction.  56 Ill. Admin. Code §2520.490(d) reinforces this point.  The only avenue provided to review of a dismissal of a charge for "lack of jurisdiction" that was filed with the EEOC—and thus subject to Section 7A-102(A-1)—is a request for review by the IHRC.  § 2520.490(d).  If the IHRA actually authorized the right to sue on a charge filed with the EEOC and then dismissed by the IDHR for lack of jurisdiction, this IDHR implementing regulation would explicitly say so.

Plaintiff previously cited *Goldberg v. Chicago Sch. For Piano Tech.*, 2015 WL 468792 (N.D. Ill. Feb. 3, 2015), which allowed the plaintiff to proceed with a claim the IDHR had dismissed for lack of jurisdiction.  The court based its decision on the mere fact the IDHR's notice of dismissal also included a right to sue notice.

CAU Removal 000344

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

IV.     **Plaintiff's Attempts to Avoid CAU's Arguments and Distinguish CAU's Authorities Lack Merit.**

Plaintiff's attempts to distinguish CAU's authorities miss the mark.

<u>First</u>, Plaintiff's "Two Paths" paradigm is mistaken because it is based on Plaintiff's misinterpretation of Section 7A-102(C)(4).  (Pl. Opp. Br. at 2-4).  As explained above, Section 7A-104(C)(4) does not apply to charges like Plaintiff's that the IDHR dismissed for lack of jurisdiction.  *Allen*, 359 Ill. App. 3d at 1179.  Plaintiff's attempt to distinguish *Bumphus v. Illinois Hum. Rts. Comm'n*, 2021 IL App (5th) 200037-U as an "Administrative Path" case therefore fails as well.

<u>Second</u>, Plaintiff's reliance on *Robinson v. Vill. of Oak Park*, 2013 IL App (1st) 121220, is misplaced.  There the IDHR issued its notice of dismissal, and the plaintiff filed her complaint, in <u>2010</u>.  *Id.* ¶ 15.  The First District therefore applied the IHRA as it existed in <u>2010</u>, as evidenced by its citations to the IHRA circa "West 2010."  *See*, *e.g.*, *id.* ¶¶ 2, 3, 5, 16, 19, 25 and 35.  As CAU's Opening Brief explained, the 30 day deadline to submit the EEOC's determination to the IDHR in Section 7A-102(A-1)(1)(iv) was added to the IHRA in 2011.  Moreover, the administrative dismissal in *Robinson* was for "lack of substantial evidence," not for lack of jurisdiction.  *Id.* ¶ 15.  *Robinson*'s commentary on the notice of right to sue in that case thus has no bearing on this case.[7]

---

The court engaged in no other analysis—it did not review the relevant statutory language, nor did it address the IDHR's lack of authority to issue a right to sue notice—rendering the decision unsupported and therefore unpersuasive.

[7]  This Court's Memorandum & Opinion granting Plaintiff's motion to dismiss quoted part of paragraph 5 of *Robinson*:  The aggrieved party's rights do not end [at an IHRC dismissal] as he/she is given 90 days to either file a request for review with the Commission or to file a complaint in Illinois circuit court, where he/she is now entitled to request a jury trial in the event her complaint and pleadings withstand procedural and substantive defenses."  (Mem. Op. & Order, attached as Exhibit 1 to CAU's Opening Brief, at 4-5) (citing

CAU Removal 000345

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

<u>Third</u>, Plaintiff points to *Laurie v. William M. Bedell Achievement Res. Ctr.*, 2017 WL 1076940 (S.D. Ill. Mar. 22, 2017), explaining that *Laurie*'s result is "[b]ased on the language of 775 ILCS 5/7A-102(C)(4) …" (Pl. Opp. Br. at 4). That demonstrates *Laurie* was wrongly decided because, as explained above, Section 7A-102(C)(4) does not apply to Plaintiff's charge or the notice of dismissal or right to sue notice here. Moreover, Plaintiff has no answer to CAU's point that *Laurie* also based its decision on the 2008 IHRA amendments, which cannot impact the later 2011 amendment adding Section 7A-102(A-1).

<u>Fourth</u>, and similarly, Plaintiff argues that *Donald v. City of Chicago* and the other cited federal decisions dismissing IHRA claims for failure to comply with Section 7A-102(A-1)(1)(iv) all "ignore" Section 7A-102(C)(4). But Section 7A-102(C)(4) does not apply here. These federal cases are thus directly on point.

## V.   Conclusion.

Plaintiff's claim fails under the plain language of the IHRA. However, no published appellate decision has directly addressed the situation here, where the IDHR issues a right to sue notice without statutory authority, after determining it lacks jurisdiction. Thus, if the Court has any doubts as to the application of *Bumphus*, *Donald v. Chicago*, *Demars-Evans*, or any of the other cited authorities applying Section 102(a)-1)(i)(iv), it should certify CAU's proposed question. Otherwise, reconsideration should be granted, and Plaintiff's Complaint dismissed.

---

774 ILCS 5/7A-102(C)(4)). The sentence preceding that quotation reads: "Following its investigation, if the Commission finds that there is <u>no substantial evidence</u> that the Illinois Human Rights Act was violated, it must dismiss the charge." *Robinson*, at ¶ 5 (emphasis added). This sentence reinforces that Section 7A-102(C)(4) only applies when a substantial evidence determination has been made, and demonstrates that *Robinson* is inapposite to cases where, as here, the dismissal was for lack of jurisdiction.

CAU Removal 000346

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

Respectfully submitted,

Dated:  December 15, 2021          COMMUNITY ALTERNATIVES UNLIMITED

By:     /s/ Brian E. Spang
        One of its attorneys

Peter A. Steinmeyer
Brian E. Spang
Attorneys for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
psteinmeyer@ebglaw.com
bspang@ebglaw.com
Attorney ID #18494

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the

foregoing memorandum of law via email and the Court's electronic filing system the

15th[th] day of December 2021 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Brian E. Spang

11

CAU Removal 000347

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

# EXHIBIT 6

CAU Removal 000348

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

2013 WL 3224588
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Patrice DEMARS–EVANS, Plaintiff,
v.
MIKRON DIGITAL IMAGING–MIDWEST, INC.
and MIchael Harvey, Defendants.

No. 13–CV–1179.
|
June 25, 2013.

**Attorneys and Law Firms**

Richard M. Karr, Carrie Alice Herschman, Gordon &
Karr LLP, Chicago, IL, for Plaintiff.

James A. Flesch, Glickman, Flesch & Rosenwein,
Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

JOHN W. DARRAH, District Judge.

**\*1** Plaintiff Patrice DeMars–Evans filed suit in Cook
County, Illinois, against Defendants Mikron Digital
Imaging–Midwest, Inc. ("Mikron") and Michael Harvey,
alleging sexual harassment and retaliation under the
Illinois Human Rights Act. Defendants removed the case
to the Northern District of Illinois on the basis of
diversity, pursuant to 28 U.S.C. § 1446(c), and Plaintiff
did not oppose the removal. Now, Defendants move to
dismiss Plaintiff's Complaint, pursuant to Fed.R.Civ.P.
12(b)(6). The motion has been fully briefed. For the
reasons provided below, Defendants' motion is granted in
part and denied in part.

**BACKGROUND**

The following facts are based on the Complaint and
attached exhibits and are accepted as true for purposes of
the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City
Bank,* 592 F.3d 759, 763 (7th Cir.2010). A district court
"may also take judicial notice of matters of public record
without converting a 12(b)(6) motion into a motion for
summary judgment." *Hens on v. CSC Credit Services,* 29
F.3d 280, 284 (7th Cir.1994) (quotations and citations
omitted).

Mikron is a Michigan corporation in the business of
selling x-ray equipment. (Compl.¶ 2.) Harvey is an owner
of Mikron as well as its Vice President. (*Id.* ¶ 4.) Plaintiff
is a 52–year–old woman, who was employed as an
account manager at Mikron from April 2007 through June
1, 2011. (*Id.* ¶¶ 5–6.) Plaintiff sold x-ray equipment to
hospitals in Illinois and was a top salesperson at Mikron.
(*Id.* ¶ 7.) As a salesperson, Plaintiff reported to Harvey
and Donald Dotson, the President of Mikron. (*Id.* ¶ 8.)

As an employee of Mikron, Defendants subjected Plaintiff
to a sexually harassing work environment, directing
unwanted sexual, offensive advances and remarks at
Plaintiff. (*Id.* ¶ 32.) Throughout her employment, Plaintiff
was sexually harassed by Harvey. (*Id.* ¶ 9.) Harvey would
tell Plaintiff about his sex life and would ask Plaintiff
about hers. (*Id.* ¶¶ 10, 12.) Harvey described himself to
Plaintiff as a "male whore" and would regularly make
offensive remarks about women's breasts and buttocks.
(*Id.* ¶¶ 10–11.) At one point during her employment,
when Plaintiff was the only female employee in the
office, a service manager placed a sign next to Plaintiff's
office that said "Naked girls only allowed." (*Id.* ¶ 13.)
The sign remained in place for over a month, and Dotson
saw the sign and laughed. (*Id.*)

In her role at Mikron, Plaintiff was required to attend the
Radiological Society of North America ("RSNA")
Conference each year. (*Id.* ¶ 15.) In November 2009,
Plaintiff and Harvey attended an RSNA industry event at
the Field Museum and shared a taxi back to the hotel,
following the event. (*Id.* ¶¶ 16–17.) In the taxi, Harvey
pulled up Plaintiff's skirt and asked what color underwear
she was wearing; after this event, Harvey would ask
Plaintiff what color today, referring to her underwear,
whenever he encountered her. (*Id.* ¶¶ 17–18.) At the hotel
after the RSNA Field Museum event, Harvey informed
Plaintiff he conducted a "non-scientific" study on "breast
sensitivity in women with small breasts" and found that

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

small-breasted women had greater sensitivity than large-breasted women. (*Id.* ¶ 18.)

**\*2** In 2010, Harvey attended a client meeting at St. Alexius Hospital with Plaintiff and made offensive remarks about Plaintiff's buttocks. (*Id.* ¶ 20.) Harvey asked Plaintiff in 2010 if she would ever consider having an affair. (*Id.* ¶ 21.)

Throughout her employment at Mikron, the Chief Operating Officer of Mikron, Michael Sinelli, would tell Plaintiff the only reason the other female salesperson received business was because she would "shake her big tits in front of everyone"; Sinelli would then imitate a woman shaking her breasts. (*Id.* ¶ 22.) Throughout 2011, Plaintiff received pornographic emails on her company phone; when she asked Harvey and Dotson to address this issue, they refused. (*Id.* ¶ 23.)

On or about May 11, 2011, Dotson went to a service call at St. Alexius Hospital with Plaintiff. (*Id.* ¶ 37.) Thereafter, Plaintiff received a complaint from the customer that Dotson acted like a "pervert" around the female technicians, who did not want Dotson to return. (*Id.*) On or about May 16, 2011, Plaintiff informed Harvey about the complaint regarding Dotson's behavior and stated that she had the same experience; Harvey responded, "are you sure she wasn't talking about me?" (*Id.* ¶ 38.)

Approximately two days before she was fired, Dotson interrogated Plaintiff about the "personal attack" levied against him by Plaintiff and the customer at St. Alexius Hospital. (*Id.* ¶ 39 .) Plaintiff again reported her own claim of discrimination. (*Id.*) Dotson told Plaintiff that he would get to the bottom of that matter and that he knew Plaintiff was involved. (*Id.*) Shortly thereafter, on June 1, 2011, Plaintiff was terminated. (*Id.* ¶¶ 6, 40.)

On November 22, 2011, Plaintiff filed two charges of discrimination with the Illinois Department of Human Rights ("IDHR"), one against Mikron (Charge No.2012 CF 1565) and one against Harvey (Charge No.2012 CN 1566). (Defs.' Mot., Exs. 1–2.) The charge against Mikron was dismissed on October 18, 2012, by the IDHR, which found that Plaintiff's sexual harassment claim lacked jurisdiction and that her discharge claim lacked substantial evidence. (Defs.' Mot., Ex. 1.) The charge against Harvey was also dismissed on October 18, 2012, with the IDHR finding that Plaintiff's claims of sexual harassment and retaliation both lacked jurisdiction. (Defs.' Mot., Ex. 2.)

Defendants move to dismiss Plaintiff's claims, arguing

Plaintiff has no right to appeal the IDHR's dismissal of her claims for lack of jurisdiction. Defendants further contend Plaintiff cannot state a claim upon which relief may be granted that Mikron retaliated against Plaintiff.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed.R.Civ.P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal,* 129 S.Ct. at 1949.

**\*3** A defendant may file a motion to dismiss a claim under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted. To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" *Iqbal,* 129 S.Ct. at 1950. For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009) (quoting *Twombly,* 550 U.S. at 556).

## ANALYSIS

CAU Removal 000350

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

*Harassment Claims Dismissed for Lack of Jurisdiction*

Defendants move to dismiss the sexual harassment claims against them on the basis that Plaintiff's harassment claims with the IDHR were untimely, thereby barring Plaintiff from filing a civil suit. In dismissing the harassment claim against Mikron, the IDHR stated Plaintiff alleged "no incidents after May 11, 2011.... There are 195 days from May 11, 2011, the last known date of harm, to the date [Plaintiff] filed her charge on November 22, 2011." (Defs.' Mot., Ex. 1 at 7.) "Section 7A–102(A)(1) of the Human Rights Act states that a charge must be filed within 180 days after the date an alleged civil rights violations [sic] has been committed. Therefore, [Plaintiff]'s charge was not timely filed." (*Id.*) Similarly, the harassment charge against Harvey was dismissed for lack of jurisdiction because "Complainant's charge was not timely filed." (Defs.' Mot., Ex. 2 at 2.) Because Plaintiff did not file her sexual harassment charges with the IDHR within 180 days after the date of the last alleged act of harassment, her harassment charges were dismissed for lack of jurisdiction.

Despite this dismissal for lack of jurisdiction, Plaintiff contends she had a right to commence a civil suit on her sexual harassment claims. Plaintiff relies on the language on her notice of dismissal, which provides that if a complainant disagrees with the IDHR's action, she may (a) seek review of the dismissal before the Illinois Human Rights Commission or (b) commence a civil action in the appropriate state circuit court within (90) days after receipt of the notice. (*Id.* at 4.)

The statute upon which Plaintiff further relies provides as follows:

> Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference unless prior to 365 days after the date on which the charge was filed the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed, the charge has been dismissed for lack of jurisdiction, or the parties voluntarily and in writing agree to waive the fact finding conference. *Any party's failure to attend the conference without good cause shall result in dismissal or default.*

> The term "good cause" shall be defined by rule promulgated by the Department. A notice of dismissal or default shall be issued by the Director. The notice of default issued by the Director shall notify the respondent that a request for review may be filed in writing with the Commission within 30 days of receipt of notice of default. The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court.

*4  775 ILCS 5/7A–102(C)(4) (emphasis added). Petitioner specifically relies upon the italicized portion. However, this provision relates to a party's failure to attend a fact finding conference.

This provision states that failure to attend the fact finding conference without good cause "shall result in dismissal or default.... A notice of dismissal or default shall be issued by the Director" and shall notify the respondent that she may request for review or commence a civil action from a dismissal for failure to attend the fact finding conference. 775 ILCS 5/7A–102(C)(4). In contrast, the first sentence in Section 5/7A–102(C)(4) addresses investigations by the IDHR and provides that the IDHR conducts fact finding conferences *unless* "the Director has determined whether there is substantial evidence that the civil rights violation has been committed, the charge has been dismissed for lack of jurisdiction, or the parties ... agree to waive the fact finding conference."

The statute then specifically provides at 775 ILCS 5/7A–102(D) (3) that "*if the Director determines that there is no substantial evidence,* the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court." (emphasis added).

The statute is silent as to a determination by the Director that the charge should be dismissed for lack of jurisdiction. "[I]f the statute or ordinance is silent or ambiguous with respect to the specific issue, the court must then determine whether the proposed interpretation

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

of the statute or ordinance is reasonable. 'The construction of the statute should not render any of the provisions superfluous or redundant.' " *Demick v. City of Joliet,* 108 F.Supp.2d, 1022, 1027 (N.D.Ill.2000) (quoting *Budka v. Board of Pub. Safety Commissioners,* 120 Ill.App.3d 348, 75 Ill.Dec. 958, 458 N.E.2d 126, 130 (Ill.App.Ct.1983)). To avoid redundancy and achieve this result, the statute must be construed to provide that Section 775 ILCS 5/7A–102(C)(4) requires notice of dismissal where a charge is dismissed due to a party's failure to attend a fact finding conference, while Section 775 ILCS 5/7A–102(D)(3) provides for notices of dismissal where there is a lack of substantial evidence.

In these two specific instances (of failure to attend a fact finding conference or lack of substantial evidence), the statute specifically provides that a notice of dismissal is appropriate and that the notices of dismissal shall include information regarding the complainant's right to timely (a) request a review or (b) commence a civil action. If the Illinois legislature had intended for complainants with charges dismissed by the IDUR for lack of jurisdiction to commence civil disputes, it would have explicitly provided so in the statute. The Illinois Supreme Court "has held that under the rule of *expressio unius est exclusio alterius,* when certain things are enumerated in a statute, that enumeration implies the exclusion of all other things even if there are no negative words of prohibition." *People ex rel. Daley v. Grady,* 192 Ill.App.3d 330, 139 Ill.Dec. 379, 548 N.E.2d 764, 766 (Ill.App.Ct.1989). Therefore, since the statute does not specifically authorize a complainant with a charge dismissed for lack of jurisdiction to commence a civil action, Plaintiff is barred from commencing a civil action on her sexual harassment charges.

**\*5** Moreover, even if Plaintiff was not barred from commencing a civil action for the reasons explained above, her sexual harassment claims are otherwise barred. A charge of harassment must be filed "[w]ithin 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the [IDHR] by an aggrieved party." 775 ILCS 5/7A–102(A)(1). Plaintiff filed her harassment charges on November 22, 2011; therefore, she must allege acts of harassment that occurred between May 26, 2011, and November 22, 2011, the 180–day period before Plaintiff filed her IDHR charge. As Plaintiff was terminated on June 1, 2011, she must allege acts of harassment which specifically occurred between May 26, 2011, and June 1, 2011, to state a claim under the Illinois statute.

Beyond using language such as "Harvey would regularly

make offensive, solicited remarks," and alleging that harassment occurred "throughout her employment," Plaintiff does not allege any facts to establish harassment occurred between May 26, 2011, and June 1, 2011. Even drawing inferences in favor of Plaintiff, Plaintiff does not establish a claim of harassment under the Illinois Human Rights Act beyond a speculative level, and her claims of harassment are time-barred. *Twombly,* 550 U.S. at 555; *Chaudhry v. Nucor Steel–Indiana,* 546 F.3d 832, 836 (7th Cir.2008). Accordingly, Plaintiff's claims of harassment against Mikron and Harvey are dismissed.

### *Retaliation Claim Against Harvey*

Plaintiff's charge of retaliation against Harvey was dismissed for lack of jurisdiction by the IDHR, as well. In the IDHR's Investigation Report of the retaliation claim against Harvey, the IDHR reported:

Section 2–102(A) of the Illinois Human Rights Act states: "It is a civil rights violation for any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.

Complainant's charge of retaliation is filed against her employer [Mikron]. *The charging party cannot make an employer's agent personally liable for claiming the very same conduct constituted both an official action by the employer and a personal action by an individual.* Respondent [Harvey] in this case is an individual. It is the intent of the Illinois Human Rights Act that most employment actions will fall under Section 2–102(A) limited to action against employers. Therefore, a lack of jurisdiction finding is recommended.

(Defs.' Mot. to Dismiss, Ex. 2) (emphasis added).

Harvey moves to dismiss the harassment claim against him on the same basis as explained above, arguing that because this charge was dismissed for lack of jurisdiction, Plaintiff has no statutory basis by which to assert the claim under the Illinois Human Rights Act. "[W]here retaliatory action is undertaken by a supervisor in the name of the employer, the claim lies against the employer, not against the supervisor individually." *Dorado v. Aargus Sec. Systems, Inc.,* Case No. 00 C 4002, 2002 WL 230776, at \*7 (N.D.Ill. Feb.14, 2002) (citing *Anderson v. Modern Metal Products,* 305 Ill.App.3d 91,

CAU Removal 000352

238 Ill.Dec. 361, 711 N.E.2d 464 (Ill.App.Ct.1999)). Here, the retaliation alleged—Plaintiff's termination—was undertaken in the name of Mikron; accordingly, the retaliation claim against Harvey must fail.

**\*6** Moreover, Plaintiff fails to allege any facts that Harvey, specifically, retaliated against Plaintiff or was responsible for her termination. In fact, Plaintiff fails to identify any individuals who notified Plaintiff of, or were otherwise involved with, her termination. Hence, Plaintiff has failed to state a claim upon which relief may be granted, by failing to plead "factual content that allows the court to draw the reasonable inference" that Harvey retaliated against Plaintiff. *Iqbal,* 129 S.Ct. at 1949.

### Retaliation Claim Against Mikron

Defendants finally move to dismiss Plaintiff's claim of retaliation against Mikron. Defendants contend Plaintiff's claims that she was constantly harassed during her employment with Mikron are insufficient to state a claim for retaliation. However, Plaintiff alleges she was "interrogated" by Dotson two days before her termination, that during that conversation, Plaintiff complained of discrimination, and that Dotson "told Plaintiff that he would get to the bottom of this and that he knew she was involved." (Compl.¶ 39.) Mere temporal proximity between Plaintiff's complaining of harassment and her termination are insufficient to establish a claim of

retaliation. However, this suspicious timing, coupled with all the other facts alleged by Plaintiff, is enough to state a claim of retaliation to survive a Rule 12(b)(6) motion. "The temporal proximity of events may provide important circumstantial evidence of retaliation.... If a lapse in time is too long to give rise to an inference of retaliation, this will not bar the plaintiff's claim if he can provide other evidence of a causal connection." *Maxwell v. County of Cook,* Case No. 10 CV 00320, 2011 WL 4639530, at \*6 (N.D.Ill. Mar.17, 2011) (citations omitted). Therefore, Defendants' Motion to Dismiss the claim of retaliation by Mikron is denied.

### CONCLUSION

For the reasons provided above, Defendants' Motion to Dismiss is granted as to the claims of harassment and the claim of retaliation against Harvey; these claims are dismissed with prejudice. However, Defendants' Motion to Dismiss is denied as to the claim of retaliation against Mikron; this claim remains.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 3224588

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 12/15/2021 4:50 PM    2018CH02497

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

# EXHIBIT 7

CAU Removal 000354

2520.560 Dismissal, 56 IL ADC 2520.560

FILED DATE: 12/15/2021 4:50 PM   2018CH02497

Showing differences between versions effective [See Text Amendments] to December 13, 2020 and December 14, 2020 [current]

**Key:** ~~deleted text~~ added text

**10** deletions · **9** additions

## 56 Ill. Adm. Code 2520.560

### 2520.560 Dismissal

a) The Department shall serve upon the parties a written notice of dismissal of all or part of a charge. ~~For charges filed before January 1, 1996, or on or after January 1, 2008, the~~The notice will state the grounds for dismissal and that the complainant may obtain review by the Commission by filing a request for review. ~~For charges filed on or after January 1, 1996 and before January 1, 2008, Subpart F of this Part shall apply and the notice shall state the grounds for the dismissal and that the complainant may obtain review by the Chief Legal Counsel by filing a request for review. For charges filed prior to February 2, 2010, complainant has 30 days to file a request for review. For charges filed on or after February 2, 2010, complainant has 90 days to file a request for review.~~

b) The dismissal may be based upon:

1) lack of substantial evidence of discrimination or lack of jurisdiction. An investigation report discussing the reasons for the dismissal ~~shall~~will accompany the notice of dismissal;

2) complainant's failure to proceed, as provided in Section 2520.430(c) ~~of this Part~~. The notice of dismissal in ~~such~~these cases ~~shall~~will specify the manner in which the complainant has failed to proceed and ~~shall~~will be addressed to the complainant at the last known address~~; or~~

3) complainant's failure to accept a settlement offer, pursuant to Section 7A-103(D) of the Act. The notice in these cases ~~shall~~will specify the reasons for the Department's dismissal~~.~~; or

4) the filing of litigation in federal and State court (see Section 7-109.1 of the Act).

**Credits**

(Source: Amended at 39 Ill. Reg. 5601, effective April 6, 2015; Amended by 44 Ill. Reg. 19864, effective December 14, 2020)

56 ILAC § 2520.560, 56 IL ADC 2520.560

**End of Document**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000355

**2520.560 Dismissal, 56 IL ADC 2520.560**

FILED DATE: 12/15/2021 4:50 PM 2018CH02497

CAU Removal 000356

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 2018 CH 02497** |
| | : | |
| **COMMUNITY ALTERNATIVES** | : | **Judge Anne Loftus** |
| **UNLIMITED,** | : | **Calendar: 15** |
| | : | |
| **Defendant.** | : | |

### ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER

This matter, having come to be heard on Defendant's Motion to Reconsider the Court's August 18, 2021 Order on Defendant's Section 2-619 Motion to Dismiss, and the Court being fully advised following the Parties' briefing and oral argument on February 8, 2022,

**IT IS HEREBY ORDERED**:

(1) The Court's prior ruling on Defendant's Section 2-619 Motion to Dismiss incorrectly relied on 775 ILCS 5/7A-102(A)(3), which does not apply to the facts of this case.

(2) Compliance with 775 ILCS 5/7A-102(A-1)(1)(iv) is a condition precedent for the Illinois Department of Human Rights ("IDHR") to have jurisdiction over Plaintiff's claims.

(3) Because Plaintiff failed to comply with 775 ILCS 5/7A-102(A-1)(1)(iv), the IDHR lacked jurisdiction to review Plaintiff's charge and the IDHR had no authority to issue a right to sue notice. Plaintiff therefore failed to exhaust her administrative remedies under the Illinois Human Rights Act and this Court lacks jurisdiction over this matter.

(4) Plaintiff indicated an intent to request leave to file an amended complaint under 29 U.S.C. § 1981.

(5) For these reasons, the Court reconsiders its August 18, 2021 Order and dismisses Plaintiff's Complaint with prejudice.

ENTERED:

*Anna M. Loftus*

Judge Anna M. Loftus, No. 2102

Judge Anna M. Loftus
FEB - 9 2022
Circuit Court-2102

Page 1 of 2

Order prepared by:

Brenna R. McLean (Counsel for Defendant)
Epstein Becker & Green, P.C.
227 W. Monroe, Ste. 3250
(312) 499-1400
(brmclean@ebglaw.com)
Firm No. 18494

CAU Removal 000358

FILED DATE: 2/9/2022 12:27 PM   2018CH02497

FILED
2/9/2022 12:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
16639061

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2018 CH 02497** |
| | ) | |
| **COMMUNITY ALTERNATIVES** | ) | **Hon. Judge Anna M. Loftus** |
| **UNLIMITED,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## NOTICE OF MOTION

TO:   Peter A. Steinmeyer, Brian E. Spang, EPSTEIN BECKER & GREEN, P.C., 227 W. Monroe St. – Ste. 3250 Chicago, IL 60606
psteinmeyer@ebglaw.com; bspang@ebglaw.com

   **Please take notice** that on Thursday, **February 17, 2022, at 9:30 a.m.**, or whenever thereafter counsel can be heard, undersigned counsel shall appear via ZOOM before the Honorable Judge Anna M. Loftus, or any judge sitting in her stead in the courtroom usually occupied by her, Room 2410, Cook County Courthouse, Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois, 60602, and shall then and there present **Plaintiff's Motion for Leave to File Amended Complaint**, a true and correct copy of which is hereby served upon you.

   Pursuant to Judge Loftus's Standing Order dated September 1, 2021, you are notified that this motion shall be heard remotely, via Zoom, which can be joined at the following link:

   https://circuitcourtofcookcounty.zoom.us/j/95535573920

   The Meeting ID is 955 3557 3920. No password is required.

   Respectfully submitted,

**Dated**: February 9, 2022                        **MICHELLE ABRAHAM**

                                   /s/ Ruth I. Major
                                   One of Her Attorneys

FILED DATE: 2/9/2022 12:27 PM   2018CH02497

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

2

CAU Removal 000360

FILED DATE: 2/9/2022 12:27 PM   2018CH02497

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that she caused to be served a copy of the foregoing Motion for Leave to file Amended Complaint via email and the Court's electronic filing system the 9th day of February, 2022 on:

Peter A. Steinmeyer
Brian E. Spang
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
psteinmeyer@ebglaw.com
bspang@ebglaw.com

*/s/ Ruth I. Major*
Ruth I. Major

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000361

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 15

FILED
2/9/2022 11:55 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
16638007

FILED DATE: 2/9/2022 11:55 AM   2018CH02497

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,            )
                                  )
           **Plaintiff,**          )
                                  )
      **v.**                             )     Case No. 2018 CH 02497
                                  )
**COMMUNITY ALTERNATIVES**       )     Honorable Judge Anna M. Loftus
**UNLIMITED,**                         )
                                  )
              **Defendant.**        )
                                  )

### PLAINTIFF'S MOTION FOR LEAVE
### TO FILE AMENDED COMPLAINT

Plaintiff, Michelle Abraham, by her attorneys, and for her Motion for Leave to File

Amended Complaint pursuant to 735 ILCS 5/2-616(b) states as follows:

### I.       PROCEDURAL HISTORY

1.      Plaintiff filed her complaint on February 23, 2018, pursuant to the Illinois Human

Rights Act, 775 ILCS § 5/1-101 *et seq.* (IHRA).

2.      The nature of the complaint is retaliation based on her reporting, among other

things, the discriminatory treatment of Black co-workers.

3.      Defendant filed Defendant's Motion to Dismiss the Complaint Pursuant to Section

2-619 of the Code of Civil Procedure on May 10, 2018.

4.      The motion was pending before the Court until the Court denied Defendant's

Motion to Dismiss on August 18, 2021.

5.      Defendant then filed a Motion to Reconsider the Memorandum Opinion and Order

Dated August 18, 2021 that Denied Defendant's Section 2-619 Motion to Dismiss or,

1

FILED DATE: 2/9/2022 11:55 AM   2018CH02497

Alternatively, For Certification of a Dispositive Question of Law for an Interlocutory Appeal on September 17, 2021, which was fully briefed and scheduled for oral argument on February 8, 2022.

6.     During oral argument, the Court granted Defendant's Motion for Reconsideration, which was the first dismissal of the complaint in this case.

7.     Plaintiff indicated that she would be filing a Motion for Leave to Amend during the oral argument on February 8, 2022.

## II.     LEGAL STANDARD

8.     The Supreme Court has been clear that leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

9.     "At any time before final judgment amendments may be allowed on just and reasonable terms." 735 ILCS 5/2-616(a).

10.     Even when a party's complaint falls outside the statute of limitations, a party may still amend if the new legal theory relates back to a set of previously alleged facts and as to the new claim "the time prescribed or limited had not expired when the original pleading was filed". *Porter v. Decatur Memorial Hosp.*, 227 Ill. 2d 343, 358, 317 Ill. Dec. 703, 882 N.E.2d 583 (2008); 735 ILCS 5/2-616(b).

## III.     ARGUMENT

11.     Illinois courts apply the same elements for retaliation used in federal cases under Title VII to state claims, and courts apply the same elements of retaliation under Title VII to Section 1981. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007); *Watson v. Ill. Human Rights Commission*, 2021 Il. App. (5th) 190433-U, 2021 WL 4894518 * 14 (2021).

12.     Ms. Abraham initially alleged her claim under the IHRA, but the allegations set forth in her complaint and the nature of the claim also support a claim under section 1981.

2

FILED DATE: 2/9/2022 11:55 AM 2018CH02497

13.     Because Ms. Abraham's previous claim and facts alleged support her section 1981 claim, as the allegations made in the complaint remain the same and only the name of the legal theory is being amended, 735 ILCS 5/2-616(b) allows her to relate her amended complaint back to her original complaint.

14.     The Circuit Court of Cook County has jurisdiction over section 1981 claims. *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641 (7th Cir. 2011) ("Illinois circuit courts have concurrent jurisdiction over claims arising under Title VII & § 1981.").

15.     The statute of limitations for a section 1981 claim is 4 years. *See generally Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).

16.     Pursuant to 735 ILCS 5/2-616(b), so long as the allegations are based on the "same transaction or occurrence set up in the original pleading", a complaint may be amended to and deemed timely filed if the initial claim was filed within the new claim's limitation period.

17.     The Illinois Supreme Court has held that "relation back is not prohibited merely based on the fact that the name of the cause of action or the legal theory used to support the claim for damages is changed in the amended pleading." *Porter*, 227 Ill. 2d at 358 In other words, the determination of allowing a party to amend is not premised on the name of the legal theory or claim, rather, it is premised on the allegations made in the complaint.

18.     The fact that the Court determined it did not have jurisdiction over the IHRA claim does not prevent section 2-616(b) from allowing for application of the relation back doctrine because it had jurisdiction over the allegations pursuant to Section 1981. *Irving v. Rodriquez,* 27 Ill. App. 2d 75, 81, 169 N.E.2d 145, 147 (Ill. App. Ct. 1960) ("The essential test of a complaint is that it has informed the defendant of a valid claim under a general class of cases of which the court has jurisdiction as distinguished from a complaint that states no cause of action at all."); *Marcus*

CAU Removal 000364

FILED DATE: 2/9/2022 11:55 AM   2018CH02497

*v. Art Nissen and Son, Inc.*, 224 Ill. App. 3d 464, 466-68, 586 N.E.2d 694 (1991) (finding that as long as the elements of section 2-616 were met, the claim related back regardless of whether the original claim was considered a nullity, thus, giving the court jurisdiction over such allegations); *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 460, 312 N.E.2d 620 (1974) ("In determining jurisdiction it is appropriate to look to the nature of the case and the relief sought.").

19.     Furthermore, 735 ILCS 5/2-616 contains no such requirements that the court must have had jurisdiction over the claim that was initially asserted at the time of the initial filing to allow for an amendment for a claim that the court does in fact have jurisdiction over.

20.     The motion is filed one day after the complaint was dismissed by this Court for the first time.

21.     Therefore, rather than focus on the "new" name of the legal theory, the Court should focus on the nature of the already alleged allegations under 775 ILCS § 5/1-101 *et seq.* for which this Court undisputedly had and continues to have jurisdiction. As the First District has explained, "court should liberally construe the provision's requirements 'in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance.'". *Walstad v. Klink*, 2016 Il. App. 170070 * 16, 423 Ill.Dec. 608, 613 105 N.E.3d 1016, 1021 (2018) citing to *Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* 167 Ill. 2d 88, 102, 212 Ill.Dec. 267, 656 N.E.2d 1101 (1195).

**WHEREFORE,** for the foregoing reasons, Plaintiff Michelle Abraham respectfully requests that this Court grant her leave to file an Amended Complaint.

4

CAU Removal 000365

FILED DATE: 2/9/2022 11:55 AM   2018CH02497

Respectfully submitted,

**Dated**: February 9, 2022

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

5

CAU Removal 000366



### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 2018 CH 02497 |
| | : | |
| COMMUNITY ALTERNATIVES | : | Judge Anna M. Loftus |
| UNLIMITED, | : | Calendar: 15 |
| | : | |
| Defendant. | : | |

### ORDER

This matter, having come to be heard on Plaintiff's Motion for Leave to File Amended Complaint, due notice having been given, and the Court being fully advised in the premises,

IT IS HEREBY ORDERED:

1. Plaintiff will submit the proposed amended pleading to Defendant for its review on or before February 25, 2022;

2. Defendant's response to Plaintiff's Motion for Leave to File Amended Complaint shall be filed on or before April 18, 2022;

3. Plaintiff's reply in support of Plaintiff's Motion for Leave to File Amended Complaint shall be filed on or before June 6, 2022;

4. Plaintiff shall submit a full copy of the briefs filed in this motion to the Court on or before June 6, 2022; and

5. This matter is set for a hearing on Plaintiff's Motion for Leave to File Amended Complaint on June 27, 2022 at 10:30 a.m. via Zoom (Meeting ID: 955 3557 3920; no passcode required).

ENTERED:

/s/ *Anna M. Loftus*

_____
Judge Anna M. Loftus, No. 2102

*Judge Anna M. Loftus*
*FEB 2 2 2022*
*Circuit Court*

CAU Removal 000367

Order prepared by:
Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Tel.   312-893-7522 (Direct)
Tel.   312-893-7544 (Main)
rmajor@major-law.com
Attorney No. 45037

CAU Removal 000368

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 15

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

FILED
4/18/2022 1:42 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
17535348

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018-CH-02497 |
| | ) | Calendar: 15 |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

### I.    INTRODUCTION

Four years after filing her original complaint, which was subsequently dismissed with prejudice for lack of jurisdiction on February 9, 2022, Plaintiff Michelle Abraham now seeks to amend her Complaint in a last-ditch effort at taking another bite of the apple. Plaintiff's motion fails to cure the underlying defect of her initial Complaint, is unreasonably and unjustly delayed, and is futile as it fails to state a claim for retaliation under Section 1981. For the foregoing reasons, argued more fully below, Plaintiff's Motion for Leave to Amend should be denied.

### II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff resigned from her position at Community Alternatives Unlimited ("CAU") in December 2016. (Ex. 1, Pl. Compl. at ¶36). On February 23, 2018, Plaintiff filed a complaint against CAU alleging a single count of unlawful retaliation under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* (Pl. Compl. ¶¶38-50). On May 10, 2018, Defendant moved to dismiss Plaintiff's Complaint pursuant to Section 2-619 of the Illinois Code of Civil Procedure, for failure to exhaust administrative remedies, lack of jurisdiction, and failure to serve the summons and complaint within the limitations period. (Ex. 2, Def. MTD at 1). The parties fully briefed the motion and the Court initially denied Defendant's motion to dismiss on August 18, 2021.

CAU Removal 000369

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

On September 17, 2021, Defendant filed a Motion to Reconsider the denial of its motion to dismiss. (Ex. 3, Defendant's Motion to Reconsider). Following briefing and oral argument, the Court granted Defendant's Motion to Reconsider and dismissed Plaintiff's complaint with prejudice on February 8, 2022. On February 9, 2022, the Court entered an Order of dismissal with prejudice and that same day, Plaintiff filed her current motion seeking leave to amend her complaint. (Ex. 4, February 9, 2022 Order; Ex. 5, Pl. Mot. at ¶20).

### III.     DISCUSSION

**A.     Plaintiff's Motion to Amend Must Be Denied.**

**1.     Plaintiff Is Not Entitled to Amend Her Complaint Following a Final Judgment.**

As a threshold matter, Plaintiff does not have a statutory right to amend her complaint because she seeks to do so following the Court's final judgment on her initial complaint. A dismissal with prejudice is a final judgment. *Wofford v. Tracy*, 2015 IL App (2d) 141220. Although Plaintiff noted an intent to seek leave to amend her pleadings during the oral argument on February 8, 2022, she did not file her Motion for Leave to Amend until February 9, 2022. Indeed, in her Motion, Plaintiff concedes that during the oral argument on February 8, 2022, she merely "***indicated*** that she would be filing a Motion for Leave to Amend", and that she did not actually file her motion until "one day ***after*** the complaint was dismissed by this Court for the first time." (Pl. Mot. at ¶¶ 7, and 20) (emphasis added).

After final judgment, a plaintiff has no statutory right to amend a complaint and a complaint may only be amended in order to conform the pleadings to the proof. *See Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, at ¶14. Accordingly, 735 ILCS 5/2-616(c) governs whether Plaintiff's motion should be granted. *Id.* Thus, if a plaintiff seeks leave to amend after final judgment, the amendment is not permitted for any purpose other than to conform the pleadings to the proofs.

2

CAU Removal 000370

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

Here, Plaintiff admits that "the allegations made in the [amended] complaint remain the same and only the name of the legal theory is being amended…" (Pl. Mot. at ¶13). "A complaint cannot be amended after final judgment in order to add new claims and theories or to correct other deficiencies." *Tomm's*, 2014 IL App (1st) at ¶14; *see also, Dickens v. Fifth Third Mortgage Company*, 2020 WL 1639991, 2020 IL App (1st) 190943-U (Mar. 31, 2020) (J. Loftus) (denying plaintiff's motion for leave to amend filed after the court dismissed plaintiff's original complaint with prejudice).[1] A Section 2-616(c) motion is improper where, after judgment, the moving party seeks to add claims or causes of action that were available at the time of the original complaint. *Mandel v. Hernandez*, 404 Ill.App.3d 701,708 (2010); *see also, Schenker v. Chicago Title & Trust Co.*, 128 Ill.App.3d 488, 493 (1984) ("Ordinarily, an amendment should not be permitted to include matters which the pleader had full knowledge of at the time the original complaint was drafted and no excuse is presented for not putting its substance in the original pleading…"). Plaintiff does not contend that her § 1981 claim was unavailable to her at the time of her initial filing.[2]  Accordingly, the Court should dismiss her motion pursuant to Section 2-616(c) of the Illinois Code of Civil Procedure.

## 2.      Plaintiff's Motion to Amend Does Not Satisfy Any of The Four Factors Required for An Amendment.

Even if the Court determines that Plaintiff's motion can proceed under Sections 2-616(a) and (b) the Illinois Code of Civil Procedure, Plaintiff does not have an absolute and unlimited right

---

[1] In accordance with Illinois Supreme Court Rule 23(e)(1), all unpublished opinions are attached as Exhibit 7.

[2] Moreover, even if the Court determines that Plaintiff's *expressed intent* to seek leave to amend her complaint qualifies as an *oral motion* to seek leave to amend, Plaintiff's motion is still untimely, as it was made during oral argument on Defendant's motion to reconsider its motion to dismiss and does not seek to assert facts unknown to Plaintiff when she filed her original complaint. *See Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill.App.3d 62, 75 (2010) (affirming trial court's dismissal of plaintiff's oral motion for leave to file an amended complaint made during oral arguments on defendants' motion to dismiss and where proposed amendment sought to assert facts that were known to plaintiff when the original complaint was filed).

FIRM:55763763v2

CAU Removal 000371

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

to amend. *Ruklick v. Julius Schmid, Inc.*, 169 Ill.App.3d 1098, 1113 (1988). The relevant factors that must be considered in determining whether the Court should allow Plaintiff to amend her complaint are: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill.2d 263, 273 (1992). Failure to satisfy any of these factors is fatal to a proposed amendment. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004). Here, Plaintiff does not satisfy <u>any</u> of these factors, let alone all four as she must.

> a. **The Relation Back Doctrine Codified Under 735 ILCS 5/2-616(b) Does Not Apply Where the Amended Complaint Does Not Cure the Underlying Flaw of the Original Claim.**

First, Plaintiff's motion should be denied because her proposed amendment does not cure the defects of her original complaint, which is required for the "relationship back" doctrine to apply. Under 735 5/2-616(b), an otherwise time-barred amendment can be permitted if the original pleading was timely and the amendment grew out of the same transaction or occurrence set up in the original pleading. The purpose of the statute is to preserve causes of action against loss by reason of technical default unrelated to the merits. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 355 (2008). "The true inquiry, in this careful balance of interests, is whether the plaintiff is 'attempting to slip an entirely distinct claim in violation of the [statute] of limitations act.'" *Grove v. Carle Foundation Hosp.*, 364 Ill.App.3d 412, 419 (2006). That is ***exactly*** what Plaintiff is attempting to do here.

Here, Plaintiff's proposed amendment asserts a § 1981 claim, which has a statute of limitations of four years. In her original complaint, Plaintiff asserted a single claim of retaliation under the IHRA. (*See* Ex. 1). The Court dismissed her complaint after it found that she failed to

4

CAU Removal 000372

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

exhaust her administrative remedies, and thus the Court did not have statutory jurisdiction over her claim. (*See* Ex. 4). As such, the flaw in Plaintiff's original complaint was not a technical one unrelated to the merits. Lack of jurisdiction is substantive, not technical, and goes directly to the legal merits. Plaintiff's proposed amendment does not cure this flaw by alleging new facts that would establish jurisdiction over her IHRA claim, because she cannot at this time. That is incurable. Instead, Plaintiff wants to assert an entirely new cause of action based on the previously alleged underlying facts. "It is improper practice to engage in piecemeal litigation, seeing one theory of the case to conclusion before proposing another." *Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.*, 331 Ill. App.3d 87, 95 (2002); *see also, Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd.*, 2016 IL App (1st) 14-3597-U (May 11, 2016) (holding that the circuit court did not abuse its discretion in refusing to permit the plaintiff to amend its complaint where the amendments would not have cured any defects in the original pleadings).

Plaintiff's reliance on *Marcus v. Art Nissen and Son, Inc.*, 224 Ill.App.3d 464 (1991) (Pl. Mot. at ¶ 18) is misplaced. Specifically, Plaintiff contends that *Marcus* holds that "as long as the elements of section 2-616 [are] met, the claim relate[s] back regardless of whether the original claim was considered a nullity, thus giving the court jurisdiction over such allegations." (Pl. Mot. at ¶18).

*Marcus* is inapplicable to the case at bar. It involved a pleading technicality: the plaintiff in that case mistakenly named the wrong party in the case caption when the case was filed. *Marcus*, 224 Ill.App.3d at 467. In other words, the plaintiff *could have* named the proper party at the time of filing but failed to do so. Here, in contrast, the Court lacked jurisdiction over Plaintiff's IHRA claim as of the time of filing because Plaintiff failed to exhaust mandatory administrative remedies. That was not a mere technicality, and that fatal flaw cannot be cured *after the fact*, unlike other situations in which the "relation back" doctrine does apply.

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

In *Marcus*, the deceased plaintiff's wife initially filed a negligence action against defendants with herself and her husband each named as plaintiffs, seeking money damages for her husband's personal injuries and her loss of consortium. *Id.* at 464. Defendants moved to dismiss on the grounds that the husband was dead on the date the complaint was filed and therefore the lawsuit was a nullity because it did not invoke the jurisdiction of the court. *Id.* Plaintiffs responded by asking for leave to amend the complaint as to the claims relating to the deceased husband by substituting his wife as administrator of her husband's estate as the party plaintiff, and for that amended complaint to relate back to the date the original complaint was filed. *Id.*

After the trial court denied plaintiff's motion and she appealed, the Appellate Court held that the trial court should have allowed the filing and relation back of an amended complaint which would have substituted the deceased plaintiff's administrator, a living person, as the party-plaintiff. *Id.* at 470. The Appellate Court reasoned that the relation back provision of section 2-616 has been construed to preserve causes of action against loss ***by reason of technical rules of pleading***. *Id.* In other words, on the date of filing, the plaintiff made a technical mistake by naming the decedent rather than the decedent's administrator as a plaintiff.   In *Marcus*, the Appellate Court noted that cases filed against deceased individuals are a nullity, "void *ab initio*," and do not *invoke* the jurisdiction of the court. *Id.* at 468.

Here, in contrast, there was nothing the Plaintiff could have done differently as of the time of filing.  She had not exhausted her administrative remedies as to her IHRA claim and therefore could not sue on it.[3] ***Plaintiff's proposed amendment does not cure this flaw.*** Therefore, the

---

[3] In its February 9, 2022 Order, the Court held:

> Because Plaintiff failed to comply with 775 ILCS 5/7A-102(A-1)(1)(iv), the IDHR lacked jurisdiction to review Plaintiff's charge and the IDHR had no authority to issue a right to sue notice. Plaintiff therefore failed to exhaust her administrative remedies under the Illinois Human Rights Act and this Court lacks jurisdiction over this matter.

FIRM:55763763v2

CAU Removal 000374

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

relation back doctrine does not apply, and Plaintiff's motion should be denied because the four year statute of limitations for filing a § 1981 claim ran out years ago.

> ### b.    Plaintiff's Motion to Amend Four Years After Filing Her Original Complaint Amounts to Unreasonable and Unjust Delay.

Second, the proposed amendment is grossly untimely.  Plaintiff had many opportunities to amend her Complaint to include a §1981 claim of retaliation over the past four years, yet failed to do so until the eleventh hour. Plaintiff's motion does not explain why she waited ***four*** years after filing her original complaint and ***six*** years after the original underlying incidents to seek leave to amend her complaint to add a claim of retaliation under 42 U.S.C. § 1981. This delay is particularly unreasonable, given that the new theory is based on the same facts originally alleged in her complaint. (*See* Ex. 6, Pl. Am. Compl.; Pl. Mot. at ¶13). In other words, Plaintiff has not excused her delay by alleging additional facts supporting a § 1981 claim that were unknown to her at the time of her original filing. Furthermore, Plaintiff had multiple opportunities to amend her complaint during the past four years, including multiple rounds of briefing on two separate motions, yet waited to alert the court of her intention to do so until minutes before the Court ruled on Defendant's motion to reconsider.

Therefore, the timing of Plaintiff's motion amounts to unreasonable and unjust delay and should be denied on those grounds. *See Wingate v. Camelot Swim Club, Inc.*, 193 Ill.App.3d 963 (1990) ("Filing a motion to amend a complaint six years after the underlying incident occurred and four years after the original complaint was filed has been determined an unreasonable length of time."); *Nuchjare v Barrington Square V*, 2018 WL 3272123, 2017 IL App (1st) 152332-U, at ¶21 (July 28, 2017) (affirming the circuit court's denial of plaintiff's motion to amend because plaintiff could have sought leave to amend before she responded to defendant's dispositive motion, that

---

(emphasis added).

CAU Removal 000375

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

plaintiff had "two years in which to amend her complaint," and that her failure to explain why she did not attempt to amend her complaint until after the circuit court granted defendant's motion weighed in favor of denying her motion for leave to amend).

3.   **In Addition to The Other Defects Described Above, Plaintiff's Motion for Leave to Amend Should Be Denied Because She Cannot Bring a § 1981 Retaliation Claim Based on the Facts Asserted in Her Original Complaint, Rendering the Proposed Amendment Futile.**

Finally, Plaintiff's proposed amendment is futile because she cannot state a claim of retaliation under 42 U.S.C. § 1981 based on the facts asserted in her amended complaint. Sec. 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceeding for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The Supreme Court has interpreted this language to confer a cause of action on a person who suffers retaliation "because [s]he…tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008).

Illinois is a fact pleading jurisdiction. *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill.2d 300, 307 (1981). A complaint must allege sufficient facts to bring a plaintiff's claim for a remedy within the scope of a legally recognized cause of cation. *Teter v. Clemens*, 112 Ill.2d 252, 256 (1986). A court may deny a plaintiff's request to amend if it is apparent that even after amendment no cause of action can be stated. *See Bowers v. DuPage County Regional Board of School Trustees District No. 4*, 183 Ill.App.3d 367 (1989). To state a claim of retaliation under § 1981, Plaintiff must allege that she suffered an adverse employment action for helping a person

CAU Removal 000376

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

who suffered direct racial discrimination secure rights guaranteed under § 1981. *See CBOCS W., Inc.*, 553 U.S. at 452.

Plaintiff's proposed amendment fails to state a claim of retaliation under § 1981 because it does not allege that Plaintiff suffered an adverse employment action for helping a person who suffered direct racial discrimination secure rights guaranteed under § 1981. Though Plaintiff's proposed amended complaint alleges that CAU retaliated against her for "reporting discriminatory comments and conduct prohibited by Section 1981," Plaintiff does not specifically allege that she reported ***racial*** discrimination against anyone in contract with Defendant to anyone at CAU during her employment at CAU. (*See* Am. Compl., *inter alia*). Specifically, the following allegations capture the full extent of the alleged discriminatory conduct Plaintiff allegedly observed during her employment:

- "It was in her time as Program Manager in HBS that Ms. Abraham began to hear racially discriminatory, sexist, anti-Semitic, homophobic commentary from her co-workers." (Am. Compl. ¶14).

- "Upon information and belief, Ms. Voigt was known for…denying the African-American employees the chance to telecommute, while other non-African-American employees had that option. The telecommuting option was supposed to be seniority-based, but the African-American employees were skipped over when it was their turn to be given the telecommuting option." (Am. Compl. ¶16).

- "Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her co-workers and supervisors when speaking about clients and their families." (Am. Compl. ¶18).

- "On another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to 'Jew us down.'" (Am. Compl. ¶18).

Notably, Plaintiff's complaint only contains a single specific allegation of racial discrimination, related to her belief that her African American co-workers were denied

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

opportunities to telecommute.[4] However, Plaintiff's proposed amended complaint does not state that she reported this *specific* alleged discrimination to anyone at CAU. Nor does her proposed amended complaint allege that *she* reported *racial* discrimination to *anyone* at CAU. Plaintiff's conclusory allegations that she "report[ed] discriminatory comments and conduct prohibited by Section 1981" are insufficient under Illinois's fact pleading requirements to state a claim of retaliation under 42 U.S.C. § 1981 and therefore her motion should be denied on the grounds that her proposed amendment is futile.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Leave to File an Amended Complaint.

Date: April 18, 2022                                Respectfully submitted,

                                                    COMMUNITY ALTERNATIVES UNLIMITED

                                                    By: /s/ Peter A. Steinmeyer
                                                         One of Its attorneys

Peter A. Steinmeyer
Brenna R. McLean
Attorneys for Defendant
EPSTEIN BECKER & GREEN P.C.
227 W. Monroe St., Ste. 3250
Chicago, IL 60606
Tel: (312) 499.1400
psteinmeyer@ebglaw.com
brmclean@ebglaw.com
Firm ID #18494

---

[4] It is worth noting that denying a discretionary benefit, such as telecommuting, is not considered an adverse employment action. *See Haas v. Zurich N. Am.*, No. 05 C1421, 2006 WL 2849699, at *4 (N.D. Ill. Sept. 29, 2006) ("The fact that [the defendant] did not permit [the plaintiff] to work from home every time she requested…not an adverse employment action…[because it] is not an adverse employment action to refuse to grant an employee a discretionary benefit to which that employee is not necessarily entitled.").

FIRM:55763763v2

CAU Removal 000378

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney certifies that on April 18, 2022, he caused to be served a copy of

the foregoing memorandum of law via email and the Court's electronic filing system on:

Ruth I. Major
LAW OFFICES OF RUTH I. MAJOR, P.C.
30 W. Monroe Street, Ste. 1650
Chicago, IL 60603

/s/ Peter A. Steinmeyer

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000379

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 1

CAU Removal 000380

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
CALENDAR: 15
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| COMMUNITY ALTERNATIVES | ) |
| UNLIMITED, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

NOW COMES Plaintiff, Michelle Abraham, by her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Complaint against Defendant, Community Alternatives Unlimited ("CAU"), states as follows:

### INTRODUCTION

1.    Ms. Abraham was employed by CAU for over 17 years, until she was constructively discharged in or around December 2016. She was well-regarded by her co-workers and was promoted periodically within the company. In March 2016, she was suddenly placed on a Performance Improvement Plan ("PIP"), just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU. Throughout the PIP process, she was bullied and subjected to treatment that her co-workers who had not reported discriminatory conduct did not receive and the PIP was extended repeatedly. Following her successful completion of the PIP, Ms. Abraham was denied the opportunity to have a year-end evaluation and was therefore denied the ability to obtain a raise at the beginning of 2017. Under these circumstances, she was harassed continuously from the time she reported her

CAU Removal 000381

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 2 of 14

concerns until the time of her constructive discharge in retaliation for reporting racial, gender, and sexual orientation discrimination in her workplace, in violation of the Illinois Human Rights Act, 775 ILCS § 5/2-101, *et seq.*

2.     On March 3, 2017, Ms. Abraham filed a Charge of Discrimination against CAU with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") for the racial discrimination[1] and retaliation she was subjected to by CAU.

3.     The IDHR issued Notice of Dismissal to Ms. Abraham on November 21, 2017, granting Ms. Abraham to right to file a lawsuit in relation to these claims.

## PARTIES

4.     Ms. Abraham is a resident of the State of Illinois.

5     Defendant CAU is a not-for-profit company incorporated in Illinois in 1980, providing services to individuals with disabilities, with its principal place of business in Chicago, Illinois. At all times material to this Complaint, CAU was an employer within the definition of the IHRA, 775 ILCS § 5/2-101(B).

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter as each party to the Complaint is a citizen of Illinois or, in the case of CAU, is a corporation doing business in Illinois, organized under the laws of the State of Illinois. 735 ILCS §5/2-209.

7.     Plaintiff has exhausted her administrative remedies, as required by the IHRA, 775 ILCS § 5/1-101 *et seq.* This lawsuit was timely filed within 90 days of Plaintiff's receipt of the Notice of Dismissal issued by the IDHR and received on November 27, 2017.

---

[1] Ms. Abraham contends that her only claim was retaliation, and that she had not intended to file a racial discrimination claim, though one was included in the state and federal agencies' proceedings.

2

CAU Removal 000382

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 3 of 14

8.      Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and 735 ILCS § 5/2-102 because part of the transaction out of which the cause of action arose took place within Cook County, Illinois, and because CAU is considered a resident of Cook County, Illinois, through being authorized to transact business in Illinois and doing business in Cook County. Ms. Abraham's work was largely performed in Cook County and CAU's retaliatory acts took place in Cook County as well.

## FACTS

9.      Ms. Abraham was hired by CAU on or around November 2, 1999 as a case manager. In that role, she typically managed about 75 cases at a time, dealing with disabled individuals and their families to assist them in procuring the needed medical and social services, and was routinely assigned time- and labor-intensive cases which were too difficult for other case managers to handle. All of her performance evaluations, when she received formal performance evaluations, were positive. Her work was initially performed in dealing with individuals who were living in group homes, as part of the Bogard unit at CAU.

10.      When the Bogard unit's staff was decreased due to a declining case load, Ms. Abraham was transferred to the Community department at CAU, where she continued in her role as a case manager. Ms. Abraham was deemed valuable to the company and was told her skill set meant that she would work well in the same role, just in another department. The Community department integrated individuals with developmental disabilities within their communities to obtain needed services and involved a lot of one-on-one contact between the case managers and the clients, which Ms. Abraham was used to from her work on the time- and labor-intensive cases from the Bogard unit.

CAU Removal 000383

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 4 of 14

11.    In 2001, she was transferred to the Individual Service and Support Advocacy Unit ("ISSA"), which assisted in providing services for people with intellectual disabilities. There she performed case management work for CAU clients who received services that were funded through Medicaid. In this role, Ms. Abraham continued to receive positive performance reviews, up through the time she applied and received for a promotion to manager in 2007.

12.    In 2007, she was promoted to the position of Program Manager for ISSA. She worked in that role for nearly a decade. She was known as a strong advocate for her clients, would supervise the work of the case managers in the Department, and wrote performance evaluations for the people she supervised. She also participated in interviews for new hires in the Department and trained new hires in how to perform work for the ISSA. She served as a resource when the people she supervised needed assistance with their cases and was frequently the go-to person when complicated issues arose. Ms. Abraham held small group meetings at least once per month to manage her staff. She continued to receive positive performance reviews from her supervisors in this role as well.

13.    In 2009, she was transferred to Home Based Services ("HBS"), where she performed the Program Manager role in that department, performing the same tasks. In this position, she reported to HBS Department Director, Jennifer Rutka. Though Ms. Rutka insisted that everyone's performance reviews note areas in which an employee could improve, every year, Ms. Abraham still received positive performance reviews, even in her first review completed after moving to HBS, where she had double the workload of other Program Managers for the two-month period when she was transitioning between the ISSA and HBS Departments.

14.    It was in her time as Program Manager in HBS that Ms. Abraham began to hear racially discriminatory, sexist, anti-Semitic, homophobic commentary from her co-workers and

4

CAU Removal 000384

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018 CH 02497
PAGE 5 of 14

especially from her supervisor, Ms. Rutka, who was known for being rude when speaking about people who didn't do things in the exact way she wanted them to, commonly referring to such situations as involving people who would not "comply." Ms. Abraham kept her thoughts and feelings about these remarks to herself out of concern that reporting such conduct would not be well taken. She simply continued to supervise her staff, and advocate for her clients' best interests.

15.    Upon information and belief, these comments were not limited to Ms. Abraham's Department, HBS, as CEO Joanell Voigt would comment that she hoped a homosexual employee would not impact the office bathroom situation in any way "because that is ridiculous," and would ask how a homosexual employee could "expect us to respect him" given certain wardrobe choices the employee had supposedly made.

16.    Upon information and belief, Ms. Voigt was known for making fun of employees or other individuals she suspected of being homosexuals, and for denying the African-American employees the chance to telecommute, while other non-African-American employees had that option. The telecommuting option was supposed to be seniority-based, but the African-American employees were skipped over when it was their turn to be given the telecommuting option.

17.    On or around March 17, 2016, Ms. Abraham was approached by the HR Director, Ms. Biermann, who said Ms. Abraham was due for a training session. Rather than training, however, the session consisted of Ms. Biermann asking Ms. Abraham numerous questions about HBS over the course of an approximately three-hour long meeting. The "training" meeting appeared to be a ruse to give Ms. Biermann the opportunity to gather information about Ms. Abraham.

18.    Though she initially was hesitant to engage in the discussion, Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her co-

5

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 6 of 14

workers and supervisors when speaking about clients and their families. Ms. Rutka specifically commented on a homosexual man who worked with CAU that he was nice, but sometimes she preferred to work with "a man's man." On another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to "Jew us down." Ms. Abraham also shared that such comments were made about others within CAU, as part of the instructions supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress. Finally, she shared that Ms. Rutka in the past engaged in retaliatory conduct and that Ms. Abraham would not participate in such conduct.

19.     Upon information and belief, following this meeting, Ms. Biermann reported the substance of her conversation with Ms. Abraham to others at the same level as the HR Director within CAU.

20.     The very next day, during a managers' meeting that Ms. Abraham attended, Ms. Rutka baited Ms. Abraham into a discussion about the comments Ms. Abraham made to Ms. Biermann the day before and about paperwork Ms. Abraham was supposedly behind in completing. Ms. Abraham stated that she would be caught up on the paperwork within two weeks. The discussion then became very emotional between Ms. Abraham and Ms. Marlene Russo, Ms. Abraham's intermediate supervisor, because Ms. Russo was screaming at Ms. Abraham. Eventually, after Ms. Abraham broke into tears, Ms. Rutka ended the meeting.

21.     On or around March 21, 2016, less than one week after Ms. Abraham reported the unlawful discriminatory conduct of CAU, Ms. Abraham was called into a meeting in the HR office, attended by Ms. Rutka, Ms. Russo, and Ms. Biermann. Ms. Rutka stated that Ms. Abraham was

6

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

being placed on a PIP, and then immediately asked if she was going to resign. When Ms. Abraham said she wouldn't resign, the meeting continued with Ms. Biermann stating that they would proceed with the PIP. Ms. Rutka remarked that she did not want to "waste time" with the PIP if Ms. Abraham "was going to quit in two weeks."

22.     During the course of the multiple-hour meeting about the PIP, Ms. Abraham was subjected to harsh commentary about the supposed deficiencies with her work, deficiencies which had never been expressed to Ms. Abraham before this meeting. She asked questions to clarify what was being communicated to her about her role, because the information provided in association with the PIP so greatly deviated from the standard operating procedures of CAU, which she had been using for over 15 years at that time, and which she had been following when she received all of her positive performance reviews in years past.

23.     In response to her clarifying questions, Ms. Abraham was rudely asked whether she had any common sense and condescending questions such as, "you've been a manager for how long?" She was informed that Ms. Rutka thought staff should not be coming to Ms. Abraham to ask questions if Ms. Abraham doesn't know the answers to their questions, and if not, then "how can [she] manage?" She was also informed that CAU was questioning whether she could be trusted in her Program Manager role in HBS.

24.     The PIP itself addressed supposed problems which were in fact ongoing issues that were commonly encountered in case management work by all employees working in this area, including issues related to completing the voluminous paperwork involved in case management, and which typically would not have merited placing someone on a PIP. When Ms. Abraham had needed to speak to a case manager she supervised about similar issues in the past, she would address the issues with the employee, and would not place the employee on a PIP. Ms. Abraham

7

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 8 of 14

had never heard of anyone at CAU being placed on a PIP for issues such as the ones raised in her PIP.

25.     The PIP also placed unrealistically short time frames on the completion of the objectives of the PIP, especially in consideration of the fact that the PIP demanded Ms. Abraham deviate from the standard operating procedures she had been using for over 15 years.

26.     These deadlines were known to be extreme by others at CAU. Ms. Abraham overheard other senior managers speaking one day about the deadlines imposed for the completion of her paperwork. The senior managers were concerned that CAU might hold them to the same standards, and they were commenting that they did not know how they would get their paperwork done if the same deadlines that were imposed on Ms. Abraham were to be imposed on their work.

27.     Within a few days of receiving the PIP, Ms. Abraham began to receive calls from her clients and their families, who reported that they had been called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do.

28.     One such called was placed to the Executive Director of an agency HBS worked with, whose child was among the individuals Ms. Abraham assisted with services. The Executive Director mentioned that he told whoever called that Ms. Abraham did wonderful work, and that he was surprised to have received such a call because Ms. Abraham was doing great work for his child.

29.     The PIP was supposed to run for thirty days, after which Ms. Abraham's performance would be reevaluated to determine if she had met the goals set by the PIP. Instead, the PIP period was extended multiple times, so that it actually ran for 90 days. Each time the PIP was extended, new false complaints about Ms. Abraham's performance were added, in an apparent

8

CAU Removal 000388

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 9 of 14

attempt to convince her to stop fighting the PIP and to just resign, as Ms. Rutka had suggested in the initial PIP meeting in March 2016.

30.     While on the PIP, Ms. Abraham was subjected to extreme scrutiny, as she was informed that her "comings and goings" were being monitored by her supervisors, implying that they were keeping her under surveillance while she was at work. She also had her files audited and re-audited, sometimes through multiple managers reviewing the same files over and over again, examining aspects of the files that dated back several months, to dates before the PIP period began.

31.     During the PIP period, Ms. Abraham frequently worked late into the evening, sometimes as late as 11:00 p.m., to try to complete all of her paperwork and meet the unrealistic deadlines the PIP provided for the completion of her work. Because Ms. Abraham was salaried, she was not paid any overtime for the extra hours she worked to accomplish the requirements set for her in the PIP.

32.     In June 2016, Ms. Abraham was deemed to have successfully completed the PIP.

33.     However, Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with, the people they believed she might confide in, and asked these people questions about her personal life, outside of work, in an attempt to harass her and dig up any information they could use to push her out of the company.

34.     Following the completion of the PIP, Ms. Abraham was accused multiple times of demanding a promotion, something she never did. She was also threatened that she would be demoted.

35.     As the end of 2016 approached, CAU refused to provide Ms. Abraham with an annual performance review, which meant that she could not receive a raise in 2017. Instead of conducting a performance review, CAU stated that the PIP took the place of an annual performance

9

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 10 of 14

review, even though the PIP was *successfully* completed in June, and half of the year still remained at the time that the PIP was completed. Ms. Biermann stated that this should be acceptable to Ms. Abraham because annual reviews only encouraged managers to discuss negative aspects of an individual's performance, despite the fact that Ms. Abraham's prior annual performance reviews had been positive up to that point in time.

36.     Under these circumstances, Ms. Abraham went to work every day because she loved her work and enjoyed working with and for her clients. She was subjected to extreme stress and emotional distress on a daily basis, though, through CAU's treatment of her. Though it was difficult to leave the career she had built over the course of 17 years, Ms. Abraham was subjected to such conditions in her everyday life at CAU that she eventually resigned in December of 2016 because it was obvious that CAU would continue to engage in conduct designed to force her to resign her position. She provided 30 days of notice to ease the transition of her clients to other staff at CAU. Not surprisingly, CAU made no effort to talk Ms. Abraham into staying.

37.     Finally, after she learned that Ms. Abraham had filed a Charge of Discrimination related to her encounters with CAU, Ms. Biermann contacted Ms. Abraham and suggested that she would be taking leave from her position at CAU because she had come to experience similar retaliation for looking into the complaint made by Ms. Abraham and the statements shared by Ms. Abraham in the March 2016 meeting.

## COUNT I – UNLAWFUL RETALIATION FOR OPPOSING UNLAWFUL CONDUCT, IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

38.     Plaintiff restates and realleges by reference paragraphs 1 through 37 as paragraph 38 of Count I.

39.     CAU is an employer as defined by the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*, which prohibits retaliation for opposing unlawful conduct.

10

CAU Removal 000390

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 11 of 14

40.     Ms. Abraham engaged in activity that is protected by the Illinois Human Rights Act when she reported to HR the racist, sexist, anti-Semitic, and homophobic conduct and statements of her co-workers in her Department.

41.     CAU placed Ms. Abraham on a PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to convince her to resign. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to similar unfavorable terms and conditions in employment as Ms. Abraham designed to force her to resign.

42.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

43.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had their clients and clients' families called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

44.     Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance

11

CAU Removal 000391

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 12 of 14

deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had PIPs which were supposed to last for thirty days but were extended to the point that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

45.     Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

46.     Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to mistreatment by their supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

12

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

ELECTRONICALLY FILED
3/23/2018 7:40 PM
2018-CH-02497
PAGE 13 of 14

47.     Ms. Abraham was falsely accused of demanding a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were falsely accused of demanding a promotion or threatened that they would be demoted.

48.     Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act was denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

49.     Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

50.     As a direct and proximate result of the Defendant's conduct, Ms. Abraham has suffered damages, including but not limited to, pain and suffering, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

**WHEREFORE** Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A.     An award of damages for lost wages, including back pay and front pay;

CAU Removal 000393

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

B.     An award of compensatory damages including pain and suffering and emotional distress;

C.     An award of pre-judgment interest;

D.     An award of punitive damages;

E.     Attorneys' fees and costs; and

F.     Such other and further relief as may be just in law and in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

ELECTRONICALLY FILED
2/23/2018 7:40 PM
2018-CH-02497
PAGE 14 of 14

Dated: February 23, 2018

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45937

14

CAU Removal 000394

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 2

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,                                    )
                                                     )
            Plaintiff,                               )
                                                     )
      v.                                             )        Case No. 2018-CH-02497
                                                     )        Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,                    )
                                                     )
            Defendant.                               )

## NOTICE OF MOTION

TO:    Ruth Major
       Law Offices of Ruth Major
       30 W. Monroe St. – Suite 1650
       Chicago, IL 60603

       PLEASE TAKE NOTICE that on May 16, 2018 at 9:30 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Kathleen Pantle or any judge sitting in Room 2410 of the Richard J. Daley Center, 50 W. Washington St., Chicago, Illinois and there and then present **DEFENDANT'S MOTION TO DISMISS**, a copy of which is attached and served upon you.

                                          By: _____
                                                     One of its attorneys

Julie Badel
Michelle Marks
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
(312) 499-1400
Attorney ID# 18494

## CERTIFICATE OF SERVICE

       The undersigned attorney hereby certifies that she served this notice and the referenced motion and supporting memorandum of law by email and by mailing a copy to Ruth Major, Law Offices of Ruth Major, at the address reflected above by depositing the same in the U.S. Mail at 227 W. Monroe St., Chicago Illinois on May 10, 2018 before the hour of 5 p.m.

                                          _____

Firm:6063664v2

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2018-CH-02497 |
| | ) | Calendar: 15 |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
### PURSUANT TO SECTION 2-619 OF THE CODE OF CIVIL PROCEDURE

Defendant, Community Alternatives Unlimited, moves the court to dismiss Plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust administrative remedies, for lack of jurisdiction and for failure to serve the summons and complaint within the limitations period. A memorandum of law and an affidavit with exhibits are attached and incorporated as part of this motion.

WHEREFORE, Defendant moves that the court dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure.

COMMUNITY ALTERNATIVES UNLIMITED

By: /s/ Julie Badel
One of its attorneys

Julie Badel
Michelle Marks
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000397

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

### CERTIFICATE OF SERVICE

The undersigned attorney certifies that she served a copy of the foregoing motion to dismiss via U.S. mail and email this 10 day of May 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

Firm:45835549v4

2

CAU Removal 000398

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE ABRAHAM,                      )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        Case No. 2018-CH-02497
                                       )        Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,      )
                                       )
            Defendant.                 )

<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff's complaint should be dismissed pursuant to section 2-619 of the Illinois Code

of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust her administrative remedies before

the Illinois Department of Human Rights ("IDHR") and because the court does not have

jurisdiction over her claim. More specifically, Plaintiff failed to submit the EEOC's determination

to the IDHR to review during the 30 day period permitted by law for her to do so. As a result,

the IDHR dismissed Plaintiff's charge of discrimination for lack of jurisdiction and without

investigating it, and Plaintiff has failed to exhaust her administrative remedies. In addition, the

Illinois Human Rights Act and its regulations do not provide Plaintiff with a right of court review

under these circumstances. Lastly, even if Plaintiff had exhausted her administrative remedies,

Plaintiff's complaint should still be dismissed pursuant to Illinois Supreme Court Rule 103(b)

because Plaintiff failed to obtain service on Community Alternatives Unlimited ("CAU" or

"Defendant") prior to the expiration of the applicable statute of limitations.

FACTS

Plaintiff's charge of employment discrimination with the U.S. Equal Employment

Opportunity Commission ("EEOC") is dated March 3, 2017. (Affidavit of Joanell Voigt at ¶2, Ex.

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

A) On May 1, 2017, the IDHR sent Plaintiff a letter stating that pursuant to a cooperative agreement between the EEOC and the IDHR, when she filed her charge with the EEOC, a copy of the charge was automatically filed with the IDHR. Because Plaintiff filed her charge with the EEOC, that agency was primarily responsible for investigating her claim. But if Plaintiff wanted the IDHR to conduct its own investigation of her charge, she needed to submit the EEOC's findings to the IDHR within thirty days of receiving the EEOC's findings. (*Id.* at ¶3, Ex. B)

The EEOC issued its dismissal on June 2, 2017, finding that the information obtained during its investigation did not establish a violation of the applicable statutes. (*Id.* at ¶4, Ex. C) By law, Plaintiff had thirty days from receiving this dismissal to notify the IDHR of this determination. 775 ILCS 5/7A-102(A-1)(3), 56 Ill. Adm. Code §2520.490(d). Defendant was notified by letter from the IDHR, dated October 12, 2017, that Plaintiff asked the IDHR to investigate her charge. (Voigt Aff. at ¶5, Ex. D)

Defendant has no independent knowledge of when the Plaintiff notified the IDHR of the EEOC dismissal, but according to the IDHR, she did not ask the IDHR to do so until September 8, 2017 (Voigt Aff. at ¶6, Ex. E), over ninety days after the date of the dismissal. As a result, the IDHR dismissed Plaintiff's charge due to lack of jurisdiction on November 21, 2017. (*Id.*)

Plaintiff filed this suit on February 23, 2018, alleging she exhausted her administrative remedies because she filed suit within ninety days of receipt of the IDHR's notice of dismissal, which she claims was November 27, 2017. (Compl. ¶7) Nowhere in the complaint does Plaintiff claim that she timely asked the IDHR to investigate her charge. Instead, she alleges fifty paragraphs of wrongs allegedly committed by the Defendant, none of which have been raised before or investigated by the IDHR.

Firm:45835549v9

CAU Removal 000400

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

Even if Plaintiff's claim was properly before this court, Defendant was not properly served with the complaint and summons until April 12, 2018 – well past the applicable 90-day statute of limitations. Although Plaintiff's counsel emailed the complaint to Defendant's counsel on March 19, 2018, this also was well past the limitations period. Plaintiff's EEOC charge alleged race discrimination and retaliation with almost no details (Voigt Aff. Ex. A), so Defendant had no knowledge of Plaintiff's claims set forth in this complaint until way beyond the limitations period.

## ARGUMENT

I.   **The Complaint Should Be Dismissed Pursuant to Section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, Because Plaintiff Failed To Exhaust Her Administrative Remedies and the Court Lacks Jurisdiction over Her Claim.**

A brief review of the Illinois Human Rights Act and its regulations will provide the background to illustrate Plaintiff's failure to exhaust her administrative remedies. The process begins with an aggrieved individual filing a written charge of discrimination. If a charge is filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged civil rights violation, the charge is deemed to have been filed with the Illinois Department of Human Rights ("IDHR") on the same day it was filed with the EEOC. Illinois Human Rights Act, 775 ILCS 5/7A-102(A-1)(1). The IDHR then notifies the parties that (a) the EEOC charge has been sent to the IDHR for dual filing purposes, (b) the EEOC will investigate the charge, (c) the IDHR will take no action on the charge until the EEOC issues its determination, and (d) the complainant must submit a copy of the EEOC's determination to the IDHR within thirty days of service of the determination on the complainant. (*Id.*) *See also* 56 Ill. Admin. Code §2520.490

CAU Removal 000401

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

(c)(1)-(5).  In this case, the IDHR notified the parties of these statutory provisions in its May 1, 2017 letter. (Voigt Aff. ¶3, Ex. B)

In cases like this one, where the EEOC determines that it is unable to establish that illegal discrimination occurred and issues the charging party[1] a right to sue notice, he or she must notify the IDHR within thirty days of receiving the dismissal.  775 ILCS 5/7A-102(A-1)(3), 56 Ill. Admin. Code §2520.490(c)(4).  Then the IDHR notifies the parties that it will adopt the EEOC's dismissal as a lack of substantial evidence unless the complainant asks the IDHR to review that determination within 35 days.  775 ILCS 5/7A-102(A-1)(3).

On the other hand, if the complainant does not timely provide the IDHR with the EEOC dismissal, the regulations provide that:

> If the complainant fails to submit a copy of the EEOC's final determination to the Department within 30 days after receipt of the EEOC's final determination, the Department may dismiss the charge for lack of jurisdiction.  The complainant may request to have the Illinois Human Rights Commission review the Department's determination that it lacks jurisdiction over the charge by filing a request for review with the Illinois Human Rights Commission within 90 days after receipt of the Department's Notice of Dismissal. . . .

Id. at 2520.490(d).

In this case, because Plaintiff did not timely notify the IDHR of the EEOC dismissal, the IDHR dismissed her claim for lack of jurisdiction.  Her only recourse from that dismissal under either the statute or the regulations was to file a request for review with the Illinois Human Rights Commission.  56 Ill. Admin. Code §2520.490 (d).  Although the IDHR also gave her the option of filing a civil suit (Voigt Aff. at ¶6, Ex. E),  that is not a remedy that is authorized by

---

[1] Before the EEOC, the aggrieved individual is referred to as the charging party.

CAU Removal 000402

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

either the Illinois Human Rights Act or its implementing regulations, and this court does not have jurisdiction over Plaintiff's claim.

A plaintiff must first exhaust administrative remedies and only then does the statute authorize a civil suit. 775 ILCS 5/7A-102(A)(3). Long standing legal principles dictate that an aggrieved person cannot sue in the courts for employment discrimination without first exhausting the administrative remedies set forth in the Illinois Human Rights Act. *See e.g., Dilley v. Americana Healthcare Corp.*, 129 Ill.App.3d 537, 540, 472 N.E.2d 596, 599 (4th Dist. 1984); *Thakkar v. Wilson Enterprises, Inc.*, 120 Ill.App.3d 878, 882-83, 458 N.E.2d 985, 988 (1st Dist. 1983). An individual "aggrieved by the action of an administrative agency, such as the Human Rights Commission,[2] ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to them." *Castaneda v. Illinois Human Rights Com.*, 132 Ill. 2d 304, 308, 547 N.E.2d 437, 439 (1989).

In *Castaneda*, the court held that to allow judicial review of a decision of a three member panel of the Illinois Human Rights Commission without the aggrieved party filing an application for rehearing thwarted the purposes of the exhaustion doctrine. *Id.* at 323.. *See also Children's Mem. Hosp. v. Ill. Dep't Corr.*, 61 Ill. Ct. Cl. 234, 237 (2009) (action must be dismissed with prejudice for failure to exhaust remedies where claimant failed to timely pursue an action against an alternative source); *Hansen v. State of Ill.*, 52 Ill. Ct. Cl. 437, 439, 1999 Ill. Ct. Cl. LEXIS 51, *2 (1999) (failure to exhaust remedies against other tortfeasor requires dismissal); *Lyons v. State of Illinois*, 34 Ill. Ct. Cl. 268, 271 (1981) (claimant's failure to sue

---

[2] The Illinois Human Rights Commission is the companion agency to the Illinois Department of Human Rights. While the IDHR's primary function is to investigate charges of discrimination, the Commission's primary task is to adjudicate claims of discrimination. 775 ILCS 5/8-102(G).

5

construction companies before suing the state indicated he failed to exhaust his administrative remedies). The *Castaneda* court also pointed out a provision of the Administrative Review Law that states if "an administrative decision has become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed* * * such decision shall not be subject to judicial review" except for questioning jurisdiction. *Id.* at 320..

A variety of reasons supports the exhaustion doctrine: (1) it allows the agency to fully develop and consider the facts; (2) it allows the agency to utilize its expertise; (3) it allows the aggrieved party to succeed, making judicial review unnecessary; (4) it protects agency processes from avoidable interruptions; (5) it allows the agency to correct its own errors; and (6) it conserves valuable judicial resources by avoiding piecemeal appeals. *Id. See also Robinson v. Village of Oak Park, 2013* IL App. (1st^t) 121220, P7, 990 N.E.2d 251, 255 (1st Dist. 2013) (court must determine whether plaintiff timely exhausted all of her administrative remedies in order to determine whether it has jurisdiction); *Ill. HMO Guar. Ass'n. v. Shapo*, 357 Ill. App. 3d 122, 133, 826 N.E.2d 1135, 1145 (1st Dist. 2005) (cannot seek review in the counts without pursuing all administrative remedies).

Plaintiff has forfeited any right to pursue her claim by not timely providing the EEOC determination to the IDHR. In so doing, she has failed to exhaust her administrative remedies. All of the evils the exhaustion doctrine is intended to curb occur as a result. The IDHR has not had a chance to develop the facts and to use its expertise. This hardly serves to conserve scarce judicial resources.

CAU Removal 000404

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

The Illinois Human Rights Act also provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." *Castaneda*, 132 Ill. 2d at 322, citing Ill. Rev. Stat. 1987, Ch. 68, par. 8-111(C).   Plaintiff's current complaint was not filed in accordance with the requirement of the Act.  Allowing the Plaintiff in this case to obtain a hearing *de novo* on the merits of her case, without first timely requesting and obtaining an IDHR investigation, would allow claimants to thwart the agency procedures merely by asking the IDHR to review an EEOC finding in an untimely manner. Surely, the legislature could not have intended such an absurd result.  Thus, the complaint in this case should be dismissed pursuant to section 2-619(a)(1) and (9) of the Code of Civil Procedure, 735 ILCS 5/2-619, because of Plaintiff's failure to exhaust her administrative remedies. *See, e.g., Klinkner v. DuPage,* 331 Ill. App. 3d 48, 50-52, 770 N.E.2d 734, 735-737 (2nd Dist. 2002) (dismissing retaliatory failure to rehire claim for failure to exhaust administrative remedies); *Goldberg v. Rush University,* 371 Ill. App. 3d 597, 600, 309 Ill. Dec. 197, 201 (1st Dist. 2007) (dismissal under section 2-619 for failure to exhaust the grievance procedure).

II.   **Plaintiff's Complaint Also Should Be Dismissed Pursuant To Illinois Supreme Court Rule 103(b) Because She Failed To Timely Serve Defendant With The Complaint and Summons.**

Even if plaintiff had exhausted her administrative remedies and her claim was properly before the Court, her complaint should still be dismissed because she failed to timely serve Defendant with the complaint and summons.

Pursuant to Illinois Supreme Court Rule 103(b), if a plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of

CAU Removal 000405

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

(dismissing pursuant to Rule 103(b) where "the plaintiff's conduct in the case...in effect, extended the statute of limitations and thereby abridged Rule 103(b).")

Plaintiff has failed to show any justification for her delay in effectuating proper service to CAU prior to the expiration of the statute of limitations. Plaintiff's lack of knowledge regarding the Sheriff's requirements does not constitute an unusual circumstance that hindered her ability to serve CAU, as such information would have been easily ascertainable. In any event, all of her attempts to serve CAU occurred after the statute of limitations had already expired. *See, e.g., Long v. Elborno*, 376 Ill. App. 3d 970, 980 ("delay, even when inadvertent and unintentional, provides no support for [plaintiff's] position because the reasonable diligence requirement in Supreme Court Rule 103(b) is not based upon a subjective test of plaintiff's intent but rather upon the objective test of reasonable diligence in effectuating service."); *Emrikson v. Morfin*, 2012 IL App (1st) 111687, *17 (1st Dist. 2012) ("[i]n the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal.")

Even putting aside the fact that the statute of limitations had expired prior to Plaintiff serving CAU with the complaint and summons – which, alone, justifies dismissal -- Plaintiff hasn't shown that she otherwise exercised reasonable diligence in serving CAU under Rule 103(b). Plaintiff appears to argue that the duration between filing a complaint and serving it is dispositive as to whether a plaintiff has exercised reasonable diligence. However, even in the case she most heavily relies on, *Segal v. Sacco*, the court weighed several other factors in determining whether the plaintiff exercised reasonable diligence, such as the inadvertent nature of the delay, the plaintiff's activities during the delay, and the effect of the delay on the applicable statute of limitations. *Segal*, 136 Ill.2d at 287-288.

Firm:46501325v2

CAU Removal 000406

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

Likewise, in the *Kole*, *Emrikson*, and *Long* cases cited by CAU in its Motion, the courts made clear that the duration of the delay is only one factor in the analysis and that the plaintiff's activities during the delay and knowledge of the defendant's whereabouts during that period are just as relevant. *See, e.g., Emrikson*, 2012 IL App (1st) at *22 ("what troubled the court was not the time that elapsed between service and filing, but plaintiff's activities during that time, when considered in light of the ease of locating defendant and plaintiff's own knowledge of defendant's location."); *Kole v. Brubaker*, 325 Ill. App. 3d 944, 950-951 (1st Dist. 2001) (focusing on plaintiff's knowledge of defendant's whereabouts and finding that plaintiff's "idleness" during the delay was not a proper excuse justifying lack of service); *Long*, 376 Ill. App. 3d at 980-982 (dismissing based on several factors other than duration of delay that indicated lack of reasonable diligence). Thus, Plaintiff's apparent conclusion that a 48 day delay between filing and serving is, *per se*, reasonable under Rule 103(b) is simply incorrect.

Lastly, Plaintiff seems to be arguing that her suit should not be dismissed pursuant to Rule 103(b) because CAU had received a file-stamped copy of the complaint (without the summons) 24 days after it was filed. However, such a factor is not dispositive. *Karpiel v. LaSalle Nat'l Bank*, 119 Ill. App. 2d 157, 161 (2d Dist. 1970) ("[a]ctual knowledge of the suit on the part of defendants will not prevent [dismissal pursuant to Rule 103(b)]."); *Emrikson*, 2012 IL App (1st) 111687 at *27 (neither knowledge of pendency of suit nor lack of prejudice to defendant preclude a trial court from finding lack of reasonable diligence). And, as stated above, none of Plaintiff's attempts to contact or serve CAU, including her emailing a file-stamped complaint without the summons, occurred within the statute of limitations. Plaintiff made no effort to effectuate proper service *before* the statute of limitations had run and there were no impediments to doing so. Allowing

9

CAU Removal 000407

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

Plaintiff's suit to continue would unreasonably protract the statute of limitations and thwart the very purpose of Rule 103(b).  Thus, Plaintiff's complaint should be dismissed with prejudice on this basis.

## CONCLUSION

WHEREFORE, Plaintiff's complaint should be dismissed with prejudice pursuant to section 2-619 of the Code of Civil Procedure for failure to exhaust her administrative remedies, for lack of jurisdiction and for failure to exercise reasonable diligence to serve Defendant with the complaint and summons prior to the expiration of the applicable statute of limitations.

COMMUNITY ALTERNATIVES UNLIMITED

By:     /s/ Julie Badel
        One of its attorneys

Julie Badel
Michelle Marks
Attorney for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
jbadel@ebglaw.com
mgmarks@ebglaw.com
Attorney ID #18494

Firm:46501325v2

CAU Removal 000408

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that she served a copy of the foregoing memorandum

of law via U.S. mail and email this 11th day of July 2018 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Julie Badel

Firm:46501325v2

CAU Removal 000409

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS )      SS
COUNTY DEPARTMENT, CHANCERY DIVISION        )

MICHELLE ABRAHAM,                          )
                                           )
            Plaintiff,                     )
                                           )
    v.                                     )      Case No. 2018-CH-02497
                                           )      Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,          )
                                           )
            Defendant.                     )

## AFFIDAVIT

Pursuant to the certification set forth below, Joanell Voigt states as follows.

1. I am President and Chief Executive Officer of Community Alternatives Unlimited ("CAU"), the Defendant in the above case.

2. In March 2017, I received from the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination purportedly filed by Michelle Abraham, a former CAU employee, on March 3, 2017. A copy of that charge is attached as Ex. A.

3. On or about May 4, 2017, I received a copy of a letter the Illinois Department of Human Rights ("IDHR") sent to Abraham. The letter indicated that the EEOC was responsible for investigating Abraham's charge, and if Abraham wanted the IDHR to take any further action on her charge, she needed to send the IDHR a copy of the EEOC's findings within thirty days of service. A copy of that letter is attached as Ex. B.

4. In June 2017, I received the EEOC's dismissal of Abraham's charge, dated June 2, 2017. In that notice, the EEOC indicated it "was unable to conclude that the information obtained establishes violations of the statutes." The notice advised Abraham that she could file suit under federal law in either federal or state court within 90 days of receiving the notice. A copy is attached as Ex. C.

5. In October 2017, I received a copy of a letter from the IDHR to Abraham indicating she had opted to have her EEOC charge investigated by the IDHR. (Ex. D)

Firm 45835349v8

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

6.  In late November 2017, I received a dismissal notice for lack of jurisdiction and an investigation report from the IDHR. The investigation report recited some of the facts set forth above but also stated that Abraham did not submit a copy of the EEOC's findings to the IDHR until September 8, 2017. This was several months after the 30 day deadline for her to do so. As a result, the IDHR dismissed Abraham's charge for lack of jurisdiction but allowed her to seek review of the dismissal with the Illinois Human Rights Commission or to file a civil action in court. These documents are attached as Ex. E.

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that she verily believes the same to be true.

Joanell Voigt

Date: May 8, 2018

2

Firm:45835549v8

CAU Removal 000411

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT A

CAU Removal 000412

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2017-02387 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Michelle Abraham** | | 1972 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **611 E. Ironwood Drive, Mount Prospect, IL 60056** | | |

RECEIVED EEOC
MAR 3 2017
CHICAGO DISTRICT OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **COMMUNITY ALTERNATIVES UNLIMITED** | **101 - 200** | **(773) 867-3000** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **8765 West Higgins,  Chicago, IL 60631** | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest                    Latest: **01-31-2017** |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or before November 2, 1999.  My most recent position was Program Manager.  During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent.  Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny.  I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Mar 03, 2017 ___ X_Michelle S. A_ <br> *Date          Charging Party Signature* | |

EXHIBIT A

CAU Removal 000413

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT B

CAU Removal 000414

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

ILLINOIS DEPARTMENT OF



**Human Rights**

Bruce Rauner, Governor
Janice Glenn, Acting Director

RECEIVED

MAY 04 2017

COMMUNITY
ALTERNATIVES UNLTD.

May 1, 2017

Ms. Michelle Abraham
611 East Ironwood Drive
Mt. Prospect, IL 60056

Re: CASE NO:   Michelle Abraham vs. Community Alternatives Unlimited #170428007

Dear Complainant:

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. After the EEOC issues its findings, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's

findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

By Mail:     Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

In Person:   Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. This process does not affect the investigation of your charge at EEOC. If you do not wish to proceed with the Department, you do not need to take any further action.

This letter does not apply to any settlement of this charge the parties have made with the EEOC.

If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.

ILLINOIS DEPARTMENT OF HUMAN RIGHTS.

REI  EEOC 30 Rev 4/17

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463

CC:

Community Alternatives Unlimited
8765 West Higgins
Chicago, IL 60631

EXHIBIT B

CAU Removal 000415

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT C

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Michelle Abraham<br>611 E. Ironwood Drive<br>Mount Prospect, IL 60056 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative<br>**Eva Baran,**<br>**Investigator** | | Telephone No. |
| 440-2017-02387 | | | **(312) 869-8023** |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Julianne Bowman_      6/2/17

Enclosures(s)

**Julianne Bowman,**
**District Director**

(Date Mailed)

cc:   COMMUNITY ALTERNATIVES UNLIMITED
c/o Julie Badel
Epstein Becker Green
227 West Monroe Street #3250
Chicago, IL 60606

EXHIBIT C

CAU Removal 000417

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT D

ILLINOIS DEPARTMENT OF

# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

October 12, 2017

**RESPONDENT'S COPY**

MICHELLE ABRAHAM
**C/O RUTH IRENE MAJOR, MEMBER**
LAW OFFICES OF RUTH I. MAJOR
30 WEST MONROE STREET, SUITE 1650
CHICAGO, IL 60603 – 2436

RE:  Charge No.:  **2017CR3337**
  Respondent:  **COMMUNITY ALTERNATIVES UNLIMITED**

Complaint or Civil Action Filing Dates:  **6/3/2018**  through  **8/31/2018**

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ('EEOC') investigated by the Illinois Department of Human Rights ('IDHR') under the Illinois Human Rights Act.  IDHR has received a copy of EEOC's determination and your request for the Department to investigate.  A copy of the charge has been served on the Respondent.  Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge.  If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition.  If we do not have copies of these documents in your file, we have included copies with this notice.

1)  **Verification of Disability.**
Please give the Verification of Disability form to your physician for completion.  Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)  **Consent form.**
The consent form allows IDHR to review your physician's documentation.  Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge.  It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned. IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge.  IDHR's investigation time may be extended if you and Respondent agree in writing.

**EXHIBIT D**

CAU Removal 000419

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

PAGE 2

If IDHR does not complete the investigation of your case by timely issuing its report of findings, you may either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court within 90 days after the expiration of the 365 days (or the extended time). We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Human Rights Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside this 90-day period, your complaint or civil action may be deemed untimely and dismissed.

Once 455 days (365 days [or the extended time] plus 90 days) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Human Rights Commission, or commenced a civil action in the appropriate court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. Please also serve a copy of your complaint on the EEOC: 500 West Madison Street, Suite 2000, Chicago, IL 60661 – 2592. If you file a complaint with the Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

SB1122 IN-6 Non-Med
CR/SR
4/17

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT E

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) ss | |
| COUNTY OF COOK | ) | FILE NO (S) 2017CR3337 |

### AFFIDAVIT OF SERVICE

Janice L. Woods-Wills, deposes and states that she served a copy of the

attached **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** on each person

named below by depositing same this 21ST day of November, 2017, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Janice L. Woods-Wills

### PLEASE NOTE:

The above-signed person is responsible only for mailing these documents. If you wish a review of the finding in this case, you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

EXHIBIT E

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | Michelle Abraham | **IDHR No.:** | 2017CR3337 |
| **Respondent:** | Community Alternatives Unlimited | **EEOC No.:** | 440-2017-02387 |

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR    **Date:** 10/25/17

**Issue/Basis:**                                      **Finding:**

A. Harassment/race, black                    A. Lack of Jurisdiction
B. Placed on performance plan/retaliation    B. Lack of Jurisdiction
C. Constructive discharge/race, black        C. Lack of Jurisdiction
D. Constructive discharge/retaliation        D. Lack of Jurisdiction

**Jurisdiction:**

| | | |
|---|---|---|
| Alleged violations: | A.-D.: | 1/31/17 |
| Charge filed: | | 3/3/17 |
| Charge perfected: | | 6/2/17 |
| | | |
| Number of employees: | | 101-200 |

**Findings**

On March 3, 2017, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On May 1, 2017, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On September 8, 2017, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

CAU Removal 000423

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF: )
)
MICHELLE ABRAHAM, )
)
          COMPLAINANT, )    CHARGE NO.  2017CR3337
)      EEOC NO.   440-2017-02387
AND )
)
COMMUNITY ALTERNATIVES )
  UNLIMITED, )
)
          RESPONDENT. )

### NOTICE OF DISMISSAL
### FOR LACK OF JURISDICTION

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

DATE OF DISMISSAL:  November 21, 2017

1.     YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT jurisdiction to pursue the allegations of the charge.  Accordingly, pursuant to
Section 7A-102(D) of the Human Rights Act, Illinois Compiled Statutes, (775 ILCS 5/3-
101 et. seq.) and the Rules and Regulations of the DHR (56 Ill. Adm. Code. Chapter II,
Section 2520.560), the charge is HEREBY DISMISSED.

2.    If Complainant disagrees with this action, Complainant may:

a) seek review of this dismissal before the Illinois Human Rights Commission,
100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
"Request for Review" with the Commission by the request for review filing
date below.  Respondent will be notified by the Human Rights Commission if
a Request for Review is filed.

REQUEST FOR REVIEW FILING DEADLINE DATE: **February 26, 2018**

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

NOTICE OF DISMISSAL FOR LACK OF JURISDICTION
2017CR3337
Page Two

Or,

b)      commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice.  A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.** The Appellate Courts in Watkins v. Office of the State Public Defender, ____ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch V. Department of Transportation, ____ Ill.App.3d ____, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

   **Please note that the Department cannot provide any legal advice or assistance.  Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.      If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.

                              DEPARTMENT OF HUMAN RIGHTS

HB 1509/HB59/NOD/LOJ
12/10

CAU Removal 000425

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 3

CAU Removal 000426

Hearing Date: 9/29/2021 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
9/17/2021 6:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

14871063

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2018-CH-02497 |
| | ) Calendar: 15 |
| COMMUNITY ALTERNATIVES UNLIMITED, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO RECONSIDER OF MOTION TO RECONSIDER**
**THE MEMORANDUM OPINION AND ORDER DATED AUGUST 18, 2021 THAT**
**DENIED DEFENDANT'S SECTION 2-619 MOTION TO DISMISS**
**OR, ALTERNATIVELY,**
**FOR CERTIFICATION OF A DISPOSITIVE QUESTION OF LAW FOR AN**
**INTERLOCUTORY APPEAL**

Defendant, Community Alternatives Unlimited, moves the court to reconsider its decision denying Defendant's motion to dismiss Plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619, for failure to exhaust administrative remedies. A memorandum of law and Exhibits 1 through 5 are attached and incorporated as part of this motion.

WHEREFORE, Defendant moves that the court reconsider its decision denying Defendant's dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure, and upon reconsideration grant that motion and dismiss the complaint with prejudice.

FIRM:54009385v1

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

FILED DATE: 8/18/2022 6:12 PM   2018CH02497

By: /s/ Brian E. Spang
One of its attorneys

Peter A. Steinmeyer
Brian E. Spang
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
(312) 499-1400
psteinmeyer@ebglaw.com
bspang@ebglaw.com
Attorney ID# 18494

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the foregoing via

email and the Court's electronic filing system the 17th[th] day of September 2021 on:

/s/ Brian E. Spang

- 2 -

CAU Removal 000428

Hearing Date: 9/29/2021 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
9/17/2021 6:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497

14871063

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

MICHELLE ABRAHAM, )
)
Plaintiff, )
)
v. ) Case No. 2018-CH-02497
) Calendar: 15
COMMUNITY ALTERNATIVES )
UNLIMITED, )
)
Defendant. )

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER THE MEMORANDUM  OPINION AND ORDER DATED AUGUST 18, 2021 THAT DENIED DEFENDANT'S SECTION 2-619 MOTION TO DISMISS OR, ALTERNATIVELY, FOR CERTIFICATION OF A DISPOSITIVE QUESTION OF LAW FOR AN INTERLOCUTORY APPEAL

The "purpose of a motion to reconsider is to bring to the court's attention … errors in the court's previous application of existing law." *Farmers Auto Ins. Ass'n v. Universal Underwriters Ins. Co.*, 348 Ill. App. 3d 418, 422 (2004) (reconsideration was "appropriate," and trial court properly reconsidered denial of a motion to dismiss, because the trial court's initial denial of the motion to dismiss was erroneous).  Respectfully, the Court erred in interpreting the IHRA by deciding that the IDHR's right to sue notice can be "considered final for the purposes of administrative exhaustion, and permits [Plaintiff] to pursue claims in court."  (Ex. 1, p. 6) (Aug. 18, 2021 Mem Op. & Order).

There is no dispute Plaintiff failed to meet the 30-day deadline to inform the IDHR of the EEOC's determination that no discrimination occurred.  *Bumphus v. Illinois Human Rights Commission*, 2021 IL App (5th) 200037-U, at ¶ 17 ("Section 7A-102(A-1)(1)(iv) of the Act provides that 'the complainant ***must*** submit a copy of the EEOC's determination

1

CAU Removal 000429

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

within 30 days after service of the determination by the EEOC on complainant'") (quoting 775 ILCS 5/7A-102(A-1)(1)(iv), emphasis added).[1]   The IDHR properly determined Plaintiff's failure divested it of jurisdiction to review Plaintiff's administrative charge or the EEOC's determination.  *Bumphus*, at ¶¶ 17-18 (IDHR lacked jurisdiction to review complainant's charge because he failed to comply with the 30-day deadline to inform the IDHR of the EEOC's determination).  Because the IDHR lacked jurisdiction to review Plaintiff's charge, the IDHR lacked statutory authority to issue the right to sue notice. *Bumphus*, at ¶ 22 ("the Department was not authorized from the outset to start its investigation of Bumphus's charge").  The IDHR's right to sue notice therefore "has no legal effect." *Gilchrist v. Human Rights Comm'n*, 312 Ill. Ap. 3d 597, 601 (1st Dist. 2000) ("A decision by an agency which lacks the statutory power to enter the decision is treated the same as an agency which lacks … subject matter jurisdiction – the decisions are void.  A void order is a complete nullity from its inception and has no legal effect").  And because "the notice of right to sue issued by the IDHR was without legal effect," it was not, and could not be as a matter of law, a final order for administrative exhaustion purposes as a matter of law, requiring dismissal of Plaintiff's IHRA claims.  *Donald v. City of Chicago*, 2021 W 1946335, at *5 (N.D. Ill. May 14, 2021) (applying *Bumphus* to dismiss plaintiff's IHRA claims because, just like here, the plaintiff failed to meet the IHRA's 30-day deadline to notify the IDHR of the EEOC's determination, and therefore failed to exhaust administrative remedies).

---

[1] In accordance with Illinois Supreme Court Rule 23(e)(1), the unpublished *Bumphus v. Illinois Human Rights Commission* written order is attached as Exhibit 2.

2

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

The Court's decision was, respectfully, based on two further errors.  First, the Court erred in determining that the "IDHR adopted the EEOC determination" that no discrimination occurred.  (Ex. 1, p. 4).  The IDHR did not adopt the EEOC's determination.  To the contrary, the IDHR properly found that it lacked jurisdiction to take any action on the EEOC's determination because Plaintiff failed to comply with the mandatory 30-day period to notify the IDHR of the EEOC's determination.  (Ex. 3:  Voigt Aff., Ex. E) (Notice of Dismissal for Lack of Jurisdiction, p. 1:  **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** …").  Second, the Court erred in focusing on a different, 35-day deadline contained within Section 7A-102(A-1)(1)(3).  CAU's motion to dismiss did not argue that the 35-day deadline bars Plaintiff's claims because it could not:  as explained below, that 35-day deadline was never triggered.

These errors combined to result in an erroneous application of the law.  Proper application of the relevant IHRA provisions requires dismissal of Plaintiff's claims for failure to exhaust administrative remedies.  CAU therefore respectfully moves for reconsideration of the Court's denial of its Rule 2-619 motion to dismiss, and dismissal of Plaintiff's claims.

**BACKGROUND: THE UNDISPUTED FACTS AND STATUTORY REGIME**

I.    **Plaintiff Filed an Administrative Charge with the EEOC, Which Was Cross-Filed With the IDHR.**

A complainant seeking redress pursuant to the IHRA must first file an administrative charge within 300 days of the alleged conduct.  775 ILCS 5/7A-102(A).  "If a charge is filed with the Equal Employment Opportunity Commission (EEOC) within

CAU Removal 000431

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

300 calendar days after the date of the alleged civil rights violation, the charge shall be deemed filed with the Department [the IDHR] on the date filed with the EEOC." 775 ILCS 5/7A-102(A-1)(1). Plaintiff filed a charge with the EEOC on March 3, 2017, which was deemed filed with the IDHR on that date in accordance with 775 ILCS 5/7A-102(A-1)(1). (Ex. 3: Voigt Aff., Ex. A: copy of Plaintiff's charge); (*id*., Ex. B: IDHR letter to Plaintiff dated May 1, 2017) ("… when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department").

## II. The EEOC Investigated Plaintiff's Administrative Charge and Issued a Determination Dismissing It Because The EEOC Was Unable To Conclude That Unlawful Discrimination Occurred.

The EEOC was designated to investigate Plaintiff's charge. (Ex. 3: Voigt Aff., Ex. B) ("… Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge …"). When the EEOC is the agency designated to investigate a charge, the IDHR takes no action unless and until (1) the EEOC makes a determination of the charge *__and__* (2) the complainant notifies the IDHR of the EEOC's determination. 775 ILCS 5/7A-102(A-1)(1) ("If the EEOC is the governmental agency designated to investigate the charge first, the Department [the IDHR] shall take no action until the EEOC makes a determination on the charge *__and__* after the complainant notifies the Department of the EEOC's determination") (emphasis added).

On June 2, 2017, the EEOC issued is determination on Plaintiff's charge: "unable to conclude that the information establishes violations of the statutes." (Ex. 3: Voigt Aff., Ex. C: EEOC "Dismissal and Notice of Rights").

4

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

### III.     The IHRA Establishes a Mandatory 30-Day Deadline For Plaintiff to Have Submitted A Copy of the EEOC's Determination to the IDHR.

"Section 7A-102(A-1)(1)(iv) of the Act provides that 'the complainant _**must**_ submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant.'"  *Bumphus*, at ¶ 17 (quoting 775 ILCS 5/7A-102(A-1)(1)(iv)). Here, the IDHR specifically notified Plaintiff of that mandatory 30-day deadline, even emphasizing the point:  "<u>After the EEOC issues its findings</u>, if you want the Department [the IDHR] to take any further action on your charge, you must send the Department a copy of the EEOC's findings within the 30 days after service of the EEOC's findings on you." (Ex. 3:  Voigt Aff., Ex. B, emphasis in <u>original</u>).

The mandatory 30-day deadline to submit a copy of the EEOC's determination to the IDHR is incorporated in multiple separate sections of Section 7A-102(A-1), which require that the IDHR be "timely notified" in accordance with that 30-day deadline:

<u>First</u>, Section 7-102(A-1)(2) governs "if the EEOC finds reasonable cause to believe there has been a violation of federal law …"  In that event, "if _**both**_ "the EEOC finds reason reasonable cause to believe there has been a violation of federal law _**and**_ if the Department [the IDHR] is _**timely notified**_ of the EEOC's findings by complainant," then the IDHR notifies the complainant that it has adopted the EEOC's reasonable cause determination, and that complainant has the right to proceed with the Illinois Human Rights Commission or to file a lawsuit in court.  775 ILCS 7A-102(A-1)(2) (emphasis added).  The phrase "timely notified" refers back to the requirement that the complainant

5

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

"must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant" mandated by Section 7A-102(A-1)((1)(iv).

<u>Second</u>, Section 7-102(A-1)(3) governs if the EEOC does not find reasonable cause to believe discrimination has occurred.  In that event, if "the EEOC either (i) does not issue a determination, but does issue the complainant a notice of right to sue … or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues a complainant a right to sue notice, ***and*** if the Department [the IDHR] is ***timely notified*** of the EEOC's findings by complainant," then the IDHR notifies the complainant that it "will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOCs determination."  775 ILCS 5/7A-102(A-1)(3) (emphasis added).  Again, the phrase "timely notified" refers back to the requirement that the complainant "must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant" mandated by Section 7A-102(A-1)((1)(iv).

In sum, the IHRA *requires* the complainant to submit a copy of the EEOC's determination to the IDHR within 30 days of service of the EEOC's determination. Compliance with that "statutory time limit is a condition precedent to the right to seek a remedy" – *i.e.*, a *mandatory* requirement to exhaust administrative remedies.  *Bumphus*, at ¶ 17 (quoting *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003)).

CAU Removal 000434

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

IV.   **Failure to Submit the EEOC's Determination to the IDHR Within the 30-Day Mandatory Deadline Deprives The IDHR of Jurisdiction to Issue A Right To Sue Notice, And Renders Any Notice of Right To Sue a Nullity and Void.**

"It is well settled that 'compliance with a statutory time limit is a condition precedent to a right to seek a remedy' before an administrative body, and that it is a prerequisite to the acquisition of subject matter jurisdiction." *Bumphus*, at ¶ 17 (quoting *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003)).  That is because "an administrative agency, like a court of limited jurisdiction, can only act 'pursuant to the authority conferred on it by statute.'" *Bumphus*, at ¶ 17 (quoting *Pickering v. Human Rights Comm'n*, 146 Ill. App. 3d 340, 352 (1986)).  Here, the IHRA mandates that timely sending a copy of the EEOC's determination within 30 days to the IDHR is "a necessary prerequisite to establishing the Department's jurisdiction." *Bumphus*, at ¶ 22.

When a complainant fails to timely send a copy of the EEOC's determination to the IDHR, "the Department [is] not authorized from the outset to start its investigation" of the charge. *Bumphus*, at ¶ 22.  "Because compliance with a statutory time limit" – *i.e.*, the 30-day period to submit the EEOC's determination to the IDHR mandated by Section 7A-102(A-1)(1)(iv) – "is a prerequisite to the acquisition of subject matter jurisdiction … the Department lack[s] jurisdiction to review [a] charge" when a complainant fails to comply with that statutory time limit. *Bumphus*, at ¶ 18.  And of course, when the IDHR lacks jurisdiction, it lacks statutory authority to act, rendering any purported actions "void" and having "no legal effect." *Golchrist*, 312 Ill. App. 3d at 601.

CAU Removal 000435

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

V.    **Plaintiff Failed to Submit the EEOC's Determination to the IDHR Within the 30-Day Mandatory Deadline.**

There is no dispute that the EEOC sent its determination to Plaintiff on June 2, 2017.  (Ex. 3:  Voigt Aff., Ex. C).  There is also no dispute that Plaintiff waited more than *90 days* – until September 8, 2017 – to submit "to the Department a copy of EEOC's findings."  (*Id.*, Ex. E) (IDHR Investigation Report).  Consequently, Plaintiff does not, and cannot, dispute the fact that she failed to comply with the 30-day deadline to submit the EEOC's determination to the IDHR mandated by 775 ILCS 5/7A-102(A-1)(1)(iv).

VI.   **The IDHR Did <u>Not</u> Adopt The EEOC's Determination; Rather, The IDHR Dismissed The Matter "For Lack of Jurisdiction," So Its Notice of Right to Sue Was Without Legal Effect.**

The Court's Memorandum Opinion & Order states that "IDHR adopted the EEOC determination on November 21, 2017 …"  (Mem. Op. & Order, p. 4).  Respectfully, the Court erred.  The IDHR did not adopt the EEOC's determination.  The IDHR dismissed the matter for lack of jurisdiction:

> <u>NOTICE OF DISMISSAL FOR LACK OF JURISDICTION</u> …
> DATE OF DISMISSAL:  November 21, 2017.
> 1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is NOT jurisdiction to pursue the allegations of the charge.  Accordingly … the charge is HEREBY DISMISSED …

(Ex. 3:  Voigt Aff., Ex. E) (Notice of Dismissal for Lack of Jurisdiction, p. 1).

That is exactly what occurred in *Bumphus*.  The plaintiff there "sent a 'late and untimely' copy of the EEOC's December 13, 2015 determination to the Department on March 8, 2016, well past the 30-day deadline required by the Act.  Because compliance with a statutory time limit is a prerequisite to the acquisition of subject matter

8

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

jurisdiction, the Commission properly determined that the Department lacked jurisdiction to review the charge." *Bumphus*, at ¶ 17. "Thus, the Department was not authorized from the outset to start its investigation" of the charge. *Bumphus*, at ¶ 22.

The latter point – that the IDHR was not authorized to even begin an investigation of the charge because of the failure to comply with the 30-day deadline to submit the EEOC's determination to the IDHR – is dispositive. "[A]n administrative agency … can only act 'pursuant to the authority conferred on it by statute.'" *Donald*, at *5 (quoting *Bumphus*, ¶ 17) (citing in turn *Pickering*, 146 Ill. App. 3d at 352). "Because the 30-day 'statutory time limit is a condition precedent to … the acquisition of subject matter jurisdiction … the Department lacked jurisdiction to review the charge" when it received it after September 8, 2017. *Donald*, at *5 (quoting *Bumphus*, at ¶¶17-18); *accord Gilchrist*, 312 Ill. App. 3d at 601. "Accordingly, the notice of right to sue issued by the IDHR was without legal effect." *Donald*, at *5; *accord Gilchrist*, 312 Ill. App. 3d at 601.

**VII. When a Complainant Fails to Comply with the 30-Day Deadline to Submit the EEOC's Determination to the IDHR, and the IDHR's Later Right to Sue Notice Lacks Legal Effect, The Complainant Has Failed to Exhaust Administrative Remedies.**

*Bumphus* and *Donald* are directly on point. The complainants in those cases, just like here, failed to timely submit the EEOC's determination within the 30-day period mandated by Section 7A-102(A-1)(1)(iv). That failure is dispositive because the statutory requirement is mandatory and jurisdictional, so *Bumphus* properly ruled that the IDHR lacked statutory authority to investigate the charge. And *Donald*, applying *Bumphus*, properly ruled that the plaintiff failed to exhaust administrative remedies and dismissed

9

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

the IHRA claims.   Numerous federal court decisions have likewise dismissed IHRA

claims for failure to exhaust administrative remedies because, just like here, the plaintiff

failed to comply with the 30-day deadline mandated by Section 7A-102(A-1)(1)(iv).[2]

---

[2] Copies of the following federal decisions are contained in Exhibit 4, in alphabetical order:

• *Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) ("Defendants argue that Jafri failed to administratively exhaust her IHRA claims, because she failed to 'submit a copy of the EEOC's determination [to the Illinois department of Human Rights ('IDHR')] within 30 days after service of the determination by the EEOC on complainant' … the statute unambiguously states that a complainant must timely submit an EEOC determination to the IDHR … Because Jafri failed to comply with the statute's plain terms, her IHRA claims were not properly administratively exhausted and must be dismissed") (quoting 775 ILCS 5/A-102(A-1)(1)(iv), alternation in original);

• *Ball v. Roeslein & Assocs, Inc.*, 2020 WL 4673136, at *6-7 (S.D. Ill. Aug. 12, 2020) ("When the EEOC does not issue a determination, but issues the complainant a notice of right to sue, 'the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant' … Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. … Ball has failed to provide facts that she submitted a copy of the EEOC's determination to the Department [the IDHS] within 30 days after service of the determination by the EEOC. 775 ILCS 5/7A-102(A-1)(1)(iv) … Accordingly, the Court finds that Ball fialed to administratively exhaust her IHRA claims and her claims for discrimination, harassment, or retaliation under the IHRA must be dismissed") (citing, *inter alia, Jafri v. Signal Funding*, at *2);

• *Prusaczyk v. Hamilton County Coal, LLC*, 2020 WL 598137, at *2-3 (S.D. Ill. Oct. 8, 2020) ("The complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant.  775 ILCS 5/7A-102(A-1)(1)(iv) *** Defendants also contend that Prusaczyk could have provided the IDHR with a copy of this EEOC Right to Sue letter within 30 days of receiving it in order to preserve his rights under the IHRA.  Prusaczyk received the EEOC's Right to Sue letter on or about October 21, 2019.  Because he did not notify the IDHR of the EEOC's determination, he did not exhaust his administrative remedies as to his IHRA claim, and it must be dismissed");

• *Donald v. City of Chicago*, 2021 WL 1946335, at *5 (N.D. Ill. 2021) ("The City contends that Ms. Donald's failure to forward the EEOC determination to the IDHR within the 30-day period dooms her claim.  I agree. The IHRA provides that 'the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant.'   775 ILCS 5/7A-102(A-1)(1)(iv). Compliance with such a statutory time limit '"is a condition precedent to the right to seek a remedy" before an administrative body, and … a prerequisite to the acquisition of subject matter jurisdiction.'" *Bumphus v. Ill. Human Rights Comm'n*, 2021 IL App (5th) 200037-U, ¶ 17.  Accordingly, where plaintiffs have failed to comply with the 30-day notice requirement, courts have dismissed IHRA claims for lack of exhaustion of administrative remedies") (citing *Jafri v. Signal Funding, Prusaczyk v. Hamilton County Coal*, and *Ball v. Roeslein & Assocs.*).

• *Jones v. T.J. Maxx of IL, LLC*, 2021 WL 1966115, at *6, (S.D. Ill. May 17, 2021) ("When the EEOC does not issue a determination, but issues the complainant a notice of right to sue, 'the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant' … Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an

CAU Removal 000438

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

<u>ANALYSIS</u>

I.   **CAU's Section 2-619 Motion Argued That Plaintiff Failed to Exhaust Administrative Remedies Because She Failed To Comply With the 30-Day Deadline to Submit the EEOC's Determination to the IDHR.**

Consistent with the plain text of Section 7A-102(A-1)(1)(iv), and the recent decision in *Bumphus, Donald*, and the cited federal cases, CAU argued in its Section 2-619 motion to dismiss that Plaintiff's failure to comply with the <u>30-day deadline</u> to submit the EEOC's findings and request further investigation to the IDHR barred her claims, because Plaintiff's undisputed failure to comply with that <u>30-day deadline</u> represented a failure to exhaust mandatory administrative remedies:

> By law, Plaintiff had <u>thirty days</u> from receiving this dismissal to notify the IDHR of this determination.
>
> ***
>
> In cases like this one, where the EEOC determines that it is unable to establish that illegal discrimination occurred and issues the charging party a right to sue notice, he or she must notify the IDHR within <u>thirty days</u> of receiving the dismissal.
>
> ***
>
> Plaintiff has forfeited any right to pursue her claim by not timely providing the EEOC determination to the IDHR.  In so doing, she has failed to exhaust her administrative remedies.

(CAU's Mem. in Support of Defendant's Motion to Dismiss, pp. 2, 4, 6) (emphasis added).

---

IHRA claim. … Jones has failed to provide facts that she submitted a copy of the EEOC's determination to the Department [the IDHR] within 30 days after service of the determination by the EEOC.  775 ILCS 5/7A-102(A-1)(1)(iv) … Accordingly, the Court finds that it lacks jurisdiction over Jones [sic] state law claims, and Counts II and IV must be dismissed") (citing, *inter alia*, *Jafri v. Signal Funding*, at *2).

CAU Removal 000439

## II. The Court Erred in its Apparent Assumption That CAU Based its Section 2-619 Motion on the 35-Day Deadline of Section 7A-102(A-1)(3).

The Court recognized that the Plaintiff "had 30 days to submit the findings and a request for further investigation to the IDHR." (Ex. 1, p. 2). However, the Court based its decision on an entirely separate and distinct deadline: the *35-day deadline* "for the complainant to seek IDHR review of an EEOC determination before the EEOC dismissal determination is adopted." (*Id.*, p. 3). The Court then indicated that CAU's argument was "[b]ased on this *35-day language* …" (*Id.*, p. 3) (emphasis added). Respectfully, CAU did not base its argument on the 35-day deadline. CAU did reference the 35-day deadline in its Reply Brief, but only in describing the particular facts of a court decision, and in passing in a footnote.[3]

## III. The Court Erred in Basing its Decision on the 35-Day Deadline, Because the 35-Day Deadline Was Never Triggered.

CAU did not rely on the 35-day deadline of Section 7A-102(A-1)(3) because it could not. That 35-day deadline is triggered by the IDHR notifying a complainant that it is adopting the EEOC's determination.[4] As explained above, the IDHR never adopted the

---

[3] *See* CAU's Reply Brief, p. 3 & n.1 (explaining that in *O'Connell v. Continental Electrical Construction Co.*, 2011 U.S. Dist. LEXIS 119921, *33-35 (N.D. Ill. Oct. 17, 2011), "the IDHR notified the plaintiff by letter that he had to notify the IDHR within 35 days of receiving the letter or his file would be closed," and noting "The IHRA requires an individual to notify the IDHR of the EEOC determination within 30 days. When the IDHR responds by adopting the EEOC dismissal as a lack of substantial evidence, the individual has 35 days to ask the IDHR to review that dismissal. Thus, there are both 30 and 35 day time limits involved"). (citations omitted). CAU did not otherwise reference the 35-day deadline, nor argue that the 35-day deadline applies to this case. Indeed, as explained below, the 35-day deadline was never triggered in this case, because the IDHR never adopted the EEOC dismissal as a lack of substantial evidence. Rather, and to the contrary, the IDHR dismissed based on lack of jurisdiction, so the 35-day deadline was never triggered.

[4] Section 7A-102(A-1)(3) specifies the order of events required to trigger the 35-day period. First, the EEOC must either (i) not issue a determination, but issue a notice of a right to sue, or (ii) determine that it is unable to establish that illegal discrimination occurred, and issue a right to sue notice. In either scenario, the EEOC

12

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

EEOC's determination, so it never notified Plaintiff that it was adopting the EEOC's determination. The Court thus erred in focusing on the 35-day deadline in Section 7A-102(A-1)(3).

**IV.    The Court's Erroneous Reliance on the 35-Day Deadline Was Based on its Erroneous Determination the IDHR adopted the EEOC's Determination.**

The Court's discussion of the 35-day deadline was based on its determination that "IDHR adopted the EEOC determination …" (Ex. 1, p. 4). As explained above, the IDHR did not adopt the EEOC's determination. Accordingly, the Court erred, which led to the Court's erroneous reliance on the 35-day deadline.

**V.    The Court Erred in Determining That the IDHR's Right To Sue Notice Was a Valid Final Action Excusing Plaintiff's Failure to Exhaust Administrative Remedies.**

The Court's ultimate determination that the right to sue notice issued by the IDHR was a viable "final" agency action permitting Plaintiff to pursue IHRA claims in Court was erroneous because, as explained above, the IDHR lacked statutory authority to act. Plaintiff's two main arguments cannot change this result.

First, Plaintiff argued that the 2008 amendments allowing court actions somehow excused her failure to comply with the 30-day period to notify the IDHR of the EEOC's

---

issues a notice of right to sue is issued to the complainant. 775 ILCS 7A-102(A-1)(3). Next, the complainant must "timely notif[y]" the IDHR of the EEOC's determination. 775 ILCS 7A-102(A-1)(3). Then, "if the Department [the IDHR] is timely notified of the EEOC determination by complainant" – and **_only_** if the IDHR is timely notified of the EEOC's determination by complainant – "the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the ***Department's*** notice that the Department review the EEOC's determination." 775 ILCS 7A-102(A-1)(3) (emphasis added). The 35-day period is therefore triggered by the IDHR notifying the complainant that it is adopting the EEOC's determination.

13

CAU Removal 000441

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

determination mandated by Section 7A-102(A-1)(1)(iv). That is a red herring because Section 7A-102(A-1)(1)(iv) was added to the IHRA in 2011. Public Act 97-596, S.B. 1122 (eff. Aug. 26, 2011) (amending 775 ILCS 7A-102(A-1) to add subsections (1), (2) and (3), copy contained in Exhibit 5). Plaintiff is thus arguing that the 2008 amendments render the later 2011 amendments a superfluous nullity that can be ignored. That would be an illogical interpretation of the IHRA, because an earlier amendment cannot nullify a later one. *E.g.*, *People v. Skillom*, 361 Ill. App. 3d 901, 910 (1st Dist. 2005) (interpreting phrase to "prevent an absurd or illogical interpretation of the statute," and according "the canon that we must give meaning to all the words in a statute …").

Second, Plaintiff's reliance on *Laurie v. William M. Bedell Achievement Res. Ctr.*, 2017 WL 1076940 (N.D. Ill. March 22, 2017), is misplaced. That decision erroneously relied on the 2008 amendments to find that a failure to comply with the 30-day deadline of Section 7A-102(A-1)(1)(iv) was not fatal to IHRA claims. *Id.*, at *4. And that decision erroneously fails to consider the indisputable fact that the IDHR lacks statutory to act after a failure to comply with the 30-day deadline of Section 7A-102(A-1)(1)(iv). *See Donald*, at *5 (refusing to *Laurie* on this basis). *Laurie* is thus inconsistent with *Bumphus* and well-established precedent holding that the IDHR lacked authority to issue a right to sue notice here. Simply stated, *Laurie* was wrongly decided. This Court's denial of CAU's motion to dismiss is likewise inconsistent with the plain language of the IHRA and controlling precedents, and should be reconsidered, and granted.[5]

---

[5] Notably, Plaintiff's failure to comply with the 30-day deadline mandated by Section 7A-102(A-1)(1)(iv) did not preclude Plaintiff from pursuing her IHRA claims in court. Plaintiff could have filed suit in either federal or state court within 90 days of receiving the EEOC's determination and notice of right to sue. The

14

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should reconsider its August 18, 2021 Memorandum Decision and Order, and grant CAU's Section 2-619 motion to dismiss.

In the alternative, if this Court is inclined to deny reconsideration, CAU respectfully requests this Court to certify the dispositive question of law to the Appellate Court pursuant to Supreme Court Rule 308(a), and to stay discovery during the appeal. The dispositive issue is a question of law because it is a question of statutory interpretation. The differing answers to the question between this Court and *Laurie* on the one hand, and *Donald, Ball, Jafri, Jones,* and *Prusaczyk* on the other hand, indicate a substantial ground for difference of opinion. And an immediate appeal would materially advance the ultimate determination of the litigation, because a First District decision in accord with *Donald, Ball, Jafri, Jones,* and *Prusaczyk* would end the litigation. CAU therefore, and in the alternative, proposes the following question of law to be certified pursuant to Supreme Court Rule 308(a):

> "When a complainant fails to comply with the 30-day deadline to submit the EEOC's determination to the IDHR mandated by 775 ILCS 7A-102(A-1)(1)(iv), such that the IDHR lacks statutory authority to investigate the charge or review or adopt the EEOC's determination, has the complainant failed to exhaust administrative remedies such that complainant is precluded from pursuing IHRA claims in court?"

---

timing here – belated submitting the EEOC's determination to the IDHR shortly after Plaintiff's 90-day period to file suit based on the EEOC's right to sue notice expired – is telling.

CAU Removal 000443

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

Respectfully submitted,

Dated:  September 17, 2021            COMMUNITY ALTERNATIVES UNLIMITED

By:     /s/ Brian E. Spang
One of its attorneys

Peter A. Steinmeyer
Brian E. Spang
Attorneys for Defendant
EPSTEIN BECKER GREEN P.C.
227 W. Monroe St. – Ste. 3250
Chicago, Illinois 60606
312-499-1400
psteinmeyer@ebglaw.com
bspang@ebglaw.com
Attorney ID #18494

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the foregoing memorandum of law via email and the Court's electronic filing system the 17th[th] day of September 2021 on:

Ruth Major
Law Offices of Ruth I. Major, P.C.
30 W. Monroe St. – Ste. 1650
Chicago, IL 60603

/s/ Brian E. Spang

CAU Removal 000444

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| Michelle Abraham,<br>　Plaintiff<br><br>v.<br><br>Community Alternatives Unlimited,<br>　Defendant. | No. 18 CH 2497<br>Calendar 15<br><br>Hon. Anna M. Loftus<br>Judge Presiding |

MEMORANDUM OPINION & ORDER

Plaintiff Michelle Abraham, a former employee of Defendant Community Alternatives Unlimited, has filed a suit for retaliatory discharge. Defendant has moved to dismiss on two bases: first, that Plaintiff failed to exhaust her administrative remedies with respect to the EEOC; and second, that she failed to timely serve.

The Court rejects both arguments, holding that Plaintiff appears to have exhausted her administrative remedies, and that service was sufficiently diligent. The Motion to Dismiss is denied.

## I. Background

Plaintiff was an employee of Community Alternative Unlimited (CAU) for over 17 years. She has filed a complaint against her former employer, alleging she was discharged in retaliation for reporting discrimination in the workplace, a violation of the Illinois Human Rights Act. 775 ILL. COMP. STAT. 5/1-101 *et seq.* ("IHRA"). The Complaint presents the following facts, which the Court takes as true for the purposes of the present Motion to Dismiss. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (Ill. 1997).

The issues raised in the present Motion are almost wholly procedural. For that reason, suffice it to say Plaintiff alleges she was constructively discharged from CAU in or around December 2016 after reporting harassment in the workplace.

On March 3, 2017, Plaintiff filed a Charge of Discrimination against CAU with the Equal Employment Opportunity Commission.

On May 1, 2017, Plaintiff received a letter from the Illinois Department of Human Rights informing her that, due to a cooperative workshare agreement between the IDHR and EEOC, a copy of her complaint with the EEOC had been automatically filed with the IDHR. The IDHR letter also stated that after the EEOC issued its findings, Plaintiff could seek further action and review by sending a copy of the EEOC findings to the IDHR along with a request that the IDHR

**EXHIBIT 1**　　　　　　　　　　　　　　　　CAU Removal 000446

FILED DATE: 8/18/2022 6:48 PM    2018CH02497

initiate its own investigation. The letter advised that any such request had to be sent within 30 days of receiving the EEOC determination.

On June 2, 2017, the EEOC mailed its determination to Plaintiff that, based on the information obtained, no violation of the IHRA had occurred. Upon receipt of this determination, Plaintiff then had 30 days to submit the findings and a request for further investigation to the IDHR.

On September 8, 2017, 98 days after receiving the EEOC determination, Plaintiff submitted a copy of the EEOC's findings along with her request for an investigation to the IDHR.

On November 21, 2017, IDHR issued a Notice of Dismissal, dismissing the claim for being untimely presented. The letter accompanying the IDHR Notice of Dismissal noted that Plaintiff had two courses of action: she could either seek review of the dismissal before the Illinois Human Rights Commission before February 26, 2018, or commence a civil action in state court within 90 days of her receipt of the letter.

On November 27, 2017, Plaintiff received the IDHR letter.

On February 23, 2018, 88 days from Plaintiff's receipt of the IDHR letter, Plaintiff filed the present Complaint.

## II. Legal Standard

Defendant has sought dismissal under Section 2-619. Under Section 2-619, the Court must accept as true all well-pleaded facts and their attendant inferences. Defendant may introduce additional facts by affidavit. 735 ILL. COMP. STAT 5/2-619(a)(9). The Section 2-619(a)(9) arguments raised by Defendant seek a dismissal upon a showing of other affirmative matters, outside the four corners of the complaint, which defeat the claim in whole or in part. *Alford v. Shelton (In re Estate of Shelton)*, 2017 IL 121199, ¶21.

Failure to exhaust administrative remedies with respect to EEOC proceedings under the Illinois Human Rights Act is properly raised under Section 2-619. *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶¶13, 35.

Likewise, failure to timely serve under Rule 103 is properly raised as part and parcel of a Section 2-619 argument, as timeliness is an affirmative matter outside the four corners of the pleading. *Segal v. Sacco*, 136 Ill. 2d 282, 285–86 (Ill. 1990); *Smith v. Menold Constr., Inc.*, 348 Ill. App. 3d 1051, 1057–58 (4th Dist. 2004). *See also* ILL. SUP. CT. R. 103(b).

Should the allegations be insufficient, the Court may consider permitting or requiring amendment. 735 ILL. COMP. STAT. 5/2-615(d), 2-616(a); *see also Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273–76 (Ill. 1992). Nevertheless, if the underlying legal theory is flawed such that no cause of action could be stated, amendment would be futile. *Regas v. Associated Radiologists*, 230 Ill. App. 3d 959, 968 (1st Dist. 1992) (discussing *Loyola Academy* factors).

CAU Removal 000447

FILED DATE: 8/18/2022 6:42 PM   2018CH02497

### III. Motion to Dismiss

As noted above, CAU's Motion raises two primary arguments. First, it argues the Court lacks jurisdiction to hear this matter, because Plaintiff has failed to exhaust her administrative remedies.[1] Second, and alternatively, it asks that the Court dismiss because Plaintiff failed to diligently serve.

#### A. Jurisdiction and Exhaustion

The crux of CAU's first argument is that, by waiting more than 35 days before submitting the EEOC's findings to the IDHR for further investigation, Plaintiff failed to exhaust her administrative remedies. CAU's argument runs counter to the plain language of the statute and the caselaw both.

#### 1. Section 7A-102

CAU founds its argument on the language of Section 7A-102 of the Illinois Human Rights Act, which provides in relevant part:

> (3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.

775 ILL. COMP. STAT. 5/7A-102(A-1)(3). This statute clearly provides for a 35-day period for the complainant to seek IDHR review of an EEOC determination before the EEOC dismissal determination is adopted.

Based on this 35-day language, CAU argues that, by not timely providing the EEOC determination to the IDHR, Plaintiff failed to exhaust her administrative remedies. But CAU's argument ignores the very next paragraph of the statute:

---

[1] Plaintiff also hints at a third argument: that "the Illinois Human Rights Act and its regulations do not provide Plaintiff with a right of court review under these circumstances." Motion to Dismiss, p.1. To the extent this is a repetition of the first argument (i.e. if the Court lacks subject-matter jurisdiction, then there is no right of court review), it is resolved through the Court's denial of that argument. To the extent this is a separate argument, it is wholly underdeveloped.

Page **3** of **9**

CAU Removal 000448

FILED DATE: 8/18/2022 6:44 PM 2018CH02497

> (a) If the complainant does not file a written request with the Department to review the EEOC's determination within 35 days after receipt of the Department's notice, the Department shall notify complainant, within 10 business days after the expiration of the 35-day period, that the decision of the EEOC has been adopted by the Department as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination shall constitute the Department's report for purposes of subparagraph (D) of this Section.

775 ILL. COMP. STAT. 5/7A-102(A-1)(3)(a). This subsection clearly provides that, where no written request for review is filed, and IDHR adopts the EEOC's determination, the complainant has a 90-day window from receipt of the IDHR Notice of Dismissal in which to commence a civil action.

Here, Plaintiff did not file a written request for review within 35 days. IDHR adopted the EEOC determination on November 21, 2017, Plaintiff received it November 27, and she filed this suit 88 days later, on February 23, 2018, within the 90-day window.

### 2. Caselaw

The parties address three cases: *Robinson, Laurie,* and *Ocampo.* None of them change the Court's determination.

In *Robinson,* the First District found that a notice of dismissal was indeed an exhaustion of administrative remedies. *Robinson v. Vill. of Oak Park,* 2013 IL App (1st) 121220. In *Robinson,* an employee alleged she was laid off after refusing to take a position that conflicted with her religious beliefs. *Id.* ¶14. She timely filed a claim under the IHRA, and after a full investigation, was issued a Notice of Dismissal. *Id.* ¶15. Two months later, the employee filed suit in state court. *Id.* Defendant prevailed on summary judgment, the trial court holding "plaintiff had no viable claim" for any Human Rights Act violation. *Id.* ¶16.

On appeal, the First District reviewed whether the employee had properly exhausted her administrative remedies. Even though the employee had never filed a request to have the decision reviewed by IDHR, the First District found that she had exhausted her remedies. Citing to Section 7A-102, the *Robinson* court held:

> The aggrieved party's rights do not end [at an IHRC dismissal] as he/she is given 90 days to either file a request for review with the Commission or file a complaint in Illinois circuit court, where he/she is now entitled to request a jury trial in the event her

CAU Removal 000449

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

complaint and pleadings withstand procedural and substantive defenses.

*Id.* at ¶5 (citing 775 ILL. COMP. STAT. 5/7A-102(C)(4)).

The *Robinson* court further explained how a 2008 amendment had given state courts supplemental jurisdiction over IHRA claims:

> Prior to August 2007, the Illinois Human Rights Act provided the Illinois Human Rights Commission with exclusive jurisdiction to adjudicate claims of civil rights violations, with appeals directly to the appellate court to review the Commission's actions under an arbitrary and capricious standard and for abuse of discretion. The Illinois statute was only recently amended to allow plaintiffs who are dissatisfied with the Human Rights Commission's finding of no substantial evidence to support a charge the opportunity to file direct appeals of employment discrimination issues to the circuit courts[.]

*Id.* at ¶18 (citations to legislative history omitted).

The *Robinson* court eventually affirmed, but not for any of the procedural issues; instead, it affirmed on the merits, holding the defendant had offered a reasonable accommodation. *Id.* at ¶42. In light of the reasonable accommodation, there was no claim on the merits. *Id.*

The *Robinson* application here is self-evident: because Plaintiff has filed her complaint within 90 days, it fell within the proper timeframe of Section 7A-102, and this Court can properly exercise jurisdiction over it.

In a similar vein, the facts of *Laurie* are particularly instructive. *Laurie v. William M. Bedell Achievement Res. Ctr.*, 2017 U.S. Dist. LEXIS 41536 (S.D. Ill. 2017). In *Laurie*, the EEOC conducted an investigation, closed its file, and issued a right-to-sue letter. *Id.* at *2. The plaintiff filed the EEOC determination with IDHR after 51 days, rather than within 30 days as Section 7A-102(A-1)(1) required. *Id.* at **2–3 (citing 775 ILL. COMP. STAT. 5/7A-102(A-1)(1)). IDHR concluded it lacked jurisdiction due to the late filing and issued a right-to-sue letter. *Id.* at *3.

The *Laurie* court noted that receiving a right-to-sue letter from the EEOC alone was not sufficient to establish exhaustion. *Id.* at **9–10. But the plaintiff's "failure to obtain a final order on the merits does not immediately bar her from filing suit in court." *Id.* The court concluded that, though the plaintiff sent the EEOC determination to IDHR 21 days late, IDHR had still issued a her a Notice of Dismissal, with the attendant 90-day window. *Id.* at *10. Because she had filed within that 90-day window of the IDHR letter, the claim was timely: "Because Laurie received the IDHR's Notice of Dismissal and filed her lawsuit within the 90 day window, her complaint satisfies the exhaustion requirement of the IHRA at the pleading stage." *Id.* at *13.

CAU Removal 000450

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

Here, just as in *Laurie*, Plaintiff sent her EEOC determination to IDHR late. Though she did not receive a decision on the merits from IDHR, she did receive an IDHR Notice of Dismissal. That Notice of Dismissal triggered the 90-day window, and she filed within it.

Finally, in Reply, CAU relies on *Ocampo* for the proposition that administrative remedies must still be exhausted before pursuing a claim in state court. *Ocampo v. Remedial Env't Manpower, Inc.*, 2014 U.S. Dist. LEXIS 86865 (N.D. Ill. 2014). In *Ocampo*, the employee was allegedly fired for reporting sexual harassment to her supervisors. *Id.* at *3. She filed charges of discrimination and harassment with both the EEOC, which she pursued, and with IDHR, which she later withdrew. *Id.* at **3–4, 11. IDHR issued an Order of Closure, approving the voluntary withdrawal. *Id.* at *11. After that order, she filed a court case, which was dismissed for failure to exhaust administrative remedies: "If Ocampo desired to proceed in this Court on her IHRA claims, she should not have voluntarily dismissed the charges filed with the IDHR." *Id.* at *18.

By relying on this case, it is clear that Defendants are confusing the issue at bar. The plaintiff in *Ocampo* argued that, after the 2008 amendment, a final order from the IHDR was no longer required, and administrative exhaustion was no longer obligatory before pursuing claims in court. *Id.* at *15. The *Ocampo* court rejected that argument: "Ocampo did not permit the IDHR to finish evaluating her charge; instead, the charge was voluntarily withdrawn and therefore closed." *Id.*

Here, Plaintiff has not raised any such argument. Instead, she argues quite simply that the IDHR Notice of Dismissal was a final order squarely within the ambit of Section 7A-102. This is consistent with the *Ocampo* court's discussion of how Section 7A-102 functions:

> For instance, if the Director of the IDHR makes a determination that there is no substantial evidence, the IDHR is to dismiss the charge by order of the Director and the complainant is to be given "notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court." If the complainant elects to pursue a civil action, it must be initiated "within 90 days after receipt of the Director's notice."

*Id.* at **14–15 (citing 775 ILL. COMP. STAT. 5/7A-102(D)(3)) (internal citations omitted).

In sum, though are plenty of cases that probe the edges of IHRA jurisdiction, this is not one of them. The language of Section 7A-102, and the cases interpreting it, are quite clear that an IDHR Notice of Dismissal is considered final for the purposes of administrative exhaustion, and permits a complainant to pursue claims further in court. Plaintiff has exhausted her remedies, and her claim is timely.

CAU Removal 000451

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

### B. Diligent Service

Alternatively, CAU seeks dismissal arguing that Plaintiff failed to timely serve the summons and Complaint in this matter. Rule 103(b) requires a plaintiff to exercise reasonable diligence in service, and provides that failure to diligently serve prior to the expiration of the statute of limitations is a basis for dismissal with prejudice. ILL. SUP. CT. R. 103(b).

The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process, and to prevent the circumvention of the statute of limitations. *Segal*, 136 Ill. 2d at 286. The basic policy of statutes of limitation is to "afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible." *Id., citing Geneva Const. Co. v. Martin Transfer & Storage Co.,* 4 Ill. 2d 273, 289–90 (Ill. 1954). The "[p]revention of intentional delay in the service of summons which would postpone service for an indefinite time after a statutory period of limitations has run, was a primary reason for the passage of Rule 103(b)." *Id.* at 287, *quoting Karpiel v. LaSalle Nat'l Bank*, 119 Ill. App. 2d 157, 160 (2d Dist. 1970).

Here, though the 90-day period contemplated by Section 7A-102 is akin to a statute of limitations. The relevant provision of Rule 103(b) provides as follows:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice . . . .

ILL. SUP. CT. R. 103(b). Here, because the 90-day period contemplated by Section 7A-102 has long-since expired, any Rule 103(b) dismissal would be with prejudice.[2]

Diligence under Rule 103(b) is subject to a number of factors. The factors are not exhaustive, but the Illinois Supreme Court's recitation in *Segal* is canonical:

> (1) the length of time used to obtain service of process;
> (2) the activities of plaintiff;
> (3) plaintiff's knowledge of defendant's location;
> (4) the ease with which defendant's whereabouts could have been ascertained;

---

[2] The caselaw refers to it colloquially as a statute of limitations. *E.g., Nehan v. Local Union No. 1-Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union*, 2014 U.S. Dist. LEXIS 83085, *4 (N.D. Ill. 2014). *But see LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 2015 IL App (5th) 140443-U, ¶13 (referring to "90-day limitations period" for EEOC right-to-sue letter). *Accord, e.g., Van Milligen v. Dep't of Empl. Sec.*, 373 Ill. App. 3d 532, 542 (2d Dist. 2007) (administrative review subject to 35-day limitations period, and not a statute of limitations). Whatever the academic merits of this distinction, the parties today are in agreement that the 90-day period interacts with Rule 103(b) as if it were a statute of limitations: the same principles apply.

CAU Removal 000452

FILED DATE: 8/18/2022 6:44 PM 2018CH02497

> (5) actual knowledge on the part of the defendant of pendency of
> the action as a result of ineffective service;
> (6) special circumstances which would affect plaintiff's efforts;
> and (7) actual service on defendant.

*Segal*, 136 Ill. 2d at 287 (with line breaks for clarity).

In *Segal* itself, the Supreme Court held that a 19-week delay (i.e. 133 days) in service following filing did not warrant dismissal. *Id.* at 288–89. The only excuse offered by the plaintiff in that case was that he had simply forgotten to place the summons for service. *Id.* at 287. Because the delay was inadvertent and unintentional, there was no intent to subvert the statute of limitations. *Id.* at 288. And, there was no indication the inactivity in the case between its filing and service had caused any prejudice: no evidence went stale, no witnesses became unavailable, and no memories lapsed. *Id.* On those facts, the "harsh penalty" of a Rule 103(b) involuntary dismissal would not serve the purpose of the Rule, and was not warranted. *Id.* at **288–89.

Here, the Complaint was filed on February 23, 2018. Though not formally served, Defendant received actual notice 24 days thereafter, when Plaintiff's counsel emailed a filestamped copy of the document. The parties engaged in settlement talks for a few days, before CAU indicated it on March 21 that was no longer interested in pursuing settlement.

On March 20, Plaintiff attempted to place the summons with the Sheriff for service. But the Sheriff did not accept it, because the summons—the *original* summons issued in this matter—was set to expire on March 25. And so on March 23 Plaintiff issued alias summons, which was eventually served April 12, a total of 48 days after filing.

On the totality of the circumstances, Plaintiff's service 48 days after filing was reasonable. Despite CAU's arguments as to inactivity, there is no indication Plaintiff filed and then sat back to do nothing; the facts establish quite the opposite. CAU not only had actual knowledge of the lawsuit, but had a filestamped copy of the Complaint within 24 days of filing. The Court is fully aware that actual knowledge of a pending case is no substitute for service of process. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (Ill. 1986). But actual knowledge certainly moots any possible argument as to prejudice, and CAU has pointed to none.[3]

Could Plaintiff have placed the summons and Complaint for service the day after they were filed? Of course. Her timing, however, is still reasonably diligent. Dismissal for failure to more diligently serve would serve neither the purpose of Rule 103(b) nor the ends of justice, and the Court declines CAU's invitation to do so.

---

[3] Finally, the present facts are easily distinguishable from any cases cited by CAU. *See Kole v. Brubaker*, 325 Ill. App. 3d 944 (1st Dist. 2001) (plaintiff waited 9 months before service and gave no explanation as to why); *Emrikson v. Morfin*, 2012 IL App (1st) 111687 (plaintiff waited 13 months before service and never consulted accident report to figure out defendant's address); *Long v. Elborno*, 376 Ill. App. 3d 970 (1st Dist. 2007) (plaintiff waited 7 months before service and made no diligent attempts in that timeframe).

CAU Removal 000453

**IV. Orders**

Defendant CAU's Motion to Dismiss is denied in its entirety.

CAU is ordered to Answer within 35 days, or by September 22, 2021.

This case is set for status on **Wednesday, September 29, 2021, at 10:00 a.m.** The status will occur via Zoom, and may be accessed through the following hearing link: https://circuitcourtofcookcounty.zoom.us/j/95535573920. Further information about remote operations is available in the Court's standing order.

On the status date, the Court anticipates discussing whether Plaintiff is seeking any equitable relief. If not, the Court would anticipate a transfer to the appropriate division for further proceedings.

Chambers staff will email a copy of this Order to the parties.

ENTERED:

/s/ *Anna M. Loftus*

Judge Anna M. Loftus, No. 2102

Page **9** of **9**

CAU Removal 000454

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

# EXHIBIT 2

CAU Removal 000455

Bumphus v. Illinois Human Rights Commission, Not Reported in N.E. Rptr. (2021)

2021 IL App (5th) 200037-U

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

2021 IL App (5th) 200037-U

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

NOTICE This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
Appellate Court of Illinois, Fifth District.

John BUMPHUS, Petitioner,
v.
ILLINOIS HUMAN RIGHTS COMMISSION,
Illinois Department of Human Rights, and Unique Personnel Consultants, Respondents.

NO. 5-20-0037
|
Decision filed 02/26/2021

On petition for Direct Administrative Review of an Order of the Illinois Human Rights Commission. Charge No. 2016SR2090, EEOC No. 440-2015-01744, ALS No. 16-0276.

**ORDER**

JUSTICE BARBERIS delivered the judgment of the court.

*1 ¶ 1 *Held*: We affirm the decision of the Illinois Human Rights Commission that sustained the Illinois Department of Human Rights' dismissal of petitioner's discrimination charge for lack of jurisdiction.

¶ 2 Petitioner, John Bumphus, filed a *pro se* petition for direct administrative review from a final decision of the Illinois Human Rights Commission (Commission), which sustained the decision of the Illinois Department of Human Rights (Department) dismissing Bumphus's discrimination charge against respondent, Unique Personnel Consultants (Unique), for lack of jurisdiction. For the reasons that follow, we affirm.

¶ 3 I. Background

¶ 4 On August 6, 2015, Bumphus filed a *pro se* charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC), alleging that, on or about July 17, 2015, while working as a line production coordinator for Unique, he was denied a reasonable accommodation for his "disability related condition." Bumphus further alleged that his employment was terminated after he provided Unique with a doctor's note in support of his request for a reasonable accommodation, in violation of his civil rights under the Americans with Disabilities Act of 1990 (ADA) as amended (see 42 U.S.C. § 12101 *et seq.* (2012)).

¶ 5 On December 21, 2015, while Bumphus's discrimination charge remained pending before the EEOC, the Department purportedly sent Bumphus a letter advising that his charge of discrimination had been automatically filed with the Department. The letter further advised that Bumphus had 30 days from receipt of the EEOC's findings to send a copy of the findings to the Department.[1]

¶ 6 On December 23, 2015, following an investigation, the EEOC sent Bumphus a letter of dismissal and notice of rights, advising that it had issued a determination on his charge of discrimination. In the letter, the EEOC explained that the information obtained during its investigation failed to establish violations of the statutes.[2]

¶ 7 Several months later, on March 8, 2016, Bumphus sent the Department a request for investigation, along with a copy of the EEOC's December 23, 2015, letter. Bumphus requested the Department to investigate the same charge of discrimination that had been dismissed by the EEOC.[3]

*2 ¶ 8 On March 22, 2016, prior to receiving a response from the Department, Bumphus filed a complaint against Unique, and other parties, in federal court. In the complaint, Bumphus alleged, *inter alia*, that Unique had discriminated against him in connection with their employment relationship by failing to accommodate his disability and by discharging him based on his disability.[4]

¶ 9 On April 12, 2016, the Department sent Bumphus a notice of dismissal for lack of jurisdiction. The Department also enclosed a copy of its investigation report, which provided as follows:

"On August 6, 2015, Complainant [(Bumphus)] filed a

EXHIBIT 2                                    CAU Removal 000456

2021 IL App (5th) 200037-U

charge with the [EEOC] alleging that a civil rights violation had been committed. On December 21, 2015, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of [the] EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On March 8, 2016, Complainant submitted to the [Department] a copy of [the] EEOC's findings.

==Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed."==

The Department's notice of dismissal further advised Bumphus that the filing deadline for review by the Commission was July 18, 2016.

¶ 10 On July 14, 2016, Bumphus filed with the Commission a request for review of the Department's dismissal. In the request for review, Bumphus admitted that he "submitted to the [Department] a copy of the EEOC Notice of Right to Sue" but failed to timely file a copy of the EEOC's determination to the Department. Bumphus provided the following explanation:

"On December 21, 2015, staff mailed the legally unrepresented *pro se* Complainant a letter stating that Complainant's charge was automatically filed with the [Department] and that Complainant had 30 days from receipt of [the] EEOC's findings to send the [Department] a copy; the legally unrepresented *pro se* Complainant, upon receipt of the [Department] letter, contacted the [Department] Pre-Investigations Coordinator by telephone, and erroneously misunderstood that the 'EEOC findings' was a reference to the EEOC case information file ***. On January 13, 2016, after having not yet received the aforementioned case information file, the unrepresented *pro se* Complainant contacted James F. Neely, Jr., Director of the St. Louis District Office of the EEOC, and formally requested, under the Freedom of Information Act (FOIA), 5 U.S.C. § 522, the full disclosure of all previously unreleased information and documents controlled by that office pertaining to the above-mentioned charge. On February 22, 2016, the St. Louis, Missouri, EEOC formally and electronically released the file *** to the unrepresented *pro se* Complainant ***. The unrepresented *pro se* complainant was then, again, erroneously under the mistaken impression that he had 30 days from the

February 22, 2016 date to download, print, and deliver the entire EEOC electronic release. Accordingly, while in the process of trying to download, compile and coordinate for mailing the contents of his EEOC case file for 'timely' forwarding to the [Department], he subsequently again contacted the [Department] Pre-Investigations Coordinator by telephone, to inquire as to whether, or not, the EEOC transmission could simply be forwarded, to meet the findings presentation requirement. It was then explained, to the unrepresented *pro se* Claimant's embarrassed chagrin, that the EEOC Notice of Right to Sue, which he had already received on December 23, 2015, was the only required document for the [Department] investigation to commence. On March 8, 2016, the unrepresented *pro se* Claimant submitted to the [Department] a copy of the EEOC Notice of Right to Sue."

**\*3** Additionally, after alleging several substantive reasons as to why his charge had merit, and, therefore, should not have been dismissed, Bumphus stated the following:

"On March 22, 2016, the disabled unrepresented *pro se* Claimant filed Case No.: 16-3 12-SMY-DGW, as a *pro se* Plaintiff in the East St. Louis, Illinois Office of United States Federal District Court for the Southern District of Illinois. Federal District Court Judge Staci M. Yandle has stated, in her April 14, 2016[,] Memorandum and Order, that a preliminary review of the *pro se* Plaintiff disabled unrepresented *pro se* Claimant's Complaint found that it sets forth sufficient facts to state a plausible claim. The disabled unrepresented *pro se* Claimant is concerned that his applicable standing for claims against the Respondent, and their hired agency entities, under Illinois State Law might be at risk of being lost if his [Department] case is relinquished, withdrawn, or dismissed."

¶ 11 On March 20, 2019, after receiving the Department's response to Bumphus's request for review and Bumphus's reply to the Department's response, the Commission entered an order sustaining the Department's dismissal of Bumphus's charge of discrimination for lack of jurisdiction. Bumphus subsequently filed a petition for direct administrative review of the Commission's order.[5]

¶ 12 II. Analysis

¶ 13 Before turning to the merits, we note that Bumphus failed to comply with the briefing requirements set forth in Illinois Supreme Court Rule 341(h) (eff. May 25, 2018). For instance, in violation of Illinois Supreme Court

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 2

FILED DATE: 8/18/2022 6:14 PM 2018CH02497

Bumphus v. Illinois Human Rights Commission, Not Reported in N.E. Rptr. (2021)

2021 IL App (5th) 200037-U

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

Rule 341(h)(6) (eff. May 25, 2018), Bumphus's statement of facts fails to reference the appropriate pages of the record and contains improper argument and ardent comments. Also, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), Bumphus refers to matters outside of the record.

¶ 14 Although proceeding *pro se* on appeal, Bumphus is nonetheless required to comply with our supreme court rules. See *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 16. We may strike a brief and dismiss the appeal for failure to comply with the rules. *Marzano v. Department of Employment Security*, 339 Ill. App. 3d 858, 861 (2003). However, striking an appellate brief "is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15. Because we have the benefit of a shorter, albeit incomplete, record on appeal, and we have cogent briefs with proper citations to the record from Unique and the State (the Commission and the Department), we choose to entertain the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (despite insufficiency in appellant's brief, the reviewing court entertained the appeal where the intended issues could be "readily ascertained from the record on appeal"). We now turn to the merits.

*4 ¶ 15 We find it necessary to begin our analysis by clarifying the issue before this court. On direct administrative review, Bumphus challenges the Commission's order sustaining the Department's dismissal of his discrimination charge for lack of jurisdiction. Where, as here, the Department dismisses a charge as untimely filed, a petitioner may request review of that dismissal by the Commission. 775 ILCS 5/8-103(A)(1) (West 2018). A final administrative decision by the Commission is subject to direct administrative review by this court. *Id. § 8-111(B)(1)*. Our review in this matter is limited to the Commission's decision; thus, we will not review the Department's decision. *Truger v. Department of Human Rights*, 293 Ill. App. 3d 851, 858 (1997). In addition, we are limited to considering the evidence contained in the administrative record and may not hear additional evidence for or against the agency's decision. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006).

¶ 16 A charge of discrimination alleges a civil rights violation, as defined in section 6-101(A) of the Illinois Humans Right Act (Act). 775 ILCS 5/6-101(A) (West 2016). The Act is the "exclusive source for redress of civil rights violations." *Village of Maywood Board of Fire*

*& Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 581 (1998). Except for limited exceptions not relevant to the disposition of this case, the Commission is vested with exclusive jurisdiction over the subject of alleged civil rights violations. 775 ILCS 5/8-111(D) (West 2018). Moreover, because the Department is an administrative agency, any action it takes must be specifically authorized by statute. *Ferrari v. Department of Human Rights*, 351 Ill. App. 3d 1099, 1103 (2004). An administrative body that acts outside its statutory authority does so without jurisdiction. *Id.*

¶ 17 Section 7A-102(A-1)(1)(iv) of the Act provides that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv) (West 2018). It is well settled that "compliance with [a] statutory time limit is a condition precedent to the right to seek a remedy" before an administrative body, and that it is a prerequisite to the acquisition of subject matter jurisdiction. *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003); see also *Pickering v. Human Rights Comm'n*, 146 Ill. App. 3d 340, 352 (1986) (an administrative agency, like a court of limited jurisdiction, can only act "pursuant to the authority conferred on it by statute").

¶ 18 Here, Bumphus concedes, and the record confirms, that he sent a "late and untimely" copy of the EEOC's December 23, 2015, determination to the Department on March 8, 2016, well past the 30-day deadline required by the Act. Because compliance with a statutory time limit is a prerequisite to the acquisition of subject matter jurisdiction, the Commission properly determined that the Department lacked jurisdiction to review the charge.

¶ 19 Despite this, Bumphus requests that the Commission's decision sustaining the Department's dismissal be reversed and the matter remanded for an investigation of his discrimination charge. In support, Bumphus argues—for the first time on appeal—that, pursuant to section 7A-102(G)(4) of the Act (775 ILCS 5/7A-102(G)(4) (West 2016)), the Department's administrative proceedings should have been stayed after he filed his federal lawsuit on March 22, 2016.

¶ 20 As noted, Bumphus relies on section 7A-102(G)(4) of the Act (*id.*), which was in effect at the time he filed his federal civil rights lawsuit against Unique and other parties.[6] Section 7A-102(G)(4) stated that "[t]he Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights

CAU Removal 000458

violation." *Id.*

**\*5** ¶ 21 Ordinarily, an administrative agency's decision is entitled to deference; however, the amount of deference afforded to the administrative agency's decision depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. *Marconi*, 225 Ill. 2d at 532. An agency's rulings on questions of law are reviewed *de novo. City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Similarly, the determinative issue before us presents a purely legal question for which our review is *de novo.* See *Figueroa v. Deacon*, 404 Ill. App. 3d 48, 52 (2010) ("Whether there is substantial compliance with a statutory provision is a question of law and our review is *de novo.*").

¶ 22 Here, the Commission properly sustained the Department's dismissal for lack of jurisdiction without considering whether the administrative proceedings should have been stayed pursuant to section 7A-102(G)(4). We reiterate that, although Bumphus filed a federal civil rights lawsuit against Unique prior to the Department's dismissal, Bumphus's failure to timely send a copy of the EEOC's determination to the Department was a necessary prerequisite to establishing the Department's jurisdiction. Thus, the Department was not authorized from the outset to start its investigation of Bumphus's charge, and there were no administrative proceedings that could arguably be stayed under section 7A-102(G)(4). Thus, Bumphus's contention fails.

¶ 23 Moreover, as the State correctly notes, Bumphus failed to raise this issue before the Commission. The record is devoid of any evidence that Bumphus notified the Department of the federal lawsuit or requested the Department to enter a stay. While Bumphus asserts in his reply brief that he notified the Commission of his general concern that his "applicable standing for claims against [r]espondent *** might be at risk of being lost if his [Department] case is relinquished, withdrawn, or dismissed," none of Bumphus's filings with the Commission assert that the proceedings should have been stayed. Moreover, none of Bumphus's filings with the Commission reference section 7A-102(G)(4) of the Act. Thus, we find Bumphus waived review of the issue. See *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 287 (1990) ("The waiver rule specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts."); see also *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278 (1998) (arguments not raised before the administrative agency will not be considered for the first time on administrative review).

¶ 24 Lastly, we note that Unique asserts in its brief that, because Bumphus's petition for direct administrative review is frivolous, this court should impose sanctions. Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) states, *inter alia*, that: "A reviewing court may impose a sanction upon a party or an attorney for a party upon the motion of another party or parties, or on the reviewing court's own initiative where the court deems it appropriate." Under Illinois Supreme Court Rule 137(b) (eff. Jan. 1, 2018), a court may grant sanctions under two different circumstances: "(1) when a pleading, motion, or other paper is not well grounded in fact or is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or (2) when it is interposed for purposes such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Internal quotation marks omitted.) *People v. Stefanski*, 377 Ill. App. 3d 548, 551 (2007). We note that Unique did not file a motion for sanctions in this matter. Additionally, after careful consideration of the briefs, the record, and the proceedings in this court, we decline to sanction Bumphus on our own initiative. We simply do not view Bumphus's request for direct administrative review, taken as a whole, as not warranted in a good-faith argument for extension of section 7A-102(G)(4) of the Act (775 ILCS 5/7A-102(G)(4) (West 2016)) or that his primary purpose was to "delay, harass, or cause needless expense" (Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994)).

¶ 25 III. Conclusion

**\*6** ¶ 26 For the foregoing reasons, we affirm the Commission's March 20, 2019, order sustaining the Department's dismissal for lack of jurisdiction of Bumphus's discrimination charge.

¶ 27 Affirmed.

Justices Wharton and Vaughan concurred in the judgment.

**All Citations**

Not Reported in N.E. Rptr., 2021 IL App (5th) 200037-U, 2021 WL 754596

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 8/16/2022 6:14 PM   2018CH02497

CAU Removal 000459

FILED DATE: 8/16/2022 6:14 PM  2018CH02497

**Bumphus v. Illinois Human Rights Commission, Not Reported in N.E. Rptr. (2021)**

2021 IL App (5th) 200037-U

## Footnotes

1    Neither the Department's December 21, 2015, letter nor proof of service have been included in the record on appeal; however, the letter is described in other documents of record, including the Department's investigation report, the Department's response to Bumphus's request for review, and the Commission's order.

2    Neither the EEOC's December 23, 2015, letter of dismissal and notice of rights nor proof of service have been included in the record on appeal, but Bumphus acknowledges receipt of the letter in his opening brief. The letter is also described in the Department's response to Bumphus's request for review and the Commission's order.

3    A copy of Bumphus's March 8, 2016, request for investigation is not included in the record but is mentioned in Bumphus's July 14, 2016, request for review by the Commission of the Department's dismissal and in the Department's subsequent response to Bumphus's request.

4    A copy of the Bumphus's federal complaint has not been included in the record on appeal. A description of the lawsuit is contained in the parties' briefs. Although Bumphus included a copy of the complaint in his "Appendix A," it does not appear that the parties have filed a stipulation, pursuant to Illinois Supreme Court Rule 329 (eff. July 1, 2017), or otherwise moved to supplement the record on appeal with the complaint.

5    Bumphus originally filed a petition for direct administrative review in the Second District Appellate Court on April 24, 2019. On that court's own motion, the appeal was transferred to the Fifth District Appellate Court because the alleged civil rights violations occurred in the Fifth District, and the venue provision of the Illinois Human Rights Act provides that "[p]roceedings for judicial review shall be commenced in the appellate court for the district wherein the civil rights violation which is the subject of the Commission's order was allegedly committed." 775 ILCS 5/8-111(B)(3) (West 2018).

6    Section 7A-102(G)(4) of the Act was amended by Public Act 100-1066, § 5 (eff. Aug. 24, 2018). See 775 ILCS 5/7A-102 (West 2018).

---

**End of Document**                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000460

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

# EXHIBIT 3

CAU Removal 000461

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS )    SS
COUNTY DEPARTMENT, CHANCERY DIVISION          )

MICHELLE ABRAHAM,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    Case No. 2018-CH-02497
                                     )    Calendar: 15
COMMUNITY ALTERNATIVES UNLIMITED,    )
                                     )
            Defendant.               )

## AFFIDAVIT

Pursuant to the certification set forth below, Joanell Voigt states as follows.

1. I am President and Chief Executive Officer of Community Alternatives Unlimited ("CAU"), the Defendant in the above case.

2. In March 2017, I received from the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination purportedly filed by Michelle Abraham, a former CAU employee, on March 3, 2017. A copy of that charge is attached as Ex. A.

3. On or about May 4, 2017, I received a copy of a letter the Illinois Department of Human Rights ("IDHR") sent to Abraham. The letter indicated that the EEOC was responsible for investigating Abraham's charge, and if Abraham wanted the IDHR to take any further action on her charge, she needed to send the IDHR a copy of the EEOC's findings within thirty days of service. A copy of that letter is attached as Ex. B.

4. In June 2017, I received the EEOC's dismissal of Abraham's charge, dated June 2, 2017. In that notice, the EEOC indicated it "was unable to conclude that the information obtained establishes violations of the statutes." The notice advised Abraham that she could file suit under federal law in either federal or state court within 90 days of receiving the notice. A copy is attached as Ex. C.

5. In October 2017, I received a copy of a letter from the IDHR to Abraham indicating she had opted to have her EEOC charge investigated by the IDHR. (Ex. D)

Firm:45835549v8

**EXHIBIT 3**

CAU Removal 000462

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

6. In late November 2017, I received a dismissal notice for lack of jurisdiction and an investigation report from the IDHR. The investigation report recited some of the facts set forth above but also stated that Abraham did not submit a copy of the EEOC's findings to the IDHR until September 8, 2017. This was several months after the 30 day deadline for her to do so. As a result, the IDHR dismissed Abraham's charge for lack of jurisdiction but allowed her to seek review of the dismissal with the Illinois Human Rights Commission or to file a civil action in court. These documents are attached as Ex. E.

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that she verily believes the same to be true.

Joanell Voigt

Date: May 8, 2018

2

CAU Removal 000463

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

# EXHIBIT A

CAU Removal 000464

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2017-02387 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Michelle Abraham | RECEIVED EEOC | 1972 |

Street Address — 611 E. Ironwood Drive, Mount Prospect, IL 60056

City, State and ZIP Code

MAR 3 2017

CHICAGO DISTRICT OFFICE

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COMMUNITY ALTERNATIVES UNLIMITED | 101 - 200 | (773) 867-3000 |

Street Address — 8765 West Higgins, Chicago, IL 60631

City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address

City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest    Latest |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | 01-31-2017 |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or before November 2, 1999. My most recent position was Program Manager. During my employment, I was subjected to racially derogatory comments and witnessed the difference in treatment based on race of which I informed Respondent. Subsequently, I was placed on a performance improvement plan, accused of misconduct, subjected to unattainable goals, and extreme scrutiny. I was constructively discharged on or about January 31, 2017.

I believe I have been discriminated against because of race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Mar 03, 2017        X Michelle S. A. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date        Charging Party Signature | |

EXHIBIT A

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

# EXHIBIT B

ILLINOIS DEPARTMENT OF
# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

RECEIVED

MAY 0 4 2017

COMMUNITY
ALTERNATIVES UNLTD.

May 1, 2017

Ms. Michelle Abraham
611 East Ironwood Drive
Mt. Prospect, IL 60056

Re: CASE NO: Michelle Abraham vs. Community Alternatives Unlimited #170428007

Dear Complainant:

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. After the EEOC issues its findings, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's

findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

**By Mail:** Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:** Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. This process does not affect the investigation of your charge at EEOC. If you do not wish to proceed with the Department, you do not need to take any further action.

This letter does not apply to any settlement of this charge the parties have made with the EEOC.

If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.

ILLINOIS DEPARTMENT OF HUMAN RIGHTS.

RE1_EEOC 30 Rev 4/17

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463

CC:

Community Alternatives Unlimited
8765 West Higgins
Chicago, IL 60631

**EXHIBIT B**

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

CAU Removal 000467

FILED DATE: 8/18/2022 6:42 PM   2018CH02497

# EXHIBIT C

CAU Removal 000468

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Michelle Abraham | From: Chicago District Office |
|---|---|
| 611 E. Ironwood Drive | 500 West Madison St |
| Mount Prospect, IL 60056 | Suite 2000 |
| | Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Eva Baran, | |
| 440-2017-02387 | Investigator | (312) 869-8023 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_Julianne Bowman_      6/2/17

Enclosures(s)

Julianne Bowman,
District Director      (Date Mailed)

cc: **COMMUNITY ALTERNATIVES UNLIMITED**
c/o Julie Badel
Epstein Becker Green
227 West Monroe Street #3250
Chicago, IL 60606

EXHIBIT C

FILED DATE: 8/18/2022 6:44 PM 2018CH02497

FILED DATE: 8/18/2022 6:42 PM   2018CH02497

# EXHIBIT D

FILED DATE: 8/18/2022 6:48 PM 2018CH02497

ILLINOIS DEPARTMENT OF



## Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

October 12, 2017                                              **RESPONDENT'S COPY**

MICHELLE ABRAHAM
**C/O RUTH IRENE MAJOR, MEMBER**
LAW OFFICES OF RUTH I. MAJOR
30 WEST MONROE STREET, SUITE 1650
CHICAGO, IL  60603 – 2436

RE:     Charge No.:   **2017CR3337**
        Respondent:   **COMMUNITY ALTERNATIVES UNLIMITED**

Complaint or Civil Action Filing Dates:  **6/3/2018   through   8/31/2018**

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ('EEOC') investigated by the Illinois Department of Human Rights ('IDHR') under the Illinois Human Rights Act.  IDHR has received a copy of EEOC's determination and your request for the Department to investigate.  A copy of the charge has been served on the Respondent.  Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge.  If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition.  If we do not have copies of these documents in your file, we have included copies with this notice.

1)      Verification of Disability.
Please give the Verification of Disability form to your physician for completion.  Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)      Consent form.
The consent form allows IDHR to review your physician's documentation.  Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge.  It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned. IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge.  IDHR's investigation time may be extended if you and Respondent agree in writing.

EXHIBIT D

CAU Removal 000471

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

PAGE 2

If IDHR does not complete the investigation of your case by timely issuing its report of findings, you may either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court within 90 days after the expiration of the 365 days (or the extended time). We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Human Rights Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside this 90-day period, your complaint or civil action may be deemed untimely and dismissed.

Once 455 days (365 days [or the extended time] plus 90 days) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Human Rights Commission, or commenced a civil action in the appropriate court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. Please also serve a copy of your complaint on the EEOC: 500 West Madison Street, Suite 2000, Chicago, IL 60661 – 2592. If you file a complaint with the Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

SB1122 IN-6 Non-Med
CR/SR
4/17

FILED DATE: 8/18/2022 6:42 PM   2018CH02497

# EXHIBIT E

CAU Removal 000473

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | |
| | ) ss | |
| COUNTY OF COOK | ) | FILE NO (S) 2017CR3337 |

## AFFIDAVIT OF SERVICE

Janice L. Woods-Wills, deposes and states that she served a copy of the

attached **NOTICE OF DISMISSAL FOR LACK OF JURISDICTION** on each person

named below by depositing same this 21ST day of November, 2017, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

---

Ruth Major
Attorney at Law
30 West Monroe-Suite 1650
Chicago, Illinois 60603

Julie Badel
Epstein Becker & Green, P.C.
227 West Monroe-Suite 3250
Chicago, Illinois 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*Janice L. Woods-Wills*
Janice L. Woods-Wills

## PLEASE NOTE:

The above-signed person is responsible only for mailing these documents. If you wish a review of the finding in this case, you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

**EXHIBIT E**

CAU Removal 000474

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | Michelle Abraham | **IDHR No.:** | 2017CR3337 |
| **Respondent:** | Community Alternatives Unlimited | **EEOC No.:** | 440-2017-02387 |

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR    **Date:** 10/25/17

**Issue/Basis:**                                   **Finding:**

A.  Harassment/race, black                          A.  Lack of Jurisdiction
B.  Placed on performance plan/retaliation          B.  Lack of Jurisdiction
C.  Constructive discharge/race, black              C.  Lack of Jurisdiction
D.  Constructive discharge/retaliation              D.  Lack of Jurisdiction


## Jurisdiction:

| | | |
|---|---|---|
| Alleged violations: | A.-D.: | 1/31/17 |
| Charge filed: | | 3/3/17 |
| Charge perfected: | | 6/2/17 |
| Number of employees: | | 101-200 |

## Findings

On March 3, 2017, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On May 1, 2017, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On September 8, 2017, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

CAU Removal 000475

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

FILED DATE: 8/18/2022 6:42 PM   2018CH02497

IN THE MATTER OF:                              )
                                               )
MICHELLE ABRAHAM,                              )
                                               )
                    COMPLAINANT,               )          CHARGE NO.  2017CR3337
                                               )          EEOC NO.    440-2017-02387
AND                                            )
                                               )
COMMUNITY ALTERNATIVES                         )
   UNLIMITED,                                  )
                                               )
                    RESPONDENT.                )

## NOTICE OF DISMISSAL
## FOR LACK OF JURISDICTION

Ruth Major                              Julie Badel
Attorney at Law                         Epstein Becker & Green, P.C.
30 West Monroe-Suite 1650               227 West Monroe-Suite 3250
Chicago, Illinois 60603                 Chicago, Illinois 60606


DATE OF DISMISSAL:  November 21, 2017

1.      YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT jurisdiction to pursue the allegations of the charge.  Accordingly, pursuant to
Section 7A-102(D) of the Human Rights Act, Illinois Compiled Statutes, (775 ILCS 5/3-
101 et. seq.) and the Rules and Regulations of the DHR (56 Ill. Adm. Code. Chapter II,
Section 2520.560), the charge is HEREBY DISMISSED.

    2.      If Complainant disagrees with this action, Complainant may:

    a) seek review of this dismissal before the Illinois Human Rights Commission,
       100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
       "Request for Review" with the Commission by the request for review filing
       date below.  Respondent will be notified by the Human Rights Commission if
       a Request for Review is filed.

    REQUEST FOR REVIEW FILING DEADLINE DATE:  **February 26, 2018**

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

**NOTICE OF DISMISSAL FOR LACK OF JURISDICTION**
**2017CR3337**
Page Two

Or,

b) commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings.** The Appellate Courts in Watkins v. Office of the State Public Defender, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch V. Department of Transportation, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3. If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.

DEPARTMENT OF HUMAN RIGHTS

HB 1509/HB59/NOD/LOJ
12/10

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

# EXHIBIT 4

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

2020 WL 4673136
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Jessica BALL, Plaintiff,
v.
ROESLEIN & ASSOCIATES, INC., Defendant.

Case No. 20-CV-00045-NJR
|
Signed 08/12/2020

**Attorneys and Law Firms**

Michael J. Brunton, Brunton Law Offices, P.C.,
Collinsville, IL, for Plaintiff.

Julie Z. Devine, Kevin L. Fritz, Lashly & Baer, P.C., St.
Louis, MO, for Defendant.

## MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

**\*1** Pending before the Court is a Motion to Dismiss
Plaintiff Jessica Ball's First Amended Complaint filed by
Defendant Roeslein & Associates, Inc. ("Roeslein") (Doc.
16). For the reasons set forth below, the motion is granted
in part and denied in part.

## FACTUAL & PROCEDURAL BACKGROUND

Ball alleges she experienced a hostile work environment,
harassment, and discrimination while working for her
former employer, Roeslein, because of her disabilities,
gender, and sexual orientation. (Doc. 1-1, pp. 25-43). Ball
reported the hostile work environment, harassment, and
discrimination to Roeslein's supervisors, and she filed a
complaint with the Illinois Department of Human Rights
("Department") and the United States Equal Employment
Opportunity Commission ("EEOC"). Ball alleges that
Roeslein terminated her in retaliation for her reports
regarding the hostile work environment, harassment, and
discrimination (*Id.* at pp. 27-43).

Ball received a Right-to-Sue ("RTS") letter from the

EEOC on July 1, 2019 (*Id.* at p. 47) and commenced this
action in the Circuit Court of the Twentieth Judicial
Circuit in Randolph County, Illinois, on September 26,
2019 (*Id.* at p. 1). Ball alleges two counts against Roeslein
under the Americans with Disabilities Act ("ADA"):
disability discrimination (Count I) and retaliation for
reporting disability discrimination (Count II) (*Id.* at pp.
25-29). Ball alleges four more counts against Roeslein
under Title VII of the Civil Rights Act, 42 U.S.C. §
2000e, *et seq* ("Title VII"): gender discrimination (Count
III); retaliation for reporting gender discrimination (Count
IV); sexual orientation discrimination (Count V); and
retaliation for reporting sexual orientation discrimination
(Count VI) (*Id.* at pp. 29-37).

Ball also alleges a retaliatory discharge claim under
Illinois common law against Roeslein (Count VII) (*Id.* at
pp. 37-39). Finally, Ball alleges another two counts
against Roeslein under the Illinois Human Rights Act,
775 ILCS 5/1-101, *et. seq* ("IHRA"): gender and sexual
orientation discrimination (Count VIII) and retaliation for
reporting the gender and sexual orientation
discrimination, in violation of the IHRA (Count IX) (*Id.*
at pp. 39-43). Ball seeks reasonable attorney's fees, costs,
and compensatory and punitive damages (*Id.* at pp.
25-43).

On January 10, 2020, Roeslein removed the case to this
Court (Doc. 1). The Court has federal question
jurisdiction over the federal claims pursuant to 28 U.S.C.
§ 1331 and supplemental jurisdiction over the state law
claims pursuant to 28 U.S.C. § 1367. Roeslein filed a
timely Motion to Dismiss, arguing the First Amended
Complaint fails to state a claim under Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 16).

## LEGAL STANDARD

To survive a motion seeking dismissal under Federal Rule
of Civil Procedure 12(b)(1), a plaintiff must " 'clearly ...
allege facts demonstrating' each element" required to
establish his standing. *See Spokeo, Inc. v. Robins*, 136
S.Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 95
S.Ct. 2197, 2215 (1975)). The "irreducible constitutional
minimum" of standing requires a showing that a plaintiff
has "(1) suffered an injury in fact, (2) that is fairly
traceable to the challenged conduct of the defendant, and
(3) that is likely to be redressed by a favorable judicial
decision." *Id.* The burden of establishing these three
elements falls on the party invoking the court's
jurisdiction. *Id.*

EXHIBIT 4

CAU Removal 000479

Ball v. Roeslein & Associates, Inc., Slip Copy (2020)

FILED DATE: 8/18/2022 6:14 PM    2018CH02497

**\*2** Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). The factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 554-55 (internal citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Further, courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On the other hand, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

**ANALYSIS**

**I. ADA Discrimination Claim**
Roeslein first asserts that Ball's ADA discrimination claim does not allege a specific disability and Count I should be dismissed (Doc. 17, p. 3). The Court agrees.[i] The Seventh Circuit has held that short, plain statements, as long as they include a specific disability, pass the Rule 12(b)(6) test. *See Tate v. SCR Medical Transp.*, 809 F.3d 343, 345 (7th Cir. 2015) ("[a]nd surely a plaintiff alleging discrimination on the basis of an actual disability under 42 U.S.C. § 12102(1)(A) must allege a specific disability"). Here, Ball did not allege a specific disability. Her ADA discrimination claim, therefore, must be dismissed.

**II. Title VII Sex Discrimination Claims**
Counts III and V of the First Amended Complaint allege Title VII sex discrimination claims based on gender and sexual orientation. Roeslein contends Ball must allege facts to support the conclusions that she was terminated as a result of her gender and/or sexual orientation (Doc. 17, p. 5).

The Seventh Circuit has explained, however, that "a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To state a claim for gender discrimination under Title VII, a plaintiff only needs to allege "that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1028 (7th Cir. 2013).

Under this standard, Ball alleges sex discrimination claims based on her gender and sexual orientation. Ball pleads she is a female and a homosexual (Doc. 1-1, pp. 29, 33). Ball also pleads she was subject to discrimination, harassment, and a hostile work environment by Roeslein because of her gender and sexual orientation (*Id.*). Ball then pleads she was terminated as a result of her gender and sexual orientation (*Id.* at pp. 30, 33). Accordingly, Roeslein's Motion to Dismiss is denied as to Counts III and V.

**III. Hostile Work Environment**
**\*3** Ball did not plead a separate hostile work environment claim in the First Amended Complaint, but pleads in her ADA and Title VII discrimination claims that she was subjected to a hostile work environment. "An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and, (4) that there is a basis for employer liability." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (quoting *Mendenhall v. Muller Streamline Co.,* 419 F.3d 686, 691 (7th Cir. 2005)). "Factors to consider include the frequency and severity of conduct, as well as if it is physically threatening or humiliating, or merely an offensive utterance, or whether it interferes with an employee's work performance." *Emerick v. Wood River-Hartford Sch. Dist. No. 15,* 2017 WL 2778624, at \*9 (S.D. Ill. June 27, 2017).

Here, the Court agrees with Roeslein that Ball has failed

CAU Removal 000480

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

to allege any facts that would support a hostile work environment claim (Doc. 17, pp. 3-5). Ball merely states that she was harassed and subjected to a "hostile work environment." Even under the liberal federal pleading requirements, Ball's allegations are insufficient to put Roeslein on notice regarding the conduct or actions she believes rise to the level of harassment or a "hostile work environment." Thus, Roeslein's hostile work environment claims must be dismissed.

### IV. ADA and Title VII Retaliation Claims

Ball also brings retaliation claims under the ADA[2] and Title VII in Counts II, IV, and VI. To plead such claims, a plaintiff must allege that she engaged in statutorily protected activity and suffered an adverse action as a result of that activity. *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017).A full narrative of the retaliated activated is unnecessary. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). "It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Id.*

Here, Ball alleges that she engaged in statutorily protected activity by reporting the hostile work environment, harassment, and discrimination based on her disabilities and sexual orientation to her supervisors at Roeslein (Doc. 1-1, pp. 28, 36).[3] *See Rizzo v. Sheahan*, 266 F.3d 705, 715 (7th Cir. 2001) (noting that the Seventh Circuit recognizes internal reporting as a statutorily protected activity). Ball further alleges that Roeslein fired her because she reported disability and sexual orientation discrimination, harassment, and hostile work environment.

Roeslein argues Ball failed to state a retaliation claim under the ADA because "she fails to indicate to whom she made this alleged report, the date of the alleged report, the location of the alleged report, nor the nature of the alleged report." (Doc. 17, p. 4). Additionally, Roeslein argues Ball failed to state a retaliation claim under Title VII because Ball does not allege that she engaged in any protected activity under Title VII, much less provide any factual details related to a protected activity. (Doc. 17, p. 6). Roeslein continues "[Ball] does not provide any factual support that her termination was connected in any way to a protected activity." (*Id.*).

**\*4** The Court agrees. Ball's First Amended Complaint fails to plead even "a few tidbits" that would allow Roeslein to investigate her retaliation claims. At best, Ball

pleads that she "reported the hostile work environment, harassment, and discrimination based upon disabilities or her perceived disabilities to *her* supervisors." (Doc. 1-1, p. 28) (emphasis added); *see Dailey v. HSHS Med. Grp.*, 2019 WL 2772532, at *3 (S.D. Ill. July 2, 2019) (acknowledging that "[a]nother 'tidbit' that could help is for [plaintiff] to identify the 'supervisors' to whom she reported [defendant's] alleged improper conduct—even if just to clarify that they were 'her supervisors,' which [defendant] could presumably then identify"). Ball's First Amended Complaint is comprised primarily of legal conclusions like those found patently inadequate in *Bell Atlantic*. *See Shofner v. Branding Iron Holdings, Inc.*, 2016 WL 879630, at *3 (S.D. Ill. Mar. 8, 2016) (acknowledging that "[n]or in her retaliation claims does she plead anything more than a general allegation of retaliation for reporting some unspecified conduct."); *see also EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781 (7th Cir. 2007) (noting "a plaintiff ... alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected").

Here, the word "her" in front of supervisors does not satisfy the pleading standards for Ball's retaliation claim under the ADA. And Ball's retaliation claim under Title VII for her sexual orientation only states that she reported the discrimination—not even that she reported it to *her* supervisors.[4] Therefore, Ball's retaliation claims under the ADA and Title VII must be dismissed.

### V. Retaliatory Discharge Claim

#### A. Choice of Law

Ball also alleges a retaliatory discharge claim under Illinois common law. Roeslein argues that Ball's retaliatory discharge claim must be dismissed because Ball fails to allege facts that Illinois law applies to this claim.

Although Roeslein is not arguing that the substantive law of any state other than Illinois applies, a choice of law analysis confirms that Ball does not need to allege additional facts that Illinois law applies to this claim. Because this Court considers Ball's common law retaliatory discharge claim under its supplemental jurisdiction, it applies Illinois' choice of law rules to determine the applicable substantive law. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir.

FILED DATE: 8/13/2022 6:44 PM   2018CH02497

2014) ("[f]ederal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law"). In practice, this means that "the law of the place of injury controls *unless* Illinois has a more significant relationship with the occurrence and with the parties." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998) (emphasis added). "A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered." *Id.* Illinois courts also consider "the interests and public policies of potentially concerned states ... as they relate to the transaction in issue." *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (1997).

A careful assessment of the factors cited above leads to the conclusion that Illinois has the most significant relationship to the retaliatory discharge, and therefore, Illinois law applies to this claim. Illinois is the place of the alleged injury (Doc. 1, p. 3). *See Fredrick*, 144 F.3d at 503-04 (noting that in a retaliatory discharge claim a plaintiff's domicile is the state in which the alleged injury took place). Illinois is the state of domicile of Ball and one of the places where Ball worked for Roeslein (Doc. 1, p. 3; Doc. 1-1, p. 25). Missouri is the place where Roeslein's principal place of business is maintained and where Roeslein was incorporated (Doc. 1, p. 3). Roeslein also claims in a letter that it sent to the Department on August 23, 2018 that Missouri is the place where Ball was hired as an employee; Missouri is the state were Ball signed an employment agreement; Missouri is where Ball's managers were always based; and Missouri is where all employment decisions take place (Doc. 21-2, p. 1).

**\*5** Even if this Court could consider Roeslein's August 23, 2018 letter,[5] this Court cannot conclude that any other state has a more significant relationship with the occurrence or parties than the place of injury, thus Illinois law controls.

**B. Merits**
Roeslein also argues that the retaliatory discharge claim in Count VII of the First Amended Complaint must be dismissed because Ball "fails to allege any facts to support her conclusion that her discharge was in retaliation for her protected activities, or that there was any connection between her alleged report and her

termination." (Doc. 17, pp. 6-7.).

To state a claim for retaliatory discharge under Illinois law, a plaintiff must allege: "(1) he [or she] has been discharged; (2) in retaliation for his activities; (3) the discharge violates a clear mandate of public policy." *Robinson v. Morris*, 2018 WL 2164336, at \*4 (S.D. Ill. May 10, 2018). "Retaliatory discharge claims have been recognized as a narrow exception to the general rule in two types of cases: those involving retaliation for filing a worker's compensation claim and those involving an employee terminated for reporting an employer's allegedly criminal activity." *Mollet v. St. Joseph's Hosp. Breese, of the Hosp. Sisters of the Third Order of St. Francis*, 2017 WL 1035750, at \*2 (S.D. Ill. Mar. 17, 2017).

Ball alleges that she reported to supervisors inaccurate accounting and financial recordings, including reporting that money was "not received when it was reported received, material not present when reported as present, instigating various fraud regulations and laws." (Doc. 1-1, p. 38); *see Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 132 (1981) (citations omitted) (noting that the Illinois Supreme Court has held that "[p]ublic policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy"). Ball further alleges that she reported to Roeslein supervisors "numerous safety violations at the parts which violated OSHA regulations and safety regulations and laws" and "welds and materials that were bad on products but the products were still being approved and shipped to customers, which violated OSHA regulations...." (*Id.*). Ball then alleges that her termination "is casually [sic] related to the reports and complaints of the above-referenced illegal activities to her supervisors." (*Id.*).

Ball has, therefore, stated a claim for retaliatory discharge under Illinois law. While Ball does not allege if the person responsible for her termination knew of her report to her supervisors, Ball does allege that she made reports to her supervisors and then was subsequently fired. (*Id.*); *see Laurie v. BeDell*, 2017 WL 1076940, at \*7 (S.D. Ill. Mar. 22, 2017) (holding that the plaintiff provided enough facts that she was fired in retaliation for reporting illegal activities "[a]lthough [plaintiff] d[id] not state if the person responsible for her termination knew of the report provided to her supervisors, she does allege that she reported her injuries to her supervisors and then was subsequently fired").

**\*6** Accordingly, Roeslein's Motion to Dismiss is denied as to Ball's retaliatory discharge claim under Illinois

CAU Removal 000482

Ball v. Roeslein & Associates, Inc., Slip Copy (2020)

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

common law.

**VI. IHRA Claims**

The IHRA provides for a comprehensive procedure for redressing human rights violations, under which a complainant must exhaust his or her administrative remedies before bringing a civil suit. The procedure becomes more convoluted when a complainant files a charge with the Department and the EEOC.

In the case of dual filings, the Department "shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102. When the EEOC does not issue a determination, but issues the complainant a notice of a right to sue, "the complainant must submit a copy of the EEOC's determination within **30 days** after service of the determination by the EEOC on complainant." *Id.* (emphasis added). If the EEOC "does not issue a determination, but does issue the complainant a notice of a right to sue ... *and if the Department is timely notified of the EEOC's determination by complainant*, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination." *Id.* (emphasis added).

The complainant may then commence a civil suit in two instances: (1) upon receiving a final report from the Department; or (2) if the Department fails to issue a report within 365 days. 775 ILCS 5/7A-102(D), (G)(2). If the Department fails to issue a report within 365 days, the complainant has ninety days to either proceed before the IHRC or commence a civil action. *Id.*

Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. Ball alleges she timely filed charges with the Department and the EEOC, and she received a notice of a RTS from the EEOC on July 1, 2019 (Doc. 1-1, p. 47). As Roeslein correctly points out, however, a RTS from the EEOC is not a substitute for a final report from the Department. *See Wierciszewski v. Granite City Ill. Hosp. Co.*, No. 11–120–GPM, 2011 WL 1615191 at *3 (S.D. Ill. Apr. 28, 2011).

It is undisputed that the Department did not issue a report

on Ball's administrative charge. To combat this, Ball argues the Department failed to issue a report within the 365-day period and she may file a lawsuit. 775 ILCS 5/7A-102. Unfortunately, however, the statute does not clearly say whether the 365–day period begins when the complainant files the charge with the EEOC or, alternatively, when EEOC made its determination. *O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4916464, at *12 (N.D. Ill. Oct. 17, 2011); *Muller v. Morgan*, No. 12 C 1815, 2013 WL 2422737, at *4 (N.D. Ill. June 3, 2013). Ball's IHRA claims are untimely no matter how the statute is read. If the 365-day period commenced when Ball filed her charge with the EEOC—April 30, 2018 (Doc. 1-1, p. 69)—Ball was required to file this suit by July 29, 2019—365 days plus 90 days after April 30, 2018, but Ball filed her initial Complaint asserting claims under the IHRA nearly two months later—on September 26, 2019 (Doc. 1-1, p. 1). If the 365-day period commenced when the EEOC made its determination—July 1, 2019 (Doc. 1-1, p. 47)—then Ball filed too early as the 365-day period had not expired.

**\*7** Further, Ball has failed to provide facts that she submitted a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC. 775 ILCS 5/7A-102(A-1)(1)(iv); *see* 775 ILCS 5/7A-102(A-1)(2) (providing that the Department will only take substantive action on the EEOC determination if it "is timely notified of the EEOC's findings by complainant"); *see also Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) (holding that the plaintiff failed to administratively exhaust her IHRA claims because plaintiff failed to submit a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC on plaintiff).

Accordingly, the Court finds that Ball failed to administratively exhaust her IHRA claims and her claims for discrimination, harassment, or retaliation under the IHRA must be dismissed.

**CONCLUSION**

For these reasons, the Motion to Dismiss filed by Defendant Roeslein (Doc. 16) is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Counts III, V, and VII. The motion is **GRANTED** as to Counts I, II, IV, VI, VIII, and IX, which are **DISMISSED without prejudice** for failure to state a claim. The action will proceed on Ball's claims of Title VII sex discrimination (Counts III and V) and retaliatory discharge under Illinois

common law (Count VII).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 4673136

### Footnotes

1    The Court does not, however, believe Ball is obligated to plead all the facts Roeslein argues she must plead regarding her essential functions and termination as a result of her disability.

2    Ball's retaliation claim under the ADA is not foreclosed simply because Ball fails to allege a specific disability. *See Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) ("[a] court's conclusion that an individual does not have a disability does not foreclose a retaliation claim").

3    Ball fails to allege that she reported the hostile work environment, harassment, and discrimination based on her gender, but does allege that she filed a formal EEOC charge of gender, sexual orientation, and disability discrimination, harassment, and hostile work environment. Filing an EEOC charge is "the most obvious form of statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011).

4    In *Brooks v. FedEx Supply Chain, Inc.*, 2019 WL 1746264, at *6 (S.D. Ill. Apr. 18, 2019), the plaintiff's complaint was similarly comprised of legal conclusions. This Court, however, was able to consider the facts and allegations in the Department's Investigation Report attached to plaintiff's complaint. Here, Ball only attached the EEOC charge to the Complaint, which contains the same legal conclusions as Ball's Complaint (Doc. 1-1, pp. 44-46).

5    This Court may consider documents attached to the pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Fredrick*, 144 F.3d at 504 (noting that "[defendant's] [a]ffidavits are not properly considered in deciding upon a motion under Rule 12(b)(6) unless the district court converts the motion into one for summary judgment under Rule 56").

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 8/18/2022 6:14 PM    2018CH02497

CAU Removal 000484

FILED DATE: 8/13/2022 6:44 PM   2018CH02497

2021 WL 1946335
United States District Court, N.D. Illinois, Eastern
Division.

Cynthia DONALD, Plaintiff,
v.
CITY OF CHICAGO and Eddie Johnson,
Defendants.

No. 20-cv-6815
|
Signed 05/14/2021

**Synopsis**
**Background:** Police officer brought claims against her supervisor and the city, alleging she was subjected to sexual abuse, harassment, and a hostile work environment by her supervisor in violation of Title VII, § 1983, Illinois Human Rights Act (IHRA), and Illinois Gender Violence Act (IGVA), and alleging spoliation of evidence by supervisor. Supervisor and city moved to dismiss.

**Holdings:** The District Court, Elaine E. Bucklo, J., held that:

allegation that supervisor transferred officer from private detail to records department plausibly alleged tangible employment action for purposes of Title VII;

officer alleged facts sufficient to state claim for municipal liability under § 1983;

officer failed to exhaust her administrative remedies pertaining to claims under Illinois Human Rights Act;

punitive damages are not available under Title VII or § 1983 against a municipality or government;

officer's Title VII claim did not preempt her § 1983 claim;

claim under IGVA is not preempted by IHRA because there may be factual overlap between claims, so long as IGVA claim can be stated without reference to IHRA; and

officer sufficiently alleged damages from supervisor's destruction of his cell phone, as required to state claim under Illinois law for negligent spoliation of evidence.

Motions to dismiss granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim.

**Attorneys and Law Firms**

Brian H. Eldridge, Robert J. McLaughlin, Robert John McLaughlin, Steven Alan Hart, Carter David Grant, John Backes Prior, Hart McLaughlin & Eldridge, LLC, Chicago, IL, for Plaintiff.

Mark J. Bereyso, Susan Margaret O'Keefe, Amy Lynne Brammell, Kristen Woytowicz, City of Chicago Department of Law, Employment Litigation Division, Chicago, IL, for Defendant City of Chicago.

Michael Irving Leonard, Rebecca Alexander, Leonard Trial Lawyers LLC, Oluwagbemiga Longe, The Longe Law Firm, Chicago, IL, for Defendant Eddie Johnson.

Memorandum Opinion and Order

Elaine E. Bucklo, United States District Judge

**\*1** Plaintiff Cynthia Donald is a police officer in the Chicago Police Department. She alleges that over a period of three years, she was subjected to sexual abuse, harassment, and a hostile work environment by her supervisor and superior, former Chicago Police Department Superintendent Eddie Johnson. Ms. Donald brings the instant action against Mr. Johnson and the City of Chicago, asserting causes of action under Title VII, 42 U.S.C. § 1983, and state law. Both Mr. Johnson and the City of Chicago have moved to dismiss Ms. Donald's claims. For the reasons that follow, the motions to dismiss [45, 47] are granted in part and denied in part.

I.

In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)

CAU Removal 000485

FILED DATE: 8/18/2022 6:48 PM    2018CH02497

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Ms. Donald has been a Chicago police officer since November 2006. ECF No. 34 ¶ 64. In the summer of 2015, while Ms. Donald was assigned to the First District, Ms. Donald caught Mr. Johnson's attention, and Mr. Johnson commented to a friend that she had a physically attractive appearance. *Id.* ¶¶ 65-66. In or around May 2016, acting as Superintendent, the highest-ranking official in the Chicago Police Department, Mr. Johnson had Ms. Donald reassigned from the First District to his personal detail at police headquarters. *Id.* ¶ 68. Approximately six months later, Mr. Johnson arranged for Ms. Donald to be his personal driver. *Id.* ¶ 69.

Shortly after Ms. Donald's reassignment to headquarters, Mr. Johnson began sexually assaulting and harassing Ms. Donald, including forcibly performing oral and vaginal sex on her, locking her in his office and conditioning her release on her performing sexual acts on him, sending her nude photographs, and making derogatory and sexual remarks. *Id.* ¶¶ 7, 70, 77-78, 85, 87. This sexual assault and harassment continued for a period of three years, until the end of 2019. *Id.* ¶¶ 71, 76. Mr. Johnson used his position of power within the Chicago Police Department to pressure Ms. Donald into submitting to his sexual advances. For example, while she was studying for her Sergeant's exam, Mr. Johnson told Ms. Donald that he could facilitate her promotion to Sergeant as long as she "stay[ed] on his good side." *Id.* ¶ 96. He also threatened to demote a male officer who he believed was showing an interest in Ms. Donald. *Id.* ¶ 100.

On October 16, 2019, Mr. Johnson ordered Ms. Donald to accompany him to a restaurant. *Id.* ¶ 102. Later that night, after Ms. Donald had returned home, Mr. Johnson was found asleep in his car, allegedly intoxicated. *Id.* ¶¶ 103-04. The incident precipitated an investigation by Chicago's Office of the Inspector General into Mr. Johnson's conduct, and Ms. Donald alleges that in connection with that investigation, Chicago Mayor Lori Lightfoot "learned of Superintendent Johnson's highly inappropriate behavior" towards Ms. Donald. *Id.* ¶¶ 18, 105. Armed with this information, Mayor Lightfoot directed Mr. Johnson to demote Ms. Donald by "dumping" her back in the First District, away from headquarters. *Id.* ¶ 107. Instead of following that directive, however, Mr. Johnson transferred Ms. Donald to the records department on the second floor of headquarters so that he could continue to harass her by ordering her to his fifth-floor office. *Id.* ¶¶ 111-12.

**\*2** Various allegations of misconduct were brought

against Ms. Donald in connection with the investigation of the October 16, 2019 incident. *Id.* ¶ 108. Ms. Donald alleges these allegations were brought "in retaliation" for her connection to the incident "and to deflect blame from Superintendent Johnson." *Id.* ¶ 109. Mr. Johnson was eventually terminated from the Chicago Police Department. *Id.* ¶ 122.

Ms. Donald also alleges that "[a]s more details relating to the October 16, 2019 incident came to light in the media, Superintendent Johnson confessed to Plaintiff that he damaged or destroyed evidence contained in his cell phone." *Id.* ¶ 115. The SIM card in Ms. Donald's own cell phone also was "damaged or destroyed" after she left her cell phone unattended on her desk. *Id.* ¶ 117-18.

In the instant suit, Ms. Donald brings three claims against the City of Chicago: in Count I, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; in Count III, equal-protection and due-process violations under 42 U.S.C. § 1983; and in Count VII, a violation of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/2. In addition, she brings four claims against Mr. Johnson for: constitutional violations under 42 U.S.C. § 1983 (Count II); a violation of the Illinois Gender Violence Act, 740 Ill. Comp. Stat. 82/5 (Count IV); "spoliation of evidence" (Count V); and a violation of the IHRA (Count VI). Both defendants have moved to dismiss all claims against them.

II.

I turn first to the City of Chicago's motion to dismiss. The City argues initially that Ms. Donald failed to state a claim under Title VII. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on [a] reason forbidden by Title VII [such as sex]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge*, 804 F.3d 826, 833-34 (7th Cir. 2015). The City challenges only the fourth element—that there is a basis for employer liability. ECF No. 45 at 9.

In cases where the harassing employee was the plaintiff's supervisor, as both parties agree Mr. Johnson was here, ECF No. 45 at 10; ECF No. 54 at 2, whether there is a basis for employer liability depends on the consequences flowing from the harassment. If the harassment culminates in a tangible employment action, such as

CAU Removal 000486

**Donald v. City of Chicago, --- F.Supp.3d ---- (2021)**

2021 Fair Empl.Prac.Cas. (BNA) 179,712

discharge, demotion, or undesirable reassignment, the employer is strictly liable. *Vance v. Ball State Univ.*, 570 U.S. 421, 424, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). If there has been no tangible employment action, however, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424, 133 S.Ct. 2434.

Ms. Donald argues that she adequately alleged a tangible employment action sufficient to establish strict liability. Indeed, she contends that there were several tangible employment actions alleged in the complaint: (1) Ms. Donald's demotion to the records department, (2) the allegations brought against Ms. Donald in connection with the investigation into the October 16, 2019 incident, and (3) Mr. Johnson's harassing behavior itself. *See* ECF No. 54 at 3.

**\*3** That Ms. Donald was charged with misconduct in the Office of the Inspector General investigation cannot serve as a tangible employment action sufficient to establish strict liability on the part of the City. "An employer is [only] vicariously liable for tangible employment actions undertaken *by the harassing supervisor.*" *Johnson v. West*, 218 F.3d 725, 731 (7th Cir. 2000) (emphasis in original). There is no allegation in the complaint that Mr. Johnson played any role in the Office of the Inspector General's investigation or in the determination that charges would be brought against Ms. Donald.

Nor can the harassing behavior itself constitute the tangible employment action here, even if the harassment resulted in a change of the conditions of Ms. Donald's employment. *See, e.g.*, *Gawley v. Ind. Univ.*, 276 F.3d 301, 311 (7th Cir. 2001) (finding no tangible employment action where supervisor made harassing comments and touched plaintiff's breast); *Stanfield v. Dart*, No. 10 C 6569, 2012 WL 6720413, at \*7 (N.D. Ill. Dec. 27, 2012) ("[S]exual harassment, including harassment that results in sexual touching or relations, cannot alone constitute a tangible employment action."); *Macaddino v. Inland Am. Retail Mgmt., LLC*, No. 12 C 8655, 2015 WL 1281475, at \*12 (N.D. Ill. Mar. 18, 2015) (same); *but see Johnson v. Bristol-Myers Squibb Co.*, No. 10 C 1553, 2010 WL 3927651, at \*4 (N.D. Ill. Oct. 1, 2010). A contrary interpretation would create an exception that swallows the rule, because hostile-work-environment claims necessarily involve harassment.

Ms. Donald does allege, however, that Mr. Johnson transferred her from his private detail to the records department at headquarters in response to Mayor Lightfoot's directive to "dump" or demote her. ECF No. 34 ¶¶ 107, 111. The City argues that Mr. Johnson did not reassign Ms. Donald; the Mayor did. To the contrary—according to the complaint, the Mayor directed Mr. Johnson to return Ms. Donald to the First District, but he placed her in the records department instead. *Id.* The City also argues that "a reassignment which does not involve a reduction in pay or benefits and no more than a minor change in working conditions does not qualify as an adverse employment action." ECF No. 45 at 11-12 (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004)). But whether this was such an assignment is a question of fact more properly reserved for the summary-judgment phase. *See Griffin v. Chi. Housing Authority*, No. 14 C 2481, 2014 WL 6657799, at \*4 (N.D. Ill. Nov. 24, 2014) ("[T]he fact-specific determinations involved in the question of employer liability are better left for summary judgment."). Accordingly, I conclude that Ms. Donald plausibly alleged a tangible employment action, and I decline to dismiss Count I.[1]

### III.

The City of Chicago also moves to dismiss Count III, which asserts constitutional violations under 42 U.S.C. § 1983. "A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Instead, to establish a municipality's liability, a plaintiff must show "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). The City argues that Ms. Donald has not alleged facts sufficient to show municipal liability.

**\*4** Ms. Donald, however, alleged that "[t]he City of Chicago employed and conferred authority upon Superintendent Johnson to act with final policymaking authority [and] act in a supervisory capacity to CPD [Chicago Police Department] police officers," and that "Superintendent Johnson was the highest-ranking member of the CPD." ECF No. 34 ¶¶ 2, 35. "[D]efendants have

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 8/18/2022 6:14 PM  2018CH02497

CAU Removal 000487

**Donald v. City of Chicago, --- F.Supp.3d ---- (2021)**

2021 Fair Empl.Prac.Cas. (BNA) 179,712

FILED DATE: 8/18/2022 6:14 PM    2018CH02497

the burden on a motion to dismiss to establish the legal insufficiency of the complaint," and here, the City "must establish that, as a matter of 'state and local positive law,' or as a matter of " 'custom or usage' having the force of law,' [the defendant] was [not] a final policymaker." *Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir. 1990) (internal quotations omitted). "[T]he [City of Chicago] ha[s] not even discussed state or local law, let alone carried that burden." *Harris v. Town of Cicero*, 12 C 601, 2012 WL 4434720, at *3 (N.D. Ill. Sept. 24, 2012). Accordingly, the motion to dismiss Count III must fail.[2]

IV.

The final claim Ms. Donald brings against the City of Chicago arises under the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/2. The City argues that Ms. Donald's claim must be dismissed because she failed to exhaust her administrative remedies under the IHRA. Generally, before initiating suit, plaintiffs must file a charge of discrimination with the Illinois Department of Human Rights ("IDHR" or "Department"). "[A] complainant may [then] file a civil suit after (1) she receives a final report from the IDHR, or (2) the IDHR fails to issue a report within a year after the charge is filed." *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020) (citing 775 Ill. Comp. Stat. 5/7A-102(D), (G)).

Ms. Donald filed a charge with the EEOC on February 19, 2020. ECF No. 34 ¶ 28; ECF No. 45-7 at 4.[3] The charge was cross-filed with the IDHR, effective on the same date. *Id.*; 775 ILCS 5/7A-102(A-1)(1) ("If a charge is filed with the [EEOC] ... the charge shall be deemed filed with the Department on the date filed with the EEOC."). In the case of such a cross-filing, the IHRA provides that "the Department shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102(A-1)(1). After the EEOC notifies the IDHR that the charge has been filed, the IDHR is required to notify the parties that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv). Once it has received the EEOC determination, the IDHR will either adopt the EEOC determination or initiate its own investigation. 775 ILCS 5/7A-102(A-1).

Here, Ms. Donald did not forward the EEOC's determination to the IDHR within 30 days after she received it. The EEOC issued its notice of right to sue on July 20, 2020. ECF No. 34 ¶ 29; ECF No. 34-1 at 2. The IDHR did not confirm receipt of the EEOC's determination until nearly three months later, in October. ECF No. 34-2; ECF No. 45-7 at 9. At that time, the IDHR interpreted its receipt of the EEOC determination and underlying charge as a request by Ms. Donald "to have the discrimination charge [she] previously filed with the [EEOC] investigated by the [IDHR]," ECF No. 45-7 at 9, and issued a notice of right to opt out, *id.* at 17.

**\*5** Under the IHRA, "[a]t any time within 60 days after the receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in [an] appropriate court of competent jurisdiction." 775 Ill. Comp. Stat. 5/7A-102(C-1). Within ten days after receipt of any request to opt out, the Director must notify the parties that the IDHR is closing the charge and "the complainant has 90 days after receipt of the Director's notice to commence an action." *Id.* That is precisely what happened here. Ms. Donald submitted an opt-out request on October 21, 2020, and the IDHR enter a notice of opt out and right to commence an action on October 30, 2020. ECF No. 34-2 at 3.

The City contends that Ms. Donald's failure to forward the EEOC determination to the IDHR within the 30-day period dooms her claim. I agree. The IHRA provides that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 Ill. Comp. Stat. 5/7A-102(A-1)(1)(iv). Compliance with such a statutory time limit " 'is a condition precedent to the right to seek a remedy' before an administrative body, and ... a prerequisite to the acquisition of subject matter jurisdiction." *Bumphus v. Ill. Human Rights Comm'n*, 2021 IL App (5th) 200037-U, ¶ 17, 2021 WL 754596. Accordingly, where plaintiffs have failed to comply with the 30-day notice requirement, courts have dismissed IHRA claims for lack of exhaustion of administrative remedies. *See Jafri v. Signal Funding LLC*, No. 19 C 645, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019); *Prusaczyk v. Hamilton Cty. Coal, LLC*, No. 3:20-CV-73-NJR, 2020 WL 5981377, at *3 (S.D. Ill. Oct. 8, 2020); *Ball v. Roeslein & Assocs., Inc.*, No. 20-CV-00045-NJR, 2020 WL 4673136, at *7 (S.D. Ill. Aug. 12, 2020).

Ms. Donald argues that she exhausted her administrative remedies by opting out of the IDHR's investigation under 775 Ill. Comp. Stat. 5/7A-102(C-1) and receiving a notice of right to sue. In support, she cites *Laurie v. BeDell*, in

CAU Removal 000488

FILED DATE: 8/16/2022 6:14 PM   2018CH02497

which the Southern District of Illinois held that even though the plaintiff "sent her EEOC right-to-sue letter to the IDHR 21 days late," the fact that the plaintiff had received a notice of dismissal authorizing her to commence an action within 90 days was sufficient for purposes of administrative exhaustion. No. 16-759-DRH-RJD, 2017 WL 1076940, at *4 (S.D. Ill. Mar. 22, 2017). But I am not persuaded by the court's reasoning in *Laurie*. "[A]n administrative agency ... can only act 'pursuant to the authority conferred on it by statute.' " *Bumphus*, 2021 IL App (5th) 200037-U, ¶ 17 (citing *Pickering v. Ill. Human Rights Comm'n*, 146 Ill.App.3d 340, 99 Ill.Dec. 885, 496 N.E.2d 746, 754 (1986)). Because the 30-day "statutory time limit is a condition precedent to ... the acquisition of subject matter jurisdiction ..., the Department lacked jurisdiction to review the charge" when it received it in October. *See id.* ¶¶ 17-18. Accordingly, the notice of right to sue issued by the IDHR was without legal effect. Count VII is dismissed without prejudice.[4] *See Gill v. CEC Emp. Grp., LLC*, No. 19 CV 8099, 2020 WL 5909068, at *3 (N.D. Ill. Oct. 6, 2020) (dismissal without prejudice is proper when based on failure to exhaust of administrative remedies under IHRA even if claim is no longer timely).

### V.

**\*6** One final matter requires my attention with respect to the City of Chicago's motion to dismiss. Ms. Donald seeks punitive damages against the City of Chicago in her prayer for relief. However, punitive damages are not available under Title VII or 42 U.S.C. § 1983 against a municipality or government. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Passananti v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012) ("[U]nder Title VII, .. [a government, government agency or political subdivision] cannot be held liable for punitive violations."). Accordingly, the prayer for punitive damages against the City is stricken.

### VI.

I turn next to Mr. Johnson's motion to dismiss.[5] Mr. Johnson argues first that dismissal of Count II, which asserts constitutional violations under 42 U.S.C. § 1983, is appropriate because Ms. Donald has a remedy under Title VII. To the contrary, however, the Seventh Circuit has clarified that "the Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII." *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985).[6] Mr. Johnson also argues that Ms. Donald has failed to state an adverse employment action, but for the reasons noted above in the discussion of the City's motion to dismiss, I disagree. Accordingly, I decline to dismiss Count II.

### VII.

Count IV asserts a claim against Mr. Johnson under the Illinois Gender Violence Act ("IGVA"), 740 Ill. Comp. Stat. 82/5. Mr. Johnson argues that the IGVA claim should be dismissed because it is preempted by the IHRA. But courts that have considered the issue have disagreed. *See Hespe v. City of Chicago*, 307 F. Supp. 3d 874, 888-89 (N.D. Ill. 2018) (allowing IGVA claim to continue despite argument it was preempted by IHRA); *Vince v. Ill. Cent. Sch. Bus, LLC*, No. 09 C 5360, 2011 WL 578832, at *17 (N.D. Ill. Feb. 9, 2011) (same). It does not matter that there may be factual overlap between the claims; "the issue is whether plaintiff can state a claim without reference to the Illinois Human Rights Act." *Hespe*, 307 F. Supp. 3d at 888-89. Count IV may proceed.

### VIII.

**\*7** Mr. Johnson next argues that Count V should be dismissed because no cause of action for "spoliation of evidence" exists under Illinois law. That is true enough, but it is not grounds for dismissal. "The issue is merely terminological .... Illinois courts have treated negligent spoliation claims as a particular species of ordinary negligence claims." *Mobile Mark v. Pakosz*, No. 11 C 2983, 2011 WL 3898032, at *5 (N.D. Ill. Sept. 6, 2011) (declining to dismiss "spoliation" claim).

To prevail on her negligent spoliation claim, Ms. Donald will eventually need to show "duty (in this case to protect documents), a breach of that duty, causation, and damages." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 510 (7th Cir. 2007). Mr. Johnson maintains that Ms. Donald did not allege damages. But to the contrary,

CAU Removal 000489

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

Ms. Donald alleged that she has been "severely injured because if Superintendent Johnson had not destroyed his own cell phone, [she] would have been able to introduce additional evidence of her sexual discrimination and harassment case against Defendants." ECF No. 34 ¶ 171. This allegation is sufficient. *See Stoner v. Wal-Mart Stores, Inc.*, No. 06-4053, 2008 WL 3876077, at *3 (C.D. Ill. Aug. 18, 2008) (declining to dismiss spoliation claim and explaining that "the injury that must be proven is that 'defendant's loss or destruction of the evidence caused the plaintiff to be unable to prove an otherwise valid, underlying cause of action' " (citing *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 272 (1995)).). I decline to dismiss Count V.[7]

IX.

Finally, Mr. Johnson moves to dismiss Count VI, which asserts an IHRA claim. Mr. Johnson argues first that the IHRA does not provide for liability against individuals. But in the particular context of sexual harassment, the IHRA prohibits "any employer, *employee, agent of any employer*, employment agency or labor organization" from engaging in sexually harassing behavior. 775 Ill. Comp. Stat. 5/2-102(D). Accordingly, "an individual may be held liable for sexual harassment under the IHRA." *Stokes v. John Deere Seeding Grp.*, No. 4:12-cv-04054-SLD-JEH, 2014 WL 4901765, at *13 n.6 (C.D. Ill. Sept. 29, 2014); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017).

Mr. Johnson also argues that Ms. Donald never named Mr. Johnson in her charge filed with the IDHR, and so has not exhausted her administrative remedies. But to the contrary, Mr. Johnson was repeatedly named and his behavior described at length in the charge cross-filed with the EEOC and IDHR. *See* ECF No. 45-7 at 4-7. However, for the same reasons discussed in connection with the City of Chicago's motion to dismiss Claim VII, Ms. Donald failed to exhaust her administrative remedies because she failed to forward the EEOC's determination to the IDHR within the 30-day time limit. *See* 775 ILCS 5/7A-102(A-1)(1)(iv). Accordingly, Claim VI is dismissed without prejudice. *See Gill*, 2020 WL 5909068, at *3.

X.

**\*8** For the foregoing reasons, the motions to dismiss [45, 47] are granted in part and denied in part. Claims I-V may proceed, but Claims VI and VII are dismissed without prejudice. The prayer for punitive damages against the City of Chicago is stricken.

**All Citations**

--- F.Supp.3d ----, 2021 WL 1946335, 2021 Fair Empl.Prac.Cas. (BNA) 179,712

### Footnotes

1   Because Ms. Donald alleged a tangible employment action sufficient to trigger strict liability, I need not consider the City's argument that the complaint demonstrated the existence of an affirmative defense.

2   Ms. Donald has sufficiently alleged that Mr. Johnson was a final policymaker. Accordingly, I do not consider the City's arguments regarding the sufficiency of Ms. Donald's allegations that there was a widespread practice of sexual harassment within the Chicago Police Department.

3   "[T]he court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR." *McGee v. United Parcel Serv., Inc.*, No. 01 C 9099, 2002 WL 449061, at *2 (N.D. Ill. Mar. 22, 2002).

4   Ms. Donald also argues that she was excused from sending the EEOC's determination because the IDHR did not give her notice of the 30-day deadline as required under 775 Ill. Comp. Stat. 5/7A-102(A-1)(1). But that is belied by the administrative record. *See* ECF No. 59-1. Moreover, even if Ms. Donald did not receive the IDHR's letter, she had statutory notice of the 30-day deadline. *See Turner v. Human Rights Comm'n*, 2020 IL App (1st) 182586-U, ¶ 27, 2020 WL 5181640, *appeal denied*, 444 Ill.Dec. 187, 163 N.E.3d 750 (Ill. 2021).

CAU Removal 000490

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

5    Ms. Donald argues that Mr. Johnson cannot move to dismiss Counts II, IV, and V, which were included in the initial complaint, because Mr. Johnson answered that complaint rather than filing a motion to dismiss. But "[w]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints[,] controls the case from that point forward[,] [and] wipes away prior pleadings." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014). That Mr. Johnson answered the prior complaint is inapposite. *See Saleh v. Pfister*, No. 18-cv-1812, 2020 WL 2197838, at *1 n.2 (N.D. Ill. May 6, 2020).

6    *Williams v. Penn. Human Relations Comm'n*, 870 F.3d 294 (3d Cir. 2017), cited by Mr. Johnson, is not to the contrary. That case held that § 1983, which does not provide substantive rights but merely provides a vehicle "for vindicating federal rights elsewhere conferred," cannot be used to assert an underlying Title VII violation. *Id.* at 297, 299. But that is not what Ms. Donald does here. Her § 1983 claim is based on underlying *constitutional* violations, *see* ECF No. 34 ¶ 149; her Title VII claim is asserted separately. As the *Williams* court itself noted, "the comprehensive scheme provided in Title VII does not preempt section 1983 [and] discrimination claims may be brought under either statute, or both." 870 F.3d at 300 n.34.

7    Mr. Johnson also argues in his reply that Ms. Donald failed to allege that Mr. Johnson had a duty to preserve the evidence. But "[a]rguments made for the first time in a reply brief are waived." *Cuff v. Trans States Holdings, Inc.*, No. 10 C 1349, 2010 WL 2698299, at *4 (N.D. Ill. July 8, 2010).

---

**End of Document**                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000491

Jafri v. Signal Funding LLC, Slip Copy (2019)

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

2019 WL 4824883
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.

Farva JAFRI, Plaintiff,
v.
SIGNAL FUNDING LLC; 777 Partners LLC; Signal
Financial Holdings LLC; and Joshua Craig
Wander, Defendants.

No. 19 C 645
|
Signed 10/01/2019

**Attorneys and Law Firms**

Justin E. Burtnett, Eugene Bilmes, Hecht Schondorf LLC,
Northbrook, IL, for Plaintiff.

Scott P. Clair, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Honorable Thomas M. Durkin, United States District
Judge

**\*1** Farva Jafri alleges that her former employer
discriminated against her and sexually harassed her in
violation of the Illinois Human Rights Act, and paid her
less than male employees in violation of the federal and
Illinois Equal Pay Acts. Defendants have moved to
dismiss for failure to state a claim pursuant to Federal
Rule of Civil Procedure 12(b)(6). R. 17. That motion is
granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the
complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843
F.3d 285, 289 (7th Cir. 2016). A complaint must provide
"a short and plain statement of the claim showing that the
pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),
sufficient to provide defendant with "fair notice" of the

claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007). This standard "demands more than
an unadorned, the-defendant-unlawfully-harmed-me
accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
While "detailed factual allegations" are not required,
"labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Twombly*, 550
U.S. at 555. The complaint must "contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.' " *Iqbal*, 556 U.S. at 678
(quoting *Twombly*, 550 U.S. at 570). " 'A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.' " *Boucher
v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th
Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying
this standard, the Court accepts all well-pleaded facts as
true and draws all reasonable inferences in favor of the
non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646
(7th Cir. 2018).

**Background**

Jafri alleges that "she was employed as Chief Operating
Officer of [defendant] Signal Funding, Chief Operating
Officer of [defendant] Signal Financial, and as an
Associate at Defendant 777 Partners." R. 1 ¶ 19. The
fourth defendant, Joshua Wander, "is a Founder and
Managing Partner of 777 Partners, the parent company of
the other named corporate defendants." *Id.* ¶ 6. Both
Signal entities operated out of an office in Highland Park,
Illinois. *Id.* ¶¶ 2-3. The 777 Partners office is in Miami,
Florida. *Id.* ¶ 4. Jafri initially worked out of the Highland
Park office. *Id.* ¶ 20.

Jafri alleges that her salary was $105,000 with a bonus of
$25,000. *Id.* ¶ 24. Signal's male CEO made $325,000 plus
$175,000 in bonus. *Id.* ¶ 25. Jafri also alleges that five of
her male subordinates received greater compensation than
she did. *Id.* ¶¶ 28-30. Based on these allegations about her
pay relative to male colleagues, Jafri brings claims for
violation of the federal and Illinois Equal Pay Acts.

In 2017, defendant Wander transferred Jafri to 777's
office in Miami, R. 1 ¶ 33, where Jafri alleges male
colleagues made a number of sexually demeaning
comments to her, *see id.* ¶¶ 46-60. Based on these
allegations of conduct in the Miami office, Jafri brings
claims for violations of the Illinois Human Rights Act.

CAU Removal 000492

FILED DATE: 8/18/2022 6:14 PM  2018CH02497

### Analysis

## I. Illinois Human Rights Act Claims

### A. Administrative Exhaustion

**\*2** Defendants argue that Jafri failed to administratively exhaust her IHRA claims, because she failed to "submit a copy of the EEOC's determination [to the Illinois Department of Human Rights ("IDHR") ] within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv); *see also* 775 ILCS 5/7A-102(A-1)(2) (providing that the IDHR will only take appropriate action on the EEOC determination if it "is timely notified of the EEOC's findings by complainant"); 775 ILCS 5/7A-102(A-1)(3) ("if the Department is timely notified of the EEOC's determination by complainant"). Defendants attach to their motion the IDHR investigation report showing that Jafri submitted the EEOC's determination to the IDHR 119 days after the EEOC issued its determination, *see* R. 17-2 at 5, more than the 30 days permitted by the statute.

Jafri argues that this document is outside the pleadings. Maybe so, although it is referenced in the IDHR's notice of dismissal, which Jafri attached to her complaint. *See Harrison v. Deere & Co.*, 533 Fed. App'x 644, 647 n.3 (7th Cir. 2013) ("we have ruled that the district court may take into consideration documents incorporated by reference to the pleadings"). But in any case, whether Jafri complied with the Illinois statute is a question easily answered. If Jafri wants to challenge the authenticity or accuracy of the investigation report document Defendants attach to their motion, the Court will grant her that opportunity. Otherwise, the Court finds that Jafri failed to administratively exhaust her IHRA claims.

Jafri also argues that even if she was late in informing the IDHR of the EEOC's determination, this failure of administrative process does not require dismissal. *See* R. 21 at 4-5 (citing *Laurie v. BeDell*, 2017 WL 1076940, at \*4 (S.D. Ill. Mar. 22, 2017); and *Goldberg v. Chi. Sch. for Piano Tech., NFP*, 2015 WL 468792, at \*4 (N.D. Ill. Feb. 3, 2015)). But the two cases she cites do not support this argument. In *Laurie*, the court mentioned in passing that the plaintiff had transmitted her EEOC charge to the IDHR late. But *Laurie* focused on the impact of the plaintiff's decision to file a federal action before receiving a right to sue letter from the IDHR. The court did not address the impact of the plaintiff's late delivery of the EEOC determination to the IDHR. Neither did *Goldberg*

address the 30-day deadline at issue here. The court in *Goldberg* held that the IDHR's determination that it lacked jurisdiction did not prevent review of that decision in federal court. There is no indication in the opinion that the timeliness of the complaint was at issue.

Lastly, Jafri argues that there is "literally" no case law supporting Defendants' interpretation of the statute. R. 21 at 3. This is likely because Title VII claims take precedence for most plaintiffs. But in any event, the statute unambiguously states that a complainant must timely submit an EEOC determination to the IDHR. This requirement in contained in the same section of the statute requiring that administrative complaints be filed with the EEOC or the IDHR within 300 days of a violation's occurrence, and that a civil action must be filed within 90 days of the administrative determination. It is uncontroversial that failure to comply with the 300-day and 90-day deadlines requires dismissal. *See Mayle v. Chi. Park Dist.*, 2019 WL 2773681, at \*5 (N.D. Ill. July 2, 2019) ("Failing to comply with the IHRA's exhaustion requirements results in dismissal of an IHRA claim." (citing *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004))). The Court sees no reason why the interim 30-day deadline for filing with the IDHR should be any different. Because Jafri failed to comply with the statute's plain terms, her IHRA claims were not properly administratively exhausted and must be dismissed.

### B. Named Parties

**\*3** Additionally, Jafri named only defendant Signal Funding LLC in her EEOC and IDHR complaints. Thus, she failed to administratively exhaust claims against the other defendants—777 Partners LLC, Signal Financial Holdings LLC, and Joshua Wander. This serves as an alternative basis for dismissal of those three defendants.

Jafri argues that "a minor error in stating the name of the employer" is not a basis for dismissal. *See Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 400 (7th Cir. 2019). But the Seventh Circuit distinguishes "minor errors" from "a failure to name a party at all." *Id.* Even then, a plaintiff can avoid dismissal by alleging that subsidiaries or parents of the respondent in the administrative complaints had notice of the claims. But Jafri does not contend that she alleged such notice and the Court sees no such allegation in her complaint.

### C. "Employee" Under the IHRA

Jafri v. Signal Funding LLC, Slip Copy (2019)

FILED DATE: 8/18/2022 6:14 PM    2018CH02497

To the extent Jafri is able to demonstrate that she exhausted her IHRA claims and she pled that all defendants received notice of her administrative claims, the Court addresses Defendants' argument that Jafri does not meet the definition of "employee" under the IHRA. Under the IHRA, an "employee" is "any individual performing services for remuneration within [Illinois] for an employer." 775 ILCS 5/2-101(A)(1)(a). Defendants argue that Jafri's harassment claims are based on alleged actions that occurred in Florida after she was relocated there by Defendants. *See* R. 17 at 9. The problem with this argument is that the IHRA does not limit its reach to conduct that occurs in Illinois. The section that defines "civil rights violations" for purposes of the statute does not include a geographic limitation. *See* 775 ILCS 5/2-102. Rather, the geographic limitation Defendants cite is within the definition of "employee." In other words, the statute reaches anyone who performs work in Illinois, for a qualifying employer, regardless of where the civil rights violation occurred.[1] Although she alleges that she "moved to Miami," *see* R. 1 ¶ 34, Jafri alleges that she "continued to serve in her roles with Signal and Signal Financial," *id.* ¶ 33, which are located in Illinois. Based on this allegation, it is plausible to infer that Jafri continued to perform some work for Defendants in Illinois even after she relocated to Miami. Assuming that allegation is true, the fact that the alleged harassment occurred outside Illinois would not be a basis to dismiss her IHRA claims.

## II. Equal Pay Act Claims

"In order to establish a prima facie case under the Equal Pay Act, a plaintiff must show: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017). Defendants argue that Jafri has insufficiently alleged the "skill, effort and responsibility levels for the various positions at Signal Funding that she claims were comparable to her position." R. 17 at 10. But Jafri specifically alleges, by name, five male subordinates who were paid more than she was. *See* R. 1 ¶¶ 28-30. It is plausible to infer that subordinates do work that requires less skill, effort, or responsibility than their supervisors. By alleging that Defendants paid her male subordinates more than her, Jafri has stated a prima facie case for violation of the Equal Pay Act.

**\*4** Additionally, Defendants argue that because Jafri did not name three of the four defendants in this case in her administrative complaint under the IHRA, she is precluded from naming them in this case as her employers for purposes of her Equal Pay Act claims. Defendants rely on the "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached the exhibit trumps the allegations." *Thompson v. Ill. Dep't of Prof. Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). But the "Equal Pay Act expressly contemplates that an employee may have multiple employers." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008). Defendants cite no authority that a prior allegation that one entity is an employer precludes a later allegation of additional employers. Absent such preclusion, Jafri's earlier administrative complaint cannot be said to "contradict" her current federal complaint.

Lastly, Defendants argue that Jafri has failed to allege "that Signal Financial or 777 Partners had any control over her pay." R. 17 at 11. "[C]ourts must look to the 'economic realities' of the employment relationship, as well as 'the degree of control the employer exercises,' to determine whether an entity may be considered an employer for the purposes of [Equal Pay Act] liability." *Tamayo*, 526 F.3d at 1088. Jafri alleges that "she was employed as Chief Operating Officer of Signal Financial, and as an Associate at Defendant 777 Partners." R. 1 ¶ 19. The allegation that she was employed by these entities is sufficient to plausibly allege that the entities had some control over her pay. This is particularly so when one individual—defendant Joshua Wander—owns all three entities and is alleged to have directed Jafri to move from Illinois to Florida in order to be able to more effectively work for all three entities. *See* R. 1 ¶¶ 6, 33. Only with discovery can it be determined which of the defendants had "control" over Jafri's compensation, and liability for an Equal Pay Act violation.

## Conclusion

Therefore, Defendants motion to dismiss [17] is granted in that Jafri's Illinois Human Rights Act claims (Counts III and IV) are dismissed without prejudice, and is denied in that Jafri's Equal Pay Act claims (Counts I and II) will proceed.

## All Citations

Slip Copy, 2019 WL 4824883

CAU Removal 000494

**Jafri v. Signal Funding LLC, Slip Copy (2019)**

## Footnotes

FILED DATE: 8/18/2022 6:18 PM   2018CH02497

[1]    The work must also be performed for an "employer" meeting the statutory definition, but Defendants do not argue they are not "employers" for purposes of the IHRA.

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000495

2021 WL 1966115
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Moriah JONES, Plaintiff,
v.
T.J. MAXX OF IL, LLC, Defendant.

Case No. 3:20-CV-5-NJR
|
Signed 05/17/2021

**Attorneys and Law Firms**

Carla D. Aikens, Carla D. Aikens, PC, Detroit, MI, for Plaintiff.

Christina Jaremus, Uma Chandrasekaran, Seyfarth Shaw LLP, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

**\*1** This matter is before the Court on the Motion for Summary Judgment filed by Defendant T.J. Maxx of IL, LLC ("T.J. Maxx") (Doc. 35). Plaintiff Moriah Jones filed a response in opposition (Doc. 39), and T.J. Maxx filed a timely reply (Doc. 41). For the reasons set forth below, the motion is granted.

## BACKGROUND

As an "off-price apparel and home fashions retailer," T.J. Maxx depends on its employees to be at their stores on-time for scheduled shifts. *See* TJX, *A Global Off-Price Retailer*, https://www.tjx.com/company/ (last visited May 16, 2021). T.J. Maxx established attendance and disciplinary policies to hold employees accountable and to encourage dependability. T.J. Maxx's disciplinary policy is progressive—meaning that the level of discipline increases if the offense is repeated (Doc. 40, p. 12).

T.J. Maxx's discipline starts with counseling and continues to several written warnings before termination (*Id.*). Disciplinary actions for violations in T.J. Maxx's attendance policy become inactive after twelve months from the date of issuance. (Doc. 40, p. 13). For tardies, T.J. Maxx employees first receive a formal counseling if they are tardy six times within a twelve-month period (Doc. 39-1, p. 12). If an employee is tardy two more times within the same twelve-month period—for a total of eight tardies— he or she receives a written warning (*Id.*). If an employee is tardy another two times—for a total of ten tardies—he or she receives a second written warning (*Id.*). If an employee is tardy another two times—for a total of twelve tardies—he or she is terminated (*Id.*). For no-call/no-shows, T.J. Maxx employees first receive a formal counseling (Doc. 39-1, p. 24). On an employee's second no-call/no-show within the same twelve-month period, an employee receives a written warning (*Id.*). On an employee's third no-call/no-show within the same twelve-month period, an employee receives a second written warning (*Id.*). After an employee's fourth no-call/no-show within the same twelve-month period, he or she is terminated (*Id.*). ***Climbing the Corporate Ladder Despite a Glass Ceiling and Attendance Issues***

Jones was allegedly blocked from moving up the corporate ladder at T.J. Maxx because of a glass ceiling[1] (Doc. 39, p. 4). Jones's tenure with T.J. Maxx began in 2011, when Shirley Dugger ("Dugger")—the manager at T.J. Maxx's Carbondale, Illinois, store—interviewed and hired Jones as a part-time merchandise associate (Doc. 40, p. 10).

After a no-call/no-show in December 2012 and being tardy in January 2013— Dugger and Tom Schultz ("Schultz"), the regional manager, promoted Jones to a part-time Customer Experience Coordinator position in February 2013 (*Id.*; Docs. 36-5, 36-6, 36-8). At Jones's first annual performance review, Jones's managers noted that she "had some tardy instances in the past but has actively worked to improve upon this area" (Doc. 39-12, p. 3).

**\*2** Jones continued to have attendance issues even after her managers pointed out her tardies in the dependability section of her first annual review. In August 2013, Jones was formally counseled for tardies (Doc. 36-8). In October 2013, she had a second no-call/no-show (*Id.*).[2] In January 2014, Jones was formally counseled again for tardies (*Id.*). At Jones's second annual performance review, Jones's managers again noted that she "has some issues with tardiness and attendance in the past year[,] but

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000496

FILED DATE: 8/18/2022 6:14 PM  2018CH02497

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

she worked to resolve these concerns and improve upon her dependability showing she is committed to her role and improving" (Doc. 39-12, p. 7).

Jones continued to have attendance issues even after her managers pointed out her tardies in the dependability section of her second annual review. In fact, in February 2016, Jones was formally counseled for being tardy seven times in the prior twelve months (Doc. 36-15). At Jones's fourth annual performance review, her managers again noted that Jones "had tardy issues and is working with management to improve, management will continue to monitor progress" (Doc. 39-12, p. 16).

Jones continued to have attendance issues even after her managers pointed out her tardies in the dependability section of her fourth annual review. For instance, in June 2016, Jones received a written warning for being tardy eight times in the prior twelve months (Doc. 36-16).

Despite her attendance issues, Dugger and Schultz promoted Jones in July 2016 (Doc. 36-13). While this promotion may have changed Jones's duties, her attendance issues continued. In early October 2016, Jones received a second written warning for being tardy ten times in the prior twelve months (Doc. 36-17).

Jones was two tardies away from termination when Dugger and Schultz promoted her to be a fulltime key carrier in late October 2016 (Doc. 36-14). As a key carrier, Jones developed managerial experience by holding the keys to open and close the store, knowing alarm codes, acting as the manager on duty when necessary, ensuring employees arrived for shifts on-time, and product movement (Doc. 40, pp. 26-27). In May 2017, at her fifth annual performance review, Jones received her highest overall annual performance rating (Doc. 39-12, p. 19). Jones's managers again highlighted the importance of dependability by noting Jones "is dependable and has had very few attendance issues" (Doc. 39-12, p. 20).

At her fifth annual performance review, Jones learned she would be attending the Coordinator Development Program ("CDP") (Doc. 39-2). The CDP is a training for coordinators to gain knowledge of T.J. Maxx's business (Doc. 39-1, p. 13, Doc. 40, p. 31). After completing the CDP, coordinators meet with their store managers to go over what they learned (Doc. 39-1, p. 13). Thereafter,[3] key carriers are promoted to assistant managers (Doc. 39-1, p. 15; Doc. 40, p. 49).

Jones completed the CDP training in August 2017 (Doc. 39-2). But she continued to have attendance issues. In

August 2017, Jones was formally counseled for being tardy on six occasions in the prior twelve months—including one tardy in July 2017 and August 2017 (Doc. 36-19). In January 2018, Jones was formally counseled again for tardies (Doc. 36-20). Then, in April 2018, Jones was formally counseled for a no call/no show (Doc. 36-21). At her sixth annual performance review, Jones's managers again noted that Jones had dependability issues and that she had been formally counseled for tardies (Doc. 39-12, p. 25).

### Jones Complains to Human Resources About Michele Bartels

**\*3** Besides Dugger, Jones also reported to Michele Bartels ("Bartels") and Logan Keene ("Keene"). Bartels was the assistant merchandise manager during Jones's tenure at T.J. Maxx (Doc. 40, p. 35; Doc. 39-1, p. 7). Keene was the operations manager from February 2017 until Jones's resignation (Doc. 40, p. 27; Doc. 39-2; p. 5).

On November 22, 2017, Jones complained to T.J. Maxx's human resources department about Bartels mistreating her (Doc. 39-8). Jones did not mention race when she made her complaint to human resources (Doc. 40, pp. 37, 50). Jones explained that after she was promoted to the key carrier position, in October 2016, Bartels started talking down to her, questioned her job performance, changed her schedule without letting her know, texted Jones while she was off work, made her work off the clock, and created a hostile work environment (Doc. 39-8, p. 2; Doc. 40, pp. 35-38). Around December 12, 2017, Dugger arranged a meeting between herself, Jones, Bartels, and Schultz (Doc. 39-13, p. 2; Doc. 40, pp. 37-38). At the meeting, Bartels denied mistreating Jones, but apologized for saying that she did not know Jones had a brother (*Id*. at pp. 38-39).[4]

After Jones complained about Bartels's mistreatment, Dugger and Bartels ignored Jones's questions and did not communicate with her (*Id*. at p. 43). Jones testified that Dugger's body language and her interactions created a hostile work environment (*Id*. at p. 44). Jones continued, explaining that after the November 2017 report to human resources, Dugger "was more nitpicking, and trying to find any little thing that [Jones] was doing wrong" (*Id*.). Jones characterized this nitpicking as "[m]icromanag[ing]" (*Id*.). At Jones's sixth performance review, Keene gave Jones her lowest score in six years (Doc. 39-12, p. 24). Jones believed she was passed over for assistant manager promotions because of her report to T.J. Maxx's human resources (Doc. 40, p. 46). Jones

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

resigned on June 24, 2018 (Doc. 36-23; Doc. 40, p. 51).

On March 12, 2019, Jones filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC) alleging T.J. Maxx discriminated against her on the basis of race and retaliated against her (Doc. 39-3). Jones received a Notice of Right to Sue from the EEOC on October 4, 2019 (*Id*. at p. 2).

On January 2, 2020, Jones timely filed this action within 90 days of receipt of the Notice of Right to Sue (*Id*.; Doc. 1). On January 25, 2021, Jones amended her complaint (Doc. 27).[5] Jones is proceeding on the following claims:

> **Count I:** Race Discrimination in violation of Title VII;
>
> **Count II:** Race Discrimination in violation of the Illinois Human Rights Act ("IHRA");
> **Count III:** Retaliation in violation of Title VII; and
> **Count IV:** Retaliation in violation of the IHRA.[6]

## DISCUSSION

### I. Amber Fowler Affidavit
**\*4** Jones relies heavily on the affidavit of Amber Fowler in response to T.J. Maxx's Motion for Summary Judgment. T.J. Maxx contests the admissibility of Fowler's affidavit by pointing out that Fowler "was not disclosed in Plaintiff's Rule 26(a)(1) Disclosures, Plaintiff's Interrogatory responses,...or Plaintiff's deposition" (Doc. 41, p. 2). T.J. Maxx also argues that Fowler's affidavit does not meet the requirements for unsworn declarations pursuant to 28 U.S.C. § 1746 (*Id*. at pp. 2-3). Ultimately, the Court agrees.

An affidavit must be "sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985). At summary judgment, "unsworn documents purporting to be affidavits may be rejected." *Id*. Fowler's affidavit does not indicate that it was sworn before a notary or an officer authorized to administer an oath. Instead, Fowler's affidavit reads, "I, Amber Fowler, being duly sworn and competent to testify on the matter state, deposes and says as follows..." (Doc. 39-11). There is no notary signature and seal. *See, e.g., Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011) (noting that "submission was not literally an 'affidavit' because he did not swear to the content in the presence of someone authorized to administer oaths").

Construing Fowler's affidavit as an unsworn declaration does not make Fowler's testimony admissible because she did not sign it under penalty of perjury. *E.E.O.C v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 639 (N.D. Ill. 1988) ("[28 U.S.C. § 1746] requires verification in *substantially* prescribed form. The crucial aspect of the form provided in the statute is that the person write his or her signature under penalty of perjury"). Notably, Jones's affidavit contains that "under penalty of perjury that the foregoing is true and correct..." (Doc. 39-9, p. 3), but Fowler's affidavit does not contain this language (Doc. 39-11).

Even if Fowler's affidavit met the requirements under 28 U.S.C. § 1746 or had been sworn, it would still not be considered because Fowler's affidavit contradicts Jones's deposition testimony. Jones cannot "thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996).

Finally, Jones cannot rely on Fowler's testimony because Jones's attorney failed to disclose Fowler as a potential witness pursuant to Federal Rule of Civil Procedure 26. Jones listed "[e]mployees (current and/or former) of TJ Maxx" in her Rule 26(a)(1) disclosures (Doc. 36-24, p. 2). While Fowler is allegedly a former employee of T.J. Maxx, this does not excuse Jones's failure to identify Fowler by name. A party is required to disclose initially "*the name* and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses...identifying the subjects of the information." FED. R. CIV. P. 26(a)(1)(A) (emphasis added).

A party may use *admissible* testimony[7] even if it failed to disclose a potential witness pursuant to Federal Rule of Civil Procedure 26—but the failure to identify or disclose must be substantially justified or harmless. FED. R. CIV. P. 37(c)(1). Jones has the burden of showing her failure to disclose or identify Fowler was either justified or harmless, but Jones has failed to provide a single reason. And even if Jones provided reasons why her failure was justified or harmless, the Court would still have to weigh the following factors:

> **\*5** (1) the prejudice or surprise to the party against whom the evidence is offered;
>
> (2) the ability of the party to cure the prejudice;

CAU Removal 000498

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

(3) the likelihood of disruption to the trial; and

(4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*David v. Caterpillar,* Inc., 324 F.3d 851, 857 (7th Cir. 2003). Here, the first three factors weigh against allowing Fowler's affidavit. Under the first factor, T.J. Maxx is prejudiced because it had no opportunity to discover Fowler's testimony or depose her before the dispositive motion deadline. To cure the prejudice, the Court would have to reopen discovery. But reopening discovery would further prejudice T.J. Maxx as it has fully briefed its summary judgment motion. Reopening discovery would certainly disrupt the trial date as the final pretrial conference is scheduled for May 26, 2021, and the presumptive jury trial month is June 2021.

The timeline of events is also concerning, because T.J. Maxx filed its motion for summary on February 8, 2021, and Jones's response was initially due on March 15, 2021. Had Jones not been granted more time to file her response, Fowler's affidavit may not even be part of the record as it was not signed until March 27, 2021. For these reasons, Fowler's affidavit must be excluded for the purposes of this summary judgment motion.[8]

## II. Motion for Summary Judgment

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely

upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* (citation omitted).

### A. *State Law Claims (Counts II & IV)*

**\*6** To start, Jones's discrimination and retaliation claims under the IHRA are barred from review because she fails to allege and provide evidence of exhausting her administrative remedies with the Illinois Human Rights Commission ("Commission") before bringing this suit. Indeed, the IHRA provides for a comprehensive procedure for redressing human rights violations, under which a complainant must exhaust his or her administrative remedies before bringing a civil suit. The procedure becomes more convoluted when a complainant files a charge with the Department and the EEOC.

In the case of dual filings, the Department "shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102. When the EEOC does not issue a determination, but issues the complainant a notice of a right to sue, "the complainant must submit a copy of the EEOC's determination within **30 days** after service of the determination by the EEOC on complainant." *Id.* (emphasis added). If the EEOC "does not issue a determination, but does issue the complainant a notice of a right to sue...*and if the Department is timely notified of the EEOC's determination by complainant*, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination." *Id.* (emphasis added).

The complainant may then commence a civil suit in two instances: (1) upon receiving a final report from the Department; or (2) if the Department fails to issue a report within 365 days. 775 ILCS 5/7A-102(D), (G)(2). If the Department fails to issue a report within 365 days, the complainant has ninety days to either proceed before the IHRC or commence a civil action. *Id.*

Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. Jones alleges that she "submitted a charge of discrimination

CAU Removal 000499

FILED DATE: 8/18/2022 6:14 PM    2018CH02497

with the Illinois Department of Human Rights and the St. Louis office of the Equal Employment Opportunity Commission ("EEOC")...[and] [t]he EEOC issued a Notice of Plaintiff's Right to Sue, dated October 4, 2019" (Doc. 27, p. 4). However, a Right to Sue letter from the EEOC is not a substitute for a final report from the Department. *See Wierciszewski v. Granite City Ill. Hosp. Co.*, 2011 WL 1615191, at *3 (S.D. Ill. Apr. 28, 2011).

Further, Jones has failed to provide facts that she submitted a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC. 775 ILCS 5/7A-102(A-1)(1)(iv); *see* 775 ILCS 5/7A-102(A-1)(2) (providing that the Department will only take substantive action on the EEOC determination if it "is timely notified of the EEOC's findings by complainant"); *see also Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019) (holding that the plaintiff failed to administratively exhaust her IHRA claims because plaintiff failed to submit a copy of the EEOC's determination to the Department within 30 days after service of the determination by the EEOC on plaintiff).

Accordingly, the Court finds that it lacks jurisdiction over Jones state law claims, and Counts II and IV must be dismissed.

**B.** *Title VII Discrimination – Failure to Promote (Count I)*
Under Title VII, a charge of racially discriminatory employment practices must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). "Failure to file a timely charge with the EEOC precludes a subsequent lawsuit under Title VII." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860 (7th Cir. 2005) (citing *Martinez v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 772 F.2d 348, 350 (7th Cir. 1985)). "For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, *failure to promote*, denial of a transfer, or refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–11 (2002)) (emphasis added). Each discrete discriminatory act "starts a new clock for filing charges alleging that act," and charges not filed within 300 days of the act in question are not actionable. *Id.* (quoting *Morgan*, 536 U.S. at 113).

*7 T.J. Maxx argues that "[Jones] cannot complain of alleged promotion decisions predating May 16, 2018—300 days before she filed the Charge" (Doc. 35, p. 18). Thus, according to T.J. Maxx, "Plaintiff cannot establish a *prima facie* case for discrimination because she has failed to identify any open ASM position between May 16, 2018 and her resignation in June 2018 for which she was rejected" (Doc. 35, p. 18).

Jones responds that her claims are not time-barred under the continuing violation doctrine (Doc. 39, p. 10). In support of this argument, Jones argues "there is no question that the promotion denial (i.e., performance evaluation score of 35 in May 2018 disqualified Ms. Jones of a promotion) occurred within the limitations period" (*Id.*). "Further, two individuals were promoted from outside the store in—in September 2017 and March of 2018—and Plaintiff was passed up for these promotions" (*Id.*). Jones notes that "[t]he critical question is whether these acts are related closely enough to constitute a continuing violation" (*Id.*).

The Court agrees with T.J. Maxx. "It is well settled [ ] that an employer's failure to promote an employee is a discrete act, and thus is not subject to the continuing violation doctrine." *Carter v. Dart*, 262 F. Supp. 3d 713, 720 (N.D. Ill. 2017) (citing *Beamon*, 411 F.3d at 860)). Accordingly, Jones's claim of discrimination based on T.J. Maxx's failure to promote must be dismissed.

Setting aside the untimeliness of Jones's failure to promote claims does not help Jones as they further fail on the merits. In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit addressed the murky jurisprudence surrounding the methods of proof in employment discrimination cases. The Court in *Ortiz* recognized, "[t]he use of disparate methods and the search for elusive mosaics has complicated and sidetracked employment-discrimination litigation for many years." *Id.* at 764. Thus, *Ortiz* instructs district courts to "stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Id.* at 765. "*Ortiz*, however, did not alter the burden-shifting framework created by *McDonnell Douglas*." *David v. Board of Trustees of Cmty. College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (internal citations, quotations, and alterations omitted).

Here, Jones argues she meets her burden under *McDonnell Douglas* (Doc. 39, p. 12). Under the burden-shifting model, Jones must first produce evidence of a *prima facie* case for failure to promote under Title VII that shows: (1) she was a member of a protected

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) T.J. Maxx promoted someone outside the protected group who was not better qualified than she, or who "had similar or lesser qualifications." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). If Jones can make the *prima facie* case, the burden shifts to T.J. Maxx to produce a legitimate, non-discriminatory reason for not selecting Jones for promotion. *Id.* at 891 Then the burden shifts back to Jones to produce evidence that T.J. Maxx's explanation was pretextual. *Id.* at 892.

### 1. *Qualified for the Position Sought*

It is undisputed that Jones, a black woman, belongs to a protected class, but to evaluate her claim, the Court must determine whether Jones was qualified for all alleged promotions. Jones argues that she was rejected for a minimum of five promotions after she received her college degree in May 2014 (Doc. 39, p. 12). Jones testified, however, that T.J. Maxx failed to promote her to assistant manager—and that she would not be qualified for the assistant manager promotion *until* she was a key carrier for a couple of months (Doc. 40, pp. 48-49). Construing the facts in a light most favorable to Jones, Jones became a key carrier in October 2016, and thus was qualified for the following promotions: (1) the Carbondale assistant manager promotion in February 2017; (2) the Cape Girardeau assistant manager promotion in September 2017; and (3) the Paducah assistant manager promotion in March 2018.[9]

### 2. *Qualifications of Those Promoted*

**\*8** Jones fails to provide sufficient evidence that T.J. Maxx promoted someone outside the protected group who was not better qualified than she for these positions. For instance, Logan Keene—the employee promoted to Carbondale assistant manager in February 2017—had attended the CDP training a year prior to Jones, and Keene's overall performance was rated "4—Exceeds Expectations" prior to his promotion in February 2017 (Doc. 39-2, p. 5). Jones also has failed to provide evidence that Keene had attendance or other dependability issues. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019) (noting that "[e]mployees must be similar 'in all material respects,' including engaging in identical or comparable misconduct, in order to reveal whether differential

treatment is occurring").

As for "Emily"—the employee hired as the Cape Girardeau assistant manager in *September 2017*—Jones uses an affidavit[10] to provide evidence that "Emily" was no better qualified than she was (Doc. 39-9). In her earlier deposition, however, Jones testified that she did not remember a name, but for the *March 2018 opening* the person promoted worked at Charlotte Russe (Doc. 40, p. 47). The Seventh Circuit "generally look[s] with disfavor on using of affidavits that contradict earlier deposition testimony" *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1001 (7th Cir. 2000). Allowing Jones to use the more favorable affidavit version of her testimony does not help her because "a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (internal citation and quotation omitted). Jones has not provided this information—or any other information—about Emily's years of managerial experience, her duties, or her position at Charlotte Russe.

Again, Jones relies on her affidavit to provide evidence that the unknown woman—hired as the Paducah assistant manager in March 2018—was no better qualified than she was (Doc. 39-9). Similar to "Emily," Jones has failed to provide evidence of this unknown woman's qualifications—besides the fact that she was an outside hire with management experience at Big Lots. There is no evidence of the unknown woman's years of managerial experience, her duties, or her position at Big Lots. Jones simply has not provided sufficient evidence that this unknown woman was not better qualified than Jones for this position.[11]

### 3. *Pretext*

Even assuming that Jones could make out a *prima facie* case of race discrimination based on T.J. Maxx's failures to promote, T.J. Maxx produces evidence of legitimate, nondiscriminatory reasons for promoting others over Jones. According to T.J. Maxx, Jones was not promoted to the assistant manager position for the Carbondale store in February 2017 because she was not qualified for promotion at that time (Doc. 35, p. 20). T.J. Maxx points to Jones needing to improve upon her dependability (*Id.*). T.J. Maxx also points out that Jones had not attended the CDP training (*Id.*). T.J. Maxx continues explaining that

CAU Removal 000501

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

Jones was not promoted to the assistant manager positions for the Cape Girardeau store in September 2017 and the Paducah store in March 2018 because "she was not the most qualified candidate given her ongoing dependability issues" (*Id.* at p. 21).

**\*9** T.J. Maxx's reason—dependability—is supported by evidence. Leading up to the February 2017 promotion, Jones was tardy in September 2016 and October 2016 (Docs. 36-17; 36-19). Leading up to the September 2017 promotion, Jones was tardy at least four times—March 2017, May 2017, July 2017, and August 2017 (Doc. 36-20). Leading up to the March 2018 promotion, Jones was tardy twice in December 2017 (*Id.*).

After producing evidence of a legitimate, nondiscriminatory reason for hiring others, the burden shifts back to Jones to produce evidence that T.J. Maxx's proffered reason was pretextual. *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020). Jones argues that T.J. Maxx's proffered explanation was pretextual because "Dugger admitted tardiness had no bearing on promotions, nor was this ever given as a reason for her not to be promoted" (Doc. 39, p. 16). But Jones is incorrect, and her counsel's characterization of Dugger's testimony is troubling. Dugger testified that tardies do not necessarily prevent an associate from receiving *wage promotions* (Doc. 39-1, p. 13). Wage promotions are not assistant manager promotions. Dugger also testified that a *no-call/no-show* does not make an associate ineligible for an assistant manager promotion if he or she was on that track (*Id.* at p. 24). This testimony is certainly not evidence that "Dugger admitted *tardiness* had no bearing on promotions" (Doc. 39, p. 16) (emphasis added). As for the assertion that T.J. Maxx never told Jones that tardiness impacted promotions, Jones has failed to provide any evidence of this assertion. Rather, the evidence provided establishes that in a majority of Jones's performance reviews, Jones's managers referred to Jones's tardies and dependability (Doc. 39-12, pp. 3, 7, 15, 16, 25).

Jones also argues that failing to promote her was discriminatory because Dugger and Schultz have a history of failing to promote African Americans and because an African American has never been a manager at the Carbondale store (Doc. 39, p. 16). "An employer's policy and practice with respect to employing members of protected classes 'can be relevant evidence of pretext or discrimination,' but that evidence 'must undercut the specific justifications given by the employer.' " *Barnes*, 946 F.3d at 390 (quoting *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 858 (7th Cir. 2019)) (finding that allegations of "an 'ongoing history of discrimination' " is

"not enough to impugn a particular employment decision"). Jones has not pursued a disparate-impact theory, which would require "isolating and identifying the specific employment[ ] practices that are allegedly responsible for any observed statistical disparities." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Nor has she shown that intentional racial discrimination was a "pattern or practice" at T.J. Maxx. *Id.*

Accordingly, Jones's race discrimination claim based on the failure to promote fails as a matter of law because Jones did not timely file her EEOC Charge related to the promotions. Setting the untimeliness aside, Jones has not presented similarly situated comparators, and she failed to provide evidence that T.J. Maxx's reasons for not promoting her were pretextual. For these reasons, T.J. Maxx is entitled to summary judgment on Jones's failure to promote claim.[12]

### C. *Title VII – Constructive Discharge*

**\*10** T.J. Maxx notes that "it is unclear whether Plaintiff is alleging constructive discharge in the Amended Complaint" (Doc. 35, p. 23). The Court agrees, but will evaluate the claim, nonetheless. The Seventh Circuit recognizes two forms of constructive discharge. In the first form, an employee resigns due to discriminatory "working conditions even more egregious than that required for a hostile work environment claim." *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019) (quoting *Wright v. Ill. Dep't of Children and Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015)). Examples of this type of constructive discharge include threats to a plaintiff's life or physical safety. *See, e.g., Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (claim for constructive discharge possible where harassment included repeated use of noose and implied threats of physical violence).

"The second occurs when an employer acts in a manner that would make clear to a reasonable employee that she will be immediately fired if she does not resign." *Fields*, 928 F.3d at 625 (citing *Wright*, 798 F.3d at 527; *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679–80 (7th Cir. 2010)). Here, a plaintiff must still show her working conditions were "so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would

CAU Removal 000502

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

have felt compelled to resign?" *Id.* at 141. "[A] working condition does not become intolerable or unbearable merely because 'a prospect of discharge lurks in the background.' " *Chapin,* 621 F.3d at 679 (quoting *Cigan v. Chippewa Falls Sch. Dist.,* 388 F.3d 331, 333 (7th Cir. 2004)).

Construing the evidence in Jones's favor, there is nothing to suggest that her working conditions had become so intolerable that a reasonable person in her position would have felt compelled to resign. The hostile work environment[13] allegedly began in October 2016, when Jones was promoted to key carrier, and ended when Jones resigned in June 2018 (Doc. 39, p. 8; Doc. 39-8, pp. 2-3; Doc. 40, pp. 38-40, 43). When Jones asked Dugger or Bartels a question, they ignored her and there was no communication (*Id.*). Jones testified that Dugger's body language and her interactions created a hostile work environment (*Id.* at p. 44). Jones continued explaining that after the November 2017 report to human resources, Dugger "was more nitpicking, and trying to find any little thing that [Jones] was doing wrong" (*Id.*). Jones characterized this nitpicking as "[m]icromanag[ing]" (*Id.*).

The Court finds that there is nothing so unbearable about these working conditions that a reasonable employee would have felt compelled to resign. The Seventh Circuit has explained that a court is not to function as a "super-personnel department intervening whenever an employee feels he is being treated unjustly." *Cardoso v. Robert Bosch Corp.,* 427 F.3d 429,435 (7th Cir. 2005). While Jones may have felt nitpicked by Dugger and Bartels, "anti-discrimination laws are not triggered by rude behavior." *Hoosier v. Greenwood Hosp. Mgmt. LLC,* 32 F. Supp. 3d 966, 978 (N.D. Ill. 2014) (citing *Ford v. Minteq Shapes & Servs.,* 587 F.3d 845, 848 (7th Cir. 2009)). Furthermore, not every perceived unfairness in the workplace can be attributed to discriminatory motivation just because the employee belongs to a protected class. *Id.* The employee must be able to sufficiently connect the discrimination to her race. *Id.* Jones has not done that here.

**\*11** Because Jones has not set forth any evidence demonstrating that she was constructively discharged from her employment with T.J. Maxx, T.J. Maxx is entitled to judgment as a matter of law.

**D. Title VII Retaliation Claim (Count III)**
In Title VII retaliation cases, a plaintiff has the burden of

producing enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the employer took a materially adverse action against her; and (3) there was a but-for causal connection between the two. *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.,* 851 F.3d 690, 695 (7th Cir. 2017) (citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2533 (2013)). Here, Jones fails to produce evidence that she engaged in a protected activity and that T.J. Maxx took a material adverse action against her.

*1. Protected Activity*
Despite Jones's counsel changing what protected activity Jones engaged in at every step of the litigation—there is no evidence that Jones engaged in a protected activity.[14] In her First Amended Complaint, Jones alleges that in 2017, a woman from human resources for T.J. Maxx came from Chicago, and Jones reported her issues with being passed over for a promotion (Doc. 27, p. 6). In her deposition, however, Jones testified that she did not complain to human resources about being passed over for a promotion (Doc. 40, pp. 49-50).

After Jones testified that the alleged protective activity never occurred, Jones's counsel changed course—asserting that the protected activity occurred on November 22, 2017, when Jones complained to human resources (Doc. 39, p. 15). But Jones did not mention race when she made her complaint to human resources (Doc. 40, p. 50). In fact, during her employment with T.J. Maxx, Jones did not talk to any coworkers about race discrimination—aside from one conversation where Keene only asked whether Jones thought that she was not promoted to assistant manager because she was black (*Id.* at pp. 41, 50). In response, Jones said she never thought about her race as the reason for not being promoted (*Id.* at p. 41). *See Miller,* 203 F.3d at 1008 (finding that "[a]n employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints"). Because there is no evidence that Jones engaged in a protected activity—her retaliation claims fail.

*2. Materially Adverse Action*
Even if Jones engaged in a protective activity, there is no evidence that T.J. Maxx took a materially adverse

CAU Removal 000503

FILED DATE: 8/18/2022 6:14 PM    2018CH02497

employment action against her after the November 2017 report.[15] Jones was not fired, discharged, denied a promotion, or reassigned to a different position with different responsibilities, nor were her compensation, benefits, or terms of employment changed. Instead, Jones alleges that after engaging in a protected activity, T.J. Maxx's agents took "several adverse employment actions against Plaintiff because of that activity...subjecting Plaintiff to retaliation for voicing her opinion regarding her lack of promotion, including but not limited to: (a) ostracizing Plaintiff; (b) refusing to promote Plaintiff; (c) criticizing Plaintiff's work performance; and (d) disciplining her"

*12 (Doc. 27, p. 8). The Court will address each in turn.

*i. Ostracizing Jones*

Retaliatory ostracism by supervisors may amount to a materially adverse action if it is sufficiently severe. *See Parkins v. Civil Constructors,* 163 F.3d 1027, 1039 (7th Cir. 1998) (acknowledging that "[p]reviously, we suggested that an adverse employment action might occur when an employer orders its employees to shun the plaintiff, provided that this activity causes material harm to the plaintiff"). "Binding case law makes clear, however, that the silent treatment and ostracism do not constitute materially adverse employment actions." *Hamilton v. RDI/Caesars Riverboat Casino LLC,* 179 F. Supp. 2d 929, 940 (S.D. Ind. 2002) (citing *Parkins,* 163 F.3d at 1039).

In *Bell v. E.P.A.,* 232 F.3d 546 (7th Cir. 2000), an employee[16] worked as an environmental engineer for the EPA and sought a promotion—along with sixteen eligible candidates. To evaluate the candidates, the EPA required submissions of a written application, a copy of the most recent annual performance review, and a qualification statement. *Id.* at 549. The employee received a perfect score from EPA's rating plan "that described the knowledge, skills, and abilities an applicant needed to have and listed five factors to be considered." *Id.* To make the final decisions for promotion, EPA section chiefs formed a panel to interview the candidates. *Id.* Unfortunately, the employee was not selected by the panel for promotion. *Id.* The employee then sent a memorandum to the panel raising questions about the selection process and complained to the EPA alleging discrimination. The employee then claimed that a supervisor failed to greet, speak, and cancelled a conference that the employee scheduled in retaliation for the employee's complaint.

On these facts, the district court granted summary

judgment in favor of the EPA. *Bell v. U.S. E.P.A.,* 1999 WL 965710, at *16 (N.D. Ill. Oct. 15, 1999), aff'd in part, rev'd in part sub nom. The court noted that the employee failed to establish a *prima facie* case of retaliation and held that the employee's retaliation claims were "isolated incidents of trivial matters, and do not constitute a material change in the terms and conditions of [her] employment." *Id.* On appeal, the Seventh Circuit affirmed summary judgment on the employee's retaliation claim. The Seventh Circuit held that "[t]hese are trivial matters that do not rise to the level of actionable retaliation." *Bell,* 232 F.3d at 555.

The Court acknowledges that unlike the ostracism in *Bell,* Jones's alleged ostracism caused her to miss out on two assistant manager positions (Doc. 40, p. 49). The problem is the assistant manager position in Cape Girardeau, Missouri, was filled in September 2017—**before** Jones made the November 2017 report to human resources (Doc. 39-9, p. 2). For the other assistant manager position in Paducah, Kentucky, it was not until *March or April 2018* that Jones's store was in the same region as the Paducah store Doc. 39-1, p. 18; Doc. 40, p. 42). This is significant because Jones asserts that "[i]n *March of 2018,* a white female was hired as a new assistant manager to be an assistant manager in the Paducah, KY store" (Doc. 39-9, p. 2) (emphasis added). But construing the facts in a light most favorable to Jones, there still is no evidence that Dugger or other managers knew about the open position in Paducah until *after* it was filled.[17] Indeed, Jones testified that Keene—the manager who told her about the Paducah position—was not able to tell her about any additional openings because he was not very familiar with that region yet (Doc. 40, p. 42). Accordingly, the alleged ostracism towards Jones does not constitute a materially adverse action in and of itself.

*ii. Refusing to Promote Jones*

*13 In her First Amended Complaint, Jones alleged that T.J. Maxx refused to promote her in retaliation for engaging in a protected activity. Jones's testimony contradicted this allegation, however, when she conceded it takes at least *a couple of months* of being a key carrier until one is qualified to be an assistant manager (Doc. 40, p. 49). Jones further admitted that "sometimes it could take up to, you know, *two years, three years* before you get promoted" (*Id.*) (emphasis added). Because Jones had been a key carrier *less than two years* when she resigned in June 2018, Jones's testimony contradicts her allegation that T.J. Maxx refused to promote her in retaliation for the November 2017 report.

CAU Removal 000504

Jones v. T.J. MAXX OF IL, LLC, Slip Copy (2021)

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

At summary judgment, Jones's counsel changed course—arguing that the negative performance review in May 2018 was in retaliation for her November 2017 report—and this performance review kept her from getting a promotion (Doc. 39, p. 9). The Seventh Circuit has recognized in *certain contexts* "a negative performance evaluation could constitute an adverse action within the meaning of the direct method of proving retaliation (as distinct from a claim of discrimination based on a prohibited classification)." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 741 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *but see Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108–09 (7th Cir. 2012) (noting that "[a]t the outset, it is not clear whether a negative performance review, standing alone, can ever constitute a materially adverse employment action in the retaliation context"). To even be considered an adverse action, the negative performance review must be tied to a tangible employment consequence. *See Gupta v. City of Chicago*, 2017 WL 2653144, at *4 (N.D. Ill. June 20, 2017) (noting that the employee's negative performance reviews in *Silverman* "were accompanied by a tangible employment consequence: her contract was not renewed at the end of the school year").

Jones's negative performance review in May 2018 does not amount to an adverse action because it is not tied to tangible consequences. Jones received a *raise* at this review (Doc. 39-12, p. 27). When asked whether this is an overall positive review, Jones replied, "[f]or the most part" (Doc. 40, p. 48). Jones also testified that in May 2018 no one had told her that they were thinking about terminating her employment, no one had threatened to fire her, and at this timeframe Jones did not believe that her managers were considering terminating her employment (*Id.*).

Jones conclusively argues that "[t]his performance review kept Ms. Jones from getting a promotion[,]" (Doc. 39, p. 9), and cites to the EEOC Charge from March 12, 2019 (Doc. 39-3). This is not evidence that the performance review kept her from a promotion. Accordingly, the alleged refusals to promote Jones do not constitute materially adverse actions.

*iii. Criticizing Work Performance*
The incidents between Jones, Dugger, and Bartels also do not amount to an adverse employment action. Jones

testified she was nitpicked by Dugger and Bartels after making the November 2017 report (Doc. 40, p. 43). According to Jones, Dugger and Bartels's nitpicking caused her to be unable to get into a routine (*Id.* at p. 44). Such petty slights are insufficient to constitute retaliation—especially if they are no more "than a mere inconvenience or an alteration of job responsibilities." *Atanus v. Perry*, 520 F.3d 662, 678 (7th Cir. 2008) (internal quotation and citations omitted).

*iv. Disciplining Jones*
At summary judgment, Jones's counsel appears to abandon the notion that T.J. Maxx disciplined Jones in retaliation. Counsel has failed to explain whether Jones's supervisors falsified disciplinary actions or whether Jones was disciplined more often after making the report. Still, the Court reviews each disciplinary action and the frequency of counseling sessions or written warnings to determine if an adverse action is present.

*14 A cursory review supports the notion that T.J. Maxx disciplined Jones more often in retaliation for the November 2017 report. For instance, T.J. Maxx disciplined Jones *three times* between June 2017 and May 2018—her sixth review period—but disciplined Jones only *two times* between June 2016 and May 2017—her fifth review period (Docs. 36-16, 36-17, 36-19, 36-20, 36-21). But a deeper review of the record between June 2017 and May 2018 shows that two of the three disciplinary actions were a result of tardiness that took place *before* the November 2017 report. The August 2017 formal counseling speaks for itself, and the January 2018 formal counseling was partially a result of four tardies that took place in March 2017, May 2017, July 2017, and August 2017 (Docs. 36-19, 36-20).

Ultimately, the only disciplinary action that arose wholly after the November 2017 report was the April 2018 formal counseling for a no call/no show (Doc. 36-21). Jones did not dispute this disciplinary action (Doc. 40, p. 41). Also, Jones testified that she did not believe that she was going to be terminated as a result of the formal counseling (*Id.*). *Compare Brooks v. City of Kankakee, Illinois*, 2019 WL 2572520, at *16 (C.D. Ill. Apr. 12, 2019) (holding that reprimand was materially adverse when the reprimand was in retaliation for plaintiff engaging in protected activities, and the reprimand concluded with "any future violation of this policy will be grounds for your discipline up to and including termination of your employment..."). Accordingly, the April 2018 disciplinary action was not "materially

CAU Removal 000505

FILED DATE: 8/18/2022 6:14 PM  2018CH02497

adverse," and Jones has not established that she was disciplined in retaliation for her November 2017 report.[18]

### 3. Causal Connection

Assuming only for the sake of argument that Jones engaged in a protected activity and the final negative performance review was a material adverse action,[19] Jones still fails to present evidence of a causal connection between the two. To establish a causal link, a plaintiff must demonstrate that the defendant "would not have taken the adverse...action but for [her] protected activity." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (citations omitted).

Jones argues that in her "next performance review, Dugger rated Ms. Jones...her lowest score in six years" (Doc. 39, p. 15). The problem is Keene was the manager who gave Jones this review—not Dugger (Doc. 39-12, p. 24).[20] Jones has not provided evidence that Keene knew about the November 2017 report (Doc. 39-8, p. 2). As such, Jones fails to present evidence of a causal connection between an alleged protected activity and an adverse action.

### 4. Similarly Situated Comparators

Analyzing whether Jones has identified any similarly situated employees does not help her. *Lewis v. Wilkie*, 909 F.3d 858, 871 (7th Cir. 2018) (finding that it was appropriate for the district court to analyze causal connection and proceed to whether the plaintiff "had identified a similarly situated employee or rebutted the [defendant's] non-discriminatory explanations as pretextual [ ] [because] [b]oth elements (similarly situated employees and pretext) are necessary for a factfinder to infer a retaliatory motive under the *McDonnell Douglas* framework").

**\*15** Jones does not introduce new similarly situated employees in her retaliation argument. Instead, Jones notes "the similarly situated white employees discussed above did not engage in protected activity" (Doc. 39, p. 15). Notably, in failure to promote claims, a plaintiff must show that the employer promoted someone outside the protected group who was not better qualified than she or who "had similar or lesser qualifications." *Riley*, 829 F.3d at 891-92. In retaliation claims, however, a plaintiff must show that he or she "was treated less favorably than similarly situated employees who did not engage in protected activity." *Wilkie*, 909 F.3d at 866. Splitting hairs is unnecessary, because under either analysis the "similarly situated white employees discussed above" did not deal with the same supervisors, were subject to the same standards, and engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018). Keene is the most similar to Jones, but the Court has already explained the reasons why the two are too dissimilar for the comparison to defeat summary judgment.

### 5. Pretext

Finally, assuming for the sake of argument that Jones had established a *prima facie* case of retaliation, T.J. Maxx provides the same reasons for its actions as it did for Jones's failure to promote claim. (Doc. 35, p. 24). Although Jones alleged actions besides the failure to promote as retaliation, she only argued pretext once (Doc. 39, p. 16). Having already found that Jones failed to provide evidence of pretext—Jones fails here as well.[21]

### CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendant T.J. Maxx (Doc. 35) is **GRANTED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 1966115

### Footnotes

CAU Removal 000506

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

1    The phrase "glass ceiling" is used to refer to the inability to advance within a company for a variety of reasons—like race or sex. According to Jones, "[o]ne knows [the glass ceiling] has been 'reached' when lesser qualified individuals keep getting promoted while they do not, and these actions in failing to promote are discriminatory" (*Id.*).

2    It appears that Jones only received a formal counseling for this second no-call/no-show. But this would have been Jones's second no-call/no-show in a period of twelve months, thus this should have been a written warning.

3    Jones testified it takes at least *a couple of months* of being a key carrier until one is qualified to be an assistant manager (Doc. 40, p. 49). Jones later admitted that "sometimes it could take up to, you know, *two years, three years* before you get promoted" (*Id.*) (emphasis added). Dugger testified that "it's generally within a year, but there also has to be a position available for that associate" (Doc. 39-1, p. 15).

4    Tragically, Jones's brother died in a car accident. Filled with grief, Jones asked for time off from T.J. Maxx (Doc. 40, p. 36). When Jones asked Bartels for time off work—Bartels said, "I didn't even know you had a brother" (*Id.*).

5    Jones's counsel did not seek leave to amend or follow Local Rule 15.1, which requires that "[p]roposed pleadings must be submitted in accordance with the CM/ECF User's Manual Section 2.10 titled 'Submitting a Proposed Document.' " SDIL-LR 15.1.

6    This Court has subject matter jurisdiction over Jones's Title VII claims pursuant to 28 U.S.C. § 1331. The remaining state law claims are before this Court by way of supplemental jurisdiction under 28 U.S.C. § 1367.

7    Again, Fowler's testimony is inadmissible as it is neither a sworn affidavit nor an unsworn declaration.

8    The Seventh Circuit has "urge[d] district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004). Even if the Court considered the statements within Fowler's affidavit, those statements would not change the result.

9    Indeed, when asked whether Jones was alleging that she should have been offered the Cape Girardeau assistant manager promotion in 2014 over Megan Adams—Jones replied—"[n]ot at that time" (Doc. 40, p. 56). When asked whether Jones was alleging that she should have been offered the assistant manager promotion over Kristie Kelly—Jones replied—"[n]ot at that time" (*Id.*). Also, Jones confirmed that she was not alleging she should have been offered the Carbondale assistant manager promotion in 2010 over Michelle Bartels (Doc. 39, p. 13).

10   This is not an affidavit. Again, an affidavit must be "sworn to before someone who is authorized to administer an oath." *Pfeil*, 757 F.2d at 859. Rather, this is an unsworn declaration because Jones writes her signature under penalty of perjury (Doc. 39-9, p. 3).

11   Jones's Response in Opposition to Defendant's Motion for Summary Judgment argues that "[t]he only 2017 CDP Participants to promote to store manager were white" (Doc. 39, p. 6). But Jones has failed to provide evidence—much less argue—that these white 2017 CDP Participants were similarly situated.

12   Even if Jones's discrimination claim under the IHRA was properly before the Court, it would fail for the same reasons set forth above because "[t]he standards for Illinois state-law discrimination claims mirror those for Title VII claims." *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 (7th Cir. 2014) (citations omitted).

13   Notably, Jones does not bring a hostile work environment claim.

CAU Removal 000507

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

14   Jones alleges that "Plaintiff engaged in protected activity when she took the following actions, *including but not limited to*, reporting her issues with being passed over for a promotion" (Doc. 27). Even though Jones never alleged in her complaint that the November 2017 report to human resources was a protected activity, for the sake of completeness, the Court will assume that the phrase "including but not limited to" somehow gives Jones the ability to change the protected activity this late in the litigation.

15   The Court cannot evaluate whether Jones was retaliated after the alleged complaint to human resources for being passed over for a promotion because Jones's testimony confirms there was no complaint to human resources for being passed over for a promotion (Doc. 40, pp. 49-50). Further, Jones testified that it was in 2015 when she had a *conversation* with human resources about her career goals (*Id*. at pp. 27-28). During this *conversation*, Jones did not complain about being passed over for a promotion, but this "was just a *casual conversation*" (*Id*. at p. 28) (emphasis added). Jones explained the person from human resources "was asking [Jones] who [she] was and [her] position and different things" (*Id*.). Jones also testified that "[she] just said that basically, you know, [she] plan[s] on moving up in the company [ ] [a]nd that's how that was brought up" (*Id*.). In fact, Jones's counsel no longer advances this as a protected activity at summary judgment.

16   There were four plaintiffs in *Bell*, but for the sake of brevity and clarity, the Court refers to only one employee, Prasinos.

17   Also, there is no evidence that T.J. Maxx had an established system for managers to know about openings in stores in other regions.

18   Another way Jones could meet the element of an adverse employment action as required for retaliation claims is to demonstrate that she was constructively discharged. As noted above, however, Jones has failed to demonstrate that she was constructively discharged.

19   In her response to T.J. Maxx's Motion for Summary Judgment, Jones only touches on the negative performance review. As such, the Court will not evaluate whether Jones provided evidence of a causal connection between any other alleged or *unalleged* adverse actions.

20   At best, Jones can combat this evidence by pointing out that Dugger testified that all the managers "give input on evaluations because we all work with all the associates" (Doc. 39-1, p. 9). But Dugger later testified that Keene was responsible for evaluating Jones (Doc. 39-1, p. 10). Jones also testified that Keene was the main appraiser (Doc. 40, p. 47).

21   Even if Jones's retaliation claim under the IHRA was properly before the Court, it would fail for the same reasons set forth above because the standards for Illinois state-law retaliation claims mirror those for Title VII claims. *Mahran v. Advoc. Health & Hosps. Corp.*, 2019 WL 952131, at *15 (N.D. Ill. Feb. 26, 2019) (citing *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (1989)).

CAU Removal 000508

2020 WL 5981377
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Douglas PRUSACZYK, Plaintiff,
v.
HAMILTON COUNTY COAL, LLC, Alliance Coal,
LLC, and Ike Woodring, Defendants.

Case No. 3:20-CV-73-NJR
|
Signed 10/08/2020

**Attorneys and Law Firms**

Brandy B. Barth, Newton Barth, L.L.P., St. Louis, MO, for Plaintiff.

Richard Garrett Griffith, Pro Hac Vice, Elizabeth Smith Muyskens, Pro Hac Vice, Stoll, Keenon et al., Lexington, KY, for Defendants Hamilton County Coal, LLC, Alliance Coal, LLC.

Shari R. Rhode, Rhode Law Firm, Carbondale, IL, for Defendant Ike Woodring.

**MEMORANDUM AND ORDER**

ROSENSTENGEL, Chief Judge:

**\*1** Plaintiff Douglas Prusaczyk filed this action for damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Illinois Human Rights Act, and Illinois state law alleging he endured sexual assault, sexual harassment, and a hostile work environment created by his supervisor, Defendant Ike Woodring, while working for Defendants Hamilton County Coal, LLC ("Hamilton Coal"), and Alliance Coal, LLC ("Alliance Coal"). Defendants now move the Court to dismiss some of those claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docs. 37, 38). For the reasons set forth below, Defendants Hamilton Coal and Alliance Coal's motion is granted, while Defendant Woodring's motion is granted in part and denied in part.

**BACKGROUND**

The following facts alleged by Prusaczyk are accepted as true for purposes of Defendants' motions to dismiss. Prusaczyk began working at Hamilton Coal and was employed by Alliance Coal in April 2017 (Doc. 35 at ¶ 1). Prusaczyk alleges that Woodring, his direct supervisor, worked in concert with other employees under Woodring's supervision and control to sexually assault and harass Prusaczyk, creating a hostile work environment (*Id.* at ¶ 15).

Prusaczyk's allegations are disturbing. Most of his claims involve Woodring and other employees placing their genitals on his shoulder, putting their genitals in his face, touching and kissing him without consent, grabbing and photographing his genitals without consent, and sending him unwelcome pornographic photos via text message (Doc. 35 at pp. 4-5). When Prusaczyk reported Woodring's conduct, the plant manager admitted he knew that Woodring "had a problem." (*Id.* at p. 5). Prusaczyk's supervisors then retaliated against him by ignoring him and making clear he would never be promoted (*Id.*). Prusaczyk later resigned (*Id.*).

On April 22, 2019, Prusaczyk filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC) alleging Hamilton Coal and Alliance Coal discriminated against him on the basis of sex, subjected him to a hostile work environment, and retaliated against him. Prusaczyk received a Notice of Right to Sue from the EEOC on October 21, 2019.

On January 17, 2020, Prusaczyk timely filed this action within 90 days of receipt of the Notice of Right to Sue (Doc. 35-1). At the time of filing his original complaint, Prusaczyk had yet to receive a Notice of Right to Sue from the IDHR. On April 7, 2020, the IDHR issued an Order of Administrative Dismissal pursuant to 775 ILL. COMP. STAT. § 5/7-109.1 (Doc. 45-1).

On May 12, 2020, Prusaczyk filed an Amended Complaint asserting five counts against Defendants. Count I is a claim against all Defendants for sexual harassment under Title VII for subjecting Prusaczyk to a hostile work environment and retaliation for reporting sexual harassment. Count II is a claim against all Defendants for gender discrimination and sexual harassment under the Illinois Human Rights Act. In Count III, Prusaczyk alleges state law assault and battery against all Defendants related to Woodring's offensive and

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

2020 WL 5981377

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

harmful physical contact. Count IV alleges negligent retention against Hamilton Coal and Alliance Coal for retaining Woodring as an employee despite their knowledge that he was unfit for his position. Finally, in Count V, Prusaczyk alleges a claim under the Gender Violence Act, 740 ILL. COMP. STAT. § 82, against Woodring.[1]

## DISCUSSION

### I. Count I – Title VII Claim Against Defendant Woodring

*2 Woodring first moves to dismiss Count I of the Amended Complaint for failure to state a claim. Woodring argues that, while Count I alleges a claim for sexual harassment against him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., only an employer can be liable for workplace sexual harassment under Title VII. Thus, Woodring is not a proper party under Count I. Prusaczyk concedes that Woodring is not a proper defendant under Count I (Doc. 45 at p. 2); thus, his claims against Woodring in Count I will be dismissed.

### II. Count II – IHRA Claim Against All Defendants

All Defendants argue that Prusaczyk's IHRA claim in Count II should be dismissed because he failed to exhaust his administrative remedies before filing suit (Docs. 37, 38). Defendants assert that the IHRA sets forth specific prerequisites to filing a civil action seeking relief under the Act, and that Prusaczyk failed to follow the required steps. Woodring additionally argues that the IHRA does not provide for personal liability of employees, so the IHRA claim against him must be dismissed.

The IHRA provides the exclusive remedy for human rights violations under the Act. Vroman v. Round Lake Area Sch.-Dist., No. 15 C 2013, 2015 WL 7273108, at *2 (N.D. Ill. Nov. 18, 2015). "Except by way of administrative review, the courts ... have no jurisdiction to grant relief for violations of the policies embodied in the Illinois Human Rights Act." Armstrong v. Freeman United Coal Min. Co., 446 N.E.2d 296, 298 (Ill. App. Ct. 1983); Flaherty v. Gas Research Inst., 31 F.3d 451, 458–59 (7th Cir. 1994) ("Indeed, the Act states that 'courts have no jurisdiction to hear independent actions

for civil rights violations.' ").

Under the IHRA, a complainant must first exhaust the IDHR's administrative procedures before he may bring suit. Baranowska v. Intertek Testing Servs. NA, Inc., No. 19 C 6844, 2020 WL 1701860, at *2 (N.D. Ill. Apr. 8, 2020). Generally, the complainant may file a civil suit after receiving a final report from the IDHR or if the IDHR fails to issue a report within one year after the charge is filed. Id. (citing 775 ILL. COMP. STAT. § 5/7A-102(D), (G)). A complainant may also "opt-out" of the IDHR's investigation by submitting a written request within 60 days of receiving notice of the right to do so. 775 ILL. COMP. STAT. § 5/7A-102(B), (C-1).

When a complainant files a charge of discrimination with both the EEOC and the IDHR, the IHRA provides a different set of procedures. Baranowska, No. 19 C 6844, 2020 WL 1701860, at *2. "If the EEOC investigates the charge first, the IDHR takes no action on the charge—and the one-year period for the IDHR to investigate is tolled—until the complainant notifies it of the EEOC's determination." Id. (citing 775 ILL COMP. STAT. § 5/7A-102(A-1)(1)). The complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant. 775 ILL. COMP. STAT. § 5/7A-102(A-1)(1)(iv). Once the complainant timely notifies the IDHR that the EEOC has issued a notice of a right to sue, the IDHR notifies the parties within 10 business days that it "will adopt the EEOC's determination" unless the complainant requests in writing within 35 days after receipt of the notice that the IDHR review the EEOC's determination. 775 ILL. COMP. STAT. § 5/7A-102(A-1)(3).

When determining whether Prusaczyk exhausted his administrative remedies under the IHRA, the Court considers the allegations in the Complaint as well as the relevant IDHR and EEOC records. Baranowska v. Intertek Testing Servs. NA, Inc., No. 19 C 6844, 2020 WL 1701860, at *2 (N.D. Ill. Apr. 8, 2020). If the documents show a failure to exhaust, then dismissal of the IHRA claims is appropriate under Rule 12(b)(6). Id.

*3 Here, Defendants argue that the IDHR provided notice to Prusaczyk of his right to opt out of the IDHR's investigation of his IHRA charge by letter dated April 18, 2019. Yet, Prusaczyk did opt out within the required time period. As a result, the IDHR proceeded with the administrative process, and Defendants were obligated to participate in that administrative process. Defendants argue Prusaczyk should not now be permitted to evade the procedural exhaustion requirements.

CAU Removal 000510

Prusaczyk v. Hamilton County Coal, LLC, Slip Copy (2020)

2020 WL 5981377

FILED DATE: 8/13/2022 6:14 PM    2018CH02497

Defendants also contend that Prusaczyk could have provided the IDHR with a copy of his EEOC Right to Sue letter within 30 days of receiving it in order to preserve his rights under the IHRA. Prusaczyk received the EEOC's Right to Sue Letter on or about October 21, 2019. Because he did not notify the IDHR of the EEOC's determination, he did not exhaust his administrative remedies as to his IHRA claim, and it must be dismissed.

In response, Prusaczyk argues that the IDHR administratively dismissed the matter and informed him of his right pursuant to Section 7-109.1 of the IHRA to "commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction." Prusaczyk states that he asked several times for the investigation to continue and agreed to mediation, but it was Defendants who cut off all communication or participation in the process. The dismissal was finally granted, Prusaczyk explains, because he chose not to agree to a continuation of the investigation process past the time limits placed upon the IDHR and instead chose to commence litigation.

True, the IHRA allows the IDHR to administratively close a pending charge "if the issues which are the basis of the charge are being litigated in a State or federal court proceeding." 775 ILL. COMP. STAT. § 5/7-109.1. The administrative closing of a charge by the SDHR, however, is not a final order, nor does it constitute an exhaustion of administrative remedies. *Falco v. Office Elecs., Inc.*, No. 97 C 4170, 1997 WL 587660, at *2 (N.D. Ill. Sept. 17, 1997). "A plaintiff cannot file suit in federal court and then, when the IDHR closes her charge precisely because she filed suit in federal court, argue that she has exhausted all administrative remedies." *Id.*

In *Ibrahim v. Holidays Inn, Inc.*, the court granted a motion to dismiss on the basis of the plaintiff's failure to exhaust administrative remedies even after the plaintiff produced a letter from the IDHR indicating that a charge had been administratively closed pursuant to § 7-109.1. *Ibrahim v. Holidays Inn, Inc.*, No. 95 C 4316, 1996 WL 199743, at *5–6 (N.D. Ill. Apr. 23, 1996). The plaintiff argued the letter showed she had exhausted her administrative remedies under the Act and was a final order from the IDHR, so she was then entitled to a trial on her IHRA claims. *Id.* at *6. The court disagreed, reasoning that the letter failed to show plaintiff exhausted her administrative remedies or that what she received was a final order. *Id.* Instead, the court found that, under the plaintiff's view, an aggrieved party could circumvent the IHRA by filing a complaint in court and then receive an administrative closure based on that case under § 5/7-109.1, undermining the Act's comprehensive scheme

and administrative remedies. *Id.*

Here, Prusaczyk filed his charge of discrimination with both the EEOC and the IDHR (Doc. 35 at ¶ 10). He did not, however, opt out of the IDHR's investigation of his IHRA charge or timely notify the IDHR of the EEOC's determination on his charge of discrimination as required by the IHRA. Moreover, the IDHR's Order of Administrative Dismissal specifically states that Prusaczyk's charge was "Administratively Dismissed" because the "[c]harging party has initiated litigation for the purpose of seeking final relief in a State or federal court ...; and [a] final decision on the merits in that litigation ... would preclude the charging party from bringing another action based on the charge."

**\*4** Because Prusaczyk did not follow the Act's procedural scheme and never received a final order from the IDHR, the Court finds that he did not exhaust his administrative remedies. Accordingly, his IHRA claim in Count II must be dismissed.

Contrary to Woodring's argument, however, the Court will not dismiss Count V. Woodring lumps Prusaczyk's claim in Count V with his claims in Count II and asserts they all fall under the IHRA. That's not correct. In Count V, Prusaczyk asserts a claim against Woodring under the Illinois Gender Violence Act, 740 ILL. COMP. STAT. § 82. The Gender Violence Act establishes legal duties separate from those created by the IHRA. *Vince v. Illinois Cent. Sch. Bus, LLC*, No. 09 C 5360, 2011 WL 578832, at *17 (N.D. Ill. Feb. 9, 2011). Thus, Woodring has presented the Court with no basis to dismiss Count V.

### III. Count III – Assault and Battery Against Defendant Woodring

Woodring finally argues that the Court should decline to exercise supplemental jurisdiction over Prusaczyk's Illinois state law assault and battery claim against him. Woodring argues that requiring him to participate in complex and expensive federal litigation on the basis of a state law tort claim would be a waste of the parties' time and the Court's judicial resources. It also would unnecessarily complicate the case and confuse a jury.

Under 28 U.S.C. § 1367(a), a federal court may exercise supplemental jurisdiction when one matter is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." The Court may decline to exercise supplemental jurisdiction under § 1367(c) if: (1) the claim raises a novel or complex

CAU Removal 000511

Prusaczyk v. Hamilton County Coal, LLC, Slip Copy (2020)

2020 WL 5981377

FILED DATE: 8/18/2022 6:44 PM    2018CH02497

issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) other compelling reasons for declining jurisdiction. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

Here, Prusaczyk's assault and battery claim against Woodring is so related to the Title VII claim that it forms part of the same case or controversy. Indeed, Woodring's alleged conduct that forms the basis for the assault and battery claim is the same conduct that Defendants allegedly ignored and retaliated against Prusaczyk for reporting, leading to the Title VII claim. Furthermore, the Court finds no reason to decline to exercise supplemental jurisdiction. The assault and battery claim does not present any novel or complex area of state law, nor does it substantially predominate over Prusaczyk's Title VII claims. And while there are no claims against Woodring over which this Court has original jurisdiction, as argued by Prusaczyk, the facts underlying the assault and battery claim in Count III lie at the heart of this controversy. To require the claims to be tried separately would make no sense logically or from the standpoint of judicial efficiency. Accordingly, the Court will exercise supplemental jurisdiction over Prusaczyk's claim in Count III for assault and battery against Woodring.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant Ike Woodring (Doc. 37) is **GRANTED in part and DENIED in part**. Counts I and II are **DISMISSED** as to Defendant Woodring.

**\*5** The Motion to Dismiss filed by Defendants Hamilton County Coal, LLC, and Alliance Coal, LLC (Doc. 38), is **GRANTED**. Count II is **DISMISSED** as to Defendants Hamilton Coal and Alliance Coal.

This case shall now proceed on Count I against Defendants Hamilton Coal and Alliance Coal, Count III against all Defendants, Count IV against Defendants Hamilton Coal and Alliance Coal, and Count V against Defendant Woodring.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 5981377

## Footnotes

1    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000512

FILED DATE: 8/13/2022 6:14 PM   2018CH02497

# EXHIBIT 5

CAU Removal 000513

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

2011 Ill. Legis. Serv. P.A. 97-596 (S.B. 1122) (WEST)

ILLINOIS 2011 LEGISLATIVE SERVICE

Ninety-Seventh General Assembly, 2011

Additions are indicated by **Text**; deletions by
~~Text~~.
Vetoes are indicated by ~~Text~~;
stricken material by ~~Text~~.

PUBLIC ACT 97−596
S.B. 1122
HUMAN RIGHTS--PREGNANCY--PROCEDURES

AN ACT concerning human rights.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

Section 5. The Illinois Human Rights Act is amended by changing Sections 2–102 and 7A–102 as follows:

<< IL ST CH 775 § 5/2–102 >>

**[S.H.A. 775 ILCS 5/2–102]** (775 ILCS 5/2–102) (from Ch. 68, par. 2–102)

§ 2–102. Civil Rights Violations--Employment. It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.

(A–5) Language. For an employer to impose a restriction that has the effect of prohibiting a language from being spoken by an employee in communications that are unrelated to the employee's duties.

For the purposes of this subdivision (A–5), "language" means a person's native tongue, such as Polish, Spanish, or Chinese. "Language" does not include such things as slang, jargon, profanity, or vulgarity.

(B) Employment Agency. For any employment agency to fail or refuse to classify properly, accept applications and register for employment referral or apprenticeship referral, refer for employment, or refer for apprenticeship on the basis of unlawful discrimination or citizenship status or to accept from any person any job order, requisition or request for referral of applicants for employment or apprenticeship which makes or has the effect of making unlawful discrimination or discrimination on the basis of citizenship status a condition of referral.

(C) Labor Organization. For any labor organization to limit, segregate or classify its membership, or to limit employment opportunities, selection and training for apprenticeship in any trade or craft, or otherwise to take, or fail to take, any action which affects adversely any person's status as an employee or as an applicant for employment or as an apprentice, or as an applicant for apprenticeships, or wages, tenure, hours of employment or apprenticeship conditions on the basis of unlawful discrimination or citizenship status.

EXHIBIT 5

CAU Removal 000514

FILED DATE: 8/18/2022 6:44 PM   2018CH02497

(D) Sexual Harassment. For any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

(E) Public Employers. For any public employer to refuse to permit a public employee under its jurisdiction who takes time off from work in order to practice his or her religious beliefs to engage in work, during hours other than such employee's regular working hours, consistent with the operational needs of the employer and in order to compensate for work time lost for such religious reasons. Any employee who elects such deferred work shall be compensated at the wage rate which he or she would have earned during the originally scheduled work period. The employer may require that an employee who plans to take time off from work in order to practice his or her religious beliefs provide the employer with a notice of his or her intention to be absent from work not exceeding 5 days prior to the date of absence.

(F) Training and Apprenticeship Programs. For any employer, employment agency or labor organization to discriminate against a person on the basis of age in the selection, referral for or conduct of apprenticeship or training programs.

(G) Immigration–Related Practices.

(1) for an employer to request for purposes of satisfying the requirements of Section 1324a(b) of Title 8 of the United States Code, as now or hereafter amended, more or different documents than are required under such Section or. to refuse to honor documents tendered that on their face reasonably appear to be genuine; or

(2) for an employer participating in the Basic Pilot Program, as authorized by 8 U.S.C. 1324a, Notes, Pilot Programs for Employment Eligibility Confirmation (enacted by PL 104–208, div. C title IV, subtitle A) to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment without following the procedures under the Basic Pilot Program.

(H) Pregnancy; peace officers and fire fighters. For a public employer to refuse to temporarily transfer a pregnant female peace officer or pregnant female fire fighter to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where that transfer can be reasonably accommodated. For the purposes of this subdivision (H), "peace officer" and "fire fighter" have the meanings ascribed to those terms in Section 3 of the Illinois Public Labor Relations Act.

It is not a civil rights violation for an employer to take any action that is required by Section 1324a of Title 8 of the United States Code, as now or hereafter amended.

**(I) Pregnancy. For an employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.**

(Source: P.A. 95–25, eff. 1–1–08; 95–137, eff. 1–1–08; 95–876, eff. 8–21–08.)

<< IL ST CH 775 § 5/7A–102 >>

**[S.H.A. 775 ILCS 5/7A–102]** (775 ILCS 5/7A–102) (from Ch. 68, par. 7A–102)

§ 7A–102. Procedures.

(A) Charge.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000515

FILED DATE: 8/18/2022 6:14 PM 2018CH02497

(1) Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director.

(2) The charge shall be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation.

**(3) Charges deemed filed with the Department pursuant to subsection (A–1) of this Section shall be deemed to be in compliance with this subsection.**

(A–1) Equal Employment Opportunity Commission Charges.

**(1) If a** A charge **is** filed with the Equal Employment Opportunity Commission **(EEOC)** within 180 days after the date of the alleged civil rights violation**, the charge** shall be deemed filed with the Department on the date filed with the **EEOC.** Equal Employment Opportunity Commission. Upon receipt of a charge filed with the Equal Employment Opportunity Commission, the Department shall notify the complainant that he or she may proceed with the Department. The complainant must notify the Department of his or her decision in writing within 35 days of receipt of the Department's notice to the complainant and the Department shall close the case if the complainant does not do so. If the complainant proceeds with the Department, **If the EEOC is the governmental agency designated to investigate the charge first,** the Department shall take no action until the **EEOC** Equal Employment Opportunity Commission makes a determination on the charge **and after the complainant notifies the Department of the EEOC's determination. In such cases, after receiving notice from the EEOC that a charge was filed, the Department shall notify the parties that (i) a charge has been received by the EEOC and has been sent to the Department for dual filing purposes; (ii) the EEOC is the governmental agency responsible for investigating the charge and that the investigation shall be conducted pursuant to the rules and procedures adopted by the EEOC; (iii) it will take no action on the charge until the EEOC issues its determination; (iv) the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant; and (v) that the time period to investigate the charge contained in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC until the EEOC issues its determination.** Upon receipt of the Equal Employment Opportunity Commission's determination, the Department shall cause the charge to be filed under oath or affirmation and to be in such detail as provided for under subparagraph (2) of paragraph (A).

**(2) If the EEOC finds reasonable cause to believe that there has been a violation of federal law and if the Department is timely notified of the EEOC's findings by complainant, the Department shall notify complainant that the Department has adopted the EEOC's determination of reasonable cause and that complainant has the right, within 90 days after receipt of the Department's notice, to either file his or her own complaint with the Illinois Human Rights Commission or commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's notice to complainant that the Department has adopted the EEOC's determination of reasonable cause shall constitute the Department's Report for purposes of subparagraph (D) of this Section.**

**(3) For those charges alleging violations within the jurisdiction of both the EEOC and the Department and for which the EEOC either (i) does not issue a determination, but does issue the complainant a notice of a right to sue, including when the right to sue is issued at the request of the complainant, or (ii) determines that it is unable to establish that illegal discrimination has occurred and issues the complainant a right to sue notice, and if the Department is timely notified of the EEOC's determination by complainant, the Department shall notify the parties that the Department will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant requests in writing within 35 days after receipt of the Department's notice that the Department review the EEOC's determination.**

**(a) If the complainant does not file a written request with the Department to review the EEOC's determination within 35 days after receipt of the Department's notice, the Department shall notify complainant that the decision of the EEOC has been adopted by the Department as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the Department's notice, to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Department's**

CAU Removal 000516

**notice to complainant that the Department has adopted the EEOC's determination shall constitute the Department's report for purposes of subparagraph (D) of this Section.**

**(b) If the complainant does file a written request with the Department to review the EEOC's determination, the Department shall review the EEOC's determination and any evidence obtained by the EEOC during its investigation. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is no need for further investigation of the charge, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A–102. If, after reviewing the EEOC's determination and any evidence obtained by the EEOC, the Department determines there is a need for further investigation of the charge, the Department may conduct any further investigation it deems necessary. After reviewing the EEOC's determination, the evidence obtained by the EEOC, and any additional investigation conducted by the Department, the Department shall issue a report and the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed pursuant to subsection (D) of Section 7A–102 of this Act.**

**(4) Pursuant to this Section, if the EEOC dismisses the charge or a portion of the charge of discrimination because, under federal law, the EEOC lacks jurisdiction over the charge, and if, under this Act, the Department has jurisdiction over the charge of discrimination, the Department shall investigate the charge or portion of the charge dismissed by the EEOC for lack of jurisdiction pursuant to subsections (A), (A–1), (B), (B–1), (C), (D), (E), (F), (G), (H), (I), (J), and (K) of Section 7A–102 of this Act.**

**(5) The time limit set out in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC to the date on which the EEOC issues its determination.** ~~At the Department's discretion, the Department shall either adopt the Equal Employment Opportunity Commission's determination or process the charge pursuant to this Act. Adoption of the Equal Employment Opportunity Commission's determination shall be deemed a determination by the Department for all purposes under this Act.~~

(B) Notice and Response to Charge. The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent. This period shall not be construed to be jurisdictional. The charging party and the respondent may each file a position statement and other materials with the Department regarding the charge of alleged discrimination within 60 days of receipt of the notice of the charge. The position statements and other materials filed shall remain confidential unless otherwise agreed to by the party providing the information and shall not be served on or made available to the other party during pendency of a charge with the Department. The Department shall require the respondent to file a verified response to the allegations contained in the charge within 60 days of receipt of the notice of the charge. The respondent shall serve a copy of its response on the complainant or his representative. All allegations contained in the charge not timely denied by the respondent shall be deemed admitted, unless the respondent states that it is without sufficient information to form a belief with respect to such allegation. The Department may issue a notice of default directed to any respondent who fails to file a verified response to a charge within 60 days of receipt of the notice of the charge, unless the respondent can demonstrate good cause as to why such notice should not issue. The term "good cause" shall be defined by rule promulgated by the Department. Within 30 days of receipt of the respondent's response, the complainant may file a reply to said response and shall serve a copy of said reply on the respondent or his representative. A party shall have the right to supplement his response or reply at any time that the investigation of the charge is pending. The Department shall, within 10 days of the date on which the charge was filed, and again no later than 335 days thereafter, send by certified or registered mail written notice to the complainant and to the respondent informing the complainant of the complainant's right to either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court under subparagraph (2) of paragraph (G), including in such notice the dates within which the complainant may exercise this right. In the notice the Department shall notify the complainant that the charge of civil rights violation will be dismissed with prejudice and with no right to further proceed if a written complaint is not timely filed with the Commission or with the appropriate circuit court by the complainant pursuant to subparagraph (2) of paragraph (G) or by the Department pursuant to subparagraph (1) of paragraph (G).

(B–1) Mediation. The complainant and respondent may agree to voluntarily submit the charge to mediation without waiving any rights that are otherwise available to either party pursuant to this Act and without incurring any obligation to accept the result of the mediation process. Nothing occurring in mediation shall be disclosed by the Department or admissible in

FILED DATE: 8/18/2022 6:14 PM 2018CH02497

CAU Removal 000517

evidence in any subsequent proceeding unless the complainant and the respondent agree in writing that such disclosure be made.

(C) Investigation.

(1) After the respondent has been notified, the Department shall conduct a full investigation of the allegations set forth in the charge.

(2) The Director or his or her designated representatives shall have authority to request any member of the Commission to issue subpoenas to compel the attendance of a witness or the production for examination of any books, records or documents whatsoever.

(3) If any witness whose testimony is required for any investigation resides outside the State, or through illness or any other good cause as determined by the Director is unable to be interviewed by the investigator or appear at a fact finding conference, his or her testimony or deposition may be taken, within or without the State, in the same manner as is provided for in the taking of depositions in civil cases in circuit courts.

(4) Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference prior to 365 days after the date on which the charge was filed, unless the Director has determined whether there is substantial evidence that the alleged civil rights violation has been committed or the charge has been dismissed for lack of jurisdiction. If the parties agree in writing, the fact finding conference may be held at a time after the 365 day limit. Any party's failure to attend the conference without good cause shall result in dismissal or default. The term "good cause" shall be defined by rule promulgated by the Department. A notice of dismissal or default shall be issued by the Director. The notice of default issued by the Director shall notify the respondent that a request for review may be filed in writing with the Commission within 30 days of receipt of notice of default. The notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(D) Report.

(1) Each charge shall be the subject of a report to the Director. The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, and, where indicated by this Act, members of the Commission or their designated hearing officers.

(2) Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance.

(3) If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(4) If the Director determines that there is substantial evidence, he or she shall notify the complainant and respondent of that determination. The Director shall also notify the parties that the complainant has the right to either commence a civil action in the appropriate circuit court or request that the Department of Human Rights file a complaint with the Human

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 5

FILED DATE: 8/18/2022 6:14 PM   2018CH02497

Rights Commission on his or her behalf. Any such complaint shall be filed within 90 days after receipt of the Director's notice. If the complainant chooses to have the Department file a complaint with the Human Rights Commission on his or her behalf, the complainant must, within 30 days after receipt of the Director's notice, request in writing that the Department file the complaint. If the complainant timely requests that the Department file the complaint, the Department shall file the complaint on his or her behalf. If the complainant fails to timely request that the Department file the complaint, the complainant may file his or her complaint with the Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Human Rights Commission, the complainant shall give notice to the Department of the filing of the complaint with the Human Rights Commission.

(E) Conciliation.

(1) When there is a finding of substantial evidence, the Department may designate a Department employee who is an attorney licensed to practice in Illinois to endeavor to eliminate the effect of the alleged civil rights violation and to prevent its repetition by means of conference and conciliation.

(2) When the Department determines that a formal conciliation conference is necessary, the complainant and respondent shall be notified of the time and place of the conference by registered or certified mail at least 10 days prior thereto and either or both parties shall appear at the conference in person or by attorney.

(3) The place fixed for the conference shall be within 35 miles of the place where the civil rights violation is alleged to have been committed.

(4) Nothing occurring at the conference shall be disclosed by the Department unless the complainant and respondent agree in writing that such disclosure be made.

(5) The Department's efforts to conciliate the matter shall not stay or extend the time for filing the complaint with the Commission or the circuit court.

(F) Complaint.

(1) When the complainant requests that the Department file a complaint with the Commission on his or her behalf, the Department shall prepare a written complaint, under oath or affirmation, stating the nature of the civil rights violation substantially as alleged in the charge previously filed and the relief sought on behalf of the aggrieved party. The Department shall file the complaint with the Commission.

(2) If the complainant chooses to commence a civil action in a circuit court, he or she must do so in the circuit court in the county wherein the civil rights violation was allegedly committed. The form of the complaint in any such civil action shall be in accordance with the Illinois Code of Civil Procedure.

(G) Time Limit.

(1) When a charge of a civil rights violation has been properly filed, the Department, within 365 days thereof or within any extension of that period agreed to in writing by all parties, shall issue its report as required by subparagraph (D). Any such report shall be duly served upon both the complainant and the respondent.

(2) If the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Commission, the form of the complaint shall be in accordance with the provisions of paragraph (F)(1). If the complainant commences a civil action in a circuit court, the form of the complaint shall be in accordance with the Illinois Code of Civil Procedure. The aggrieved party shall notify the Department that a complaint has been filed and shall serve a copy of the complaint on the Department on the same date that the complaint is filed with the Commission or in circuit court. If the complainant files a complaint with the Commission, he or she may not later commence a civil action in circuit court.

(3) If an aggrieved party files a complaint with the Human Rights Commission or commences a civil action in circuit court

CAU Removal 000519

FILED DATE: 8/18/2022 6:48 PM  2018CH02497

pursuant to paragraph (2) of this subsection, or if the time period for filing a complaint has expired, the Department shall immediately cease its investigation and dismiss the charge of civil rights violation. Any final order entered by the Commission under this Section is appealable in accordance with paragraph (B)(1) of Section 8–111. Failure to immediately cease an investigation and dismiss the charge of civil rights violation as provided in this paragraph (3) constitutes grounds for entry of an order by the circuit court permanently enjoining the investigation. The Department may also be liable for any costs and other damages incurred by the respondent as a result of the action of the Department.

(4) The Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.

(H) This amendatory Act of 1995 applies to causes of action filed on or after January 1, 1996.

(I) This amendatory Act of 1996 applies to causes of action filed on or after January 1, 1996.

(J) The changes made to this Section by Public Act 95–243 apply to charges filed on or after the effective date of those changes.

(K) The changes made to this Section by this amendatory Act of the 96th General Assembly apply to charges filed on or after the effective date of those changes.

(Source: P.A. 95–243, eff. 1–1–08; 96–876, eff. 2–2–10.)

Section 99. Effective date. This Act takes effect upon becoming law.

Approved: August 26, 2011
Effective: August 26, 2011

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000520

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 4

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 2018 CH 02497** |
| | : | |
| **COMMUNITY ALTERNATIVES** | : | **Judge Anne Loftus** |
| **UNLIMITED,** | : | **Calendar: 15** |
| | : | |
| **Defendant.** | : | |

## ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER

This matter, having come to be heard on Defendant's Motion to Reconsider the Court's August 18, 2021 Order on Defendant's Section 2-619 Motion to Dismiss, and the Court being fully advised following the Parties' briefing and oral argument on February 8, 2022,

**IT IS HEREBY ORDERED**:

(1) The Court's prior ruling on Defendant's Section 2-619 Motion to Dismiss incorrectly relied on 775 ILCS 5/7A-102(A)(3), which does not apply to the facts of this case.

(2) Compliance with 775 ILCS 5/7A-102(A-1)(1)(iv) is a condition precedent for the Illinois Department of Human Rights ("IDHR") to have jurisdiction over Plaintiff's claims.

(3) Because Plaintiff failed to comply with 775 ILCS 5/7A-102(A-1)(1)(iv), the IDHR lacked jurisdiction to review Plaintiff's charge and the IDHR had no authority to issue a right to sue notice. Plaintiff therefore failed to exhaust her administrative remedies under the Illinois Human Rights Act and this Court lacks jurisdiction over this matter.

(4) Plaintiff indicated an intent to request leave to file an amended complaint under 29 U.S.C. § 1981.

(5) For these reasons, the Court reconsiders its August 18, 2021 Order and dismisses Plaintiff's Complaint with prejudice.

ENTERED:

_Anna M. Loftus_
Judge Anna M. Loftus, No. 2102

Page 1 of 2

CAU Removal 000522

Order prepared by:

Brenna R. McLean (Counsel for Defendant)
Epstein Becker & Green, P.C.
227 W. Monroe, Ste. 3250
(312) 499-1400
(brmclean@ebglaw.com)
Firm No. 18494

2

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000523

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 5

FILED
2/9/2022 11:55 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
16638007

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **MICHELLE ABRAHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2018 CH 02497** |
| ) | |
| **COMMUNITY ALTERNATIVES** ) | **Honorable Judge Anna M. Loftus** |
| **UNLIMITED,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**PLAINTIFF'S MOTION FOR LEAVE**
**TO FILE AMENDED COMPLAINT**

Plaintiff, Michelle Abraham, by her attorneys, and for her Motion for Leave to File

Amended Complaint pursuant to 735 ILCS 5/2-616(b) states as follows:

**I.      PROCEDURAL HISTORY**

1.      Plaintiff filed her complaint on February 23, 2018, pursuant to the Illinois Human

Rights Act, 775 ILCS § 5/1-101 *et seq.* (IHRA).

2.      The nature of the complaint is retaliation based on her reporting, among other

things, the discriminatory treatment of Black co-workers.

3.      Defendant filed Defendant's Motion to Dismiss the Complaint Pursuant to Section

2-619 of the Code of Civil Procedure on May 10, 2018.

4.      The motion was pending before the Court until the Court denied Defendant's

Motion to Dismiss on August 18, 2021.

5.      Defendant then filed a Motion to Reconsider the Memorandum Opinion and Order

Dated August 18, 2021 that Denied Defendant's Section 2-619 Motion to Dismiss or,

CAU Removal 000525

Alternatively, For Certification of a Dispositive Question of Law for an Interlocutory Appeal on September 17, 2021, which was fully briefed and scheduled for oral argument on February 8, 2022.

6.  During oral argument, the Court granted Defendant's Motion for Reconsideration, which was the first dismissal of the complaint in this case.

7.  Plaintiff indicated that she would be filing a Motion for Leave to Amend during the oral argument on February 8, 2022.

## II.  LEGAL STANDARD

8.  The Supreme Court has been clear that leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

9.  "At any time before final judgment amendments may be allowed on just and reasonable terms." 735 ILCS 5/2-616(a).

10.  Even when a party's complaint falls outside the statute of limitations, a party may still amend if the new legal theory relates back to a set of previously alleged facts and as to the new claim "the time prescribed or limited had not expired when the original pleading was filed". *Porter v. Decatur Memorial Hosp.,* 227 Ill. 2d 343, 358, 317 Ill. Dec. 703, 882 N.E.2d 583 (2008); 735 ILCS 5/2-616(b).

## III.  ARGUMENT

11.  Illinois courts apply the same elements for retaliation used in federal cases under Title VII to state claims, and courts apply the same elements of retaliation under Title VII to Section 1981. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007); *Watson v. Ill. Human Rights Commission,* 2021 Il. App. (5th) 190433-U, 2021 WL 4894518 * 14 (2021).

12.  Ms. Abraham initially alleged her claim under the IHRA, but the allegations set forth in her complaint and the nature of the claim also support a claim under section 1981.

FILED DATE: 2/9/2022 1:58 PM   2018CH02497

2

FILED DATE: 8/9/2021 1:58 PM   2018CH02497

13.     Because Ms. Abraham's previous claim and facts alleged support her section 1981 claim, as the allegations made in the complaint remain the same and only the name of the legal theory is being amended, 735 ILCS 5/2-616(b) allows her to relate her amended complaint back to her original complaint.

14.     The Circuit Court of Cook County has jurisdiction over section 1981 claims. *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641 (7th Cir. 2011) ("Illinois circuit courts have concurrent jurisdiction over claims arising under Title VII & § 1981.").

15.     The statute of limitations for a section 1981 claim is 4 years. *See generally Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).

16.      Pursuant to 735 ILCS 5/2-616(b), so long as the allegations are based on the "same transaction or occurrence set up in the original pleading", a complaint may be amended to and deemed timely filed if the initial claim was filed within the new claim's limitation period.

17.     The Illinois Supreme Court has held that "relation back is not prohibited merely based on the fact that the name of the cause of action or the legal theory used to support the claim for damages is changed in the amended pleading." *Porter*, 227 Ill. 2d at 358 In other words, the determination of allowing a party to amend is not premised on the name of the legal theory or claim, rather, it is premised on the allegations made in the complaint.

18.     The fact that the Court determined it did not have jurisdiction over the IHRA claim does not prevent section 2-616(b) from allowing for application of the relation back doctrine because it had jurisdiction over the allegations pursuant to Section 1981. *Irving v. Rodriquez,* 27 Ill. App. 2d 75, 81, 169 N.E.2d 145, 147 (Ill. App. Ct. 1960) ("The essential test of a complaint is that it has informed the defendant of a valid claim under a general class of cases of which the court has jurisdiction as distinguished from a complaint that states no cause of action at all."); *Marcus*

CAU Removal 000527

*v. Art Nissen and Son, Inc.*, 224 Ill. App. 3d 464, 466-68, 586 N.E.2d 694 (1991) (finding that as long as the elements of section 2-616 were met, the claim related back regardless of whether the original claim was considered a nullity, thus, giving the court jurisdiction over such allegations); *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 460, 312 N.E.2d 620 (1974) ("In determining jurisdiction it is appropriate to look to the nature of the case and the relief sought.").

19.     Furthermore, 735 ILCS 5/2-616 contains no such requirements that the court must have had jurisdiction over the claim that was initially asserted at the time of the initial filing to allow for an amendment for a claim that the court does in fact have jurisdiction over.

20.     The motion is filed one day after the complaint was dismissed by this Court for the first time.

21.     Therefore, rather than focus on the "new" name of the legal theory, the Court should focus on the nature of the already alleged allegations under 775 ILCS § 5/1-101 *et seq*. for which this Court undisputedly had and continues to have jurisdiction. As the First District has explained, "court should liberally construe the provision's requirements 'in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance.'". *Walstad v. Klink,* 2016 Il. App. 170070 * 16, 423 Ill.Dec. 608, 613 105 N.E.3d 1016, 1021 (2018) citing to *Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* 167 Ill. 2d 88, 102, 212 Ill.Dec. 267, 656 N.E.2d 1101 (1195).

**WHEREFORE,** for the foregoing reasons, Plaintiff Michelle Abraham respectfully requests that this Court grant her leave to file an Amended Complaint.

FILED DATE: 2/9/2022 1:58 PM   2018CH02497

4

CAU Removal 000528

Respectfully submitted,

**Dated**: February 9, 2022                    **MICHELLE ABRAHAM**

                                               /s/ Ruth I. Major
                                               One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

5

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 6

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MICHELLE ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2018 CH 02497 |
| | ) |
| COMMUNITY ALTERNATIVES | ) Honorable Judge Anna M. Loftus |
| UNLIMITED, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**AMENDED COMPLAINT**

NOW COMES Plaintiff, Michelle Abraham, by her attorneys, the Law Offices of Ruth I. Major, P.C., and for her Amended Complaint against Defendant, Community Alternatives Unlimited ("CAU"), states as follows:

**INTRODUCTION**

1.      Ms. Abraham was employed by CAU for over 17 years, until she was constructively discharged in or around December 2016. She was well-regarded by her co-workers and was promoted periodically within the company.

2.      In March 2016, she was suddenly placed on a Performance Improvement Plan ("PIP"), just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU. Throughout the PIP process, she was bullied and subjected to treatment that her co-workers who had not reported discriminatory conduct did not receive and the PIP was extended repeatedly.

3.      Following her successful completion of the PIP, Ms. Abraham was denied the opportunity to have a year-end evaluation and was therefore denied the ability to obtain a raise at

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

the beginning of 2017. Under these circumstances, she was harassed continuously from the time she reported her concerns until the time of her constructive discharge in retaliation for reporting racial, gender, and sexual orientation discrimination in her workplace, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter referred to as "Section 1981").

## PARTIES

4.    Ms. Abraham is a resident of the State of Illinois.

5.    Defendant CAU is a not-for-profit company incorporated in Illinois in 1980, providing services to individuals with disabilities, with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter as each party to the Complaint is a citizen of Illinois or, in the case of CAU, is a corporation doing business in Illinois, organized under the laws of the State of Illinois. 735 ILCS §5/2-209. The Circuit Court of Cook County has jurisdiction over section 1981 claims. *See Huon v. Johnson & Bell, Ltd.,* 657 F.3d 641, 648 (7th Cir. 2011) ("Illinois circuit courts have concurrent jurisdiction over claims arising under Title VII and § 1981.").

7.    Plaintiff timely filed a complaint on February 23, 2018 pursuant to 735 ILCS 5/2-616(b), as a complaint may be amended and deemed timely filed if the initial claim was filed within the new claim's limitation period, which in this case is a minimum of two years.

8.    Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and § 735 ILCS § 5/2-102 because part of the transaction out of which the cause of action arose took place within Cook County, Illinois, and because CAU is considered a resident of Cook County, Illinois, through being authorized to transact business in Illinois and doing business in Cook County.  Ms.

CAU Removal 000532

FILED DATE: 4/18/2022 1:42 PM 2018CH02497

Abraham's work was largely performed in Cook County and CAU's retaliatory acts took place in Cook County as well.

## FACTS

9.      Ms. Abraham was hired by CAU on or around November 2, 1999 as a case manager. In that role, she typically managed about 75 cases at a time, dealing with disabled individuals and their families to assist them in procuring the needed medical and social services, and was routinely assigned time- and labor-intensive cases which were too difficult for other case managers to handle. All of her performance evaluations, when she received formal performance evaluations, were positive. Her work was initially performed in dealing with individuals who were living in group homes, as part of the Bogard unit at CAU.

10.      When the Bogard unit's staff was decreased due to a declining case load, Ms. Abraham was transferred to the Community department at CAU, where she continued in her role as a case manager. Ms. Abraham was deemed valuable to the company and was told her skill set meant that she would work well in the same role, just in another department. The Community department integrated individuals with developmental disabilities within their communities to obtain needed services and involved a lot of one-on-one contact between the case managers and the clients, which Ms. Abraham was used to from her work on the time- and labor-intensive cases from the Bogard unit.

11.      In 2001, she was transferred to the Individual Service and Support Advocacy Unit ("ISSA"), which assisted in providing services for people with intellectual disabilities. There she performed case management work for CAU clients who received services that were funded through Medicaid. In this role, Ms. Abraham continued to receive positive performance reviews, up through the time she applied and received for a promotion to manager in 2007.

3

CAU Removal 000533

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

12.     In 2007, she was promoted to the position of Program Manager for ISSA. She worked in that role for nearly a decade. She was known as a strong advocate for her clients, would supervise the work of the case managers in the Department, and wrote performance evaluations for the people she supervised. She also participated in interviews for new hires in the Department and trained new hires in how to perform work for the ISSA. She served as a resource when the people she supervised needed assistance with their cases and was frequently the go-to person when complicated issues arose. Ms. Abraham held small group meetings at least once per month to manage her staff. She continued to receive positive performance reviews from her supervisors in this role as well.

13.     In 2009, she was transferred to Home Based Services ("HBS"), where she performed the Program Manager role in that department, performing the same tasks. In this position, she reported to HBS Department Director, Jennifer Rutka. Though Ms. Rutka insisted that everyone's performance reviews note areas in which an employee could improve, every year, Ms. Abraham still received positive performance reviews, even in her first review completed after moving to HBS, where she had double the workload of other Program Managers for the two-month period when she was transitioning between the ISSA and HBS Departments.

14.     It was in her time as Program Manager in HBS that Ms. Abraham began to hear racially discriminatory, sexist, anti-Semitic, homophobic commentary from her co-workers and especially from her supervisor, Ms. Rutka, who was known for being rude when speaking about people who didn't do things in the exact way she wanted them to, commonly referring to such situations as involving people who would not "comply." Ms. Abraham kept her thoughts and feelings about these remarks to herself out of concern that reporting such conduct would not be well taken. She simply continued to supervise her staff, and advocate for her clients' best interests.

CAU Removal 000534

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

15.     Upon information and belief, these comments were not limited to Ms. Abraham's Department, HBS, as CEO Joanell Voigt would comment that she hoped a homosexual employee would not impact the office bathroom situation in any way "because that is ridiculous," and would ask how a homosexual employee could "expect us to respect him" given certain wardrobe choices the employee had supposedly made.

16.     Upon information and belief, Ms. Voigt was known for making fun of employees or other individuals she suspected of being homosexuals, and for denying the African-American employees the chance to telecommute, while other non-African-American employees had that option. The telecommuting option was supposed to be seniority-based, but the African-American employees were skipped over when it was their turn to be given the telecommuting option.

17.     On or around March 17, 2016, Ms. Abraham was approached by the HR Director, Ms. Biermann, who said Ms. Abraham was due for a training session. Rather than training, however, the session consisted of Ms. Biermann asking Ms. Abraham numerous questions about HBS over the course of an approximately three-hour long meeting. The "training" meeting appeared to be a ruse to give Ms. Biermann the opportunity to gather information about Ms. Abraham.

18.     Though she initially was hesitant to engage in the discussion, Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her co-workers and supervisors when speaking about clients and their families. Ms. Rutka specifically commented on a homosexual man who worked with CAU that he was nice, but sometimes she preferred to work with "a man's man." On another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to "Jew us down." Ms. Abraham also shared that such comments were made about others within CAU, as part of the instructions

CAU Removal 000535

supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress. Finally, she shared that Ms. Rutka in the past engaged in retaliatory conduct and that Ms. Abraham would not participate in such conduct.

19.     Upon information and belief, following this meeting, Ms. Biermann reported the substance of her conversation with Ms. Abraham to others at the same level as the HR Director within CAU.

20.     The very next day, during a managers' meeting that Ms. Abraham attended, Ms. Rutka baited Ms. Abraham into a discussion about the comments Ms. Abraham made to Ms. Biermann the day before and about paperwork Ms. Abraham was supposedly behind in completing. Ms. Abraham stated that she would be caught up on the paperwork within two weeks. The discussion then became very emotional between Ms. Abraham and Ms. Marlene Russo, Ms. Abraham's intermediate supervisor, because Ms. Russo was screaming at Ms. Abraham. Eventually, after Ms. Abraham broke into tears, Ms. Rutka ended the meeting.

21.     On or around March 21, 2016, less than one week after Ms. Abraham reported the unlawful discriminatory conduct of CAU, Ms. Abraham was called into a meeting in the HR office, attended by Ms. Rutka, Ms. Russo, and Ms. Biermann. Ms. Rutka stated that Ms. Abraham was being placed on a PIP, and then immediately asked if she was going to resign. When Ms. Abraham said she wouldn't resign, the meeting continued with Ms. Biermann stating that they would proceed with the PIP. Ms. Rutka remarked that she did not want to "waste time" with the PIP if Ms. Abraham "was going to quit in two weeks."

6

CAU Removal 000536

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

22.     During the course of the multiple-hour meeting about the PIP, Ms. Abraham was subjected to harsh commentary about the supposed deficiencies with her work, deficiencies which had never been expressed to Ms. Abraham before this meeting. She asked questions to clarify what was being communicated to her about her role, because the information provided in association with the PIP so greatly deviated from the standard operating procedures of CAU, which she had been using for over 15 years at that time, and which she had been following when she received all of her positive performance reviews in years past.

23.     In response to her clarifying questions, Ms. Abraham was rudely asked whether she had any common sense and condescending questions such as, "you've been a manager for how long?" She was informed that Ms. Rutka thought staff should not be coming to Ms. Abraham to ask questions if Ms. Abraham doesn't know the answers to their questions, and if not, then "how can [she] manage?" She was also informed that CAU was questioning whether she could be trusted in her Program Manager role in HBS.

24.     The PIP itself addressed supposed problems which were in fact ongoing issues that were commonly encountered in case management work by all employees working in this area, including issues related to completing the voluminous paperwork involved in case management, and which typically would not have merited placing someone on a PIP. When Ms. Abraham had needed to speak to a case manager she supervised about similar issues in the past, she would address the issues with the employee, and would not place the employee on a PIP. Ms. Abraham had never heard of anyone at CAU being placed on a PIP for issues such as the ones raised in her PIP.

CAU Removal 000537

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

25.    The PIP also placed unrealistically short time frames on the completion of the objectives of the PIP, especially in consideration of the fact that the PIP demanded Ms. Abraham deviate from the standard operating procedures she had been using for over 15 years.

26.    These deadlines were known to be extreme by others at CAU. Ms. Abraham overheard other senior managers speaking one day about the deadlines imposed for the completion of her paperwork. The senior managers were concerned that CAU might hold them to the same standards, and they were commenting that they did not know how they would get their paperwork done if the same deadlines that were imposed on Ms. Abraham were to be imposed on their work.

27.    Within a few days of receiving the PIP, Ms. Abraham began to receive calls from her clients and their families, who reported that they had been called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do.

28.    One such called was placed to the Executive Director of an agency HBS worked with, whose child was among the individuals Ms. Abraham assisted with services. The Executive Director mentioned that he told whoever called that Ms. Abraham did wonderful work, and that he was surprised to have received such a call because Ms. Abraham was doing great work for his child.

29.    The PIP was supposed to run for thirty days, after which Ms. Abraham's performance would be reevaluated to determine if she had met the goals set by the PIP. Instead, the PIP period was extended multiple times, so that it actually ran for 90 days. Each time the PIP was extended, new false complaints about Ms. Abraham's performance were added, in an apparent attempt to convince her to stop fighting the PIP and to just resign, as Ms. Rutka had suggested in the initial PIP meeting in March 2016.

CAU Removal 000538

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

30.     While on the PIP, Ms. Abraham was subjected to extreme scrutiny, as she was informed that her "comings and goings" were being monitored by her supervisors, implying that they were keeping her under surveillance while she was at work. She also had her files audited and re-audited, sometimes through multiple managers reviewing the same files over and over again, examining aspects of the files that dated back several months, to dates before the PIP period began.

31.     During the PIP period, Ms. Abraham frequently worked late into the evening, sometimes as late as 11:00 p.m., to try to complete all of her paperwork and meet the unrealistic deadlines the PIP provided for the completion of her work. Because Ms. Abraham was salaried, she was not paid any overtime for the extra hours she worked to accomplish the requirements set for her in the PIP.

32.     In June 2016, Ms. Abraham was deemed to have successfully completed the PIP.

33.     However, Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with, the people they believed she might confide in, and asked these people questions about her personal life, outside of work, in an attempt to harass her and dig up any information they could use to push her out of the company.

34.     Following the completion of the PIP, Ms. Abraham was accused multiple times of demanding a promotion, something she never did. She was also threatened that she would be demoted.

35.     As the end of 2016 approached, CAU refused to provide Ms. Abraham with an annual performance review, which meant that she could not receive a raise in 2017. Instead of conducting a performance review, CAU stated that the PIP took the place of an annual performance review, even though the PIP was *successfully* completed in June, and half of the year still remained at the time that the PIP was completed. Ms. Biermann stated that this should be acceptable to Ms.

CAU Removal 000539

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

Abraham because annual reviews only encouraged managers to discuss negative aspects of an individual's performance, despite the fact that Ms. Abraham's prior annual performance reviews had been positive up to that point in time.

36.     Under these circumstances, Ms. Abraham went to work every day because she loved her work and enjoyed working with and for her clients. She was subjected to extreme stress and emotional distress on a daily basis, though, through CAU's treatment of her. Though it was difficult to leave the career she had built over the course of 17 years, Ms. Abraham was subjected to such conditions in her everyday life at CAU that she eventually resigned in December of 2016 because it was obvious that CAU would continue to engage in conduct designed to force her to resign her position. She provided 30 days of notice to ease the transition of her clients to other staff at CAU. Not surprisingly, CAU made no effort to talk Ms. Abraham into staying.

37.     Finally, after she learned that Ms. Abraham had filed a Charge of Discrimination related to her encounters with CAU, Ms. Biermann contacted Ms. Abraham and suggested that she would be taking leave from her position at CAU because she had come to experience similar retaliation for looking into the complaint made by Ms. Abraham and the statements shared by Ms. Abraham in the March 2016 meeting.

**COUNT I – UNLAWFUL RETALIATION FOR OPPOSING UNLAWFUL CONDUCT, IN VIOLATION OF SECTION 1981**

38.     Plaintiff restates and realleges by reference paragraphs 1 through 37 as paragraph 38 of Count I.

39.     Ms. Abraham engaged in activity that is protected by Section 1981 when she reported to HR the racist and anti-Semitic conduct and statements of her co-workers in her Department.

CAU Removal 000540

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

40.     CAU placed Ms. Abraham on a PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to convince her to resign. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to similar unfavorable terms and conditions in employment as Ms. Abraham designed to force her to resign.

41.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

42.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 had their clients and clients' families called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

43.     Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 had PIPs which were supposed to last for thirty days but were extended to the point

11

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

44.     Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

45.     Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to mistreatment by their supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

46.     Ms. Abraham was falsely accused of demanding a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were falsely accused of demanding a promotion or threatened that they would be demoted.

CAU Removal 000542

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

47.     Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 was denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

48.     Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by Section 1981 were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

49.     As a direct and proximate result of the Defendant's conduct, Ms. Abraham has suffered damages, including but not limited to, pain and suffering, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

**WHEREFORE** Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A.     An award of damages for lost wages, including back pay and front pay;

B.     An award of compensatory damages including pain and suffering and emotional distress;

C.     An award of pre-judgment interest;

D.     An award of punitive damages;

E.     Attorneys' fees and costs; and

F.     Such other and further relief as may be just in law and in equity.

CAU Removal 000543

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: February 23, 2018

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

14

CAU Removal 000544

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

# EXHIBIT 7

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

2016 IL App (1st) 14-3597-U

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.
 NOTICE: This order was filed under Supreme Court
Rule 23 and may not be cited as precedent by any
party except in the limited circumstances allowed
under Rule 23(e)(1).
Appellate Court of Illinois,
First District, Third Division.

ACCURATE INSURANCE SERVICES INC., an
Illinois corporation,
Plaintiff–Appellant/Cross–Appellee,
v.
BTI COMMUNICATIONS GROUP, LTD., an
Illinois corporation,
Defendant–Appellee/Cross–Appellant.

No. 1–14–3597.
|
May 11, 2016.

Appeal from the Circuit Court of Cook County, Illinois,
County Department, Law Division. No.2011 L 010695,
Raymond W. Mitchell, Judge Presiding.

**ORDER**

Justice FITZGERALD SMITH delivered the judgment of
the court:

**\*1 ¶ 1** *Held:* The circuit court did not abuse its discretion
in refusing to permit the plaintiff to amend its complaint
either before trial or after trial to conform to the proofs,
where the amendments would not have cured any defects
in the original pleadings. The trial court's determination
that the plaintiff was not owed any liquidated damages
under the settlement agreement was not against the
manifest weight of the evidence. Similarly, there was
nothing manifestly erroneous in the court's conclusion
that the defendant had failed to state a cause of action for
breach of the underlying lease agreement or quantum
meruit. The trial court properly concluded that neither
party was the "prevailing party" under the settlement

agreement's fee-shifting provision, and therefore ordered
that each party be responsible for its own attorneys' fees.

¶ 2 This cause arises out of a five-year agreement entered
into by the plaintiff, Accurate Insurance Services, Inc.,
(hereinafter Accurate) and the defendant, BTI
Communications Group, Ltd. (hereinafter BTI), to have
BTI install, lease, finance, service and maintain a
telephone communications system for Accurate. After
problems arose with the installation and the initial
operation of the system, the parties entered into a
settlement agreement, to resolve all of the problems that
had arisen between them. Subsequently, Accurate filed,
*inter alia,* a breach of contract action against BTI on the
basis of both the original and the settlement agreements.
BTI responded by filing a counter-claim for breach of
contract and unjust enrichment against Accurate. After a
bench trial, the trial court entered judgment in favor of
Accurate and against BTI, awarding Accurate damages in
the amount of $7944.33 plus costs, arising solely from
BTI's breach of the settlement agreement. Accurate then
filed a posttrial motion asking the court: (1) to modify its
judgment pursuant to section 2–1203 of the Illinois Code
of Civil Procedure (Code) (735 ILCS 5/2–1203 (West
2012)); and (2) to amend the pleadings to conform to the
proofs presented at trial pursuant to sections 2–616(c) and
2–617 of the Code (735 ILCS 5/2–1203 (West 2012)), so
as to permit the court, *inter alia,* to award damages in
favor of Accurate based on the original contract entered
into by the parties. The trial court denied Accurate's
motion.

¶ 3 Accurate now appeals, contending that the trial court
erred when it refused to: (1) allow Accurate to file an
amended complaint prior to trial, so as to permit it to
plead enough facts to be able to recover on damages
arising from the breach of the original five-year
agreement, and not solely from the breach of the
settlement agreement; (2) award Accurate attorneys' fees
as the prevailing party under fee-shifting provision of the
parties' settlement agreement; and (3) award Accurate
any liquidated damages. BTI cross-appeals, contending
that the trial court erred in failing to award it any damages
arising from Accurate's failure to pay over $18,000 in
lease payments to BTI, as was arranged by the parties'
under the settlement agreement. For the reasons that
follow, we affirm.

**¶ 4 I. BACKGROUND**

CAU Removal 000546

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

**\*2 ¶ 5** The record before us is voluminous and sets forth the pertinent undisputed facts and procedural history.

### ¶ 6 A. The Parties

**¶ 7** Accurate is an Illinois corporation, headquartered in Bridgeview, Illinois, providing insurance services, and employing over 30 employees throughout its 6 Illinois locations. Accurate is owned and operated by brothers, Michael Zubi (hereinafter Michael) and Nasser Zubi (hereinafter Nasser). BTI is an Illinois corporation, headquartered in Lemont, Illinois, providing telecommunications services. Eric Brackett (hereinafter Brackett) is BTI's founder and majority owner.

### ¶ 8 B. The Original Agreement

**¶ 9** In March 2007, Accurate and BTI entered into a contract to have BTI provide a telephone system for Accurate's insurance business and to service the equipment if it became inoperable. The contract consists of four sets of documents: (1) the "Installation, Service and Warranty of Equipment Agreement" (hereinafter the service agreement); (2) the "Scope of Accurate Auto Insurance" (hereinafter the scope of work agreement); (3) the lease agreement; and (4) the "Addendum to Lease: Authorization for funding Prior to Delivery/Installation of Equipment" (hereinafter the lease agreement addendum).

**¶ 10** Under the service agreement, BTI agreed to furnish Accurate with a new telephone system—Inter-Tel 5000 (hereinafter the equipment), as well as install, service and warranty that equipment. In exchange, Accurate would pay BTI an initial down payment of $3532.00 and then lease the equipment from BTI over a 60 month period. The equipment was described by two schedules: (1) Schedule 1, itemizing all components of the Inter–Tel 5000 system, including 24 telephone lines, telephones, voice mails, a "tracer" which recorded all calls as they occurred, lighting protection, and an Interactive Voice Response system (hereinafter IVR), including, *inter alia,* automated outbound dialing campaigns to increase renewals; and (2) Schedule 2 titled, "Program Service Agreement," describing add-on equipment rates, renewal options, upgrade capability, costs for system relocation, and a disaster recovery plan. The disaster recovery plan states in pertinent part:

"BTI will maintain a back-up copy of the current Inter-Tel 5000 System software database at an off-site location. In the event of a catastrophic loss of the system that is covered by the Risk of Loss provision of this agreement, the back-up database will be re-loaded on the replacement equipment as soon as the customer's facilities allow. The current copy of the database will be as of the last changes or modifications to the database that were performed by BTI. Any changes to the database not performed by BTI may not be included in the back up database."

**¶ 11** The scope of work agreement defined BTI's responsibilities as to installation and configuration. Specifically, BTI was responsible for delivering, installing, and maintaining the equipment, including user training, system administration training, and consultation. In addition, BTI was obligated to provide Accurate with an IVR unit, capable of handling 24 telephone calls at any one time, with automated account balance and due date lookup, payment acceptance, and outbound dialing capabilities. As to payment acceptance, the scope of work agreement provided that: "the insured [Accurate's customers] would be able to make credit card or direct debit payments 24x7. These payments would be made immediately, but would not post automatically; they would need to be reconciled daily to update the account in QuotePro."

**\*3 ¶ 12** As to the automated outbound dialing, according to the scope of work agreement, BTI was obligated to create an IVR with certain customizable outgaining recorded messages to be delivered to Accurate's customers at about the time when they were to renew their insurance policies and when payments on their current policies were past due (hereinafter the outbound IVR). BTI agreed to work with Accurate to design the IVR programs.

**¶ 13** The scope of work agreement also included a money back guarantee policy according to which a customer had the option of "returning any product purchased at any time up to 30 days after delivery, installation, or project completion (whichever comes later) for a full refund or cancelation of any rental, lease or outsourcing contract.")

**¶ 14** According to the lease agreement (and addendum),

CAU Removal 000547

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM 2018CH02497

BTI agreed to lease the equipment to Accurate for 60 monthly payments of $3532.00. In addition, BTI agreed to secure financing for Accurate's purchase and installation of the equipment. According to the addendum, in that vein, BTI would secure a financing source. That financing source would then advance funds to BTI on Accurate' behalf (hereinafter equipment acquisition payments) to acquire and install the equipment, as well as provide the staff with training on how to use the equipment, provided that BTI demonstrated to that financing source that Accurate made an unconditional commitment to pay the amounts called for under the parties' lease, namely the 60 installments of $3,532.00 to lease the equipment.[1]

¶ 15 The lease agreement also contains a risk of loss provision which states in pertinent part: "[BTI] will bear the risk of direct physical loss or damage to the equipment, except as provided herein. If the equipment is lost or damaged, [BTI's] sole obligation will be to repair the equipment or replace it with equipment having substantially similar functionality. [BTI] may require proof of loss in a form acceptable to [BTI]. In no event shall [BTI] be liable for interruption of [Accurate's] business, loss or damage to [Accurate's] property or any other loss, including injury to any of [Accurate's] employees, agents or any other person on [Accurate's] premises."

¶ 16 C. The Settlement Agreement

¶ 17 By August 2008, the parties had failed to arrive at an end-of-project schedule. In addition, the outbound IVR system, which had been contemplated in the scope of work agreement, had not become operational. Accordingly, on March 16, 2009, the parties entered into a settlement agreement to settle all outstanding claims related to the service agreement and the scope of work agreement and hold each other harmless.

¶ 18 According to the settlement agreement, on February 25, 2009, BTI agreed to make a one-time lump payment sum of $11,316.09 to Accurate for inconveniences Accurate might have experienced from both parties' failure to agree on an end-of-project schedule. BTI and Accurate further agreed to use their "best efforts" to complete the project, including making the outbound IVR operational, by March 30, 2009. In this vein, they agreed to use their best efforts to coordinate both between themselves and "any collateral parties" involved. In addition, the parties agreed that BTI would notify Accurate in writing within 24 hours if for any reason it

was unable to carry out any of the work necessary to make the telephone system fully operational consistent with the terms of the settlement agreement, and that Accurate would use its best efforts to remedy any such problem if they were caused by or within its control.

*4 ¶ 19 The parties agreed that all changes through December 14, 2008, that had been made to the scope of work agreement would be included in the "outgoing script," except for IVR Recording # 87. In addition, Accurate agreed that no other changes were to be included in the scope of work agreement going forward. If Accurate wanted changes then it agreed to be solely responsible for their cost, which the parties agreed would be $175 per hour. In addition, Accurate agreed that each additional request for work would have to be in writing, and executed by both parties.

¶ 20 The parties further agreed that in exchange for the $11,316.09, Accurate would continue making all of its monthly lease payments (to Great American Leasing (hereinafter GAL)), and never speak disparagingly of BTI to any person. The parties also agreed to a mutual release of claims, which stated:

"A. Accurate agrees to release BTI from any and all claims, demands, obligations, losses, cause of action, costs, expenses, attorneys' fees and liability of any nature whatsoever, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether known or unknown, which Accurate has, had or claims to have against BTI stemming from the *matters giving rise to this* agreement.

B. BTI agrees to release Accurate from any and all claims, demands, obligations, losses, causes of action, costs, expenses, attorneys' fees and liabilities of any nature whatsoever, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether known or unknown, which [BTI] has, had or claims to have had against Accurate as of the date of this agreement."

¶ 21 The settlement agreement further contained a provision titled "Continuation of Agreements," stating that the parties agreed that the lease agreement and service agreement "shall remain in effect, notwithstanding the resolution reached under [the settlement] agreement."

¶ 22 The parties also agreed that each would bear its own costs and attorneys' fees with respect to executing the mutual release and the settlement agreement. However, a separate provision of the agreement titled "Attorney's Fees," provided that in the event it was necessary to "enforce" a provision of the settlement agreement, "all

CAU Removal 000548

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

costs, expenses and attorneys' fees, whether taxable or not, shall be paid by the non-prevailing party or parties to the prevailing party or parties."

¶ 23 With respect to remedies, the parties agreed, *inter alia,* that if as of March 30, 2009, BTI failed through its own fault (and no fault of Accurate and its agents, including its then database vendor) to make features included in the scope of work agreement operational, BTI would pay Accurate "for each day the telephone system is not operational based on one-half (1/2) of Accurate's monthly lease payment at the time." Similarly, if Accurate disparaged BTI or failed to make payments to GAL subject to the terms of the settlement agreement, Accurate would have to pay BTI $11,316.09.

¶ 24 **C. Procedural History**

¶ 25 **1. Pretrial**

**\*5** ¶ 26 On October 14, 2011, Accurate filed an eight count complaint against BTI, and Brackett, individually, alleging: (1) fraud (Count I); (2) consumer fraud and deceptive business practices (815 ILCS 505/1 *et seq.* (West 2012)) (Count II); (3) fraudulent inducement (Count III); (4) negligent misrepresentation (Count IV); (5) breach of the original contract (Count V); (6) breach of the settlement agreement (Count VI); and (7) equitable indemnity/contribution (Count VII).

¶ 27 In the complaint, Accurate alleged that BTI had failed to provide it the telephone system in accordance with the original contract and when the system was finally delivered, refused to service the system.

¶ 28 Accurate further alleged that BTI promised to self-finance the contract in order to get Accurate to sign the agreement, and also promised that the contract would not be assigned. However, according to Accurate, some time prior to March 2007, BTI reached an agreement with a third-party, GAL, an Iowa corporation, to be the financing source for BTI's contracts. In addition, after BTI and Accurate executed their agreement, BTI assigned Accurate's lease to GAL. Accurate alleged that it first found out about the assignment after June 2008, when it threatened to withhold payments from BTI because of BTI's failure to deliver the outbound IVR as part of the telephone system. Accurate alleged that once it found out that it was liable to GAL on the lease agreement, rather than BTI, it chose to mitigate its losses by entering into

the settlement agreement with BTI, under which it was to receive $11,316.09 and a fully operational telephone system with outbound IVR by March 30, 2009, in exchange for continuing to make its lease payments to GAL. However, Accurate further alleged, BTI eventually failed to deliver both the $11,316.09 and a fully operational system with outbound IVR by March 30, 2009. As a result, Accurate stopped making payments to GAL, and GAL filed a law suit against Accurate in Iowa, which Accurate alleged it was ultimately forced to settle.

¶ 29 In addition, Accurate alleged that BTI failed to subsequently service the telephone system as was agreed by the parties' under the warranty and service section of their original service agreement. Specifically, Accurate alleged that in June and August 2011, the telephone system stopped working twice following power outages in the area. BTI initially advised Accurate to just flip the power switch to restart the system. After problems recurred, a BTI service person was dispatched to Accurate's headquarters and was able to fix the telephone system but not the IVR. The IVR was then disconnected and removed and BTI subsequently informed Accurate that the IVR was "fried." When Accurate asked BTI to fix the system, BTI sent Accurate a proposal indicating that the repair would cost $32,960.30, and that it was not covered under the parties' original agreement because that agreement was voided by Accurate's settlement with GAL.

**\*6** ¶ 30 With respect to Count V, breach of the original agreement, Accurate alleged: (1) that BTI failed to deliver a fully operational telephone system, and (2) that it should be allowed to void and rescind both agreements under the money back guarantee section of the original scope of work agreement.

¶ 31 On May 29, 2012, BTI filed a combined section 2–619.1 motion to dismiss (735 ILCS 5/2–619.1 (West 2010)). In support, BTI attached an affidavit of BTI's principal, Brackett. According to that affidavit, Brackett was responsible for negotiating the March 2007 agreement with Accurate. Brackett averred, *inter alia,* that during those negotiations he never made representations to Accurate that Accurate was entering into the contract only with BTI, that Accurate would receive the full benefits of the telephone system and repair service even if it failed to make the payments required under the contract, and that BTI would not assign the lease portion of the agreement to a third party. Brackett further averred that in the spring and summer of 2008, Accurate became seriously delinquent on its lease payments to BTI and had defaulted on the contract. Brackett stated that in July 2008 it sent a formal notice to Accurate informing it that BTI

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000549

FILED DATE: 4/18/2022 1:42 PM 2018CH02497

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

had assigned the lease portion of the agreement to GAL.

¶ 32 On August 13, 2012, the circuit court dismissed all of Accurate's counts, except for Count VI, breach of the settlement agreement. In dismissing counts I (fraud), II (consumer fraud and deceptive business practices), III (fraudulent inducement) and IV (negligent misrepresentation) the court noted that Accurate had failed to supply a counter affidavit to challenge Brackett's assertions. With respect to Count V, the court noted that Brackett's affidavit established that Accurate was significantly delinquent on its payments and had not performed under the contract and therefore could not recover under it. In addition, the court found that counts I through V were all barred by the settlement agreement executed by the parties on March 16, 2009, as all those claims arose prior to that date. The court specifically noted that by the language of the settlement agreement, on March 16, 2009, Accurate released all claims it had against BTI whether known or unknown. With respect to counts VII and VIII (for equitable indemnity/contribution), the court noted that they were barred by the settlement agreement as they were premised on the same operative facts as the fraud and breach of contract claims which predated the settlement agreement.

¶ 33 Accurate did not attempt to appeal the circuit court's dismissal of all but one of its claims. Instead it proceeded with count VI, breach of the settlement agreement.

¶ 34 On October 17, 2012, BTI filed a counter claim against Accurate, alleging breach of contract and quantum meruit. According to BTI's counter claim it was entitled to damages and attorneys' fees because Accurate had stopped making any payments on the lease to BTI from July 2009, while at the same time receiving and accepting substantial benefits from services rendered to it by BTI.

*7 ¶ 35 Accurate responded by filing a motion to dismiss the counter claim, but that motion was denied by the circuit court. After BTI was permitted to amend its counter claim to add the amount of damages ($18,000 in lease payments allegedly not paid by Accurate), on March 1, 2013, Accurate petitioned the court to amend its complaint to provide additional facts supporting its breach of settlement agreement claim (Count VI). Specifically, Accurate wanted to allege: (1) BTI's failure to honor the risk of loss provision in the lease agreement and the warranty and service provision of the service agreement by refusing to recover the telephone system after the July 2011 storm and the actual damages incurred by Accurate in restoring that telephone system in the amount of $32,960.30; and (2) BTI's failure to deliver the entire telephone system (including the outbound IVR)contracted

for. In addition, Accurate filed a motion to dismiss BTI's amended counter claim. The circuit denied both of Accurate's motions.

¶ 36 2. Bench Trial

¶ 37 After the close of discovery, on April 22, 2014, the parties proceeded with a bench trial at which seven witnesses testified and over 50 exhibits were introduced. The record is long and convoluted because at trial the witnesses were called and then recalled several times both as part of the parties' cases-in-chief and as part of each parties' rebuttal to the others' claims. Accordingly, for purposes of brevity, we set forth only the relevant evidence adduced at trial.

¶ 38 Accurate's general manager, Nasser first testified that in late 2006, Accurate decided to replace its old telephone system (Toshiba) with a newer and more advanced version. Nasser reached out to BTI after having heard about the company from a former employee. After researching BTI on the internet, sometime in February 2007, Nasser made a telephone call to BTI to obtain a quote. Soon thereafter, a BTI representative came to Accurate's Bridgeview office where the two talked about what Nasser wanted in the new telephone system (namely, graphs, statistics, time-on-hold information about phone calls being made to Accurate's customers, and voicemail.).

¶ 39 Afterwards, BTI's project engineer David Smith (hereinafter Smith) invited Nasser and Nasser's brother, Michael, to visit BTI's Lemont headquarters, where they were shown a mock telephone system. The parties met again soon thereafter at Accurate's Bridgeview office. At this meeting, BTI's president, Brackett (hereinafter Brackett) informed Nasser about the possibility of a telephone system taking payments and making outbound calls to request payments.

¶ 40 According to Nasser, BTI eventually made a written proposal to Accurate, and the parties entered into the original written contract, consisting of the service agreement, the scope of work agreement, the lease agreement and lease agreement addendum. That agreement was entered into evidence at trial.

¶ 41 Nasser next testified about the installation process. He stated that before the lease agreement was signed, BTI shipped the entire telephone system to Accurate's headquarters before beginning installation. Two weeks after delivery the telephones and the voicemails were set

CAU Removal 000550

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

up. Soon thereafter the tracer (which records telephone calls) began working. In October 2008, the inbound IVR (which takes payments that are due from customers when they call in) became operational.[2] Each time, Nasser was informed by BTI's project engineer, Smith, that the component had become functional.

**\*8** ¶ 42 Nasser testified, however, that after October 2008, no other parts of the originally promised system were installed. Specifically, Nasser averred that Accurate never received an operational outbound IVR (for use in automatically reaching out to customers to renew their insurance policies or to pay past-due payments on current insurance policies).

¶ 43 Nasser explained that when the parties signed the settlement agreement, they agreed that Accurate was to have an operational outbound IVR by March 30, 2009, but that BTI never delivered on this promise. Specifically, Nasser testified that it was not until April 2009 that Smith asked him for help in testing the outbound IVR functionality. Smith asked Nasser to listen to several audio tape recordings of the outbound IVR and then send them back to Smith and Brad Foster (hereinafter Foster) of Watch4Net (the subcontractor, provided by BTI, and responsible for the software end of the IVR system). Nasser testified that he did so, and noted several problems with the outbound IVR, namely: that it was hanging up on customers, that it was not disconnecting as it was supposed to if it hit an answering machine, that it was not directing the insured to a live operator, and that it was not accepting payments through credit cards for renewals of insurance policies. This was the first time Nasser learned of any problems with the outbound IVR.

¶ 44 Nasser acknowledged that when BTI subsequently sent him an acceptance form on April 1, 2009, accepting the BTI system as complete and operational, he refused to sign it. Instead, after listening to the audio recordings, Nasser emailed Foster on April 29, 2009, attaching the audio tape recordings that showed the problems. In this email, which was admitted into evidence, Nasser detailed the problems he observed with the system, including that 99% of the time the outbound IVR was not hanging up on answering machines, thereby tying the telephone lines up for minutes.

¶ 45 Two of the tape recordings that Nasser listened to as part of the testing were introduced at trial. Nasser testified that the first was an audio recording of the outbound IVR system telephoning an insured customer, the customer picking up the call, the outbound IVR identifying itself as being a call from Accurate, followed by a ringing sound, and then the outbound IVR trying to redial before hanging

up. On cross-examination, Nasser acknowledged that it could have been the customer redialing and hanging up. Nevertheless, according to Nasser, this recording establishes that the outbound IVR was not performing properly because it did not: connect the customer to an operator, nor give the customer an opportunity to enter a credit card, both of which were contemplated under the parties' original agreement as to the functionality of the outbound IVR.

¶ 46 The second audio recording is of the outbound IVR system calling an insured customer and the customer's answering machine picking up. At that point, the outbound IVR repeatedly asks the customer to identify his name, instead of just hanging up. Nasser testified that Smith had promised him that the outbound IVR would disconnect when it picked up an answering machine. He acknowledged that this ability to hang up after picking up an answering machine came only from Smith and was not documented anywhere in the parties' agreements.

**\*9** ¶ 47 Nasser further testified that after he expressed his concerns to Smith, Smith suspended testing and turned off the outbound IVR. When Nasser attempted to approach BTI's representatives about the outbound IVR, BTI sent him an invoice dated June 3, 2009, which was admitted into evidence, asking for $6,075 to make the outbound IVR operational. The invoice was followed by a telephone call from Smith informing Nasser that BTI would not continue testing until this amount was paid. Nasser acknowledged that Accurate refused, and in fact, never paid this amount.

¶ 48 Nasser next testified regarding Accurate's financial losses resulting from the failure of the outbound IVR to perform as promised. According to Nasser, without the automated outbound system campaigning for renewals, Accurate was forced to use three to four of its employees to telephone insureds to renew their insurance policies. He stated that the salary of those three employees was between $12,000 and $15,000 a month, or about $144,000 per year. In addition Nasser testified to the total amount paid by Accurate on the lease agreement with BTI (later assigned to GAL). According to Nasser, Accurate was responsible for and paid a monthly sum of $3,647.01 ($3532.69 plus $96.34 plus $17.98) for the period of 60 months, totaling $218,550.90. Nasser testified that Brackett had told Accurate the value of the outbound IVR was 49% of the lease agreement amount.

¶ 49 Nasser next testified that in August 2011 he had another telephone conversation with Smith after a power outage had cut the telephone system's operation, including the continually tested outbound IVR. At that

CAU Removal 000551

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

time, Smith told Nasser that the restoration of the system would not give Accurate the outbound IVR that it had been requesting all along. This conversation was tape recorded as part of Accurate's regular course of business and was admitted into evidence.

¶ 50 On cross-examination, Nasser stated that the equipment installed is owned by Accurate and became Accurate's after Accurate made all of its payments to GAL. Although he could not recall when Accurate started making payments directly to GAL, namely before or after the settlement agreement, he stated that they initially sent checks to BTI but were then told to make them to GAL. Nasser understood GAL to be a leasing company, which leased the phone system to Accurate, while BTI serviced the telephone system.

¶ 51 On cross-examination, Nasser acknowledged that when asked during his deposition what kind of problems he observed with the outbound IVR, he only indicated that there were problems with hang ups, and never mentioned the slew of other problems he had testified to on direct.

¶ 52 Accurate's president and owner, Michael next testified consistently with Nasser about their decision to obtain a new telephone system for the business, reiterating that it was BTI's founder and owner, Brackett, who introduced them to the idea of an IVR, suggesting that it could replace the work of some of Accurate's employees. Michael testified consistently with Nasser regarding the functionality expected from the inbound and the outbound IVR, adding that the advantage was that both systems were capable of working during and after business hours. He also acknowledged that the installation process was done in phases and overseen by Nasser.

**\*10** ¶ 53 Michael testified that in March 2009, the parties entered into a settlement agreement because Accurate had not yet received an outbound IVR. Michael explained that the IVR was the most significant part of the system, and he wanted certain funds from the lease payments that Accurate had already paid to be refunded, if the outbound IVR was not going to be installed. According to the settlement agreement a deadline was put into place by which Accurate would receive an outbound IVR, and Accurate was compensated for the payments it had made on the lease agreement toward the outbound IVR.

¶ 54 Michael acknowledged that prior to the settlement agreement, BTI had paid several of the lease payments from Accurate to GAL. He explained that although Accurate initially made payments on the lease agreement to BTI, after receiving a notice of the lease assignment to

GAL, Accurate began making payments directly to GAL.

¶ 55 Michael next testified that BTI never performed on the settlement agreement, and failed both to pay Accurate the settlement amount as well as to install the outbound IVR by the agreed upon date. Michael testified consistent with Nasser about the outbound IVR never working properly, *i.e.*: (1) hanging up on customers; (2) not allowing a customer who was following a prompt to actually do anything it was instructed to do; (3) failing to automatically disconnect after receiving an answering machine.

¶ 56 Michael telephoned Brackett in June 2009 attempting to discuss BTI's failure to perform under the settlement agreement, but Brackett refused. Michael continued to email Brackett attempting to get the outbound IVR running, but received no replies. As a result, Michael decided to have Accurate stop making its lease payments to GAL. At the beginning, Accurate merely stopped making partial payments to GAL (namely the 49% of the lease payment that Brackett indicated to him was the value of the outbound IVR).

¶ 57 Soon thereafter, GAL sued Accurate in Iowa. On May 27, 2010, Accurate entered into a settlement agreement with GAL and paid them the full amount owed on the lease. Although Michael acknowledged that under that settlement agreement, Accurate paid a smaller monthly amount to GAL than it had been paying to them under the lease agreement, he explained that this smaller amount was merely a reflection of an agreement to extend the lease over an extra year, but that the total amount paid remained the same.

¶ 58 Michael next identified a voicemail left by Brackett on Michael's answering machine around September 2009, wherein Brackett acknowledges that BTI still owes Accurate $7,941.33 from their settlement agreement.

¶ 59 Michael next averred that in August 2011, electrical problems affected the BTI telephone system, and it stopped working for a while. When Accurate approached BTI, BTI demanded around $30,000, to restore the system. Michael acknowledged that this demand enraged him and that as a result he made intemperate remarks about Brackett to Smith, which led to Brackett filing a complaint with the police. Michael explained, however, that in response, on September 9, 2011, he did receive an email from Brackett, wherein Brackett agreed that the outbound IVR "did not turn out as planned," but that there was no reason to go over the various reasons on either side unless they wanted to go to court.

FILED DATE: 4/18/2022 1:42 PM 2018CH02497

CAU Removal 000552

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

**\*11** ¶ 60 Michael next testified consistently with Nasser regarding the damages that Accurate had suffered as a result of BTI's failure to install a functioning outbound IVR. These damages included the money Accurate had paid for the outbound IVR and the money it had paid to its employees to perform the services that had been anticipated would be performed by the outbound IVR.

¶ 61 On cross-examination, Michael acknowledged that under its settlement agreement with GAL, after Accurate paid all of its lease payments to GAL, it would own the telephone system equipment, outright. Michael also acknowledged that GAL was not responsible for servicing the telephone system, and that after Accurate settled with GAL, BTI continued to service the system for Accurate.

¶ 62 Kenneth Gebherd (hereinafter Gebherd) next testified that he is a network engineer at QuotePro, the company that owns the software that was used by the IVR system. Gebherd acknowledged that this software had two databases, one to be used in obtaining payments from customers, and the other for renewals of insurance policies. He indicated that he had no personal knowledge of any problems with the IVR, but acknowledged that he was privy to several emails indicating that the IVR was hanging up on customers.

¶ 63 In addition, Gebherd acknowledged that during the installation, representatives from Accurate had emailed him about understanding how to use an asterisk in the database content to prevent the IVR from making a courtesy call to a customer who had indicated he did not want to be receiving such calls. Gebherd explained that the program works in such a manner that placing an asterisk in front of a customer's address stops the IVR from making a telephone call to that customer. Gebherd explained, however, that the software program did not hit both databases at the same time so that an asterisk needed to be placed in front of the addresses of the customer both in the payment and the renewal databases to prevent each call being made. He acknowledged that Accurate's employees were responsible for placing the asterisks in front of the customer's names in both databases.

¶ 64 Gebherd also testified that in August 2011, Smith telephoned him to ask whether QuotePro had backed up the IVR system because the hard drive of the system had crashed in a power outage. Gebherd told Smith that he did not.

¶ 65 BTI's network and operations engineer and manager, David Smith (hereinafter Smith) next testified about BTI's role in the development of the IVR. According to

Smith, BTI first discussed the script for the automated machines with Accurate, and went through eight iterations of the script before choosing one. BTI also informed Accurate's database team at QuotePro what kind of information it needed so as to make the IVR work. BTI then contracted with Watch4Net which programmed the script into the IVR. BTI helped integrate that script into the IVR, tested the system and made it live. On cross-examination, Smith was impeached by his deposition testimony and admitted that when asked to explain the role BTI played in the development of the IVR at that time he had testified "none."

**\*12** ¶ 66 Smith averred that both the inbound and the outbound IVR became functional in early 2008. On cross-examination, however, he acknowledged that in his deposition he had testified that he could not recall when they became functional. Smith was also shown a work order dated October 2008, which states "IVR still not complete. This will be tracked on separate ticket." When asked where the separate ticket was, Smith indicated that he did not know.

¶ 67 Smith also acknowledged that under the language of the original agreement entered into by the parties the "automated dialing campaigns to increase renewals" were to be included in the IVR, permitting the customer to either make a payment or be transferred to an agent. Smith asserted, however, that this language meant that if the customer was being called on a past due payment it would be given the option to pay by credit card, but that if the purpose of the call was to get a renewal of an insurance policy, then the system would transfer the customer to a live agent. In fact, Smith identified a May 24, 2007, scope of work agreement relating to the IVR that was negotiated between Accurate and BTI and testified that this document governed the IVR scripts. According to Smith, that document contains two sections, the "IVR outgoing renewal campaign" and the "IVR collection campaign," and only the second section, the "IVR collection campaign" contains language stating the IVR will be taking credit card payments.

¶ 68 Smith testified that sometime in late 2008, during inbound IVR testing, he received about 55 emails from Accurate requesting changes to the inbound and outbound IVR. Smith asserted that as a result in February 5, 2009, he sent an email to Michael quoting a price for changes proposed to the IVR to allow for renewal of payments by phone. At that point, Accurate threatened BTI with litigation. According to Smith, although Accurate never paid the additional cost, BTI continued "in good faith" to work on installing the remaining functions of the outbound IVR, while attempting to negotiate a settlement

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000553

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

agreement.

¶ 69 Smith acknowledged that under the settlement agreement that was subsequently entered into, BTI was obligated to install the outbound IVR by March 30, 2009. He testified affirmatively that by that date, the outbound IVR was working 100%. According to Smith, the outbound IVR was taking information from a database, qualifying it, taking the phone number, making outbound calls, waiting for an answer, acting upon that answer, giving the information it needed to the person that answered, determining if it was the person by making the person provide it certain information, acting upon the status of the client, and either giving the customer a reminder if he or she was past due on a payment or reminding them of a cancelation or any other things that the customer needed to do, *i.e.*, be transferred to customer service. The system also successfully transferred customers to live agents, and would accept credit card payments on the phone.

**\*13** ¶ 70 Smith explained that under the December 14, 2008, email which was incorporated by the parties' into the settlement agreement, and which defined the final scope of work agreed to by the parties, there was no requirement that the IVR for renewals permit customers to make automatic payments using the telephone. In that email he identified an unnumbered IVR recording script as script Number 87, which was referred to in the settlement agreement as the one the parties agreed would not be included in the "outgoing script." That script read: "C[redit] C[ard] renewal Payment....Notice: Thank you for your renewal payment, all phone and online renewal payments are processed the next business day."

¶ 71 Smith testified that there were no glitches with the IVR, nor times when it was not fully operational. He averred that the only reason that the system was down in April 2009 for testing was because Accurate had asked BTI to take the system down to deal with database anomalies. According to Smith, those anomalies arose solely from incorrect data being entered into the database. Smith explained that the data (including customer's phone numbers, status, what he or she owes etc.) is critical, and if inaccurate will affect the outcome of the fully operational outbound IVR. Smith averred that BTI had no control of the data and that it was solely in the control of and provided by QuotePro, whom Smith understood to be Accurate's inside information technology (hereinafter IT) aide. Smith acknowledged that testing revealed hang-ups, but reiterated that the problem was caused by inaccuracies in the database. He averred that once those inaccuracies were fixed the outbound IVR was operational again.

¶ 72 Smith further testified, contrary to Nasser, that testing on both the inbound and outbound IVR was never done with live customers because that would be "ludicrous" from a customer-service perspective and is therefore never done. Smith explained that Nasser's version of "testing" was to listen to live call recordings of an operational and running IVR and search for things he believed were "anomalies." According to Smith, the audio recordings that Nasser had testified to, were recordings of a fully functioning IVR doing its job.

¶ 73 Specifically, with respect to the first recording where the IVR appears to hang up on a customer, Smith testified that this call also registers some ringing. He explained that the ringing could be one of two things: the customer accidentally redialing while the outbound IVR is in the process of transferring him to a live agent, or an Accurate agent, accidentally hanging up on the customer. He testified that the outbound IVR could not have hung up on the customer with the ringing sound in the background.

¶ 74 As to the second recording, where the outbound IVR does not automatically disconnect when upon reaching answering machine, Smith testified that he never told Michael that the outbound IVR would have this ability. Smith testified that based on the December 14, 2008, email he received from Michael, and which was incorporated by reference into the settlement agreement, he understood that Michael wanted the IVR to leave voicemails on answering machines, instead of disconnect. That email was admitted into evidence and states in pertinent part:

> **\*14** "One concern I have is calling too late. I feel we should not have calls go out later than 8:00 p.m. Your thoughts? Also, will the system leave messages on answering machines and voicemail? I think it is a good idea and a last attempt of the day and it is free name advertising?"

¶ 75 Smith next acknowledged that in 2011 there was an electrical storm that affected Accurate's telephone system. He explained that after that storm BTI was unable to backup the IVR system because the information in the system was contained on a hard drive in a box located at Accurate's headquarters and governed by Accurate's local network, which was controlled by QuotePro. Smith stated that there was a difference between the backing up of the

FILED DATE: 4/18/2022 1:42 PM 2018CH02497

CAU Removal 000554

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

Inter–Tel 500 system software database, which BTI always had the capability to do, and the backing up of the data on Accurate's local network. He explained that BTI routinely backed-up the Inter–Tel 500 system software database and identified printouts showing that such backups were made on July 22, 2011 and March 26, 2010.

¶ 76 Smith testified that Accurate never provided it with remote access to the QuotePro controlled local databases. In fact, according to Smith, Gebherd as the manager of Accurate's local server and Accurate's IT administrator was the only one with access to the network and the ability to back it up. Smith explained that this was the only reason he called Gebherd after the storm to see if he had made the backup.

¶ 77 On cross-examination, Smith was asked about the audio recording of his conversation with Nasser after the power outage where he acknowledges that BTI would not be able to provide Accurate with a fully running outbound IVR. Smith explained, however, that by this he simply meant that even if the IVR was fully rebuilt, the same issues, arising from the data inconsistencies (attributed to QuotePro) would cause the IVR to function subpar.

¶ 78 BTI's president and majority owner Brackett next acknowledged that he executed both the original and settlement agreement with Accurate. Brackett acknowledged that BTI only made a partial payment that it owed to Accurate under the settlement agreement. He explained that he did not pay the full amount on the settlement agreement because there was no deadline for such a payment specified in the agreement.

¶ 79 Bracket testified, however, that it was Accurate who failed to perform under the parties' original lease agreement. Specifically Brackett pointed out that under the original lease agreement, Accurate was responsible for the full amount of the lease even if BTI did not perform on the contract. Specifically, Brackett pointed out to the following provision in the lease agreement where Accurate agreed that it would be: "unconditionally obligated to pay all rent and other amounts due for the entire lease term no matter what happens, even if the equipment is damaged or destroyed, if it is defective or if you no longer can use it." In addition, the lease agreement states that Accurate is "not entitled to reduce or set off against any rent or other amounts due" to BTI or "anyone to whom we transfer this lease, whether your claim arises out of the lease, any statement by the vendor, or any manufacturer or vendor liability, strict liability or negligence or otherwise."

*15 ¶ 80 Brackett next testified that the Accurate project

should have been very simple. On a daily basis, QuotePro was supposed to send BTI one database file with correct information. The IVR was supposed to reference that database file and work flawlessly. However, according to Brackett, QuotePro tried for a year and could not get that single database file set up properly. QuotePro then complicated matters by adding a second database a year later. According to Brackett, Accurate took until February 2008 to make any recordings, and then requested a litany of changes, which were demanded at the constant threat of litigation and ultimately bodily harm.

¶ 81 Brackett also testified that GAL only ever acted as a financing company while BTI was responsible for the installation, service and warranty of the equipment. According to Brackett, the monthly lease payments made by Accurate included two separate portions: (1) the financing payment for the equipment; and (2) the service portion for BTI's support in repairing equipment and providing other maintenance services. When the lease was assigned to GAL only the portion financing the equipment was assigned. Accordingly, when Accurate started paying GAL directly, GAL would refund the service portion to BTI. Brackett testified that Accurate stopped making any payments for services in July 2009. Nevertheless, Brackett averred BTI continued to provide the services required under the service agreement, and in fact from July 2009 made about 55 service calls to Accurate.

¶ 82 On cross-examination, Brackett acknowledged that there is no language in the lease agreement pointing out that there exists a division between the service and the financing portion of the lease payment. In addition, Brackett admitted that the total amount Accurate paid for the equipment was about $214,000.

¶ 83 On cross-examination, Brackett also stated that he could not recall writing an email in response to Michael's threats of harm to his family in which he acknowledged that the "outbound IVR did not turn out as planned." He reiterated again that if the IVR did not "turn out as planned" it was because between the original scope of agreement, Accurate had requested "some 60 changes" under constant threats of litigation.

¶ 84 BTI's CEO, and minority owner, Scott Staver (hereinafter Staver) next acknowledged that on July 25, 2008, he wrote an email to Brackett in response to other communications he had received as a result of delays in the installation of Accurate's telephone system, wherein he estimated that BTI caused 30% of that delay. In addition, Staver admitted that according to that email, he stated that 49.6% of the monthly lease payment Accurate was making to BTI was for the value of the IVR.

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000555

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

¶ 85 In rebuttal, Accurate recalled Nasser, who testified that QuotePro only handles Accurate's servers and does not even host Accurate's email. Nasser also explained that QuotePro is "not Accurate's IT guy." In addition, Nasser stated that he does not know how to personally make entries into the QuotePro database.

**\*16** ¶ 86 Nasser also testified contrary to Smith regarding the test recording wherein the IVR hung up on a customer. He explained that the ringing would not have happened during a transfer to a live agent because Accurate has an "inter-hold" professional voice during transfers telling customers that Accurate has been in business since 1992, and that never kicked in.

¶ 87 After hearing all of the evidence and closing arguments by counsels, the court took the case under advisement. On May 30, 2014, the court issued a written order finding in favor of Accurate and against BTI on the amount owed under the settlement agreement, namely $7,944.33 plus costs, but finding no liability as to all other claims and counterclaims. Specifically, the court found that BTI had breached the settlement agreement by failing to pay the total sum ($11,316.09) due under that agreement. The court rejected Accurate's demand for liquidated damages, finding the liquidated damages provision of the settlement agreement was unenforceable. In doing so, the court found the provision was unreasonable in light of the actual damages sustained by Accurate as well as the value of the contract and bore no relationship to any potential loss contemplated at the time of contracting. In addition, and alternatively, the court found that the evidence established that the chief difficulty in achieving a telephone system operating to Accurate's satisfaction was related to Accurate's own business. The court held that "even assuming that there was a breach, it could not be fairly characterized as through no fault of Accurate or its agents."

¶ 88 The court also rejected Accurate's claim for actual damages on this basis, noting that Accurate or its agents were partially responsible for preventing the telephone system form operating the way it should have. In addition, the court found that any damages based on the salaries of Accurate employees forced to make renewal calls was too speculative, since Accurate never had an automated telephone system making such calls prior to contracting with BTI, so that there was no independent baseline for measuring those damages.

¶ 89 With respect to BTI's counterclaim, the court rejected BTI's assertion that it was owed $18,000 in lease payments relating to the services it had continued to provide to the telephone equipment even after July 2009. The court found that the evidence at trial established that Accurate ultimately paid those monies to GAL, which had been assigned by the lease, and that there was no competent proof presented to the contrary.

¶ 90 As to attorneys' fees, the court ordered each party to pay its own fees, finding that neither was a "prevailing party" under the language of the settlement agreement.

¶ 91 **3. Posttrial**

¶ 92 On June 26, 2014, Accurate filed a motion after judgment seeking reconsideration of the liquidated damages and attorneys' fees rulings. In addition, Accurate moved the court to amend its pleadings to conform to the proofs at trial pursuant to sections 2–616(c) and 2–617 of the Code (735 ILCS 5/2–1303 (West 2012)). Accurate argued that the evidence established that the outbound IVR, as defined by the parties' original agreement, was never delivered by BTI, and that therefore Accurate was owed an additional sum of $53,544.97 in damages. In support, Accurate attached the amendment to the motion to conform with proofs, including the following relevant allegations: (1) that the original lease agreement and the service agreement were fully incorporated into the settlement agreement and include the requirement that BTI install an outbound IVR that accepts credits cards or ACH payments; (2) that an outbound IVR was never installed by BTI; (3) that the entire bargained cost of the telephone system was $218,550.90; and (4) that since Staver admitted that the IVR is 49% of the telephone system ($107,098.94), a failure to deliver to Accurate half of the IVR (namely the outbound IVR) deprived Accurate of $53,544.97. Additionally, in the attached amendment, Accurate reiterated the allegations it had wanted to include in its original amended complaint (denied by the trial court prior to trial), alleging: (1) that BTI had failed to honor the risk of loss provision of the lease agreement and the warranty and service provision of the service agreement by refusing to recover the outbound IVR portion of the telephone system after the July 2011 storm, (2) by which Accurate incurred $32,960.30 in damages.

**\*17** ¶ 93 The court denied Accurate's posttrial motion. In doing so, the court noted that the points raised in the motion were already considered and ultimately rejected by the court in giving judgment. In doing so, the court noted that it reviewed its trial notes and was convinced that the weight it gave to the evidence, including the credibility of witnesses, was correct. Accurate now appeals, and BTI cross-appeals.

CAU Removal 000556

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

## ¶ 94 II. ANALYSIS

¶ 95 On appeal, Accurate argues that the trial court erred when it refused to allow Accurate to amend its complaint prior to trial to permit Accurate to recover under the parties' original agreement, which had been directly incorporated into the settlement agreement. Accurate similarly argues that the trial court erred in refusing to permit Accurate to amend its pleadings post-trial, so as to conform to the proofs presented at trial, pursuant to sections 2–616(c) and 2617 of the Code (735 ILCS 5/2–616, 2–617 (West 2012)). Accurate further claims that the trial court erred when it entered judgment in favor of Accurate on the settlement agreement issue, but failed to award Accurate any attorneys' fees or liquidated damages.

¶ 96 BTI cross-appeals contending that the trial court's judgment should be reversed because the evidence at trial established that Accurate breached the underlying lease agreement with BTI by admitting to never having paid BTI for any of the maintenance and service of the equipment rendered by BTI to the telephone system, after Accurate settled with GAL. We will address each contention in turn.

## ¶ 97 A. Amendments to Pleadings

¶ 98 We begin with the parties' arguments regarding whether Accurate's complaint should have been amended prior to or after trial. In this vein, Accurate contends that the trial court erred in refusing to allow it to file an amended complaint prior to trial so as to address an ambiguity that was created when the trial court dismissed Accurate's complaint as to Count V, alleging a breach of contract action based directly on the parties' original agreement, but permitting Accurate to proceed with Count VI, alleging a breach of the settlement agreement, where the plain language of the settlement agreement incorporated the original agreement by reference, permitting Accurate to go forward with its claims on the original contract. Accurate contends that this ambiguity spilled over into trial, when the trial court considered and denied "actual damages" in favor of Accurate, even though those actual damages resulted from the original agreement and were never alleged as part of Accurate's

unamended complaint.

¶ 99 BTI first responds by arguing that Accurate is procedurally barred from raising this issue because it never appealed the dismissal of Count V after the court dismissed that count with prejudice. We disagree.

¶ 100 In that respect, we rely on Illinois Supreme Court Rules 301 and 304 (155 Ill.2d Rs. 301, 304). Rule 301 permits appeals from final judgments as a matter of right. See also Ill. Const.1970, art. VI, § 6. A judgment or order is "final" if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy. Dubina v. Mesirow Realty Development, Inc., 178 Ill.2d 496, 502 (1997). While a dismissal with prejudice is usually considered a final judgment, including the dismissal of claims in a complaint, it is nonetheless not always immediately appealable. Dubina, 178 Ill.2d at 502. Supreme Court Rule 304(a) provides:

**18** "If multiple * * * claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all * * * claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. * * * In the absence of such a finding, any judgment that adjudicates fewer than all the claims * * * is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." 155 Ill.2d R. 304(a).

¶ 101 Accordingly, contrary to BTI's position, without a Rule 304(a) finding, a final order disposing of fewer than all of the claims in an action is not instantly appealable. 155 Ill.2d R. 304(a). In fact, as our supreme court has noted "[s]uch an order does not become appealable until all of the claims in the multiclaim litigation have been resolved." Dubina, 178 Ill.2d at 502 It is not until the entire action is terminated that all of the final orders become appealable under Supreme Court Rule 301. Dubina, 178 Ill.2d at 502.

¶ 102 In the present case, the record reveals that in dismissing all but one of Accurate's claims, the trial court did not enter a Rule 304(a) finding. Accordingly, Accurate could not have appealed the dismissal of Count V, earlier.

¶ 103 What is more, we find no merit in BTI's assertion that permitting Accurate to argue that the trial court erred in failing to amend Accurate's complaint prior to trial to allege that the original contract was incorporated by reference into the settlement agreement will unfairly

CAU Removal 000557

prejudice BTI. In making this argument, Accurate acknowledges that reversing the case to pre-trial status, for more discovery, pleading practice and a new trial would be inefficient and costly. To avoid such a waste of resources, Accurate seeks a "less disruptive" remedy, seeking instead that this court reverse the trial court's order denying Accurate's post-trial motion to amend its complaint to conform to the proofs at trial pursuant to sections 2–616(c) and 2–617 of the Code (735 ILCS 5/2–1203 (West 2012)) and award it $53,544.97 in damages for part of the outbound IVR system that was never delivered by BTI and $32,960.30 in the damages arising from the July 2011 storm that BTI was obligated but refused to repair. Accordingly, we address Accurate's arguments in the context of a motion to amend its complaint to conform to the proofs.[3]

¶ 104 It is well established that whether to grant a plaintiff leave to amend a complaint is a decision that is left to the sound discretion of the trial court, and under normal circumstances leave to amend should be liberally granted. *Tomm's Redemption, Inc. v. Hamer,* 2014 IL App (1st) 131005, ¶ 13 (citing *Goldberg v. Brooks,* 409 Ill.App.3d 106, 113 (2011)). In determining whether leave should be granted, courts consider a number of factors, including: "(1) whether the amendment cures a defect in the pleadings; (2) whether the other party is prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether there were previous opportunities to amend the pleadings." *Goldberg,* 409 Ill.App.3d at 113.

**\*19** ¶ 105 However, these factors apply only to amendments that have been proposed prior to final judgment. After final judgment, a plaintiff has no statutory right to amend a complaint and a court commits no error by denying a motion for leave to amend. See *Compton v. Country Mutual Insurance Co.,* 382 Ill.App.3d 323, 332 (2008). The reason is that although section 2616(a) of the Code of Civil Procedure (735 ILCS 5/2–616(a) (West 2010)) provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms," there is no corresponding provision mandating similar latitude in amendments offered after final judgment has been entered. *Tomm's Redemption,* 2014 IL App (1st) 131005, ¶ 13. Rather, pursuant to section 2–616(c) of the Code, following judgment, a complaint may only be amended to "conform the pleadings to the proofs." See 735 ILCS 5/2–616(c) (West 2010); see also *Tomm's Redemption,* 2014 IL App (1st) 131005, ¶ 13.

¶ 106 To allow the amendment of a pleading to conform to proofs, the proofs already produced must support the amendment. *Harding v. Amsted Industries, Inc.,* 276 Ill.App.3d 483, 494 (1995). In other words, a complaint cannot be amended after final judgment to add new claims and theories or to correct other deficiencies. See *Compton,* 382 Ill.App.3d at 332; see also *Mandel v. Hernandez,* 404 Ill.App.3d 701, 707–10 (2010). The test for determining whether the trial court properly exercised its discretion in denying a motion to amend after judgment is "whether the court's decision furthers the ends of justice." *Deming v. Montgomery,* 180 Ill.App.3d 527, 533 (1989).

¶ 107 In the present case, after a review of the record, for the reasons that follow, we find no abuse of discretion in the trial court's refusal to grant Accurate's motion to amend its pleadings both prior to and after trial.

¶ 108 Prior to trial Accurate sought to amend the pleading by alleging BTI's failure: (1) to deliver a fully operational telephone system (including an outbound IVR) by March 30, 2009, and (2) to honor the risk of loss provision in the lease agreement and the warranty and service provision of the service agreement, incorporated by reference in to the settlement agreement as a result of which Accurate incurred damages in the amount of $32,960.30. After trial, Accurate sought to amend the complaint to conform to the proofs by additionally alleging that the original lease agreement and service agreement were fully incorporated into the settlement agreement and that they required the installation of an outbound IVR that would accept credit cards for renewals, which was never delivered by BTI resulting in damages in the amount of $53,544 .97.

¶ 109 At the outset, we agree with Accurate that certain portions of the underlying contract were incorporated by reference into the settlement agreement, by way of the "Continuation of Agreements," provision of the settlement agreement. That provision explicitly states that the lease agreement and service agreement "shall remain in effect, notwithstanding the resolution reached under [the settlement agreement.]" The settlement agreement then specifies the scope of work agreement that the parties' agreed upon from the date of the settlement agreement forward. Specifically, the parties agreed that only those changes made through December 14, 2008, that had been made to the scope of work agreement would be included in the "outgoing script," except for IVR Recording # 87. Any additional changes would be charged extra and would need to be made and approved by both parties in writing.

**\*20** ¶ 110 Nevertheless, because the evidence presented by the parties' as to BTI's obligations and performance under this final scope of work agreement was hotly

FILED DATE: 4/18/2022 1:42 PM 2018CH02497

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

contested, the proposed amendments could not have cured any defects existing in the pleadings. On one hand, at trial Nasser and Michael contended that under the December 14, 2008, email incorporated by reference into the settlement agreement, BTI was responsible for installing an outbound IVR that permitted customers to renew their insurance policies by making a telephonic credit card payment. On the other hand, BTI's Smith and Brackett testified that the parties had agreed to the exact opposite, noting that script # 87, which was explicitly excluded from the scope of work agreement by the language of the settlement agreement, included that renewal credit card option. Under this record, and the trial court's inherent authority to weigh the evidence and the credibility of the testifying witnesses, an amendment to the pleading alleging that the settlement agreement required that BTI install an outbound IVR, and that since no such IVR was installed BTI owed Accurate $53,544.97 (the cost of half of the outbound IVR) would not have cured any defect in the original pleadings. The court was already privy to all of this information from the evidence presented to it at trial, and weighed that testimony accordingly, holding that the failure to install a full outbound IVR was at least in part attributable to Accurate's inability to resolve the database problems.

¶ 111 We similarly reject Accurate's attempt to amend the pleadings to allege further facts regarding the damages it sustained after the July 2011 storm, since those amendments would again not have cured any defects in the pleadings nor would have conformed the pleadings to evidence that was already before the court. While Accurate is correct that both the warranty and service provision of the original service agreement and the risk of loss provision of the lease agreement were incorporated by reference into the settlement agreement, it again fails to acknowledge the language of those provisions in context of the evidence presented by the parties' at trial. Specifically, contrary to what Accurate posits, under the warranty and service provision of the original agreement, BTI only warranted against defective parts and workmanship. Similarly, even though the risk of loss provision of the lease agreement stated that BTI would "bear the risk of physical loss or damage to the equipment" it also specifically stated that BTI would not be responsible for, nor pay for, the replacement or repair of any loss or damages that "could have reasonably been prevented by [Accurate] or [that] resulted from [Accurate's] negligence in maintaining adequate protection for the equipment." Since BTI's agents testified at trial that only Accurate's internal IT people had control and access over Accurate's local databases, which were necessary for the reinstallation of the telephone system after the storm, but had failed to back

those databases up on their local network server, any amendment to the pleadings as to BTI's failure to perform under the risk of loss provision would not have cured any defects in the pleadings, and certainly would not have resulted in a different ruling by the trial judge.

**\*21 ¶ 112** Under the aforementioned record, we find that the trial court did not abuse its discretion in denying Accurate's motions to amend the pleadings either prior to or after trial. See *Tomm's Redemption,* 2014 IL App (1st) 131005, ¶ 13; see also *Compton,* 382 Ill.App.3d at 332.

## ¶ 113 B. Liquidated Damages

¶ 114 On appeal, Accurate next contends that the trial court erred when it refused to grant it liquidated damages pursuant to the liquidated damages provision of the settlement agreement. Accurate asserts that the trial court erred when it found that Accurate was in part responsible for BTI's failure to deliver the services agreed to under the final scope of work agreement as contained in the settlement agreement. Accurate further asserts that the trial court erred when it concluded that the liquidated damages clause was an unreasonable penalty and therefore unenforceable. For the reasons that follow, we disagree.

¶ 115 The liquidated damages provision of the settlement agreement provides in pertinent part:

> "If, as of March 30, 2009, BTI fails through its own fault and no fault of Accurate and its agents, including its then database vendor to make features included in the scope of work agreement operation, BTI shall pay Accurate for each day the telephone system is not operational based on one-half (1/2) of Accurate's monthly lease payment at the time."

¶ 116 In the present case, the trial court rejected Accurate's demand for liquidated damages because "the chief difficulty in achieving a telephone system operating to Accurate's satisfaction was related to Accurate's own database." The court explained that "Accurate itself or its agents (specifically problems with its own database) prevented the telephone system from operating properly."

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000559

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

After a review of the record, we find nothing manifestly erroneous in this conclusion.

¶ 117 A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evidence or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best,* 223 Ill.2d 342, 350 (2006). Under the manifest weight standard, a reviewing court must give deference to the trial court as the finder of fact because the trial court is in the best position to observe the conduct and demeanor of the parties and witnesses. *Best,* 223 Ill.2d at 350. A reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn there from. *Best,* 223 Ill.2d at 350.

¶ 118 In the present case, as already discussed above, the parties presented contradictory evidence as to what was contemplated under the final scope of work agreement and whether, in fact, it included an outbound IVR with the ability to take credit card payments for renewals. In addition, contrary to Accurate's contention and the testimony of its witnesses, BTI's Smith and Brackett consistently testified that the outbound IVR was fully functioning as per that final scope of work agreement on March 30, 2009, and that any problems that occurred with that outbound IVR resulted from errors made by Accurate's internal database vendor, QuotePro. Accordingly, under this record, giving proper deference to the trial court's determinations as to the weight of the conflicting evidence and the credibility of witnesses, we find nothing manifestly erroneous in the trial court's conclusion that Accurate was not entitled to recoup liquidated damages under the plain language of the liquidated damages clause of the settlement agreement. *Best,* 223 Ill.2d at 350.

**\*22** ¶ 119 Since we find no fault in this basis for the trial court's denial of liquidated damages, we need not consider Accurate's additional arguments as to the court's error in finding that the liquidated damages provision was unenforceable as a penalty. See *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC,* 2014 IL App (1st) 123784, ¶ 62 ("[A reviewing court] may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct.)

¶ 120 C. Cross–Appeal/Counter–Claim for Breach of Underlying Lease Agreement

¶ 121 Before turning to the last issue addressed by Accurate, namely the trial court's refusal to award it any attorneys' fees under the settlement agreement, we first turn to BTI's cross-appeal, since the resolution of that claim necessarily impacts our analysis of the attorneys' fees.

¶ 122 In its cross-appeal, BTI asserts that the trial court erred in dismissing its counter-claim by finding that Accurate did not breach the underlying lease agreement when it stopped paying any maintenance and service fees to BTI for service calls made after July 2009. BTI essentially contends that the original lease agreement contemplated two separate payments: (1) the financing of the telephone system equipment and (2) the maintenance and service fees. BTI argues that because Nasser admitted at trial that he was aware that GAL was only a financing company and that all maintenance and service for the equipment was done by BTI, the court should have found that Accurate's failure to pay any such service fees after it entered into a settlement agreement with GAL constituted a breach of the underlying lease agreement. We disagree

¶ 123 As already noted above, we review the trial court's findings under a manifest weight of the evidence standard. *Best,* 223 Ill.2d at 350. The trial court below concluded that BTI was not owed any money under the original lease agreement because Accurate ultimately paid all the money owed under that agreement to GAL, which had succeeded BTI pursuant to an assignment. The court further stated that BTI failed to present any "competent proof" to the contrary. After a review of the record, we find nothing manifestly erroneous in that conclusion. See *Best,* 223 Ill.2d at 350. While BTI is correct that Smith and Brackett testified that the lease agreement contemplated two separate payments, one to cover the maintenance and service fees, the lease agreement itself, which was included in the trial exhibits, makes no such distinction, and merely shows a single amount owed on the lease. What is more, at trial both Nasser and Michael testified that Accurate made all of the 60 monthly payments on the original lease. Although BTI attempted to argue at trial that when Accurate settled with GAL, it did so in order to reduce its monthly payments, thereby avoiding its responsibility as to the maintenance and service fees owed to BTI, it ignores the fact that at trial Nasser testified that the only reason Accurate's lease payment was reduced after its settlement with GAL was because GAL was aware of Accurate's money problems and agreed to extend the lease for a year to permit Accurate to pay the existing sum owed over a longer period of time, but that the total amount of the payment remained the same. Since the trial court was in a better position to judge the credibility of the witnesses, and no

**WESTLAW**   © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    15

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

witnesses were subpoenaed from GAL by either party to confirm or deny BTI's allegations regarding the amounts that may have been owed to BTI, as opposed to GAL, under the original lease agreement, under the record before us, we are unable to conclude that the trial court's judgment was against the manifest weight of the evidence. *Best,* 223 Ill.2d at 350.

¶ 124 D. Attorney's Fees

**\*23** ¶ 125 Lastly, we turn to the issue of attorneys' fees. In that respect, Accurate asserts that the trial court erred in ordering that each party be responsible for its own attorneys' fees because under the fee-shifting provision of the settlement agreement, as the prevailing party in the litigation, it was entitled to have BTI pay all of its "costs, expense and attorneys' fees." BTI, on the other hand, argues that BTI, rather than Accurate was the prevailing party on a substantial issue in the litigation, so that the trial court properly refused to award Accurate any attorneys' fees.

¶ 126 Because the parties disagree as to which standard of review applies, we address that issue first. Ordinarily, a trial court's decision to award or deny attorneys' fees will not be reversed on appeal absent an abuse of discretion. See *Peleton Inc. v. McGivern's, Inc.,* 375 Ill.App.3d 222, 226 (2007); see also *Guerrant v. Roth,* 334 Ill.App.3d 259, 262 (2002). "The rationale for this standard is that a party challenging a trial court's decision regarding attorney fees is actually challenging the trial court's discretion in determining what is reasonable." *Guerrant,* 334 Ill.App.3d at 262–63.

¶ 127 However, where, as here, the parties on appeal do not contest the reasonableness of the trial court's decision concerning the amount of the attorneys' fees, but rather contest whether the parties' agreement authorized the court to grant or deny attorneys' fees, the standard of review is twofold. See *Peleton,* 375 Ill.App.3d at 225.

¶ 128 First, to the extent that the trial court interpreted the terms of the settlement agreement, our review is *de novo.* See *Guerrant,* 334 Ill.App.3d at 263 (holding that "[w]here the trial court [has] determined the construction of the * * * agreement as a matter of law, we construe the contract unrestrained by the trial court's judgment, and our standard of review is *de novo.*"); see also *Pietrzyk v. Oak Lawn Pavilion, Inc.,* 329 Ill.App.3d 1043, 1047 (2002) ( "Because the plaintiff here is not disputing the trial court's calculations [of attorney fees], but is contending only that the trial court misapplied the law, *

* * * the standard of review is *de novo* "). Second, to the extent that the trial court applied the terms of the contract to the facts of the case, *i.e.,* determining whether under the settlement agreement Accurate qualified as a "prevailing party," our review is for abuse of discretion. See *Peleton,* 375 Ill.App.3d at 226; see also *Powers v. Rockford Stop–N–Go, Inc.,* 326 Ill.App.3d 511, 516 (2001) ("Whether either party prevailed * * * in the trial court below involves an application of the facts to this principle of law. Therefore, it remains a matter committed to the discretion of the trial court [citation], and the question before us is whether the trial court abused its discretion when it determined that plaintiff was the prevailing party.")

**\*24** ¶ 129 With these principles in mind we turn to the merits of the parties' contentions. BTI first contends that because the settlement agreement contains conflicting provisions regarding attorneys' fees, and the settlement agreement was written by Accurate, the agreement should not even have applied the fee-shifting provision. We disagree.

¶ 130 Although it is true, as BTI contends, that the settlement agreement contains two separate provisions that relate to attorneys' fees, a review of those provisions in context of the entire agreement reveals that the sections are neither contradictory, nor ambiguous. In fact, the provisions are distinct, and serve two very different purposes. Paragraph 5, titled "Parties to Bear Own Costs and Attorneys' Fees" states:

> "Each party will bear its own costs, expenses, and claims to interest and attorneys' fees whether taxable or otherwise, incurred in or arising out of, or in any way connected with matters which are referenced or covered in th[e] mutual releases reference above or which were otherwise related to the subject of the agreement."

Paragraph 9 titled "Attorneys Fees," on the other hand, states:

> "In the event it is necessary to enforce a provision or provisions of this agreement, all costs, expenses

CAU Removal 000561

Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...

2016 IL App (1st) 14-3597-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

and attorneys' fees, whether taxable or not, shall be paid by the non-prevailing party or parties to the prevailing party or parties."

¶ 131 When read in context of the entire agreement, it is apparent from the plain language of the aforementioned provisions that paragraph 5 relates to each party accepting the responsibility of attorneys' fees and costs in negotiating and drafting the settlement agreement, and the release of claims contemplated under that agreement. On the other hand, paragraph 9, more specifically delineates who will be responsible for costs and attorneys' fees in the event either party has to enforce (by way of litigation) issues arising from the settlement agreement. Accordingly, contrary to BTI's contention, the trial court did not err in applying paragraph 9 to determine whether Accurate should be awarded any attorneys' fees.

¶ 132 Turning to the court's application of paragraph 9 to the facts of this case, we note that neither the term "non-prevailing party" or "prevailing party" are defined anywhere in the settlement agreement. However, our courts have previously held that a "prevailing party, for purposes of awarding attorneys' fees, is one that is successful on a significant issue and achieves some benefit in bringing suit." *Pelton, Inc. v. McGivern's, Inc.,* 375 Ill.App.3d 222, 227 (2007). On one hand, a litigant does not have to succeed on all its claims to be considered a prevailing party. *Powers,* 326 Ill.App.3d at 515. On the other hand, "when the dispute involves multiple claims and both parties have won and lost on different claims it may be inappropriate to find that either party is the prevailing party and an award of attorneys' fees to either is inappropriate." *Powers,* 326 Ill.App.3d at 515.

*25 ¶ 133 In the present case, the record reveals that Accurate proceeded to trial on a single count, breach of the settlement agreement. Accurate sought three remedies under this claim: (1) the partial payment of $7944.33 owed by BTI under the express terms of the settlement agreement; (2) actual and (3) liquidated damages arising from BTI's failure to deliver a fully operational telephone system by March 30, 2009. On the other hand, BTI proceeded to trial on breach of contract and quantum meruit claims arising from Accurate's alleged breach of the underlying lease agreement incorporated into the settlement agreement. The trial court dismissed BTI's counter claim and ruled only in favor of Accurate, awarding it damages in the amount of $7944.33.

¶ 134 While on the surface it would appear that Accurate is the prevailing party, BTI is correct in asserting that the sole award of damages to Accurate is rooted in a claim that was not contested by BTI at trial. The record is clear that all throughout trial BTI never contested the fact that it owed Accurate $7944.33, the remainder of the $11,316.09 it promised to pay to Accurate under the settlement agreement. Rather, the brunt of the evidence and arguments presented at trial concerned damages arising from BTI's alleged failure to deliver a fully operational telephone system to Accurate by March 30, 2010. The trial court explicitly ruled against Accurate on this issue, refusing to award either actual or liquidated damages on the basis that Accurate "prevented the system from operating properly" due to problems with its own database. As such, the trial court also concluded that Accurate was both a prevailing party and a non-prevailing party for purposes of the shifting-fee provision, and refused to permit Accurate to recover fees from BTI. Under this record, we are unable to find that no reasonable person in the trial court's shoes would have taken the view adopted by the trial court. See *Kim v. Mercedes–Benz,* U.S.A., Inc., 353 Ill.App.3d 444, 452 (2004) ("An abuse of discretion may be found only where no reasonable man would take the view adopted by the circuit court."); see also *Pelton,* 375 Ill.App.3d at 228.

¶ 135 III. CONCLUSION

¶ 136 Accordingly, for all of the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 137 Affirmed.

Justices LAVIN and PUCINSKI concurred in the judgment.

**All Citations**

Not Reported in N.E.3d, 2016 IL App (1st) 14-3597-U, 2016 WL 2841717

**Footnotes**

CAU Removal 000562

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

**Accurate Ins. Services, Inc. v. BTI Communications Group, Ltd., Not Reported in N.E.3d...**

2016 IL App (1st) 14-3597-U

[1]   The parties subsequently amended the scope of BTI's obligations to add additional equipment by completing two equipment add-on schedules: the first on May 23, 2007 (adding $95.34 to the original monthly lease fee) and the second on August 8, 2008 (adding $17.98 to the original monthly lease fee). The parties agree that both of these amendments were contemplated under and are part of the original lease agreement.

[2]   Nasser explained that the inbound IVR allowed a calling customer to enter a zip code and telephone number permitting the system to look up the customer's file and the amount due, and permitting the customer to make a payment using the telephone.

[3]   In doing so, we note that in its brief Accurate also argued that this appellate court should grant its motion to amend the complaint to conform to the proofs at trial pursuant to the authority granted to us by Illinois Supreme Court Rule 362. In that vein, Accurate simultaneously filed a motion pursuant to Supreme Court Rule 362 with this court. Although Accurate correctly points out that we initially granted that motion on June 19, 2015, we subsequently vacated that order on the merits. Accordingly the issue is moot.

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000563

2020 IL App (1st) 190943-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

2020 IL App (1st) 190943-U

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.
**NOTICE:** This order was filed under Supreme Court
Rule 23 and may not be cited as precedent by any
party except in the limited circumstances allowed
under Rule 23(e)(1).
Appellate Court of Illinois, First District,
Fourth Division.

Shirley DICKENS, Plaintiff-Appellant,
v.
FIFTH THIRD MORTGAGE COMPANY and
American Advisors Group, Defendants-Appellees.

No. 1-19-0943
|
Order filed March 31, 2020

Appeal from the Circuit Court of Cook County. No. 17
CH 13104, Honorable Anna M. Loftus, Judge, presiding.

**ORDER**

JUSTICE LAMPKIN delivered the judgment of the court.

**\*1 ¶ 1** *Held*: The circuit court did not abuse its discretion
in denying plaintiff's request to file an amended
complaint after the entry of final judgment.

¶ 2 The circuit court dismissed plaintiff's complaint with
prejudice and denied her motion for reconsideration,
which asked the court to make the dismissal without
prejudice and allow her leave to file an amended
complaint. On appeal, plaintiff argues that the circuit
court abused its discretion in denying her the opportunity
to re-plead. For the following reasons, we affirm.[1]

¶ 3 I. BACKGROUND

¶ 4 In October 2019, plaintiff Shirley Dickens filed a

two-count complaint against defendants Fifth Third
Mortgage Company (Fifth Third) and American Advisors
Group (American Advisors). According to the complaint,
Fifth Third filed suit in September 2015 to foreclose on a
mortgage encumbering Dickens' residence. On September
30, 2015, Dickens obtained a reverse mortgage on the
property from American Advisors and used the proceeds
to pay off the $90,000 balance on the Fifth Third
mortgage. Five days later, the complaint alleged, Dickens
discovered that her signature on the Fifth Third mortgage
was forged. The complaint alleged that Dickens obtained
the reverse mortgage from American Advisors, and paid
off the Fifth Third mortgage, based on the mistaken belief
that the Fifth Third mortgage was valid. In count 1,
Dickens sought to rescind both mortgages. In count 2, she
sought to recover the money she paid to Fifth Third.

¶ 5 Both defendants moved to dismiss Dickens' complaint
under section 2-615 of the Code of Civil Procedure. 735
ILCS 5/2-615 (West 2018). They argued that Dickens
failed to state a claim for rescission based on unilateral
mistake because she did not allege the exercise of due
care or that rescission could restore the parties to their
prior positions. In addition, Fifth Third argued that
Dickens failed to state a claim for rescission based on
fraud because she did not allege any material
misrepresentation by Fifth Third. Finally, Fifth Third
argued that Dickens failed to state a claim for the return
of the money she paid to Fifth Third because she did not
allege any misconduct by Fifth Third or any facts that
would establish the invalidity of the Fifth Third mortgage.
Both defendants asked the court to dismiss the complaint
with prejudice.

¶ 6 In response, Dickens argued that rescission of her
reverse mortgage with American Advisors was
appropriate because both she and American Advisors
mistakenly believed that the Fifth Third mortgage was
valid. She asserted that American Advisors would not
have issued a reverse mortgage to pay off the Fifth Third
mortgage had it known that her signature on the Fifth
Third mortgage was forged. She similarly argued that
rescission of the Fifth Third mortgage was appropriate
based on the parties' mutual mistake, and that Fifth Third
was responsible for her forged signature because it
employed the title company that notarized the signature.
She asked the court to deny the motions to dismiss, but
she did not request leave to file an amended complaint or
ask that any dismissal be without prejudice.

**\*2 ¶ 7** After a hearing on January 15, 2019, the circuit
court granted the motions to dismiss and dismissed
Dickens' complaint with prejudice. No transcript of the

CAU Removal 000564

Dickens v. Fifth Third Mortgage Company, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 190943-U

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

hearing is in the record on appeal.

¶ 8 On February 14, 2019, Dickens filed a motion for reconsideration. Among other things, she asked the court to make the dismissal without prejudice and allow her leave to file an amended complaint. Although she did not submit a proposed amended complaint, she suggested that she "should have sought restitution of the money she paid [Fifth Third] because it was paid to satisfy an invalid lien of mortgage." She did not discuss how this proposed claim differed from the claim in count 2 of her complaint. On March 14, 2019, the circuit court denied the motion to reconsider. Dickens then filed a timely notice of appeal.

¶ 9 II. ANALYSIS

¶ 10 On appeal, Dickens does not contest the circuit court's dismissal of her complaint. In fact, she concedes that the circuit court "correctly dismissed the complaint." She argues only that the dismissal should have been without prejudice and that she should have been allowed to file an amended complaint. She asserts that, if granted leave, she would file an amended complaint with a claim "for the return of her funds."

¶ 11 We review a trial court's decision denying leave to file an amended complaint for an abuse of discretion. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351 (2002). When a plaintiff seeks to file an amended complaint before the entry of final judgment, leave should be liberally granted. *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 13; see 735 ILCS 5/2-616(a) (West 2018) ("At any time before final judgment amendments may be allowed on just and reasonable terms," including to "chang[e] the cause of action * * * or add[ ] new causes of action."). In those circumstances, the trial court should consider whether the proposed amendment would cure a defect in the pleadings, whether the defendant would be prejudiced by the amendment, whether the proposed amendment is timely, and whether the plaintiff had previous opportunities to amend her pleadings. *Tomm's Redemption*, 2014 IL App (1st) 131005, ¶ 13. After entry of final judgment, however, "a plaintiff has no statutory right to amend a complaint and a court commits no error by denying a motion for leave to amend." *Id.* ¶ 14. The only exception to this rule is for amendments "to conform the pleadings to the proofs." 735 ILCS 5/2-616(c) (West 2018). "A complaint cannot be amended after final judgment in order to add new claims and theories or to correct other deficiencies." *Tomm's Redemption*, 2014 IL App (1st) 131005, ¶ 14.

¶ 12 There is no indication in the record that Dickens sought leave to amend her complaint before the circuit court entered final judgment dismissing the complaint with prejudice. See *FHP Tectonics Corp. v. American Home Assurance Co.*, 2016 IL App (1st) 130291, ¶ 37 (order dismissing complaint with prejudice constitutes final judgment). In her response to defendants' motions to dismiss with prejudice, Dickens did not ask the court to make any dismissal without prejudice and allow her to file an amended complaint. And because the record on appeal contains no transcript of the hearing on the motions to dismiss, we must presume that Dickens likewise made no such request at the hearing. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). Dickens first sought leave to file an amended complaint in her motion for reconsideration. That request came too late. Because Dickens had no right to amend her complaint after the entry of final judgment, the circuit court did not abuse its discretion in denying her request for leave to amend. See *FHP Tectonics Corp.*, 2016 IL App (1st) 130291, ¶ 37; *Tomm's Redemption*, 2014 IL App (1st) 131005, ¶ 15.

¶ 13 III. CONCLUSION

*3 ¶ 14 For the foregoing reasons, we affirm the circuit court's judgment dismissing Dickens' complaint with prejudice and its order denying Dickens' motion for reconsideration.

¶ 15 Affirmed.

Justice Burke concurred in the judgment.

Presiding Justice Gordon dissented.

¶ 16 PRESIDING JUSTICE GORDON, dissenting:

¶ 17 For the following reasons, I must respectfully dissent from the majority's affirmance of the trial court's order which denied plaintiff the opportunity to file even one amended complaint.

¶ 18 On this appeal, plaintiff concedes that her one and only original complaint, as drafted, was correctly dismissed. However, she argues that it should not have

CAU Removal 000565

Dickens v. Fifth Third Mortgage Company, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 190943-U

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

been dismissed with prejudice and that she should have been allowed to file at least one amended complaint.

¶ 19 Section 2-616(a) of the Code of Civil Procedure provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms * * * in any matter, either of form or substance, * * * which may enable the plaintiff to sustain the claim for which it was intended to be brought." 735 ILCS 5/2-616(a) (West 2018). In addition, Illinois has "a liberal policy of allowing amendments to the pleadings so as to enable parties to fully present their alleged cause of action." *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417 (2006); *Simon v. Wilson*, 291 Ill. App. 3d 495, 508 (1997).

¶ 20 On September 28, 2017, plaintiff filed a complaint alleging, among other things, that defendant Fifth Third recorded a mortgage which was not executed by plaintiff and on which her signature was forged. Defendant Fifth Third has never filed an answer; so it has neither admitted nor denied the forgery. There has also been no discovery concerning Fifth Third's knowledge of the forgery or the circumstances of the signing. Since we must accept all well-pled facts as true, the fact of the forgery is a given at this stage. Both defendants filed motions to dismiss; and on August 28, 2018, plaintiff responded, asking that defendants be ordered to answer. On January 15, 2019, the trial court granted defendants' motions to dismiss and dismissed plaintiff's complaint with prejudice.

¶ 21 On February 14, 2019, plaintiff moved to reconsider and also for leave to amend. Plaintiff clearly articulated that she sought leave to amend, stating: "if the court is convinced that the complaint is in some way deficient, then on that basis the complaint should be dismissed but plaintiff should be accorded leave to amend." Plaintiff repeated: "the [dismissal] Order of January 15, 2019, should be amended and the dismissal should be without prejudice and with leave to file [an] amended complaint." Plaintiff has not filed a single amended complaint, and plaintiff's counsel admitted that he "was taken aback by the court's [January 15, 2019] ruling * * * with no opportunity for leave to file an amended complaint." Plaintiff argued: "[f]iling an amended complaint, permitted by the rules, I believe, is not too much to ask."

¶ 22 In its response to plaintiff's motion, defendant Fifth Third acknowledged that plaintiff had set forth an additional theory of recovery with supporting caselaw. Defendant AAG did not file a response and there is no evidence in the record that defendant AAG opposed plaintiff's motion in the trial court. On March 14, 2019, the trial court issued a one-line order, stating: "Plaintiff's

Motion to Reconsider is denied." The order does not provide any reasons and does not state that reasons were provided in open court. On April 12, 2019, plaintiff filed a timely notice of appeal, and this appeal followed.

**\*4 ¶ 23** I agree with plaintiff's attorney that filing one amended complaint is, indeed, not too much to ask under our state's liberal policy of allowing amendments to the pleadings so as to enable parties to fully present their case. See *Grove*, 364 Ill. App. 3d at 417.

¶ 24 The majority cites in support *FHP Tectonics Corp. v. American Home Assurance Co.*, 2016 IL App (1st) 130291, ¶ 37. *Supra* ¶ 12. However, *FHP* is inapposite. In *FHP*, the issue was whether an insurance company had a duty to defend; and its resolution depended on a question of law, namely, the interpretation of a single document. *FHP*, 2016 IL App (1st) 130291, ¶¶ 31-58. This court found that the plaintiff's legal arguments about both the insurance contract and any claimed prejudice were meritless. *FHP*, 2016 IL App (1st) 130291, ¶¶ 39-57. By contrast, in the case at bar, plaintiff has set forth a factual issue, namely, a forgery, and a bank's acquisition of thousands of dollars allegedly based on that forgery—factual issues that must be resolved in her favor at this early stage. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006) (in reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, and construe the allegations in the complaint in the light most favorable to the plaintiff).

¶ 25 The primary consideration in deciding whether to grant a motion for leave to amend is whether it would further the ends of justice. *Taylor, Bean & Whittaker Mortgage Corp. v. Cocroft*, 2018 IL App (1st) 170969, ¶ 46. Any doubts should be resolved in favor of allowing amendments. *Taylor*, 2018 IL App (1st) 170969, ¶ 46. In the case at bar, where no discovery has occurred and defendants have not filed an answer, defendants would not sustain any prejudice from allowing the 88-year-old plaintiff one amended complaint. See *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417-18 (2006) (in determining whether to grant leave to amend, courts consider whether the motion would cause surprise or prejudice to the other party).

¶ 26 The majority's entire opinion hangs on the presumption that plaintiff did not seek leave to amend at the dismissal hearing, since "the record on appeal contains no transcript of the hearing on the motion to dismiss." *Supra* ¶ 12. If plaintiff had made such a request, the majority's sole ground for affirmance would evaporate. This presumption is too narrow a thread on

CAU Removal 000566

which to hang a denial of plaintiff's one and only request to amend.

¶ 27 For the foregoing reasons, I must respectfully dissent. I would dismiss the case without prejudice and grant leave to plaintiff to file an amended complaint.

**All Citations**

Not Reported in N.E. Rptr., 2020 IL App (1st) 190943-U, 2020 WL 1639991

## Footnotes

1   In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

---

**End of Document**                                  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2022 Thomson Reuters. No claim to original U.S. Government Works.                          4

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

CAU Removal 000567

2017 IL App (1st) 152332-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

2017 IL App (1st) 152332-U

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

Appellate Court of Illinois,
First District,
Fifth Division.

Losiri NUCHJARE, Plaintiff–Appellant,
v.
BARRINGTON SQUARE V and American Community Management, an Illinois Corporation, Defendant–Appellees.

No. 1–15–2332
|
Order filed July 28, 2017

Appeal from the Circuit Court of Cook County. No. 13 L 552, Honorable Janet Adams Brosnahan, Judge, presiding.

**ORDER**

JUSTICE HALL delivered the judgment of the court.

**\*1 ¶ 1** *Held*: Trial court's denial of leave to amend complaint was not an abuse of discretion as plaintiff's amendment would not have cured a defective pleading, amendment so close to trial date would have prejudiced defendant, and plaintiff had a previous opportunity to amend.

¶ 2 Plaintiff Losiri Nuchjare brought a negligence suit against defendants Barrington Square V (Barrington) and American Community Management (American) for injuries she sustained after falling on snow while walking on an outdoor walkway in a townhome complex owned by Barrington and managed by American. After the trial court granted summary judgment in favor of defendants, it denied plaintiff leave to amend her complaint to add a

breach of contract claim. Plaintiff appeals, arguing that the trial court abused its discretion in denying her leave to amend her complaint. For the reasons set forth herein, we affirm.

¶ 3 On January 17, 2013, plaintiff filed a complaint in the circuit court of Cook County, law division. Count I of the complaint alleged that Barrington owned the townhome complex within which plaintiff lived and owed her a duty to properly maintain common areas of the complex, which it asserted included the removal of ice and snow from walkways within the complex. The complaint alleged that Barrington breached that duty by allowing "an unnatural amount of ice and snow to accumulate upon the walkways in the complex." Plaintiff alleged that, as a result of Barrington's failure to remove the unnatural accumulation of ice and snow, she fell and sustained "numerous and serious injuries including a fractured wrist." She claimed she suffered medical expenses, loss of income, and loss of a normal life and sought in excess of $100,000 in damages from Barrington.

¶ 4 Count II of the complaint alleged similar theories of negligence against American. The complaint alleged that American had been contracted by Barrington to maintain the common areas of the townhome complex and was, therefore, responsible for the removal of ice and snow from the outdoor walkways. Plaintiff alleged that American's failure to remove an unnatural accumulation of ice and snow from a walkway caused her to slip and fall. As a result, plaintiff allegedly suffered "serious and permanent injuries," and sought in excess of $100,000 in damages from American.

¶ 5 On April 8, 2013, Barrington and American filed an answer to plaintiff's complaint, denying any breach of duty and allegations of negligence. The answer also raised the affirmative defense that plaintiff's own negligence contributed in whole or in part to the injury that she claimed.

¶ 6 Over the course of the proceedings, the trial court set numerous discovery deadlines. On October 10, 2014, it ordered that discovery be completed by November 25, 2014, and set a trial date of March 20, 2015.

¶ 7 On October 30, 2014, defendants filed a motion for summary judgment. They claimed that there was no genuine issue of material fact as to whether the ice and snow on which plaintiff slipped was natural accumulation. Defendants argued that, under Illinois case law, owners of residential property have no duty to remove natural accumulations of snow or ice, and, plaintiff therefore had

CAU Removal 000568

2017 IL App (1st) 152332-U

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

to show that the ice and snow on which she slipped was an unnatural accumulation.

**\*2** ¶ 8 Defendants attached a copy of plaintiff's discovery deposition, in which she testified that it had been snowing on and off all day and night before she slipped and fell. She also testified that defendants had not cleared the walkway, and asserted that unspecified bylaws stated that they were in charge of shoveling and salting the common areas. Defendants argued that, as plaintiff presented no evidence that she slipped on an unnatural accumulation of ice and snow, and her own deposition testimony suggested that the snow on the walkway was a natural accumulation, summary judgment should be granted in their favor.

¶ 9 On December 23, 2014, plaintiff filed a response to the motion for summary judgment, claiming that her payment of a monthly condominium assessment imposed on Barrington a duty of snow removal. She stated that she did not have a copy of the condominium declarations and rules and regulations (the regulations), which allegedly detailed this duty, but that she would make a demand upon defendants to provide a copy. Plaintiff's response also stated that her deposition testimony showed that defendants often failed to remove snow from common areas. She argued a genuine issue of material fact therefore existed regarding whether defendants "adequately and properly performed their duties" and summary judgment should not be granted.

¶ 10 On March 12, 2015, in a written memorandum, the trial court granted summary judgment in favor of defendants. The court noted that, even if snow and ice remain on a property for an unreasonable amount of time, "no liability will be imposed on a proprietor as long as the snow and ice is a natural accumulation."[1] The trial court found that plaintiff's uncontradicted testimony established that she fell on a natural accumulation of snow. As such, defendants were entitled to summary judgment.

¶ 11 The court also denied plaintiff's oral motion seeking leave to amend her complaint to allege a breach of contract, and willful and wanton misconduct by defendants. Plaintiff sought to allege that defendants had a contractual duty under the regulations to keep the walkways clear of snow and ice. She also sought to allege that "there is [sic.] always problems with the shoveling," and that defendants were willful and wanton in their snow removal efforts. The court stated that plaintiff did not amend her complaint or request additional discovery time prior to responding to the motion for summary judgment. Noting that plaintiff did not attempt to amend her complaint until after her negligence theory failed, the

court stated that it would be inappropriate for plaintiff to "revise the cause of action entirely." The court ordered the March 20, 2015, trial date stricken.

¶ 12 On April 10, 2015, plaintiff filed a motion to reconsider the granting of summary judgment and denial of her motion for leave to amend her complaint. She argued that, under the regulations, defendants had a duty to remove the snow. She attached to the motion the section of the regulations which she claimed imposed this contractual duty on defendants. Plaintiff cited section 5/2–1005(g) of the Illinois Code of Civil Procedure (735 ILCS 5/2–1005(g) (West 2014)), which provides that "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms."

**\*3** ¶ 13 Defendants' response to the motion to reconsider argued that it is improper to add claims or causes of action after judgment if those claims or causes of action were available at the time of the original complaint. The response claimed that the plaintiff had previous opportunities to amend the complaint, but she failed to do so.

¶ 14 In an order dated July 15, 2015, the trial court denied plaintiff's motion to reconsider.

¶ 15 Plaintiff appeals, arguing that the trial court erred in denying her motion to amend her complaint to allege a breach of contract by defendants.

¶ 16 Initially, we note that plaintiff did not comply with Illinois Supreme Court Rule 341(h)(6), which mandates that appellant briefs must contain a statement of facts "which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Jan. 1, 2016). Notably, plaintiff's statement of facts is five sentences long, is argumentative, and contains no citations to the record. Appellate courts have the right to strike an appellant's brief and dismiss the appeal as a result of appellant's failure to provide an adequate statement of the facts. Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co., 356 Ill. App. 3d 471, 478 (2005). However, whether to dismiss an appeal due to the appellant's brief's violation of Illinois Supreme Court Rule 341(h)(6) is a matter in a reviewing court's discretion. Lamb–Rosenfeldt v. Burke Medical Group, Ltd., 2012 IL App (1st) 101558, ¶ 21. As defendants' appellee brief provides a clear and direct statement of the facts, we will proceed with review.

CAU Removal 000569

2017 IL App (1st) 152332-U

¶ 17 Section 2–1005(g) states that "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2–1005(g) (West 2014). Whether to allow an amendment of a complaint is a matter within the discretion of a trial court, and we review a court's denial of leave to amend under the abuse of discretion standard. *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 16. In determining whether a trial court abused its discretion by denying leave to amend, Illinois courts must determine "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 18 Applying the first factor, whether the proposed amendment would cure a defective pleading, we note that the grant of summary judgment was not a determination that plaintiff's pleadings were defective. Rather, it was a determination that there was no genuine issue of material fact regarding the natural origin of the accumulation of snow and that defendants prevailed as a matter of law. Plaintiff's adding of a breach of contract count to the complaint would, therefore, not cure a defective pleading, but would create an entirely different pleading. This factor, therefore, weighs in favor of affirming the trial court. See *Lajato v. AT & T, Inc.*, 283 Ill. App. 3d 126, 140 (1996) ("[T]he question of whether plaintiff's proposed amendment would cure the defective pleading is not relevant, because * * * [defendant] succeeded in * * * summary judgment not because plaintiff's complaint was improperly pleaded, but because the evidence presented * * * shows no genuine issue of material fact regarding the allegations in the complaint.")

**\*4** ¶ 19 Considering the second and third factors together, whether other parties would sustain prejudice or surprise by virtue of the proposed amendment and whether the proposed amendment is timely, plaintiff argues that defendants would not be prejudiced "in any manner" by adding a breach of contract claim because defendants "were aware of [the regulations]." "Prejudice to the party opposing an amendment is the most important of the *Loyola* factors, and 'substantial latitude to amend will be granted when there is no prejudice or surprise to the nonmovant.' " *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 525 (2007) (quoting *Paschen Contractors, Inc. v. City of Kankakee*, 353 Ill. App. 3d 628, 638 (2004)). Prejudice exists where a delay before seeking an amendment leaves a party unprepared to respond to a new theory at trial. *Id.*

We cannot agree with plaintiff.

¶ 20 Plaintiff made her motion for leave to amend on March 12, 2015, which was eight days before the set trial date of March 20, 2015, and two years after she filed her complaint. See *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 525–26 (2007) ("The stage of litigation at which a proposed amendment is brought is certainly a relevant consideration.") Although the record shows that defendants were aware of and had copies of the regulations, there was no indication prior to plaintiff's proposed amendments, made after the court granted defendants' motion for summary judgment, that defendants would have to defend against breach of contract allegations. As defendants were focusing on plaintiff's negligence claims, they did not have an opportunity to preserve or obtain evidence relating to an alleged breach of contract. Allowing plaintiff to add a breach of contract allegation eight days before trial, after more than two years in which plaintiff did not raise the issue, would not leave sufficient time for defendants to prepare to respond at trial. Therefore, we find that plaintiff's amendment would have been untimely and prejudiced defendants.

¶ 21 The final *Loyola* factor is whether previous opportunities to amend the pleading could be identified. Plaintiff claims that the first opportunity to amend her complaint came about after summary judgment was granted. We disagree. As the trial court noted, plaintiff did not amend her complaint or request additional time for discovery when defendants filed their motion for summary judgment in October 2014. Plaintiff could have sought leave to amend before she responded to the motion in December 2014. In fact, she had two years in which to amend her complaint, as her original complaint was filed in January 2013. Plaintiff gives no explanation as to why she did not attempt to amend her complaint until after summary judgment was granted. As such, this factor weighs in favor of affirming the trial court.

¶ 22 As all four of the *Loyola* factors support the trial court's decision to deny plaintiff's motion for leave to amend her complaint, we hold that the trial court did not abuse its discretion.

¶ 23 For the foregoing reason, we affirm the decision of the trial court.

¶ 24 Affirmed.

Justices Lampkin and Reyes concurred in the judgment.

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000570

FILED DATE: 4/18/2022 1:42 PM    2018CH02497

FILED DATE: 4/18/2022 1:42 PM   2018CH02497

**Nuchjare v. Barrington Square V, Not Reported in N.E.3d (2017)**

2017 IL App (1st) 152332-U

**All Citations**

2017 WL 3272123

Not Reported in N.E.3d, 2017 IL App (1st) 152332-U,

**Footnotes**

[1]   Under Illinois common law, a property owner has no duty to remove a natural accumulation of snow and ice from his property. *Murphy–Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 19. In order to avoid summary judgment in such cases, a plaintiff must allege sufficient facts for a trier of fact to find that the defendant was responsible for an unnatural accumulation of snow or ice on which the plaintiff fell. *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 746 (2005).

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

CAU Removal 000571

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
6/6/2022 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18170833

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2018 CH 02497** |
| | ) | |
| **COMMUNITY ALTERNATIVES** | ) | **Hon. Judge Anna M. Loftus** |
| **UNLIMITED,** | ) | |
| | ) | **Calendar 15** |
| | ) | |
| **Defendant.** | ) | |

<u>**NOTICE OF FILING**</u>

TO:    Peter A. Steinmeyer, Brian E. Spang, Brennan McLean, EPSTEIN BECKER &
GREEN, P.C., 227 W. Monroe St. – Ste. 3250 Chicago, IL 60606
psteinmeyer@ebglaw.com; bspang@ebglaw.com; brmclean@ebglaw.com

**PLEASE TAKE NOTICE** that on **June 6, 2022,** counsel for Plaintiff electronically filed
with the Clerk of the Circuit Court of Cook County its **Reply in Support of Motion to Amend
Complaint,** a true and correct copy of which is hereby served upon you.

Respectfully submitted,

**Dated**: June 6, 2022                **MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that she caused to be served a copy of the foregoing Reply in Support of Motion to Amended Complaint via email and the Court's electronic filing system the 6th day of June, 2022 on:

Peter A. Steinmeyer
Brian E. Spang
Brennan McLean
EPSTEIN BECKER & GREEN, P.C.
227 W. Monroe St. – Ste. 3250
Chicago, IL 60606
psteinmeyer@ebglaw.com
bspang@ebglaw.com
brmclean@ebglaw.com


*/s/ Ruth I. Major*
Ruth I. Major


Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000573

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

FILED
6/6/2022 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18170833

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2018 CH 02497** |
| **v.** | ) | |
| | ) | **Honorable Judge Anna M. Loftus** |
| **COMMUNITY ALTERNATIVES** | ) | |
| **UNLIMITED,** | ) | **Calendar 15** |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION TO AMEND COMPLAINT

Plaintiff, Michelle Abraham, by and through her attorneys, the Law Offices of Ruth I.

Major, P.C., and for her Reply in Support of Motion to Amend Complaint, states as follows:

### INTRODUCTION

Contrary to Defendant's claims, Plaintiff has not delayed in seeking to amend her

complaint. Plaintiff timely filed her response to Defendant's motion to dismiss on June 20, 2018

and supplemented shortly thereafter. There was no court date from early January 2019 through the

latter half of 2021 while the motion to dismiss was pending and no reason to amend at that time.

Defendant's motion to dismiss was denied on August 18, 2021. At that time there was no reason

to amend as the motion had been denied. Defendant then filed a motion for reconsideration, relying

on cases that had been available for more than six months and up to two years and requested an

extension of time to file its reply brief. See **Exhibit A**, Email String from December 2021 Re

Defendant's Request for Extension. During oral argument before this court on February 8, 2022,

prior to the time this court ruled on the motion for reconsideration filed by Defendant, Plaintiff's

counsel advised the court that Plaintiff would be seeking to amend the complaint. This is

1

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

undisputed. Plaintiff also raised the issue in the draft Order submitted following the hearing and raised the issue of the case being dismissed without prejudice in the draft Order and in an email. Less than 24 hours after notifying the court of Plaintiff's intention to file a motion for leave to amend, Plaintiff filed the motion. The order dismissing this case was then signed by this court <u>after</u> the motion for leave to amend the complaint was already filed and submitted to the court via email. Thus, this motion for leave to amend should be reviewed under the standard applied to motions filed prior to the entry of final judgment, a standard which requires that Plaintiff be permitted to amend her complaint.

## ARGUMENT

### A.   The Order Dismissing this Case Did Not Become Final Under Supreme Court Rule 272 Until in Writing and Signed by this Court.

Defendant argues that parties have a higher standard to overcome when seeking leave to amend if the post-judgment standard is applied. The threshold question in determining whether the request for leave to amend should be reviewed under a pre-judgment standard, or a post-judgment standard, is whether the "plaintiff asked for leave to amend the complaint before or after the circuit court entered final judgment." *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 15. Defendant never explains why the higher post-judgment standard should be used; it simply presumes it should apply. The issues to be determined by the court are when the judgment became final and whether plaintiff sought to amend the complaint prior to that time. Illinois courts have been clear that where a court at the time of announcing judgment requires the submission of a written judgment order to be signed by the court, as here, the judgment becomes final "only when the signed judgment is filed". *Mid-N. Mgmt., Inc. v. Heinzeroth*, 599 N.E.2d 568, 571 (2d Dist. 1992). Illinois Supreme Court Rule 272 controls on this issue, providing, in part, as follows:

CAU Removal 000575

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

> If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the **judgment becomes final only when the signed judgment is filed**.

Ill. Sup. Ct. R. 272 (emphasis added). In this case, the court required the submission of a form of written judgment to be signed by the judge. Thus, the judgment became final only when the Order was signed by this court.

      **B.**    **Plaintiff Sought to Amend the Complaint Prior to Entry of the Signed Order—the Final Judgment—Raising the Intention During Oral Argument, in Its Draft Order, in its Email to the Court, and then in the Motion for Leave to Amend.**

In this case, during the hearing on February 8, 2022, the court required the submission of a form of written judgment to be signed by the court and the parties complied, in fact submitting two separate orders for the court's review, one of which the court then signed.[1] However, prior to the orders being received and signed by the court, Plaintiff raised the issue of seeking leave to amend multiple times: (i) first orally during the hearing on the motion for reconsideration, (ii) then in her draft Order submitted to the court, (iii) then again in an email submitted to the court, and (iv) yet another time in the actual motion seeking leave to amend the complaint. Plaintiff's Motion for Leave to File an Amended Complaint was filed at 11:55 am on February 9, 2022. (**Exhibit B**). The court was provided with a courtesy copy of the motion at 1:08 pm on February 9, 2022. The orders, including Plaintiff's which specifically provided that the dismissal was without prejudice and that Plaintiff expressed the intention to file a motion or leave to amend, were submitted to the court on February 9, 2022 after 2:00 pm. (**Group Exhibit C**). The court selected Defendant's proposed Order and signed it on February 9, 2022, which was both received and signed after the

---

[1] Plaintiff's Order included a detailed summary of the court's findings and Plaintiff's indication that a motion for leave to amend would be filed. Defendant's Order was a bare-boned Order that provided very little explanation of the court's analysis of the issues and no discussion about Plaintiff's request to amend.

CAU Removal 000576

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

Motion for Leave to Amend the Complaint had been filed. (**Exhibit D**). Defendant does not dispute that Plaintiff's counsel expressed Plaintiff's intention to amend the complaint during oral arguments and cannot dispute the efforts to amend, including the filing of the actual motion to amend, all occurring prior to this court signing and filing the order dismissing the case.

Accordingly, the judgment did not become <u>final</u> until at the very earliest February 9, 2022 at 2:00 pm, hours after Plaintiff had submitted the motion before this court. Accordingly, Plaintiff's indication to the court that she was seeking leave to amend was made four times before the judgment became final: during oral argument, in the draft order, in the email to the court, and in the motion. Defendant does not address Supreme Court Rule 272 in its brief. It provides no standard for determining when a judgment becomes final.

Moreover, the cases relied on by Defendant are factually distinguishable from this case. In *Tomm's Redemption, Inc.* the plaintiff did not seek leave to amend until briefing on its motion to reconsider the judgment was "well underway." *Tomm's Redemption, Inc. v. Hamer,* 2014 IL App (1st) 131005, ¶ 15. Similarly, in another case relied on by Defendant, *Dickens v. Fifth Third Mortgage Company*, Plaintiff did not "request that the court make any dismissal without prejudice and allow her to file an amended complaint." 2020 IL App (1st) 190943-U, ¶ 12, appeal denied, 154 N.E.3d 769 (Ill. 2020). Plaintiff in *Dickens* did not seek leave to file an amended complaint until her briefing in her motion for reconsideration. *Id.* Here, even putting aside Supreme Court Rule 272, which controls the issue here, Plaintiff still raised the intention to seek leave to file an amended complaint during oral arguments. The court understood that Plaintiff was seeking to amend the complaint as this court specifically commented that the issue needed to be explored further before deciding.

CAU Removal 000577

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

C.     **The Illinois Supreme court in *Loyola Academy* Interpreted Section 2-616(a) as "requiring the trial court to permit amendment if it will further the ends of justice."**

Section 2-616(a) governs when amendment is permitted before final judgment. It provides as follows:

> At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim.

735 ILCS 5/2-616. The Illinois Supreme Court interprets Section 2-616(a) as "requiring the trial court to permit amendment if it will further the ends of justice." *Loyola Acad. v. S & S Roof Maint., Inc.*, 586 N.E.2d 1211, 1215 (1992), quoting *Siebert v. Cont'l Oil Co.*, 515 N.E.2d 728, 730 (1st Dist. 1987). Rule 2-616(a) specifically allows amendment for the purpose of "changing the cause of action", which is specifically what Plaintiff seeks to do here. Defendant argues that Plaintiff may not do so, but it relies on cases that address amendments brought *after* final judgment is entered, *not before* as is the case here.

The Illinois Supreme Court in *Loyola* adopted four factors to be considered in determining whether to grant a motion or leave to amend, though not all of the factors must be satisfied. They are satisfied here. The factors are as follows:

> (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.

*Loyola Acad.*, 586 N.E.2d at 1215–16.

CAU Removal 000578

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

**D.  The *Loyola* Factors Weigh in Favor of Granting Plaintiff's Motion to Compel and Accordingly Failure to Allow Amendment Would be an Abuse of Discretion.**

In *Loyola* the Illinois Supreme Court found the trial court had abused its discretion in denying the motion for leave to amend. In arriving at the conclusion, the Court reviewed *de novo* the four factors set forth above and found the factors had been met. The Court explained its finding as follows:

> In light of the fact that the amendment did meet all four factors, we find that the denial of the motion to amend was prejudicial error as a result of a manifest abuse of discretion. To hold otherwise would mean a construction of section 2–616 leading to an absurd, inconvenient and unjust consequence. More importantly, we find that the amendment was material, and its materiality is apparent.

*Loyola Acad.*, 586 N.E.2d at 1217.

Here, the **<u>first factor</u>** is met as the amended pleading would cure the defective pleading. The defect in the complaint, according to the court, is that the cause of action, specifically violation of the Illinois Human Rights Act (IHRA), requires that Plaintiff apprise the Illinois Department of Human Rights (IDHR) of the U.S. EEOC's finding within 30 days of receipt of same and Plaintiff did not do so. Unlike the IHRA, under Section 1981, a plaintiff is not required to file a charge with any administrative agency and accordingly the defect found in the initial cause of action, the untimely notification to the IDHR, is not present.

The defect in the complaint was the selection of the cause of action plead, and it was corrected by "changing the cause of action" which is specifically permitted under Section 2-616(a). 735 ILCS 5/2-616 ("At any time before final judgment amendments may be allowed on just and reasonable terms . . . changing the cause of action."). Defendant's argument that a litigant cannot change the cause of action because it is "piecemeal" litigation flies in the face of Section 2-616(a) and the Illinois Supreme Court's decision in *Loyola,* which allowed for the filing of an amended

CAU Removal 000579

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

complaint that included a new cause of action after summary judgment had been granted. Otherwise, the "piecemeal" argument could be made any time a litigant seeks to change the cause of action. In *Loyola,* the complaint included new causes of action that did not require the same elements the trial court had found missing in the original complaint, just as in this case. Both complaints were deemed defective due to missing elements, and both were cured by adding a new cause of action that did not require the presence of the missing elements.

The **second factor** is also met here. There is no prejudice to defendant as the motion was filed <u>before</u> the Order was entered and Plaintiff expressed the intention to amend the complaint during oral arguments. It is important to note an important development in this case. Specifically, during the time the motion to dismiss was pending before this court, which was for approximately three years, new cases came out which Defendant believed supported its motion to dismiss. However, Defendant did not apprise the court of those new cases until <u>after</u> the court denied its motion to dismiss. Defendant never explains why it waited years until this court ruled. One of the cases Defendant relied on, *Jafri v. Signal Funding LLC*, 2019 WL 4824883 (N.D. Ill. Oct. 1, 2019), had been available to Defendant for two years at the time the motion for reconsideration was filed. *Ball v. Roeslein & Assocs, Inc.*, 2020 WL 4673136 (S.D. Ill. Aug. 12, 2020) and *Prusaczyk v. Hamilton County Coal, LLC*, 2020 WL 598137 (S.D. Ill. Oct. 8, 2020) were available for more than one year. In reversing the Order denying the motion to dismiss, this court relied heavily on the new cases that had been brought to the court's attention *after* the court denied the motion to dismiss in August of 2021. Thus, to the extent Defendant argues that Plaintiff had previous opportunities to amend the complaint, the truth is that the motion to dismiss had been pending and the cases Defendant primarily relied on for its motion for reconsideration had never been brought to the court's attention until long after the decisions had been issued. Defendant appears to have

CAU Removal 000580

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

sat on the cases, keeping them in its back pocket as insurance in the event it lost on the motion to dismiss. This conduct caused delays here. Once the cases were finally brought to the court's attention by Defendant, and the court indicated that it found the cases persuasive, Plaintiff expressed its intention to amend the complaint. Defendant has known throughout this entire time that Plaintiff was seeking relief for the unlawful retaliation and so seeking relief for the exact same conduct, albeit it under federal law, is no surprise to Defendant. Defendant is also presumed to know the Code of Civil Procedure, meaning it was also on notice that Plaintiff could amend to change the cause of action. Defendant has not provided any basis for a finding that it would be prejudiced, which is its burden. In fact, there is no explanation as to what the prejudice would be if this motion was granted.

The **third factor**, timeliness of the amendment, also weighs in favor of permitting the amendment. At the time the motion for leave to amend was filed the written Order dismissing the case had not yet been entered, and prior to the court even orally dismissing the case, Plaintiff's counsel had already expressed the intent to file a motion to amend. Plaintiff cannot be faulted for the length of time the motion to dismiss was pending or for the Defendant's failure to timely apprise the court of the new cases it relied on in its motion for reconsideration. In *Loyola* the Illinois Supreme Court found the motion to amend that was filed <u>two months</u> after summary judgment was timely. Moreover, the Illinois Supreme Court found that plaintiff's filing of its "intent to amend" during the pleading stage rendered the motion to amend, which came months later, timely. *Loyola Acad.* 586 N.E.2d at 1217. The Court specifically wrote, "Plaintiff did not file after an unreasonable length of time." *Id.*

The **fourth factor**, whether amendment was sought at a "reasonable first opportunity" is also met, as discussed above. Plaintiff need <u>not</u> establish that it sought to amend at the "first

8

opportunity" but rather, that it did not seek to amend after an "unreasonable length of time." *Id.* It must be at a "reasonable first opportunity." Here, from the time the complaint was filed until the day Plaintiff indicated her intent to amend the complaint, the complaint was in the pleading stage, not yet dismissed. Plaintiff had no reason to believe she would need to amend her complaint as she is entitled to the same relief under the Illinois Human Rights Act as she is entitled to under Section 1981 and she expected to prevail on the motion to dismiss, and in fact did prevail. Once Defendant raised new cases on its motion for reconsideration, filed long after the cases were first published, Plaintiff notified the court of her intent to amend the complaint during oral argument if required. In *Boatmen's Nat. Bank of Belleville* the Illinois Supreme Court confirmed that plaintiff was even entitled to file its "ninth-amended complaint" which related back more than three years. 656 N.E.2d 1101, 1107 (1995). It would be an abuse of discretion to deny Plaintiff's motion for leave to amend.

**E.    Under 2-616(b) the Section 1981 Claim Relates Back to the Initial Filing and is Timely.**

Defendant seeks to add a requirement to Section 2-616(b) that simply does not exist. Nowhere in Section 2-616(b) does it state that the defect that a plaintiff seeks to cure must be a "technical default." Section 2-616(b) specifically states that the "cause of action" "set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing the time within which the action may be brought or the right asserted" provided such time limit had "not expired when the original pleading was filed" and the "original and amended pleadings" "grew out of the same transaction or occurrence set up in the original pleading." 735 ILCS 5/2-616(b). Section 2-616(b) does not require that a litigant bring the same cause of action only with a corrected "technical" issue. Rather, the fact Section 2-616(b) specifically permits a party to add

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

CAU Removal 000582

FILED DATE: 6/6/2022 12:20 PM    2018CH02497

an entirely new cause of action that relates back demonstrating that the defect in the pleading can be tied to the cause of action initially chosen.

Once the requirements of Section 2-616(a) have been satisfied, as they have been here, Section 2-616(b) provides that the new cause of action is deemed timely filed if (i) it had not expired at the time the original pleading was filed; and (ii) it grew out of the same transaction or occurrence set up in the original pleading. Those are the only two requirements for the relation back doctrine as codified in Section 2-616(b) and they are met here. Defendant's additional requirement of the existence of a "technical default" is made from whole cloth.

Defendant's own case, *Porter v. Decatur Memorial Hosp.*, provides the history behind the current language in Section 2-616(b) and underscores why it is applicable here and why Plaintiff should prevail. *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 590 (2008). In *Porter,* the Illinois Supreme Court explained that originally Section 2-616(b) provided the relation back doctrine would apply if the cause of action grew out of the same transaction or occurrence **and was substantially the same as that set up in the original pleading**." *Porter*, 882 N.E.2d at 590 (emphasis added). The language "and is substantially the same as" was removed in 1933 through amendment, and "thus shifted from the common law requirement that the amended pleading set up the same cause of action as the original pleading to a test of identity of transaction or occurrence". *Id.* After a very thorough review of the issue, including consideration of federal law, the Illinois Supreme Court in *Porter* observed, "Under both Illinois and federal law, there is no question that relation back is appropriate **where a party seeks to add a new legal theory to a set of previously alleged facts**." *Porter*, 882 N.E.2d at 592. The Court noted a specific example from the United States Supreme Court explaining that even adding new allegations would require a trial court to permit application of the relation back doctrine if the additions are minimal and arise out

CAU Removal 000583

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

of the same occurrence. The case before the US Supreme Court, referenced by the Illinois Supreme Court, involved a lawsuit brought by the wife of a man killed when struck by a train while working for defendant's railroad. The wife's original complaint alleged that the railroad failed to keep a proper lookout for the decedent and failed to warn him of the train, failed to keep the railroad car properly lighted, and failed to warn him of the sudden change in shifting cars. *Id.* at 592. The complaint was amended to add a claim under a federal statute that required locomotives to have a rear light. Despite the complaint adding an entirely new factual allegation and a new cause of action under a federal statute, the US Supreme Court found the claim related back to the original filing because the defendant "was on notice of the events leading up to the death of the deceased." *Id.*

In applying the standard to the facts in *Porter*, which included the added allegations that a physician reading of a CT scan, the Illinois Supreme Court found that the CT allegation was an amplification that grew out of the earlier allegation about failing to report diminishing neurological function, both of which arose out of the same transaction or occurrence. *Porter*, 882 N.E.2d at 594. Thus, the Illinois Supreme Court reversed the trial court's decision to deny Plaintiff's motion to amend. Here, the case for amendment is even stronger than in *Porter* as there are no new allegations in the proposed amended complaint before this court. The amended complaint is based on the exact factual allegations referenced in the original complaint and defendant is aware of the events leading up to the retaliatory acts directed against Plaintiff.

This court had jurisdiction over Plaintiff's claim as it is a court of general jurisdiction, it just found it did not have jurisdiction over the cause of action brought under the IHRA.

CAU Removal 000584

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

**F.      Plaintiff Alleged She Reported the Racially Discriminatory Conduct of Her Co-Workers and was Retaliated Against, more than Adequately Pleading a Section 1981 Claim.**

Finally, Defendant represents to this court that the complaint does not allege retaliation based on race discrimination. The very **first paragraph** of the complaint states, "In March 2016, she was suddenly placed on a Performance Improvement Plan ("PIP"), just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU." In the same paragraph, she ties her protected activity to repeated extensions of the PIP, being denied her year-end evaluation which is required to obtain a raise, and continual harassment by her managers, all in "retaliation for reporting racial, gender, and sexual orientation discrimination in her workplace." In **paragraph 16**, Ms. Abraham alleges, among other things, that her co-worker did not allow Black employees to telecommute while White employees had that option" despite this option was being subject to a policy that was "seniority-based". In **paragraph 18**, Ms. Abraham alleges, among other things, that she "also shared that such comments were made about others within CAU, as part of the instructions supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress." In **paragraph 40**, Ms. Abraham alleges she engaged in protected activity when "she reported to HR the racist, sexist, anti-Semitic, and homophobic conduct and statements of her co-workers in her Department." The Illinois Supreme Court directs that Illinois courts "liberally construe the requirements of Section 2–615(b) in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance." *Boatmen's Nat. Bank of Belleville*, 656 N.E.2d at 1107. Ms. Abraham has sufficiently plead a claim under Section 1981, for which this court has jurisdiction. *Blount v. Stroud,* 904

12

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

N.E.2d 1, 11 (2009) (finding that the trial court had jurisdiction over Section 1981 claims and holding "Plaintiff's allegation that defendants retaliated against her for her support of coworker Bonnie Fouts' federal discrimination suit fits within the Supreme Court's holding. Thus, any question as to whether plaintiff properly pled a section 1981 claim has been resolved . . .").

## CONCLUSION

Plaintiff Abraham was forced from her job after she reported unlawful discrimination including race discrimination. Race discrimination, and retaliation against those who stand up against it, are important societal concerns, making Defendant's request that her claims be dismissed based on form especially troubling. Ms. Abraham notified the court that she intended to amend her complaint through counsel during oral arguments and filed a motion to amend before final judgment. Her proposed amended complaint is based on the same occurrence as alleged in the original complaint and thus is deemed timely. It simply changes the cause of action which is specifically permitted under 735 ILCS 5/2-616. Ms. Abraham filed the motion for leave immediately after the court ruled from the bench and before the written order entering final judgment was filed. This court has jurisdiction over the Section 1981 claims. The Illinois Supreme Court's directive that courts liberally allow for amendment must be followed here and Ms. Abraham's motion for leave to amend granted.

Respectfully submitted,

**Dated**: June 6, 2022

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601

CAU Removal 000586

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

14

CAU Removal 000587

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

FILED
6/6/2022 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18170833

# EXHIBIT A

CAU Removal 000588

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

## Lesley Mickle

| | |
|---|---|
| **From:** | Brian E. Spang <bspang@ebglaw.com> |
| **Sent:** | Wednesday, December 8, 2021 12:16 AM |
| **To:** | Calendar15 Chancery (Chief Judge) |
| **Cc:** | Ruth Major |
| **Subject:** | RE: 2018-CH-02497 Abraham v. CAU - proposed Unopposed Order Amending Briefing Schedule |

Thank you very much.



**Brian E. Spang** | Bio
t 312.499.1462 | f 312.827.9562
bspang@ebglaw.com

227 W. Monroe Street, Suite 3250 | Chicago, IL 60606
t 312.499.1400 | www.ebglaw.com

**From:** Calendar15 Chancery (Chief Judge) <Calendar15.Chancery@cookcountyil.gov>
**Sent:** Tuesday, December 7, 2021 11:17 AM
**To:** Brian E. Spang <bspang@ebglaw.com>
**Cc:** Ruth Major <rmajor@major-law.com>
**Subject:** Re: 2018-CH-02497 Abraham v. CAU - proposed Unopposed Order Amending Briefing Schedule

**\*\*\* EXTERNAL EMAIL \*\*\***

Counselors,

Thank you; I can confirm receipt. We'll get this to the Judge for her review and entry.

Once entered, the Clerk of Court will distribute the order through the e-filing system. If you haven't received it in 3–5 business days, please follow up with us via email to identify and resolve any issues.

Sincere regards,

Fernanda Santos
Law Clerk, Calendar 15

--
Chambers of the Honorable Anna M. Loftus
Chancery Division, Calendar 15

Until further notice, all matters on Calendar 15 are being heard remotely, via Zoom.
Hearings may be joined online: https://circuitcourtofcookcounty.zoom.us/j/95535573920

CAU Removal 000589

FILED DATE: 6/6/2022 12:20 PM 2018CH02497

Please review the Standing Order and Remote Hearing Supplement for important information about remote motion practice. More information is available on the Court's website.

Please note two substantive changes to the Judge's Standing Order, effective September 1, 2021: Reply briefs are limited to 10 pages, not 15; and courtesy copies on Motions are due when the final brief is filed.

**From:** Brian E. Spang <bspang@ebglaw.com>
**Date:** Monday, December 6, 2021 at 20:56
**To:** Calendar15 Chancery (Chief Judge) <Calendar15.Chancery@cookcountyil.gov>
**Cc:** Ruth Major <rmajor@major-law.com>
**Subject:** 2018-CH-02497 Abraham v. CAU - proposed Unopposed Order Amending Briefing Schedule

> **External Message Disclaimer**
>
> This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Dear Judge Loftus and Chambers Staff,

I represent Defendant in the above-referenced matter.  I have copied Plaintiff's counsel on this email.  I submit a proposed Unopposed Order amending a briefing schedule, attached as a Word document.

In short, the attached Order dated 9/29/21 set a briefing schedule on Defendant's Motion to Reconsider.  Per the briefing schedule Defendant's reply brief is due on Tuesday Dec. 7.  Defendant's counsel conferred with Plaintiff's counsel, and Plaintiff does not oppose an extension of Defendant's reply brief deadline until Wed. Dec. 15.  The hearing is scheduled for February 8, 2022, so this unopposed extension does not affect the hearing date.  The attached proposed Unopposed Order effectuates this unopposed extension.

Please advise whether any additional information is required, or if a formal motion will be required.

Thank you.

Respectfully,

Brian E. Spang
Counsel for Defendant



**Brian E. Spang** | Bio
t 312.499.1462  | f 312.827.9562
bspang@ebglaw.com

CAU Removal 000590

227 W. Monroe Street, Suite 3250 | Chicago, IL 60606
t 312.499.1400 | www.ebglaw.com

CONFIDENTIALITY NOTE: This communication is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this communication or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this communication in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies. Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, P.C. Attn: Marketing Department, 875 Third Avenue, New York, NY 10022. Be sure to include your email address if submitting your request via postal mail.

CAU Removal 000591

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 15

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

FILED
6/6/2022 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18170833

# EXHIBIT B

CAU Removal 000592

Case: 1:22-cv-03733 Document #: 1-1 Filed: 07/19/22 Page 594 of 640 PageID #:601
Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 15

FILED DATE: 8/6/2022 12:36 PM   2018CH02497

FILED
2/9/2022 11:55 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
16638007

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **MICHELLE ABRAHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2018 CH 02497** |
| ) | |
| **COMMUNITY ALTERNATIVES** ) | **Honorable Judge Anna M. Loftus** |
| **UNLIMITED,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**PLAINTIFF'S MOTION FOR LEAVE
<u>TO FILE AMENDED COMPLAINT</u>**

Plaintiff, Michelle Abraham, by her attorneys, and for her Motion for Leave to File

Amended Complaint pursuant to 735 ILCS 5/2-616(b) states as follows:

**I.      PROCEDURAL HISTORY**

1.      Plaintiff filed her complaint on February 23, 2018, pursuant to the Illinois Human

Rights Act, 775 ILCS § 5/1-101 *et seq.* (IHRA).

2.      The nature of the complaint is retaliation based on her reporting, among other

things, the discriminatory treatment of Black co-workers.

3.      Defendant filed Defendant's Motion to Dismiss the Complaint Pursuant to Section

2-619 of the Code of Civil Procedure on May 10, 2018.

4.      The motion was pending before the Court until the Court denied Defendant's

Motion to Dismiss on August 18, 2021.

5.      Defendant then filed a Motion to Reconsider the Memorandum Opinion and Order

Dated August 18, 2021 that Denied Defendant's Section 2-619 Motion to Dismiss or,

1

FILED DATE: 8/6/2022 12:38 PM   2018CH02497

Alternatively, For Certification of a Dispositive Question of Law for an Interlocutory Appeal on September 17, 2021, which was fully briefed and scheduled for oral argument on February 8, 2022.

6.    During oral argument, the Court granted Defendant's Motion for Reconsideration, which was the first dismissal of the complaint in this case.

7.    Plaintiff indicated that she would be filing a Motion for Leave to Amend during the oral argument on February 8, 2022.

## II.    LEGAL STANDARD

8.    The Supreme Court has been clear that leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

9.    "At any time before final judgment amendments may be allowed on just and reasonable terms." 735 ILCS 5/2-616(a).

10.    Even when a party's complaint falls outside the statute of limitations, a party may still amend if the new legal theory relates back to a set of previously alleged facts and as to the new claim "the time prescribed or limited had not expired when the original pleading was filed". *Porter v. Decatur Memorial Hosp.,* 227 Ill. 2d 343, 358, 317 Ill. Dec. 703, 882 N.E.2d 583 (2008); 735 ILCS 5/2-616(b).

## III.    ARGUMENT

11.    Illinois courts apply the same elements for retaliation used in federal cases under Title VII to state claims, and courts apply the same elements of retaliation under Title VII to Section 1981. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007); *Watson v. Ill. Human Rights Commission,* 2021 Il. App. (5th) 190433-U, 2021 WL 4894518 * 14 (2021).

12.    Ms. Abraham initially alleged her claim under the IHRA, but the allegations set forth in her complaint and the nature of the claim also support a claim under section 1981.

CAU Removal 000594

FILED DATE: 8/6/2022 12:88 PM   2018CH02497

13.     Because Ms. Abraham's previous claim and facts alleged support her section 1981 claim, as the allegations made in the complaint remain the same and only the name of the legal theory is being amended, 735 ILCS 5/2-616(b) allows her to relate her amended complaint back to her original complaint.

14.     The Circuit Court of Cook County has jurisdiction over section 1981 claims. *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641 (7th Cir. 2011) ("Illinois circuit courts have concurrent jurisdiction over claims arising under Title VII & § 1981.").

15.     The statute of limitations for a section 1981 claim is 4 years. *See generally Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).

16.      Pursuant to 735 ILCS 5/2-616(b), so long as the allegations are based on the "same transaction or occurrence set up in the original pleading", a complaint may be amended to and deemed timely filed if the initial claim was filed within the new claim's limitation period.

17.     The Illinois Supreme Court has held that "relation back is not prohibited merely based on the fact that the name of the cause of action or the legal theory used to support the claim for damages is changed in the amended pleading." *Porter*, 227 Ill. 2d at 358 In other words, the determination of allowing a party to amend is not premised on the name of the legal theory or claim, rather, it is premised on the allegations made in the complaint.

18.     The fact that the Court determined it did not have jurisdiction over the IHRA claim does not prevent section 2-616(b) from allowing for application of the relation back doctrine because it had jurisdiction over the allegations pursuant to Section 1981. *Irving v. Rodriquez,* 27 Ill. App. 2d 75, 81, 169 N.E.2d 145, 147 (Ill. App. Ct. 1960) ("The essential test of a complaint is that it has informed the defendant of a valid claim under a general class of cases of which the court has jurisdiction as distinguished from a complaint that states no cause of action at all."); *Marcus*

3

FILED DATE: 8/6/2022 12:38 PM   2018CH02497

*v. Art Nissen and Son, Inc.*, 224 Ill. App. 3d 464, 466-68, 586 N.E.2d 694 (1991) (finding that as long as the elements of section 2-616 were met, the claim related back regardless of whether the original claim was considered a nullity, thus, giving the court jurisdiction over such allegations); *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 460, 312 N.E.2d 620 (1974) ("In determining jurisdiction it is appropriate to look to the nature of the case and the relief sought.").

19.     Furthermore, 735 ILCS 5/2-616 contains no such requirements that the court must have had jurisdiction over the claim that was initially asserted at the time of the initial filing to allow for an amendment for a claim that the court does in fact have jurisdiction over.

20.     The motion is filed one day after the complaint was dismissed by this Court for the first time.

21.     Therefore, rather than focus on the "new" name of the legal theory, the Court should focus on the nature of the already alleged allegations under 775 ILCS § 5/1-101 *et seq*. for which this Court undisputedly had and continues to have jurisdiction. As the First District has explained, "court should liberally construe the provision's requirements 'in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance.'". *Walstad v. Klink,* 2016 Il. App. 170070 * 16, 423 Ill.Dec. 608, 613 105 N.E.3d 1016, 1021 (2018) citing to *Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* 167 Ill. 2d 88, 102, 212 Ill.Dec. 267, 656 N.E.2d 1101 (1195).

**WHEREFORE,** for the foregoing reasons, Plaintiff Michelle Abraham respectfully requests that this Court grant her leave to file an Amended Complaint.

CAU Removal 000596

FILED DATE: 8/6/2022 12:36 PM   2018CH02497

Respectfully submitted,

**Dated**: February 9, 2022

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

5

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 15

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

FILED
6/6/2022 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18170833

# GROUP
# EXHIBIT C

CAU Removal 000598

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

## Lesley Mickle

| | |
|---|---|
| **From:** | Brenna R. McLean <BRMcLean@ebglaw.com> |
| **Sent:** | Wednesday, February 9, 2022 2:04 PM |
| **To:** | calendar15.chancery@cookcountyil.gov |
| **Cc:** | Ruth Major; Peter A. Steinmeyer |
| **Subject:** | Abraham v. CAU - 2018 CH 02497 - Def.'s Proposed Order Granting Defendant's Motion for Reconsideration |
| **Attachments:** | Abraham v. CAU - Def.'s Proposed Order Granting Motion to Reconsider.docx |

Good afternoon Judge Loftus,

The Parties were unable to reach a consensus regarding the language of the Proposed Order and have agreed to submit separate drafts of the Proposed Order for the Court's review.

Accordingly, please find Defendant's Proposed Order Granting Defendant's Motion for Reconsideration attached.

Thank you,

Brenna



**Brenna R. McLean** | Bio
t 312.499.1418 | f 312.845.1998
BRMcLean@ebglaw.com

227 W. Monroe Street, Suite 3250 | Chicago, IL 60606
t 312.499.1400 | www.ebglaw.com

CONFIDENTIALITY NOTE: This communication is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this communication or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this communication in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies. Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, P.C. Attn: Marketing Department, 875 Third Avenue, New York, NY 10022. Be sure to include your email address if submitting your request via postal mail.

CAU Removal 000599

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION**

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 2018 CH 02497 |
| | : | |
| COMMUNITY ALTERNATIVES | : | Judge Anne Loftus |
| UNLIMITED, | : | Calendar: 15 |
| | : | |
| Defendant. | : | |

### ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER

This matter, having come to be heard on Defendant's Motion to Reconsider the Court's August 18, 2021 Order on Defendant's Section 2-619 Motion to Dismiss, and the Court being fully advised following the Parties' briefing and oral argument on February 8, 2022, it is ordered as follows:

1.     The Court's prior ruling on Defendant's Section 2-619 Motion to Dismiss incorrectly relied on 775 ILCS 5/7A-102(A)(3), which does not apply to the facts of this case.

2.     Compliance with 775 ILCS 5/7A-102(A-1)(1)(iv) is a condition precedent for the Illinois Department of Human Rights ("IDHR") to have jurisdiction over Plaintiff's claims.

3.     Because Plaintiff failed to comply with 775 ILCS 5/7A-102(A-1)(1)(iv), the IDHR lacked jurisdiction to review Plaintiff's charge and the IDHR had no authority to issue a right to sue notice.  Plaintiff therefore failed to exhaust her administrative remedies under the Illinois Human Rights Act and this Court lacks jurisdiction over this matter.

4.     Plaintiff indicated an intent to request leave to file an amended complaint under 29 U.S.C. § 1981.

5.     For these reasons, the Court reconsiders its August 18, 2021 Order and dismisses Plaintiff's Complaint with prejudice.

So Ordered: _____

The Honorable Anne Loftus

Dated: _____, 2022

Order prepared by:

Brenna R. McLean (Counsel for Defendant)
Epstein Becker & Green, P.C.
227 W. Monroe, Ste. 3250
(312) 499-1400
(brmclean@ebglaw.com)
Firm No. 18494

**Lesley Mickle**

| | |
|---|---|
| **From:** | Ruth Major |
| **Sent:** | Wednesday, February 9, 2022 2:39 PM |
| **To:** | Brenna R. McLean; calendar15.chancery@cookcountyil.gov |
| **Cc:** | Peter A. Steinmeyer |
| **Subject:** | RE: Abraham v. CAU - 2018 CH 02497 - Def.'s Proposed Order Granting Defendant's Motion for Reconsideration |
| **Attachments:** | Abraham v. CAU - Proposed Order Granting Motion to Reconsider (RM) (004).docx |

Dear Judge Loftus:

I added language to the end that the dismissal is without prejudice so that it was clear in the order.

Thank you,

Ruth

---

**From:** Ruth Major
**Sent:** Wednesday, February 9, 2022 2:17 PM
**To:** Brenna R. McLean <BRMcLean@ebglaw.com>; calendar15.chancery@cookcountyil.gov
**Cc:** Peter A. Steinmeyer <PSteinmeyer@ebglaw.com>
**Subject:** RE: Abraham v. CAU - 2018 CH 02497 - Def.'s Proposed Order Granting Defendant's Motion for Reconsideration

Dear Judge Loftus,

Please find attached Plaintiff's proposed order.

Thank you,

> Ruth I. Major
> The Law Offices of Ruth I. Major, P.C.
> 70 West Madison Street
> Suite 2020
> Chicago, Illinois 60602
> Tel. 773-412-8183 (Cell)
> Tel. 312-893-7522 (Direct)
> Tel. 312-893-7544 (Main)
> rmajor@major-law.com
> www.major-law.com

MajorLaw

This message may contain information that is attorney-client privileged, privileged under the attorney work product doctrine, or otherwise confidential. If you are not an intended recipient, use and/or disclosure of this message or the contents of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

CAU Removal 000601

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

**From:** Brenna R. McLean <BRMcLean@ebglaw.com>
**Sent:** Wednesday, February 9, 2022 2:04 PM
**To:** calendar15.chancery@cookcountyil.gov
**Cc:** Ruth Major <rmajor@major-law.com>; Peter A. Steinmeyer <PSteinmeyer@ebglaw.com>
**Subject:** Abraham v. CAU - 2018 CH 02497 - Def.'s Proposed Order Granting Defendant's Motion for Reconsideration

Good afternoon Judge Loftus,

The Parties were unable to reach a consensus regarding the language of the Proposed Order and have agreed to submit separate drafts of the Proposed Order for the Court's review.

Accordingly, please find Defendant's Proposed Order Granting Defendant's Motion for Reconsideration attached.

Thank you,

Brenna



**Brenna R. McLean** | Bio
t 312.499.1418 | f 312.845.1998
BRMcLean@ebglaw.com

227 W. Monroe Street, Suite 3250 | Chicago, IL 60606
t 312.499.1400 | www.ebglaw.com

CONFIDENTIALITY NOTE: This communication is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this communication or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this communication in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies. Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, P.C. Attn: Marketing Department, 875 Third Avenue, New York, NY 10022. Be sure to include your email address if submitting your request via postal mail.

CAU Removal 000602

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION**

| | | |
|---|---|---|
| **MICHELLE ABRAHAM,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 2018 CH 02497** |
| | : | |
| **COMMUNITY ALTERNATIVES** | : | **Judge Anna M. Loftus** |
| **UNLIMITED,** | : | **Calendar: 15** |
| | : | |
| **Defendant.** | : | |

<u>**ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER**</u>

This matter, having come to be heard on Defendant's Motion to Reconsider the Court's August 18, 2021 Order on Defendant's Section 2-619 Motion to Dismiss, and the Court being fully advised following the Parties' briefing and oral argument on February 8, 2022, it is ordered as follows:

1. The Court finds that its prior ruling on Defendant's Section 2-619 Motion to Dismiss incorrectly relied on 775 ILCS 5/7A-102(A-1)(3)(a), which the Court now finds does not apply to the facts of this case. The Court also relied on 775 ILCS 5/7A-102(C)(4) in denying the motion to dismiss which the Court now finds also does not apply because the Illinois Department of Human Rights (IDHR) did not conduct an investigation on Plaintiff's claim. The Court finds compliance with 775 ILCS 5/7A-102(A-1)(1)(iv) is a condition precedent for the IDHR to have jurisdiction over Plaintiff's claim.

2. The Court finds that Plaintiff failed to comply with 775 ILCS 5/7A-102(A-1)(1)(iv) by not submitting the EEOC's Right to Sue letter to the IDHR within 30 days and therefore the IDHR lacked jurisdiction over Plaintiff's charge and the IDHR had no authority to issue a right to sue notice. The Court finds that because the IDHR did not have jurisdiction Plaintiff therefore failed to exhaust her administrative remedies under the Illinois Human Rights Act (IHRA) and as a result this Court lacks jurisdiction over the claim under the IHRA.

3. The Court finds that the EEOC's investigation pursuant to the EEOC/IDHR Work Sharing Agreement was not an investigation as to the IDHR and did not serve to establish exhaustion as to the claim brought under the IHRA.

4. The Court finds that because it did not have jurisdiction over the IHRA claim it also could not consider whether conduct by the IDHR, including its correspondence to Plaintiff shortly after she filed her charge with the EEOC/IDHR, and the conduct of the EEOC, including agreeing to review its determination, created a factual issue as to equitable tolling that could not be resolved on a motion to dismiss.

1

CAU Removal 000603

FILED DATE: 6/6/2022 12:20 PM  2018CH02497

5.      The Court further finds that upon receiving the Right to Sue from the IDHR, Plaintiff's only remedy was to seek review of same with the Illinois Human Rights Commission (IHRC) relying on *Bumphus v. Illinois Human Rights Commission*, 2021 IL App (5th) 200037-U, at ¶ 17, and that plaintiff had no right to seek review in the circuit court or to litigate the merits of her claim under the IHRA in the circuit court. The Court finds that the language in 775 ILCS 5/7A-103(D), which limits a party's remedy upon dismissal by the IDHR under the IHRA to review by the IHRC and does not allow for review by the circuit court, did not aid in the interpretation of 775 ILCS 5/7A-102 because 775 ILCS 5/7A-103(D) involves settlement.

6.      Plaintiff indicated an intent to file an amended complaint under Section 1981. The Court responded it did not believe it had jurisdiction to permit the amendment but at the time was unable to cite to any specific authority.

7.      For these reasons, the Court reconsiders its August 18, 2021 Order and dismisses Plaintiff's Complaint without prejudice.

So Ordered: _____

The Honorable Anna M. Loftus

Dated: _____, 2022

Order prepared by:

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois  60602
Tel.   312-893-7522 (Direct)
Tel.   312-893-7544 (Main)
rmajor@major-law.com
Attorney No. 45037

CAU Removal 000604

FILED DATE: 6/6/2022 12:20 PM    2018CH02497

FILED
6/6/2022 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18170833

# EXHIBIT D



FILED DATE: 6/6/2022 12:20 PM 2018CH02497

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 2018 CH 02497 |
| | : | |
| COMMUNITY ALTERNATIVES | : | Judge Anne Loftus |
| UNLIMITED, | : | Calendar: 15 |
| | : | |
| Defendant. | : | |

### <u>ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER</u>

This matter, having come to be heard on Defendant's Motion to Reconsider the Court's August 18, 2021 Order on Defendant's Section 2-619 Motion to Dismiss, and the Court being fully advised following the Parties' briefing and oral argument on February 8, 2022,

**IT IS HEREBY ORDERED**:

(1) The Court's prior ruling on Defendant's Section 2-619 Motion to Dismiss incorrectly relied on 775 ILCS 5/7A-102(A)(3), which does not apply to the facts of this case.

(2) Compliance with 775 ILCS 5/7A-102(A-1)(1)(iv) is a condition precedent for the Illinois Department of Human Rights ("IDHR") to have jurisdiction over Plaintiff's claims.

(3) Because Plaintiff failed to comply with 775 ILCS 5/7A-102(A-1)(1)(iv), the IDHR lacked jurisdiction to review Plaintiff's charge and the IDHR had no authority to issue a right to sue notice. Plaintiff therefore failed to exhaust her administrative remedies under the Illinois Human Rights Act and this Court lacks jurisdiction over this matter.

(4) Plaintiff indicated an intent to request leave to file an amended complaint under 29 U.S.C. § 1981.

(5) For these reasons, the Court reconsiders its August 18, 2021 Order and dismisses Plaintiff's Complaint with prejudice.

ENTERED:

_Anna M. Loftus_
Judge Anna M. Loftus, No. 2102

CAU Removal 000606

FILED DATE: 6/6/2022 12:20 PM   2018CH02497

Order prepared by:

Brenna R. McLean (Counsel for Defendant)
Epstein Becker & Green, P.C.
227 W. Monroe, Ste. 3250
(312) 499-1400
(brmclean@ebglaw.com)
Firm No. 18494

2

CAU Removal 000607



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE ABRAHAM, | : | |
| | : | |
| Plaintiff, | : | **Case No.: 2018 CH 02497** |
| | : | |
| v. | : | **Judge Anna Loftus** |
| | : | |
| COMMUNITY ALTERNATIVES | : | **Calendar: 15** |
| UNLIMITED, | : | |
| | : | |
| Defendant. | : | |

### ORDER GRANTING PLAINTIFF'S MOTION
### FOR LEAVE TO FILE AMENDED COMPLAINT

This matter, having come to be heard on Plaintiff's Motion for Leave to File Amended Complaint, and the Court being fully advised following the Parties' briefing and oral argument on June 27, 2022,

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Leave to File Amended Complaint is granted for the reasons stated on the record;

2. Plaintiff shall file an amended complaint on or before **July 11, 2022**;

3. Defendant shall answer or otherwise plead to the amended complaint on or before **August 8, 2022**; and

4. This matter is continued for status to **August 22, 2022 at 10:00 a.m**. via Zoom Video Conference – Zoom Meeting ID: 955 3557 3920 (no password required).

ENTERED:

Anna M. Loftus

Judge Anna M. Loftus, No. 2102

Page 1 of 2

Order prepared by:

Ruth I. Major (Counsel for Defendant)
The Law Offices of Ruth I. Major, P.C.
77 W. Wacker Dr., Ste. 4500
(312) 893-7544
(rmajor@major-law.com)
Firm No. 45037

CAU Removal 000609

FILED
7/11/2022 4:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH02497
Calendar, 15
18623022

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **MICHELLE ABRAHAM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 2018-CH-02497** |
| | ) |
| **COMMUNITY ALTERNATIVES** | )    **Hon. Anna M. Loftus** |
| **UNLIMITED,** | ) |
| | ) |
| **Defendant.** | ) |

### AMENDED COMPLAINT

Plaintiff, Michelle Abraham, by her attorneys, and for her Amended Complaint against Defendant, Community Alternatives Unlimited ("CAU"), states as follows:

### INTRODUCTION

1.    Ms. Abraham was employed by CAU for over 17 years, until she was constructively discharged in or around December 2016. She was well-regarded by her co-workers and was promoted periodically within the company.

2.    In March 2016, she was suddenly placed on a PIP just days after sharing information which was passed along to her managers about the racially derogatory comments that were commonly made at CAU and the discriminatory treatment that Black employees were experiencing in their working conditions. Throughout the PIP process, she was bullied and subjected to treatment that her co-workers who had not reported discriminatory conduct did not receive and the PIP was extended repeatedly. Following her successful completion of the PIP, Ms. Abraham was denied the opportunity to have a year-end evaluation and as a result was denied a raise at the beginning of 2017.

FILED DATE: 7/11/2022 4:16 PM    2018CH02497

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

3.      Under these circumstances, she was harassed continuously from the time she reported her concerns until the time of her constructive discharge in retaliation for reporting discrimination on the basis of race and national origin in her workplace in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## PARTIES

4.      Ms. Abraham is a citizen and resident of the State of Illinois.

5.      Defendant CAU is a not-for-profit company incorporated in Illinois in 1980, providing services to individuals with disabilities, with its principal place of business in Chicago, Illinois. At all times material to this Complaint, CAU was a citizen of Illinois.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter as the Circuit Court of Cook County has jurisdiction over section 1981 claims, each party to the Complaint is a citizen of Illinois or, in the case of CAU, is a corporation doing business in Illinois, organized under the laws of the State of Illinois. 735 ILCS §5/2-209.

7.      Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and 735 ILCS § 5/2-102 because part of the transaction out of which the cause of action arose took place within Cook County, Illinois, and because CAU is considered a resident of Cook County, Illinois, through being authorized to transact business in Illinois and doing business in Cook County.  Ms. Abraham's work was largely performed in Cook County and CAU's retaliatory acts took place in Cook County as well.

## FACTS

8.      Ms. Abraham was hired by CAU on or around November 2, 1999 as a case manager. In that role, she typically managed about 75 cases at a time, dealing with disabled

CAU Removal 000611

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

individuals and their families to assist them in procuring the needed medical and social services, and was routinely assigned time- and labor-intensive cases which were too difficult for other case managers to handle. All of her performance evaluations, when she received formal performance evaluations, were positive. Initially, her work consisted of dealing with individuals who were living in group homes, as part of the Bogard unit at CAU.

9.      When the Bogard unit's staff was decreased due to a declining case load, Ms. Abraham was transferred to the Community department at CAU, where she continued in her role as a case manager. Ms. Abraham was deemed valuable to the company and was told her skill set meant that she would work well in the same role, just in another department. The Community department integrated individuals with developmental disabilities within their communities to obtain needed services and involved a lot of one-on-one contact between the case managers and the clients, which Ms. Abraham was used to from her work on the time- and labor-intensive cases from the Bogard unit.

10.     In 2001, she was transferred to the Individual Service and Support Advocacy Unit ("ISSA"), which assisted in providing services for people with intellectual disabilities. There she performed case management work for CAU clients who received services that were funded through Medicaid. In this role, Ms. Abraham continued to receive positive performance reviews, up through the time she applied and received for a promotion to manager in 2007.

11.     In 2007, she was promoted to the position of Program Manager for ISSA. She worked in that role for nearly a decade. She was known as a strong advocate for her clients, supervising the work of the case managers in the Department including writing performance evaluations for those she supervised. She also participated in interviews for new hires in the Department and trained new hires on how to perform work for the ISSA. She served as a resource

CAU Removal 000612

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

for her team, frequently the go-to person when complicated issues arose. Ms. Abraham held small group meetings at least once per month to manage her staff. She continued to receive positive performance reviews from her supervisors in this role as well.

12.     In 2009, she was transferred to Home Based Services ("HBS"), where she performed the Program Manager role in that department, performing the same tasks. In this position, she reported to HBS Department Director, Jennifer Rutka. Though Ms. Rutka insisted that everyone's performance reviews note areas in which an employee could improve, every year, Ms. Abraham still received positive performance reviews, even in her first review completed after moving to HBS, where she had double the workload of other Program Managers for the two-month period when she was transitioning between the ISSA and HBS Departments.

13.     It was during her time as Program Manager in HBS that Ms. Abraham began to hear racially discriminatory commentary from her co-workers and especially from her supervisor, Ms. Rutka, who was known for being rude when speaking about people who did not do things in the exact way she wanted them to, commonly referring to such situations as involving people who would not "comply." Ms. Abraham kept her thoughts and feelings about these remarks to herself out of concern that reporting such conduct would not be well taken. She simply continued to supervise her staff, and advocate for her clients' best interests.

14.     Upon information and belief, Joanell Voigt, Chief Executive Officer, was known for denying the African American employees the chance to telecommute, while other non-African American employees had that option. The telecommuting option was supposed to be seniority-based, but the African American employees were skipped over when it was their turn to be given the telecommuting option.

CAU Removal 000613

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

15.     On or around March 17, 2016, Ms. Abraham was approached by the HR Director, Ms. Biermann, who said Ms. Abraham was due for a training session. Rather than training, however, the session consisted of Ms. Biermann asking Ms. Abraham numerous questions about HBS over the course of an approximately three-hour long meeting. The "training" meeting appeared to be a ruse to give Ms. Biermann the opportunity to gather information about Ms. Abraham.

16.     Though she initially was hesitant to engage in the discussion, Ms. Abraham eventually shared with Ms. Biermann the inappropriate, discriminatory language used by her Director, Jennifer Rutka, in regard to Ms. Rutka's co-workers, supervisors, clients and their families. For example, Ms. Abraham shared that on another occasion, Ms. Rutka referenced a government agency's financial policies by saying that the agency was likely to "Jew us down." Ms. Abraham also shared that such comments were made about others within CAU, as part of the instructions supervisors other than Ms. Abraham gave to subordinates in HBS about how to deal with other departments within CAU. Ms. Abraham also shared her concern subjecting non-White employees to different working conditions, as only the White staff members were permitted to work remotely, while non-White staff members were not even set up to work remotely nor encouraged to do so. Ms. Abraham also shared that the harassing behavior of her supervisors in the department caused her to experience a significant amount of stress. She also shared that in the past Ms. Rutka had engaged in retaliatory conduct and that Ms. Abraham would not participate in such conduct.

17.     Ms. Abraham reported during a March 17, 2016 HR meeting, *inter alia,* that Ms. Abraham was constantly hearing racially discriminatory remarks from Ms. Rutka, such as when she stated that Mexicans start fires because they heat tortillas up over a fire.

CAU Removal 000614

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

18.     Ms. Abraham also reported during the March 17, 2016 HR meeting that her direct manager, Ms. Russo, had come into Ms. Abraham's office to investigate the work of Candace White, an African American woman, while Ms. White was out of the office, including reviewing Ms. White's notes in her desk, signs Ms. White may have engaged in fraudulent visits, and to look for things that looked like Ms. White was falsifying records. Ms. Abraham was Ms. White's supervisor and had not seen any indication that Ms. White had engaged in any of this activity. It appeared to Ms. Abraham to be a fishing expedition to see if Ms. Abraham could find something on Ms. White. Ms. Abraham had not been asked to engage in such conduct in regard to her White subordinates. When Ms. Abraham refused, as this was outside of her job duties and was not how CAU managed staff, Ms. Russo removed Ms. Abraham as Ms. White's supervisor.

19.     The very next day, on March 18, 2016, during a managers' meeting that Ms. Abraham attended, Ms. Rutka baited Ms. Abraham into a discussion about the comments Ms. Abraham made to Ms. Biermann the day before and about paperwork Ms. Abraham was supposedly behind in completing. Ms. Abraham stated that she would be caught up on the paperwork within two weeks. The discussion then became very emotional between Ms. Abraham and Ms. Marlene Russo, Ms. Abraham's intermediate supervisor, because Ms. Russo was screaming at Ms. Abraham. Eventually, after Ms. Abraham broke into tears, Ms. Rutka ended the meeting.  This was the first time Ms. Abraham was subjected to such treatment.

20.     On or around March 21, 2016, just four days after Ms. Abraham reported the unlawful discriminatory conduct of CAU, Ms. Abraham was called into a meeting in the HR office, attended by Ms. Rutka, Ms. Russo, and Ms. Biermann. Ms. Rutka stated that Ms. Abraham was being placed on a Performance Improvement Plan ("PIP"), and then immediately asked if she was going to resign. When Ms. Abraham said she wouldn't resign, the meeting continued with Ms.

CAU Removal 000615

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

Biermann stating that they would proceed with the PIP. Ms. Rutka remarked that she did not want to "waste time" with the PIP if Ms. Abraham "was going to quit in two weeks."

21.     During the course of the multiple-hour meeting about the PIP, Ms. Abraham was subjected to harsh commentary about the supposed deficiencies with her work, deficiencies which had never been expressed to Ms. Abraham before this meeting. She asked questions to clarify what was being communicated to her about her role, because the information provided in association with the PIP so greatly deviated from the standard operating procedures of CAU, which she had been using for over 15 years at that time, and which she had been following when she received all of her positive performance reviews in years past.

22.     In response to her clarifying questions, Ms. Abraham was rudely asked whether she had any common sense and condescending questions such as, "you've been a manager for how long?" She was informed that Ms. Rutka thought staff should not be coming to Ms. Abraham to ask questions if Ms. Abraham doesn't know the answers to their questions, and if not, then "how can [she] manage?" She was also informed that CAU was questioning whether she could be trusted in her Program Manager role in HBS.

23.     The PIP itself addressed supposed problems which were in fact ongoing issues that were commonly encountered in case management work by all employees working in this area, including issues related to completing the voluminous paperwork involved in case management, and which typically would not have merited placing someone on a PIP. When Ms. Abraham needed to speak to a case manager she supervised about similar issues in the past, she would address the issues with the employee, and would not place the employee on a PIP. To Ms. Abraham's knowledge placing a manager on a PIP for issues such as the ones raised in her PIP was unprecedented.

CAU Removal 000616

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

24.     The PIP also placed unrealistically short time frames on the completion of the objectives of the PIP, especially in consideration of the fact that the PIP demanded Ms. Abraham deviate from the standard operating procedures she had been using for over 15 years.

25.     These deadlines were known to be extreme by others at CAU. Ms. Abraham overheard other senior managers speaking one day about the deadlines imposed for the completion of her paperwork. The senior managers were concerned that CAU might hold them to the same standards, and they were commenting that they did not know how they would get their paperwork done if the same deadlines that were imposed on Ms. Abraham were to be imposed on their work. They had no need to be concerned because only Ms. Abraham, and not her counterparts who, unlike her, had not reported unlaw race and national origin discrimination, was being subjected to these heightened, unrealistic standards.

26.     Within a few days of receiving the PIP, Ms. Abraham began to receive calls from her clients and their families, who reported that they had been called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. Defendant was now engaging in the same fishing expedition with Ms. Abraham that it had engaged in with Ms. White, trying to come up with something to hold against Ms. Abraham in retaliation for her reporting unlawful discrimination.

27.     One such call was placed to the Executive Director of an agency HBS worked with, whose child was among the individuals Ms. Abraham assisted with services. The Executive Director mentioned that he told whoever called that Ms. Abraham did wonderful work, and that he was surprised to have received such a call because Ms. Abraham was doing great work for his child.

CAU Removal 000617

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

28.     The PIP was supposed to run for thirty days, after which Ms. Abraham's performance would be reevaluated to determine if she had met the goals set by the PIP. Instead, the PIP period was extended multiple times, so that it actually ran for 90 days. Each time the PIP was extended, new false complaints about Ms. Abraham's performance were added, in an apparent attempt to convince her to stop fighting the PIP and to just resign, as Ms. Rutka had suggested in the initial PIP meeting in March 2016.

29.     While on the PIP, Ms. Abraham was subjected to extreme scrutiny, as she was informed that her "comings and goings" were being monitored by her supervisors, implying that they were keeping her under surveillance while she was at work. She also had her files audited and re-audited, sometimes through multiple managers reviewing the same files over and over again, examining aspects of the files that dated back several months, to dates before the PIP period began.

30.     During the PIP period, Ms. Abraham frequently worked late into the evening, sometimes as late as 11:00 p.m., to try to complete all of her paperwork and meet the unrealistic deadlines the PIP provided for the completion of her work. Because Ms. Abraham was salaried, she was not paid any overtime for the extra hours she worked to accomplish the requirements set for her in the PIP.

31.     In June 2016, Ms. Abraham was deemed to have successfully completed the PIP.

32.     However, Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with, the people they believed she might confide in, and asked these people questions about her personal life, outside of work, in an attempt to harass her and dig up any information they could use to push her out of the company.

CAU Removal 000618

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

33.     Following the completion of the PIP, Ms. Abraham was accused multiple times of demanding a promotion, something she never did. She was also threatened that she would be demoted.

34.     As the end of 2016 approached, CAU refused to provide Ms. Abraham with an annual performance review, contrary to CAU's policies and procedures, which meant that she could not receive a raise in 2017. Instead of conducting a performance review, CAU stated that the PIP took the place of an annual performance review, even though the PIP was *successfully* completed in June, and half of the year still remained at the time that the PIP was completed. Ms. Biermann stated that this should be acceptable to Ms. Abraham because annual reviews only encouraged managers to discuss negative aspects of an individual's performance, despite the fact that Ms. Abraham's prior annual performance reviews had been positive up to that point in time.

35.     Under these circumstances, Ms. Abraham went to work every day because she loved her work and enjoyed working with and for her clients. She was subjected to extreme stress and emotional distress on a daily basis, though, due to CAU's treatment of her. Though it was difficult to leave the career she had built over the course of 17 years, Ms. Abraham was subjected to such conditions in her everyday life at CAU that she eventually resigned in December of 2016 because CAU was relentless in its unceasing efforts  force her to resign her position. She provided 30 days of notice to ease the transition of her clients to other staff at CAU. Not surprisingly, CAU made no effort to talk Ms. Abraham into staying.

36.     Finally, after Ms. Biermann learned that Ms. Abraham had filed a Charge of Discrimination related to Ms. Biermann's encounters with CAU, she contacted Ms. Abraham and suggested that she would be taking leave from her position at CAU because she had come to

10

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

experience similar retaliation for looking into the complaint made by Ms. Abraham and the statements shared by Ms. Abraham in the March 2016 meeting.

### COUNT I - RETALIATION FOR OPPOSING UNLAWFUL CONDUCT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 42 U.S.C. § 1981

37.     Plaintiff restates and realleges by reference paragraphs 1 through 36 as paragraph 37 of Count I.

38.     Section 1981 prohibits discrimination in connection with contracts on the basis of race or national origin. Section 1981 also prohibits retaliation against individuals who, in good faith and reasonable belief, report conduct believed to be a violation of Section 1981.

39.     Ms. Abraham engaged in protected activities when she reported to Human Resources on March 17, 2016, the Defendant's unlawful discriminatory treatment of African American employees and Defendant's unlawful discriminatory treatment of clients who are Mexican.

40.     CAU violated Section 1981 when it terminated Ms. Abraham for exercising her right pursuant to Section 1981 to make and enforce contracts of the at-will contracts between CAU and its African American employees and the contracts between CAU and its Mexican clients.

41.     CAU retaliated against Ms. Abraham for her protected activity and took continuous action against her by placing her, and not her similarly situated colleagues who had not reported race discrimination, on an unwarranted PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to force her to resign.

42.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did

11

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

43.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by Section 1981 had their clients and clients' families called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

44.     Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 had PIPs which were supposed to last for thirty days but were extended to the point that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

45.     Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being

CAU Removal 000621

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

46.     Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were subjected to mistreatment by their supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

47.     Ms. Abraham was falsely accused of demanding a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were falsely accused of demanding a promotion or threatened that they would be demoted.

48.     Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by Section 1981 were denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

49.     Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where the terms and conditions Ms. Abraham's

CAU Removal 000622

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

work environment were so altered that she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by Section 1981 were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

50.      As a direct and proximate result of the Defendant's conduct, Ms. Abraham was subjected to adverse employment actions including a hostile work environment, the denial of a raise, and a constructive discharge, leading her to suffer damages, including but not limited to, pain and suffering, humiliation, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

**WHEREFORE** Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A.      An award of damages for lost wages, including back pay and front pay;

B.      An award of compensatory damages including pain and suffering and emotional distress;

C.      An award of pre-and post-judgment interest;

D.      An award of punitive damages to be determined by the trier of fact;

E.      An award of attorney's fees and costs; and

F.      Such other and further relief as may be just in law and in equity.

**This count was dismissed by this Court on February 9, 2022 but is included in this Amended Complaint solely to preserve for the purposes of a possible appeal pursuant to Illinois controlling precedent.** ***Bonhomme v. St. James***, **2012 IL 112393, ¶ 19, 970 N.E.2d 1, 5–6.**

UNLAWFUL RETALIATION
FOR OPPOSING UNLAWFUL CONDUCT
IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

14

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

51.     Plaintiff restates and realleges by reference paragraphs 1 through 50 as paragraph 51 of this Count.

52.     CAU is an employer as defined by the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.*, which prohibits retaliation for opposing unlawful conduct.

53.     Ms. Abraham engaged in activity that is protected by the Illinois Human Rights Act when she reported to HR the racist, sexist, anti-Semitic, and homophobic conduct and statements of her co-workers in her Department.

54.     CAU placed Ms. Abraham on a PIP, citing common issues experienced by case managers as performance deficiencies and giving her unrealistic expectations and time frames to achieve those expectations, in an effort to convince her to resign. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to similar unfavorable terms and conditions in employment as Ms. Abraham designed to force her to resign.

55.     Ms. Abraham was subjected to harsh commentary and demeaning questions during the meeting to discuss the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to harsh commentary and demeaning questions during a meeting to discuss being placed on a PIP.

56.     Ms. Abraham's clients and their families were called by a woman who would not identify herself, asking about whether Ms. Abraham behaved appropriately in working with them, and whether she actually visited their homes for client visits as she was supposed to do. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had their clients and clients' families

CAU Removal 000624

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

called by an unidentified woman who asked whether they behaved appropriately in working with the clients and whether they actually visited the clients' homes as they were supposed to do.

57.     Ms. Abraham's PIP was supposed to last for thirty days but was extended to the point that it lasted for ninety days, and each time it was extended, new false performance deficiencies were added to push Ms. Abraham into resigning. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act had PIPs which were supposed to last for thirty days but were extended to the point that they lasted for ninety days, and each time they were extended, new false performance deficiencies were added to push the employees into resigning.

58.     Ms. Abraham was subjected to extreme scrutiny while on the PIP, in that her "comings and goings" were being monitored by her supervisors, and she had her files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before the PIP was issued. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme scrutiny while on their PIPs, in that their "comings and goings" were being monitored by their supervisors, nor did they have their files audited and re-audited by multiple managers who repeatedly reviewed the same files, examining instances that dated back to before their PIPs were issued.

59.     Ms. Abraham was still subjected to mistreatment by her supervisors at CAU, who proceeded to interview the people Ms. Abraham worked with to investigate her personal life as part of their continued effort to push her to resign, after the successful completion of the PIP. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to mistreatment by their

16

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

supervisors at CAU, who proceeded to interview the people they worked with to investigate their personal life as part of the company's continued effort to push them to resign, after the successful completion of their PIPs.

60.   Ms. Abraham was falsely accused of demanding a promotion and was also threatened that she would be demoted. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act were falsely accused of demanding a promotion or threatened that they would be demoted.

61.   Ms. Abraham was denied the chance to have a 2016 performance review, allegedly because of the PIP which was completed 6 months earlier, which meant that she could not receive a raise in 2017. None of Ms. Abraham's similarly situated co-workers who did not report of discriminatory comments and conduct prohibited by the Illinois Human Rights Act was denied the chance to have a performance review, allegedly because of a PIP which was completed 6 months earlier, which meant that they could not receive a raise in the following year.

62.   Ms. Abraham was subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of her, to the point where she was forced to resign. None of Ms. Abraham's similarly situated co-workers who did not report discriminatory comments and conduct prohibited by the Illinois Human Rights Act were subjected to extreme stress and emotional distress on a daily basis through CAU's treatment of them, to the point where they were forced to resign.

63.   As a direct and proximate result of the Defendant's conduct, Ms. Abraham has suffered damages, including but not limited to, pain and suffering, lost wages, adverse effects on her future career and earnings, and attorney's fees and costs.

CAU Removal 000626

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

**WHEREFORE** Plaintiff Ms. Abraham respectfully requests the entry of judgment in her favor and against Defendant CAU as follows:

A.      An award of damages for lost wages, including back pay and front pay;

B.      An award of compensatory damages including pain and suffering and emotional distress;

C.      An award of pre-judgment interest;

D.      An award of punitive damages;

E.      Attorneys' fees and costs; and

F.      Such other and further relief as may be just in law and in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: July 11, 2022

**MICHELLE ABRAHAM**

/s/ Ruth I. Major
One of Her Attorneys

Ruth I. Major
Sunyoung Cho
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

CAU Removal 000627

FILED DATE: 7/11/2022 4:16 PM   2018CH02497

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on July 11, 2022, she caused to be served a copy

of the foregoing memorandum of law via email and the Court's electronic filing system on:

Peter A. Steinmeyer
Brennan McLean
Epstein Becker & Green, P.C.
227 W. Monroe Street, Suite 3250
Chicago, IL 60606


/s/_Ruth I. Major_____

CAU Removal 000628



| Case Information Summary for Case Number |
|---|
| 2018-CH-02497 |

Filing Date: 02/23/2018      Case Type: General Chancery

Division: Chancery Division      District: First Municipal

Ad Damnum: $0.00      Calendar: 15

### Party Information

**Plaintiff(s)**      **Attorney(s)**

ABRAHAM, MICHELLE

**Defendant(s)**    **Defendant Date of Service**    **Attorney(s)**

COMMUNITY,
ALTERNATIVES UN

### Case Activity

Activity Date: 01/17/2019      Participant:

File Amendment Or Additional Or Amended Pleadings-Allowed

Judge: LOFTUS, ANNA M.

Activity Date: 01/29/2019      Participant:

Courts Motion This Case Is Taken Under Advisement

Judge: LOFTUS, ANNA M.

Activity Date: 02/09/2022      Participant:

Notice Of Motion Filed

Activity Date: 02/09/2022      Participant:

Notice Of Motion Filed

Activity Date: 02/09/2022      Participant:

Motion Filed

Activity Date: 02/09/2022      Participant: COMMUNITY, ALTERNATIVES UN

Strike Or Vacate An Order - Allowed -

Judge: LOFTUS, ANNA M.

Activity Date: 02/09/2022                    Participant: ABRAHAM, MICHELLE

Voluntary Dismissal, Non-Suit Or Dismissed By Agreement

Judge: LOFTUS, ANNA M.

Activity Date: 02/22/2022                    Participant: ABRAHAM, MICHELLE

File Amendment Or Additional Or Amended Pleadings-Allowed

Judge: LOFTUS, ANNA M.

Activity Date: 02/22/2022                    Participant: ABRAHAM, MICHELLE

Set Briefing Schedule - Allowed -

Judge: LOFTUS, ANNA M.

Activity Date: 02/22/2022                                    Participant:

Courtesy Copies Required - Allowed

Activity Date: 02/22/2022                                    Participant:

Case Assigned to Zoom Hearing - Allowed

Activity Date: 02/22/2022                    Participant: ABRAHAM, MICHELLE

Amend Complaint Or Petition - Continued -

Date: 06/27/2022
Court Time: 1030                             Judge: LOFTUS, ANNA M.
Court Room: 2410

Activity Date: 02/23/2018                    Participant: ABRAHAM, MICHELLE

General Chancery Filed (Jury Demand)

Court Fee: 598.00

Activity Date: 02/23/2018          Participant: COMMUNITY, ALTERNATIVES UN

Summons Issued And Returnable

Activity Date: 02/23/2018                    Participant: ABRAHAM, MICHELLE

Case Electronically Filed

Activity Date: 02/23/2018                                    Participant:

New Case Filing

Date: 12/07/2021

Court Time: 1000

Court Room: 2410

Activity Date: 02/26/2018                    Participant: ABRAHAM, MICHELLE

Case Set On Case Management Call

Date: 06/26/2018

Court Time: 1000                              Judge: PANTLE, KATHLEEN M

Court Room: 2410

Activity Date: 03/23/2018                    Participant: ABRAHAM, MICHELLE

Alias Summons Issued And Returnable

Court Fee: 6.00

Activity Date: 04/12/2018            Participant: COMMUNITY, ALTERNATIVES UN

Alias Summons - Retd P.S.

Date: 04/12/2018

Activity Date: 04/18/2022                                    Participant:

Memorandum Filed

Activity Date: 05/10/2018            Participant: COMMUNITY, ALTERNATIVES UN

Appearance Filed - Fee Paid -

Court Fee: 237.00

Activity Date: 05/10/2018            Participant: COMMUNITY, ALTERNATIVES UN

Appearance Filed - No Fee Paid -

Activity Date: 05/10/2018            Participant: COMMUNITY, ALTERNATIVES UN

Affidavit Filed

Activity Date: 05/10/2018            Participant: COMMUNITY, ALTERNATIVES UN

Certificate Of Mailing Filed

Activity Date: 05/10/2018            Participant: COMMUNITY, ALTERNATIVES UN

Exhibits Filed

Activity Date: 05/10/2018                    Participant: COMMUNITY, ALTERNATIVES UN

Notice Of Motion Filed

Activity Date: 05/10/2018                    Participant: COMMUNITY, ALTERNATIVES UN

Memorandum Of Law Filed

Activity Date: 05/10/2018                    Participant: COMMUNITY, ALTERNATIVES UN

Motion To Dismiss Filed

Activity Date: 05/16/2018                    Participant: ABRAHAM, MICHELLE

Continuance - Allowed -

Date: 07/26/2018
Court Time: 1000                             Judge: PANTLE, KATHLEEN M

Activity Date: 05/16/2018                    Participant: COMMUNITY, ALTERNATIVES UN

Set Briefing Schedule - Allowed -

Judge: PANTLE, KATHLEEN M

Activity Date: 06/06/2022                                          Participant:

Exhibits Filed

Activity Date: 06/06/2022                                          Participant:

Exhibits Filed

Activity Date: 06/06/2022                                          Participant:

Exhibits Filed

Activity Date: 06/06/2022                                          Participant:

Exhibits Filed

Activity Date: 06/06/2022                                          Participant:

Answer/Response/Reply

Activity Date: 06/06/2022                                          Participant:

Notice Of Filing Filed

Activity Date: 06/20/2018                              Participant: ABRAHAM, MICHELLE

Exhibits Filed

Activity Date: 06/20/2018                              Participant: ABRAHAM, MICHELLE

Memorandum Of Law Filed

Activity Date: 06/20/2018                              Participant: ABRAHAM, MICHELLE

Notice Of Filing Filed

Activity Date: 06/27/2022                              Participant: ABRAHAM, MICHELLE

Continuance - Allowed -

Date: 08/22/2022

Court Time: 1000                                        Judge: LOFTUS, ANNA M.

Court Room: 2410

Activity Date: 06/27/2022                    Participant: COMMUNITY, ALTERNATIVES UN

File Appearance Or Jury Demand, Answer Or Plead - Allowed -

Judge: LOFTUS, ANNA M.

Activity Date: 06/27/2022                              Participant: ABRAHAM, MICHELLE

Amend Complaint Or Petition - Allowed -

Judge: LOFTUS, ANNA M.

Activity Date: 06/27/2022                              Participant:

Case Assigned to Zoom Hearing - Allowed

Activity Date: 07/11/2018                              Participant:

Certificate Of Mailing Filed

Activity Date: 07/11/2018                              Participant:

Answer Filed

Activity Date: 07/11/2022                              Participant:

Amendment To Complaint Filed

Activity Date: 07/26/2018                              Participant:

Continuance - Allowed -

Date: 08/30/2018

Court Time: 1000                                    Judge: FLYNN, PETER

Court Room: 2410


Activity Date: 07/26/2018                                    Participant:

Agreed Order Entered

Judge: FLYNN, PETER


Activity Date: 07/26/2018                                    Participant:

Agreed Order Entered

Judge: FLYNN, PETER


Activity Date: 08/18/2021                                    Participant:

Continuance - Allowed -

Date: 09/29/2021

Court Time: 1000                                    Judge: LOFTUS, ANNA M.

Court Room: 2410


Activity Date: 08/18/2021                                    Participant:

File Appearance Or Jury Demand, Answer Or Plead - Allowed -

Date: 09/22/2021

Court Room: 2410                                    Judge: LOFTUS, ANNA M.


Activity Date: 08/18/2021                                    Participant:

Case Assigned to Zoom Hearing - Allowed

Date: 09/29/2021

Court Time: 1000                                    Judge: LOFTUS, ANNA M.

Court Room: 2410


Activity Date: 08/18/2021                                    Participant:

StrikeOrWithdrawComplaint,AmendedComplaintOrPortion Denied

Judge: LOFTUS, ANNA M.


Activity Date: 08/30/2018                                    Participant:

StrikeOrWithdrawComplaint,AmendedComplaintOrPortion Cont

Date: 10/10/2018                                    Judge: LOFTUS, ANNA M.

Court Time: 1030

Court Room: 2410

Activity Date: 09/17/2021                                          Participant:

Motion Scheduled (Motion Counter Only)

Date: 09/29/2021
Court Time: 0930

Activity Date: 09/17/2021                    Participant: COMMUNITY, ALTERNATIVES UN

Reconsider(Set For Motion Hearing)

Activity Date: 09/17/2021                    Participant: COMMUNITY, ALTERNATIVES UN

Notice Of Motion Filed

Activity Date: 09/17/2021                    Participant: COMMUNITY, ALTERNATIVES UN

Memorandum In Support Of Motion Filed

Activity Date: 09/22/2021                    Participant: COMMUNITY, ALTERNATIVES UN

Answer To Complaint Filed

Activity Date: 09/29/2021                                          Participant:

File Amendment Or Additional Or Amended Pleadings-Allowed

Date: 11/17/2021                              Judge: LOFTUS, ANNA M.
Court Room: 2410

Activity Date: 09/29/2021                                          Participant:

File Amendment Or Additional Or Amended Pleadings-Allowed

Date: 12/07/2021                              Judge: LOFTUS, ANNA M.
Court Room: 2410

Activity Date: 09/29/2021                                          Participant:

Courtesy Copies Required - Allowed

Judge: LOFTUS, ANNA M.

Activity Date: 09/29/2021                                          Participant:

Case Assigned to Zoom Hearing - Allowed

Date: 02/08/2022                              Judge: LOFTUS, ANNA M.
Court Time: 1030
Court Room: 2410

Activity Date: 09/29/2021                                    Participant:

Strike Or Vacate An Order - Continued -

Date: 02/08/2022
Court Time: 1030                              Judge: LOFTUS, ANNA M.
Court Room: 2410


Activity Date: 10/09/2018                                    Participant:

Motion Scheduled (Motion Counter Only)

Date: 10/16/2018
Court Time: 0930


Activity Date: 10/09/2018                Participant: ABRAHAM, MICHELLE

Exhibits Filed


Activity Date: 10/09/2018                Participant: ABRAHAM, MICHELLE

Notice Of Motion Filed


Activity Date: 10/09/2018                Participant: ABRAHAM, MICHELLE

Motion Filed


Activity Date: 10/10/2018                                    Participant:

Set Briefing Schedule - Allowed -

Judge: FLYNN, PETER


Activity Date: 10/10/2018                                    Participant:

StrikeOrWithdrawComplaint,AmendedComplaintOrPortion Cont

Date: 01/17/2019
Court Time: 1030                              Judge: FLYNN, PETER
Court Room: 2410


Activity Date: 10/10/2018                                    Participant:

StrikeOrWithdrawComplaint,AmendedComplaintOrPortion Cont

Date: 01/29/2019
Court Time: 1030                              Judge: FLYNN, PETER
Court Room: 2410


Activity Date: 10/11/2018                                    Participant:

Strike From The Call - Allowed -

Date: 10/15/2018

Court Time: 0930                                        Judge: FLYNN, PETER

Court Room: 2410


Activity Date: 10/11/2018                                        Participant:

Agreed Order Entered

Judge: FLYNN, PETER


Activity Date: 10/11/2018                                        Participant:

Agreed Order Entered

Judge: FLYNN, PETER


Activity Date: 10/11/2018                                        Participant:

StrikeOrWithdrawComplaint,AmendedComplaintOrPortion Cont

Date: 01/17/2019

Court Time: 1030                                        Judge: FLYNN, PETER

Court Room: 2410


Activity Date: 10/13/2021                        Participant: ABRAHAM, MICHELLE

Answer To Affirmative Defense Filed


Activity Date: 10/13/2021                        Participant: ABRAHAM, MICHELLE

Notice Of Filing Filed


Activity Date: 10/24/2018                        Participant: COMMUNITY, ALTERNATIVES UN

Answer/Response/Reply


Activity Date: 10/31/2018                        Participant: ABRAHAM, MICHELLE

Exhibits Filed


Activity Date: 10/31/2018                        Participant: ABRAHAM, MICHELLE

Answer/Response/Reply


Activity Date: 11/17/2021                        Participant: ABRAHAM, MICHELLE

Exhibits Filed

Activity Date: 11/17/2021                          Participant: ABRAHAM, MICHELLE

Answer/Response/Reply


Activity Date: 11/17/2021                          Participant: ABRAHAM, MICHELLE

Notice Of Filing Filed


Activity Date: 12/07/2021                          Participant: COMMUNITY, ALTERNATIVES UN

Amend Order Or Decree - Allowed -

Judge: LOFTUS, ANNA M.


Activity Date: 12/07/2021                          Participant: COMMUNITY, ALTERNATIVES UN

Set Briefing Schedule - Allowed -

Judge: LOFTUS, ANNA M.


Activity Date: 12/07/2021                          Participant: ABRAHAM, MICHELLE

Agreed Order Entered

Judge: LOFTUS, ANNA M.


Activity Date: 12/07/2021                                                        Participant:

Courtesy Copies Required - Allowed


Activity Date: 12/07/2021                                                        Participant:

Case Assigned to Zoom Hearing - Allowed


Activity Date: 12/07/2021                          Participant: COMMUNITY, ALTERNATIVES UN

Strike Or Vacate An Order - Continued -

Judge: LOFTUS, ANNA M.


Activity Date: 12/15/2021                                                        Participant:

Brief Filed


Back to Top

---

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data in our master database.